

September 6, 2022

VIA ECF
Honorable Sarah Netburn
United States Magistrate

   Re:  *Lynne Freeman v. Tracy Deebs-Elkenaney et. al.  1 :* 22 Civ 02435 (AT)

Dear Judge Netburn:

   We are writing this letter motion to request an informal conference on behalf of Plaintiff Lynne Freeman pursuant to Part II.C. of the Court's Individual Practices and Local Rule 37.2 following an extensive meet and confer process with Defendants' Prospect Agency, LLC and Emily Kim Sylvan through their attorneys Lance Koonce and Zach Press of Klaris Law.

<u>Nature of Action</u>

   The action relates to the New York Times bestselling series, *Crave*, consisting of the books entitled *Crave, Crush, Covet*, *Court*, *Charm* and *Cherish* (the "*Crave* Book Series"). Lynne Freeman ("Freeman"), a writer and attorney, is suing Tracy Deebs-Elkenaney p/k/a Tracy Wolff ("Wolff") (the alleged author of the *Crave* series), Emily Sylvan Kim ("Kim") and Prospect Agency, LLC ("Prospect")  (Wolff's literary agent and Freeman's former literary agent), Entangled Publishing, LLC ("Entangled") (the book publisher of the *Crave* series), Holtzbrink Publishers, LLC d/b/a Macmillan (the distributor of the *Crave* series), Universal City Studios, LLC ("Universal") (a motion picture studio who has entered into a contract to produce a motion picture based on the first book in the series entitled *Crave*) and Crazy Maple Studio, Inc. ("Crazy Maple"), who made an interactive video based on *Crave.*

   Plaintiff Freeman alleges in the FAC, among other things, as follows: Freeman hired Prospect and Kim to shop her unpublished manuscript, which at the time, was entitled *Blue Moon Rising* ("Freeman's Manuscript"). Freeman needed a literary agent because HarperCollins UK was considering publishing the Freeman Manuscript. Prospect and Kim were also the literary agents for Wolff.  Kim, fraudulently and in breach of the fiduciary duty that she owed Freeman, gave copies of the various versions of the unpublished manuscripts and related notes and outlines written by Freeman ("Freeman Copyrighted Material") to Wolff, who Freeman is informed and believes are very good personal friends, so that Wolff could copy the Freeman Copyrighted Material given to her by Kim, and write a series of young adult fantasy books that are substantially similar to Freeman's Copyrighted Material. Specifically, Wolff copied Freeman's unpublished Copyrighted Material to write the Crave Book Series, all four of which were on the New York Times best sellers list, and all four (4) of which infringe Freeman's Copyrighted Material. Universal has been licensed the rights to produce a motion picture based

| 11766 Wilshire Boulevard | PHONE | (310) 861-2470 |
| --- | --- | --- |
| Suite 1470 | FAX | (310) 861-2476 |
| Los Angeles, California 90025 | EMAIL | mark@csrlawyers.com |
| | WEBSITE | www.markpassin.com |

Page 2
September 7, 2022

on the first book in the series entitled *Crave* and Crazy Maple was licensed the right to make and exploit an interactive video game based on the same book, which it is currently selling.

The substantial similarities between the various versions of Freeman's Manuscripts and the books in the Crave Series are overwhelming and undeniable. In addition to the similarities in plot, characters, dialogue, mood, theme, and pace, there are a substantial number of lifted scenes and language throughout the series, which could not possibly be explained except by copying. Many of these similarities occur in page number proximity between the various versions of Freeman's manuscripts and the Crave Book Series of books, using Freeman's language, expression, plots, subplots, and characters.

This case is on a very fast track. Although the case involves multiple versions of Freeman's manuscripts and various notes and outlines, on the one hand, and four (4) of Wolff's books, on the other hand, pursuant to the Civil Case Management Plan and Scheduling Order, the parties were granted only a little over four (4) months to conduct all fact discovery. The deadline to complete fact discovery is October 15, 2022. The Case Management Plan was signed by the Court on June 10, 2022. Freeman served her initial document requests and interrogatories on the Defendants Prospect and Kim on June 7 and 15, 2022, respectively. Unfortunately, due to defendants Prospect and Kim's failure to timely comply with their discovery obligations (as well as various of the other defendants which will be addressed in a subsequent letter) Freeman cannot possibly finish discovery within the four-month allotted time period.

## Meet and Confer Process

Defendants Prospect and Kim served their responses to Freeman's First Request for Production and First Set of Interrogatories on July 7 and July 15, respectively. I met with both Lance Koonce and Zach Press of the Klaris Law firm telephonically, regarding the responses on Friday, July 22, 2022. The night before the meet and confer, I sent them a detailed e-mail setting forth the issues I intended to raise at the meet and confer. We then had a telephonic meet and confer on July 22, 2022, and I sent both attorneys an e-mail on August 3, memorializing the outcome of the meet and confer. We also had a number of telephone conversations and exchanged numerous e-mails from July 28 to August 17 to discuss search terms to be used by Lance's clients and certain other defendants in responding to Plaintiff's First Request for Production of Documents.

**Prospect and Kim's Responses and Objections to Plaintiffs' Amended Request for Production of Documents  A copy is enclosed herewith as Exhibit "A."**

**Search Terms and Date of Production:** Freeman served her First Set of Document Requests on June 7, 2022. At the meet and confer on July 22, 2022, over six (6) weeks after Freeman served the document requests, Mr. Koonce raised for the first time that he was going to send me search terms. It was obvious based on the comment, that he had not yet begun

11766 Wilshire Boulevard  
Suite 1470  
Los Angeles, California 90025  

PHONE (310) 861-2470  
FAX (310) 861-2476  
EMAIL mark@csrlawyers.com  
WEBSITE www.markpassin.com

Page 3
September 7, 2022

gathering any documents. I told him that I needed all the responsive document within 2 ½ weeks because we had less than 3 months of fact discovery left. He then waited until July 28, to send me a draft of the search terms, which was totally insufficient.  A copy is attached hereto as Exhibit "B".  Thus, he waited seven (7) weeks after receiving the document requests to send me the proposed search terms, even though we have only approximately 4 months for discovery, and I obviously need all the documents before I can take any depositions or take any follow-up written discovery based on the documents.

My client and I tried to revise the search terms, but after attempting to do so realized that the case does not lend itself to the use of search terms.  Thus, we told Mr. Koonce that search terms were not appropriate for the case and that it was too late to raise the issue. The biggest problem is that we strongly contend that Kim sent Freeman's Copyrighted Material to Wolff, and will present testimony at trial, that the Crave Series could not have possibly been created any other way. Thus, there must be e-mails exchanged between Wolff and Kim with copies of Freeman's Copyrighted Material attached to the e-mails and/or extensive excerpts from the foregoing set forth in the e-mails.  However, one would have to use too many search terms to catch those attachments or excerpts.  Moreover, Mr. Koonce insisted on limiting the search terms to an arbitrary number of terms in any event.  After going back and forth with Mr. Koonce regarding the search terms, on or about August 18, 2022, after Mr. Koonce accepted some of my proposed search terms, I told him to please "run the searches and produce the documents" and reserved all of my rights.  Also, defendants are producing the documents without identifying the request number to which they are responsive.  Thus, we are going to receive massive numbers of documents with no way of deciphering, in many cases, exactly what the documents are or which document requests to which they are responsive.

Furthermore, there are numerous requests relating to agreements, financial documents (such as royalty statements) and other documents that defendants need to gather by hand and produce.  Most, if not all of those documents, are not responsive to the search terms used and will not be picked up by the search terms.  <u>See</u> Exhibit "C" attached hereto for a list of those document requests. Unless the Defendants are required to gather these documents manually, and produce them, they will never be produced.

Said defendants finally began their rolling production on September 1, 2022.  They produced approximately 3.3 gigabytes of documents, which is only a portion of the documents.  It is not clear how many more documents will be produced and when the production will be done.  Nonetheless, we do not expect to receive all of the documents for weeks, if not longer. As mentioned above, the fact discovery cut-off is October 15, 2022, and I will possibly not even receive all of the documents by the cut-off date. Moreover, even if I receive them prior to the discovery cut-off date, I will not have time to review all of the massive amounts of documents and prepare and notice all of the necessary depositions.  I

| 11766 Wilshire Boulevard | PHONE | (310) 861-2470 |
| | FAX | (310) 861-2476 |
| Suite 1470 | EMAIL | mark@csrlawyers.com |
| Los Angeles, California 90025 | WEBSITE | www.markpassin.com |

currently estimate, without seeing the documents, that I will need to take a minimum of 6 or 7 depositions. I will most likely also need to propound follow-up discovery regarding the documents produced. Thus, we respectfully request that the Court order a deadline for the production of the documents, including, but not limited to, the documents responsive to the requests set forth on Exhibit "C." and extend the fact-discovery cut-off deadline by four (4) months. No previous extension of the deadline has been requested.

Also, Prospect and Kim have unilaterally and without justification changed the "date of production" of the documents to be produced from "October 1, 2010, to the present" to "October 1, 2010 to the date Prospect was notified of Plaintiff's claims, on February 7, 2022, unless otherwise stated". As I explained to Mr. Koonce, there may be many relevant documents during the period of time that he deleted, such as accounting and financial documents.

Lastly, with respect to the documents, Defendants need to be ordered to produce all documents from any of the party's e-mail accounts, including but limited to, all personal e-mail accounts. Most likely, Kim and Wolff and possibly others, used their personal e-mail accounts to exchange Freeman's material. They would most likely not use their business accounts to try to avoid detection. Mr. Koonce claims that his clients have no e-mails forwarding Freeman's Copyrighted Material to Wolff, but Freeman is entitled to discovery from any and all sources, including, but not limited to, all of the parties personal e-mail addresses to try to uncover the documents from all sources. A perfect example is the e-mail address inkookim@gmail.com. Mr. Koonce has refused to produce e-mails from that account because he claims it belongs to Kim's husband and not her. However, see the two attached Whois reports that prove that the account belongs to Kim herself, attached hereto as Exhibit "D." There are other personal e-mail address that we believe belong to Kim, Pelletier and they should be ordered to produce all documents requested from all e-mail accounts, including, but not limited to, all personal accounts or third-party accounts used by them. We have sent the e-mail addresses to Mr. Koonce, but he denies that they are correct. Nonetheless, we have reason to believe some or all of them are valid. Said Defendants should also be ordered to turn over all of their computers to Plaintiff's counsel for expert examination. Although Defendants claim they do not have any documents sending Wolff copies of Freeman Copyrighted Material, obviously they cannot admit the foregoing without severely damaging their careers and they have a huge incentive to hide these documents. Under the circumstances, Freeman should be entitled to have an expert examine all of their computer hard drives.

**Prospect and Kim's Responses to Freeman's Interrogatories, Set No. One, attached hereto as Exhibit "E."**

| 11766 Wilshire Boulevard | PHONE | (310) 861-2470 |
| --- | --- | --- |
| Suite 1470 | FAX | (310) 861-2476 |
| Los Angeles, California 90025 | EMAIL | mark@csrlawyers.com |
| | WEBSITE | www.markpassin.com |

Page 5
September 7, 2022

**Definition of Crave Series:**  In the Interrogatories, Freeman defined the "Crave Book Series as the books entitled *Crave, Crush, Covet, Court, Charm* and *Cherish*.  *Crave, Crush, Covet* and *Court* all have been released and Freeman is suing various defendants in this action for copyright infringement for the exploitation of those infringing books. *Charm* and *Cherish* are the next two books in the series.  Freeman is informed and *believes* that *Charm* is scheduled for release on November 8, 2022, and *Cherish on May 20, 2023*.  Prospect and Kim objected to the definition to the extent that it included the unpublished books *Charm* and *Cherish*.  Freeman contends that she is entitled to discovery regarding the two unpublished books to ascertain if they infringe her works.  Indeed, they will undoubtedly have the same characters as the four (4) previous books, which will itself make the books infringing.  Thus, Prospect and Kim should be ordered to include those two books within the definition of the Crave Book Series when producing documents.

**Interrogatories 3 and 4:**  Interrogatory 3 requires for each book in the Crave Book Series, that Prospect and Kim "set forth all gross revenue they each have received or accrued in the connection with the writing or exploitation of the book up to the date of your response to this interrogatory, such response shall include the source of the revenues, the amount of the revenues and the and the dates when such revenues were received or accrued by You  . . .".  Interrogatory No. 4 requires the responding parties to "set forth all expenses incurred by YOU directly in connection with the writing or exploitation of each book up to the date of your response to this interrogatory, such response shall include a description of the expenses, the amount of the expenses and the date of the expenses."

      Instead of answering either Interrogatory, Prospect and Kim responded that "Prospect will produce documents sufficient to show revenues Prospect has received or accrued in connection with the publication of the *Crave* books. The foregoing is an invalid response to the Interrogatories and Kim and Prospect should be ordered to answer the Interrogatories immediately.  First, Fed. R. Civ. P., 33(d) only allows a party to produce documents in response to interrogatories "if the burden of deriving or ascertaining the answer will be substantially the same for either party."  That is clearly not the case here.  Prospect and Kim obviously have royalty statements and similar documents relating to the books that they maintain in one place, as well as the relevant documents relating to expenses.  Indeed, they have to compile that information for tax purposes.  In fact, it is extremely likely that they keep a running balance of all revenue and expenses.  Obviously, it will be extremely more difficulty for Freeman to somehow identify and pull out the relevant documents from the massive numbers of documents being produced, without reference to the document request numbers to which the documents are responsive, and then compile and analyze them.  On the other hand, it should be a very simple task for the responding parties to answer the two interrogatories.  Moreover, Rule 33(d)(1) also requires the responding party, if they are going to produce documents instead of answering the interrogatories, to specify "the records that

| 11766 Wilshire Boulevard | PHONE | (310) 861-2470 |
| --- | --- | --- |
| | FAX | (310) 861-2476 |
| Suite 1470 | EMAIL | mark@csrlawyers.com |
| Los Angeles, California 90025 | WEBSITE | www.markpassin.com |

must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Prospect and Kim are doing the exact opposite. They are burying them among massive amounts of documents so that Freeman cannot very easily find and analyze them. Lastly, the responses to the interrogatories were due on July 15, 2022, and we still have not received the documents.

Yours truly,

Mark D. Passin

cc: All Counsel

| | |
|---|---|
| 11766 Wilshire Boulevard | PHONE (310) 861-2470 |
| Suite 1470 | FAX (310) 861-2476 |
| Los Angeles, California 90025 | EMAIL mark@csrlawyers.com |
| | WEBSITE www.markpassin.com |