**KLARIS**

September 14, 2022

**VIA ECF**

The Honorable Sarah Netburn
United States District Court, S.D.N.Y.
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

      Re:    *Lynne Freeman v. Tracy Deebs-Elkenaney et. al.*, 1:22 Civ 02435 (AT)(SN)
             Response to Plaintiff's Letter Motion for Conference re Discovery

Dear Judge Netburn:

This firm is counsel to Defendants Emily Sylvan Kim and Prospect Agency, LLC (collectively, "Prospect"). We write in response to the letter of September 7, 2022 from counsel for Plaintiff Lynne Freeman raising a multitude of purported discovery issues. None of these issues merits the Court's intervention, as they either could have been resolved by meet-and-confer discussions, arise from Plaintiff's fundamental misunderstandings as to e-discovery procedures, or both.

Notably, buried in Plaintiff's letter is the apparent underlying motivation for this manufactured dispute: A request to "extend the fact-discovery cut-off deadline by four (4) months." Plaintiff's surreptitious attempt to double the time period for fact discovery through purported discovery disputes runs counter to the "fast track" schedule set by the Court, and also fails to follow Your Honor's Individual Rules, as Plaintiff's counsel has never raised such an extension with Defendants. We address each of Plaintiff's alleged discovery issues in turn below.

**Nature of Action**

Plaintiff asserts in this action that author Tracy Deebs-Elkenaney (aka Tracy Wolff), assisted by Prospect, deliberately copied Plaintiff's unpublished manuscripts when authoring a young adult, paranormal book series set in Alaska, starting with the best-selling book *Crave*. Plaintiff alleges copyright infringement based on a scattering of words and phrases, and well-known themes and tropes, common to countless works in the genre (including earlier works by Wolff that predate Freeman's association with Prospect). In a misguided attempt to create the illusion of copying, Plaintiff plucks those scattered words and tropes from across dozens of versions of her unpublished writings – many of which were never provided to Prospect – and attempts to link them to similarly scattered passages across the four-book *Crave* series. Defendants will demonstrate in a forthcoming dispositive motion, however, that these disparate and disaggregated examples do not even approach the substantial similarity standard under any test ever articulated by this Court.

To try to bolster her fatally flawed claim, Plaintiff conjures an elaborate, decade-long plan by Prospect to persuade Freeman to engage it as her agent in 2010 with the purpose not of finding

Klaris Law PLLC
29 Little West 12th Street                                                     Lance.Koonce@KlarisLaw.com
New York, NY 10014                                                             Mobile: +1 917.612.5861

Freeman a publisher (which, in reality, Prospect then attempted to do by submitting Freeman's work to over 20 editors over the span of over three years), but to secretly share Freeman's unsaleable manuscripts with another of Prospect's authors, Tracy Wolff, in order for Wolff to create an infringing work many years later. Defendants will also demonstrate as a factual matter, if needed, that this is all a fairy tale woven from whole cloth, as Wolff and her editor, Elizabeth Pelletier at Entangled Publishing, LLC ("Entangled") originated the idea for the *Crave* series independently and at no point did anyone at Prospect provide any of Freeman's manuscripts, or any portion thereof, to Wolff, and at no point did Wolff have access to Freeman's manuscripts.

**Meet and Confer Discussions**

Although Plaintiff's counsel indicates that the parties have engaged in "extensive" meet-and-confer discussions, he concedes that those discussions consisted of (a) one call to discuss Prospect's written discovery responses; and (b) several calls to discuss e-discovery search terms. Indeed, the first call about written discovery responses did not result in any substantive disputes, certainly none upon which Plaintiff's counsel has followed up. While Plaintiff's counsel reserved his client's rights as to certain issues regarding search terms, he has not bothered to follow up on these points either, before rushing to the Court.

**Prospect's Document Collection and Production**

As Plaintiff's letter makes clear, Plaintiff seeks discovery of Prospect in large part to try to demonstrate Plaintiff's wholly speculative belief that Prospect *must* have shared Freeman's manuscripts with Wolff. Plaintiff speculates that Prospect would have done this in clandestine fashion, including – Plaintiff's counsel has argued – by deliberately removing all references to Plaintiff's name, manuscript titles, and other identifying information when emailing such manuscripts or portions of manuscripts. Thus Plaintiff's written document requests were exceedingly broad, and included, for example, requests for all documents concerning Freeman and her manuscripts (RFP Nos. 1, 2), all communications between Prospect and any third-party concerning Freeman or the possible publication of her manuscripts (RFP Nos. 4, 16), and all communications between Prospect and Wolff regarding the writing of all of the books in the *Crave* series (RFP No. 11). In response to such requests, notwithstanding their overbreadth, Prospect agreed to produce responsive documents in the interest of full transparency.

Most pertinent to the current dispute, Plaintiff's written discovery also included requests for all communications between Prospect and Wolff, and between Prospect and Entangled, concerning Freeman and her manuscripts (RFP Nos. 9, 10, 12, 23, 24). With respect to such communications between Prospect and Wolf, Prospect answered each request by stating that **no such documents exist**. With respect to communications between Prospect and Entangled, as Plaintiff well knows – since she directed Prospect to do so – Prospect sent her manuscript to Entangled to be considered for publication in 2013, and Prospect agreed to produce, and now has produced, documents related to those submissions, but has no other documents that are responsive.

Klaris Law PLLC
29 Little West 12th Street                                              Lance.Koonce@KlarisLaw.com
New York, NY 10014                                                             Mobile: +1 917.612.5861

Despite these clear responses by Prospect, Plaintiff's counsel has stated on numerous occasions that he does not believe these representations, and that Prospect could be "lying." For this reason, Plaintiff's counsel has insisted that the only acceptable manner for Prospect to conduct discovery is for counsel to review each and every communication sent by Prospect, over a period of 12 years, to determine if those communications refer to Freeman or her manuscripts.

When Prospect began collecting documents,[1] it quickly became apparent that the use of search terms would be required. Emily Kim's primary business email account alone contained over 325,000 individual emails. Counsel for Prospect reached out to Plaintiff's counsel and proposed using search terms to identify responsive documents, and forwarded proposed terms for Plaintiffs' review. Given Plaintiff's insistence that Prospect might be "lying" about not communicating with Wolff and Entangled about Freeman, Prospect's counsel communicated to Plaintiff's counsel the following when sending the proposed search terms:

> We have attempted to create broad search terms that will capture anything responsive, but not so broad that they will capture, for instance, work by Prospect on wholly unrelated books. The most difficult aspect here is the alleged textual similarities, and what we are suggesting is that we run a certain number of words or phrases from Freeman's manuscripts that you believe were copied or paraphrased -- say 20 terms in total -- that would hit on any documents in which that word or phrase appear. We can let you have some say in those terms, to ensure that you don't think we're cherry-picking.

*See* Exhibit A (email cover, and initial proposed search terms). In other words, Prospect proposed that Plaintiff choose specific terms found in her manuscripts she believed had been copied, and Prospect would run those terms against all of its communications, to test whether any portions of the manuscripts ever had been shared.

Plaintiff's counsel rejected the use of 20 terms, and ultimately insisted on a much broader list of some 70 terms to be run with no limitations whatsoever, plus another list of 75 terms – chosen entirely by Plaintiff – that would be run together with a series of disjunctive keywords representing the book titles and parties. *See* Exhibit B (final list of search terms). Prospect's counsel warned Plaintiff's counsel that the use of single words (e.g., "ditto," "ceremonial") and short, common phrases (e.g., "mean girls," "oh my!") would likely result in a large number of non-responsive documents, but Plaintiff's counsel insisted that such terms be used. Prospect obliged these overreaching requests in a further effort to demonstrate good faith and transparency.

---

[1] Contrary to Plaintiff's baseless assertions, Prospect did not wait to begin collecting documents until the parties agreed on search terms – it collected the bulk of its documents, loaded them into an e-discovery platform, assessed the volume, and *then* raised the issue of search terms.

Klaris Law PLLC
29 Little West 12th Street                                      Lance.Koonce@KlarisLaw.com
New York, NY 10014                                              Mobile: +1 917.612.5861

When the final search terms were run against the first 440,000+ documents that had been collected, it resulted in approximately 40,000 documents. That document set was then searched to remove, as much as possible, communications and contracts between Prospect and its other authors who are not involved in this litigation, and privileged communications with counsel which will be reflected on a privilege log. Removing these documents reduced the production set to approximately 23,000, which were produced to Plaintiff. Prospect intends to follow the same process for the remainder of its document repositories, which are smaller than the email repositories already searched, and anticipates completing its entire production within the next two weeks, if not sooner.

Plaintiff, for its part, has not yet produced any documents in response to written requests served by Defendants on July 15. In recent correspondence, Plaintiff's counsel stated that Plaintiff is not using search terms but would not disclose what method Plaintiff will be using to collect and review documents, and merely indicated that at some point "We are going to gather and produce the responsive documents that we said we would produce" without providing any further details.

**Plaintiff's Challenges**

Search Terms. Plaintiff argues it was improper for Prospect to run search terms, suggesting that Prospect should be searching the hundreds of thousands of documents manually, one by one. Not only would this be impossible in a case that, in Plaintiff's own words, is on a fast track, it flies in the face of modern e-discovery, in which use of search terms is routine. Further, Rule 26(b)(1) states that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Here, the type of review Plaintiff demands is disproportionate to the needs of the case, especially given that Prospect is a small business with limited resources Prospect should not be forced to spend tens or hundreds of thousands of dollars reviewing documents one by one, just to prove a negative (that it never sent the manuscripts to Wolff). The financial resources Prospect is almost certain to spend before this case is fully resolved is already likely to approach or exceed the total commissions Prospect has received on sales of the books in the *Crave* series.

Date Range. Plaintiff asserts that the date range for document production should extend to the present, but the only rationale provided is that Plaintiff's counsel told Prospect's counsel that there could be relevant accounting and financial documents during that later period. However, counsel fails to inform the Court that in response, the undersigned responded that Prospect would not apply the temporal restriction to such financial documents. Plaintiff provides no justification whatsoever as to why any other documents created after Prospect was put on notice of Plaintiff's claims – and after the fourth book in the *Crave* series was published – would be relevant. If Plaintiff cannot demonstrate substantial similarity or access based on communications and other documents from the time period ending with notice, there is simply no reason to believe there will be later documents that provide such proof. Indeed, most documents during this later period will be

Klaris Law PLLC
29 Little West 12th Street                                          Lance.Koonce@KlarisLaw.com
New York, NY 10014                                                   Mobile: +1 917.612.5861

attorney-client privileged, as it covers the period during which defendants prepared for and started to defend against Plaintiff's claims. However, should Plaintiff reasonably identify specific, targeted categories of documents during that period, that can readily be searched, Prospect would be happy to discuss those with Plaintiff's counsel.

Email Accounts. Not only is Plaintiff's argument about email accounts again based on rank speculation (Prospect "would most likely not use their business accounts to try to avoid detection"), Plaintiff also misrepresents counsels' discussions about searching such accounts. In point of fact, **Prospect has agreed to search all of Emily Kim's personal and business email accounts.** Prospect properly drew the line, however, at searching her spouse's email, and explained to Plaintiff that the fact that her spouse (who occasionally provides administrative or IT assistance to the company) used his email address to help set up a Prospect domain name back in 2005 does not mean the account is owned by Prospect. Plaintiff also argues that there are two other personal email addresses that should be searched, noting that "[w]e have sent the email addresses to Mr. Koonce, but he denies that they are correct." Indeed, Prospect has checked those addresses, and explained to Plaintiff's counsel nearly a month ago that they simply are not owned by Emily Kim or Prospect. Prospect's counsel now argues that "[n]onetheless, we have reason to believe some or all of them are valid." However, he has never provided any basis for such belief+ either to Prospect or to this Court. Plainly, Prospect cannot search accounts it does not own or control.

Examination of Computers. Plaintiff makes the wholly outrageous demand that Prospect be ordered to "turn over all of their computers to Plaintiff's counsel for expert examination." Putting aside the disruption this would cause to Prospect's small business, Plaintiff has never made a request for such an examination and can provide no justification for needing such an examination, other than the continued baseless speculation that all the defendants are "hiding" documents.

Definition of *Crave* Series. Plaintiff demands discovery on the next two, as-yet-unpublished, books in the *Crave* series, in order to "ascertain if they infringe her works." First, this case should not be a vehicle for discovery into forthcoming works, especially given the confidential and sensitive nature of works that have not yet been presented to the public. More importantly, if Plaintiff cannot make out a case for infringement against the published books, there is no basis for an assertion that later books in the series will infringe. Finally, the two forthcoming books simply are not mentioned in the allegations in Plaintiff's First Amended Complaint, and are thus beyond the scope of discovery in this action.

Interrogatories 3 and 4. Prospect is continuing to collect financial documents showing its total agency commissions on publication of the *Crave* series, and will produce those within the next few weeks. Plaintiff speculates, again baselessly, that Prospect will "bury[] them among massive amounts of documents so that Freeman cannot very easily find and analyze them." To the contrary, Prospect intends to follow the strictures of Rule 33(d)(1) and identify the records in sufficient detail to enable Plaintiff to locate and identify them, by providing the specific Bates Numbers for each such document. This is yet another issue that counsel already discussed, and which Plaintiff's counsel could have raised in a meet and confer, and did not do so.

Klaris Law PLLC
29 Little West 12th Street
New York, NY 10014

Lance.Koonce@KlarisLaw.com
Mobile: +1 917.612.5861

        Respectfully submitted,

        KLARIS LAW PLLC

By:    */s/* Lacy H. Koonce, III
        Lacy H. Koonce, III

        29 Little West 12th Street
        New York, NY 10014
        Phone: (917) 612-5861
        lance.koonce@klarislaw.com

        *Attorneys for Emily Sylvan Kim*
        *and Prospect Agency, LLC*

Page 6 of 6

Klaris Law PLLC
29 Little West 12th Street
New York, NY 10014
Lance.Koonce@KlarisLaw.com
Mobile: +1 917.612.5861