

| | | |
|---|---|---|
| Cowan, DeBaets, Abrahams & Sheppard LLP | 41 Madison Avenue<br>New York, NY 10010<br>T: 212 974 7474<br>F: 212 974 8474<br>www.cdas.com | Nancy E. Wolff<br>212 974 7474<br>nwolff@cdas.com |

September 14, 2022

**VIA ECF**

The Honorable Sarah Netburn
United States District Court
Southern District of New York
Thurgood Marshall Courthouse
New York, NY 10007

      Re:    *Lynne Freeman v. Tracy Deebs-Elkenaney et. al.*, 1:22 Civ 02435 (AT)(SN)

Dear Judge Netburn:

This firm is counsel to Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff ("Wolff"), Entangled Publishing, LLC ("Entangled"), Holtzbrinck Publishers, LLC d/b/a Macmillan ("Macmillan"), and Universal City Studios LLC ("Universal") (collectively, "Defendants"). We write in response to Plaintiff's September 8, 2022 letter (the "9/8 Letter") (ECF No. 60), which is inaccurate and misleading for numerous reasons.[1] As a threshold issue, it bears emphasis that this lawsuit—where Plaintiff principally alleges that Defendants' book series (the "*Crave* Series," including the titles *Crave*, *Crush*, *Covet*, and *Court*) infringed her copyrights in certain unpublished manuscripts (the "Manuscripts")[2]—is utterly meritless and should never have been brought. Defendants will show at summary judgment that Wolff and Entangled CEO Liz Pelletier (the individuals who wrote and developed the *Crave* Series) never had access to Plaintiff's unpublished Manuscripts, that Plaintiff's allegations that Defendants and Kim secretly conspired to rip her off are nothing more than a wild conspiracy theory, and that Plaintiff's overbroad discovery purportedly aimed at uncovering nonexistent evidence of this alleged conspiracy is a costly and wasteful fishing expedition.

Moreover, this litigation has been off track from the outset because Plaintiff is suing over a vague collection of unpublished manuscripts and did not attach any Manuscripts to her pleadings or provide them during pre-suit negotiations. Had Plaintiff done so, Defendants could have moved to dismiss on substantial similarity (as is typically done in cases of alleged literary infringement), obviating the need to decide any of the discovery disputes Plaintiff now raises. For this reason, Defendants have pressed Plaintiff from the beginning to provide copies of her Manuscripts so that they can be compared to the *Crave* Series. After weeks of ignoring this, Plaintiff finally provided six versions of the Manuscripts on August 2, 2022. This production is glaringly deficient. Plaintiff has stated in her responses to Defendants' interrogatories that Manuscripts she alleges were infringed are reflected in her copyright registrations. Yet the registrations indicate that there are up

---

[1] This letter also addresses certain statements made in Plaintiff's letter dated September 6, 2002 (but filed September 7) directed at Prospect Agency, LLC ("Prospect") and Emily Kim Sylvan ("Kim") (the "9/7 Letter") (ECF No. 59).
[2] Plaintiff's Manuscripts are allegedly entitled either *Masqued* or *Blue Moon Rising*. Due to the discovery issues discussed herein, the difference if any between *Masqued* and *Blue Moon Rising* is currently unclear.



COWAN,

DEBAETS,

ABRAHAMS &

SHEPPARD LLP

to 16 registered Manuscripts and Plaintiff has produced only six of them, and without reliable metadata showing when these were created.[3] In short, Plaintiff is alleging copyright infringement of her work but is needlessly protracting the litigation and causing disputes by hiding the ball as to what her work actually is.

Nevertheless, it is already obvious from the Manuscripts that have been produced—as well as a version of *Masqued* produced by co-defendant Kim (which has yet to be produced by Plaintiff)[4]— that Plaintiff's Manuscripts and the *Crave* Series are not remotely similar. Although the differences in the parties' works are too many to describe in a letter, Defendants will demonstrate that the works differ in their themes, plot, scope, characters, settings (notwithstanding the superficial similarity of both taking place in high schools in Alaska), and in total concept and feel, and that no reasonable jury would conclude otherwise. Indeed, the self-serving collections of alleged similarities assembled in the FAC do not concern protected expression, and instead merely reflect common verbiage (phrases like "well, well, well") and characters and plot points that are ubiquitous in young adult books (such as vampires, werewolves, and dark, dangerous boyfriends, and tropes like an "epic kiss"). (*See generally, e.g.*, FAC ¶¶ 40-43).[5] Defendants respectfully submit that once the Court reads the parties' works, it will easily conclude that they are not remotely similar and that this wasteful and vindictive lawsuit should never have been filed.

To this end, Defendants believe that the most efficient way to steer this case toward resolution is to impose an immediate stay of discovery to allow for a potentially dispositive motion for partial summary judgment on the issue of substantial similarity. *See Flaherty v. Filardi*, 388 F. Supp. 2d 274, 283-84 (S.D.N.Y. 2005) (approving of magistrate judge's decision to stay discovery pending partial motion for summary judgment on substantial similarity); *Adsani v. Miller*, 1996 WL 531858, at *11, *16 (S.D.N.Y. Sept. 19, 1996) (explaining that the court stayed discovery so that defendants could seek summary judgment on substantial similarity and how this led to resolution of the case because review of the works showed that "plaintiff's copyright infringement claim was objectively unreasonable"). Defendants believe that it is already possible to resolve the case by comparing the *Crave* Series to the *Masqued* manuscript discussed in footnote 4, *supra*, but if Plaintiff believes that a different version of her Manuscripts should be considered, she should be ordered to provide it immediately with reliable metadata establishing when it was created, so that the parties and Court can compare the *Crave* Series to a clean copy of Plaintiff's work without needing to parse dozens of versions of the latter. *See id.* at *11 (endorsing similar approach). Notably, a stay of discovery would not prejudice Plaintiff, especially given that she has already requested a four-month discovery extension. (*See* 9/8 Letter at 2.)

---

[3] Plaintiff has elsewhere stated in interrogatory responses that there are as many as 85 different versions of her Manuscripts (44 of *Blue Moon Rising* and at least 41 of *Masqued*).

[4] Kim has identified this version (produced as Bates KIM00157808-KIM00158250) as the Manuscript that she sent Entangled in October 2013. As Plaintiff alleges, Kim sent it to Entangled editor Stacy Abrams only (FAC ¶ 38)—it was never sent to or reviewed by Wolff or Pelletier.

[5] Cherry-picked assemblies of similarities like those in FAC are "'inherently subjective and unreliable'" and inapposite when the works themselves can be compared. *See, e.g.*, *Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996).

Case 1:22-cv-02435-LLS-SN Document 66 Filed 09/14/22 Page 3 of 6


Case 1:22-cv-02435-LLS-SN Document 66 Filed 09/14/22 Page 3 of 6

COWAN,
DEBAETS,
ABRAHAMS &
SHEPPARD LLP

PAGE 3

If the Court does not stay discovery, Defendants believe that discovery should proceed expeditiously so that summary judgment and resolution of this case can occur sooner—as the litigation continues to interfere with Defendants' business. Defendants therefore oppose Plaintiff's request for a four-month extension (sought without an obligatory meet and confer). (*See id.* at 2.) In the interest of compromise, and because Wolff will be abroad on a book tour for the month of October, Defendants would consent to a one-month extension of fact discovery. Defendants respond to the other issues raised in Plaintiff's 9/8 Letter as follows.

**Meet and Confer Process.** The parties met and conferred on July 21 and have since exchanged emails regarding disputed discovery issues, during which Plaintiff's counsel has repeatedly demanded that Defendants withdraw discovery objections and falsely accused Defendants of "trying to hide" evidence. Defendants have also repeatedly offered to further meet and confer on outstanding issues and have explained to Plaintiff that they are conducting discovery diligently and in good faith and will be producing documents notwithstanding their stated objections.

**Status of Document Production.** Defendants made their first production of 3,342 documents on Tuesday, September 13. This production includes documents from all four Defendants and variously contains documents relating to the creation, writing, and editing process of the *Crave* Series; sales records and royalty statements; contracts; and other responsive documents. Defendants have worked diligently to make this production but the parties' dispute regarding search terms (addressed below and further described in Prospect and Kim's response to Plaintiff's 9/7 Letter) caused significant delays. Defendants expect to make additional rolling productions in the coming weeks. By contrast, Plaintiff has produced a grand total of **17** documents to date, and these productions are deficient for the reasons described above, including a lack of reliable metadata. Plaintiff has also refused to describe the (apparently ad hoc) process by which she is identifying responsive documents and confirm whether her productions will contain metadata.

**Search Terms.** Defendants agree with Prospect and Kim's explanation of the parties' dispute and negotiations regarding search terms. Because Plaintiff initially objected to using search terms, the parties went back and forth for ***four weeks*** before Plaintiff finally agreed to a list of search terms on August 17. Only then could Defendants run the search terms and begin collecting and reviewing documents for production, which is why Defendants were first able to produce documents on September 13. While Plaintiff complains that Defendants took too long to raise the issue of search terms (9/8 Letter at 2), Defendants didn't raise using search terms earlier because search terms are used as a matter of course in modern litigation and Defendants had no way of knowing that Plaintiff would take the unreasonable position of objecting to their use. To be clear, search terms are indispensable to collect documents here (as in most cases), where custodians have hundreds of thousands of documents that cannot be reviewed manually without extreme burden and expense.

**Personal Email Accounts and Demand for Inspection.** Plaintiff's demand regarding personal email accounts (*id.*) raises a non-issue because Defendants are producing documents from Wolff and Abrams' personal accounts and have confirmed that Pelletier's do not contain responsive documents. Plaintiff further demands that Defendants "be ordered to turn over their computer hard



Case 1:22-cv-02435-LLS-SN   Document 66   Filed 09/14/22   Page 4 of 6

PAGE 4

COWAN,

DEBAETS,

ABRAHAMS &

SHEPPARD LLP

drives to Plaintiff's counsel for expert examination." (*Id.*) This is outrageous and unsupported; courts have made clear that requests to inspect an opposing party's computer "are granted only under limited circumstances, when there is reason to believe that a litigant has tampered with the computer or hidden relevant materials despite demand for them in the course of the lawsuit or when the possession or use of the computer is an element of the parties' claims or defenses." *Lifeng Chen v. New Trend Apparel Inc.*, 2012 WL 4784855, at *1 (S.D.N.Y. Oct. 2, 2012) (collecting cases). This is because "production of a computer to the adversary almost invariably will lead to disclosure of quantities of documents that are entirely irrelevant or privileged, and, even if not privileged, possibly quite sensitive." *Id.* Defendants are producing thousands of documents and using professional e-discovery vendors and IT personnel. Defendants have never destroyed or hid evidence or engaged in other misbehavior that could warrant computer inspection, and Plaintiff comes nowhere close to showing otherwise.

**Defendants' Objections to Plaintiffs' Discovery Requests.** Plaintiff claims that Defendants have asserted a number of improper objections to her discovery requests. None of this has merit.

- ***General Objections.*** As is common, Defendants objected to Plaintiff's discovery requests for several general reasons, such as to the extent the requests are overly burdensome or documents are in the public domain. (*See* 9/8 Letter at 2, 5.) Defendants did this to preserve such objections and have and will continue to provide more specific reasons to the extent they are refusing a request, limiting the scope, or responding in an adequate but different form than that which Plaintiff requested, as is appropriate under the discovery rules as explained herein.

- ***Definition of Works.*** Plaintiff's objection to Defendants' definition of the "*Crave* Book Series" as excluding the last two books of the series (entitled *Cherish* and *Charm*), which have yet to be published (*id.* at 2, 3, 5), is baseless because those titles are not at issue in this case. The FAC does not assert that Defendants infringed Plaintiff's copyrights by publishing *Cherish* or *Charm* (nor could it, since these books haven't been published). Nor does the FAC seek to enjoin the publication of *Cherish* or *Charm*. There is accordingly no reason why Defendants should have to provide discovery on these unfinished books, especially since producing highly confidential information about the plotting and drafting of them before they are released to the public could be devastating to Defendants' business. As Prospect and Kim point out, if Plaintiff can't prove infringement based on all the communications concerning the four published books, she cannot possibly do so with communications regarding these unpublished books. Finally, Plaintiff's assertion that Defendants improperly objected to the definition of "BMR" as including both drafts of *Masqued* and *Blue Moon Rising* (*id.* at 2) raises a non-issue because the search terms include both titles and documents hitting on either or both will be produced, to the extent they exist.

- ***Date Range.*** Defendants have objected to Plaintiff's document requests as unlimited in temporal scope and have generally stated that they will produce documents created up to February 6, 2022 (the date Plaintiff sent a demand letter). (*See id.* at 3.) Plaintiff's broad request for discovery after that date makes no sense because the most recent book in the *Crave* Series (*Court*) was published


on February 1, 2022, and communications that discuss the creation and drafting of that and the three previous *Crave* Series books necessarily occurred before that date. As Prospect and Kim point out, if Plaintiff can't demonstrate substantial similarity or access from documents from the years leading up to the *Crave* Series' publication, there is no reason to believe later documents (many of which will be privileged) will provide such proof. The only possibly discoverable documents from after February 1 are financial records, which Defendants have and will continue to produce. Defendants are willing to discuss others if Plaintiff can explain why non-financial discovery after February 6 is necessary and reasonably target specific types of documents.

**Responses to Certain Document Requests.** Defendants construed a number of document requests that were nonsensically "addressed to Wolff, Entangled and Macmillan" as directed only to Defendants who might actually possess discoverable information. (*See* 9/8 Letter at 3.) Request No. 4, for example, sought communications between Freeman and Kim, when there is no possibility that Macmillan (a publisher that has not communicated with Freeman) or Universal (whose only role is making a film based on the *Crave* Series) would have such communications. Similarly, Request No. 19 sought all agreements between Prospect and/or Kim and Entangled and Pelletier, when there is no chance that Macmillan or Universal (who do not employ Kim or Pelletier) would have these. These examples alone underscore how Plaintiff's sloppy and overbroad discovery requests have led to needless disputes. At the end of the day, this is a non-issue because existing communications that are responsive and not privileged will be produced.

**Responses to Interrogatories.** Defendants have stated that they will provide documents in lieu of written responses to certain interrogatories (*see id.* at 3-5), an approach that courts in this District have repeatedly endorsed, *see e.g., Rouviere v. DePuy Orthopaedics, Inc.*, 2020 WL 1080775, at *3 (S.D.N.Y. Mar. 7, 2020) (defendant properly produced documents in response to interrogatories pursuant to Rule 33(d), which "expressly provides the responding party the option to produce business records in response to an interrogatory"); *Evans v. Port Auth. of New York & New Jersey*, 2001 WL 432486, at *1 (S.D.N.Y. Apr. 27, 2001) (allowing party to "avail itself of the right to respond by producing business records as contemplated by Rule 33(d)"). Defendants will identify these records in sufficient detail as required by 33(d)(1).[6] While Plaintiff argues that "it will be extremely more difficulty [sic] for Freeman to somehow identify and pull out the relevant documents" (9/8 Letter at 4), reviewing an opposing party's documents to gather information to develop one's case is how discovery works. Defendants should not be required to conduct Plaintiff's discovery work for her, and Plaintiff should at a minimum have to review the documents Defendants provide and explain why they are insufficient before such cost shifting occurs.

**Macmillan's Insurance Policy.** This is a non-issue because Defendants have now produced a copy of Macmillan's insurance policy. This was delayed because Macmillan was the victim of a cyber attack this summer and their ability to access certain files was compromised for some time.

---

[6] This approach is especially appropriate because Plaintiff's interrogatories, *inter alia*, ask Defendants to audit the four published *Crave* books (over 700 pages each) and identify who specifically wrote each section of them. This is an enormous burden that has no likelihood of leading to information relevant to access or substantial similarity. If Plaintiff truly believes that this information is needed, she can glean it through documents or ask about it at depositions.

COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP

Respectfully submitted,

COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP

By: /s/ Nancy E. Wolff
Nancy E. Wolff
Benjamin H. Halperin
CeCe M. Cole
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
nwolff@cdas.com
bhalperin@cdas.com
ccole@cdas.com

*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan, and Universal City Studios LLC*