

| | | |
|---|---|---|
| COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP | 41 MADISON AVENUE<br>NEW YORK, NY 10010<br>T: 212 974 7474<br>F: 212 974 8474<br>www.cdas.com | NANCY E. WOLFF<br>212 974 7474<br>NWOLFF@CDAS.COM |

December 5, 2022

**VIA ECF**
The Honorable Sarah Netburn
United States District Court
Southern District of New York
Thurgood Marshall Courthouse
New York, NY 10007

      Re:    *Lynne Freeman v. Tracy Deebs-Elkenaney et. al.*, 1:22 Civ 02435 (LLS)(SN)

Dear Judge Netburn:

      This firm is counsel to defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff ("Wolff"), Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan ("Macmillan"), and Universal City Studios LLC ("Universal" and collectively, "Entangled"). We write together with counsel for defendants Emily Sylvan Kim ("Kim") and Prospect Agency, LLC (collectively, "Prospect," and collectively with Entangled, "Defendants"), who join this letter in full. Defendants write in accordance with Rule II.C of Your Honor's Individual Practices to respond to Plaintiff's December 1, 2022 letter ("Letter")[1] and join Plaintiff's request for a discovery conference. Importantly, any conference should be held ***in person*** so that the parties can meet face to face and all issues can be clearly put on the table and resolved.[2]

      Plaintiff's highly misleading letter obscures that Plaintiff, not Defendants, has been dilatory and uncooperative throughout discovery and is attempting to use her own lethargy and erratic behavior as a sword to secure a discovery extension, when the Court could not have been clearer in its October 31 Order that the December 31 deadline is firm. (*See* ECF 75 ("remind[ing] [the parties] that fact discovery ends December 31, 2022").) Defendants substantially completed their document production by the October 21 deadline for substantial completion.[3] Defendants have also already noticed the only two fact depositions they intend to take—of Ms. Freeman herself and of her aunt and apparent writing partner Mary McCauley—for dates in December. Plaintiff, by contrast: (1) did not notice ***any*** depositions until last Friday night (the day after his Letter); (2) did not search, let alone produce, Ms. Freeman's text messages until roughly a month after the October 21 deadline; and (3) last week propounded a series of highly burdensome additional written discovery requests, the responses to which are not due until the week after Christmas.

---

[1] Plaintiff's counsel, Mark Passin, emailed the Letter to the Court at 11:53 pm on Thursday December 1, and then for unknown reasons forwarded what appears to be the same letter to the court at 5:09 pm on Friday December 2.
[2] The last time Plaintiff requested a discovery conference, he apparently submitted an *ex parte* request to hold the conference telephonically. While Defendants do not know what was said in that *ex parte* request, Defendants asked Mr. Passin about his request during the parties' November 21 meet and confer and he denied having submitted it *ex parte* and stated that he had requested a telephonic conference merely to avoid having to fly to New York. Mr. Passin should not be making *ex parte* applications to avoid appearing in the forum where he filed a lawsuit.
[3] Mr. Passin stated in his Letter that the production did not occur until November 21 but then filed a "Notice of Errata" claiming this was a typo and thus acknowledging that Defendants did substantially complete their production on time.

Plaintiff has also repeatedly requested extensions of Court deadlines, which Defendants have granted in the interest of cooperating. First, it was Plaintiff who proposed extending the deadline for substantial completion of production from October 14 to 21—Defendants had been prepared to complete their production by the earlier deadline but agreed to a joint extension request to ease the pressure on their attorneys and accommodate Plaintiff. Then, Plaintiff missed the November 10 deadline to serve requests for admission and asked Defendants to grant him several additional days, which Defendants again granted even though they had served their own requests by the deadline. Plaintiff proceeded to propound 102 RFAs to Entangled and 101 RFAs to Prospect on November 15, including useless and harassing requests such as asking Wolff to admit that she did not use common words and phrases like "beyond ridiculous," "coagulate," and "ditto" in any book she wrote prior to the *Crave* series. (*See* Pl.'s 11/15 RFAs (attached as Ex. A).)[4] Plaintiff now claims to need more time to review documents, but the volume of documents produced by Defendants (collectively, 41,408 documents) is not unreasonable considering the scope of the allegations, number of defendants, and breadth of the agreed-upon search terms.[5] Mr. Passin claims to be "handling the case almost exclusively himself" (Letter at 1), but Plaintiff chose to file this lawsuit and it is Plaintiff's responsibility to line up the resources needed to litigate it.

In short, Plaintiff is the only party that has not been proceeding diligently. Plaintiff has not lined up the necessary resources to complete discovery on schedule, despite being on clear notice that the discovery deadline is firm. (*See* ECF 67, 75.) Plaintiff instead appears to have wasted time pursuing useless and burdensome written discovery and otherwise arguing about minutiae when she should have been reviewing Defendants' timely production and noticing depositions. These are reasons to strictly enforce the December 31 deadline, not extend it. *See Coudert v. Jannet Montgomery Scott, LLC*, 2004 WL 2381552, at *2 (D. Conn. Oct. 7, 2004) ("The Court believes that Plaintiff was dilatory in pursuing discovery … and this weighs heavily against extending the discovery deadline once more ….").

**Amending Plaintiff's Complaint**. Plaintiff intends to "very shortly move for leave to amend" her Complaint for the second time. (Letter at 5.) This would be to add claims in connection with *Charm*, the fifth book in the *Crave* series, which was published on November 8, 2022, and *Katmere Academy: An Insider's Guide*, which is a behind-the-scenes guide into the book's characters that was published on November 23, 2021—not 2022 as Plaintiff states. (*See* Letter at 5.) Mr. Passin has also stated in an email to Defendants that Plaintiff seeks to add allegations that yet another (purportedly newly discovered) version of Ms. Freeman's manuscripts has been infringed, even though Plaintiff concedes that this version has not been registered with the Copyright Office. Defendants oppose all of this and will set forth their reasons in full in opposition to any formal motion for leave to amend. Briefly, it is too late to add new allegations when discovery is set to close on December 31, and this is especially true as to the *Insider's Guide*, which was published well in advance of the Complaint. As to *Charm*, the Court denied discovery into it and held that it could potentially be folded into the litigation if Plaintiff could first prove infringement based on the four previous books—which obviously has yet to be done. And the purported new manuscript is unregistered and cannot be the subject of a copyright suit. *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887-88 (2019).

---

[4] Plaintiff requested five previous extensions of discovery-related deadlines, which Defendants consented to.
[5] Defendants implored Mr. Passin to agree to narrower search terms, and the Court also pressed him to do so, but he refused.

***Depositions.*** Because there is a "'general presumption that a plaintiff who chooses a particular forum should be prepared to be deposed in that forum,'" Defendants have noticed Ms. Freeman's deposition to be conducted in Manhattan on December 14. *Wei Su v. Sotheby's, Inc.*, 2019 WL 4053917, at *1 (S.D.N.Y. Aug. 28, 2019); *see also, e.g.*, *Dubai Islamic Bank v. Citibank, N.A.*, 2002 WL 1159699, at *12-13 (S.D.N.Y. May 31, 2002) (collecting cases confirming that "[a]s a general rule, a plaintiff who brings suit in a particular forum may not avoid appearing for examination in that forum"). Plaintiff objects to holding her deposition in New York because "she cannot fly because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and offers that she could instead be deposed in California. (Letter at 5.) Defendants question, among other things, what Ms. Freeman would do about traveling to New York should this case reach trial, but have nevertheless repeatedly offered to conduct her deposition remotely if Mr. Passin would reciprocally agree to conduct his depositions of Defendants' witnesses remotely. But Mr. Passin has rejected this and insists on in-person depositions.

After not noticing a single deposition for months despite possessing Defendants' substantially complete production since October 21, Mr. Passin sent Defendants nine deposition notices Friday night, December 2. He noticed four these depositions for the week between Christmas and New Years.[6] He also noticed all these depositions for in-person in New York, when a number of the witnesses reside far away, variously in Texas (Wolff and Pelletier), Illinois (Abrams), and California (likely Universal representative). Mr. Passin could have noticed these depositions months ago and secured dates in the first half of December when the witnesses were likely to be available. He should not be permitted to use his own lack of diligence as a sword to require anybody to sit for a deposition during the holidays. Nor may he require those witnesses who reside far from New York to appear here, since unlike a plaintiff who chooses a forum, defense witnesses who did not choose to be involved in a lawsuit must be deposed where they are located. *See, e.g.*, *Alpha Cap. Anstalt v. Real Goods Solar, Inc.*, 323 F.R.D. 177, 178 (S.D.N.Y. 2017) ("A rebuttable presumption exists that a defendant's deposition will be taken where the defendant resides or works."). The Court should order that these depositions be held remotely and before the holidays.

Mr. Passin's December 2 notices also included two 30(b)(6) deposition notices (of Macmillan and Universal), with topics substantially broader than those Mr. Passin purports to have previously identified in an email. (*See* Letter at 3 ("even though we e-mailed them the topics of examination").)[7] Now that Mr. Passin has finally provided formal notice of the 30(b)(6) deposition topics, the parties need to meet and confer under Rule 30(b)(6) and these Defendants need to identify appropriate witnesses, who will need to prepare and should not be required to disrupt their holidays to do so. Needless to say, it will be challenging for all this to occur and for these depositions to take place before the December 31 deadline. Defendants stand ready to work diligently and with Mr. Passin to schedule these depositions equitably, but if that is not possible,

---

[6] Those four are of Wolff (12/30); Liz Pelletier (12/29), Kim (12/28); and a Macmillan representative (12/27). None of these witnesses is available those days. Mr. Passin also noticed a deposition of Stacy Abrams for 12/23, even though Defendants had told him she was unavailable after the 19th.

[7] On November 23, Mr. Passin wrote via email that he wished to depose "the PMK at MacMillan most knowledgeable of the agreement between Entangled and MacMillan for the distribution of the books at issue, sales of the books and the profits generated therefrom, and … the PMK at Universal regarding the making of the motion picture and the agreement pursuant to which it acquired the rights in and to the book entitled *Crave*." The topics in his formal deposition notices (attached as Ex. B) are much broader.

Plaintiff should bear the cost of her failure to provide timely notice of these depositions—especially considering that these Defendants are not relevant to the core allegations of copyright infringement and fraud.

***Identifying versions of manuscripts at issue.*** Plaintiff has still not complied with the Court's September 16 Order requiring Plaintiff to "identify with specificity which manuscripts were infringed and provide metadata to Defendants" by October 14. (*See* ECF 67.) Instead, on October 14, Plaintiff produced 30 documents consisting of various manuscript versions with multiple different titles, as well as chapter outlines, plot points, character descriptions, and excerpts. The question of which specific manuscript is at issue is still unanswered, unlike in nearly all copyright infringement cases where the works at issue are identified in the pleadings and meritless cases can be dismissed before expensive discovery. Plaintiff's continued evasiveness on this issue will make both summary judgment and trial needlessly complicated, because it is difficult to compare the *Crave* series to as many as 30 different purported works in various stages of completion. The Court should order Plaintiff to immediately specify, at most, one version each of the manuscripts titled *Masqued* and *Blue Moon Rising*. If Plaintiff continues to refuse to do that, the Court should order that the version of the manuscript that Plaintiff requested that Kim send to Ms. Abrams in October 2013 (Bates KIM00157808-KIM00158250) is the only version at issue.

***Redactions.*** Defendants' counsel redacted portions of Defendants' text messages both for responsiveness and to shield certain highly sensitive personal information (including candid comments regarding the authors' minor children, conversations about mental health, and discussions of medical issues).[8] Defendants believe their approach is justified for several reasons. First, text messages are inherently different than business emails, with the former much more likely to contain irrelevant and sensitive personal information. *See, e.g.*, *Adv. Magnesium Alloys Corp. v. Dery*, 2022 WL 3139391, at *4 (S.D. Ind. Aug. 5, 2022) (permitting counsel producing texts to redact "communications that are purely personal in nature"). Defendants' texts were also harvested in a different format than their emails. Emails are discrete communications that either can be produced one by one or in short conversation chains, such that nonresponsive ones can be withheld rather than redacted. Defendants' text messages, by contrast, were harvested often as months or years' long conversations that ranged wildly from topic to topic over time, with potentially relevant business information interspersed with irrelevant and potentially sensitive personal information. Because Defendants could not slice and dice these long chains to withhold nonresponsive and highly sensitive content, they redacted them.[9]

In response to Plaintiff's complaints regarding these redactions, Defendants offered to either (1) provide high-level summaries of their redactions so that Plaintiff could understand what was redacted and gather context without seeing the content; or (2) allow Mr. Passin or his local counsel to review the unredacted threads in person at the CDAS office, but not make or take copies without Defendants' consent. Plaintiff has rejected both of these proposals and instead asks that Defendants submit their text messages to the Court for *in camera* review. (Letter at 4.) Defendants

---

[8] Plaintiff purports to have similarly redacted emails to shield sensitive personal information (*see* Letter at 4) and admitted in an email last night that he also "may have redacted a few items on the grounds of relevancy, but I have to check."

[9] As communicated herein, Plaintiff's litigation conduct has been troubling for many reasons, and Defendants are additionally concerned about misuse of their personal information should their texts be produced without redaction.

would submit to *in camera* review if the Court orders it but would not affirmatively seek to impose such a burden on the Court, particularly given the volume of material.[10]

Ultimately, however, this issue is a red herring. As is clear from the examples Plaintiff submitted to the Court via email (without conferring with Defendants on this), Defendants' counsel redacted completely unresponsive content that has nothing to do with the parties' claims and defenses. Whatever the solution to the parties' dispute over redactions, the milquetoast content that Plaintiff uncovered when looking for inconsistent redactions simply does not confirm Plaintiff's rank speculation that Defendants are hiding things. And it certainly is not a reason to extend discovery beyond the Court's very clear deadline.

***Plaintiff's text messages.*** Relatedly, Plaintiff has yet to produce Ms. Freeman's text messages and did not run search terms on them until November 18, nearly a month after the Court's October 21 document production deadline. On November 28, Mr. Passin stated in an email that there were a total of 448 hits, but that he was "told that none of the text messages are responsive" (it is unclear by whom). Plaintiff's texts should have been collected, reviewed, and produced before the Court's October 21 deadline. Moreover, Defendants have produced thousands of pages of their own text messages and do not find it credible that zero of the 448 hits from Ms. Freeman's texts were responsive. Here again, Plaintiff has been slow and uncooperative in discovery; at this late stage, Plaintiff should be ordered to simply produce the 448 text message hits.

***Plaintiff's digital documents.*** Mr. Passin has admitted that when collecting documents other than emails from Ms. Freeman's computers and other devices, he permitted his client to self-select relevant materials rather than running search terms on those repositories. In light of the Court's previous admonition to Plaintiff about self-collection, Plaintiff should be required to run the agreed-upon search terms on Ms. Freeman's computers and other devices.

***Privilege log and privileged communications.*** Plaintiff has withheld documents as privileged but has not provided a privilege log. Mr. Passin has unilaterally taken the position via email that Plaintiff does not need to provide a privilege log for communications after Ms. Freeman "purchased Crave on March 24, 2021." But the notion that all or most communications by Ms. Freeman from the moment she purchased a *Crave* book are likely to be privileged is nonsensical, and Defendants never agreed to Plaintiff's unilateral and legally unsupported cutoff. The Court should require Plaintiff to identify any documents withheld as privileged through February 7, 2022 on a privilege log that complies with Federal Rule 26 and Local Rule 26.2. Plaintiff has indicated that Ms. Freeman corresponded with other attorneys besides Mr. Passin whom she did not retain; these communications should be either produced or identified on the privilege log.

We thank the Court for its time and attention to this matter and look forward to discussing these issues and others raised by Plaintiff at a conference soon, ideally in person.[11]

---

[10] Roughly a half of the 1,071 text message documents Defendants produced contain some redactions.

[11] Among other issues, Defendants believe that they have sufficiently responded to Plaintiff's interrogatories regarding Defendants' revenues and expenses and have attached these responses as Ex. C in case it will be useful to discuss them. Defendants have additionally attached the written discovery requests Plaintiff recently propounded on November 23 (Ex. D) and 30 (Ex. E), in case needed for discussion. Among other issues, Defendants believe that Plaintiff's compound interrogatories with numerous subparts collectively exceed the 25-per-defendant limit and intend to object the new ones on this basis.

Respectfully submitted,

**COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP**

By: /s/ Nancy E. Wolff
Nancy E. Wolff
Benjamin S. Halperin
CeCe M. Cole
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
nwolff@cdas.com
bhalperin@cdas.com
ccole@cdas.com

*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan, and Universal City Studios LLC*

Cc: All counsel of record (via ECF)