# CSReeder, PC
TRIAL LAWYERS AND GENERAL COUNSEL

January 4, 2023

The Honorable Sarah Netburn
United States Magistrate Judge

    Re: *Lynne Freeman v. Tracy Deebs-Elkenaney et. al.*, Case No. 22 Civ 2435 (LLS) (SN)

Dear Judge Netburn:

    We represent Plaintiff Lynne Freeman in the above-referenced action. This letter is being submitted pursuant to the portion of Your Honor's Order of December 13, 2022—as modified by Your Order of December 17, 2022—requiring that Plaintiff describe the alleged infringement and explain how she currently intends to prove her case. We reserve our right to modify the below because discovery has not been completed and how Plaintiff's attorneys plan to prove Plaintiff's case constitutes attorney work product. Accordingly, nothing stated herein is intended to, nor shall it, constitute a waiver of the attorney work product doctrine.

## Nature of the Action

    This action involves the New York Times bestselling series, *Crave*, consisting of, at the time of the filing of the Complaint, the books entitled *Crave*, *Crush*, *Covet* and *Court* (the "Crave Book Series"). Plaintiff Lynne Freeman ("Freeman") is a writer and attorney. She is suing Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff ("Wolff") (the purported author of the Crave series), Emily Sylvan Kim ("Kim") and Prospect Agency, LLC ("Prospect") (Wolff's literary agent and Freeman's former literary agent), Entangled Publishing, LLC ("Entangled") (the publisher of the Crave Book Series), Holtzbrink Publishers, LLC d/b/a Macmillan ("Macmillan") (the distributor of the Crave Book Series), and Universal City Studios, LLC ("Universal") (a motion picture studio which entered into a contract to produce a motion picture based on the first book in the series). Crazy Maple Studio, Inc. ("Crazy Maple"), which made an interactive video based on Crave, was dismissed from the case without prejudice.

    Freeman's First Amended Complaint ("FAC") alleges, among other things, that Freeman hired Prospect and Kim to shop her unpublished manuscript, which at the time, was entitled Blue Moon Rising ("Freeman's Manuscript"). Freeman needed a literary agent because HarperCollins UK was considering publishing the Freeman Manuscript.

    Prospect and Kim were also the literary agents for Wolff. Kim, fraudulently and in breach of the fiduciary duty that she owed Freeman, gave copies of the various versions of the unpublished manuscripts and related notes and outlines written by Freeman ("Freeman Copyrighted Material") to Wolff, who Freeman is informed and believes are close personal friends, so that Wolff could copy the Freeman Copyrighted Material given to her by Kim, and write a series of young adult fantasy books that are substantially similar to Freeman's

| | |
|---|---|
| 11766 Wilshire Boulevard | PHONE  (310) 861-2470 |
| Suite 1470 | FAX  (310) 861-2476 |
| Los Angeles, California 90025 | EMAIL  mark@csrlawyers.com |
| | WEBSITE  www.markpassin.com |

Page 2

January 4, 2023

Copyrighted Material. Moreover, Freeman contends that Kim was instrumental in editing the books in the Crave Book Series.

Wolff copied Freeman's unpublished Copyrighted Material to write the Crave Book Series; Universal was licensed the rights to produce a motion picture based on the first book in the series entitled Crave, and Crazy Maple Studio, Inc. was licensed the right to make and exploit an interactive video game based on the same book, which it is currently selling.

## The Infringed and Infringing Works

On October 14, 2022, pursuant to a September 16, 2022, Order, we e-mailed to Defendants documents numbered LF 02648 to LF 09364, which consisted of the manuscripts and other materials copyrighted by Plaintiff ("Freeman Copyrighted Material") that she alleges in her FAC were infringed by various of the Defendants creating and exploiting the Crave Book Series. Specifically, the materials produced to Defendants were the deposit copies of the works relating to the four (4) Copyright Certificates of Registration obtained from the United States Copyright Office identified in paragraph 73 of the FAC, which are seventeen (17) versions of Plaintiff's unpublished manuscript consisting of over 5,500 pages and twelve (12) documents consisting of notes, outlines and other materials of over fifty (50) pages. Subsequently, at the request of Defendants, Plaintiff sent a Copyright Key to Defendants so that Defendants could easily match up each of the foregoing documents produced to the deposit copies listed in the Copyright certificates described in the FAC.  Moreover, there may be additional copyrighted manuscripts and notes added to the Freeman Copyrighted Material.[1]

---

[1] On October 14, 2022, when we e-mailed the Freeman Copyrighted Material to Defendants, we stated in the cover e-mail that "certain of Plaintiff's emails relevant to this action disappeared in or about 2015 and that she also may have lost some manuscripts due to two (2) computers being damaged by water.  Plaintiff was able to retrieve some of the emails from various individuals to whom she had sent copies of the e-mails. . .  Accordingly, we hereby reserve Plaintiff's right to move to amend the First Amended Complaint to add additional infringed manuscripts or other materials that are being produced by one or more of the Defendants that Plaintiff does not have in her possession or control."  We also told Your Honor at the last hearing that Plaintiff may have to add additional copyrighted material to the complaint after reviewing the documents produced by Plaintiffs. We have almost finished reviewing the manuscripts, notes, outlines and other materials produced by Defendants that Plaintiff sent to Defendant Kim and Prospect between approximately 2010 and 2014 to determine if any of them that Plaintiff no longer has within her possession and control were infringed by Defendants.  As soon as that review is completed, Plaintiff will immediately file expedited applications for copyright registrations for any newly discovered infringed material and we will draft a Second Amended Complaint adding, among possibly other things, the new Copyright Certificates. We will then meet and confer with Defendants regarding the proposed Second Amended Complaint.

| | | |
|---|---|---|
| 11766 Wilshire Boulevard | PHONE | (310) 861-2470 |
| Suite 1470 | FAX | (310) 861-2476 |
| Los Angeles, California 90025 | EMAIL | mark@csrlawyers.com |
| | WEBSITE | www.markpassin.com |

Page 3
January 4, 2023

Plaintiff alleges that Wolff copied various protected elements and language from each of the versions of Freeman's Manuscript and the various notes, outlines and other materials copyrighted by Freeman and used them in the four (4) books in the Crave Book Series. Defendants have questioned if plaintiff can state a copyright infringement claim based on the foregoing fact pattern. She can. *See Castle Rock Entm't v. Carol Publ'q, Inc.,* 150 F.3d 132, 138 (2nd Circuit 1998) (holding defendant committed copyright infringement by "copying 643 fragments from 84 individually copyrighted *Seinfeld* episodes").

### How does Plaintiff Currently Intend to Proof the Alleged Infringements

Second Circuit courts have endorsed two distinct types of copying when analyzing substantial similarity: "comprehensive nonliteral similarity" and "fragmented literal similarity." *Paramount Pictures Corp.* v. *Carol Publ'g Group*, 11 F. Supp. 2d 329, 333 (S.D.N.Y. 1989); *see also Twin Peaks Prods., Inc. v. Publications International, Ltd.*, 996 F.2d 1366, 1372 (2nd Cir. 1993) (citing 4 NIMMER ON COPYRIGHT §13.03[A][2]); *Best Cellars, Inc. v. Grape Finds at Dupont, Inc.,* 90 F. Supp. 2d 431, 460 (S.D.N.Y. 2000); and *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 537 (S.D.N.Y. 2008). Under these cases, "[c]omprehensive nonliteral similarity exists where the allegedly infringing work does not copy the original work word-for-word, but the 'fundamental essence or structure of [the original work] is duplicated in [the infringing work].'" *See, e.g., Best Cellars, Inc.* at 460; *and* 4 NIMMER ON COPYRIGHT §13.03[A][1]. To determine if comprehensive nonliteral similarity exists, the trier of fact examines factors such as similarities in plot, theme, dialogue, mood, setting, pace and sequence. *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d. Cir. 1986).

"By contrast, 'fragmented literal similarity exists where the defendant copies a portion of the plaintiff's work exactly or nearly exactly, without appropriating the work's overall essence or structure.'" *May v. Sony Music Entm't,* 339 F. Supp 3d. 169, 180 (S.D.N.Y. 2019). Fragmented similarity "focuses upon copying of direct quotations or close paraphrasing." *Castle Rock Entm't, Inc.* at 140. The approach is called fragmented literal similarity precisely because the similarity exists in discrete instances rather than throughout the works as a whole. *Best Cellars, Inc.* at 460. "[T]he law in the Second Circuit is clear, "the concept of similarity embraces not only global similarities in structure and sequence, but localized similarity in language." *Warner Bros*. at 537.

"In evaluating fragmented literal similarity, or localized similarity in language, the Court examines the copying of direct quotations or close paraphrasing of the original work." *Id*. "The mere fact that the defendant has paraphrased rather than literally copied will not preclude a finding of substantial similarity." *Id*. "Copyright 'cannot be limited literally to the text, else a plagiarist would escape by immaterial variations.'" *Id*. (citing *Nichols v. Universal Pictures Co.,* 45 F.2d 119, 121(2d Cir.930).

Plaintiff intends to prove at trial that Defendants committed both comprehensive nonliteral similarity and fragmented literal similarity. She will prove the former by

11766 Wilshire Boulevard
Suite 1470
Los Angeles, California 90025

PHONE (310) 861-2470
FAX (310) 861-2476
EMAIL mark@csrlawyers.com
WEBSITE www.markpassin.com

demonstrating that there is substantial similarity between the Freeman Copyrighted Material and the Crave Book Series in plot, theme, dialogue, mood, setting, pace and sequence. *See* FAC and the exhibits thereto. She will prove the later by demonstrating the huge amount of similarity in language between the Freeman Copyrighted Material and the Crave Book Series. *See* Exhibit 1 (submitted herewith). Exhibit 1, while not intended to be complete, contains over four hundred and fifty(450) examples of similarities in direct quotations or paraphrasing between Freeman's Copyrighted Material and the book Covet. Plaintiff had hoped to include with this letter similar exhibits for each of the books in the Crave Book Series but did not have enough time to do so.

Plaintiff will also show that Wolff used Freeman Copyrighted Material in her prior books. Specifically, Plaintiff intends to show at trial that Wolff gradually copied larger and larger amounts of Freeman Copyright Material in her prior books to test if she would get caught using the unauthorized material. Wolff used at least sixteen (16) phrases of Freeman Copyrighted Material in a book entitled *Deserving of Luke* published in April, 2011; twenty-two (22) phrases of *Freeman* Copyrighted Material in the book entitled *Hidden Embers* published in April, 2011; one-hundred (100) phrases of Freeman Copyrighted Material in the book entitled Tempest Rising published in May, 2011 and one-hundred and fifteen (115) phrases of Freeman Copyrighted Material in the book entitled *Tempest Unleashed* published in June, 2012. *See* Exhibit 2 (submitted herewith), containing examples of the foregoing from each of the aforementioned books. Once Wolff realized that she was getting away with the theft, she copied enough of Freeman's Copyrighted Material for the Crave Book Series to commit full-blown copyright infringement. The development of this overall scheme is one reason Plaintiff requires discovery relating to Wolff's other books, and why Defendants are opposing providing the information. Wolff's other books are also relevant to Defendants' defense that the similarity in language between the works is because books in the genre are formulaic.

Copyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying. *Castle Rock Entm't, Inc.* at 137. There are two main components of a *prima facie* case of infringement: "a plaintiff must first show that his work was actually copied . . . [and] then must show that the copying amounts to improper or unlawful appropriation" *Id*. Actual copying may be established "either by direct evidence of copying or by indirect evidence, including access to the copyrighted work, similarities that are probative of copying and expert testimony." Id. Probative rather than "substantial similarity" is the appropriate term in referring to plaintiff's initial burden of proving copying by indirect evidence. *Id.*

Plaintiff intends to prove actual copying (probative similarity) by showing that Wolff had access to Freeman's Copyrighted Material and using expert testimony to establish the similarity in language and other elements between Freeman's Copyrighted Material and the Crave Book Series. The expert testimony will also be used in support of Plaintiff's claims for

| | |
|---|---|
| 11766 Wilshire Boulevard | PHONE (310) 861-2470 |
| Suite 1470 | FAX (310) 861-2476 |
| Los Angeles, California 90025 | EMAIL mark@csrlawyers.com |
| | WEBSITE www.markpassin.com |

Page 5
January 4, 2023

Fraud and Deceit, Breach of Fiduciary Duty, Fraudulent Concealment and Breach of Contract alleged against Prospect and Kim. Each of those claims are based on Prospect and Kim providing the Freeman Copyright Material to Wolff and possibly others for the purpose of committing copyright infringement.

While the Second Circuit does not typically permit expert testimony on the issue of whether literary works are substantially similar (i.e., whether there has been an unlawful appropriation or illicit copying), Plaintiff contends that expert testimony on that issue should be allowed in this case. The Second Circuit and the district courts in the Circuit have permitted experts to testify on the issue in "technical areas" such as comparison of musical compositions, computer software or computer programing code. *See Mowry v. Viacom International*, Case No. Civ.3090(AJP), 2005 WL 1793773, *10 (S.D.N.Y. 2005); and *Computer Associates International, Inc. v. Altai, Inc.* 982 F.2d 693 (2nd Cir. 1992). The rationale for allowing experts in those types of cases is that it is too complicated for a lay observer to do the analysis. *Id*. at 713. Nonetheless, courts in the Circuit have allowed expert testimony on the issue in some literary infringement cases. *See Price v. Fox Entertainment Group, Inc.*, 499 F.Supp.2d 382, 389 (S.D.N.Y. 2007); and *Walker* at 53 (the bar against expert testimony on the substantial similarity issue should not be "taken literally"). Moreover, at least one court has held, that it was not an error to consider an expert report at the summary judgment phase on the issue of whether any reasonable jury could find the works substantially similar. *See Currin v. Arista Records*, 724 F.Supp.2d 286, 291 (D. Conn. 2010).

Plaintiff contends that experts should be allowed in this case on both the issues of probative and substantial similarity because it is too complicated for a lay observer in this case to determine if the works are substantially similar. Without expert testimony, the jury would have to read over 5,550 pages of Plaintiff's Copyrighted Material and then compare it to Wolff's four (4) books consisting of over 2,600 pages. This would be an extremely complicated, if not impossible, task for the jury, and would be overly time-consuming. The general rule of not permitting expert testimony in literary infringement cases on the issue of substantial similarity may work when the trier of fact is comparing one book to another book by doing a side-by-side comparison. However, it likely does not work here, because there is too much material involved and the works do not lend themselves to a side-by side comparison. Here, Wolff did not appropriate all the infringing material from one version of Plaintiff's manuscript. Rather, Wolff appropriated material and language from *numerous versions* of Plaintiff's manuscripts and other materials.

The general rule also does not neatly lend itself to a fragmented literal similarity analysis. It would be impossible for the jury to review the over 8,000 pages of material and determine the amount of language in common (which is literally hundreds of phrases) between Freeman's Copyrighted Material and the Crave Book Series. That type of analysis lends itself to the testimony of an expert who can testify to the exact number of direct

11766 Wilshire Boulevard  
Suite 1470  
Los Angeles, California 90025  

PHONE (310) 861-2470  
FAX (310) 861-2476  
EMAIL mark@csrlawyers.com  
WEBSITE www.markpassin.com

quotations or paraphrasing that the works have in common and the probability that the amount of such similarities was a result of copying.

Respectfully submitted,

**CSReeder, PC**

_____
Mark D. Passin
11766 Wilshire Boulevard,
Suite 1470
Los Angeles, CA 90025
310-861-2475

**REITLER KAILAS & ROSENBLATT LLP**
Paul V. LiCalsi
885 Third Avenue, Ste 20th Floor
New York, NY 10022
212-209-3090
plicalsi@reitlerlaw.com
*Attorneys for Plaintiff* Freeman

cc: All counsel of record (via ECF)

| | |
|---|---|
| 11766 Wilshire Boulevard | PHONE (310) 861-2470 |
| Suite 1470 | FAX (310) 861-2476 |
| Los Angeles, California 90025 | EMAIL mark@csrlawyers.com |
| | WEBSITE www.markpassin.com |