```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                        Docket #22cv2435
 FREEMAN,                           : 1-22-cv-02435-LLS-SN

                   Plaintiff,       :

   - against -                      :

 DEEBS-ELKENANEY, et al.,           : New York, New York
                                      July 20, 2022
                   Defendants.       :

------------------------------------ : Telephone Conference

                   PROCEEDINGS BEFORE
               THE HONORABLE SARAH NETBURN,
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          CSREEDER, PC
                        BY:  MARK PASSIN, ESQ.
                        11766 Wilshire Boulevard, Suite 1470
                        Los Angeles, California 90025


For Defendants -        COWAN, DEBAETS, ABRAHAMS &
Entangled Publishing,   SHEPPARD LLP
LLC, Universal Studios  BY:  NANCY WOLFF, ESQ.
LLC, Holtzbrinck             CECE COLE, ESQ.
Publishers, LLC, Tracy  41 Madison Avenue, 38th Floor
Wolff and Deebs-        New York, New York 10010
Elkenaney:




Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com


Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service.
```

APPEARANCES (Continued):

```
For Defendants  Emily Sylvan    KLARIS LAW, PLLC
Kim and Prospect Agency, LLC:   BY:  LANCE H. KOONCE, ESQ.
                                     ZACHARY PRESS, ESQ.
                                29 Little West 12th Street
                                New York, New York 10010


For Defendant Crazy Maple       PROCOPIO, CORY, HARGREAVES
Studio, Inc.:                   & SAVITCH LLP
                                BY:  ERIC PLOURDE, ESQ.
                                525 B Street, Suite 2200
                                San Diego, California 92101
```

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---|---|---|---|---|---|
| None | | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

1

2

```
 1                        PROCEEDINGS                    4
 2              HONORABLE SARAH NETBURN (THE COURT):  Good
 3   afternoon, everybody, this case is Freeman versus
 4   Deebs-Elkenaney, the docket number is 22cv2435.  May I
 5   ask counsel for the plaintiff to state his appearance.
 6              MR. MARK PASSIN:  Good afternoon, Your Honor,
 7   Mark Passin for plaintiff, Lynne Freeman.
 8              THE COURT:  Thank you.  And on behalf of
 9   defendants Deebs-Elkenaney and Entangled Publishing,
10   Universal City Studios, Holtzbrinck Publishers.
11              MS. NANCY WOLFF:  This is Nancy Wolff from
12   Cowan, DeBaets, Abrahams & Sheppard for Entangled,
13   Holtzbrinck and Universal City Studios and Tracy
14   Wolff.
15              THE COURT:  Thank you, my appearance sheet is
16   a little bit --
17              MS. WOLFF:  My associate, CeCe Cole is in the
18   room with me here as well.
19              THE COURT:  Okay, thank you. And who do we
20   have here on behalf of Crazy Maple Studio?
21              MR. ERIC PLOURDE:  Good afternoon, Your Honor,
22   this is Eric Plourde from the Procopio firm appearing
23   for Crazy Maple Studio.
24              THE COURT:  Thank you. And who are the
25   remaining defendants I haven't called?
```

```
 1                    PROCEEDINGS                    5

 2          MR. LANCE KOONCE:  Your Honor, this is Lance

 3   Koonce with Klaris Law for Emily Sylvan Kim and

 4   Prospect Agency, LLC, and I believe our associate Zach

 5   Press is on the line as well.

 6          THE COURT:  Great. Before we begin, I just

 7   wanted to mention that I know Ed Klaris who is the

 8   namesake of Klaris Law. I obviously have not spoken to

 9   him about this case, I just noticed that when I was

10   preparing for today's conference and I certainly would

11   not speak to him, and I don't know when the next time

12   is that I would actually even see him.  But I did want

13   to mention that, if anyone thought that that created

14   the appearance of impropriety I'm happy to have the

15   case reassigned to another judge. I personally don't

16   think it does but I'm happy, I want everyone know that

17   and if (indiscernible) more comfortable I'm happy to

18   have the case reassigned.  Maybe I'll ask Mr. Passin

19   who might be the most interested?

20          MR. PASSIN:  I have no problem, but I would

21   like to run it by my client, but I assume she'd have

22   no problem. For today it's fine, Your Honor, but I

23   don't expect it to be a problem.

24          THE COURT:  Okay, I'm intending to rule on the

25   issue before us today, would you rather that I wait
```

PROCEEDINGS                    6

1

2  until you --

3          MR. PASSIN:  No, no, that's fine, like I said,

4  I don't expect it to be a problem but I do want to

5  mention it to my client. So you can, we waive any

6  rights, you can definitely rule today, that's fine.

7          THE COURT:  Okay, anybody else?

8          MR. KOONCE:  Your Honor, this is Lance Koonce

9  again though with Klaris Law Firm, and I should also

10  mention that we are, I have a different case in which

11  we have conflict counsel in the case with Mr. Cuti's,

12  John Cuti's firm. I don't think that also creates a

13  conflict, I just wanted to put that on the record,

14  too.

15          THE COURT:  Sure, John Cuti, for those not in

16  the know, is my husband, so I have no idea what that

17  matter is and I'm unaware of the case and certainly

18  won't ask my husband about it.  But I didn't even know

19  about that issue so I'll now poll everybody again, now

20  knowing that second potential issue which, as I

21  understand it, is that, I was going to say whether my

22  husband was serving as conflict counsel or Klaris Law

23  was serving as conflict counsel on his matter, but it

24  sounds like there is some relationship between the

25  firm and my husband's law firm.  Mr. Passin, again --

```
 1                         PROCEEDINGS                    7

 2              MR. PASSIN:  Again, I waive it for today, I

 3    don't have any problem, I don't think it will be a

 4    problem with my client, but I do feel she's a lawyer

 5    and I just want to mention it to her.

 6              THE COURT:  Fair enough, anybody else with to

 7    be heard on that issue?

 8              MS. WOLFF:  No, Your Honor, we don't have any

 9    issues.

10              THE COURT:  Okay.

11              MR. PLOURDE:  No, Your Honor.

12              THE COURT:  All right, thank you. So with that

13    housekeeping matter resolved, I want to talk about

14    this issue. I have the July 12th letter raising the

15    concerns about the protective order. I understand that

16    all of the defendants now believe that an attorneys' eyes

17    only provision is necessary and, if so, that that provision

18    should permit in-house counsel for the corporate defendants

19    to review AEO material but that the plaintiff,

20    notwithstanding her JD, notwithstanding the fact that she's

21    a lawyer, would not be able to serve reciprocal relief,

22    meaning she would not be entitled to review those attorneys'

23    eyes only documents.

24              So before we talk about sort of parity, I'd like

25    to hear from the defendants why they believe this type of
```

```
 1                        PROCEEDINGS                       8
 2   provision is necessary. I will share with you that in my
 3   experience people spend a lot of time fighting over
 4   protective orders but not a lot of time actually having
 5   relevant litigation once the protective order is entered, so
 6   I'm a little concerned that there's a dispute that's being
 7   had but doesn't really serve any particular purpose or need.
 8   I'm also concerned that AEO just complicates the production.
 9   And third, it's not clear to me based at least on the
10   letters that I've reviewed what the, what type of material
11   is likely to be sought and produced that the defendants
12   think cannot be shown to the plaintiff.
13             I don't know who on the defense side is going to
14   take the lead on this issue.
15             MS. WOLFF:  Well this is Nancy Wolff, I can start.
16   We included an attorneys' eyes only, we're at the very
17   beginning of discovery, we have, we're representing at this
18   time because of indemnifications four different
19   parties. Two of them are very large companies. We
20   don't know, you know, what documents will be produced
21   yet.  We have a very restrictive attorneys' eyes only
22   provision which has a lot of safeguards to make sure
23   that it would not be used unnecessarily but my clients
24   feel that they should at least have the option in the
25   event there is some few documents that might qualify.
```

1                          PROCEEDINGS                    9

2  We, of course, don't intend to rubberstamp anything

3  attorneys' eyes only and even the way we drafted the

4  provision there is it is just the party would have to

5  have a good faith belief that it was highly

6  confidential or highly sensitive and it would have to

7  have an effect on business or commercial strategies,

8  (indiscernible) et cetera.  There is an entire process

9  in here if one other party disputes if something

10 should be designated that way but, you know, this is,

11 these companies have, you know, we have a major book

12 distributor as well as a motion picture company, there

13 could be some very sensitive viewpoints, we don't know

14 yet. There could also be some unpublished very

15 sensitive material of a, you know, we just don't know.

16         We are starting to gather documents, we're

17 just starting to do document production, but I have

18 generally agreed when I've done other protective

19 orders in other cases, particularly involving

20 copyright and different companies, that there could be

21 this second level for highly sensitive information and

22 it's really there, you know, just in the even there is

23 something that is highly sensitive.

24         So the way we crafted it, it's very limited and,

25 you know, we're very cognizant that most documents will

```
 1                    PROCEEDINGS              10
 2  be confidential but we don't, you know, we haven't
 3  seen everything and there may be some very limited
 4  documents that should be attorneys' eyes only.
 5           THE COURT:  Is your concern showing one
 6  client's documents to another client all on the same
 7  side of the V, meaning one defendant showing another
 8  defendant documents?
 9           MS. WOLFF:  No.  No, it would really be
10  information that's delicate, that perhaps the
11  plaintiffs personally would not need to see, and it
12  could be detrimental.
13           THE COURT:  I'm not sure I follow. I could
14  understand why you might be concerned with various
15  publishing houses, for instance, that compete with
16  each other, that are all defendants right now, that as
17  between those defendants maybe you feel like there is trade
18  secrets or other sort of business strategy that you wouldn't
19  want your competitors to see. I would understand that
20  potentially, and that's the purpose for which attorneys'
21  eyes only is generally created.  You know, if you have
22  documents that are sensitive that you just think are sort of
23  sensitive for whatever reason, that's why we have a
24  protective order. And so what I'm trying to figure out is
25  what documents do you think are going to be sought and
```

1                              PROCEEDINGS                    11

2  produced that are, that would have a detrimental business

3  effect not if the public saw it, but if the plaintiff saw

4  it.  And that's when you need attorneys' eyes only, and I'm

5  not sure I see where that would come out here.

6            MR. PLOURDE:  Your Honor, this is, I'm sorry to

7  interrupt, Nancy, this is Eric Plourde for Crazy

8  Maple. So, first, I would like to respond directly to

9  your last question but very briefly I would just note

10  that for our client this is of increased concern only

11  because we were named as a defendant a little bit

12  later.  So all of the caveats about we're early in the

13  process, we're just getting our arms around the

14  documents that apply to all of the defendants, apply

15  with much greater force to our client who it's been,

16  frankly, a little bit of a whirlwind. I think there as a

17  four month discovery deadline proposed before we had even

18  been served. We discovered the existence of this lawsuit

19  independently. And so, you know, we're really trying to make

20  sure that we're not waiving any rights.

21            And on the specific question about sharing

22  documents with the other defendants, that is a concern for

23  our client.  You know, for example, we have a licensing

24  agreement with one of the other defendants, Entangled, that

25  relates to this case, that was disclosed in our initial

1                          PROCEEDINGS              12

2   disclosures a few days ago. And we have some concerns about

3   the idea that, you know, we're negotiating with another

4   party, you know, obviously working together but

5   counterparties to contracts and now we are talking about

6   disclosing some potentially very sensitive information about

7   how we are going about calculating whatever it may be,

8   profits, financial information.  There are also concerns

9   which relate both to the other defendants and to the

10  plaintiff about the various scripts for the game that's at

11  issue that our client produces. And so --

12          THE COURT:  For the various what, sorry, I didn't

13  hear you?

14          MR. PLOURDE:  Scripts. So our client produces a

15  video game and is alleged to have infringed on copyright for

16  this book by producing a story as part of that video game

17  that is similar to that book, and so there could be script

18  related to writing for that game that is highly sensitive to

19  our client as well. I think those are the two categories,

20  the scripts and the financial information.

21          And so I just want to jump in because the concern

22  regarding sharing between defendants is sort of a big factor

23  to Crazy Maple and we're a little newer on the scene here,

24  so.

25          THE COURT:  Okay, again, I sort of understand both

```
 1                        PROCEEDINGS              13
```

 2   the concern about different corporate defendants, and

 3   that might include financial records potentially. I

 4   don't know why scripts, for instance, would have to be

 5   attorneys' eyes only.  I don't know how the plaintiff

 6   should be expected to prosecute her claims if she

 7   can't review other infringing materials that you might

 8   produce in this litigation. So I don't see why the

 9   plaintiff needs to be shielded from those types of,

10   that type of information.

11           Again, nobody is disputing a protective order,

12   so nobody is going to publish any of these materials

13   in *The New York Times*, the question is whether or not

14   you need to impose what I think we can all agree makes

15   litigation much more burdensome and complicated and

16   difficult for the parties to actually understand

17   what's going on if there isn't a real need for it.

18           MR. PLOURDE:  I understand, Your Honor.  I

19   would also add I, you know, I feel a little bit, you

20   know, we have a little bit of a sort of trifecta of

21   arguments going on here that I think is causing a

22   little bit of this stalemate because, for example,

23   from our client's perspective we wanted the attorneys'

24   eyes only provision and I believe that the plaintiff's

25   counsel originally took issue with an AEO provision

```
 1                         PROCEEDINGS                14

 2    that allowed documents to be shared with in-house

 3    counsel which is a provision that our client has no

 4    issue getting rid of. I think some of the other

 5    defendants want to maintain that if there is an

 6    attorneys' eyes only provision it can be shared with

 7    in-house counsel but the plaintiff for I believe the

 8    sake of parity has said, well, if that's the case then

 9    my client should have the ability to see those

10    documents as well.

11              So going back to the issue of this being

12    fairly early in the case, particularly for my client,

13    it seems as though there is some recognition that AEO

14    could be justified, and I agree with the other

15    defendants, it's possible we may not even use the category,

16    but it seems awfully prejudicial at least to me that we

17    would waive the ability to be able to do that at any point

18    in discovery essentially because one of our co-defendants

19    who, you know, we've been meeting and conferring on these

20    issues but their position is that they need to show these to

21    in-house counsel. I think our position would be that the

22    category should not be eliminated wholesale but that there

23    should be some kind of ruling that resolves the parity issue

24    that plaintiff's counsel has raised.

25              THE COURT:  And so what's your proposal?
```

```
1              PROCEEDINGS                15
```

2           MS. WOLFF:  Your Honor, this is Nancy Wolff

3  again, I just wanted to comment on your issue of, you

4  know, what may be, I mean, in my experience and I've

5  almost had no protective orders without an attorneys'

6  eyes only, it's used very rarely and has never

7  interfered with any party being able to prosecute

8  their case.  The plaintiff is a writer and there could

9  be perhaps some limited issues involving our clients'

10 trade practices that she shouldn't see that would not

11 have anything to do with the merits of the case,

12 because in discovery a lot of documents get scooped up

13 that aren't exactly pointed to the merits of the case,

14 we just don't know that.  (indiscernible) the

15 documents that (indiscernible) received are very long,

16 there's many, many documents requested and it will

17 take some time to really go through them.  And that's

18 why we made a very sort of strict attorneys' eyes

19 where it would have to comply with the categories that

20 we laid out and it would, it would be very limited.

21 You know, if the only issue is the in-house counsel we

22 can discuss that but none of the defendants wanted to

23 waive the right in limited cases to have this extra level

24 and frankly I've never had anyone every complain about it

25 before in a case in the Southern District.  It's just, it's

1                    PROCEEDINGS                16

2  there for the rare circumstances where you need it but you

3  don't know when you're starting out if you're going to need

4  it.

5           THE COURT:  I'm looking at your definition and it

6  would be any item that has a significant effect on current

7  or future business or commercial strategies or decisions or,

8  two, product, plans or development. And I would imagine that

9  this entire case has to do with product, plans or

10 development.

11          MS. WOLFF:  It's actually not, it really has to do

12 whether two works are substantially similar that have

13 already been published.

14          THE COURT:  Well wouldn't that necessarily

15 involve investigating how the second work was

16 developed?

17          MS. WOLFF:  Well that would be, I don't --

18 that's the creation of a work, not the development,

19 and we would not designate it, we have not, we do not

20 plan to designate documents that deal with the

21 creation of the work as attorneys' eyes only.  And

22 we've already discussed with the plaintiff how we have

23 those documents, how these works were all

24 independently created.

25          THE COURT:  Would you consent if I were to

1                          PROCEEDINGS                    17

2  authorize the attorneys' eyes only provision, to

3  language that made clear that it could not be used to

4  designate anything concerning the works at issue?

5          MS. WOLFF:  No, that's too broad, designate to

6  the creation of the works at issue, because that's the

7  only relevance to the copyright is whether the author,

8  Tracy, used this underlying manuscript for her "Crave"

9  series.

10          THE COURT:  Let me hear from Mr. --

11          MS. WOLFF:  There could be some, you know,

12  marketing, there could be some, you know, we just

13  don't know what documents are going to, you know, turn

14  up. But really the heart of this entire case is

15  whether the two, if you put these two works side by

16  side, whether they're substantially similar.

17          THE COURT:  Mr. Passin, do you want to weigh

18  in on some of these issues --

19          MR. PASSIN:  I absolutely do, Your Honor.

20  First of all, I want to point out that, you know, I've

21  practiced law for 40 years and I've always had a

22  problem with attorneys' eyes only clause.  My

23  experience has been that they're abused and it

24  prevents me from properly advising my clients.  In my

25  opinion an attorney should not hold any secrets from

1                           PROCEEDINGS                    18

2    their clients, all right, and I have to tell you I

3    served my first set of document requests back in I

4    think June the 7th.  So it's been over a month, I don't

5    have a single -- I served it on everyone other than

6    Crazy Maple because they were new and I don't have a

7    single document. I asked Ms. Wolff, you know, why

8    don't I have any documents, she said all the documents

9    are, every single document is confidential, okay. So I

10   already know someone that says that I think it's hard

11   to believe that every single document is confidential,

12   all right.

13           There are a few types of cases where it's

14   justified to have an attorneys' eyes only clause,

15   that's a trade secrets case.  But this is primarily a

16   copyright case and I don't know if Your Honor looked

17   at the joint letter that was sent to Judge Torres

18   dated July 8th, but you can see in that joint letter

19   what the defendants plan on doing. If you look at footnote

20   1 which I will read to you because you may not have it,

21   it says, and this is the section drafted by the

22   defendants, "It also is irrelevant that plaintiff is not a

23   competitor of the defendants and plaintiff's position

24   ignores the possibility that certain defendants may not want

25   other defendants to have access to specific documents,

```
 1                        PROCEEDINGS              19
 2    including but not limited to documents relating to royalties
 3    and commissions."
 4            Well, Your Honor, so they intend on marking as
 5    AEO documents relating to royalties and commissions.
 6    Now, as we all know, damages in copyright include
 7    disgorgement of profits and commissions, and if those
 8    are stamped AEO I might as well notify my malpractice
 9    carrier now because I can't properly advise my client
10    on how to proceed in the case because of its value or
11    how to settle the case.
12            Moreover, I think there should be no
13    attorneys' eyes only and my -- and, by the way, the
14    stipulation that I proposed has a clause in it that
15    allows the parties if they think something should be
16    stamped attorneys' eyes only to confer with counsel
17    and then if there's a dispute to go to Your Honor. Now
18    if despite all this you're still going to want an
19    attorneys' eyes only clause, my client is an attorney
20    and I have to tell Your Honor I treat her as an in-
21    house counsel. Because she's an attorney I talk to her
22    far more than I talk to any other client. I talk to
23    her numerous times daily and I don't do almost
24    anything in this case without running it by her and
25    having her review documents because she is an
```

```
 1                        PROCEEDINGS                  20

 2   attorney.

 3           So I suggest that my stipulation that has not

 4   attorneys' eyes only provision in it is a good

 5   compromise and so we should either have one without an

 6   attorneys' eyes only category at all, but if do then

 7   my client should have access to them.  And I'd like to

 8   get this resolved so I can get some documents, we only

 9   have a 40 day window, excuse me, a 4 month window,

10   it's 3 or 4, I don't remember, to collect discovery

11   and, like I said, I served those over a month ago and

12   I still don't have a single document.

13           MR. PLOURDE:  Your Honor, may I briefly be

14   heard on that?

15           THE COURT:  Who is this?

16           MR. PLOURDE:  Eric Plourde for Crazy Maple.

17           MR. PASSIN:  Eric, by the way, I pointed out

18   that you were not included, I didn't serve you.

19           MR. PLOURDE:  Absolutely. And I just briefly,

20   Mr. Passin can make his argument, I just want to note

21   that, Your Honor, I just want to make sure that our

22   client is not being prejudiced by some of the other

23   activity that may have happened. We just got document

24   requests a few days ago, we're still, you know, we're

25   sort of behind in the process.
```

```
1                    PROCEEDINGS                21

2              I will say, and I can't speak for the other

3    defendants, but just from my client's perspective, we are

4    okay with some kind of compromise, whether it's eliminating

5    the in-house counsel language, whether it is a meet and

6    confer requirement before designating the documents AEO.

7    All I'm concerned about is having something where I

8    can give my client the confidence that if something

9    important comes up, that we have recourse within the

10   existence of the protective order. I think that's very

11   important, at least for my client, I think the other

12   defendants agree, but I just mention it because, again,

13   we're a little newer on the case, so.

14              MS. WOLFF:  Your Honor --

15              MR. KOONCE:  Your Honor --

16              MS. WOLFF:  Oh, I'm sorry, I thought you were

17   done, apologize.

18              MR. KOONCE:  Oh, this was actually Lance

19   Koonce, Nancy.  Your Honor, generally, I just wanted

20   to just for the record to say that we are, our

21   clients, my client here is a small literary agency and

22   the principal of the agency was also named

23   individually. They don't have in-house counsel so that

24   aspect of the protective order is not really at issue

25   for my client. I would reiterate, I think we're along
```

PROCEEDINGS                    22

the same lines as counsel for Crazy Maple.  We are

most concerned with the ability to mark the occasional

document that we find that is highly sensitive and in

a narrow sense of what highly sensitive is. My

thinking has been that that would likely be limited to

very sensitive financial documents and especially

forward looking at materials that would disclose in any

way, you know, what the agency is doing with, either with

its other authors or what it might do, what it might do in

the future, what it's making on, in royalties. So that

might be something that they would consider attorneys'

eyes only.

         Obviously, if counsel for plaintiff at some

point needs to, after seeing all the documents that are

produced, if some of those, if anything has been

marked attorneys' eyes only that's financial

information that he needs to discuss at some level

with his client, there are provisions for, you know,

for addressing the attorneys' eyes only designation

that can be addressed.

         But I, I think we would also be comfortable

with an attorneys' eyes only provision that was, you

know, that was fairly narrowly tailored and did not

include, you know, to the extent the language that was

PROCEEDINGS                    23

1

2   proposed would have included things like the

3   development of, you know, the creation of a work, I

4   don't think we would anticipate marking anything, at

5   least from the agency side, as attorneys' eyes only.

6   So if it needed clarification around that type of

7   language I think we'd be amenable to that.

8           THE COURT:  Thank you.

9           MS. WOLFF:  Your Honor, this is Nancy Wolff.

10  I just wanted to add that if we did designate

11  something attorneys' eyes only and the plaintiff

12  objects, we have a meet and confer already in this

13  agreement as well as if we can't resolve it, you know,

14  to seek guidance from the magistrate.

15          And in terms of documents, document responses

16  were only due last week, we completed all of them, and

17  I would like to note that we have yet to receive from

18  the plaintiff any of the manuscripts at all that the

19  plaintiff believes were used in the creation of these

20  books. And they were filed with the Copyright Office

21  months and months ago so they're not confidential,

22  they're public, and we don't even have access to those

23  which is --

24          MR. PASSIN:  Your Honor, may I -- I'm sorry.

25          THE COURT:  All right, everyone needs to

1                          PROCEEDINGS                    24

2   remember that having phone calls at this stage in the

3   pandemic is more of a privilege than a public health

4   requirement, and so if parties keep speaking over one

5   another or don't announce who's speaking then we'll

6   just move to an in court conference.  So I need people

7   to be more respectful of one another.  So, Ms. Wolff,

8   I don't know if you're done speaking?

9            MS. WOLFF:  Yes, thank you.

10           THE COURT:  Okay.

11           MR. PASSIN:  Your Honor, may I be heard, it's

12  Mark Passin.

13           THE COURT:  Yes.

14           MR. PASSIN:  In conclusion, I just wanted to

15  add that I believe there should be no attorneys' eyes

16  only provision.  If there is one it should allow

17  counsel, including my client, to see it and, by the

18  way, that resolves the problem with co-defendants not

19  wanting everyone to see their works.  And if, despite

20  my urging, there is an attorneys' eyes only provision,

21  it should exclude any of the works or any financial

22  information.  Because, again, I'm hearing people talk

23  about royalties and financial information, I have to

24  be able to disclose to my client all money that's

25  earned by each one of the defendants so I can advise her

1                               PROCEEDINGS                    25

2 regarding how to proceed and about any settlement.

3         THE COURT:  Okay, thank you, everybody.  You know,

4 as I said from the outset, in my experience attorneys' eyes

5 only provisions A) make things much more complicated than

6 they're usually worth, and B) are really appropriate when

7 there are sort of competitor issues and heightened

8 sensitivity about businesspeople that are adverse to one

9 another in a litigation using the litigation as an

10 opportunity to get tactical advantages. And that's just not

11 what's happening in this case.  Everything that the

12 defendants have referenced just seems like things that they

13 want super confidentiality on but not that they need them to

14 be protected.

15         And so based on everything I've heard here I don't

16 think there is a basis or a need for an AEO provision. I

17 think it will make things unnecessarily complicate and,

18 again, it's not intended to be a supersized confidentiality

19 provision, it's intended when there are other interests than

20 the litigation interests that could potentially be

21 implicated and that's just not the case here.  You know, so

22 the extent it is the case, vis-à-vis defendant, maybe there

23 does need to be a provision as far as sharing of documents

24 from one corporate defendant to another.  Nobody really has

25 mentioned that as a particular problem, potentially Crazy

1               PROCEEDINGS                    26

2  Maple referenced something.

3          And so if the parties want to go back to the

4  drawing board and come up with provisions that protect other

5  defendants from one another because they're in a

6  competitive stance and they don't want to share their

7  own strategic thinking and business thinking, I would

8  understand that.  And potentially the way to resolve

9  that desire is to have an attorneys' eyes only

10 provision but to deem the plaintiff an attorney as her

11 own in-house counsel, as plaintiff's counsel

12 represents. And that may be a way for the defendants

13 vis-à-vis other defendants to have some protection from

14 strategic disclosures.  But vis-à-vis the plaintiff, I

15 haven't heard anything thus far that makes me think that the

16 burdens of having an AEO provision are outweighed or, excuse

17 me, outweigh any benefits.  So the application is denied.

18          MR. PLOURDE:  Your Honor, may I be heard

19 briefly, this is Eric Poured?

20          THE COURT:  Sure.

21          MR. PLOURDE:  There is, I just went back to

22 check my notes and if that's Your Honor's finding I

23 understand, there's one category of very particular

24 information that, frankly, I actually don't even think

25 is relevant in the case or I don't anticipate even

1 PROCEEDINGS 27

2 being requested to provide it, but it is something

3 that my client noted as being highly, highly sensitive

4 to their business which is source code for their game.

5 Again, I, you know, I look at this category as I can't

6 contemplate a way that it's necessarily relevant to

7 the case, however, if we go through the exercise, and

8 I don't think it's been requested but if it is, if we

9 object, if we end up producing it, that is I think

10 just one particular category I would ask that the

11 Court allow Crazy Maple to designate attorneys' eyes

12 only including keeping it from the plaintiff, just

13 given the highly sensitive nature of that source code.

14          THE COURT:  Understood. So I think the better

15 way to proceed, rather than creating this provision

16 which I think is unnecessary in this case writ large,

17 and then having everybody try and pigeonhole their

18 document into it, is let's just wait and see what the

19 discovery requests are and what is produced. If, and

20 it sounds like it hasn't come up yet, your coding is

21 requested and you believe the rules require you to

22 produce it but you want more confidentiality, you

23 should just meet and confer with the a stipulation

24 related to that production or if you can't reach

25 agreement you can bring it to my attention. And that

```
1                          PROCEEDINGS              28
```

2  goes for any other category of documents that the

3  defendants really feel like will create a, you know, are

4  being used for tactical reasons, not litigation reasons and

5  can potentially, you know, seriously affect people's

6  business.  But I am not going to allow an AEO provision to

7  be used in the way it seems to be discussed with me today,

8  which is just a supersized confidentiality provision.

9          So the parties should meet and confer, it sounds

10 like there are two options I'm presenting to you, either

11 there's no AEO provision or to address the concerns of sort

12 of inter-defendant production, there is an AEO provision but

13 the plaintiff, herself, as a lawyer is entitled to review

14 those documents. And I'll just ask that the parties submit

15 to me for my signature a proposed protective order by next

16 Monday.

17         Otherwise, I know that Judge Torres set a case

18 management plan in this case and thereafter referred the

19 case to me.  So going forward all discovery matters will be

20 in my court.  So if you have discovery issues after a meet

21 and confer, you should file those with me.

22         In addition, if there is any interest in talking

23 about settlement I'm happy to get engaged. I will warn you

24 that my calendar fills up very quickly, and so right now I'm

25 scheduling settlement conferences for early October. So

PROCEEDINGS                    29

1

2  if you think you want to have a settlement conference

3  with me, it would be in your interest to get that on

4  my calendar as soon as possible, even if closer to the

5  date you realize it's not going to be productive and

6  you want to cancel it I'm happy to get a day back, but

7  it's very hard for me to squeeze people in last minute

8  and I'm not going to move litigation deadlines to

9  accommodate late requests. So just keep that in mind

10 and if you do want to schedule a conference you can

11 just email my courtroom deputy.

12         Alternatively, if you want to have supervised

13 settlement discussions before I'm available, I can

14 also refer you to our mediation program. And I can

15 even make a request for someone who might have some IP

16 expertise that might be appropriate for a case like

17 this.  So I'll just leave that for the parties to

18 contact us.

19         MR. PASSIN:  Thank you very much, Your Honor.

20         THE COURT:  Okay, anything further from the

21 plaintiff?

22         MR. PASSIN:  No, thank you very much, Your

23 Honor.

24         THE COURT:  All right, anything further from

25 any of the defendants?

1                          PROCEEDINGS                    30

2              MR. KOONCE:  No, thank you, Your Honor.

3              MR. PLOURDE:  Thank you, Your Honor.  No, Your

4    Honor.

5              MS. WOLFF:  No, Your Honor, thank you.

6              THE COURT:  Thank you, everybody, we're

7    adjourned.

8                   (Whereupon the matter is adjourned.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

31

C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the United States District Court, Southern District of New York, Freeman versus Deebs-Elkenaney, et al., Docket #22cv2435, was prepared using PC-based transcription software and is a true and accurate record of the proceedings.

Signature_____
                    Carole Ludwig
Date:  January 17, 2023