# EXHIBIT 8



COWAN,
DEBAETS,
ABRAHAMS &
SHEPPARD LLP

41 MADISON AVENUE
NEW YORK, NY 10010
T: 212 974 7474
WWW.CDAS.COM

NANCY E. WOLFF
212 974 7474
NWOLFF@CDAS.COM

January 4, 2023

**VIA ECF**
The Honorable Sarah Netburn
United States District Court
Southern District of New York
Thurgood Marshall Courthouse
New York, New York 10007

Re: *Lynne Freeman v. Tracy Deebs-Elkenaney et. al.*, 1:22 Civ 02435 (LLS)(SN)

Dear Judge Netburn:

Defendants write in accordance with Your Honor's December 13, 2022 Order (ECF No. 93) directing the parties to submit letter briefs addressing how copyright infringement could be proven in this action. Plaintiff's theory of infringement is that Defendants combed through as many as 30 different versions of Plaintiff's unpublished manuscripts to pluck out short phrases, clichés, colloquialisms, and commonly used plot and character tropes, to assemble the allegedly infringing *Crave* book series. This theory of infringement has no legal support in the Second Circuit (nor any Circuit) and would essentially create infringement based merely on a collection of colloquial phrases frequently appearing in any young adult, dialogue driven romance novel. Rather than seek to prove her claims through a traditional (and legally required) side-by-side comparison of the works at issue, Plaintiff seeks to employ scattershot lists of unprotectable words and phrases, along with unprotectable common tropes from genre fiction, to claim that ***all*** of her unpublished draft manuscripts are infringed by the *Crave* series. Not only are these types of lists not allowed for demonstrating substantial similarity, but the expert testimony Plaintiff seeks to propound in support of this misguided theory would be irrelevant and inadmissible, including because such a comparison readily can be made "by a reader's good eyes and common sense." *See, e.g.*, *Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 654 (S.D.N.Y. Jan. 6, 2011).

This letter (1) provides an overview of the law on how substantial similarity[1] is proven as to works of literature in the Second Circuit; and (2) discusses the approach Plaintiff appears to be taking to attempt to prove infringement and whether this complies with Second Circuit law. As set forth below, copyright infringement in this case must be proven through a side-by-side comparison of the *Crave* series to a single manuscript, without expert-generated lists of purported similarities.

## I. Second Circuit Law On Proving Substantial Similarity Of Literary Works

The standard test for evaluating substantial similarity in the Second Circuit is "the so-called 'ordinary observer test,'" which "ask[s] whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010); *see also, e.g.*, *Knitwaves Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995). However, "[w]here the allegedly infringing work contains both protectible and non-protectible elements, … the usual 'ordinary observer' test

[1] To prove copyright infringement, Plaintiff must demonstrate both Defendants' access to her manuscripts and substantial similarity. *E.g.*, *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996). This letter addresses only the latter.





becomes 'more discerning,' and requires the Court to 'attempt to extract the unprotectible elements from ... consideration and ask whether the protectible elements, standing alone, are substantially similar.'" *Allen*, 739 F. Supp. 2d at 654 (cleaned up); *see also*, *e.g., Williams*, 84 F.3d at 588 ("When we determine that a work contains both protectible and unprotectible elements, we must take care to inquire only whether 'the *protectible elements, standing alone*, are substantially similar.'").[2] This "more discerning" approach is what is required when analyzing literature, which inevitably "contains both protectible and unprotectible elements." *Allen*, 739 F. Supp. 2d at 655 n.122.[3]

When fictional literature is at issue, courts in this Circuit "examine[] the similarities between the two literary works in such aspects as the total concept and feel, theme, characters, plot, sequence, pace and setting of the works." *Allen*, 739 F. Supp. 2d at 655; *Williams*, 84 F.3d at 588; *Amanze v. Adeyemi*, 2019 WL 2866071, at *6 (S.D.N.Y. July 3, 2019), *aff'd*, 824 F. App'x 86 (2d Cir. 2020); *DiTocco*, 815 F. Supp. 2d at 667 (all stating similar). Still, "the inquiry is 'principally guided by comparing the contested work's total concept and overall feel with that of the allegedly infringed work, as instructed by a reader's good eyes and common sense.'" *Allen*, 739 F. Supp. 2d at 654; *DiTocco*, 815 F. Supp. 2d at 666 ("[C]ourts' principal task is to compare the works' 'total concept and overall feel as instructed by good eyes and common sense.'").

As to the role of expert witnesses, "[t]he well-established general rule in this circuit has been to limit the use of expert opinion in determining whether works at issue are substantially similar.'" *Green v. Harbach*, 750 F. App'x 57, 59 (2d Cir. 2019) (quoting *Computer Assocs. Int'l v. Altai, Inc.,* 982 F.2d 693, 713 (2d Cir. 1992)); *see also, e.g.*, *Sheldon Abend Revocable Tr. v. Spielberg*, 748 F. Supp. 2d 200, 204 & n.4 (S.D.N.Y. Sept. 21, 2010); ("The opinions of experts or other third parties are irrelevant to a determination of substantial similarity."); *Shine v. Childs*, 382 F. Supp. 2d 602, 614 (S.D.N.Y. Oct. 5, 2005) ("[T]he Second Circuit has long held that substantial similarity should be determined not with the help of or solely by experts in the relevant field, but from the perspective of the ordinary observer"); *Davis v. United Artists, Inc.*, 547 F. Supp. 722, 724 & n.8 (S.D.N.Y. Sept. 22, 1982) (refusing to consider "affidavit of a literary expert who opines that the two works share substantial similarities," quoting Learned Hand stating that expert testimony "'ought not to be allowed at all'" in copyright cases). Thus, "[o]utside a limited class of cases involving highly technical works such as computer software, ***[expert] testimony is 'irrelevant and not permitted***.'" *Green*, 750 F. App'x at 59 (emphasis added); *Price v. Fox Ent. Grp., Inc.*, 499 F. Supp. 2d 382, 389 (S.D.N.Y. April 27, 2007) (rejecting proposed expert

---

[2] For example, "[s]tock themes, stock characters, and 'scenes a faire, that is scenes that necessarily result from the choice of a setting or situation,' do not enjoy copyright protection" and must be filtered out from the analysis. *DiTocco v. Riordan,* 815 F. Supp. 2d 655, 666 (S.D.N.Y. Sept. 20, 2011), *aff'd*, 496 F. App'x 126 (2d Cir. 2012); *see also, e.g.*, *Williams*, 84 F.3d at 587 ("It is 'a principle fundamental to copyright law' that 'a copyright does not protect an idea, but only the expression of an idea.' Similarly, *scenes a faire* … do not enjoy copyright protection.").

[3] In contrast to the Second Circuit, courts in the Ninth Circuit (where Plaintiff's lead counsel Mark Passin is based) apply "a two-part analysis: the extrinsic test and the intrinsic test." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 985 (9th Cir. 2017). Courts in the Ninth Circuit generally allow expert testimony to inform the extrinsic test, but not the intrinsic test. *See, e.g.*, *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004). Although the "more discerning observer" test requires courts to filter out unprotectible elements, the Second and Ninth Circuits' approaches are not interchangeable. *See Johannsongs-Publ'g, Ltd. v. Lovland*, 2021 WL 5564626, at *1 (9th Cir. 2021) (denying plaintiff's request "to depart from the Ninth Circuit's two-part extrinsic/intrinsic test for substantial similarity and instead apply the Second Circuit's ordinary observer test."), *cert. denied sub nom. Johannsongs-Publ'g, Ltd. v. Peermusic Ltd.*, 142 S. Ct. 2650 (2022).





testimony and finding that it "will not aid the jury" where "[t]hese are not highly technical works" and "the jury is capable of recognizing and understanding the similarities between the works without the help of an expert").[4] Indeed, numerous cases have ruled on whether works of fiction are substantially similar through a direct comparison, and Defendants are aware of none that has utilized expert witnesses for this. *See, e.g.*, *Williams*, 84 F.3d at 588, 590-91 (affirming summary judgment for defendant on similarity after "[h]aving reviewed both parties' works in detail, [and] find[ing] that nearly all the similarities between the works arise from noncopyrightable elements"); *DiTocco*, 815 F. Supp. 2d at 671 (Percy Jackson books); *Allen*, 739 F. Supp. 2d at 655 (Harry Potter books); *Amanze*, 2019 WL 2866071, at *10 (young adult fantasy novel); *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 311-12 (S.D.N.Y. Jan. 26, 1999) (comics and graphic novels).[5]

Finally, copyright infringement must be assessed by directly comparing the allegedly infringing work to the plaintiff's actual work, not to an aggregation of the plaintiff's multiple works that does not independently exist. *See Dean v. Cameron*, 53 F. Supp. 3d 641, 647 (S.D.N.Y. Sept. 17, 2014) ("a court must not 'aggregate' a plaintiff's work, but must consider each allegedly infringed work independently"); *Kroencke v. Gen. Motors Corp.*, 270 F.Supp.2d 441, 443-44 (S.D.N.Y. July 10, 2003), *aff'd*, 99 Fed. Appx. 339 (2d Cir. 2004) (rejecting aggregation theory and observing that the Copyright Act "refers to the infringed 'work' in the singular").[6] Thus, although it is rare that a plaintiff would claim infringement of multiple drafts of an unpublished manuscript, courts in similar circumstances have performed a side-by-side comparison using a single "primary" version of the manuscript. *See Nelson v. Grisham*, 942 F. Supp. 649, 651 (D.D.C. Sept. 26, 1996), *aff'd*, 132 F.3d 1481 (D.C. Cir. 1997) (applying Second Circuit law and using final published version of plaintiff's book for comparison even though "Plaintiff alleges that Grisham copied from earlier drafts, as opposed to the final published version").[7]

---

[4] While the Second Circuit in *Altai* approved the use of expert testimony to aid the factfinder in evaluating "highly complicated and technical subject matter" such as computer code that "are likely to be somewhat impenetrable by lay observers," the court made clear that "we do not intend to disturb the traditional role of lay observers in judging substantial similarity in copyright cases that involve the aesthetic arts, such as music, visual works or literature." 982 F.2d at 713-74; *see also Shine*, 382 F. Supp. 2d at 614 n.8 (explaining how the *Altai* holding is limited to technical works like computer code and noting apparent absence of cases permitting expert testimony even for that purpose).

[5] Although experts may not opine on substantial similarity, there may be a limited role for experts with experience in the young adult paranormal genre to aid the factfinder by identifying character archetypes, plot points, and themes that are commonly used in that genre, to help illustrate whether these are protected expression. This would be consistent with the "general proposition 'that while an expert may provide an opinion to help a jury or a judge understand a particular fact, he may not give testimony stating ultimate legal conclusions based on those facts.'" *A Slice of Pie Prods., LLC v. Wayans Bros. Ent.*, 487 F. Supp. 2d 33, 40 n.6 (D. Conn. May 4, 2007).

[6] This case presents a unique situation where Plaintiff has alleged infringement of more than ***30*** unpublished versions of the same work (although with two titles, *Masqued* and *Blue Moon Rising*). These multiple drafts represent revisions to essentially the same unpublished manuscript. As set forth below, it should be incumbent on Plaintiff to identify the base work for the required comparison and not overburden the fact finder with comparing the four *Crave* books at issue with an excessive number of unpublished manuscript revisions.

[7] A similar approach is taken when a plaintiff alleges that previous drafts of a defendant's work are infringing. *See, e.g.*, *Spielberg*, 748 F. Supp. 2d at 204 n.4 (S.D.N.Y. Sept. 21, 2010) (explaining that "[a] determination of copyright infringement requires a side-by-side comparison of the disputed works themselves" and that "earlier drafts of a book, manuscript, or screenplay are irrelevant"); *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 434 (S.D.N.Y. Aug. 14, 1985), *aff'd*, 784 F.2d 44 (2d Cir. 1986) (explaining that "[t]he Court considers the works as they were presented to the public" and denying plaintiff's request to "compare the two works on the basis of lists of random similarities and on earlier scripts of the screenplay").

Case 1:22-cv-02435-LLS Document 113-8 Filed 01/25/23 Page 5 of 7





To the extent aggregation has been allowed, it has been when a defendant created a secondary work that was expressly based on multiple episodes of a continuous plaintiff work and admittedly copied substantial, protected elements from those multiple episodes but was claiming fair use. *See Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.,* 150 F.3d 132, 137-39 (2d Cir. 1998) (allowing aggregation of multiple *Seinfeld* episodes where defendant had created a quiz book about *Seinfeld* and "freely admitted that she created [it] by" reviewing and drawing from multiple episodes, explaining that "[w]here the secondary work focuses on an entire continuous television series such as *Seinfeld*, there is no basis for looking in isolation at the amount copied from each separately copyrighted episode"); *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1370, 1372-73 (2d Cir. 1993) (same where defendant's work was a "Complete Guide" to the *Twin Peaks* television series). But here, the *Crave* series is not a work of commentary expressly based on Plaintiff's multiple manuscripts. Most importantly, unlike in *Castle Rock*, where the defendant's quiz book was "based directly upon original, ***protectable expression*** in *Seinfeld*," 150 F.3d at 138-39 (emphasis added), Plaintiff's theory is that Defendants copied ***unprotectable*** phrases, tropes, and ideas from her multiple draft manuscripts. There are no cases in which a court has allowed a plaintiff to aggregate unprotectable material from multiple works in this manner.

## II. Plaintiff's Proposed Approach To Proving Infringement

Against the above backdrop, Mr. Passin has stated that he believes that infringement in this case must be proven "vis-à-vis experts." (*See* 12/12/22 Hr'g Tr. 21:25-22:6 (ECF No. 99).) Mr. Passin claimed that an expert for Plaintiff has already compared the parties' works and "writ[ten] a report of the similarities." (*Id.* 23:9-13.) He further stated Plaintiff is "working on some other reports, too" and that "we're probably going to put a report together about the similarity of language as well." (*Id.* 23:18-25.) None of this is admissible or permissible. As a threshold issue, substantial similarity of non-technical literary works is judged by the factfinder comparing the works side by side, without the aid of expert testimony, as explained in detail above. Young adult novels are within the normal comprehension of the Court and lay jurors. Any expert report that purports to directly compare Plaintiff's manuscripts to the *Crave* series and opine on the works' purported similarities would usurp the role of the factfinder and be "'irrelevant and not permitted.'" *See, e.g.*, *Green*, 750 F. App'x at 59; *Shine*, 382 F. Supp. 2d at 614; *Price*, 499 F. Supp. 2d at 389; *Spielberg*, 748 F. Supp. 2d at 204 n.4; *Davis*, 547 F. Supp. at 724 & n.8.

It appears based on Mr. Passin's comments that Plaintiff's proposed expert reports would mimic the listing of words, short phrases, plot points, and character descriptions that Plaintiff assembled in her FAC and its exhibits. (*See* FAC (ECF No. 24) at 13-74; *see also* FAC Exs. 1-3 (ECF Nos. 24-1-3); *see also* 12/12/22 Hr'g Tr. 23:9-25.) For example, in her FAC, Plaintiff purports to demonstrate alleged "overwhelming similarities" between the parties' works by listing common words, phrases and clichés such as "Et tu, Brute?" (FAC at 24); "two sides of the same coin" (*id.* at 61); "get-out-of-jail-free card" (*id.* at 65); "more than meets the eye" (*id.* at 66); "careful what you wish for" (*id.*); "there's no time like the present" (*id.* at 69-70); "million-dollar question" (*id.* at 70); and "win-win" (*id.* at 74)—although Plaintiff has admitted in written discovery responses that these phrases are not original to her.

But the Second Circuit has roundly rejected the use of this sort of analysis in attempting to prove copyright infringement. As the Second Circuit explained in *Williams*, "such lists are 'inherently subjective and unreliable,' particularly where 'the list emphasizes random similarities





scattered throughout the works." 84 F.3d at 590. "Such a scattershot approach cannot support a finding of substantial similarity because it fails to address the underlying issue: whether a lay observer would consider the works as a whole substantially similar to one another." *Id.*; *see also, e.g.*, *Montgomery v. Holland*, 408 F. Supp. 3d 353, 377 (S.D.N.Y. 2019), *aff'd sub nom. Montgomery v. NBC Television*, 833 F. App'x 361 (2d Cir. 2020) ("Plaintiff's Amended Complaint contains 110 pages of purported 'resemblances,' but 'random similarities scattered throughout the works cannot by themselves support a finding of substantial similarity.'"); *Allen*, 739 F. Supp. 2d at 663 (rejecting plaintiff's "attempts to portray similarities by selectively extracting various trivialities from each book"); *Spielberg*, 748 F. Supp. 2d at 203-04 & n.4 (conducting "side-by-side comparison" and disregarding plaintiff's "many lists, charts and DVDs purporting to identify similarities," since "lists or charts, in any medium, of purported similarities [are not] relevant to a determination of substantial similarity"); *Starobin v. King*, 137 F. Supp. 2d 93, 96-97 (N.D.N.Y. April 17, 2001) (rejecting similar lists, including "16 page comparison of 'correspondences' between the two works"); *Walker*, 615 F. Supp. at 435 (refusing "to compare the two works on the basis of lists of random similarities").[8] Accordingly, such an analysis would be irrelevant to substantial similarity, inadmissible under Rule 702 and *Daubert*, and should not be allowed.[9]

Finally, Plaintiff has maintained that she believes that as many as 30 different versions of her unpublished manuscripts—some pre- or postdating her work with Prospect—were infringed (although Mr. Passin has indicated that this number could potentially be reduced to six or seven versions). (*See* 12/12/22 Hr'g Tr. 15:20-16:6.) Putting aside that undertaking such a comparison would be unwieldy for the Court, jury, and parties, an aggregate infringement theory may not be used here, where the *Crave* series is not a secondary work of commentary that is expressly drawn from multiple of Plaintiff's works, like the *Seinfeld* and *Twin Peaks* guides discussed above. *Cf. Castle Rock,* 150 F.3d at 137; *Twin Peaks*, 996 F.2d at 1370. Infringement therefore must be proven through a side-by-side comparison of the *Crave* series and a single allegedly infringed manuscript, not an amalgamated collage of drafts that has never itself existed. *See Dean*, 53 F. Supp. 3d at 647; *Kroencke*, 270 F. Supp. 2d at 443-44; *Nelson*, 942 F. Supp. at 651. Plaintiff, who is the master of her claims and in the best position to do this, should therefore be required to select a single "primary" manuscript version to use as the point of comparison.[10] Defendants remain willing to stipulate to using Bates KIM00157808-KIM00158250 for this. (*See* ECF No. 83 at 4.)

We thank the Court for its time and attention to this matter and stand ready to respond to any issues raised in Plaintiff's submission should the Court so request.

---

[8] This accords with the well-established rule that "isolated words, phrases, and concepts lack the originality required for copyright protection." *Montgomery v. NBC Television*, 833 F. App'x 361, 364 (2d Cir. 2020); *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072-73 (2d Cir. 1992); *Williams*, 84 F.3d at 587; *cf.* 37 C.F.R. § 202.1(a) (prohibiting registration of "[w]ords and short phrases such as names, titles and slogans" for copyright protection). Again, here, Plaintiff does not appear to claim that any individual word, phrase, or idea in her charts of alleged "similarities" is protectable, standing alone.

[9] In addition to words and phrases, the FAC identifies purported character similarities, such as that both protagonists are teens from California who eventually learn that they both possess supernatural powers and that the male love interests in the work are "dark," "dominant," and brooding. (*See* FAC at 42-48.) But these purported similarities would be ascertainable by any lay reader, and courts have rejected character similarities that are far more striking than those alleged here, *see e.g.*, *Hogan*, 48 F. Supp. 2d at 311 (both characters being half-vampires named "Nicholas Gaunt").

[10] This would be consistent with how the Court has approached Plaintiff's request to add unpublished *Crave* books to the litigation; if Plaintiff cannot prove infringement based on one manuscript version of her own choosing, there is no reason to consider whether other versions were infringed.





Respectfully Submitted,

**COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP**

By: /s/ Nancy E. Wolff
Nancy E. Wolff
Benjamin S. Halperin
CeCe M. Cole
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
nwolff@cdas.com
bhalperin@cdas.com
ccole@cdas.com

*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan, and Universal City Studios LLC*

**KLARIS LAW PLLC**

Lacy H. Koonce, III
29 Little West 12th Street
New York, NY 10014
Phone: (917) 612-5861
lance.koonce@klarislaw.com

*Attorneys for Emily Sylvan Kim and Prospect Agency, LLC*

cc: All counsel of record (via ECF)