

COWAN,
DEBAETS,
ABRAHAMS &
SHEPPARD LLP

41 MADISON AVENUE
NEW YORK, NY 10010
T: 212 974 7474
F: 212 974 8474

BENJAMIN HALPERIN
212-974-7474
BHALPERIN@CDAS.COM

March 2, 2023

**VIA ECF**
The Honorable Sarah Netburn
United States District Court
Southern District of New York
Thurgood Marshall Courthouse
New York, NY 10007

Re: *Lynne Freeman v. Tracy Deebs-Elkenaney et. al.*, 1:22 Civ 02435 (LLS)(SN)

Dear Judge Netburn:

Defendants jointly write in response to Plaintiff's February 27, 2023 letter ("Letter," ECF No. 139), which asks the Court to order Defendants to produce all of their text messages without redactions and extend discovery a month so that Plaintiff and her husband can help Mr. Passin review them. Mr. Passin makes this request notwithstanding that he has now had access to the unredacted messages on a secure platform for over four weeks.[1] As set forth below, Mr. Passin's unusual request to allow his client and her husband to assist in review of Defendants' text messages would frustrate the purpose of the agreed-to procedure for protecting the confidentiality of these messages and significantly prejudice Defendants for numerous reasons. Plaintiff's request should be denied.

With the Court's guidance, the parties agreed to a procedure for review of unredacted versions of each other's text messages: the unredacted versions would be uploaded to a secure platform and made available for attorney-only review for a limited period, with the attorneys agreeing to not share these unredacted versions with their clients. (ECF Nos. 93, 97; Letter at 3.) Notably, Mr. Passin did not object when the Court suggested this procedure, personally negotiated the procedure with Defendants, and expressly agreed to it in the parties' joint letter to the Court outlining the procedure. (*See* ECF No. 97.) There is also no dispute that Defendants fully complied with the agreed-to procedure. Defendants granted Plaintiff's counsel access to all of their unredacted texts on January 31 and February 1, 2023. (Letter at 3.) As Plaintiff admits, Defendants even twice agreed to extend the initial two-week review period, such that Mr. Passin and his colleagues have now had over four weeks to review the unredacted texts. (*See id.* at 3 n.2.) Defendants have also offered to confer in good faith regarding removing redactions from particular messages Mr. Passin identifies.

Mr. Passin now claims that all of this is insufficient, and that he needs both a month-long extension of the close of fact discovery (which would be the third such extension) and for Plaintiff and her husband to be given full access to all of Defendants' text messages to help him review them. Mr. Passin states that this is because "I am the only one other than my client and her husband

[1] It is worth emphasizing that this is not a situation where Mr. Passin, having reviewed all of the unredacted texts, is now requesting the targeted removal of specific redactions; rather, Plaintiff seeks to force Defendants to produce unredacted versions of ***all*** of their text messages so that Plaintiff and her husband can help review the material in the first instance.





familiar enough with the facts to review the text messages." (*Id.* at 3.) This is not a sound justification, for many reasons.

***First***, giving Plaintiff and her husband access to Defendants' unredacted text messages would frustrate the purpose of the agreed-to procedure described above. As Defendants have explained, text messages are personal communications that consist of months- or years-long threads that span a wide variety of topics that frequently have nothing to do with the *Crave* series and this litigation. While many of the messages are trivial or otherwise not problematic, the threads encapsulate the authors' personal lives and many contain sensitive personal information regarding health, family, and other issues. Defendants have accordingly strongly opposed turning these messages over to Plaintiff herself (and certainly to her husband, who is not even a party). Indeed, Defendants insisted on the attorney-only requirement ***precisely so that*** Plaintiff and her husband would not have access to their personal text messages.[2] Requiring full production of the text messages merely because Mr. Passin has identified some redactions he believes were improper would upend the procedure the Court crafted to prevent invasive disclosure of personal information to a litigation adversary.[3]

***Second***, the reason provided for Plaintiff's request—that Mr. Passin has not been able to review all the messages himself and would like his client and her husband's assistance—is not a sound justification for the relief sought. The problem here is simple: for unknown reasons, Mr. Passin has thus far taken it upon himself to handle all aspects of discovery personally. But no attorney can reasonably do that in a large-scale case such as this. Even the most efficient attorneys need to delegate and prioritize, as a matter of both good practice and professional responsibility. Indeed, every attorney who accepts a case has an ethical obligation to ensure that the necessary resources are in place to litigate it. *See* ABA Rules 1.1, 1.3, 3.2; N.Y. Rule of Prof. Conduct 1.3 cmt. 2 ("A lawyer's work load must be controlled so that each matter can be handled diligently and promptly. Lawyers are encouraged to adopt and follow effective office producers and systems[.]").

Consistent with these principles, the issue Mr. Passin now raises could have been avoided if he had trained other attorneys to assist him earlier in the discovery process. These might have included the two other attorneys of record who represent Plaintiff and have attended all the discovery conferences, or junior attorneys at Mr. Passin's and these attorneys' law firms, or even contract attorneys. Tellingly, Mr. Passin recently stated in a February 23 email that he "would consider using" contract attorneys if depositions were postponed so that the contract attorneys could be brought up to speed. (*See* Ex. A to 3/2/23 Halperin Decl.) That should have occurred back

---

[2] Mr. Passin has informed Defendants telephonically that his client had her own similar concerns about sharing her personal texts with Defendants. He agreed to produce them, however, after Defendants' counsel reminded him that Defendants' witnesses had the same exact concerns which is why the attorney-only procedure was instituted.

[3] The fact that Plaintiff herself "is an attorney" (Letter at 4) does not change that she is Defendants' litigation adversary and that disclosure of Defendants' personal text messages to her would be invasive and prejudicial.





when document discovery began in June 2022, not mere weeks before the close of fact discovery and on the eve of depositions.[4]

These failures are particularly glaring because the issues that need to be spotted in document review are not as complicated as Mr. Passin claims. (*See* Letter at 3.) Factual discovery in this case principally concerns whether there is evidence that Defendants had access to Plaintiff's work and copied from it. Junior or contract attorneys certainly could have been trained to spot any documents mentioning Plaintiff and her manuscripts (if they exist) and escalate them to Mr. Passin. That is how document review is conducted at essentially every law firm that employs junior and more senior attorneys. Plaintiff's Letter and her recent request for production of Tracy Wolff's hard drives (ECF No. 135) suggest that Mr. Passin has filed these emergency letters because he has yet to find the "smoking gun" evidence he believes is hidden in Defendants' production. But the truth is that such evidence simply does not exist and the notion that Wolff copied from Plaintiff is nothing more than a baseless conspiracy theory.

Finally, Plaintiff's Letter ignores that Plaintiff and her husband ***have*** had access to the redacted version of Defendants' text messages since October 2022. If Mr. Passin truly needs his client and her husband to help review Defendants' text messages, they could have spent the last four months doing so using the redacted versions. Ultimately, there is no dispute that (1) Mr. Passin (and other attorneys if he would allow them to help) have had access to Defendants' unredacted messages since January 31, 2023; and (2) everyone on Plaintiff's side (including Plaintiff and her husband) has had access to the redacted versions since October 2022. This should have been more than sufficient to complete the required discovery.

***Third***, Plaintiff has provided nothing to suggest that Defendants' redactions were improper. Rather, the examples of alleged improper redactions included with the Letter now and with Plaintiff's prior filing regarding this issue (ECF No. 87) only show that Defendants' counsel redacted content that is irrelevant to the parties' claims and defenses. (*See* Letter Ex. 2 (collecting examples of alleged improperly redacted content).) For example, the redacted content in the examples Plaintiff provided mostly shows Wolff and Emily Kim commenting on the intense and stressful writing and publishing process. (*See id.*) Plaintiff and her manuscripts are not mentioned anywhere in these examples, nor were they mentioned in the examples Plaintiff previously provided to the Court when seeking relief on this issue in December. (*See* ECF No. 87.) Presumably, Plaintiff has provided the very best examples of allegedly improper redactions that Mr. Passin could find. The fact that Mr. Passin has ***never*** provided an example of redacted content discussing Plaintiff or her manuscripts further shows that the redactions were appropriate and that Defendants have nothing to hide.[5]

---

[4] Defendants were notified last night that an additional firm that has yet to enter a formal appearance has now joined Mr. Passin as co-counsel. This does not change the issues discussed herein.

[5] Defendants stand ready to provide the Court with grounds for specific redactions should the Court deem it necessary.





***Finally***, the month-long discovery extension Plaintiff seeks would itself be prejudicial. Not only would an additional month of discovery continue to delay summary judgment, but it would wreak havoc on the deposition schedule that the parties have extensively negotiated. To say that scheduling depositions in this case has been challenging would be an understatement. The parties first struggled to find mutually agreeable dates in the fall when discovery was at the time set to close on December 31, 2022. After discovery was extended until March 15, 2023, Defendants emailed Mr. Passin on January 17, 2023 providing windows of availability for their witnesses and urging Mr. Passin to confirm dates quickly. As reflected in the attached email chain spanning from that date until February 16, it then took the parties roughly a month of heavy negotiations to work out a mutually agreeable deposition schedule. (*See* Ex. B to Halperin Decl.)[6] The first of the 12 scheduled depositions is scheduled to take place ***tomorrow***, March 3. And Defendants' counsel has already booked travel for the two depositions in Texas next week and two in California the week of March 20. It would be wasteful, inefficient, and prejudicial to undo the parties' deposition schedule now pursuant to Plaintiff's eleventh-hour extension request.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

/s/ Benjamin S. Halperin

Benjamin S. Halperin

**COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP**

Nancy E. Wolff
Benjamin S. Halperin
CeCe M. Cole
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
nwolff@cdas.com
bhalperin@cdas.com
ccole@cdas.com

---

[6] As the parties' lengthy email exchange shows, agreeing to a deposition schedule was particularly challenging because Mr. Passin for weeks refused to confirm ***any*** of the 12 deposition dates unless Defendants agreed to hold one particular witness's deposition (the Macmillan corporate representative) outside their initial availability window. (Ex. B at 7-9.) After Defendants explained to Mr. Passin that deposition scheduling is a two-way street and the schedule should not be a house of cards that crumbles just because one date does not work (*id.* at 8-9), Mr. Passin acknowledged that, in fact, his version of "the schedule is like a house of cards" (*id.* at 7). Defendants should not be required to undertake this arduous scheduling process with Mr. Passin again.

*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan, and Universal City Studios LLC*

KLARIS LAW PLLC

Lacy H. Koonce, III
29 Little West 12th Street
New York, NY 10014
Phone: (917) 612-5861
lance.koonce@klarislaw.com

*Attorneys for Emily Sylvan Kim and Prospect Agency, LLC*

Cc: All counsel of record (via ECF)