

| | | |
|---|---|---|
| Cowan, DeBaets, Abrahams & Sheppard LLP | 41 Madison Avenue<br>New York, NY 10010<br>T: 212 974 7474<br>F: 212 974 8474 | Benjamin Halperin<br><br>212-974-7474<br>BHalperin@cdas.com |

March 3, 2023

**VIA ECF**
The Honorable Sarah Netburn
S.D.N.Y. Thurgood Marshall Courthouse
New York, NY 10007

      Re:    *Lynne Freeman v. Tracy Deebs-Elkenaney et. al.*, 1:22 Civ 02435 (LLS)(SN)

Dear Judge Netburn:

      Pursuant to the Court's February 24, 2023 Order (ECF No. 135), Defendant Tracy Wolff respectfully responds to Plaintiff's February 22, 2023 letter motion ("Letter," ECF No. 131) accusing Wolff of fraudulently manipulating the metadata of several emails and draft manuscripts and seeking production of Wolff's computer hard drive to Plaintiff for inspection.

      Plaintiff's incendiary allegations of fraud are demonstrably false. As is clear from the Letter itself, Plaintiff has no actual evidence to support these allegations, and instead relies on conjecture, rhetorical questions, and equivocal unsworn remarks from an unidentified "computer forensics expert" who admittedly "cannot conclusively establish if the documents in question were manipulated." (Letter at 2, 4.) And as set forth below, the allegations are refuted by, *inter alia*: (1) Wolff herself, who attests in her attached sworn declaration ("Wolff Decl.") that she did not manipulate documents or metadata and provides a true timeline of events that disproves Plaintiff's conspiracy theory; and (2) the attached sworn declaration of Wolff's e-discovery vendor Benjamin Rose ("Rose Decl."), who also avers that no manipulation of documents or metadata occurred and refutes Plaintiff's technical allegations point by point. Plaintiff's Letter comes nowhere close to satisfying the exacting standard for requiring the inspection of a personal computer hard drive. Plaintiff's letter motion should be denied and Wolff should be awarded the costs and attorneys' fees incurred in responding to it.

**I.**    **Background**

      Defendants have produced approximately 4,500 documents collected from Wolff to Plaintiff during discovery. These productions included emails (produced in pdf), Microsoft Word documents (produced in pdf and native format), and other miscellaneous documents. The documents were collected from Wolff's personal computers and electronic email accounts by Mr. Rose after running the parties' agreed-to search terms. As Mr. Rose attests under oath, he used standard e-discovery software and protocols for this document collection and none of the documents or their metadata was altered during this process. (Rose Decl. ¶¶ 5-6.) Defendants' counsel then manually reviewed these documents for responsiveness and produced the responsive documents to Plaintiff by providing links to the documents via the e-discovery service Everlaw. Counsel did not alter these documents or manipulate their metadata when doing this.

      On December 12, 2022, Plaintiff's counsel Mark Passin asked Defendants to re-produce two specific Wolff emails in native format: (1) an August 25, 2010 email from Wolff to Shellee Roberts that attached several draft manuscripts, including one of Wolff's novel *Tempest Rising* (the "8/25/10 email"); and (2) a September 17, 2010 email from Wolff to herself that also attached several manuscripts including one of her novel *Deserving of Luke* (the "9/17/10 email").[1]

---

[1] Neither *Tempest Rising* nor *Deserving of Luke* is at issue in this case. (*See* 12/12/22 H'rg Tr. 33:1-3.) The 8/25/10 email was produced as Wolff_0102203 and is attached as Ex. A to the Declaration of CeCe M. Cole dated March 3,



Cowan, DeBaets, Abrahams & Sheppard llp

Page 2

Defendants accommodated Mr. Passin's request and produced the two emails in native format on December 20, 2022.[2]

Plaintiff alleges in her Letter that the 8/25/10 email "was backdated, and that the version of *Tempest Rising* attached to that e-mail did not exist until after Plaintiff provided" her allegedly infringed manuscripts to agent Emily Sylvan Kim. (Letter at 1-2.) Plaintiff alleges that the same is true as to the version of *Deserving of Luke* that was attached to the 9/17/10 email. (*Id.* at 2.) Plaintiff alleges that Wolff manipulated these metadata so that Defendants could argue that "some of the material Plaintiff alleges was copied and included in the allegedly infringing [*Crave*] books … was actually contained in Wolff's earlier books" (*id.* at 1)—even though Defendants have not yet made that particular argument. As set forth below, the purported evidence Plaintiff provides to support these allegations does not remotely suggest that this is true.

## II. **Plaintiff Is Not Entitled To Inspect Tracy Wolff's Computer Hard Drive.**

Plaintiff's Letter ignores and fails to satisfy the controlling standard for requiring the production of a litigation adversary's computer. Requests to inspect an opposing party's computer "are granted only under limited circumstances," such as "when there is reason to believe that a litigant has tampered with the computer or hidden relevant materials despite demand for them in the course of the lawsuit or when the possession or use of the computer is an element of the parties' claims or defenses." *Lifeng Chen v. New Trend Apparel Inc.*, 2012 WL 4784855, at *1 (S.D.N.Y. Oct. 2, 2012). "This limitation reflects the fact that production of a computer to the adversary almost invariably will lead to disclosure of quantities of documents that are entirely irrelevant or privileged, and, even if not privileged, possibly quite sensitive." *Id.*; *see also, e.g.*, *Uddin v. O'Brien Rest. Holding Co., LLC*, 2017 WL 11674895, at *2-3 (S.D.N.Y. Aug. 23, 2017) ("Absent a showing of widespread destruction or withholding of relevant information, courts are unlikely to find the burden and expense of a proposed computer inspection justified."); Fed. R. Civ. P. 34, 2006 advisory cmt. (because inspection "may raise issues of confidentiality or privacy," Rule 34 "is not meant to create a routine right of direct access to a party's electronic information system").

The classic cases where computer inspection is deemed appropriate are when the individual "allegedly used the computer itself to commit the wrong that is the subject of the lawsuit." *See, e.g.*, *Calyon v. Mizuho Sec. USA Inc.*, 2007 WL 1468889, at *4 (S.D.N.Y. 2007) (citation omitted). For example, this might occur when defendants allegedly "downloaded trade secrets onto a computer" or "used their computers to distribute the plaintiff's confidential information," such that "how and whether the defendants handled those documents and what the defendants did with the documents is … at issue." *Id.* (citations omitted). And even when computer inspection is ordered, procedural safeguards are implemented to protect privileged information and the individual's privacy. *See id.* (discussing cases). As such, Courts ordering such discovery have required that, *inter alia*, an "independent expert, bound by a confidentiality agreement" be the one to inspect the computer hard drive in the first instance. *See id.* (discussing *Ameriwood Industries, Inc. v. Liberman*, 2006 WL 3825291, at *5-6 (E.D. Mo. Dec. 27, 2006)).

---

2023 ("Cole Decl."). The June 2010 draft of *Tempest Rising* that Plaintiff claims was manipulated (sent by Wolff in the 8/25/10 email) was produced as Wolff_0102250-Wolff_0102699 and is attached as Ex. B. The 9/17/10 email was produced as Wolff_0102700 and is attached as Ex. C. The draft of *Deserving of Luke* that was allegedly manipulated (sent by Wolff in the 9/17/10 email) was produced as Wolff_0102701-Wolff_0102939 and is attached as Ex. D.

[2] Defendants did this merely as a courtesy and to avoid an unnecessarily dispute. Defendants explained to Mr. Passin at the time that pdf format is acceptable for email production and that Defendants would not re-produce additional emails in native format.



Cowan,

DeBaets,

Abrahams &

Sheppard llp

Page 3

Here, Plaintiff's showing in her Letter comes nowhere close to justifying the extraordinary remedy of computer inspection, for numerous reasons.[3]

***First***, Plaintiff's unsworn accusations are refuted by the attached sworn declarations of Wolff and Mr. Rose. Wolff states that she did not backdate or alter the metadata of the documents in question and does not even know how to do such a thing. (Wolff Decl. ¶¶ 30-31.) She avers that she gave her e-discovery vendor full access to her email accounts and was not involved in document collection or production beyond this. (*Id.* ¶¶ 28-29.) Mr. Rose similarly states that he used standard e-discovery tools and protocols to collect documents and that no documents or their metadata were altered in these processes. (Rose Decl. ¶¶ 5-6.) Mr. Rose conducted a technical investigation of Plaintiff's allegations of tampering and found that the metadata dates of the emails and documents in question are accurate. (*See id.* ¶¶ 8-9, 11.) Among other things, this is shown by metadata reports Mr. Rose generated for these emails, which show respective dates/timestamps of "25 Aug 2010 11:15:35 -0700 (PDT)" for the 8/25/10 email and "17 Sep 2010 19:57:56 PDT" for the 9/17/10 email. (*Id.* ¶ 9 & Ex. B.) Mr. Rose even "examined a hidden date and time stamp, contained in the Content-Type field" for these emails and used a program "to convert the date and time in Unix Seconds, which indicated the dates and times of 08/25/2010 11:15:35.0000000 -07:00 and 09/17/2010 19:57:56.0000000 -07:00." (*Id.* ¶ 9.)

These stand in stark contrast to Plaintiff's unsupported submission and are reason alone to deny Plaintiff's motion.

***Second***, the true timeline of events—set forth in Wolff's declaration and documentary evidence—demonstrates that Plaintiff's theory that documents were tampered with is false.

Kim was Wolff's literary agent before Plaintiff began working with Kim in December 2010. In 2009, Kim pitched to Bloomsbury Publishing Plc ("Bloomsbury") Wolff's manuscript that originally was called *Riptide*. (Wolff Decl. ¶ 3.) Bloomsbury acquired the rights to publish the novel in January 2010. (*Id.* ¶ 4.) Bloomsbury then requested that Wolff change the title of the novel, and Wolff changed it first to *Tempest* and then to *Tempest Rising* in March 2010. (*Id.* ¶ 7.) Wolff then submitted a final draft of her manuscript to Bloomsbury on June 30, 2010. (*Id.* ¶ 5.) The manuscript went into production in August 2010. (*Id.* ¶ 8.) An advanced reader copy (ARC) of the novel—a hard copy of which Wolff still possesses[4]—was printed in October 2010. (*Id.* ¶ 13.) The book was eventually published in May 2011. (*Id.* ¶ 10.)[5]

---

[3] The cases Plaintiff cites (Letter at 4) are distinguishable and only illustrate that the circumstances here are nothing like those in which computer inspection has been warranted. *See, e.g.*, *List Indus. v. Umina*, 2019 WL 1933970, *3-4 (S.D. Ohio 2019) (allowing inspection where claim depended on demonstrating access of document through forensic imaging and where defendant had acknowledged impermissibly accessing plaintiff's documents in another proceeding); *United Factory Furniture Corp. v. Alterwitz*, 2012 WL 1155741, at *4 (D. Nev. 2012) (defendants' alleged unlawful access to and destruction of information stored on plaintiff's computer server was a central allegation in the case); *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 446-48 (D. Conn. 2010) (allowing inspection where plaintiff demonstrated defendants used their computers to download and transmit plaintiff's proprietary information); *Ameriwood*, 2006 WL 3825291, at *4-5 (allowing inspection where defendants allegedly used computers to download, secrete, and transmit proprietary information and trade secrets).

[4] Wolff only possesses a single physical copy of this ARC of *Tempest Rising*. She will bring it to her deposition on March 7 so that Plaintiff may inspect it and make a photocopy. Defendants stand ready to provide a photocopy of this book to the Court if so requested, or to loan the Court the copy itself after Wolff's deposition.

[5] In addition to Wolff's sworn statements, the printed ARC of *Tempest Rising*, and the emails and drafts at issue themselves, several additional emails that Defendants have now collected from Wolff to support this response further



COWAN,

DEBAETS,

ABRAHAMS &

SHEPPARD LLP

PAGE 4

Meanwhile, Plaintiff alleged in her FAC that she "entered into an agency agreement" with Kim on December 8, 2010. (FAC ¶ 22 (ECF No. 24).) Documentary evidence supports this. (*See* KIM00352651-KIM00352655 (attached as Ex. G to Cole Decl.).) Plaintiff now alleges in her Letter, without support, that she sent the first three chapters of her manuscript *Blue Moon Rising* to Kim on October 27, 2010. (Letter at 2.) Thus, according to Plaintiff's allegations in the FAC and available evidence, she and Kim began working together in December 2010. And even accepting Plaintiff's additional and unsupported allegations in her Letter, the earliest Kim received any of Plaintiff's work at issue was October 27, 2010. But regardless of which date is used for the start of the Plaintiff-Kim relationship, the evidence definitively shows that *Tempest Rising* was completed **before it**.[6]

The above timeline eviscerates the conjectural allegations Plaintiff makes regarding *Tempest Rising* in her Letter. For example, Plaintiff accuses Wolff and Kim of stealing her idea to feature a "Ducati Streetfighter S" in a novel after Plaintiff allegedly suggested the motorcycle to Kim in a December 2010 conversation (which is yet another unsupported allegation). (Letter at 2 (item A).) But the truth is that the Ducati appeared in the June 2010 version of *Tempest Rising*, completed months before that alleged December 2010 conversation. (Cole Decl. Ex. B at 112, Ex. E at 113.) The Ducati also appears in the ARC of *Tempest Rising* that was printed in October 2010 off of the June 2010 draft. (Wolff Decl. ¶¶ 13-14.) Plaintiff also accuses Wolff of making a "suspicious" blog post regarding *Tempest Rising* in November 2010 and queries why Wolff waited until November to do this if the novel had been completed earlier. (Letter at 2 (item C).) The reason is that this blog post was made to announce a giveaway of the ARC, which had just been printed in October 2010. (Wolff Decl. ¶ 15.) Finally, Plaintiff baldly alleges that "Wolff changed the name of the manuscript from *Tempest* to *Tempest Rising* after Kim received the first three chapters of Plaintiff's book entitled *Blue Moon Rising* on October 27, 2010." (Letter at 2 (item C).) This too is contradicted by the timeline above, which shows that *Tempest* became *Tempest Rising* far earlier, in March 2010. (Wolf Decl. ¶ 7.)[7]

***Third***, the technical issues Plaintiff points to in her Letter are not evidence of tampering. Plaintiff first argues that the two emails in question are suspicious because neither "had a 'Message-ID' in the header metadata." (Letter at 3.) Mr. Rose investigated this and found that the absence of a "Message-ID" was normal for these emails, and that a sampling of other sent emails from Wolff's mailbox during the same period also lacked "Message-ID." (Rose Decl. ¶ 8; *see also id.* ¶ 10 (Mr. Rose explaining that he even sampled his own sent emails from the same time period and found that they similarly lacked "Message-ID").) As Mr. Rose explains, "the result could be based upon the account configuration settings, including the mail protocol that was used in 2010, when the messages were sent." (*Id.* ¶ 8.)

---

prove this timeline. These emails, which are attached as Exhibits E and F to the Cole Decl., show: (1) Wolff sending the June 30, 2010 version of *Tempest Rising* to her editor and stating that this was after she had "g[o]t it as perfect as I could make it" (Ex. E); and (2) that the ARC was printed in October 2010 (Ex. F at 3). These emails were not previously produced because they concern a novel that is not at issue in this case. Nevertheless, Defendants are providing them now after Plaintiff has alleged fraud related to *Tempest Rising* and expect to formally produce them to Plaintiff shortly.

[6] The only changes made after the final June 2010 *Tempest Rising* version were minor edits ordered by Bloomsbury in November 2010 (specifically, changing a character's name from Kai to Kona). (Wolff Decl. ¶ 11.)

[7] Plaintiff's references to the draft of *Deserving of Luke* appear inapposite to her fraud allegations, which mostly concern *Tempest Rising*. In any event, there was nothing amiss in the metadata of the draft of *Deserving of Luke* or the 9/17/10 email that attached it, as shown herein and in Mr. Rose's declaration.


COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP                    PAGE 5

Plaintiff also deems it suspicious that the metadata username for two produced versions of *Tempest Rising* was "Author." (Letter at 3.) Mr. Rose refutes this, explaining that "author names [for Microsoft Word documents] are optional and selective, based upon the Microsoft Word user's desire for identification," and that "there are no known 'non-standard' author names" as Plaintiff alleges. (Rose Decl. ¶ 13.) Mr. Rose reviewed Word documents in the email account in question and found a wide variety of usernames, including "Author," "owner," "user," and "Administrator." (*Id*. ¶ 14.) This shows that "Author" was neither irregular nor suspicious.

Plaintiff's remaining technical arguments fail as well. Plaintiff acknowledges that the metadata dates of the *Tempest Rising* and *Deserving of Luke* drafts attached to the 8/25/10 and 9/17/10 emails show dates last saved of 6/30/10 and 9/13/10, which further confirm the accuracy of the email dates. (*See* Letter at 3-4; *see also* Rose Decl. ¶ 11.) Plaintiff asserts that these data "could be untrustworthy and highly suspect due to the ease of deception" (*id.*), but that is pure conjecture.[8] Plaintiff similarly argues that the reason her computer expert requires the hard drives is that the data Plaintiff possess are merely "suspect" and do not "conclusively establish" tampering. (*Id.* at 4 (items F and G).) This only underscores how speculative all of this is.

Plaintiff additionally argues that the fact that Defendants refused to produce all of their emails in native format suggests deception. (*Id.* at 4.) That is not true at all; Defendants produced their emails in the reasonably usable (and standard) pdf format and have resisted re-producing them wholesale in native format because doing so is not required by the Federal Rules and would be hugely wasteful and overly burdensome. This suggests reasonableness, not fraud.[9]

***Finally***, the court should award Wolff the attorneys' fees and costs incurred in responding to Plaintiff's letter motion. As set forth above, Plaintiff's accusations of evidence tampering are false and supported by nothing but conjecture and equivocal unsworn second-hand statements by an unnamed purported computer expert. It significantly burdened Defendants to expend time and resources responding to these baseless accusations near the conclusion of discovery and just before depositions, which included re-engaging (and compensating) Mr. Rose to conduct an emergency investigation and draft a declaration. This meets the standard for the awarding of fees following a discovery dispute under Rule 37. *See* Fed. R. Civ. P. 37(a)(5)(B); *see also, e.g.*, *Terra Energy & Res. Techs., Inc. v. Terralina Pty. Ltd.*, 2014 WL 1777984, at *3 (S.D.N.Y. Apr. 30, 2014) (awarding opposing party "the costs and fees it incurred in opposing" motion to compel that was "not … substantially justified").

We thank the Court for its time and attention to this matter.

Respectfully submitted,

---

[8] Plaintiff separately argues that a purported 20,000 reduction in the word count of a March 2011 version of *Tempest Rising* suggests that the earlier version was manipulated (Letter at 2 (item B)), but the Word document itself for this later version shows a virtually identical word count (approx. 90,000) to the earlier version. (*See* Rose Decl. ¶ 12.) The reason this later version (which appears substantively identical to the June 2010 other than the Kai/Kona substitution discussed above) is dated March 2011 is that Wolff removed in-line comments and pasted it into a fresh Word document before sending it to Kim at time, per Kim's request. (Wolff Decl. ¶¶ 11, 16.) The March 2011 email between Wolff and Kim showing this, along with the attached version of *Tempest Rising*, was produced as Wolff_0012493-Wolff_0012944 and is attached as Ex. H to the Cole Decl.

[9] Plaintiff separately criticizes Defendants for producing the "sent" rather than "received" native version of the 8/25/10 email, implying that Defendants' refusal to produce the identical "'received side of the e-mail" suggests fraud. (Letter at 2.) But the recipient of the 8/25/10 email (Shellee Roberts) is a third party who Defendants do not control, their counsel does not represent, and from whom Defendants are not required to collect documents.



COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP

PAGE 6

/s/ Benjamin S. Halperin

**COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP**
Nancy E. Wolff
Benjamin S. Halperin
CeCe M. Cole
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
nwolff@cdas.com
bhalperin@cdas.com
ccole@cdas.com

*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan, and Universal City Studios LLC*

Cc: All counsel of record (via ECF)