UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYNNE PLAINTIFF, | |
| Plaintiff, | Case No. 22-cv-02435 (LLS)(SN) |
| -against- | **PLAINTIFF'S MOTION FOR CLARIFICATION, OR IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION** |
| TRACY DEEBS-ELKENANEY, et al. | |
| Defendants. | |

i

Pursuant to L.R. 6.3, Plaintiff Lynne Freeman respectfully moves for clarification, or alternatively, reconsideration, of the Court's February 27, 2023 Order (ECF No. 141) (the "Court's Order") which affirmed the Court's September 16, 2022 Order (ECF No. 105) ("Judge Netburn's Order"), as follows.

## PRELIMINARY STATEMENT

On March 25, 2022, Lynne Freeman filed this action alleging that her literary agent, Defendant Emily Kim, received dozens of iterations of Freeman's original manuscript (in the form of drafts, outlines, rewrites, character notes, subplots, etc.) (collectively, "Copyrighted Material"), and turned them over to her friend and client, Defendant Tracy Wolff, who in turn used them to write four novels (the "*Crave* Series") which copied protectable expression from those various iterations of the Copyrighted Material.[1] *See* ECF No. 1. at ¶¶ 1-2, 5-8, 39-44. Indeed, as alleged in the Complaint, "Freeman sent Kim over 45 versions of the manuscript, numerous notes, outlines, and other written materials relating to the contents of the Freeman Manuscript." ECF No. 1, ¶ 25. And Freeman has alleged in her Amended Complaint that Defendants infringed *all* of her copyrights in the Copyrighted Material. ECF No. 24 ("FAC") ¶¶ 76, 78, 82.

Defendants did not move for a more definite statement, nor did they seek to narrow the scope of Plaintiff's infringement claims through a motion to dismiss. Thus, since the start of this case the scope of the copyright claims at issue has been well beyond two designated versions of the Copyrighted Materials—a fact reflected in the discovery conducted by both parties.

On September 16, 2022, Judge Netburn issued an order directing Plaintiff to "identify with specificity which manuscripts were infringed" by the *Crave* Series. ECF No. 67 at 1. Plaintiff

---

[1] The Copyrighted Material includes 17 separately copyrighted versions of Plaintiff's unpublished manuscript (the "Freeman Manuscripts") and 13 individually copyrighted sets of notes for the manuscripts (the "Freeman Notes").

1

complied with the order and produced 30 documents—the 17 Freeman Manuscripts and 13 sets of Freeman Notes—each of which she contends were infringed by the *Crave* Series.[2] If, as Freeman alleges in this case, Wolff copied sufficient original protectable expression from each of these different iterations of Mrs. Freeman's work, then it is not only proper *but necessary* for her to seek to compare Wolff's work to each of those iterations.

Yet Judge Netburn subsequently ordered Plaintiff to "identify [just] two manuscripts to serve as the primary works that establish her copyright claim." Judge Netburn's Order at p. 4. Concerned that Judge Netburn's Order was "functionally equivalent to a dispositive motion and bars the majority of [Plaintiff's] claims," Freeman sought review by this Court. ECF No. 112 at 2. This Court disagreed with Plaintiff, finding that Judge Netburn "did not admit or exclude evidence" but merely required Plaintiff to select "two test examples" to serve as a "primary version of the manuscripts" so that the fact finder may "effectively" determine "whether the parties' works contain similarities of plot, theme, dialogue, mood, setting, pace and sequence." Court's Order at p. 3.

Freeman brings this motion to seek clarification of the Court's Order. If Judge Netburn's Order does not limit Plaintiff's claims or preclude any evidence from introduction at trial, then it is unclear what it does or why Plaintiff would be limited to "two test examples" for the fact finder to consider. Clarification is critical to ensure that the parties understand the significance of the "two test examples," what discovery and claims remain proper (or are limited) with regard to the other iterations of Plaintiff's work, and whether anything in the Order is now law of the case as the parties complete discovery and then proceed to file summary judgment motions.

---

[2] Subject to a recognition that the various notes and manuscript iterations are derivative of the earlier versions of the works—and thus depend on them for context—Plaintiff believes she can further pare that list down to approximately 6 manuscripts and 13 sets of notes.

2

Freeman is also concerned that the Court has misconstrued her claims as improper aggregation claims. When quoting the district court ruling in *Dean v. Cameron*, 53 F. Supp. 3d 641 (S.D.N.Y. 2014), this Court omitted critical language which limited the holding of that case to its facts, and ignored controlling Second Circuit authority which permits aggregation of related materials in case like this one. Indeed, this is not a case in which Freeman is aggregating fragments from unrelated manuscripts and notes. Rather, she is properly seeking to compare the offending work to a combination of creative works which "constitute a discrete series of works." *See Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.,* 150 F.3d 132, 138 (2nd Cir. 1998).

Accordingly, Plaintiff respectfully asks the Court to clarify that she will not be precluded from demonstrating substantial similarity with respect to any of the Copyrighted Material alleged in the FAC, or from eliciting any testimony that may be relevant to making such a demonstration. Or, to the extent this Court's Order held otherwise, Plaintiff respectfully requests that it be reconsidered and reversed.

**ARGUMENT**

**I.      PLAINTIFF RESPECTFULLY ASKS THE COURT TO CLARIFY THE SCOPE OF ITS ORDER**

Discovery is in its final weeks and the parties are readying for the summary judgment stage of this litigation. But it is unclear whether or to what extent this Court's Order reviewing Judge Netburn's decision has affected what is properly discoverable and/or what may properly be the subject of comparison in this case. Plaintiff respectfully asks the Court to clarify that neither Judge Netburn's ruling, nor its Order thereon, was designed to limit the scope of Plaintiff's claims or her ability to take and present reasonable discovery on those claims.

Clarification of an order previously issued is within the sound discretion of the Court. *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, 2015 WL 13840969, at *9 (S.D.N.Y. 2015) (citing *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 15 (1945)). This is especially true where,

as here, Defendants may argue that the Court's Order (or *dicta* from Judge Netburn's Order that the Court's Order implicitly affirmed) has narrowed the scope of Plaintiff's claims even before dispositive motions. *See Stinson v. City of New York*, 2012 WL 2952840, at *11 (S.D.N.Y. 2012) (clarification was appropriate where defendants offered an "incorrect interpretation" of a previously issued order).

Although the Order states that Judge Netburn "did not make trial rulings" and "did not admit or exclude evidence" (Court's Order at 3), it affirms a ruling which at least suggests that the factfinder should compare Wolff's *four* books to only *two* iterations of Freeman's work despite the allegations of the pleadings (*i.e.*, that the *Crave* Series copies protectable expression from a much wider body of manuscripts and notes). Given the context behind Judge Netburn's Order—which states that Plaintiff "must identify the work she alleges was copied" (ECF No. 105 at 3-4), even though Plaintiff already did so in the Complaint—Defendants may very well seek to rely on the Order to prevent Plaintiff from asserting her copyright claims with respect to all but two iterations of the Copyright Material. It is critical that all parties be clear as to the intent of the Court and the import of the Order in that regard.

Plaintiff's primary concern is that the Court's Order—and Judge Netburn's underlying decision which at least suggests that Plaintiff's claims are based on an improper aggregation theory—will be construed as "law of the case," thus effectively disposing of a substantial part of her claims without addressing their merits. It is unclear what the Court's Order does or why Plaintiff was required to "identify two manuscripts to serve as the primary works that establish her copyright claim" (ECF No. 105 at 4) if that was not the intention. But if the evidence ultimately shows that the *Crave* Series copied protectable authorship from some or all of the remaining 28

4

works Freeman has identified, then a finding of infringement would be proper for that copying regardless of what the finder of fact determines with respect to the two "primary" manuscripts.

Plaintiff expects that it was not this Court's intention to dispose of her infringement claims with respect to all but two of the 30 copyrighted works she identified in discovery as the basis of her claims, but the Court's Order was unclear in that regard. Accordingly, Plaintiff respectfully asks the Court to clarify that she will not be precluded from presenting evidence and argument that the 30 iterations of her work identified in discovery contain original and copyrightable expression that was copied in the *Crave* Series. Plaintiff further asks this Court to clarify what it means by "test example" (Court's Order at p. 3), and how a "test example" should be treated differently from any other copyrighted work alleged in the Complaint.

**II. TO THE EXTENT THE COURT'S ORDER LIMITS THE NUMBER OF COPYRIGHTED WORKS FOR WHICH PLAINTIFF MAY SEEK TO ESTABLISH SUBSTANTIAL SIMILARITY, THE ORDER WAS IMPROPER AND SHOULD BE RECONSIDERED**

If the intent of this Court's Order was to limit Plaintiff's claims to a comparison of the four *Crave* books to just "two manuscripts to serve as the primary works that establish her copyright claim" (Court's Order at p. 3), or to limit her right to seek discovery regarding the copying of her other works, that Order warrants reconsideration for two reasons. *First*, the Court's statement that a plaintiff cannot aggregate a series of related works for purposes of establishing substantial similarity to an allegedly infringing work is contrary to controlling Second Circuit authority. *Second*, and relatedly, the Court suggests that Freeman's manuscript drafts and notes are each distinct works when in fact they are related iterations of a single work which together form a protectable universe of expression. As such, aggregation is permissible in this case.

A. **Controlling Authority Permits A Copyright Plaintiff To Aggregate Related Works For Purposes Of Determining Substantial Similarity**

In the Second Circuit, a plaintiff may establish substantial similarity by comparing an allegedly infringing work to a combination or series of related works in the aggregate. *Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 138 (2d Cir. 1998) ("Where the secondary work focuses on an entire continuous television series . . . there is no basis for looking in isolation at the amount copied from each separately copyrighted episode."). In *Castle Rock*, the defendant copied "643 fragments from 84 individually copyrighted *Seinfeld* episodes" to create what was deemed to be an infringing trivia game. *Id*. at 138 ("By copying not a few but 643 fragments from the *Seinfeld* television series . . . *The SAT* has plainly crossed the quantitative copying threshold"). In holding that it was appropriate to aggregate Plaintiff's 84 individually copyrighted works to determine whether they were substantially similar to defendant's trivia game, then-Judge Sotomayor cited a history of Second Circuit precedents[3] and explained:

> Although 17 U.S.C. § 106 speaks in terms of a singular copyrighted 'work,' it would elevate form over substance to conclude that [defendant's] copying of 643 fragments from 84 individually copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634–question trivia quiz book poses a few questions from each of 84 unrelated television programs, books, movies, or any combination of creative works that do not constitute a discrete series of works.

---

[3] *See, e.g.*, *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.,* 996 F.2d 1366, 1372–73, 1381 (2d Cir.1993) (finding substantial similarity between infringing book and 8 episodes of *Twin Peaks* weekly television series seen as a whole); *Wainwright Secs. Inc. v. Wall St. Transcript Corp.*, 558 F.2d 91, 94 (2d Cir.1977) (abstracts of a number of research reports treated cumulatively in fair use analysis); *Craft v. Kobler,* 667 F.Supp. 120, 124–25 (S.D.N.Y.1987) (passages taken from 15 separate books of copyright holder treated cumulatively in finding infringement); *Salinger v. Random House, Inc.,* 811 F.2d 90, 98 (2d Cir.1987) (copying of Salinger letters not fair use because, among other factors, secondary work copied one-third of 17 letters and 10 percent of 42 letters).

*Id.* Justice Sotomayor's reasoning still holds true in this Circuit. *See, e.g.*, *Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 535 n.14 (S.D.N.Y. 2008) ("The Court analyzes the amount of expression copied from the *Harry Potter* series in the aggregate, rather than from each individual novel in the series, following the Second Circuit's reasoning in *Castle Rock*").

Ignoring the above authority, Judge Netburn declared that a plaintiff "cannot rely on an aggregation of multiple works." Judge Netburn's Order, at p. 3. In affirming that decision, this Court quoted the district court decision in *Dean v. Cameron* which stated in part that "a court must not 'aggregate' a plaintiff's work, but must consider each allegedly infringed work independently." Court's Order, at p. 3 (quoting 53 F.Supp.3d 641, 647 (S.D.N.Y. 2014)). However, that quote omitted critical language, as the full quote is: "Finally, *to the extent relevant here*, a court must not 'aggregate' a plaintiff's work, but must consider each allegedly infringed work independently." *Id.* at 647 (emphasis added).

That "to the extent relevant here" language is critical to the *Dean* decision because it conveyed that the finding was based on the facts of that case, in which artist William Roger Dean accused James Cameron of "infringing his copyright in fourteen 'original artworks'" in the film *Avatar*. *Id*. At issue in *Dean* were 14 discrete works of art created over the course of 35 years that were not derivatives of, versions of, iterations of, or otherwise related to each other in any meaningful way. *Dean* is thus factually distinguishable from this case, in which Freeman only seeks to compare the *Crave* Series to a collection of work that are all directly related to each other and in fact are all part of or related to a single work.

Moreover, Dean's complaint failed to specify which parts of defendant's film constituted the infringing portions of the film—unlike here, where the FAC includes "an extensive and impressive display (61 pages) of examples of closely similar language appearing in plaintiff's . . .

30-volume [Copyrighted Material]" which appears "often word-for-word" in the *Crave* Series in a manner that "supports a natural conclusion that the uses are not merely coincidental." Order, at p. 2. In *Dean*, the plaintiff was essentially asking the court to consider isolated screenshots from a nearly three-hour film—many of which were taken out of context and manipulated by the plaintiff—and compare them to 14 static photographs that plaintiff took over a period of 35 years.

The court's limited ruling in *Dean* has no application here, where all 17 Freeman Manuscripts and 13 sets of Freeman Notes represent inextricably related iterations of a single work, which together form a protectable universe of expression. *See Warner Bros.*, 575 F. Supp. 2d at 535 n.14.

### B.    Freeman's Copyrighted Material Represents Iterations of a Single Work

Judge Netburn's Order stating that Freeman "cannot rely on an aggregation of multiple works," and this Court's affirming Order, wrongly characterize the Freeman Manuscripts and Freeman Notes as "multiple works[.]" In fact, they are discrete *iterations* of a single work. Indeed, Freeman's Copyrighted Materials—drafts, notes, outlines, subplots, character descriptions, etc., all relating to the same original manuscript—represent a far more cohesive and intertwined body of work than the 84 individually copyrighted television programs at issue in *Castle Rock*, where aggregation was permitted. *Castle Rock,* 150 F.3d at 138. They also represent a more cohesive and related series of works than the 8 episodes at issue in *Twin Peaks,* 996 F.2d 1366; the research reports at issue in *Wainwright,* 558 F.2d 91; the 15 separate books at issue in *Craft,* 667 F.Supp. 120; and the 59 letters at issue in *Salinger,* 11 F.2d 90.

Furthermore, as explained in Plaintiff's objections to Judge Netburn's Order, each iteration of Freeman's Copyrighted Materials would most likely be considered a derivative of any preceding registered version—meaning the copyright in any subsequent iteration would only protect the new material contained therein, thus requiring Plaintiff to sue on all of the preceding registered versions

8

of any particular iteration of the manuscript to cover all of the material contained in any subsequent version.  *See* ECF No. 112, at 9-10.

If, following the close of discovery, the Court finds insufficient evidence to support a finding of infringement as to particular iterations of Freeman's Copyrighted Materials, then a limitation as to some of those particular iterations may be appropriate.  But it is not appropriate to do so before dispositive motions have been filed and as discovery is underway. If that is what Judge Netburn's Order (and the Court's Order thereon) indeed aimed to do, then Plaintiff respectfully requests that they be reconsidered and reversed.

## CONCLUSION

Plaintiff respectfully asks the Court to clarify the impact and scope of its Order.  In the alternative, to the extent the Court's Order allows Judge Netburn's decision to limit the number of copyrighted works for which Plaintiff may seek to establish substantial similarity on summary judgment or at trial, Plaintiff respectfully requests that the Order be reconsidered and reversed.

Dated: March 7, 2023  
New York, New York

Respectfully submitted,

By:  */s/ Scott Alan Burroughs*  
Scott Alan Burroughs, Esq.  
Laura M. Zaharia, Esq.  
DONIGER / BURROUGHS  
247 Water Street, First Floor  
New York, New York 10038  
(310) 590-1820  
scott@donigerlawfirm.com  
lzaharia@donigerlawfirm.com  
Attorneys for Plaintiff