

Attorneys admitted in
California, New York,
Texas, Pennsylvania, and
Maine

Sender's contact:
lzaharia@donigerlawfirm.com
(310) 590-1820

Doniger / Burroughs Building
603 Rose Avenue
Venice, California 90291

Doniger / Burroughs NY
247 Water Street, First Floor
New York, New York 10038

March 10, 2023

**DELIVERED VIA ECF**

The Honorable Sarah Netburn
Thurgood Marshall Courthouse
40 Foley Square, Courtroom 219
New York, NY 10007

        Case Title:    *Freeman v. Deebs-Elkenaney et al*,
                              1:22-cv-02435-LLS-SN
        Re:             Reply Brief

Your Honor:

     Plaintiff, Lynne Freeman, respectfully submits this reply brief in further support of her motion for an order permitting a forensic examination of the hard drive of the computer(s) on which relevant files were created, and the natives of all emails previously produced by Defendant Tracy Deebs-Elkenaney p/k/a Tracy Wolff ("Wolff"), in addition to access to her email accounts and computers to conclusively establish whether backdating took place. (Dkts. #131, #157.)

     "Within the context of discovery, relevance has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Arias-Zeballos v. Tan*, No. 06 CIV 1268 GEL KNF, 2007 WL 1599150, at *1 (S.D.N.Y. May 31, 2007)(internal quotes omitted). Discovery requests are relevant so long as they are "reasonably calculated to lead to the discovery of admissible evidence," even if the information sought is not itself admissible at trial. Id.

     The discovery that Freeman seeks is relevant because it directly addresses the claims at issue. Courts have granted similar relief in instances where "the Defendants may have relevant information, on their computer equipment, which is being lost through normal use of the computer, and which might be relevant to the Plaintiff's claims, or the Defendants' defenses. This information may be in the form of stored or deleted computer files, programs, or e-mails, on the Defendants' computer equipment." *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D. Minn. 2002). Contrary to Wolff's suggestion, it is not unusual for a court to enter an order requiring the mirror imaging of the hard drives of any computers that contain documents responsive to an opposing party's request for production of documents. See e.g., *Communications Center, Inc. v. Hewitt*, 2005 WL 3277983 at *1 (E.D.Cal., Apr.5, 2005). District courts have consistently held that electronic data stored on computer hard drives, including searches for "deleted" files and related data, is subject to discovery. See *Rowe Entm't, Inc. v. The William Morris Agency, Inc.*, 205 F.R.D. 421, 428 (S.D.N.Y.2002); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316–17 (S.D.N.Y.2003); *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D.Minn.2002); *Orrell v. Motorcarparts of America, Inc.*, No. 3:06CV418–R, 2007 WL 4287750, at *7 (W.D.N.C. Dec.5, 2007); *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 572 (N.D.Ill.2004); *Simon Prop. Group L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 640 (S.D.Ind.2000); *Playboy*

*Enters., Inc. v. Welles*, 60 F.Supp.2d 1050, 1053 (S.D.Cal.1999).

In similar cases where trade secrets and electronic evidence are both involved, the Courts have granted permission to obtain mirror images of the computer equipment which may contain electronic data related to the alleged violation. See e.g., *Physicians Interactive v. Lathian Systems, Inc.*, 2003 WL 23018270 at *10 (E.D.Va., Dec.5, 2003); *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 651–53 (D.Minn.2002). Such access is one method of assuring the preservation of evidence since electronic evidence can easily be erased and manipulated, either intentionally or unintentionally (by overwriting through continued use of the computer). *Balboa Threadworks, Inc. v. Stucky*, No. 05-1157-JTM-DWB, 2006 WL 763668, at *3 (D. Kan. Mar. 24, 2006).

Here, mirror imaging is warranted by the suspicious issues raised in Freeman's initial correspondence—issues that Defendants' opposition does not actually address. Indeed, the Declaration of Benjamin Rose ("Rose Declaration", Dkt. #151) raises more questions than it answers.[1]

As stated in Freeman's moving letter, there is good cause to believe key evidence has been altered and tampered with. The lack of the "Message-ID" on the September 17, 2010 e-mail at issue implies that this e-mail was not sent through an e-mail server, or that the Message-ID metadata was removed to prevent the true date it was sent from being determined. Either alternative suggests the email was manipulated. Declaration of Kevin Cohen ("Cohen Decl."), ¶20. Additionally, the "sent" email portion does not have as many "checksums" as the "received" email portion and is thus not as trustworthy because it does not have as many verifying attributes. Cohen Decl., ¶22.

Other circumstances suggest that backdating may have occurred as well. For example, Defendant Emily Sylvan Kim asked Freeman for permission to reference a "Ducati Streetfighter S" in Freeman's work in December 2010, but this reference appears in Wolff's alleged June 2010 draft. Declaration of Lynne Freeman ("Freeman Decl."), ¶¶3-5. If the reference to "Ducati Streetfighter S" was allegedly in Wolff's June 2010 draft, it makes no sense that Kim would ask Freeman about it and seek her permission to use this reference months later in December. Freeman Decl., ¶¶6-7. And the Wolff Declaration (Dkt. #150) fails to address when Wolff first used the "Ducati Streetfighter S" in her manuscript, why she selected that model, where she obtained that reference from, and other key information. Access to Wolff's email accounts and computers is necessary to conclusively establish whether emails were actually sent and backdating took place.

Wolff disputes that there has been any evidence alteration by pointing to little more than the suspect evidence itself and then arguing that Plaintiff has no concrete proof of the malfeasance. But that is exactly the point and the Catch-22 of Wolff's argument—a limited third-party forensic examination to obtain the concrete proof cannot first require concrete proof.

Importantly, if Rose wanted to actually establish that the documents in question were not tampered with he easily could have done so given his access to Wolff's email and files. He could have used additional tools to perform a thorough investigation because Intella is insufficient. Cohen Decl., ¶¶19, 24. But he did not do so. Instead, he simply provides a smokescreen of irrelevant statements.

For example, Rose states that no alteration or manipulation of any documents occurred during the document collection process. Rose Decl., ¶5. No one suggests otherwise. Rather, given the inconsistencies set forth in Freeman's moving brief, it appears that the documents may have been altered before Rose collected the requested materials. Cohen Decl., ¶12.

---

[1] Rose claims that "this is not a case that justifies a forensic examination of Defendant's computers and email account", but does not elaborate on whether any of his prior experience involved similar claims at issue. Rose Decl., ¶16.

Rose claims that he collected emails from the email account me1542@sbcglobal.net, but if he simply accessed Wolff's emails, the manipulated information in any attachments would still be there. Relatedly, he does not indicate that he preserved or collected the electronic storage devices, including hard drives and computer drives, that the emails or other relevant documents resided on. Rose Decl., ¶5. The single email account reviewed does not address the entire scope of search necessary for document collection. Cohen Decl., ¶24. Indeed, responsive documents, including other copies or versions of the requested materials, are likely to exist only on Wolff's computer instead of her email account.

Next, Rose claims to have conducted a review of the file "tempest rising" by using the tool Intella. Rose Decl., ¶11. But Intella does not present the same information that would be available through a forensic examination of the computers and storage devices, "received" emails, and other artifacts surrounding the document (such as metadata reflecting the version of Microsoft Office used to create this document). Cohen Decl., ¶19. Given that a full review was not conducted and that the search appears to have been limited to Wolff's single email account, the request to inspect Wolff's hard drives is reasonable and not duplicative of prior requests.

Rose also indicated that he found nine usernames in other documents but it appears he did not investigate them. Rose Decl., ¶14. Indeed, Exhibit D reflects a Saved History of nine custodian accounts. Rose Decl., ¶11, Ex. D. Contrary to Rose's assertions, this is suspicious, particularly because the version of Microsoft Office that was used contains a "Save History" of the last 10 authors, but Exhibit D only reflects a "Save History" of 9 authors. Cohen Decl., ¶13. The editing time is also suspicious and inconsistent. Cohen Decl., ¶¶14-16. For example, the file "tempest rising.doc" has an "editing time" of four minutes, and no other edits on the computer occurred since October 5, 2009. Cohen Decl., ¶15. This is highly suspicious because four minutes is insufficient time to create substantial difference from one document to the next, which means everything must have been written prior to October 5, 2009—but Defendants don't even pretend that to be the case. Cohen Decl., ¶14.

Additionally, the August 25, 2010, email contained a total of three files, all with the Last Modified Author of "owner" and of the 30 files reviewed with the Last Modified Author of "owner", 27 files contain xml encoded metadata. Cohen Decl., ¶16.  The three attached files did not, which suggests that most likely a different Word processing program, which would be consistent with backdating a computer from a future date, was used to create the three documents, as opposed to the other 27 documents. Id. This suggests computer date manipulation. Cohen Decl., ¶17. And the Rose Declaration fails to address this.

In light of the above discrepancies, further inspection of Wolff's computer, hard drive, and email accounts is warranted. Freeman's investigation can be done under Rose's supervision using an agreed upon inspection protocol to ensure that Freeman has the ability to conduct a complete inspection of relevant documents while protecting Wolff's non-relevant documents from disclosure. Cohen Decl., ¶¶7-8. Courts frequently allow such procedures. See *McPeek v. Ashcroft*, 202 F.R.D. 31, 34 (D.D.C.2001)(ordering limited efforts at recovery of deleted data in order to assess the recoverability of relevant information, in light of the cost of such recovery, in order to determine the scope of further efforts); *Playboy Enterprises, Inc. v. Welles*, 60 F.Supp.2d 1050, 1053 (S.D.Cal.1999) (stating that discovery of electronic data is appropriate, and the only concern is that "the producing party be protected against undue burden and expense and/or invasion of privileged matter"). Such a concern is not present here, as Freeman is willing to bear the cost. Moreover, producing documents in native format is neither wasteful (in light of the relevant metadata they contain), nor is it burdensome.

Indeed, there are three relevant "export" options, "Native", "PDF", or "Load File", in Intella. Cohen Decl., ¶18. These options illustrate that export of the native files is possible by pressing a button and selecting a

few options and should thus not be considered extremely burdensome. Id. Furthermore, Rose provides zero explanation for why he believes that "allowing Plaintiff to create mirror images of Defendant's hard drives, based on suspicions, is intrusive and excessive, and is not proportional or warranted based on Plaintiff's assertions." Rose Decl., ¶16. Rose's baseless statement contradicts relevant case law. See *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645 (D. Minn. 2002) (granting plaintiff's motion to compel defendants to produce computer records and appoint neutral expert in computer forensics to retrieve and examine the records in copyright infringement suit, where plaintiff proffered evidence that relevant information might be in the form of stored or deleted computer files, programs, or e-mails, on defendants' computer equipment). Given that Wolff has not turned over the evidence that she is reasonably expected to have and that Wolff fails to have undertaken any steps to look into whether probative files were deleted, Freeman's request is reasonable, not burdensome, and proportional to the needs of the case.

Finally, given the discrepancies above, Wolff's request for an award of attorneys' fees in connection with this motion is not appropriate.

We thank Your Honor for consideration of this matter.

Respectfully submitted,

By: */s/ Laura M. Zaharia*
Scott Alan Burroughs
Laura M. Zaharia
DONIGER / BURROUGHS
For the Plaintiff