UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYNNE FREEMAN,<br><br>Plaintiff,<br><br>v.<br><br>TRACY DEEBS-ELKENANEY P/K/A TRACY WOLFF, et al.,<br><br>Defendants. | Case No. 1:22-cv-02435-LLS-SN<br><br>**DECLARATION OF KEVIN COHEN** |

## DECLARATION OF KEVIN COHEN

I, Kevin Cohen, hereby declare as follows:

1. I am above eighteen (18) years of age and am competent to give the testimony set forth below. Said testimony is given from my own personal knowledge. I make this declaration in support of Plaintiff's Motion to Compel.

2. I am employed by Data Triage Technologies, LLC, a consulting company for computer forensics and electronic discovery where I have been President since 2001. I have been a Computer Forensic Consultant since 1998. I have personal knowledge of the facts stated herein and if called as a witness can testify thereto.

3. I've obtained certifications of Certified Information Systems Security Professional ("CISSP") in 2001, EnCase Certified Examiner ("EnCE") in 2003, GIAC Certified Intrusion Analyst ("GCIA") in 2005, GIAC Certified Forensic Analyst ("GCFA") in 2006, and Certified Information Systems Auditor ("CISA") in 2006. SysAdmin Audit Network Security ("SANS") Institute authorizes the GIAC certifications and Guidance Software authorizes the EnCE certifications.

4. I graduated with a BA degree in Economics from the University of Colorado in 1994. I continue to take advanced training on an ongoing basis in the field of Computer Forensics. I have worked as a court-appointed neutral on computer forensics issues for the Superior Court of California. I have been qualified as an expert witness and have given testimony on computer forensics issues. A true and correct copy of my curriculum vitae is attached as Exhibit A.

5. I've been retained by the Plaintiff in this matter to determine if documents provided by Ms. Tracy Wolf were manipulated prior to production. I understand that Plaintiff's

attorneys have requested an order to permit a forensic examination of Ms. Wolff's computers and email, access to Ms. Wolff's electronic stored information that would contain information related to the case.

6. It is common practice in my line of work that computer experts are provided access to opposing party's electronically stored information for purposes of inspecting, copying, testing and sampling the data, especially when there are allegations of misconduct such as those that exist in this case, including the evidence I have obtained from some of the documents provided by defendants which support Ms. Freeman's claims.

7. Usually when a computer expert is authorized to inspect, copy, test and sample data, the responding party has claims of privilege and privacy. This can include personal identifiable information (PII) as well as other protected data not related to the case. Since contents of protected and privileged data are not relevant, it is easy to create an agreed upon protocol by both parties' experts to allow for an inspection to take place while ensuring that protected and privileged information is not revealed to demanding party.

8. Defendant's computer forensic expert Mr. Benjamin Rose appears to be a competent computer expert and should be able to easily co-create a protocol for inspection where he would supervise the inspection process.

9. There are two main emails in question that contain attached files where Plaintiff believes files were backdated and email metadata altered: an email dated August 25, 2010, which contains three attached files, and an email dated September 17, 2010 which contains 4 attached files. The attached files contain words, phrases and concepts that Ms. Freeman shared with her publisher after the September 17, 2010 email and has reason to believe the emails and files are not authentic.

**Ease of Manipulation**

10. It would have been easy for the defendant to backdate a file and attach it to an email. It would require nothing more than changing the time of a computer to August 3, 2010, opening a word document, and selecting Save As.

11. It would have been just as simple for defendant to backdate an email and add it to a mail server or mail archive where the email could be edited by hand and added to the mailbox.

12. Mr. Rose declares that no alteration or manipulation of any email or document occurred during the collection process nor during the investigation process that Rose performed. But if files and emails were manipulated, they would have been altered before Mr. Rose collected the email. Mr. Halperin misleads the court by stating in his March 3, 2023, letter that Mr. Rose declared "no manipulation of documents or metadata occurred."

**Metadata From Documents**

13. Within the August 25, 2010, email, there was a file "tempest rising.doc" that contained words and phrases allegedly pre-dating Ms. Freeman's work. This Word document is objectively suspect. When examining the Word document, I noticed it had metadata that describes it came from a Microsoft Word version from Office XP from 2001. Office XP metadata contains a "Save History" of the last 10 authors. But Exhibit D to Mr. Rose's declaration shows a "Save History" of 9 Authors ("Author, Author, Author, Author, Author, Author, Author, Author, owner"), meaning the file was saved 9 times and not 10.

14. I reviewed 30 documents provided by Plaintiff where the Last Modified Author is "owner". The documents range in date from October 5, 2009, through August 25, 2010. I am informed that Ms. Wolf identified that she changed computers about once per year. So, it would be fairly reasonable to believe that this was Ms. Wolff's computer for that time frame. In Exhibit D of Mr. Rose's declaration, metadata shows that the file "tempest rising.doc" has an "Editing time" of 4 minutes - 00:04:00. No other edits on the

computer occurred since October 5, 2009. Thus, I would identify "tempest rising.doc" as highly suspect.

15. The contributor to the document "tempest rising.doc" only saved the document once. The total edit time appears to be 4 minutes. These are the changes that were created from the original format from the previous computer to the "new" computer where the Author is "owner". This suggests that the term "Ducati Street Fighter S" would have been in there even a year earlier than that and most likely not have been added in that four minute time period. Given that four minutes is not much time to create substantial difference from one document to the next, this means just about everything prior to this was written before October of 2010.

16. The August 25, 2010, email contained a total of three files, all with the Last Modified Author of "owner". Of the 30 files I reviewed with the Last Modified Author of "owner", 27 files contain xml encoded metadata. The three attached files did not. This suggests that most likely a different Word processing program, which would be consistent with backdating a computer from a future date, was used to create the three documents, as opposed to the other 27 documents.

17. The September 17, 2010, email contains 4 attachments. One of the attachments "mystic zodiac proposal.doc" has a Last Modified Author of "tracy elkenaney". Of all the documents produced by Defendants, only 7 documents contained an Author of "tracy elkenaney", and 3 of them were attached to this email. The time period of documents containing "tracy elkenaney" is from July 23, 2010, through August 4, 2010. This is a period of less than two weeks, and not consistent with Ms. Wolff's identifying she changed her computer once a year. This might be indicative of computer date manipulation.

DECLARATION OF KEVIN COHEN

**Metadata From Email**

18. Mr. Halperin states in his letter that producing email in native form was hugely wasteful and overly burdensome. Nonsense. Producing documents in native form is the only way to view critical metadata that confirms the authenticity of the documents, not only for the emails but the attached documents also. A native production is also not burdensome. It is actually easier to produce natively than in PDF. In this case Mr. Rose used Intella, which has an Export option, and the export can either be "Native", "PDF" or "Load File". Each option only takes seconds to operate. Native Production is not burdensome.

19. Ms. Wolff's questionable files are only from her sent emails (not received emails which contain additional authentication metadata). Mr. Rose states it is normal for the metadata within Ms. Wolff's emails to not contain Message-IDs in sent messages; however this is only from a "sampling of other sent emails". It is unclear what Mr. Rose is referring to "sampling", as it would suggest some emails from the "sample" set don't contain the Message-ID, while the rest do. Since there is a limited number of emails, we can easily identify all emails with a Message-ID verses the ones without. Mr. Rose also states that he only used Vound Software's Intella, which is not enough to perform a thorough investigation. Intella does not present the same information that would be available through a forensic examination of the computers and storage devices, "received" emails, and other artifacts surrounding the document (such as metadata reflecting the version of Microsoft Office used to create this document).

20. The lack of the "Message-ID" on the September 17, 2010 e-mail at issue implies that this e-mail was not sent through an e-mail server, or that the Message-ID metadata was removed by a program that removes metadata from an e-mail to prevent the true date it was sent from being determined. Either alternative suggests the email was manipulated.

DECLARATION OF KEVIN COHEN

Mr. Rose states that he checked his personal sbcglobal account, but does not state where he obtained the messages from. If he did not obtain them from the internet service provider, and instead obtained them from an old hard drive, the emails would not contain the Message-ID. On the other hand, Mr. Rose obtained Ms. Wolff's emails from the internet service provider. When I have examined email from SBCGlobal data that is on the server in the Sent side, I can see Message-IDs. It is most probable that Mr. Rose is pulling the SBCGlobal emails from one of his old projects hard drives and not from the ISP. Hence, his opinion could be wrong. I cannot verify that unless I see it.

21. An examination of Wolff's computers is warranted because it is likely that the suspect documents do not only reside in Sent email, but on other electronic stored devices as well. When most computer users move from one computer to another, the Documents and Desktop folders are copied. Similarly, archive emails are often copied from one computer to another. Since revisions do not appear to reside on computers and emails only appear to be from the internet service provider and not archives, the initial investigation of Mr. Rose was incomplete. A more thorough examination of attached files within Ms. Wolff's emails is also necessary.

22. Additionally, the "sent" email portion does not have as many "checksums" as the "received" email portion and is thus not as trustworthy because it does not have as many verifying attributes.

**Examination**

23. Mr. Rose's examination identified approximately 1062 Word documents with names : "owner" (62), "Owner" (8), "Author" (3), "tracy" (9), "Tracy Deebs-Elkenaney" (9), "tracy elkenaney" (1), "user" (2), "User" (1), "Admin" (5), and "Administrator" (5);

however, he admits he did not perform tools or an examination to relate the usernames on the documents.

24. Mr. Rose never conducted a full examination of the questionable files. The single email account reviewed does not address the entire scope of search necessary for document collection. As described above, we have enough information to demonstrate that not only are the files questionable, but they appear to be altered as the word documents appear to contain metadata completely different from all other documents of that type. Mr. Rose would need to do an investigation to prove otherwise. If Mr. Rose performs an investigation, then Plaintiff should also be allowed to investigate.

I declare under penalty of perjury that the foregoing is true and correct under the laws of the state of California and if asked to do so would testify competently thereto. This declaration is signed in Los Angeles, California on March 10, 2023.

By: _____
Kevin Cohen
Declarant