

COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP

41 MADISON AVENUE
NEW YORK, NY 10010
T: 212 974 7474
F: 212 974 8474

BENJAMIN HALPERIN
212-974-7474
BHALPERIN@CDAS.COM

March 15, 2023

**VIA ECF**
The Honorable Sarah Netburn
S.D.N.Y. Thurgood Marshall Courthouse
New York, NY 10007

Re: *Lynne Freeman v. Tracy Deebs-Elkenaney et. al.*, 1:22 Civ 02435 (LLS)(SN)

Dear Judge Netburn:

Defendants respectfully move to compel Plaintiff to produce certain communications improperly withheld as privileged. As set forth below, Plaintiff has not carried her burden to establish that these communications are privileged or work product as claimed, and appears to have waived privilege over certain communications from attorneys by sharing them with third parties. Additionally, Plaintiff served untimely supplemental privilege and redaction logs long after the deadline for serving her privilege log, and therefore waived those privilege claims. Plaintiff should be compelled to produce the communications identified below.

## I. Background

Plaintiff initially did not provide a privilege log when withholding or redacting documents under claims of privilege. After Defendants raised this issue with the Court (ECF No. 78 at 5), the Court ordered Plaintiff to serve a privilege log by December 23, 2022 (*see* ECF No. 93). Plaintiff then sought and received several extensions of this deadline, ultimately extending it to January 13, 2023. (*See* ECF No. 104.) Plaintiff served a privilege log on that date. Ten days later, on January 23, Plaintiff served a revised privilege log containing substantive changes. ("Priv. Log" or "Log," Ex. A.)[1] On January 30, Defendants wrote to Plaintiff explaining that numerous entries in the Privilege Log either were not privileged or that insufficient information was provided to support Plaintiff's privilege claims. (Ex. B.) The next day, on January 31, Plaintiff served "a supplemental privilege log containing documents that were inadvertently left off the original log and a redaction log." (Ex. C.) The supplemental privilege log ("Supp. Log," Ex. D) contained 15 new entries. The redaction log ("Redaction Log," Ex. E) contains approximately 110 entries. Plaintiff stated via email that the Redaction Log was served "because we realized that we did not include documents redacted on the grounds of privilege on the original privilege log." (Ex. C at 1.) On February 1, Defendants emailed Plaintiff explaining that the Supplemental and Redaction Logs were untimely. On February 3, Plaintiff sent Defendants a letter that refused to produce any communications in any of the logs. ("Pl.'s 2/3/23 Letter," Ex. F.) The parties discussed these (and other) issues at a Zoom meet and confer on February 28, where Plaintiff refused to withdraw any privilege claims and counsel referred Defendants to the positions stated in Plaintiff's February 3 letter.

## II. Communications Where No Privilege Is Established Or Privilege Was Waived

"It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, …a burden not 'discharged by mere conclusory or ipse dixit assertions.'" *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224-25 (2d Cir. 1984); *see also, e.g.*, *Fifty-Six Hope Rd. Music Ltd. v. UMG Recordings, Inc.*, 2010 WL 343490, at *3 (S.D.N.Y. Feb. 1, 2010) (party invoking privilege or work product "bears 'the heavy burden' of establishing its applicability"). To do this, "as to each

[1] Privilege Log entries are labeled either "Individual" or "Categorical" and are cited herein as either "Indiv. No. _" or "Categ. No. _." All exhibit cites herein are exhibits to the 3/15/23 Declaration of Benjamin S. Halperin.

document" withheld, Plaintiff must "set forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 158 (S.D.N.Y. 2014); *see also, e.g.*, *United States v. Constr. Prod. Rsch., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) ("[I]f the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected."). "Conclusory" or "ipse dixit assertions," or "'vague' descriptions[] which fail[] to provide sufficient information," do not carry a party's "'heavy burden' of proving that the privilege or protection applies to the documents or communications at issue." *McNamee v. Clemens*, 2014 WL 1338720, at *4 (E.D.N.Y. Apr. 2, 2014); *see also Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 289 F.R.D. 41, 47-48 (E.D.N.Y. 2011), *on reconsideration in part*, 2013 WL 12362006 (E.D.N.Y. Feb. 12, 2013) (privilege log "not 'adequately detailed'" where "[t]he vast majority of the descriptive portions of the log do not set forth specific facts that establish the elements of the attorney-client privilege or work-product doctrine and rely on conclusory assertions of the claims").

Moreover, it is well-established that "subsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed." *See, e.g.*, *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973); *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 563 (S.D.N.Y. 2008) ("The attorney-client privilege is waived if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the communication to a third party or stranger to the attorney-client relationship."); *U.S. v. Stewart*, 287 F. Supp. 2d 461, 464 (S.D.N.Y. 2003) (defendant's email with counsel "was clearly protected by her attorney-client privilege ... until she waived that privilege by forwarding a copy of the e-mail to her daughter"). Notably, third parties whose presence waives privilege include attorneys acting as friends or advisors rather than counsel in the matter at issue. *See, e.g.*, *Lanci v. Arthur Andersen LLP*, 1998 WL 409776, at *1-2 (S.D.N.Y. July 21, 1998) (attorney-client privilege "does not apply if the lawyer is acting as a friend, relative, accountant or agent"; "lawyer must be acting as a professional legal adviser in his capacity as such"); *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 125-126, 129-30 (N.D.N.Y. 2007) ("When an attorney is consulted in a capacity other than as a lawyer, as (for example) a … friend, that consultation is not privileged."). "The party invoking the privilege also has the burden to show that the privilege has not been waived." *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 391 (S.D.N.Y. 2015).

Finally, while work product protection is less easily waived than the attorney-client privilege, the party claiming work product protection must still carry its burden to establish that the doctrine fully applies to all information at issue. *See, e.g.*, *Safeco*, 289 F.R.D. at 47-48 (rejecting "conclusory" assertions of work product); *Fifty-Six Hope Rd.*, 2010 WL 343490, at *3 (rejecting work product claim based on "perfunctory" assertion that a third party was plaintiffs' "representative"); *Alleyne v. New York State Educ. Dep't*, 248 F.R.D. 383, 388 (N.D.N.Y. 2008) (denying work product protection where party's privilege logs provided "no basis to discern what was prepared in anticipation of litigation—as opposed to the routine business of the agency—much less a basis to discern who prepared what and whether it constitutes core or non-core work-product"); *Milke v. City of Phoenix*, 2019 WL 11766079, at *19 (D. Ariz. July 19, 2019) ("There is no basis for extending the [work product] doctrine to cover *all* communications between counsel and a client's friends and family. … To qualify, the communications must contain some confidential information about counsel's strategy or efforts.").

Here, Plaintiff did not provide enough information to support withholding many communications categorized as either privileged or work product. The limited information provided nevertheless suggests that Plaintiff waived the attorney-client privilege as to numerous



communications with counsel that she shared with non-party friends or family. Indeed, in a December 6, 2022 letter that Plaintiff's counsel first emailed to the Court and later filed on the docket, counsel wrote that "[Plaintiff] may have forwarded a few of the lawyer letters to her father or one of her other close friends/experts that were advising and helping her." (ECF No. 113-5 at 5.) As set forth below, the Privilege Log confirms this.[2]

***Communications with family members.*** The Privilege Log indicates that Plaintiff shared communications from counsel or prospective counsel with her aunt Mary McCauley and her father Michael Freeman, neither of whom is an attorney. (*See* Indiv. No. 59 (Plaintiff forwarding McCauley an "e-mail from potential counsel regarding potential representation"); Categ. No. 11 (bulk identification of communications with M. Freeman, including regarding "scope of potential attorney representation").) This waived any applicable attorney-client privilege. *See, e.g.*, *Stewart*, 287 F. Supp. 2d at 464. To the extent Plaintiff argues that these communications are work product, the Privilege Log contains insufficient information to establish this. *See, e.g.*, *Safeco*, 289 F.R.D. at 47-48. In particular, communications discussing potential representation or the scope of potential representation usually occur before an attorney's substantive work for a client has begun, and at least some portions of these communications are unlikely to contain attorney mental impressions, legal theories, or litigation strategy.

***Communications with non-retained attorneys.*** Two individuals identified in the Privilege Log, Michelle Bittner and Jennifer Holland, happen to be attorneys but do not serve as counsel as in this case. Bittner's legal practice does not appear to include copyright matters or any relevant form of litigation. (*See* Pl.'s 2/3/23 Letter at 1.) Plaintiff concedes that Bittner has represented Plaintiff in "unrelated matters" and was not retained for this litigation. (*Id.*) Documents show that Bittner, like others, served merely as Plaintiff's friend here. (*See, e.g.*, LF038212-LF038246 (Ex. G) (Plaintiff asking Bittner and other friends discussed below to read and provide feedback on her manuscript).)[3]

For seven individual entries, Bittner is included on emails with a lawyer Plaintiff sought to retain, where the authors discussed "possible representation, analysis of underlying facts of the case and legal assessment of same." (Indiv. Nos. 120, 121, 124, 125, 132, 147, 150 (last of these also including Michael Freeman).) Plaintiff separately withheld 119 communications with Bittner that discussed, *inter alia*, "Plaintiff's efforts to obtain representation" and "attorney's requests for information and Plaintiff's response," and "Plaintiff forwarding other attorney-client communications." (Categ. No. 4.) Finally, Plaintiff withheld another 11 communications with her retained counsel that may have included Bittner,[4] which discussed, *inter alia*, "potential representation" and contained "attorney's requests for information and assessment of claims against Defendants." (Categ. No. 14.) Bittner's presence on these communications destroyed the attorney-client privilege because she was serving as Plaintiff's friend rather than legal counsel.

---

[2] To the extent Plaintiff argues that any of the individuals discussed below served as her (or her counsel's) agent, representative, or litigation consultant, she has never produced or provided evidence of such an agreement, or even claimed to have formally entered such an arrangement. Moreover, "if [these individuals] w[ere] [P]laintiff[']s[] agent or representative, then [P]laintiff[] had an obligation to produce the documents in [their] possession pursuant to [Defendants'] document requests," which sought production from Plaintiff's "agents" and "representatives." *See Fifty-Six Hope Rd.*, 2010 WL 343490, at *2-3. Plaintiff never did that.

[3] As if the above is not enough to demonstrate that Bittner only ever acted as Plaintiff's friend rather than lawyer here, Plaintiff even named a character in *Masqued* after Bittner. (*See* ECF No. 122-1 at 37.)

[4] The Log ambiguously states that "Trent Baer and/or Michelle Bittner" was copied on these emails. (Categ. No. 14.)

*See, e.g.*, *Lanci*, 1998 WL 409776, at *1-2.[5] Finally, while some of these communications may contain attorney work product, Plaintiff has not carried her burden to establish that all of them do in their entirety. *See, e.g.*, *Safeco*, 289 F.R.D. at 47-48.

Holland is a bankruptcy attorney who does not appear to practice copyright law or litigation. *See* http://www.alaskabankruptcy.com. Plaintiff described Holland as a "consultant, attorney and confidant" in her Log (*e.g.*, Indiv. No. 65) and later clarified that Holland is "an attorney and a long-time legal consultant and mentor to Plaintiff" (Pl.'s 2/3/23 Letter at 5). There is no claim that Plaintiff retained Holland as counsel for this case. (*See id.*) The Privilege Log identifies two communications between Plaintiff and Holland that discussed "analysis of underlying facts of the case, legal advise [sic] and assistance with creation of document prepared in anticipation of litigation." (Indiv. Nos. 65, 70.) Again, privilege for any legal advice shared with Holland was waived, and there is insufficient information to carry Plaintiff's burden to establish that all aspects of these communications are work product. *See, e.g.*, *Safeco*, 289 F.R.D. at 47-48.

***Communications with mere friends.*** The Privilege Log also suggests that Plaintiff had non-privileged communications with and/or shared otherwise privileged communications with several friends, including Beth Prinz, Wendi Bates, Jennifer Ramsey, and Wendy Trimble. Prinz is a purported "consultant and confidant" whom Plaintiff has since described as "a doctor of internal medicine and longtime consultant of Plaintiff [who] writes as a hobby" and to whom "Plaintiff provides legal consultation … and [has] represented … in the past." (Pl.'s 2/3/23 Letter at 4.) In four entries, Plaintiff sought "advice" from Prinz regarding a "form letter to sent [sic] to potential attorneys." (Indiv. Nos. 8, 9, 10, 14.) Communications seeking "advice" from Prinz (a non-lawyer) are unlikely to be covered by the attorney-client privilege or qualify as attorney work product. Moreover, the fact that Plaintiff at one point provided legal services ***to Prinz*** does not create a privilege over communications between the two of them regarding this case.

Bates is a purported "consultant and confident [sic]" whom Plaintiff has since described as "a former professional grant writer and longtime writing consultant for Plaintiff" who "provided initial consulting advice to Plaintiff in exchange for legal services." (Pl.'s 2/3/23 Letter at 4.) In one entry, Plaintiff forwarded Bates an email "from Plaintiff to her parents who acted as consultants and confidants, regarding material prepared in anticipation of litigation." (Indiv. No. 43.) Other than the conclusory assertion that the emails in this exchange were written "in anticipation of litigation," there is nothing in this entry that suggests a valid claim of privilege or work product. And like Prinz, the fact that Plaintiff at one point provided legal services ***to Bates*** does not mean that communications between the two regarding the current litigation are privileged.

Ramsey is a purported "consultant and confidante" whom Plaintiff has since described as "a longtime friend of Plaintiff who has previously provided Plaintiff consulting services concerning public relations and advertising." (Pl.'s 2/3/23 Letter at 5.) In four communications, Plaintiff discussed with Ramsey "analysis of facts of the case and advise [sic] pertaining to legal representation." (Indiv. Nos. 107, 108, 109, 119.) Communications with a former P.R. consultant are not privileged. *See, e.g.*, *In re Signet Jewelers Ltd. Secs. Litig.*, 332 F.R.D. 131, 136 (S.D.N.Y.

---

[5] Further supporting this, the Privilege Log states that Bittner communicated with Plaintiff from an email account with the domain name "@acsalaska.com." (*E.g.*, Indiv. Nos. 120-25.) This appears to be the domain name for Bittner's company, ACS Messaging, Inc., which provides "telecommunications services and equipment." *See* https://www.sec.gov/Archives/edgar/data/1089510/000095012303011660/e93141exv3w25.txt. The use of this ordinary business email address further undermines any expectation of privacy and assertion of privilege. *See, e.g.*, *In re Rsrv. Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 159-60, 164 (S.D.N.Y. 2011) (party had no reasonable expectation of privacy in emails sent over company system owing to company email policy).



2019). And as above, Plaintiff has not carried her burden to establish that these communications are attorney work product, at least not in their entirety. Indeed, discussions regarding "advise [sic] pertaining to legal representation" are unlikely to reflect an attorney's substantive mental process or litigation strategy. (Indiv. Nos. 107, 108, 109, 119.)

Trimble is a purported "advisor" whom Plaintiff has since explained "is a friend of Plaintiff who was facilitating an introduction between Plaintiff and an attorney from whom Plaintiff was seeking representation." (Pl.'s 2/3/23 Letter at 6.) In one entry (evidently covering multiple communications), Plaintiff and Trimble exchanged "[e]-mails … concerning attorney representation and forwarding attorney's response to request for representation." (Indiv. No. 209.) This description does not establish that these emails are work product rather than ordinary attorney-client communications for which Trimble's presence waived privilege.

In sum, Plaintiff should be required to produce the communications in **Individual Entries Nos. 8, 9, 10, 14, 43, 59, 65, 70, 107, 108, 109, 119, 120, 121, 124, 125, 132, 147, 150, and 209.** Plaintiff should also be required to produce any non-privileged communications embodied in **Categorical Entries Nos. 4, 11, and 14**. In the event the Court finds that there presently is insufficient information to require the production of all or some of these communications, Defendants respectfully ask that the Court review them *in camera* to verify privilege.[6]

## III. Waiver Of Untimely Supplemental And Redaction Logs

Plaintiff should be required to produce the communications identified in the Supplemental Log and the redacted content identified in the Redaction Log (except for communications after this lawsuit was filed) because these logs were not timely served. *See, e.g.*, *FG Hemisphere Assocs., L.L.C. v. Republique Du Congo*, 2005 WL 545218, at *6 (S.D.N.Y. Mar. 8, 2005) (collecting cases and explaining "[a]s other judges in this District and I have repeatedly held, the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege"); *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, 2007 WL 1521117, at *3 (S.D.N.Y. May 24, 2007) (collecting cases and observing "[i]t is well established that failure to provide a privilege log in a timely manner may result in waiver of objections on the basis of privilege"); *accord, e.g.*, *Yorkville Advisors*, 300 F.R.D. at 165 (finding waiver where party belatedly "offer[ed] new details pertaining to the subject matter, authors and recipients of certain documents" after privilege log deadline).

As explained above, Plaintiff served the Supplemental and Redaction Logs more than two weeks after the January 13, 2023 deadline (which had already been extended multiple times). Plaintiff did not seek or receive another extension and provided no substantive justification for failing to serve these logs on time. (*See* Ex. C.) Any redactions for privilege needed to be included in the original privilege log. *See* Fed. R. Civ. P. 26(b)(5)(A); L.R. 26.2(b) (both requiring privilege log for "information" withheld). Plaintiff's failure to timely serve these additional logs notwithstanding multiple extensions of her deadline warrants a finding of waiver. Finally, and regardless, the Court should require that entries **1, 4, 5, 6, 7, 8, 9, 10, and 11** on the Supplemental Log be produced for the reasons explained in Section II, *supra*, as these are similar communications with the same individuals discussed above.

---

[6] Notably, the Privilege Log shows that Plaintiff sought representation from approximately ***25*** different attorneys before Mark Passin finally agreed to accept this case around December 2021. (*See* Log. at pp. 1-20 & Indiv. No. 218.) Disclosure of these communications might establish that Plaintiff was advised her claims were meritless and that filing this lawsuit was objectively unreasonable, which would support Defendants' potential entitlement to prevailing party fees and costs under 17 U.S.C. § 505. *See, e.g.*, *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 205-09 (2016).


Thank you for your time and attention to this matter.

Respectfully submitted,

/s/ Benjamin S. Halperin

**COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP**

Nancy E. Wolff
Benjamin S. Halperin
CeCe M. Cole
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
nwolff@cdas.com
bhalperin@cdas.com
ccole@cdas.com

*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan, and Universal City Studios LLC*

KLARIS LAW PLLC

Lacy H. Koonce, III
29 Little West 12th Street
New York, NY 10014
Phone: (917) 612-5861
lance.koonce@klarislaw.com

*Attorneys for Emily Sylvan Kim and Prospect Agency, LLC*

Cc: All counsel of record (via ECF)