# EXHIBIT B



| COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP | 41 MADISON AVENUE<br>NEW YORK, NY 10010<br>T: 212 974 7474<br>F: 212 974 8474<br>www.cdas.com | BENJAMIN HALPERIN<br>212-974-7474<br>BHALPERIN@CDAS.COM |
|---|---|---|

January 30, 2023

**VIA EMAIL (mark@csrlawyers.com)**
Mark D. Passin
CSReeder, PC
11766 Wilshire Boulevard, Ste 1470
Los Angeles, CA 90025

Re:   Objections to Plaintiff's Privilege Log in *Freeman v. Deebs-Elkenaney et. al.*

Dear Mark,

The Entangled Defendants and Prospect Defendants (both as previously defined, and collectively, "Defendants") write jointly to object to the privilege log that Plaintiff first produced (after multiple deadline extensions) on January 13, 2023, and then produced in amended form on January 23, 2023 ("Privilege Log"). This letter shall serve as Defendants' good faith effort to alert you to and attempt to resolve these issues prior to filing a motion to compel. To the extent Plaintiff refuses to produce withheld documents pursuant to Defendants' objections, please advise as to your immediate availability for a meet and confer.[1]

Plaintiff has "[t]he burden of establishing attorney-client or work product privilege" each time it is claimed. *E.g.*, *Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 499 F. Supp. 2d 475, 479 (S.D.N.Y. June 27, 2007). To do this, "as to each document" withheld, Plaintiff must "set forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 158 (S.D.N.Y. May 27, 2014); *see also, e.g.*, *United States v. Constr. Prod. Rsch., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) ("[I]f the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected."). "The focus is on the specific descriptive portion of the log, and not on the conclusory invocations of the privilege or work-product rule, since the burden of the party withholding the documents cannot be discharged by mere conclusory or ipse dixit assertions." *McNamee v. Clemens*, 2014 WL 1338720, at *4 (E.D.N.Y. Apr. 2, 2014).

As set forth herein, Plaintiff's Privilege Log repeatedly fails to provide sufficient information to judge whether many of its assertions of privilege are valid. *See, e.g.*, *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 289 F.R.D. 41, 47-48 (E.D.N.Y. 2011), *on reconsideration in part*, 2013 WL 12362006 (E.D.N.Y. Feb. 12, 2013) (privilege log "not 'adequately detailed'" where "[t]he vast majority of the descriptive portions of the log do not set forth specific facts that establish the

---

[1] Defendants reserve the right to challenge additional entries on the Privilege Log besides those discussed herein, and to object on different and/or additional grounds than stated herein based on any additional information and/or arguments Plaintiff provides.



COWAN,
DEBAETS,
ABRAHAMS &
SHEPPARD LLP

PAGE 2

elements of the attorney-client privilege or work-product doctrine and rely on conclusory assertions of the claims"). In particular, Plaintiff claims work product protection over the vast majority of entries in the Privilege Log, yet nearly all such communications occurred before you were retained and neither you nor any other practicing attorney is included on most of them. Please explain Plaintiff's basis for claiming work product protection over the many entries that occurred before her counsel was retained.

Defendants believe that Plaintiff's failure to provide an adequate privilege log—particularly after being granted many extensions on the log's deadline and then amending the log ten days after the deadline without authorization—constitutes a waiver of the privilege for the insufficiently described entries. *See Yorkville Advisors*, 300 F.R.D. at 165 (finding waiver where party belatedly "offer[ed] new details pertaining to the subject matter, authors and recipients of certain documents" after privilege log deadline); *Aurora*, 499 F. Supp. 2d at 479 (agreeing that serving amended privilege log was "essentially a concession that the initial privilege log was inadequate"); *Crawford v. Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34, 43 (S.D.N.Y. July 17, 2009) ("[T]he consequence of serving a deficient privilege log may be the waiver of a privilege claim."). However, Defendants are willing to consider additional information provided by Plaintiff by **February 3, 2023** before determining whether to move to compel on the basis of waiver.

The following communications do not appear privileged based on the information provided and/or lack sufficient description to determine whether there is a valid claim of privilege.

***Communications with Michelle Bittner (Individual Nos. 120, 121, 124, 125, 132, 147, 150; Categorical Nos. 4, 14).*** Based on publicly available information and documents produced by Plaintiff, Bittner is a family law attorney whose practice does not include copyright matters or any type of litigation relevant to this case. (*See, e.g.*, LF038212-LF038213 LF043822-LF043825, LF045259-LF045260 (showing Bittner to be acting as Plaintiff's friend).) Further, there is no evidence (or claim) that Bittner was retained by Plaintiff for this case, either as an attorney or consultant.[2] In short, Bittner is merely a friend and third party who was not communicating in her capacity as an attorney and whose lay presence was not needed to secure legal advice for this case. Communications between Plaintiff and Bittner are not privileged, and Bittner's presence on communications with Plaintiff's counsel, or disclosure to her of previously privileged communications, waives privilege. *See, e.g.*, *Lanci v. Arthur Andersen LLP*, 1998 WL 409776, at *1-2 (S.D.N.Y. July 21, 1998) (attorney-client privilege "does not apply if the lawyer is acting as

---

[2] Additionally, the Privilege Log states that Bittner communicated with Plaintiff from an email account with the domain name "@acsalaska.com." This appears to be the domain name for Bittner's company, ACS Messaging, Inc., which provides "telecommunications services and equipment." *See* https://www.sec.gov/Archives/edgar/data/1089510/000095012303011660/e93141exv3w25.txt (last accessed January 23, 2023). The use of this ordinary business email address further undermines any expectation of privacy and assertion of privilege. *See, e.g.*, *In re Rsrv. Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 159-60, 164 (S.D.N.Y. May 23, 2011) (party had no reasonable expectation of privacy in emails sent over company system owing to company email policy).


a friend, relative, accountant or agent"; "lawyer must be acting as a professional legal adviser in his capacity as such"); *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973) ("subsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed").[3]

Finally, to the extent Plaintiff asserts work product protection over communications with Bittner, there is insufficient information to verify this. *See, e.g.*, *Safeco*, 289 F.R.D. at 47-48. The vast majority of these communications occurred before you were retained and could not have been made at the behest of counsel. Also, communications written *by* Bittner (a third party not retained by Plaintiff for this case) are not attorney work product. *See, e.g.*, *Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*, 2019 WL 11663799, at *5 (E.D.N.Y. Oct. 28, 2019) (finding no attorney-client privilege or work product protection when "[n]either an attorney, nor an attorney's agent, authored the email"); *Lapaix v. City of New York*, 2014 WL 11343854, at *4-5 (S.D.N.Y. Aug. 15, 2014) (emails sent by party's "friend and long-time assistant" were not work product as they were "prepared by a third party for a party with no involvement of an attorney" and "are thus far removed from the core of the work product doctrine and are presumed to have a weak justification for protection"). Moreover, entry descriptions indicate that at least portions of communications discussing "possible representation" by "potential counsel" are unlikely to be work product. Finally, especially as to the 130 communications with Bittner identified in the Categorical section of the Privilege Log, there is no way to verify based on the generic category description that each individual communication is actually work product. *See, e.g.*, *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 326 (S.D.N.Y. April 3, 2020) (rejecting "vague and repetitive" descriptions in categorical entries that "state[d] only, generically, that the documents are confidential internal documents between GE employees and in-house counsel 'seeking or conveying legal advice' about certain agreements).

**Communications with Michael Freeman (Categorical No. 11).** Michael Freeman is Plaintiff's father, not her attorney, and his presence waives any potential attorney-client privilege. Although Plaintiff claims all of the 25 entries included in Categorical No. 11 are "work product," Plaintiff provides no reason why Mr. Freeman would have needed to review attorney work product, and in any event, any communications *by* him are not attorney work product. *See, e.g.*, *Lapaix*, 2014 WL 11343854, at *4-5. Further, the grouping of these 25 communications makes it impossible to verify whether all or any of them are in fact work product. Finally, the entry description indicates that much of the communications may not be work product, including discussion of "scope of potential attorney representation."

**Communications with Trent Baer that do not Include Plaintiff (Individual Nos. 6, 7, 39, 48, 199; Categorical Nos. 10, 16).** Baer is not a party to this case. Plaintiff claims that Baer is her

---

[3] As if all of the above is not enough to demonstrate that Bittner only ever acted as Plaintiff's friend and never as her lawyer, Plaintiff even named a character in *Masqued* after Ms. Bittner. (*See e.g.,* LF240156-LF240228 at LF240212 ("Michelle Bittner was a friend and your guardian, Ella.").)



husband and has asserted marital privilege[4] over many communications between her and him (in addition to asserting attorney-client privilege and work product). However, Baer's communications with counsel on behalf of Plaintiff, but not including Plaintiff, are not protected by the attorney-client privilege, which does not ordinarily extend to communications between an attorney and her client's spouse. *See, e.g.*, *Main St. Am. Assurance Co. v. Savalle*, 2019 WL 5704403, at *5 (D. Conn. Nov. 5, 2019), *adhered to on reconsideration*, 2019 WL 6052975 (D. Conn. Nov. 15, 2019) (communications between party's girlfriend and party's attorney not privileged where there was no showing that girlfriend was party's "agent or that her participation in the communications with counsel was necessary"). Further, for the same reasons described above, communications ***by*** Baer (a nonparty not acting in any legal capacity), are not attorney work product. *See, e.g.*, *Lapaix*, 2014 WL 11343854, at *4-5. Finally, as above, Plaintiff has not provided enough description to establish that all of the different communications with Baer are work product, particularly with respect to the Categorical entries. (*E.g.*, Categorical Nos. 10, 16.)

***Purported Advisors, Confidants Consultants, and Experts.*** Plaintiff has claimed privilege and/or work product protection over numerous communications with purported advisors, confidants, consultants, and experts without providing sufficient description of these individuals and their communications to assess these claims. Plaintiff frequently asserts only in conclusory fashion that the individuals are "consultants and confidantes," and in some cases, does not identify the individuals at all. Under Local Rule 26.2, a privilege log must provide, *inter alia*, the author of the document, its addressees, and any other recipients, and "where not apparent, the relationship of the author, addressees, and recipients to each other." L.R. 26.2(a)(2)(A). Vaguely mentioning an unnamed "expert" or asserting that someone is a "consultant" without more is insufficient. *See, e.g.*, *Constr. Prod. Rsch.*, 73 F.3d at 473; *Yorkville Advisors*, 300 F.R.D. at 158.[5] Moreover, although Plaintiff asserts that virtually all of these communications are attorney work product, the vast majority occurred long before you were retained and could not have been made at the behest of counsel. In any event, communications from and documents created ***by*** non-parties for parties are not attorney work product. *See, e.g.*, *Lapaix*, 2014 WL 11343854, at *4-5. In this vein, to the extent that communications ***from*** these individuals to Plaintiff or Baer exist and were not included in the Privilege Log, they must be identified and/or produced immediately.

The following table sets forth entries in the Privilege Log that are insufficient under the above principles:

---

[4] Not every communication between spouses is automatically protected by marital privilege. *See, e.g.*, *G-Fours, Inc. v. Miele*, 496 F.2d 809, 812 & n.8 (2d Cir. 1974) (collecting cases).

[5] At a minimum, even if some of the communications themselves prove protected, the names of the individuals and their roles with respect to the litigation are not protected and must be provided, unless "such individual qualifies as an expert, rather than a friend or trusted advisor." (12/17/22 Order, ECF No. 98.) *See also Aviles v. S&P Glob., Inc.*, 583 F. Supp. 3d 499, 504 (S.D.N.Y. Feb. 4, 2022) ("the non-attorney individuals and their roles should be identified" as "[t]he roles of the individuals are not privileged and would aid Plaintiffs in assessing the asserted privilege claims").



Cowan, DeBaets, Abrahams & Sheppard LLP

Page 5

| Item | Entry Nos. | Issue |
|---|---|---|
| Emails with Beth Prinz, a purported "consultant and confidant" | Individual Nos. 8, 9, 10, 14, 173 | Insufficient information provided regarding Prinz's role in this case, her qualifications, and her relationship to Plaintiff. Entry descriptions indicate that at least portions of emails "seeking advice" are not work product.[6] Further, entry no. 14 identifies an "[e]xchange of e-mails" with Prinz; the communications written by Prinz are not privileged or work product and must be produced. |
| Email to "potential counsel" attaching "e-mail chain" from unidentified "consultants and confidants" | Individual No. 24 | While the email to "potential counsel" itself might be privileged, the "e-mail chain from consultants and confidants" included therewith is not protected, at least to the extent such communications were created by nonparties. Further, the entry does not identify the purported "consultants and confidants" or provide information sufficient to understand their role and why a privilege might apply. |
| Email from Plaintiff to Wendi Bates, a purported "consultant and confident" | Individual No. 43 | Insufficient information provided regarding Bates' role in this case, her qualifications, and her relationship to Plaintiff. Further there is insufficient information to ascertain whether the forwarded "e-mail from Plaintiff to her parents who acted as consultants and confidants" is protected work product. |
| Email from Plaintiff to Mary McCauley | Individual No. 59 | McCauley is Plaintiff's aunt. Numerous communications between the two of them have been produced and show that McCauley helped Plaintiff draft/edit her manuscripts but is not a litigation consultant. In this entry, Plaintiff "forwarded [McCauley] an "e-mail from potential counsel regarding potential representation." Doing that waived the attorney-client privilege over counsel's email and the description indicates that at least some of the email is not work product. |

---

[6] Individual Entry No. 10 additionally asserts attorney-client privilege and marital privilege, when the former is waived on communications with Prinz and the latter obviously does not apply.



COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP

PAGE 6

| | | |
|---|---|---|
| Emails from Plaintiff to Jennifer Holland, an attorney who is also purportedly a "consultant" and "confidant" | Individual Nos. 65, 70 | Similar to Bittner (discussed *supra*), it appears that Holland is a bankruptcy attorney whose practice has nothing to do with copyright litigation or other issues in this case.[7] Like Bittner, communications with Holland are not privileged. Entry descriptions indicate that at least portions of emails seeking "legal advise [sic]" are not work product. No responses from Holland are identified in the Log. |
| Emails from Plaintiff to Jennifer Ramsey, purportedly a "consultant and confidante" | Individual Nos. 68, 107-09, 119 | Insufficient information provided regarding Ramsey's role in this case, her qualifications, and her relationship to Plaintiff. Entry descriptions indicate that at least portions of emails seeking "advise [sic] pertaining to legal representation" are not work product. No responses from Ramsey are identified in Log. |
| Email from Plaintiff to Mathew Hein, purportedly a "consultant and confidante" | Individual No. 75 | Insufficient information provided regarding Hein's role in this case, his qualifications, and his relationship to Plaintiff. Entry description indicates that at least portion of email seeking "referral for potential legal representation" is not work product. No response from Hein identified in Log. |
| Email from Plaintiff to "clairefink01@gmail.com," a purported "consultant" | Individual No. 134 | Person with email address "clairefink01@gmail.com" is not identified by name. Insufficient information provided regarding this person's role in this case, her qualifications, and her relationship to Plaintiff. No specific privilege ground asserted. No response from individual identified in Log. |
| Email from Baer to Kevin Zoltan inadvertently disclosing "communication intended for consulting expert" | Individual No. 175 | The inadvertent disclosure of an otherwise privileged communication may have waived privilege, but more information is needed to assess this. Purported "consulting expert" is not identified. |
| Email from Baer to "GMR Transcription Tustin," a purported "consultant" and | Individual No. 199 | Emails from non-party Baer alone to purported consultants are not protected, as explained above. |

---

[7] *See* http://www.alaskabankruptcy.com.



| | | |
|---|---|---|
| apparent transcription service | | |
| Emails with Wendy Trimble, purportedly an "advisor" | Individual No. 209 | Insufficient information provided regarding Trimble's role in this case, her qualifications, and her relationship to Plaintiff. Forwarding email from counsel to Trimble waives attorney-client privilege. Entry description shows that this email merely forwarded legal advice and is not work product. |
| Emails between Plaintiff, counsel and unidentified "consulting expert" | Individual Nos. 221-22 | Purported "consulting expert" is not identified. |
| 25 communications between Plaintiff, Baer, and unidentified "consulting expert" | Categorical No. 7 | Purported "consulting expert" is not identified. |
| 37 communications with Alex Coleman, purportedly a "consultant and confidant" | Categorical No. 15 | Insufficient information provided regarding Coleman's role in this case, his qualifications, and his relationship to Plaintiff. |
| 20 communications between Baer and unidentified "potential consulting expert" | Categorical No. 16 | Purported "consulting expert" is not identified. Communications between non-party Baer and consultant are not protected work product. |

*Type of privilege not identified.* Several entries in the Privilege Log do not identify any ground on which protection is claimed. (Individual Nos. 134, 136.) Plaintiff's failure to specify the basis for withholding these documents does not satisfy Rule 26 or Local Rule 26.2 and waives privilege. *See, e.g.*, *Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l, Inc.*, 130 F.R.D. 28, 32 (S.D.N.Y. March 19, 1990) (party's attorney waived work product protection by "failing to specify work product as the particular privilege protecting its various documents").

*Attachments to privileged emails.* Email attachments may not be withheld merely because the email they are attached to is privileged. *See, e.g.*, *Roc Nation LLC v. HCC Int'l Ins. Co., PLC*, 2020 WL 1698928, at *2 (S.D.N.Y. Apr. 8, 2020) (party "cannot assert that attachments are automatically privileged—even if attached to a privileged email—and must produce such attachments unless they themselves contain or refer to legal advice"). In many cases, it is unclear from the Privilege Log whether attachments to the withheld emails have also been withheld.

*Missing entries*. Finally, the Privilege Log skips rows 25-26, 32-33, 60, 63, 93, 122-123, 133, 135, 137, 145, 168, 179, 208, 224, 227, 230, and 233. Defendants believe that the only logical explanation for this is that these rows originally contained entries that Plaintiff either deleted from

 Cowan, DeBaets, Abrahams & Sheppard LLP

Page 8

the Privilege Log or hid in Excel before converting the Log to PDF and producing it. If this was because the documents corresponding to those entries have been produced, please confirm this in writing and identify the corresponding Bates numbers for each missing entry. If those entries were removed from the Privilege Log for some other reason and the documents have not been produced, please provide an explanation immediately and state when they will be produced.

\*\*\*

In sum, Plaintiff must immediately produce the communications identified herein, and/or supply the information needed to ascertain whether Plaintiff's assertion of privilege are warranted, as set forth above. Defendants hereby reserve all rights, claims, and remedies, including as to filing a motion to compel as may be necessary.

Respectfully submitted,

Benjamin S. Halperin

cc: All counsel via email