```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LYNNE FREEMAN,

                            Plaintiff,              22-CV-02453 (LLS)(SN)

              -against-                             ORDER

TRACY DEEBS-ELKENANEY, et al.,

                            Defendants.
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/16/2023

**SARAH NETBURN, United States Magistrate Judge:**

Plaintiff moves to compel Defendants to produce (1) relevant hard drives of the computers Defendant Tracy Deebs-Elkenaney ("Wolff") used to create and send two e-mails; (2) in native format, all other electronically stored information Defendants previously produced, including all e-mails and the received side of one of the two emails; and (3) access to Defendant's e-mail accounts. Plaintiff also requests leave to serve a second subpoena on Bloomsbury Publishing, Inc., the publisher of Wolff's book, *Tempest Rising*. ECF Nos. 131 and 132. Defendants oppose the relief. ECF No. 149.

**I.      Undisputed Facts**

Wolff is the author of *Tempest Rising* and *Deserving of Luke*, two books that are not alleged in the complaint to be infringing. The working title for *Tempest Rising* was *Riptide*, but it was changed to *Tempest Rising* in March 2010. Decl. of Tracy Deebs-Elkenaney ("Wolff Decl."), ¶ 7, at ECF No. 150. On June 30, 2010, Wolff submitted a final manuscript to her publisher. Wolff Decl., ¶ 5. Wolff produced an email that purports to have been sent on August 25, 2010, to her friend and fellow author Shellee Roberts (the "August 2010 e-mail"). Attached

to the August 2010 e-mail was a draft of *Tempest Rising* and two other works. Wolff contends in a sworn statement that the attached *Tempest Rising* draft was the June 30, 2010 final manuscript. Wolff Decl., ¶ 12. The phrase "Ducati Streetfighter S," a type of motorcycle, appears in the June 30, 2010 manuscript. Decl. of Lynne Freeman ("Freeman Decl."), ¶ 6, at ECF No. 170; Wolff Decl., ¶ 14. Wolff did not make any changes to the June 30, 2010 manuscript except one related to a character's name. Wolff Decl., ¶ 11. The Advanced Reader Copies ("ARCs") were sent to Wolff's publisher on October 19, 2010. Wolff sent Defendant Emily Kim, her literary agent, an "e-copy" of *Tempest Rising* in March 2011, which Wolff believes was the June 30, 2010 draft. Wolff Decl., ¶ 16. *Tempest Rising* was published in May 2011.

Wolff also produced an email that purports to have been sent to herself on September 17, 2010 (the "September 2010 email). Attached to the September 2010 email was a draft of *Deserving of Luke* and two other works. Wolff emails herself her own works as a "backup" to avoid losing material. Wolff Decl., ¶ 22. Wolff made minor grammatical edits to a PDF draft of *Deserving of Luke* in November 2010, and it was published in April 2011. Wolff Decl., ¶¶ 24, 26.

Plaintiff entered an agency agreement with Kim on December 8, 2010.

## II. Disputed Facts

Plaintiff alleges in her motion that she sent Kim the first three chapters of her work *Blue Moon Rising* on October 27, 2010. There is no evidentiary support for this allegation, and Freeman does not assert it in her sworn declaration. See generally Freeman Decl. Freeman contends that in December 2010, Kim asked her what the "coolest kind of Ducati" motorcycle is, to which Plaintiff responded, the "Ducati Streetfighter S." Freeman Decl., ¶ 3. Kim then asked

Plaintiff for permission to use "Ducati Streetfighter S" in another writer's book. Id., ¶ 4. Plaintiff suspects that Wolff was the other writer.

Plaintiff believes the August 2010 and September 2010 e-mails were manipulated because she believes that Kim gave Wolff the idea to change the working title *Riptide* to *Tempest Rising* after Kim received Plaintiff's drafts of *Blue Moon Rising* in October 2010, and that Wolff incorporated a Ducati Streetfighter S into *Tempest Rising* after Kim asked Wolff about motorcycles in December 2010. After filing her motion, and in response to Defendants' expert, Plaintiff submitted an expert declaration to establish evidence of manipulation.

Plaintiff's expert states that it is easy to backdate an email. Declaration of Kevin Cohen ("Cohen Decl."), ¶ 10, at ECF No. 169. He highlights several "suspect" identifiers in the two emails. First, he states that the lack of xml encoded metadata in the three documents attached to the August 2010 email "suggests that most likely" a different word processor was used to create the documents, "which would be consistent with backdating a computer from a future date." Cohen Decl., ¶ 17. He raises arguments about the listed "author" of certain documents and concludes that this "might be indicative of computer date manipulation." Cohen Decl., ¶ 17. He questions the absence of a "message-ID" on the September 2010 email and "suggests the email was manipulated." Cohen Decl., ¶ 20.

Defendants submitted an expert declaration in opposition to Plaintiff's motion. Declaration of Benjamin Rose ("Rose Decl."), at ECF 151. Rose certified that he collected Wolff's electronically stored information by logging into her account and downloading the documents into a discovery software application. He affirms that he did not manipulate or alter any data. Rose Decl., ¶¶ 5, 6. Rose conducted a sample review and states that emails other than the September 2010 email do not contain a message-ID and that this could be "based upon

account configuration settings, including the mail protocol that was used in 2010." Rose Decl., ¶ 8. With respect to the usernames, Rose states that there are no standard or non-standard conventions, suggesting that the author listing is "completely arbitrary." Rose Decl., ¶ 13. More broadly, Rose describes his forensic review and concludes that there is no "evidence of irregularities." Rose Decl., ¶ 12.

### III. Discussion

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). Requests to inspect an adversary's computer are granted only under limited circumstances "when there is reason to believe that a litigant has tampered with the computer or hidden relevant materials . . . or when the possession or use of the computer is an element of the parties' claims or defense." Lifeng Chen v. New Trend Apparel, Inc., No. 11-CV-324 (GBD) (MHD), 2012 WL 4784855, at *1 (S.D.N.Y. Oct. 2, 2012). "Absent a 'demonstrated widespread destruction or withholding of relevant information,' courts are unlikely to find the burden and expense of a proposed computer inspection justified." Uddin v. O'Brien Rest. Holding Co., LLC, No. 16-CV-2098 (RJS), 2017 WL 11674895, at *2 (S.D.N.Y. Aug. 23, 2017) (citing Convolve, Inc. v. Compaq Computer Corp., 223 F.R.D. 162, 169 (S.D.N.Y. 2004)).

First, Plaintiff has not met her heavy burden to justify this discovery. Her expert is equivocal at best that there is evidence of fraud and manipulation. He is unable to identify any indicators that reliably demonstrate backdating, and Defendants' expert has accounted for those areas that are alleged to be "suspect."

Second, Plaintiff's narrative evidence suggesting fraud is weak. She claims that the title *Tempest Rising* was created only after Kim received her works in October 2010, but fails to

prove that she provided any works by that date. She claims to have told Kim about the Ducati Streetfighter S in December 2010, but only assumes Kim was interested in that motorcycle for Wolff.

Third, Plaintiff is unable to effectively undermine the evidence that *Tempest Rising* was completed by June 30, 2010, well before Plaintiff is alleged to have had any contact with Kim. Thus, even if Wolff's emails have been manipulated, there is no dispute that *Tempest Rising* went into production months before Plaintiff met Kim.

Fourth, Plaintiff does not even allege in her complaint that *Tempest Rising* or *Deserving of Luke* are infringing works. There is no evidence of infringement of these works and there is no allegation of a copyright violation. Thus, discovery related to these works is entirely collateral.

Considering all of this, inspection of Wolff's computer hard drives or a reproduction of all electronic discovery in native format is not proportional to the needs of this case.

Separately, Plaintiff moves for leave to serve a subpoena upon Bloomsbury Publishing for "all versions of the work variously entitled *Rip Tide*, *Tempest* and *Tempest Rising*" provided from Wolff in 2010 and 2011. Because Plaintiff has not established a reasonable basis to believe that this work was altered after Plaintiff allegedly first communicated with Kim in October 2010, this discovery is DENIED.

Accordingly, Plaintiff's motion is DENIED, and the Court of Clerk is respectfully directed to terminate the motions at ECF Nos. 131 and 132.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:   March 16, 2023
         New York, New York