

Attorneys admitted in
California, New York,
Texas, Pennsylvania, and
Maine

Sender's contact:
lzaharia@donigerlawfirm.com
(310) 590-1820

Doniger / Burroughs Building
603 Rose Avenue
Venice, California 90291

Doniger / Burroughs NY
247 Water Street, First Floor
New York, New York 10038

March 20, 2023

**DELIVERED VIA ECF**

The Honorable Sarah Netburn
Thurgood Marshall Courthouse
40 Foley Square, Courtroom 219
New York, NY 10007

|  |  |  |
|---|---|---|
|  | Case Title: | *Freeman v. Deebs-Elkenaney et al,* |
|  |  | 1:22-cv-02435-LLS-SN |
|  | Re: | **Opposition to Defendants' Motion to Compel** |

Your Honor:

Plaintiff, Lynne Freeman, respectfully submits this opposition to Defendants' motion to production of the communications in Individual Entry Nos. 8, 9, 10, 14, 43, 59, 65, 70, 107, 108, 109, 119, 120, 121, 124, 125, 132, 147, 150, and 209; Categorical Entry Nos. 4, 11, and 14; Supplemental Entry Nos. 1, 4, 5, 6, 7, 8, 9, 10, and 11; and the Supplemental and Redaction Logs. (Dkt. #175.) Defendants' motion is meritless and should be denied.

    A.    **Freeman has not waived her assertions of privilege, and the Court should not consider Redaction Log entries after 2/6/2022 (pursuant to the Court's order).**

Freeman has consistently maintained that her communications with counsel and consultants about this litigation and documents created in anticipation of this litigation are privileged. Defendants do not generally disagree but claim that certain confidential documents should be disclosed merely because of a two-week delay in specifically identifying them on Freeman's Supplemental and Redaction Logs. Defendants are wrong. As this Court is aware, this case involves the production of thousands of documents by each side, and Freeman has acted promptly and reasonably to comply with her discovery obligations, and any minor delay in fully completing her privilege log is solely owing to the magnitude of that job, has not caused any prejudice to Defendants, and in no way indicated an intent to waive her privilege.

"Only '**flagrant**' violations of these rules should result in a waiver of privilege." *Pem-Am., Inc. v. Sunham Home Fashions*, LLC, No. 03 CIV. 1377JFKRLE, 2007 WL 3226156, at *2 (S.D.N.Y. Oct. 31, 2007) (emphasis added). In *Pem-Am*, the Court held that "[a]lthough Sunham was tardy in producing the privilege log, he has consistently asserted the attorney-client privilege in regard to the Agreement and has now provided an adequate privilege log." Id. Exactly the same can be said of Freeman, who has consistently asserted privilege with regard to the kinds of documents and communications at issue and now provided adequate privilege and redaction logs (discussed below). Indeed, supplementing her logs a mere two weeks after her initial privilege log is not the type of flagrant conduct that has been held to justify a finding of waiver. See *Hurst v. F.W. Woolworth Co.*, No. 95 CIV. 6584 CSH, 1997 WL 61051, at *4 (S.D.N.Y. Feb. 11, 1997) (waiving privilege as

to logged documents when the responding party had failed to provide a privilege log **eight months** after the date expressly agreed upon).

Defendants do not suggest that Freeman serving her Supplemental and Redaction Logs a mere two weeks after her timely initial privilege log caused them any prejudice, gave Freeman any strategic benefit, or was otherwise improper (let alone flagrantly improper). Indeed, Freeman's original log had over 230 individual entries, and her Supplemental Log only added another 15 documents—thus it is clear that her initial log was a good faith, substantially complete log and her supplementation reflects her diligent updating not undue delay. Additionally, pursuant to the Court's order during the December 12, 2022 hearing, Freeman was only required to log communications prior to February 6, 2022. See Transcript of Dec. 12, 2022 hearing, pp. 43-44. Because Freeman's conduct, like that in *Pem-Am*, evidences an intent to maintain her privileges as to the documents and communications at issue and does not justify a waiver of those privileges, this motion should be denied.

    **B.**    **Freeman's logs are adequately detailed.**

Defendants make the conclusory statement that Freeman "did not provide enough information to support withholding many communications categorized as either privileged or work product," but Freeman has in fact provided thorough descriptions in all of her logs and to require her to do more would require her to disclose more information about those communications and documents than is required, and so threaten the protections of her privileges. Plaintiff's logs should be deemed adequate, and Defendants' motion denied.

Defendants' reliance on *Safeco Ins. Co. of Am. v. M.E.S., Inc.* is misguided. In that case, the court held that the plaintiff's privilege log was not "adequately detailed" because "[t]he vast majority of the descriptive portions of the log d[id] not set forth specific facts that establish the elements of the attorney-client privilege or work-product doctrine and rely on conclusory assertions of the claims. For example, the first entry on [plaintiff]'s privilege log, which is representative of many of the other entries, is an email on '3/18/2008' from 'Caryn Mohan–Maxfield, Esq.' to 'Mark Sgarlata, Esq.' regarding 'General Agreements of Indemnity and Bond.' In the comment section, it states *48 'Attorney work product/selection of documents.'" *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 289 F.R.D. 41, 47–48 (E.D.N.Y. 2011), on reconsideration in part, No. 09CV3312ARRVMS, 2013 WL 12362006 (E.D.N.Y. Feb. 12, 2013). In sharp contrast, the "Subject Matter" column in the logs at issue (Exhibit A - Dkt. #176-1) provides detailed descriptions of the communications at issue. See e.g., Subject Matter for Entry No. 8 ("E-mail from Plaintiff to consultant and confidant seeking advice re form letter to sent to potential attorneys.") Freeman's log thus properly asserts her privilege objections.

    **C.**    **Freeman's communications with attorneys in anticipation of litigation, including Bittner and Holland, are protected as are the documents reflecting the same (i.e., Individual Entry Nos. 65, 70, 120, 121, 124, 125, 132, 147, 150; Categorical Entry Nos. 4, 14).**

Both the Bittner and Holland documents are protected by attorney-client privilege and work product doctrines. Bittner is a civil litigation attorney (not limited to family law, as Defendants suggest) who has acted as counsel for Freeman in the past and it should not be surprising that she was one of the first attorneys Freeman contacted to discuss this case and seek confidential legal advice. Declaration of Lynne Freeman ("Freeman Decl."), ¶3. Similarly, Holland is an attorney, mentor, and long-time legal consultant with whom Freeman consulted about this litigation and who has previously represented Freeman. Freeman Decl., ¶5. Plaintiff initially consulted with Ms. Holland for advice and opinions on Plaintiff's work product and the selection of counsel. Freeman Decl., ¶5. Because those communications were all made in the context of an actual or potential attorney-client relationship and in anticipation of litigation, they at protected from disclosure.

For communications between lawyer and client to be privileged, the client must be seeking predominantly legal advice or services. *In re County of Erie*, 473 F. 3d 413 (2d Cir. 2007). Here, Freeman was communicating with Bittner and Holland because they were attorneys, had a pre-existing client and/or legal consultant relationship with them, and was relying on them to assist her in evaluating her claims and finding counsel for this matter. Freeman Decl., ¶¶3,5. Defendants' statement that either attorney "served merely as Plaintiff's friend here" is an ungrounded self-serving argument designed to improperly obtain protected communications.

The attorney-client privilege applies where (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication related to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *Stirum v. Whalen*, 811 F. Supp. 78, 81 (N.D.N.Y. 1993). Such is the case here.

Each of the above factors supports finding Freeman's communications with Bittner and Holland to be privileged—they are licensed attorneys who Freeman consulted with regarding this case. Defendants stress that neither was ultimately retained for this matter, but that fact is irrelevant. *United States v. Dennis*, 843 F.2d 652, 656 (2d Cir.1988); *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 100 (S.D.N.Y. 2009). And Defendants' cited authority is distinguishable. For example, in *Lanci v. Arthur Andersen LLP*, the attorney who was also a friend of plaintiff could not accept private cases as an Assistant U.S. Attorney. *Lanci v. Arthur Andersen LLP*, No. 96 CIV. 4009 (WK), 1998 WL 409776, at *1 (S.D.N.Y. July 21, 1998). Additionally, the plaintiff's testimony established that he never intended to retain his friend and understood full well that his friend could not represent him. Id. at *2 (S.D.N.Y. July 21, 1998). Accordingly, emails between Freeman and Ms. Bittner (Categorical Log No. 4) and emails where Ms. Bittner is copied along with another attorney (Individual Entry Nos. 120, 121, 124, 125, 132, 147, 150; Categorical Log No. 4, 14) are privileged. And Freeman's communications with Holland, including Individual Entry Nos. 65 and 70, are privileged for the same reasons.

Importantly, Freeman's confidential communications with Ms. Bittner also include protected work product--i.e. documents created specifically for the purpose of seeking legal advice and representation. Freeman Decl., ¶3. See *Newmarkets Partners, LLC*, 258 F.R.D. at 102 ("The work-product doctrine protects materials prepared in anticipation of litigation or for trial by or for [a] party or its representative"). Those materials were created in some instances at the behest of attorneys Freeman attempted to retain and in other instances by Freeman to present her case. Freeman Decl., ¶4. But in either instance, they constitute protectable work product. Indeed, as this Court recognized in *Lapaix v. City of New York*, 2014 WL 11343854, at *2 (S.D.N.Y. Aug. 15, 2014), the determining factor is whether the documents were prepared in anticipation of litigation, as they certainly were in this case. *Lapaix*, 2014 WL 11343854 at *2. And they are protectable work product even though Ms. Bittner may have edited them for Plaintiff. Id. Indeed, they constitute "purely litigation-oriented document[s] reflecting [plaintiff]'s evolving case strategy and goals in bringing a lawsuit against the defendants, all of whom [s]he accuses of misconduct in the [legal documents at issue]." *Lapaix*, 2014 WL 11343854, at *4 (S.D.N.Y. Aug. 15, 2014).

Defendants' efforts to obtain communications between Plaintiff and attorneys with whom she actually consulted concerning this litigation are improper. Those communications and the documents exchanged attendant to them are privileged. Defendants' motion should be denied.

>   D.   The remaining documents Defendants seek are also privileged (i.e., Individual Entry Nos. 8, 9, 10, 14, 43, 59, 65, 70, 107, 108, 109, 119, 209; Categorical Entry No. 11).

Finally, Defendants are not entitled to the documents in Individual Entry Nos. 8, 9, 10, 14, 43, 59 65, 70, 107, 108, 109, 119, and 209 and in Categorical Entry No. 11 as they also constitute work product. Defendants' contrary arguments rest solely on the fact that these documents may have been shared with non-attorney family members and "mere friends," but each such person was believed to be reasonably necessary to properly developing and presenting Freeman's claims for counsel and each had and has a clear loyalty to Freeman such that their involvement cannot fairly waive the work product privilege.

"[C]ourts generally find a waiver of the work product privilege **only** if the disclosure substantially increases the opportunity for potential adversaries to obtain the information." *Merrill Lynch & Co., Inc. v. Allegheny Energy*, Inc., 229 F.R.D. 441, 445–46 (S.D.N.Y. 2004) (emphasis added) (internal quotation marks and citations omitted); see *Samad Bros., Inc. v. Bokara Rug Co., Inc.*, 09 Civ. 5843(JFK), 2010 WL 5095356, at *2 (S.D.N.Y. Dec. 13, 2010) (quoting *Fullerton v. Prudential Ins. Co.*, 194 F.R.D. 100, 103 (S.D.N.Y. 2000)) (stating that the work product privilege is waived "'when protected materials are disclosed in a manner [that] is ... inconsistent with maintaining secrecy against opponents.'"). The case law suggests, however, that this standard applies when the trustworthiness of the third party or the third party's allegiance to the disclosing party can be challenged. Thus, the standard applies where a third party actually provided the information to an adversary, see, e.g., *Schanfield*, 258 F.R.D. at 215–16, or where it is alleged that there is some likelihood of the third party intentionally disclosing the information to an adversary, see, e.g., *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 171 (S.D.N.Y. 2002); *Merrill Lynch & Co., Inc.*, 229 F.R.D. at 445–46 (assessing whether the third party "should be conceived of as ... a conduit to a potential adversary).

Defendants argue that Freeman waived any work product privilege by sending drafts of her legal documents to Michael Freeman, Mary McCauley, Beth Prinz, Wendi Bates, Jennifer Ramsey, and Wendy Trimble. But "[t]hese third parties did not, however, volitionally provide the legal [information] drafts to [Freeman]'s adversaries, nor could their loyalty to [Freeman] be questioned." *Lapaix v. City of New York*, No. 13CV07306LGSSN, 2014 WL 11343854, at *5 (S.D.N.Y. Aug. 15, 2014). Thus, Freeman has not waived the work product privilege with respect to any of these materials, as follows.

Ms. McCauley is Plaintiff's aunt and was also acting as her consultant and agent and providing Plaintiff with suggestions based on proposed edits to the manuscripts made by Defendant Kim. Freeman Decl., ¶6. Ms. McCauley also made suggestions for Plaintiff's comparison of the manuscripts with one of Defendant's books, which is core work product. Id. In this email Plaintiff forwards an email to attorney Glen Kulik attaching a copy of the manuscript comparison to Ms. McCauley. Id. The email constitutes work-product because it was created for anticipated litigation and would not have been prepared in substantially similar form but for the prospect of that litigation. *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998). As such, it falls within the protections of Fed.R.Civ.P. 26(b)(3), which is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy "with an eye toward litigation," free from unnecessary intrusion by his adversaries. *Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947). Indeed, analysis of one's case "in anticipation *1197 of litigation" is a classic example of work product, see *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975), and receives heightened protection under Fed.R.Civ.P. 26(b)(3).

Plaintiff's communications with her father (Categorical Log No. 11), which include emails from Plaintiff and emails forwarded by Plaintiff from another attorney, for the purpose of analyzing caselaw and evidence for Plaintiff's claims, or concerning potential counsel's representation, are also entitled to work product protection. Freeman Decl., ¶7. These communications would not have been made but in anticipation of

litigation and with the expectation of confidentiality between Plaintiff and her family member. *In re Lifetrade*, 2022 WL 3644357, at *6) (finding no waiver of work product when plaintiff copied "child who advised on finances"); *Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 216 (S.D.N.Y. 2009) (emails authored by plaintiff or his counsel and forwarded to non-lawyer sister entitled to work product protection). Further, and similar to the attachments between Plaintiff and Ms. Bittner, the withheld attachments between Plaintiff and her father, including the indexes, manuscript comparisons, and legal narrative were all created by Plaintiff or her prospective attorneys in anticipation of litigation and eventually turned over to Plaintiff counsel of record in this case to assist with the development of the case. Freeman Decl., ¶7. Given that these documents reflect Plaintiff's thought processes, they are work product. See *Lapaix*, at *6 (S.D.N.Y. Aug. 15, 2014) (rejecting claims of work product where "the documents provide no insight into the party's strategy or thought processes and merely show that a communication occurred").

The documents associated with Dr. Beth Prinz (Individual Entry Nos. 8, 9, 10, 14) also constitute work product. Dr. Prinz is a longtime consultant of Plaintiff who writes as a hobby. Freeman Decl., ¶8. Dr. Prinz consulted in this case when Plaintiff sent her a draft correspondence that Plaintiff intended to send to attorneys who could potentially represent her in this action and sent her one of the indexes Plaintiff created in anticipation of litigation. Id. Dr. Printz was thus acting as Plaintiff's consultant and agent and as such is covered by the work product privilege. See *Lapaix*, 2014 WL 11343854 at *6 (holding that plaintiff did not waive the work product privilege by disclosing any of these emails to third party, whom the documents show had been acting consistently as plaintiff's consultant and agent).

Ms. Wendi Bates (Individual Entry No. 43) is a former professional grant writer, longtime writing consultant for, and close confidant of Plaintiff. Freeman Decl., ¶9. She too provided consulting advice to Plaintiff which was used in the development of her claims in this case. Id. The email thus contains work product created by Plaintiff and forwarded to her father and subsequently forwarded to Ms. Bates for her advice. Id. These communications constitute work product as well.

Prior to this litigation Ms. Jennifer Ramsey (Individual Entry Nos. 107-109, 119) had provided Plaintiff consulting services concerning public relations and advertising. Freeman Decl., ¶10. In the communications at issue, Plaintiff forwarded documentation, including draft correspondence to prospective counsel, to Ms. Ramsey for her advice. Id. These communications also constitute work product in light of the parties' relationship and the circumstances.

Finally, Ms. Wendy Trimble (Individual Entry No. 209) facilitated an introduction between Plaintiff and an attorney from whom Plaintiff was seeking representation for this case. Freeman Decl., ¶11. Again, these communications constitute work product in light of the parties' relationship and the circumstances.

Given the above, it is respectfully submitted that Defendants' motion be denied in its entirety.

We thank Your Honor for consideration of this matter.

    Respectfully submitted,

By: /s/ Laura M. Zaharia
Stephen M. Doniger
Scott Alan Burroughs
Laura M. Zaharia
DONIGER / BURROUGHS
For the Plaintiff