**KLARIS**

March 20, 2023

**VIA ECF**
The Honorable Sarah Netburn
United States District Court, S.D.N.Y.
40 Foley Square
New York, NY 10017

    Re:    *Lynne Freeman v. Tracy Deebs-Elkenaney et al.*, 1:22-cv-2435(LLS)(SN)
              Letter Response to Plaintiff's Motion To Compel (ECF No. 173) and
              **Request for Leave To File Late Response**

Dear Judge Netburn:

Defendants Prospect Agency, LLC and Emily Sylvan Kim ("Prospect") write in response to Plaintiff Lynne Freeman's letter-motion seeking to compel Prospect to produce native versions of all Word and Word Perfect documents produced by Prospect in its document productions (ECF No. 173). Freeman's motion does not set forth any sound basis for compelling production of this material at this late stage of the litigation.

As a threshold matter, Plaintiff fails to accurately set forth the full history of this dispute. In her document requests, Plaintiff included the following instruction: "Plaintiff requests that all documents be produced in native format with all Metadata, including, without limitation, document level text, file and custodian names and document dates, sent and received dates, sender and recipient information, and an accompanying load file (in .dat, .opt, or lfp format)." Typically, if native files are produced, there is no need for a "load file," which is used to provide metadata for files that have been imaged (*see*, *e.g.*, https://percipient.co/load-file/, describing load files).

Given this confusing instruction, Prospect followed customary practice in e-discovery and produced native files for all materials that could not be imaged, such as Excel spreadsheets, but for emails and word processing documents, Prospect produced PDFs *with accompanying metadata load files* for those documents. In short, Prospect fulfilled Plaintiff's request by ensuring that Plaintiff received metadata for all document types. Prospect substantially completed its document production by October 21, 2022. In total, Prospect produced well over 1650 word processing documents in its various productions, and over 24,000 emails.

Plaintiff did not raise the issue of natives with Prospect until months later, on January 23, 2023, and then did so primarily in the context of emails. In that correspondence, counsel said:

> In the document requests we requested that the documents be produced in native format with all Metadata…. You did not produce all documents in native format with the requested metadata, including, but not limited to, e-mails. Thus, we hereby demand that you produce all previously produced documents that were not produced in native format with the requested metadata in native format with all metadata, including, but not limited to e-mails.

Page 1 of 4

Klaris Law PLLC
29 Little West 12th Street                                                                                   lance.koonce@klarislaw.com
New York, NY 10014                                                                                           Mobile: +1 917.612.5861

*See* Exhibit A. The parties held a meet-and-confer on January 27, 2023, during which Mr. Passin, counsel for Plaintiff, insisted he had asked "repeatedly" for natives; counsel for Prospect corrected him, noting that the only requests for (email) natives had been directed towards other Defendants, and then asked why Plaintiff needed natives for emails. Mr. Passin stated "We saw some that were suspicious."[1]  When asked what this meant, Mr. Passin said "I don't want to get into it more than that. We asked for natives, we are entitled to natives. Natives have more information." When again pressed for a rationale, he stated "Everyone knows natives have more info. On receiving end, they have a box that shows all servers they went through. We need it to verify authenticity of all emails." He then, however, noted that this was "More a problem with other side," [meaning other Defendants].  *At no point did Mr. Passin raise natives of text documents, and focused only on emails*.

At another meet-and-confer on February 13, 2023, Mr. Passin raised the issue of natives again with all defense counsel.  In a follow-up email on February 21, 2023, Mr. Passin asked Prospect to reproduce all Word and Word Perfect documents in native format.  Counsel for Prospect responded, "we don't see why you would need native files of Prospect and Kim's Word documents. But if you have specific requests limited to a targeted set, please give us Bates numbers and we'll look into producing natives."  Counsel then engaged in a back-and-forth in which Mr. Passin accused counsel of having already promised to produce such natives, which was not the case. Throughout this exchange, counsel for Prospect maintained the position that given the belated nature of Plaintiff's request, Prospect would consider producing native versions of specific documents that Plaintiff actually needed, but would not make a broad re-production of all Word documents.  *See* Exhibit B.

In support of her position, Plaintiff cites *Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Sec.*, 255 F.R.D. 350 (S.D.N.Y. 2008) for the proposition that under Rule 34, a party may request "that ESI documents be produced as native versions including all metadata." ECF No. 173.  However, "[a]lthough Rule 34 allows the requesting party to indicate a preferred form for production of ESI, '[t]he responding party is not required to accede to the requesting party's specification of form.'" *Zhulinska v. Niyazov Law Group, P.C.*, 2021 WL 5281115, *6 (E.D.N.Y 2021) (*citing* 8B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2219 (3d ed. 2021) *and N. Crossarm Co. Inc. v. Chem. Specialties, Inc.*, No. 03–C–415–C, 2004 WL 635606, at *1 (W.D. Wis. Mar. 3, 2004) ("neither the letter nor the spirit of Rule 34 mandates that a party is entitled to production in its preferred format")).  Of course, "if ESI is kept in an electronically-searchable form, it 'should not be produced in a form that removes or significantly degrades this feature.'" *Id.* (citations omitted).

Plaintiff appears to fundamentally misunderstand the distinction between "metadata" and "natives," and treats them as interchangeable in her letter-motion.  However, while metadata is information – "data that provides information about other data," *see* Metadata Definition, Merriam–Webster Dictionary (available at http://www.merriam-webster.com/dictionary/metadata) – a "native" is a

---

[1] This Court has now held that Plaintiff's claims of "suspicious" emails do not support a demand for inspection of other Defendants' devices.  *See* ECF No. 180.

document, in the form in which it was originally created.  Thus, while a native contains metadata, there are other methods of providing metadata about documents, such as by providing "load files."

Here, Prospect produced documents that could not readily be imaged as natives, and for emails and text documents, it produced images plus metadata "load files." Plaintiff does not argue – nor could she – that producing emails and text documents in this common way "degrades" the ability to search the documents.  Given the production of metadata, there is simply no need for Prospect to incur the expense of re-producing natives[2] for the 1650+ text files, because Plaintiff has not identified any information that might be present in the natives that would not already be available in the produced files and accompanying metadata.[3]  In all of the cases that Plaintiff cites, the court's focus has been on ensuring that the party seeking production receives necessary metadata for those documents, not on production of natives *in addition to* the production of images with metadata.

Indeed, in Plaintiff's lead case, *Aguilar*, the court noted that "by the time the Plaintiffs first informed the Defendants of their desire for metadata (in passing on March 18 and formally on May 22, 2008), the Defendants' document collection efforts were largely complete and they had already produced many of their electronic documents in PDF format *without* accompanying metadata." *Aguilar*, at *359 (emphasis added).  Even so, the court found that "Plaintiffs face an uphill battle in their efforts to compel the Defendants to make a second production of their ESI." *Id.*  The court then reviewed the various categories of documents.  With respect to emails, because Defendants had already made their production before the request for metadata was made, and because Plaintiffs had not shown that the additional metadata would be useful, the court did not order production of metadata.

With respect to text documents, the *Aguilar* court noted that Plaintiffs sought:

> [S]ystem metadata, including the date created, date modified, and modified by fields, for all Word, Excel and PowerPoint documents. . . . The Plaintiffs make two arguments why the production of this metadata should be required. First, they claim that they cannot efficiently search the documents without the metadata. Second, they argue that the metadata is relevant so that they can piece together "who knew what when."

---

[2] Prospect would need to re-upload natives to its e-discovery platform and re-process them, as it has not maintained all natives on that platform where it converted such documents to images plus load files.

[3] In her letter, Plaintiff says this case "involves thousands of pages of documents and multiple versions of many of those documents for which the context, timing, relationships between drafts, and the authenticity of drafts is directly at issue—including the many versions and drafts of Plaintiff's and Defendants' manuscripts and novels. Plaintiff has explained the necessity of accurate and complete metadata in this case and has expressly informed Defendants that the existing production of PDFs is missing requested metadata." If Plaintiff asserts that metadata is missing for any particular documents, Prospect stands ready to evaluate this assertion and supplement its production as to any such documents, but to date Plaintiff has not identified *any* specific documents for which metadata is purportedly missing.

Klaris Law PLLC
29 Little West 12th Street                                    lance.koonce@klarislaw.com
New York, NY 10014                                            Mobile: +1 917.612.5861

As to the first point, the court held that while word documents "could be searched more easily with metadata, the Plaintiffs have been provided with text-searchable PDFs," and this was a case involving only 5200 pages of documents, such that "Plaintiffs should not encounter significant difficulty sorting and searching the word processing and PowerPoint files they have received." As to the relevance point, the court held that at most "the 'who' and 'when' of document creation or modification" was only marginally relevant to their claims. Ultimately, the court agreed that Defendants should produce the metadata so long as Plaintiffs bore the cost of that re-production. Finally, the court agreed to compel the production of Excel spreadsheets in native format.

Again, in the instant case, Prospect has produced metadata for all categories of documents, and produced natives where appropriate, such as spreadsheets. Plaintiff has made no showing that the re-production of all word processing documents in native format would provide any further information to Plaintiff, much less information that is relevant to the parties' claims and defenses. Especially in light of the burden this would impose on Prospect at this late stage in discovery, Plaintiff's motion to compel at ECF No. 173 should be denied.

Lastly, we ask the Court to grant Prospect's request for leave to file the instant letter response one day later than the three business days prescribed by Your Honor's Individual Rules. As Plaintiff's letter-motion was filed after regular business hours on Tuesday, March 14, the undersigned originally erroneously calculated the response date to be today, March 20, rather than Friday, March 17. The undersigned reached out to counsel for Plaintiff seeking consent for this one-day extension, but presumably given the late hour that our request was made, we have not received a response from counsel.

We thank the Court for its time and attention to this matter.

                    Respectfully submitted,

                    KLARIS LAW PLLC

By:    <u>/s/Lacy H. Koonce, III</u>
         Lacy H. Koonce, III

*Attorneys for Emily Sylvan Kim and Prospect Agency, LLC*

Klaris Law PLLC
29 Little West 12th Street
New York, NY 10014

lance.koonce@klarislaw.com
Mobile: +1 917.612.5861