



May 1, 2023

**VIA ECF**
The Honorable Sarah Netburn
S.D.N.Y. Thurgood Marshall Courthouse
New York, NY 10007

Re: *Lynne Freeman v. Tracy Deebs-Elkenaney et. al.*, 1:22 Civ 02435 (LLS)(SN)

Dear Judge Netburn:

We represent Defendants Tracy Wolff, Entangled Publishing, Macmillan, and Universal City Studios, and write jointly with counsel for Defendants Emily Sylvan Kim and Prospect Agency. We additionally write on behalf of Amazon.com, Inc. and Barnes & Noble Booksellers, Inc. ("B&N"), retailers of the *Crave* book series that is the subject of this lawsuit. We recently learned that on April 18, 2023, Plaintiff Lynne Freeman filed a new, substantively identical lawsuit in the Central District of California against Amazon, B&N, and three other large retailers (Costco, Target, and Walmart), accusing them of copyright infringement by selling *Crave* based on identical allegations as those in this SDNY suit. *See Freeman v. Amazon.com Inc. et. al.*, No. 2:23-cv-02917 (C.D. Cal. filed Apr. 18, 2012) (the "California Action," against the "Retailer Defendants").

This whole litigation should not have been filed at all because *Crave* is not remotely similar to Plaintiff's manuscript and there is zero evidence of plagiarism, as will soon be shown at summary judgment. Plaintiff's new lawsuit is a bad faith and vexatious attempt to both pressure a settlement by harassing Defendants' retail partners while evading clear Orders of this Court that required Plaintiff to seek leave to amend her pleadings if she wished to add additional parties. The Court should immediately enjoin the California Action, or enjoin Plaintiff from prosecuting it, as the Court is empowered to do under these circumstances under clear Second Circuit law.[1]

## I. Background

This is a copyright infringement lawsuit where Plaintiff alleges that Tracy Wolff's bestselling *Crave* book series infringes Plaintiff's unpublished novel entitled either *Blue Moon Rising* or *Masqued* (collectively, "*BMR*"). Wolff wrote the *Crave* series, including the four titles at issue—*Crave, Crush Covet,* and *Court*.[2] Entangled is *Crave's* publisher and Macmillan is its distributor. Universal has optioned a *Crave* movie. Kim, through her company Prospect, is a literary agent who has represented Wolff since 2007 and also represented Plaintiff from December 2010 to March 2014. *Crave* was first published in April 2020, more than five years after Kim and Plaintiff stopped working together.

[1] Amazon and B&N join this letter but are not presently entering appearances or formally intervening in this case and reserve all rights and remedies (including the defense of lack of personal jurisdiction) both here and in the California Action. In the event the Court enjoins the California Action and requires Plaintiff to apply for leave to add the Retailer Defendants as additional parties here, Amazon and B&N will address such an application at that time. In the event Plaintiff is permitted to add additional parties, Amazon and B&N will answer or move under Rule 12 at the appropriate time.

[2] A fifth *Crave* book, *Charm*, was published after this lawsuit was filed and is not currently part of this case.

Plaintiff filed her initial Complaint against all current Defendants on March 25, 2022, alleging copyright infringement and seeking damages and a permanent injunction "from selling, marketing, advertising, manufacturing or in any way exploiting" the *Crave* books at issue. (ECF No. 1 at pp. 84-85.) On May 23, 2022, Plaintiff filed a First Amended Complaint ("FAC") against the same Defendants plus Crazy Maple Studio, Inc., a California-based video game company that was developing a *Crave* video game (who Plaintiff later dismissed). (ECF Nos. 24, 58.) The FAC sought the same relief including the same injunctive relief, and also sought to enjoin the *Crave* movie and video game. (FAC at pp. 84-86.)

On June 10, 2022, the Court issued a Civil Case Management Plan and Scheduling Order (the "Scheduling Order," ECF No. 37). The Scheduling Order provides: "The Plaintiff filed an Amended Complaint on May 23, 2022. Amended pleadings may not be filed and ***additional parties may not be joined*** except as allowed pursuant to Fed. R. Civ. P. 15." (Scheduling Order ¶ 3 (emphasis added).)

The case proceeded to discovery consistent with the Scheduling Order. Fact discovery was extended three times at Plaintiff's request and over Defendants' objection, and eventually completed on March 31, 2023. Over the course of fact discovery, Your Honor ruled on numerous disputes. One of these involved Plaintiff's request to further amend her Complaint to include claims against the fifth *Crave* book, *Charm*. Your Honor recognized that "given the sprawling nature of this litigation," the Court could not "see the value in expanding the scope of the works" at issue "at this late stage." (12/12/22 Hr'g Tr. 51:1-11 (ECF No. 99).) Still, the Court provided Plaintiff a potential way forward for this: Plaintiff needed to first "provide the defendants with a proposed amended complaint," then meet and confer with Defendants regarding the proposed amendment, and then "make a motion for leave to amend your complaint." (*Id.* 52:9-17.) To date, Plaintiff has not provided Defendants with a proposed Second Amended Complaint, sought to meet and confer on the issue, or filed a motion for leave to amend. And most importantly, after full discovery and taking the deposition of 10 defense witnesses including Wolff and Kim, Plaintiff uncovered no proof whatsoever that Wolff ever saw her manuscripts or plagiarized them.

Rather than follow the procedures for amending her pleadings to add additional parties, as set forth in the Scheduling Order and ordered by the Court at the December 12 hearing, Plaintiff filed the California Action against the Retailer Defendants on April 18, 2023. The complaint in the California Action is virtually identical to the FAC here, containing the same substantive copyright allegations, nearly word for word. (*See* California Action Compl. (Halperin Decl. Ex. A).)[3] Like the action here, the California Action seeks to enjoin the Retailer Defendants from selling *Crave*, as well as damages for copyright infringement. (*Id.* at 57-58.)[4] In support of the California complaint, Plaintiff filed the same three exhibits as those filed with the FAC here, including the

[3] There are some minor and self-serving differences. For example, Plaintiff now disingenuously alleges that *BMR* and *Crave* both feature heroines who moved from San Diego to Alaska at age 17 (Ex. A at p. 9 item k), when the manuscripts Plaintiff identified pursuant to the Court's Order have the *BMR* heroine moving from California to Alaska at age 7, which is also what is alleged in the FAC here (FAC at p. 15 item l).

[4] Plaintiff has not sought a preliminary injunction to attempt to immediately stop the Retailer Defendants from selling *Crave*, suggesting that her intention is to simultaneously try to pressure a settlement while allowing sales to continue to potentially increase her alleged damages.

exhibits' as-filed ECF stamps. (Halperin Decl. Exs. B-D.) And like here, Plaintiff did not attach any of her manuscripts themselves to her complaint, apparently attempting to foreclose a motion to dismiss due to lack of similarity just as she did here.

Plaintiff filed a related case statement in the California Action acknowledging that "the factual allegations and legal issues related to the copyright infringement claims are all but identical" to those here. (Halperin Decl. Ex. E at 2.) It further states: "Both cases involve the same underlying claims of copyright infringement, i.e., that the first four books of the bestselling young adult paranormal romance *Crave* series infringe Plaintiff's *Blue Moon Rising* / *Masqued* work." (*Id.*)

Defendants learned about the California Action shortly after it was filed. On April 21, Defendants' counsel emailed Plaintiff's counsel explaining that Plaintiff did not follow the procedure for adding additional parties to this litigation and advising that Defendants would move to enjoin the California Action and potentially seek sanctions if Plaintiff did not immediately withdraw that suit. The parties met and conferred via telephone on April 25 and did not reach agreement.

## II. Argument

"As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, (1976)). "A suit is duplicative of another … when 'the same proof is needed to support the claims in both suits or … facts essential to the second suit were present in the first suit.'" *Barclay v. Lowe*, 131 F. App'x 778, 779 (2d Cir. 2005). "The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the 'comprehensive disposition of litigation,'" as well as "to protect parties from 'the vexation of concurrent litigation over the same subject matter.'" *Curtis*, 226 F.3d at 138 (citations omitted).

The Second Circuit has long recognized that "[w]here an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action." *Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir. 1974); *see also Curtis*, 226 F.3d at 138 (court faced with a duplicative lawsuit "will commonly … enjoin the parties from proceeding with it"). "This rule is applicable ***even where the parties in the two actions are not identical***." *Meeropol*, 505 F.2d at 235 (emphasis added); *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 664 (S.D.N.Y. Sept. 11, 1997), *aff'd*, 173 F.3d 844 (2d Cir. 1999) ("For a second action to be duplicative, it is not necessary that the parties be identical."). So long as "the parties 'represent the same interests' the court may determine the second action to be duplicative." *Id.*; *see also, e.g.*, *Barclay*, 131 F. App'x at 779 ("Although Barclay named different defendants in the second suit than in the first, the suits are nonetheless duplicative because the defendants in the second suit are in privity with the defendants in the first suit."). This first court is in the best position to decide these issues. *See, e.g.*, *Silver Line Bldg. Prod. LLC v. J-Channel Indus. Corp.*, 12 F. Supp. 3d 320, 328 (E.D.N.Y. March 24, 2014) ("The first-to-file rule has generally been interpreted to dictate not only which forum is appropriate, but also which forum should decide which forum is appropriate.") (citation omitted).

Courts commonly dismiss or enjoin duplicative second lawsuits that seek to bring the same claims against new parties who could have been included originally. *See, e.g.*, *Meeropol*, 505 F.2d at 235-37 (affirming where SDNY court presiding over copyright infringement suit against book author and hardcover publisher enjoined later identical Connecticut action asserting same claims against book's paperback publisher); *DiGennaro v. Whitehair*, 467 F. App'x 42, 44 (2d Cir. 2012) (affirming dismissal of second suit against different defendant as duplicative, finding that "[a]djudication of the claims against [the second defendant] would necessarily involve findings on the exact same facts required to resolve the claims in the first action"); *Branded Apparel Grp. LLC v. Muthart*, 2018 WL 4308545, at *3-5 (S.D.N.Y. Sept. 10, 2018) (dismissing where "the facts underlying [party's] counterclaims in the [prior] Action are virtually identical to those supporting its [same] claims in the New Action"); *Howard*, 977 F. Supp. at 658, 664-65 (dismissing second suit against new parties "alleging claims virtually identical to those alleged in" original suit, finding that "the thrust of [plaintiff's] claims in both actions are based on the same factual allegations and the requests for relief are essentially the same").

This result is especially appropriate when a plaintiff has "deliberately sought to circumvent [a court's] scheduling order by filing" a second lawsuit rather than moving to amend her pleadings in the original action at the appropriate time. *See Branded Apparel*, 2018 WL 4308545, at *4-5. In *Branded Apparel*, for example, "in lieu of filing an untimely motion to amend" its counterclaims to add a new defendant in the first suit, the party "filed a duplicative [second] action" against the new defendant. *Id.* at *4. The court found this to be pure bad faith and dismissed the second suit, observing that it was "a transparent gambit to increase settlement leverage without running afoul of this Court's scheduling order." *Id.* at *5; *see also DiGennaro*, 467 F. App'x at 44 (affirming dismissal where "DiGennaro failed to demonstrate good cause for not moving to amend the original complaint until April 2010, and instead filing a second action against [new defendant] in October 2009").

The California Action must be enjoined as duplicative of this suit for the same reasons. As Plaintiff herself admits, "the factual allegations and legal issues related to the copyright infringement claims are ***all but identical***" in the two lawsuits. (Ex. E at 2 (emphasis added).) Both suits involve the exact same novels (*BMR* and four *Crave* books) and hinge on the exact same evidence (those novels themselves). The substantive copyright allegations in the two Complaints are materially identical (including the same paragraphs upon paragraphs of purported comparisons between *BMR* and *Crave*). (*See* Ex. A. at pp. 4-57.) The three exhibits Plaintiff filed with her California complaint (containing cherry-picked comparisons of language from *BMR* and *Crave* purporting to show infringement) are also identical to those filed with the FAC here, down to their repeat ECF stamps. (Exs. B-D.) And the relief sought is also the same—in both suits, Plaintiff seeks damages for copyright infringement and to enjoin sales of *Crave*. (Ex. A. at pp. 57-58.)

As a result, resolution of this case will "be dispositive of the issues in" in the California Action. *Meeropol*, 505 F.2d at 236. The defendants in the two suits also "clearly represent the same interests," *Howard*, 977 F. Supp. at 664, as both sets of defendants will prevail by demonstrating that *Crave* does not infringe *BMR*. What is more, the defendants in the two suits are "in privity" via indemnification agreements. *See Meeropol*, 505 F.2d at 235-36 (affirming enjoining of second



suit because all defendants were "in privity," finding that "for all practical purposes," contractual indemnity made the first publisher "the real party in interest in the [second] action").[5]

There also are no "special circumstances" that would justify departing from the "first-filed rule" and allowing the California Action to proceed. *See, e.g.*, *Howard*, 977 F. Supp. at 664-65. The Retailer Defendants in the California Action are all large, well-known booksellers whose sales of *Crave* could have been discovered with even a modicum of due diligence prior to either the filing this suit or filing the FAC.[6] Plaintiff even ***testified at her deposition that she purchased her own copy of* Crave *from Amazon***.[7] Nor would jurisdictional concerns have seemingly stopped Plaintiff from naming the Retailer Defendants in this suit. After all, Plaintiff included Universal (a California company) as a defendant in her Complaint here, and then added Crazy Maple (also a California company) with her FAC.

In sum, Plaintiff easily could have named the Retailer Defendants in her Complaint or FAC if her counsel at the time had thought to do so. Plaintiff (now represented by new counsel), should not be allowed a do-over of strategic decisions made long ago when her pleadings in this case were filed. *See Curtis*, 226 F.3d at 140 (affirming dismissal of second suit to the extent it was based on "alleged events that had occurred prior to" the first suit, where second suit was filed "two months after the close of discovery, [and] more than a year after the deadline for amending the complaint" in the first suit). Plaintiff's bad faith attempt to add new defendants via a separate lawsuit "in lieu of" abiding by the Court's Orders is "a transparent gambit to increase settlement leverage without running afoul of this Court's scheduling order." *Branded Apparel*, 2018 WL 4308545, at *5.

For the above reasons, the Court should either enjoin the California Action or enjoin Plaintiff from prosecuting it (including from serving any Retailer Defendants that have not yet been served). The deadline for adding new parties to this litigation has long passed. If the Court is inclined to consider a motion for leave to add the Retailer Defendants, it should take the same approach as it has for similar issues and require that Plaintiff first prove her underlying claims of copyright infringement before deciding whether additional parties may be added. That is the most fair and efficient course "at this late stage" of this already "sprawling" litigation (ECF No. 99 at 51:1-11), which is baseless to begin with and continues to unfairly cost Defendants extraordinary time and resources.

Finally, the Court should exercise its inherent powers and sanction Plaintiff for ignoring two Court Orders and filing a bad faith new lawsuit against the Retailer Defendants in California rather than following the required procedure for adding new parties to this litigation. A fair sanction would be the attorneys' fees and costs Defendants incurred in developing and submitting this motion.[8]

Thank you for your time and attention to these issues.

---

[5] Pursuant to agreement, Entangled must indemnify Macmillan and its retailer customers for copyright infringement claims related to *Crave*.

[6] Although, based on Defendants' current knowledge and records, it does not appear that Costco has ever sold copies of the *Crave* books.

[7] This deposition transcript is not included now to avoid the need to file this motion under seal, but Defendants stand ready to provide it if Plaintiff claims she did not so testify or at the Court's request.

[8] Defendants stand ready to provide a detailed accounting or a formal sanctions motion if the Court requires it.

Respectfully submitted,

COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP

By: /s/ Benjamin S. Halperin
Nancy E. Wolff
Benjamin H. Halperin
CeCe M. Cole
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
nwolff@cdas.com
bhalperin@cdas.com
ccole@cdas.com

*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan, and Universal City Studios LLC*

