

Attorneys admitted in
California, New York,
Texas, Pennsylvania, and
Maine

Sender's contact:
lzaharia@donigerlawfirm.com
(310) 590-1820

Doniger / Burroughs Building
603 Rose Avenue
Venice, California 90291

Doniger / Burroughs NY
247 Water Street, First Floor
New York, New York 10038

May 2, 2023

**DELIVERED VIA ECF**

The Honorable Sarah Netburn
Thurgood Marshall Courthouse
40 Foley Square, Courtroom 219
New York, NY 10007

      Case Title:   *Freeman v. Deebs-Elkenaney et al,*
               1:22-cv-02435-LLS-SN
      Re:      **Response to Defendants Letter Motion to Stay**

Your Honor:

  In April of 2020, three years and a few weeks ago, Defendants released the first book in the Crave series for sale through retail outlets including Amazon.com and Barnes and Noble Booksellers, Inc. Incredibly, the characters, plot, scenes, and storyline of *Crave* and the books that follow it in the *Crave* series are remarkably similar to Lynne Freeman's *Blue Moon Rising* manuscript.[1]

  Having come up on the 3-year statute of limitations for her claims against those retail outlets, Freeman has now filed suit against them through the California Action. There is nothing improper about that filing, and no grounds for the relief sought by Defendants in their most recent correspondence.

---

[1] Among the remarkable similarities are the following: A 17-year old girl who moves from San Diego to Alaska after an "accident" kills her family members. She goes to live with the only two family members she believes she has left, and they are both supernatural witches, which she doesn't know because she's been kept ignorant of the supernatural world by her family, including by them giving her "tea" which binds her powers. She meets the romantic lead, who in both books looks and dresses the same and is also suffering from the loss of his older brother (who was 19 in one story and "looked 19" in the other). The heroine first discovers that the romantic lead is a dangerous supernatural being who is trying to stop a war among the factions of supernaturals, and later discovers that she is a unique supernatural being (one in 1,000 years in one book, and one in "10 generations" in the other) who is the only one that can stop the war and bring balance. The heroine is kidnapped by a vampire who wants to bring back their dead mate and needs the heroine to do so. This vampire wants to use the heroine as an act of vengeance against the person believed to be responsible for their mate's death. Both heroines have a mixed-race male best friend who is gay, although only the heroine knows it. Both stories have scenes of a first kiss under a light show in the winter Alaskan sky, the same "mean-girl" foil character spiking the heroine's drink at a party, and an attack scene in the snow by two supernaturals who look like '80s rockers, and voices in the heroine's head which turn out to be the heroine's long lost father/grandfather who is trapped in his supernatural form in another dimension that the heroine visits through a portal. And there is far more.

Notably, when Plaintiff filed the operative First Amended Complaint she included another downstream defendant, Crazy Maple Studio, Inc., as a defendant. But she dismissed Crazy Maple by stipulation on September 1, 2022 (see Dkt. 57) after it "advised Plaintiff that it intends to file a motion to dismiss and/or transfer the claims against it in the FAC on the grounds of personal jurisdiction and/or improper or inconvenient venue." *Id.*, p. 2 of 12. The parties agreed to dismiss Crazy Maple "without prejudice and toll the applicable statute of limitations and then, depending on the outcome of the Action, decide how to proceed with Freeman's claims against Crazy Maple Studio". *Id.*

Counsel for Defendants, Nancy E. Wolff of Cowan, Debaets, Abrahams, & Sheppart LLP and Lance Koonce of Klaris Law PLLC signed off on that stipulation, specifically waiving any argument that Crazy Maple was an indispensable party that "must be joined as a party to this Action pursuant to the Federal Rules of Civil Procedure, Rule 19 <u>or that proceeding with the Action without including Crazy Maple Studio as a party prevents Freeman from filing a new lawsuit in the future against Crazy Maple Studio for the claims originally alleged against Crazy Maple Studio in the FAC or any other claims</u>." *Id.,* pages 5 and 11 of 12 (emphasis added).

In other words, Defendants understand that downstream defendants are not indispensable parties who must be joined in this case (pursuant to Rule 19 or otherwise), that at least some of those downstream defendants are not subject to jurisdiction of this Court, and that Plaintiff specifically reserved the right to pursue claims against downstream defendants, including through separate actions, in the future. Given that the only downstream defendant to agree to toll the statute of limitations thus far has been Crazy Maple, that future has now come with respect to the Retail Defendants.

As the Second Circuit explained in *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 360, "a plaintiff in a copyright action may choose her defendant(s), no single infringer being considered indispensable. "[P]laintiff may choose those he wishes to sue and is not required to join all infringers in a single action." *Id.* at 358. There is also abundant authority to the effect that, in a tort case, an aggrieved party is not compelled to sue all joint tortfeasors, but may proceed against as few or as many as he wishes." *Id.* at 360. Moreover, in *Desire, LLC v. Manna Textiles, Inc.* the Ninth Circuit explained that a copyright holder could always pursue downstream infringers in one or more separate actions but held that where they were joined in a single action and joint and several liability was found then the plaintiff could only obtain a single statutory damages award against the multiple named defendants. 986 F.3d 1253, 1271 (9th Cir., 2021) (Acknowledging that "under the approach we adopt today, a <u>plaintiff might achieve the result Desire seeks by suing separate infringers in separate actions.</u>")

Defendants' suggestion that it was improper to bring the California Action is disingenuous. They do not—because they cannot—argue that the Retail Defendants are indispensable parties to this action. Rather, they inexplicably argue that the only way for Plaintiff to assert claims against the Retail Defendants is by amending their complaint *in this case*, regardless of whether this Court even has jurisdiction over those defendants.

This Court's June 10, 2022 Civil Case Management Plan and Scheduling Order (the "Scheduling Order," ECF No. 37) suggests no such thing. Defendants are, of course, correct that if Plaintiff wished to add retail defendants to this case it would have had to comply with Rule 15 and this Court's Scheduling Order. But Plaintiff is also entitled to bring separate actions against separate defendants pursuant to, *inter alia*, Federal Rules of Civil Procedure, Rule 20 which provides that a plaintiff may, but need not, join defendants together in a single action if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect

>   to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
>   (B) any question of law or fact common to all defendants will arise in the action.

And importantly, even where "the requirements of permissive joinder are met, courts maintain the discretion to sever defendants under Rules 20(b), 21, and 42(b)." *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 168 (S.D.N.Y. July 31, 2012) (*citing,* Fed.R.Civ.P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); *Digital Sins 245,* 2012 WL 1744838, at *2; *In re BitTorrent Adult Film Copyright Infringement Cases,* Nos. 11 Civ. 3995, 12 Civ. 1147, 12 Civ. 1150, 12 Civ. 1154, 2012 WL 1570765, at *11 (E.D.N.Y. May 1, 2012)). Courts regularly sever out otherwise properly joiner defendants to "comport with the principles of fundamental fairness," prejudice either side, or "confuse and complicate the issues for the parties involved." *Id.*

It would be improper to add the Retail Defendants to this case. In addition to copyright infringement, this case includes claims of fraud, breach of fiduciary duties, breach of contract, and other claims against the Defendants that have nothing to do with the Retail Defendants. Since the liability claims against the retail defendants are a far smaller subset of the claims against Defendants in this case and the damages claims are entirely different, it would be fundamentally unfair, and unnecessarily complicate the issues relative to the Retail Defendants to require them to litigate and try their claims concurrent with the Defendants in this case. This is particularly so given the prejudice that could result to the Retail Defendants should they have to contend with the weighty evidence of willful infringement and egregious conduct by the Defendants in this case.[2]

Defendants' argument that the California Action is "duplicative" rests on misleading case citations and smacks of bad faith. Citing *Barclay v. Lowe*, 131 F. App'x 778, 779 (2d Cir. 2005), they argue that "[a] suit is duplicative of another ... when 'the same proof is needed to support the claims in both suits or ... facts essential to the second suit were present in the first suit.'" But they omit the prior sentence in which the Court gives context to this statement by explaining that "District courts have the power to dismiss duplicative suits because 'plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time.'" *Id.* at 778-779 (emphasis added). This California Action, of course, is not a second case on the same subject in the same court against the same defendant. It is thus not duplicative in any sense that would justify dismissal.[3]

Defendants' fallback argument is that this Court should stay the California Action until the merits of this case are addressed. Plaintiff does not object to staying the California Action until the merits of this case are resolved, but this Court currently lacks jurisdiction to issue such an Order. Indeed, Defendants' "stay" request invokes *Meeropol v. Nizer*, 505 F.2d 232, 335, in which the defendant in the second action filed in Connecticut moved to intervene in the first-filed action in New York to then move the court to enjoin the second action until

---

[2] The evidence produced in discovery reveals not only that Defendant Kim was centrally involved in writing the *Crave* series with Tracy Wolff after spending literally years working with Plaintiff on edits and revisions to her manuscript, but that Plaintiff's manuscript had been submitted by Kim to defendant Entangled before Entangled reached out to Kim and Wolff to ask that they write the *Crave* series and helped create the basic storyline, etc....

[3] Defendants also cite *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp.654 for the proposition that "for a second action to be duplicative, it is not necessary that the parties be identical," but there the second action was against partners of defendant Peat Marwick who were "sued precisely because of their status as Pete Marwick partners" and thus their liability was "founded upon the same facts." *Id.* Here the Retail Defendants' liability stems from their discrete sales of the infringing books, and the actions are thus not duplicative.

resolution of the first. In addressing the appellant's argument "that the district court had no jurisdiction to enjoin the Connecticut suit" the Second Circuit explained: "we assume they are correct as of the time the court below granted the temporary restraining order, since Fawcett was then a stranger to the New York proceeding. But when Fawcett was granted leave to intervene in the New York suit, the district court obtained jurisdiction for the order already granted." *Id.* Here, counsel for Defendants have made no claim that they have even been retained to represent the Retail Defendants, and they have certainly not sought to intervene on their behalf in this case.

Defendants claim that "Courts commonly dismiss or enjoin duplicative second lawsuits that seek to bring the same claims against new parties who could have been included originally (Dkt. 193, p.4 of 6), but that is simply not true. Indeed, other than *Meeropol* and *Howard*, distinguished previously, the only other supporting authority they could find was the not-for-publication decision in *DiGennaro v. Whitehair* (467 Fed.Appx 42 (2012)) and the district court holding in *Branded Apparel Grp. LLC v. Muthart* (2018 WL 430854). These readily distinguishable, non-authoritative cases certainly do not establish that courts commonly dismiss or enjoin related second lawsuits. Indeed, *Branded*, like the *Howard* case discussed in fn.4, concerns a second suit brought against a defendant (Muthart) to hold him liable for the alleged misdeeds of his company Supreme Showroom, Inc. when Branded already had the same claims pending against Supreme in an earlier-filed related action. *Id.* at 1-3.

The cases cited by Defendants point to only one thing: it is improper to file a second action against an agent or principal of a defendant, or other party in true privity with that defendant, while litigating the same claims against that defendant in an earlier-filed action. That is *not* the case here. Rather, Plaintiff has properly filed a second action against certain Retail Defendants, and there is no cause to dismiss that case. Furthermore, Plaintiff will likely stipulate to stay that action pending resolution of this case, but that is a stipulation that should be entered into with the Retail Defendants in that case and filed in the California Action. Defendants' requested relief should therefore be denied in its entirety.

We thank Your Honor for consideration of this matter.

Respectfully submitted,

By: */s/ Stephen M. Doniger*
Stephen M. Doniger
Scott Alan Burroughs
DONIGER / BURROUGHS PC
For the Plaintiff