

May 8, 2023

**VIA ECF**
The Honorable Sarah Netburn
S.D.N.Y. Thurgood Marshall Courthouse
New York, NY 10007

      Re:    *Lynne Freeman v. Tracy Deebs-Elkenaney et. al.*, 1:22 Civ 02435 (LLS)(SN)

Dear Judge Netburn:

Pursuant to the Court's May 4 Order (ECF 199), Defendants respectfully reply in support of their motion to enjoin Plaintiff's California Action ("Mot.," ECF 194), and in response to Plaintiff's opposition letter ("Opp'n," filed twice as ECF 195, 196).[1] In addition to raising erroneous arguments, Plaintiff's letter significantly misrepresents the facts of this case, as discussed below.

*First*, Defendants' motion should be granted because Plaintiff filed a duplicative second lawsuit to circumvent the Court's Scheduling Order and try to add parties she has known about from the beginning. Plaintiff does not even attempt to argue that she was unaware of the Retailer Defendants when she filed her Complaint or the FAC—nor could she since she testified that she **bought her own copy of** Crave **on Amazon**. This is not a situation where a plaintiff only learned about potential new parties in discovery. Plaintiff chose this District as the forum for her copyright infringement claims against *Crave* and chose the six Defendants in this case as the parties to sue. She should not be allowed a do-over of those decisions "at this late stage" of this already "sprawling" litigation. (ECF 99 at 51:1-11.)

Plaintiff also does not contest that the defendants in both actions have the same exact interest (disproving infringement), or that the claims she is attempting to bring in both actions are identical.[2] And importantly, Plaintiff ignores the fact that the Retailer Defendants are in privity with Defendants here, stating only that there is no "true privity," without explanation. (Opp'n at 4.) These parties *are* in privity, both through the chain of distribution and indemnity. That alone is dispositive. *See, e.g.*, *Barclay*, 131 F. App'x at 779 (a second lawsuit against a different defendant is "nonetheless duplicative [when] the defendants in the second suit are in privity with the defendants in the first suit").[3]

*Second*, Plaintiff argues that the California Action is proper because the Retailer Defendants are "not indispensable parties who must be joined in this case" (Opp'n at 2), but that has it backwards.

---

[1] The same defined terms are used as in the Motion; short citations are used for cases previously cited.
[2] Plaintiff argues that this case also includes "claims of fraud, breach of fiduciary duties, breach of contract, and other claims against the Defendants that have nothing to do with the Retail Defendants." (Opp'n at 3.) But as Defendants have shown (and Plaintiff does not dispute), the copyright infringement claims and relief for them sought in both actions are identical. (Mot. at 2-3.) In any event, Plaintiff's state-law claims against Kim and Prospect did not stop her from including Universal and Crazy Maple in this action.
[3] Defendants did not misrepresent *Barclay* as Plaintiff argues. (Opp'n at 3.) *Barclay* (and numerous other cases Defendants cited (Mot. at 3-4)) squarely support the proposition that a second action can be duplicative even if it involves different defendants or is filed in a different court. *See* 131 F. App'x at 779 (duplicative "[a]lthough Barclay named different defendants in the second suit than in the first"); *see also, e.g.*, *Meeropol*, 505 F.2d at 235-37 (affirming enjoining second suit filed by same plaintiff against paperback publisher in different district).

Cowan, DeBaets, Abrahams & Sheppard LLP

41 Madison Avenue    9454 Wilshire Blvd
38th Floor    Suite 901
New York, NY 10010    Beverly Hills, CA 90212    cdas.com

Failure to join a necessary party is a defense under Rule 12(b)(7), not a rule permitting plaintiffs who are years into a litigation to evade scheduling orders by filing duplicative suits against defendants they were aware of since day one. If anyone is a necessary party anywhere, arguably Wolff and Entangled are necessary parties in the California Action. But those Defendants cannot be joined (or impleaded) in the California Action because that would force them to defend the same claims in two courts. This is all the more reason to enjoin that suit.

Plaintiff's authority is inapposite. In Plaintiff's primary case, *Bassett*, the court held that the district court should not have dismissed an entire action after concluding that a Native American tribe (immune due to sovereign immunity) had been a necessary party, since this left the plaintiff with no recourse at all. 204 F.3d at 358-60. But Defendants are not seeking to dismiss ***this case*** for failure to join a necessary party. And unlike in *Bassett*, Plaintiff is deep into litigation against the parties she chose to sue and will continue to have a full and fair opportunity to recover. Plaintiff's other main authority is misleadingly excerpted dicta from a Ninth Circuit decision. (Opp'n at 2 (quoting *Desire*, 986 F.3d at 1271).) Crucially, Plaintiff omits the *Desire* court's statement that "suing separate infringers in separate actions [would] ***arguably frustrat[e] the purposes of the [Copyright] Act***." *Id.* (emphasis added). Ultimately, Plaintiff does not cite a single case permitting a plaintiff to file a duplicative second suit to bring identical claims against defendants that were known from day one. Defendants, by contrast, cited numerous cases where such duplicative lawsuits were dismissed or enjoined, and those should be followed here. (*See* Mot. at 3-4.)

Plaintiff also argues that her voluntary dismissal of Crazy Maple amounted to an understanding by all parties that she could bring separate future actions. (Opp'n at 2.) But Plaintiff's agreement with Crazy Maple involved those two parties only and says nothing about Plaintiff's rights with respect to anyone else. If anything, the fact that Plaintiff added Crazy Maple as a defendant with her FAC demonstrates that she was on notice then of a need to add all parties against whom she had claims.

***Third***, Plaintiff ignores the significant risk of unfairness to both Defendants here and the Retailer Defendants if the California Action is allowed to proceed. First, if the California Action is not enjoined, that court may order that the case be transferred to this District and consolidated with this action, where the main litigation over the same issues is already proceeding and the Court is already familiar with the facts and parties. *See generally, e.g.*, *Owen v. Labor Ready Inc.*, 146 Fed. Appx. 139, 141 (9th Cir. 2005). But that will have given Plaintiff a back-door way to join the Retailer Defendants after the deadline without following the procedures set forth in the Scheduling Order and by Your Honor. That is precisely the result the court sought to avoid in *Branded*, where it found that the plaintiff/counterclaimant "deliberately sought to circumvent this Court's scheduling order by filing a [separate] action against" a new defendant it "had well known of" from the outset, because it "no doubt recognized [that] this Court would have denied as delinquent" a motion to amend. 2018 WL 4308545, at *4.[4]

Similarly, allowing a second duplicative lawsuit to proceed could produce inconsistent results and subject the parties to conflicting obligations from different courts. While Plaintiff would be

---

[4] *Branded* is a recent SDNY decision that is precisely on point and should be followed. Plaintiff does not seriously contest this, mostly arguing that *Branded* is "non-authoritative." (Opp'n at 4.)



precluded from relitigating the issue of infringement if Defendants prevail in this case, the Retailer Defendants would not be precluded from challenging infringement, because *they* would not have had an opportunity to contest it here. Accordingly, the central issue of whether the *Crave* series infringes *BMR* could be decided by two different courts and/or juries and create inconsistent obligations.[5] This only underscores that Plaintiff cannot attempt to sue retailers of a work in a separate action from her primary case against the author, publisher, and distributor of the work, when she knew about the retailers from the outset.

**Fourth**, Plaintiff attempts to maintain the California Action by offering to stay it pending the resolution of this case. (Opp'n at 3-4.) But as noted above, Plaintiff chose this District as the forum for litigating her claims involving *Crave* and had two bites at the apple to join all parties she was aware of. Plaintiff is also wrong to the extent she argues that this Court "currently lacks jurisdiction" to enjoin the California Action. (*See Id*.) Plaintiff is a litigant who submitted to the authority of this Court, and the Court has the power to enjoin Plaintiff from proceeding with the California Action, wholly enjoin the California Action, and even order Plaintiff to enter a stipulation staying the California action.

**Finally**, Plaintiff's letter seriously misrepresents the facts of this case and works at issue. While Defendants address these issues now primarily to correct the record, the fact that Plaintiff has resorted to distorting the facts in her opposition underscores the need to eliminate side-show procedural disputes and proceed with summary judgment so that the Court can finally evaluate the merits. Plaintiff's letter in fact demonstrates how dangerous and unfair it would be to decide this case based on self-serving descriptions of the parties' works rather than the works themselves.[6]

For example, Plaintiff falsely states that *BMR* features a "17-year old girl who moves from San Diego to Alaska." (Opp'n at 1 n.1.) But the protagonist in *BMR* (Anna) is 16, not 17, and moved to Alaska at age seven. (*See, e.g.*, ECF No. 122-1 at LF06965 ("My dad died in a freak accident when I was **seven** and she just, well, she hasn't ever gotten over it…. My mom's reaction to my dad's death was to move us to Alaska the very next day.").) This distinction is important because Plaintiff claims that the respective works are similar in part because both feature a protagonist who moves to Alaska at age 17 (which is, in any event, an unprotectable idea). Notably, Plaintiff ***changed the age of her own main character*** in her California complaint (and now the footnote in her opposition), as compared with the FAC, where Anna was alleged to be 16. (Mot. at 2 n. 3.)

Similarly, Plaintiff claims that Anna "goes to live with the only two family members she believes she has left" who "are both supernatural witches, which she doesn't know because she's been kept ignorant of the supernatural world by her family." (Opp'n at 1 n.1.) But this misleadingly omits

---

[5] If the Retailer Defendants were to prevail on the infringement issue in California (in the unlikely event Plaintiff first prevails here), they would be subject to both an injunction from this Court forbidding Defendants here from selling *Crave* (which would forbid distributing it down the chain to the Retailers) and a judgment from California allowing the Retailer Defendants to proceed with selling *Crave*.

[6] Included below are just several examples based on one footnote in Plaintiff's Opposition. This discussion does not address every inaccuracy in the footnote, nor does it even scratch the surface of the extent to which the works are misrepresented in Plaintiff's pleadings and other filings. All of this underscores the need to simply compare the works ***themselves*** at summary judgment.



that one of these family members is Anna's own mother, whom she has lived with all along. In *Crave*, by contrast, both of Grace's parents are deceased and she goes to live at a boarding school overseen by her uncle. It is also incorrect that Anna in *BMR* "doesn't know" her family members are witches. In fact, Anna states early in *BMR* that her aunt "considers herself a natural-born witch and has told me since I was very young that we descend from a long line of such witches going back generation upon generation." (LF03815 (not yet on docket); *see also* ECF 122-1 at LF06916 ("'You used to do [Tarot cards readings], too,' I say. I shouldn't have said that, the part about [Anna's mom] having practiced the Craft.").)[7]

Finally, Plaintiff also grossly misrepresents the evidence from discovery. Most notably, Plaintiff claims that "Defendant Kim was centrally involved in writing the *Crave* series with Tracy Wolff" (Opp'n at 3 n.2), when in fact the testimony was ***resoundingly*** the opposite (*e.g.*, Kim Dep. Tr. 165:20:23 ("Q. And is it your testimony as you sit here today, that you did not take any part in the writing of any of [Crave, Crush, Covet, or Court]? A. That is correct."); Wolff Dep. Tr. 57:7-22 ("Q. Isn't it accurate to say that Emily Kim contributed to the writing of the Crave book series? A. She did not contribute to the writing of the Crave book series. She did not write."); Pelletier Dep. Tr. 62:10-13 ("Q. Is it accurate to say that Emily Sylvan Kim also contributed to the writing in the Crave book series? A. No, that would not be accurate.")).

Plaintiff's misrepresentation of the facts is all the more reason to grant all the relief sought in Defendant's motion, including sanctions.

Thank you for your time and attention to these issues.

                                                                                 Respectfully submitted,

                                                                                 COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP

                                                                                 By: /s/ Benjamin S. Halperin
                                                                                 Nancy E. Wolff
                                                                                  Benjamin H. Halperin
                                                                                  CeCe M. Cole
                                                                                  41 Madison Avenue, 38th Floor
                                                                                  New York, New York 10010
                                                                                  Tel: (212) 974-7474
                                                                                  Fax: (212) 974-8474
                                                                                  nwolff@cdas.com

---

[7] Plaintiff also misrepresents *Crave*. First, Plaintiff falsely represents that the *Crave* romantic lead's older brother (Hudson) is dead (Opp'n at 1 n.1), when in fact Hudson was alive and becomes the hero of the *Crave* series and Grace's eventual love interest. Plaintiff then claims that the gay mixed-race character (Flint) in *Crave* is closeted (*id.*), but Flint openly dates two men throughout the series. Plaintiff also claims that Flint is Grace's best friend, but he is not, and in fact tries to kill her several times in *Crave*. Plaintiff also misrepresents the first kiss in *Crave*, which takes place in a dorm room after a meteor shower, not "under a light show in the winter Alaskan sky." (*Id.*)



bhalperin@cdas.com
ccole@cdas.com

*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan, and Universal City Studios LLC*

