

May 22, 2023

**VIA ECF**
The Honorable Sarah Netburn
S.D.N.Y. Thurgood Marshall Courthouse
New York, NY 10007

      Re:    *Lynne Freeman v. Tracy Deebs-Elkenaney et. al.*, 1:22 Civ 02435 (LLS)(SN)

Dear Judge Netburn:

We represent Defendants Tracy Wolff, Entangled Publishing, Macmillan, and Universal City Studios, and write jointly with counsel for Defendants Emily Sylvan Kim and Prospect Agency to ask that the Court convene a conference to consider whether there is a way to streamline this litigation in light of recent events and actions by Plaintiff that have caused this already "sprawling" litigation to balloon to previously unimagined proportions.

On May 12, Your Honor ordered Plaintiff to file a stay of her materially identical action against Amazon and other large retailers in the Central District of California (the "C.D. Cal. Action"). (ECF No. 202.) Plaintiff did file a motion to stay that case on May 16, but that did not put an end to things. Rather, in the ensuing days, Plaintiff: (1) filed an amended complaint in the C.D. Cal. Action (hardly consistent with simply staying that case); (2) filed an additional materially identical lawsuit against Apple in the Northern District of California; and (3) filed yet another materially identical lawsuit against Barnes & Noble in the S.D.N.Y. (the "B&N Action"). (*See* Ex. A (May 19 email from Plaintiff's counsel advising Defendants' counsel of these steps).)

Separately, Plaintiff recently disclosed the opinions of **seven** expert witnesses in this case, after previously representing to the Court that Plaintiff only "anticipate[d] having two experts on various copyright issues" and "probably an expert on damages." (9/15/22 Hr'g Tr. (ECF No. 76) 44:10-17.) One of these experts, Kathryn Reiss, offers the precise sort of substantial similarity opinion that is prohibited in literary infringement cases in the Second Circuit. (*See, e.g.*, Reiss Rep. (Ex. B) ¶¶ 5, 33-34 (Reiss retained "to evaluate the similarities between" *BMR* and Crave and "catalogue what I believe to be the notable similarities" and then "render an opinion as to whether those similarities are qualitatively significant"; concluding that the works "share … remarkable similarities" including "substantially similar central characters").) This is notwithstanding that "'the well-established general rule in this circuit has been to limit the use of expert opinion in determining whether works at issue are substantially similar.'" (1/11/22 Order (ECF No. 105) at 3 n.2 (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 713 (2d Cir. 1992).)

Two other experts, Drs. Carole Chaski and Patrick Juola, are "forensic linguists" who offer highly technical opinions aiming to prove similarity and/or plagiarism through software-driven statistical analyses. (*See, e.g.*, Chaski Rep. (Ex. C) ¶¶ 8, 17 (Chaski "conducted two independent statistical tests of conceptual plagiarism" and concluded based on "the statistical results of the keyword lexical cluster analysis for conceptual plagiarism" that the parties' works are "strikingly similar to such a degree that chance cannot explain the level of similarity"); Juola Rev'd Rep. (Ex. D) ¶ 1, 41 (purporting to "have performed a computational and statistical analysis" in order to "determine

Cowan, DeBaets, Abrahams & Sheppard LLP

41 Madison Avenue
38th Floor
New York, NY 10010

9454 Wilshire Blvd
Suite 901
Beverly Hills, CA 90212

cdas.com

the degree of similarity between [the parties'] works" and concluded "that there are similarities between" the parties' works based on "[q]uantitative and computational analysis").)[1] As is clear from these experts' reports, their analyses are highly technical and will require substantial time and cost to fairly rebut. Dr. Chaski even performed her analysis with proprietary software that was not disclosed and to which Defendants presently do not have access. (*See, e.g.*, Chaski Rep. ¶¶ 46, 48 (discussing "ALIAS TATTLER").) It is simply not clear why these opinions and all this work are needed in a literary infringement case involving YA books that are easily comprehended by teenagers.[2]

In addition to those, Plaintiff proffered the opinions of a lawyer (Eric Ruben, Esq.) and a literary agent (Marlene Stringer), who expressly offer the legal conclusion that Defendant Emily Kim breached her fiduciary duty to Plaintiff based on assumptions given by Plaintiff's counsel and their review of produced documents. (*See, e.g.*, Ruben Rep. (Ex. E) ¶ 3 (opining that Kim "owed a fiduciary duty to" Plaintiff and "breached that duty"); (Stringer Rep. (Ex. F) ¶ 8 (retained "to opine on whether Kim/ Prospect fulfilled or breached their contractual and fiduciary obligations to Lynne Freeman").) This is notwithstanding the "well-established rule in this Circuit that experts are not permitted to present testimony in the form of legal conclusions." *United States v. Articles of Banned Hazardous Substances*, 34 F.3d 91, 96 (2d Cir. 1994).

Plaintiff also offered the opinions of Christine Witthohn, a "literary agent" and "legal assistant" who falsely opines that Kim and Tracy Wolff had a motive to infringe Plaintiff's manuscript because their careers were allegedly floundering at the time. (*See, e.g.*, Witthohn Rep. (Ex. G) ¶ 21 ("it is clear that in 2019 Wolff's writing success was waning").)[3] This is notwithstanding that "[c]opyright infringement is a strict liability offense," *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 89 (2d Cir. 2016), and a defendant's motive is irrelevant.[4]

---

[1] Dr. Juola (a computer expert) submitted a revised report several days after the May 10 deadline due to alleged computer problems, even though Plaintiff did not ask for or receive an extension of that deadline. Defendants are citing Dr. Juola's untimely May 12 report for present purposes but reserve the right to move to strike it.

[2] In contrast to Plaintiff, Defendants disclosed one expert, Emily Easton, who opines that many other YA Paranormal Romance books contain the same common tropes that are asserted in this case to be infringing. As stated in her report (attached as Ex. H), Ms. Easton did not compare *BMR* to *Crave* and does not offer any opinion on whether the two are substantially similar. (*E.g.*, Easton Rep. at 1, 4-5, 24.) Defendants believe that Ms. Easton's opinions are proper and would be helpful to the factfinder given her experience in the YA paranormal romance genre and knowledge of all the common tropes used in such books. Most importantly, unlike Plaintiff's experts who directly opine that the parties' works are substantially similar, Ms. Easton does not opine on an ultimate issue of fact that is left for the jury. *See Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (expert testimony that "essentially instruct[s] the jury as to an ultimate determination that [is] exclusively within its province" is inadmissible).

[3] Witthohn and her husband, attorney Jeffrey V. Mehalic, bear a longstanding vendetta against Defendant Entangled. *See* https://thewritelawyer.wordpress.com/2011/10/18/my-original-post-on-crescent-moon-press-and-entangled-publishings-contracts/; https://thewritelawyer.wordpress.com/2011/10/24/my-response-to-entangled-publishings-threats/ (blog posts by husband criticizing Entangled).

[4] Plaintiff additionally proffered a damages expert (Juli Saitz). Defendants do not object to Plaintiff proffering a damages expert, but request that Defendants be given leave to depose Ms. Saitz and disclose a rebuttal opinion to hers after summary judgment, if the case survives summary judgment.



In sum, in a simple literary infringement case involving YA books that are easily comprehended by lay readers, Plaintiff has proffered three experts on substantial similarity (two giving highly technical computer-driven statistical analyses that are far removed from a simple lay comparison of the works at issue); two experts who offer legal conclusions about breach of duty based on their view of the law and review of lay evidence; and a sixth who opines on motive in a strict liability case. Plaintiff also has filed a total of **four** separate federal lawsuits asserting the same claims in the same IP. One of these suits (the B&N Action) was filed in **this District** notwithstanding the Court's orders requiring Plaintiff to follow Rule 15 if she wished to add additional parties.[5]

To put it mildly, Defendants respectfully believe that this litigation has now "gone off the rails." Defendants request a conference with the Court to see if there is a way to manage the litigation to foster swift and fair resolution on the merits while saving the parties and U.S. court system substantial time and costs.[6]

With respect to such procedure, Defendants would ask the Court to consider suspending remaining expert discovery and ordering immediate dispositive briefing on the issue of whether the *Crave* series and *BMR* are substantially similar. A finding for Defendants on that issue—which can be decided by simply reading and comparing the books at issue directly—would eliminate at least the copyright claims in this case, eliminate the three additional federal cases that depend on those claims, and save the parties from undergoing a costly full-scale *Daubert* process. While the Court has previously not been inclined to allow phased briefing, Defendants believe that Plaintiff's filing four separate actions and tendering seven expert witnesses significantly alters the calculus.[7]

If the Court does not agree that immediate dispositive briefing on substantial similarity would be useful, Defendants would ask the Court to craft a fair procedure for remaining expert discovery in light of the volume of work needed and the minimal relevance of many of Plaintiff's experts' opinions to the dispositive issues in this case. This could include: (1) deferring depositions and *Daubert* briefing as to at least Drs. Chaski and Juola's highly technical opinions, which are not relevant to substantial similarity but would be time-consuming and expensive to *Daubert* as to

---

[5] At least the C.D. Cal Action might soon find its way to this District. As Defendants predicted (*see* ECF No. 201 at 2), the court presiding over that action recently ordered the parties to show cause as to why the case should not be transferred to the S.D.N.Y. (*See* C.D. Cal ECF No. 14 (May 12 Minute Order by Judge Mark C. Scarsi ordering "the parties TO SHOW CAUSE why the case should not be transferred to the United States District Court for the Southern District of New York under 28 U.S.C. § 1404(a)").)

[6] Defendants can only speculate as to why Plaintiff disclosed seven experts and filed multiple new cases, but one possibility is that it represents a calculated attempt by Plaintiff to put pressure on Defendants by forcing them to spend inordinate amounts of time and financial resources responding to this flurry of mostly baseless activity. This is consistent with Plaintiff's calculated switch from repeatedly seeking more time in discovery because Plaintiff was represented by only one attorney, to hiring an additional law firm in March to prosecute multiple discovery motions and now, attempt to expand expert discovery and the case as a whole exponentially.

[7] Defendants do not concede the issue of their access to *BMR* but for the reasons set forth herein believe that fairness and efficiency would be served by deferring dispositive briefing on that issue and on issues related to Plaintiff's state-law claims. Defendants also do not wish to forfeit their right to *Daubert* Plaintiff's experts, but believe that such a time-consuming and costly process could be deferred until the Court reviews the works and determines whether a reasonable jury could find them substantially similar.



methodology; and (2) allowing Defendants to depose Ms. Saitz and rebut her damages opinions after summary judgment if the case survives summary judgment.

In closing, Defendants have maintained from the beginning that this is a straightforward case that merely requires directly comparing the allegedly infringing *Crave* series to Plaintiff's manuscript, *BMR*. This case could have been resolved on a motion to dismiss if Plaintiff had included her manuscript with her pleadings—but she did not, leading to costly and contentious fact discovery and now potentially mammoth expert discovery. The Court has previously indicated that it might look for a way to streamline the litigation after expert opinions were disclosed. (1/11/22 Order at 3 (declining to preclude experts "in the abstract").) Defendants believe that the time is now ripe to consider this after Plaintiff disclosed seven experts and filed three additional federal cases.

We look forward to having an opportunity to discuss these issues with Your Honor, and as always, thank you for your time and attention to these issues.

Respectfully submitted,

COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP

By: /s/ Benjamin S. Halperin
Nancy E. Wolff
Benjamin H. Halperin
CeCe M. Cole
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474
nwolff@cdas.com
bhalperin@cdas.com
ccole@cdas.com

*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan, and Universal City Studios LLC*

Lacy H. Koonce, III
KLARIS LAW PLLC
29 Little West 12th Street
New York, NY 10014
Phone: (917) 612-5861
lance.koonce@klarislaw.com
*Attorneys for Emily Sylvan Kim and Prospect Agency, LLC*
