

Attorneys admitted in
California, New York,
Texas, Pennsylvania, and
Maine

Sender's contact:
lzaharia@donigerlawfirm.com
(310) 590-1820

Doniger / Burroughs Building
603 Rose Avenue
Venice, California 90291

Doniger / Burroughs NY
247 Water Street, First Floor
New York, New York 10038

May 23, 2023

**DELIVERED VIA ECF**

The Honorable Sarah Netburn
Thurgood Marshall Courthouse
40 Foley Square, Courtroom 219
New York, NY 10007

|  |  |  |
|---|---|---|
|  | Case Title: | *Freeman v. Deebs-Elkenaney et al,* |
|  |  | 1:22-cv-02435-LLS-SN |
|  | Re: | Objection to Defendants' Request for Conference |

Your Honor:

We represent Plaintiff Lynne Freeman and write in response to Defendants' May 22, 2023 letter to Your Honor. There is no cause for a conference to "streamline" this litigation and the relief Defendants seek is unwarranted and improper. Defendants acknowledge that "the Court has previously not been inclined to allow phased briefing" but contends "that Plaintiff's filing four separate actions and tendering seven expert witnesses significantly alters the calculus." (Dkt. 205, page 3 of 4). That contention lacks merit, and Defendants' letter appears to be a transparent ploy to obtain additional time to secure rebuttal reports, thwart established federal procedures for challenging expert testimony, and/or prevent the Court from considering important evidence on summary judgment. Respectfully, their requests should be rejected.

Defendants first complain that Ms. Freeman has filed three lawsuits against retail defendants. As she explained when this issue was previously raised, she has done so only because the statute of limitations on the sales of the infringing books by those defendants has now started to run. But she filed a motion to stay the first of those cases pursuant to this Court's Order and has advised Defendants that she will similarly seek to stay the others pending resolution of this case. Nothing about those filings justifies the relief Defendants now seek.

Next, Defendants complain that Plaintiff disclosed seven expert witnesses after previously representing that she only "anticipate[d] having two experts on various copyright issues" and "probably an expert on damages." However, Plaintiff's counsel made that statement over eight (8) months ago prior to reviewing the over 40,000 documents produced by Defendants or taking a single deposition. Moreover, the guesstimate was not that far off —as this Court can see Plaintiff has three experts on various copyright issues (one more than anticipated) and a damages expert, with the other 3 witnesses primarily going to her breach of fiduciary duties and breach of contract claims.

Defendants feigned "speculat[ion] as to why Plaintiff disclosed seven experts and filed multiple new cases" (Page 3, fn. 6) cannot be taken seriously. Defendants know that this is a case with likely 7-figure, and more likely 8-figure, damages involving the wholesale taking and reworking of Freeman's *BMR* work into the best-selling *Crave* series. They also know that author / Defendant Tracy Wolff has previously worked with

plagiarism software and knows how to rewrite a work just enough to avoid the obvious signs of plagiarism.[1] And they know that the storyline, characters, plot, and scenes of *BMR* and the *Crave* series share substantial similarities that they can only argue are inconsequential by discounting Freeman's experts.

To accomplish that discounting, Defendants grossly misrepresent the nature and substance of Mrs. Freeman's experts. For example, they misrepresent that the opinion of Professor Kathryn Reiss solely goes to establishing substantial similarity when in fact her cataloguing of "the notable similarities in the total concept and feel, theme, plot, characters, pace, and setting of the two bodies of work [was done in order to] render an opinion as to whether those similarities are qualitatively significant and, if so, whether they reflect genre-specific conventions or tropes, or—as Freeman's counsel has called it—'scènes á faire' in legal language." (*See, e.g.*, Reiss Rep. (Ex. B to Dkt. 205)) ¶5).[2] Given that Defendants provided an expert report from Emily Easton as to what similarities in the works are purportedly attributable to tropes, they cannot reasonably deny the relevance and propriety of this testimony to which pertains to the very same issue.

In addition to addressing the trope question, Professor Reiss' report will properly aid the jury on the issue of substantial similarity. While the Second Circuit does not typically permit expert testimony on the issue of whether literary works are substantially similar (i.e., whether there has been an unlawful appropriation or illicit copying), it and the district courts in it have permitted experts to testify as to substantial similarity in appropriate cases such as comparison of musical compositions, computer software or computer programing code. *See Mowry v. Viacom International*, Case No. Civ.3090(AJP), 2005 WL 1793773, *10 (S.D.N.Y. 2005); and *Computer Associates International, Inc. v. Altai, Inc.* 982 F.2d 693 (2nd Cir. 1992). The rationale for allowing experts in those types of cases is that it is too complicated for a lay observer to do the analysis. *Id*. at 713. Indeed, courts in the Circuit have allowed expert testimony on the issue in literary infringement cases. *See Price v. Fox Entertainment Group, Inc.*, 499 F.Supp.2d 382, 389 (S.D.N.Y. 2007); and *Walker* at 53 (the bar against expert testimony on the substantial similarity issue should not be "taken literally"). Additionally, at least one court has held that it was not an error to consider an expert report at the summary judgment phase on the issue of whether any reasonable jury could find the works substantially similar. *See Currin v. Arista Records*, 724 F.Supp.2d 286, 291 (D. Conn. 2010). In this case, the jury will be asked to compare the four *Crave* books at

---

[1] Additionally, Wolff claimed at her deposition to not know what text spinning software (software that takes existing text and makes changes to it to make it seem different enough from the original, with the intention of evading plagiarism-detection software) is, but she admits in documents produced in the case that she used spinning software to modify various of the chapter titles in the Crave Series that were copied from other sources.

[2] Defendants have requested to file Professor Reiss' report, and all of the other expert reports, under seal in order to keep them out of the public record apparently because Freeman marked her manuscripts confidential during production. But the expert reports of Professor Reiss and Drs. Juola and Chaski are based solely on a comparison of the publicly accessible *Crave* books and the *BMR* manuscript(s) to the extent they include the same words, storyline, etc. Moreover, as noted in the Protective Order in this case, "[n]otwithstanding the designation of material as 'Confidential' or 'Attorneys' Eyes Only' in discovery, there is no presumption that such Confidential Discovery Material will be filed with the Court under seal" and instead the Court will undertake its own analysis to ensure that there is good cause to prevent materials offered in support of any motion or request from being included in the public record. *See* Docket No. 44-2 (Protective Order Signed by the Court), Par. 10. And Freeman's waiver of her confidentiality designation to the extent portions of her manuscripts are reflected in the above enumerated reports. As such, there is no justification for depriving the public of the right to access to the reports as part of the public docket.

issue to multiple versions of Freeman's work—approximately 5,000 pages of material.[3] Given the body of work at issue, expert testimony can certainly assist the jury in determining substantial similarity.

And even where experts are precluded from directly testifying as to substantial similarity, it is well established in this Circuit that experts may be used to assist the trier of fact in ascertaining whether the defendant had copied any part of the plaintiff's work, known in the Circuit as probative similarity. *Arnstein v. Porter*, 154 F.2d 464, 468 (2nd Cir. 1946); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.* 150 F.s3d 132, 137 (2nd Cir. 1998); *Computer Assocs Int'l v. Altai, 982 F.2d 693, 713* (2nd Cir. 1992); and *A Slice of Pie Prods, LLC v. Wayans Bros. Entm't*, 487 F. Supp. 2d 33, 40 (District or Connecticut 2007). The opinions of Professor Reiss are thus admissible to establish probative similarity, as are the opinions of Drs. Chaski and Juola.

Defendants next misrepresent the complexity of the testimony of Drs. Chaski and Juola, asserting without supporting evidence that their reports "will require substantial time and cost to fairly rebut." (Dkt. 205, p.2 of 4). In fact, their findings can be readily replicated with proprietary and open-source software that is available to any computational linguist. Indeed, that is precisely why Dr. Chaski's report identified the algorithms she used regarding the lemmatizer (SpaCy) and vector embeddings (FLAIR). And these reports offer highly probative probabilistic analyses (using different methodologies) which show with reasonable mathematical certainty that the works share common authorship (in Dr. Joula's case the probability is roughly 1,000:1[4] and per Dr. Chaski the odds are 10,000,000:19). These findings are objective mathematical calculations based upon the probability of word sequences.

Defendants similarly misrepresent the opinions of Mr. Ruben and Ms. Stringer, who discuss the specific nature of the fiduciary relationship between a literary agent and writer client, the duties owed to that client by the agent, and what actions might constitute a breach of those duties if found by the jury—all matters not within the knowledge of lay witnesses. Ms. Stringer also speaks to the breaches of Defendant Kim's contractual obligations. This is not, as Defendants suggest, a simple case. There are multiple distinct causes of action that involve factual determinations of matters that would benefit from expert testimony.

Defendants' request that this Court "suspend remaining expert discovery and order immediate dispositive briefing on the issue of whether the *Crave* series and *BMR* are substantially similar" must be rejected. It would be fundamentally unfair for Defendants to, for example, argue that the myriad of similarities in the two works are attributable to nothing more than genre conventions and tropes—exactly what they have argued since the inception of this case—without Plaintiff being able to present her literary professor expert to say "not so" or her forensic linguists to explain the mathematical improbability of certain of those specific similarities being in both works for any reason other than common authorship.

---

[3] The report of Professor Reiss compares 6 versions of Freeman's manuscript and various sets of notes to the four books in the *Crave* Series which represents a similar number of pages between the woks and is thus the most fair way to compare them. The Crave series uses BMR's first drafts and the additional edited material from the following drafts, and scatters the scenes, character developments, and subplots throughout the Crave series of books, while using the main plot of the first drafts as Crave's main plot, and all of the main characters, as well as supporting characters. This scattering is referred to as mosaic or patchwork copying.

[4] Dr. Juola is one of the foremost experts in his field, and roughly a decade ago became quite famous for uncovering that the book "The Cuckoo's Calling" was in fact authored by Harry Potter creator J.K. Rowling. The book was published under a fictitious name, but after Dr. Juola's computer analysis was presented to Rowling, she admitted to writing the novel. See https://www.smithsonianmag.com/science-nature/how-did-computers-uncover-jk-rowlings-pseudonym-180949824/.

Plaintiff is ready to establish the relevance and admissibility of her expert witnesses' testimony, but such questions are only properly brought before Judge Stanton as the trial judge. Indeed, as the Supreme Court explained in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, "under the Rules *the trial judge* must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. 579, 589 (1993)(emphasis added). In *Kumho Tire Co., Ltd. v. Carmichael* the Supreme Court considered the applicability of the *Daubert* standards to non-scientific expert testimony and concluded that the "*trial court* must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it *decides whether or not that expert's relevant testimony is reliable*." 526 U.S. 137, 152 (1999) (emphasis added).  Defendants implicitly acknowledge this as their request for relied does not seek to have Your Honor address the relevance or admissibility of Ms. Freeman's experts.

Defendants have through the end of the month to designate rebuttal experts and then have a well-established procedure for challenging any expert testimony they believe to be improper under the *Daubert* process. That is the appropriate way to address any concerns Defendants have.

Finally, Defendants request to "depose Ms. Saitz and rebut her damages opinions after summary judgment" should be rejected. Copyright claimants seeking profit disgorgement are required "to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Here, Defendants' gross revenue figures came from Defendants in discovery, and Ms. Saitz testimony beyond that addresses the impropriety and lack of proper accounting documentation regarding certain categories of expenses being claimed by Defendants. But establishing those deductible expenses is Defendants' burden and Freeman was quite surprised that they did not designate an expert to speak to that question. They should not now be permitted additional time to remedy that apparent error by pushing out their deadline to back-door the testimony they need through a rebuttal expert to Ms. Saitz.

From the beginning of this case, Plaintiff has presented an overwhelming catalogue of similarities demonstrating Defendants' wholesale taking and reworking of her *BMR* work into the best-selling *Crave* series. While directly comparing those works is the obvious starting point, addressing Defendants' arguments regarding "tropes," "genre convention," and independent creation will benefit greatly from the literary and probabilistic analysis of Ms. Freeman's experts. Defendants' efforts to eliminate that analysis from the Court's consideration is improper and must be rejected. And Defendants have made no showing that they are unable to fairly complete expert discovery under the timeline that they agreed to in this case, or at least that they could not have done so had they began working on rebuttal disclosures two weeks ago when initial disclosures were made. This is particularly so given that they have been aware that Plaintiff would likely be presenting a damages expert and at least a couple experts relative to the copyright issues.

        Respectfully submitted,

    By: */s/ Stephen M. Doniger*
      Stephen M. Doniger, Esq.
      Scott Alan Burroughs
      DONIGER / BURROUGHS PC
      For the Plaintiff