N622FreC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   LYNNE FREEMAN,

4                   Plaintiff,              New York, N.Y.

5              v.                           22 CV 2435 (JHR)(SN)

6   TRACY DEEBS-ELKENANCY, *et al.*,

7                   Defendants.

8   ------------------------------x        Conference

9                                          June 2, 2023
                                           11:35 a.m.
10
    Before:
11
                          HON. SARAH NETBURN,
12
                                           Magistrate Judge
13

14                        APPEARANCES

15  REEDER McCREARY, LLP
         Attorneys for Plaintiff
16  BY:  MARK D. PASSIN (via telephone)

17       -and-

18  DONIGER BURROUGHS APC
         Attorneys for Plaintiff
19  BY:  STEPHEN M. DONIGER

20

21  COWEN DeBAETS ABRAHAMS & SHEPPARD, LLP
         Attorneys for Defendants Tracy Deebs-Elkenaney,
         Entangled Publishing LLC, Holtzbrinck Publishers LLC,
22       Universal City Studios LLC
    BY:  BENJAMIN HALPERIN
23       CeCe COLE

24  KLARIS LAW PLLC
         Attorneys for Defendants Prospect Agency LLC and
25       Emily Sylvan Kim
    BY:  LACY H. KOONCE

N622FreC

1          (Case called)

2          THE DEPUTY CLERK:  Starting with plaintiff's counsel

3     in person, please state your appearance for the record.

4          MR. DONIGER:  Stephen Doniger, Doniger Burroughs, for

5     plaintiff Lynne Freeman.  With me is one of our student clerks

6     for the summer.

7          THE COURT:  Wonderful.  Welcome.

8          MS. KALERGIAS:  Thank you.

9          THE COURT:  We have Mr. Burroughs on the line, is that

10    right?  Or Mr. Passin, excuse me.

11         MR. PASSIN:  This is Mr. Passin, Reeder McCreary, on

12    behalf of plaintiff, and I have with me plaintiff Lynne

13    Freeman.

14         THE COURT:  Thank you.  And on behalf --

15         A VOICE:  Good morning, your Honor.

16         THE COURT:  Hello.

17         And on behalf of Tracy Wolff, Entangled Publishing,

18    and Macmillan and Universal City Studios.

19         MR. HALPERIN:  Good morning, your Honor.  Ben

20    Halperin, from Cowen DeBaets.  With me is CeCe Cole, and we

21    have several of our interns for the summer behind us.

22         THE COURT:  Welcome.

23         And on behalf of defendants Kim and Prospect Agency.

24         MR. KOONCE:  Good morning, your Honor.  Lance Koonce,

25    with Klaris Law.

N622FreC

1              THE COURT:  Great.

2              First, to the interns, welcome to federal court.  I

3      hope you have a good time.  I don't know whether you will or

4      won't, but I hope you enjoy your time here.  This is a

5      beautiful courthouse——I think one of the most beautiful in the

6      country——so be sure to explore while you are here.

7      Particularly, the main lobby is very beautiful, with some

8      incredible archival photographs which are really worth taking a

9      look at.  My courtroom is a bad example of the beautiful rooms

10     that we have in this courthouse but, outside of my courtroom,

11     make sure you always look up because there are these beautiful

12     rosettes that have been carved into the ceilings, and it is

13     really special.  So welcome to federal court.

14             All right.  To the lawyers, let's get started.

15             So I have the letter from defendants dated May 22 and

16     a letter from the plaintiff dated May 23.  The purpose of this

17     conference is to see whether or not there is a way for us to

18     manage this litigation better than I think it is being managed

19     right now.

20             I see that the plaintiff has served seven expert

21     witnesses.  I think there is some concern on my part that

22     allowing all expert discovery to be completed and then go

23     forward with summary judgment motions in the sort of more

24     conventional way may impose greater costs on all parties that

25     may be mitigated depending on the motion practice.  I also know

N622FreC

1    that we have got now three additional cases that have recently

2    been filed alleging copyright infringement to downstream

3    retailers, and part of my thinking as well is that those cases,

4    I think, are all going to be stayed pending this case.  If the

5    copyright issue is resolved sooner, we may be able to address

6    those other cases, whereas, I think if we sort of plow forward

7    with our head down and just keep working in the way that we

8    have been, we may find that those cases are going to be

9    unnecessarily stayed even longer, which is both prejudicial I

10   think to all of the parties, as well as to the courts, who

11   don't particularly like having inactive cases on their docket.

12           So my thinking right now is that we should complete

13   expert discovery, if the defendants wish to, on the substantial

14   similarity question.  And I say "if the defendants wish to"

15   because I know the plaintiffs have already served their expert

16   witnesses.  I don't know whether the defendants feel like they

17   are ready to put forward substantial similarity copyright

18   experts now, but I defer to the defendants on that particular

19   issue, but then to move forward with the summary judgment

20   briefing on the infringement claim and let that play out and

21   see what comes of that motion and revisit the remaining claims.

22   For example, I think -- well, I just think the case can be

23   narrowed potentially, depending on the outcome of the summary

24   judgment motion.

25           So that is how I am right now, but I called you all in

N622FreC

1    because I wanted to sort of have a meaningful conversation

2    about what we can do to be as efficient as possible.

3            So, Mr. Halperin, since you were the person who

4    initiated this letter first --

5            MR. DONIGER:  Your Honor, apologies for interrupting

6    before we get to the merits of the matter.

7            THE COURT:  Sure.

8            MR. DONIGER:  There is something else I would like to

9    address that's a bit delicate, but if you would indulge me.

10           THE COURT:  Okay.

11           MR. DONIGER:  As you know, I am fairly new to this

12   case.  I am advised by my colleague that at the beginning of

13   the case your Honor disclosed that your husband had worked on a

14   case with Mr. Koonce and that you didn't think that was an

15   issue, that was fine.

16           We have realized that that was the $100 million, you

17   know, claims against Greenpeace that went on for seven years,

18   and we have recently found that, following that case,

19   Mr. Koonce had posted, at least on his LinkedIn page,

20   specifically acknowledging your husband for his work on the

21   case.

22           We have also realized that Mr. Koonce—and correct me

23   if I am wrong, I would be happy to be wrong—but that

24   Mr. Koonce was previously a partner with your husband at Davis

25   Wright Tremaine for some time, and what was not acknowledged

N622FreC

1    when you first came in here that also on the call is counsel

2    for Macmillan Publishing, Wendy Szymanski, who I understand

3    also worked with Davis -- at Davis Wright Tremaine at the same

4    time that your husband and Mr. Koonce were there.

5            I'm sure that I speak for all counsel in saying we

6    have the utmost respect for you and would hesitate to even

7    suggest that you are coming at this with anything other than

8    impartiality.  And I know if I had to decide a matter in which

9    my wife's former colleagues and partners, who she had

10   complimented and spoken highly of and who perhaps I had been to

11   holiday parties and other events with, were before me, I would

12   have to take a hard look at whether there might be even some

13   subconscious favoring.  And even if I were certain that there

14   weren't, I would have to take a hard look at whether there was

15   the appearance of a lack of partiality -- or impartiality in

16   the case.  And I just raise -- I wouldn't be doing my job for

17   my client if I didn't raise this to see whether or not there is

18   an issue here.

19           THE COURT:  Sure.  I am pretty sure, as I said at the

20   time, that my husband and Mr. Koonce—and forgive me if I'm

21   getting some details wrong—were law partners I think in maybe

22   2008 to 2010 era.  My husband started his own firm in

23   2011—that I know—and he left from Davis Wright Tremaine.  So

24   I think he ended at Davis Wright Tremaine in 2010.

25           Ms. Wendy Szymanski—apologies to you,

N622FreC

1    Ms. Szymanski——I have never heard of her before, so I don't

2    know anything about that person, whether she was at the firm or

3    not; and if she was at Davis Wright Tremaine, whether she was

4    there when my husband was there, I have no idea.

5          With respect to the issue you raised about the

6    Greenpeace case, I think it's a Greenpeace case, I don't really

7    know all of the details.  Without boasting, to the extent I had

8    to recuse myself from every lawyer who complimented my husband,

9    I would have no cases before me, so I'm not sure that that is a

10   basis.

11         Obviously I have been handling this case now for a

12   year.  I am unaware of any substantive thing I have done or any

13   basis to believe that there is an appearance of impropriety in

14   this litigation.  So I am happy to take your concerns and think

15   long and hard, as you have asked me to do, though I raised this

16   issue because I thought it was appropriate to raise it at the

17   outset, and I haven't really thought about it since then.

18         MR. PASSIN:  Your Honor, this is Mark Passin.  May I

19   address the issue?

20         THE COURT:  Sure.

21         MR. PASSIN:  The only thing I want to add, in all due

22   respect, your Honor, the only things that were disclosed at

23   that hearing——and I have gone back and looked at the

24   transcript——was you said that you knew Mr. Klaris, who is a

25   senior partner of the Klaris firm, and then Lance Koonce chimed

N622FreC

1    in and said that his firm is also *Cumis* counsel on one case

2    with your husband.  But there was no mention of any law

3    partnership.  And you can go back and look at the transcript

4    and you will see, those are the only two things that were

5    mentioned.

6            THE COURT:  Okay.  I believe you.

7            MR. DONIGER:  The only reason I raise the issue is

8    that a law partnership that ended in 2010 followed by working

9    together on a case that spanned seven years is not just any

10   attorney who comes into the court complimenting your husband,

11   with due respect.  I think it bears some mention.

12           THE COURT:  Okay.  I will take it under advisement.

13           MR. KOONCE:  May I?

14           THE COURT:  Yes, Mr. Koonce.

15           MR. KOONCE:  I will just add one thing, which is, in

16   the particular case that we are talking about, the Greenpeace

17   case, your Honor's husband was brought in as conflicts counsel

18   because Davis Wright Tremaine potentially had a conflict.  And

19   so he was a former partner at Davis Wright Tremaine, and he was

20   recommended to come into that case in particular to be

21   separated from the case and act as conflicts counsel because of

22   potential conflicts with some of the third-party discovery that

23   was going on in that case.

24           THE COURT:  Thank you.  As I said, I don't know that

25   much about that case, I'm afraid.

N622FreC

1          Okay.  I will take your oral application under

2     advisement.  I don't know if you want to put anything in

3     writing or --

4          MR. DONIGER:  No.  Thank you, your Honor.

5          THE COURT:  Okay.  Thank you.

6          MR. PASSIN:  Your Honor, can I just mention one other

7     thing?  This is Mark Passin.

8          THE COURT:  Sure.

9          MR. PASSIN:  And also what he didn't mention is that

10    Mr. Klaris was also an associate at Davis Wright Tremaine

11    during the time your partner was -- your husband was a partner

12    there.

13         MR. KOONCE:  And I will tell you that that is not

14    true.  That is incorrect.  Mr. Klaris, at Klaris, was not a

15    partner at Davis Wright Tremaine.

16         THE COURT:  I think he said he was an associate during

17    the time that my husband was a partner there, which I also

18    think is not true.

19         MR. KOONCE:  That's not true.  He was an associate at

20    a former firm, which was Lankenau Kovner, which merged into

21    Davis Wright in 1998.  And my understanding is that Ed Klaris

22    had already left the practice of Lankenau Kovner and gone

23    in-house before Lankenau Kovner became part of Davis Wright in

24    1998 is my understanding.

25         MR. PASSIN:  If that's the case, I apologize, your

N622FreC

1    Honor.

2              THE COURT:  Okay.  Thank you.

3              All right.  Mr. Halperin.

4              MR. HALPERIN:  Thanks, your Honor.

5              If I -- just to try to simplify this and, I think, go

6    back to what you were saying at the beginning, as to expert

7    discovery, just on substantial similarity, we have one expert

8    witness, Emily Easton, who does not offer a direct comparison

9    of the works and instead opines that the plaintiff's manuscript

10   contains numerous tropes that are common throughout young adult

11   literature.

12             One of plaintiff's seven experts, Kathryn Reiss, does

13   directly opine on substantial similarity.  She also -- or

14   plaintiff offers in plaintiff's letters that you have reviewed,

15   that she also intends to opine on the tropes issue that our

16   expert is offering on.  So I think we can bracket those two

17   experts in complete expert discovery as to those two experts

18   with rebuttal reports and depositions and then move to summary

19   judgment briefing.  We would reserve the right to ask

20   Judge Stanton to exclude the portions of Ms. Reiss's opinions

21   that directly opine on substantial similarity, which we believe

22   is improper, but that would be one way to streamline this and

23   just get to substantial similarity now.

24             THE COURT:  I assume that the plaintiff intends to

25   also rely on the experts Drs. Chaski and Juola.  As I

N622FreC

1    understand it, those experts are forensic linguists who intend

2    to offer opinion on substantial similarity, as well.

3            MR. HALPERIN:  May I continue, your Honor?

4            THE COURT:  Please.

5            MR. HALPERIN:  So it's not clear to me, based on

6    plaintiff's letters, whether they are offering those experts

7    for substantial similarity, which traditionally is decided just

8    by comparing the two works at issue side by side.  Most of

9    plaintiff's letters discuss a different issue, which is

10   probative similarity, which is a different analysis.

11           Probative similarity is sometimes referred to as part

12   of a second part of a copyright frame, which is the access

13   component.  So a copyright plaintiff needs to prove two

14   things——access to the works, sometimes called actual copying,

15   and then substantial similarity.

16           So I believe, my read of the letters is that those

17   experts are offered on probative similarity, which is sort of

18   part of the access analysis, and not substantial similarity.

19           If those experts are offered for substantial

20   similarity, we believe that is improper.  We don't think that

21   computational linguists who use proprietary software involving

22   things called a lemmatizer and vector embedding has anything to

23   do with comparing two books written for teenagers side by side,

24   and any value in those experts would be grossly

25   disproportionate to the cost of *Daubert*'ing them, deposing

N622FreC

them.

MR. KOONCE:  Your Honor, if I could just add to what Mr. Halperin said.

So the test for copyright infringement in the Second Circuit goes back to *Arnstein v. Porter* in 1946, and it's the ordinary observer test, and the use of experts on substantial similarity is contrary to that idea.  So in this circuit, the only time that courts have allowed the use of experts on substantial similarity at all are cases in which there is highly technical subject matter, things like software, maybe architecture, but not comparing literary works.

A plaintiff can't come in and say, We would like to offer a technical analysis and make this a technical question by bringing in technical experts.  It is whether or not the Court can look at this from the viewpoint of an ordinary observer and just determine whether the works are substantially similar or not.

So that's why we feel strongly that those types of experts, if presented for the purpose of substantial similarity, and as Mr. Halperin said, it is not at all clear that's what they would be used for here, but we think that would be improper.

THE COURT:  Let me see if I can just get clarity on that particular question.  Mr. Doniger, the two other experts that I mentioned, Chaski and Juola, are those experts you would

N622FreC

1   put forward on substantial similarity or are those experts you

2   would put forward on the access question?

3          MR. DONIGER:  So they are experts that we would put

4   together -- that we would put forward on both.  Because their

5   analysis shows, based on specific word combinations, that there

6   is common ownership, those specific word combinations, we

7   think, cross over into a basis to find substantial similarity

8   in addition to the literary analysis in Ms. Reiss's report.

9          THE COURT:  Okay.

10         MR. DONIGER:  But I would note that I think we are

11  slightly putting the cart before the horse here, because I

12  think the first question is what are the summary judgment

13  motions that the parties anticipate filing and does it make

14  sense to piecemeal, have multiple separate summary judgment

15  motions.

16         We, the plaintiffs, are contemplating filing summary

17  judgment motions, as well, because we have got a 90-plus

18  percent mathematical objective analysis that there is common

19  ownership here -- common authorship here.  We have an

20  overwhelming similar -- you know, when we looked at the

21  expert -- the initial expert reports and the expert report that

22  the defendants produced, meaning no disrespect, I wasn't moved.

23  But what their expert essentially did was they took all of

24  these similarities, raised them to the highest possible level

25  of abstraction, like, bad guys trying to kill the good guy, and

N622FreC

1    said that's a trope.  Sure.  They didn't look at the particular

2    expression in the work about how the bad guy is killing the

3    good guy, which is not -- which is what Professor Reiss

4    discusses.  She says, when I look at these similarities, these

5    are not tropes, these are not *genre* conventions.  And we think

6    the case is so strong that summary judgment is appropriate in

7    plaintiff's favor.  And that summary judgment is not going to

8    be limited to substantial similarity.  So unless the Court

9    thinks that it is --

10          THE COURT:  Sorry.  It sounds like you are saying you

11   want to file an affirmative motion for summary judgment on the

12   copyright claim.

13          MR. DONIGER:  Correct.  And that won't be limited to

14   substantial similarity.  It will include access, it will

15   include probative similarity.  I simply see no world in which

16   it makes sense to break up the copyright claim, let alone the

17   other claims in the case which defendants haven't said whether

18   or not they plan on moving forward with summary judgment

19   motions on.

20          If the question is how to streamline, right,

21   streamline means make this not longer and more complicated than

22   it needs to be.  And counsel's analysis of substantial

23   similarity, while I clearly disagree with it, regardless of the

24   outcome of that, it doesn't stop the other claims, the breach

25   of fiduciary duties claims which rely on the sharing of the

N622FreC

1    work regardless of whether the end product of Ms. Wolff is

2    substantially similar under copyright law, the fraud claims, it

3    doesn't stop those.  And if they are wrong on substantial

4    similarity, there are still other elements of the copyright

5    claim that need to be addressed.

6         Unless there is a meaningful way that addressing

7    substantial similarity actually short circuits anything other

8    than keeping the three related cases on hold for slightly --

9    for less time, and it won't even be that much less time because

10   they are going to file a motion -- there will be cross summary

11   judgment motions on copyright infringement.  Those will be

12   addressed.  If they are addressed against us, the other cases

13   go away.  And that won't -- a delay of what?  A couple of

14   months to finish expert discovery and move that forward?  It

15   just -- I think we are putting the cart before the horse

16   because the first thing, I submit, the Court needs to do is say

17   there is a viable path that breaking the copyright infringement

18   claim down into smaller subcomponents to move for summary

19   judgment on earlier will actually result in a meaningful saving

20   of time and effort and energy and money on these other claims,

21   and I have heard nothing from defense counsel that suggests

22   that that is actually the case.

23         THE COURT:  Okay.  Let me hear Mr. Halperin.  If you

24   were to file a motion of the sort that you propose in your

25   letter, would that address all elements of copyright; and if

N622FreC

```
1    not, why not; and if so, do you stand by your view that you

2    don't need anymore expert discovery?

3              MR. HALPERIN:  Your Honor, we would propose a summary

4    judgment motion which either party could make only on the issue

5    of substantial similarity without Drs. Chaski and Juola.

6    Plaintiff's counsel has not cited any cases or any authority

7    for providing computational linguists analyzing common words to

8    establish substantial similarity in a case involving YA books,

9    or even in any books.  These are books that are written for a

10   12- to 18-year-old audience.  Lay observers on the jury or the

11   Court can read them for themselves and determine whether or not

12   they are substantial similar.  And we would propose that

13   because that issue, no matter what, has to be decided based on

14   an analysis of the two works themselves side by side, that only

15   that issue be briefed right now.  We would be --

16             THE COURT:  But then if the motion were to be

17   denied --

18             MR. HALPERIN:  Yes.

19             THE COURT:  -- would there be a subsequent motion on

20   other elements of the copyright claim?

21             MR. HALPERIN:  We would request -- if the motion is

22   denied, what I would propose is that at that point we make --

23   we seek leave to potentially file a motion for substantial

24   similarity on the issue of access, which --

25             THE COURT:  Sorry, a motion for substantial
```

N622FreC

similarity?

MR. HALPERIN:  I'm sorry, a motion for summary
judgment as to the access component of the claim, and the Court
could decide at that point whether to allow it or not.

THE COURT:  Okay.  That's not happening.  We are not
having two parts of a copyright claim briefed --

MR. HALPERIN:  Okay.

THE COURT:  -- in *seriatim*.

MR. HALPERIN:  Okay.  So --

THE COURT:  So the question that I would be asking you
is, if we were to have a summary judgment motion filed in the
near term, would you file it on all copyright issues or forego
filing any other motion?  And if the answer is we would file it
on all copyright issues, do you need more discovery, more
expert discovery?

MR. HALPERIN:  I would want to speak with our clients
to make sure we have approval.  I suspect that we would be able
to file a motion on all copyright issues.  I think that the
question on expert discovery is what to do about the cost of
*Daubert*'ing these two very technical opinions that have nothing
to do with a side-by-side comparison of the books.  So we would
like to leave that out of summary judgment, but I understand
that the plaintiff is going to raise it and include it in, I
guess, the plaintiff's own motion.  So I don't think it is
really our choice as to whether or not those are included

N622FreC

1    because it sounds like the plaintiff is going to include them

2    no matter what.

3           THE COURT:  If so, do you want to depose those people,

4    rebut their expert, etc.?

5           MR. HALPERIN:  Yes, we would.  If they are going to be

6    included, we would want to depose them.  We would need to

7    determine whether to obtain rebuttal experts.  I don't think

8    computational linguists have any role in this case, so I'm not

9    sure our clients would want to provide their own computational

10   linguists to give credit to that idea.

11          THE COURT:  Let me shift gears for a moment.  In

12   addition to what I will call the copyright experts, there are

13   two experts that the plaintiffs have offered on the issue of

14   fiduciary duty and a third expert, I'm not quite sure what that

15   expert's lane is.  I understand that she is opining on motive.

16   I don't know exactly what that expert is there for.  Can you

17   tell me what that expert is there for?

18          MR. DONIGER:  So that expert is an expert to address

19   the testimony and the arguments of the defendants that a

20   published author with a track record of publishing books

21   wouldn't need to copy from someone else.  It is specific to --

22   it is industry specific.  A layperson wouldn't be able to look

23   at, you know, the history of books published, who the

24   publishers were, etc., and --

25          THE COURT:  Sorry.  You are speaking too quickly.  A

N622FreC

1    layperson wouldn't be able to do what?

2            MR. DONIGER:  Wouldn't be able to look at the—I'm

3    sorry, do you want me to move this closer?—the history of

4    published books by Ms. Wolff, who published them, their sales,

5    and understand the trajectory of her career from that.

6            THE COURT:  Can't the witness testify to that?

7            MR. DONIGER:  What witness?

8            THE COURT:  You are speaking about Ms. Wolff?

9            MR. DONIGER:  Right.

10           THE COURT:  Why wouldn't Ms. Wolff be able to testify

11   about her trajectory, what she did?  I don't quite understand

12   the role of this expert.  So Ms. Wolff can testify, I wasn't

13   doing anything, I was doing a lot, whatever it is, you can

14   cross-examine her on the success or failures of her own career,

15   and then this person is going to come in and tell the jury

16   what?

17           MR. DONIGER:  So it's in the expert report, but

18   essentially that Ms. Wolff had not been published, except for

19   some work-for-hire projects, for some time.  Her career was --

20   like her -- there was an objective indicia that her career was

21   sort of on the skids and that --

22           THE COURT:  Why can't Ms. Wolff testify to that on

23   direct examination?

24           MR. DONIGER:  Because Ms. Wolff is not going to admit

25   to that.

N622FreC

| | |
|---|---|
| 1 | THE COURT:  She is not going to answer objective |
| 2 | questions about how many books she has published? |
| 3 | MR. DONIGER:  She will, but what it means that the |
| 4 | publishing houses that published her books were decreasing |
| 5 | in -- I hesitate to use the word quality, but there is |
| 6 | information -- if you are in the industry, you know, okay, if |
| 7 | you are getting a book published with this company, that's a |
| 8 | very high-level publication, and there is a slide that is |
| 9 | shown.  Ms. Wolff is not going to admit that there is a slide |
| 10 | in the companies publishing her works. |
| 11 | THE COURT:  Okay.  And what elements does this expert |
| 12 | testimony speak to and of what claim? |
| 13 | MR. DONIGER:  So it goes to -- it does go to motive. |
| 14 | Essentially it is rebutting -- |
| 15 | THE COURT:  Where is motive relevant? |
| 16 | MR. DONIGER:  Well, it is rebutting the argument -- if |
| 17 | defendants are not going to make the argument that she is a |
| 18 | published author that certainly didn't need to copy anyone |
| 19 | else's work because she was a successful writer, then we don't |
| 20 | need it.  If they are going to make that argument, then that's |
| 21 | now at issue and it requires expert testimony to look at |
| 22 | certain objective data and understand the significance of that |
| 23 | and that her story is not true. |
| 24 | THE COURT:  Okay.  So you put her in the copyright |
| 25 | lane, this expert? |

N622FreC

1          MR. DONIGER:  So she is in the copyright lane.  She is

2     also in the fiduciary duties lane because there --

3          THE COURT:  What fiduciary duty did Ms. Wolff have to

4     Ms. Freeman?

5          MR. DONIGER:  So she is not.  That's not our argument.

6     Our argument is that Ms. Kim, who did have a fiduciary duty to

7     Ms. Freeman, saw one of the writers that was a regular source

8     of income for her drying up as a source of income for her and

9     had equally a motivation to share Ms. Freeman's work with

10    Ms. Wolff in order to get a published novel out.

11         THE COURT:  Okay.

12         MR. KOONCE:  Your Honor, I will just add, plaintiff

13    had the opportunity to depose both Ms. Wolff and Ms. Kim and

14    did so.  I will just speak to Ms. Kim, but they didn't ask any

15    of those questions of Ms. Kim.  So the idea that they are going

16    to put in an expert to bring in what sounds like facts about

17    Ms. Kim's relationship with Ms. Wolff or what he thinks -- or

18    this expert thinks that she saw in Ms. Wolff's career is

19    completely inappropriate.  They had the opportunity to ask

20    these questions and they just didn't do it.

21         THE COURT:  Okay.  Well, obviously we can have issues

22    related to *Daubert* or motions *in limine* to exclude.

23         So we have got two fiduciary duty experts and then one

24    expert who is maybe a copyright expert and maybe a fiduciary

25    duty expert, and then there is a damages expert.  For the

N622FreC

1    defendants, it sounds like there is an open question as to

2    whether or not they are going to retain an expert to rebut the

3    forensic linguist experts.  With respect to these fiduciary

4    duty experts, is there an intention to get an expert to rebut

5    those folks?

6              MR. KOONCE:  So, your Honor, that would be my client's

7    defenses on the fiduciary duty claim and if they are only

8    directed to Prospect and Ms. Kim.  I would say that the

9    fiduciary duty and fraud claims are sort of the tail wagging

10   the dog here.  The claims in the complaint are -- on the

11   fiduciary duty claim in particular, are that the breaches of

12   fiduciary duty led to copyright infringement.  So they all tied

13   to the copyright question, and that's why we think if the

14   copyright issue is decided at summary judgment, these claims

15   which will then at that point only be state law claims and all

16   that are left, there is not going to be much left of those

17   claims.

18             I guess what I would say is that I would like to have

19   the opportunity, if we reach that point, to evaluate whether or

20   not at that point we need to do any further expert discovery of

21   those two experts or bring in a rebuttal expert, which would

22   probably be a literary agent, to just say that their

23   descriptions of the way the publishing industry works are

24   farfetched here.  But right now I can't say we will need it,

25   but it is possible if that -- if they decide to go forward

N622FreC

1    after summary judgment with those state law claims and we are

2    still in federal court.

3         THE COURT:  Let me ask another question, and I guess I

4    will start with you, Mr. Koonce, since you are talking.  Do you

5    see a motion for summary judgment on the fiduciary duty claims?

6         MR. KOONCE:  It's a good question, your Honor, and

7    again, it's a little hard to know that without the copyright

8    overlay involved.

9         THE COURT:  Assume the worst-case scenario.

10        MR. KOONCE:  Assume the worse-case scenario and we are

11   moving forward, then I think we would at least like to have the

12   opportunity to evaluate it at that point.  I think, again, that

13   those claims fall -- sort of come after the copyright claim and

14   are all dependent on that claim, so it's a little hard to judge

15   in the abstract, but --

16        THE COURT:  Legally they seem very "facty" to me.

17   They don't seem like they lend themselves to a summary judgment

18   decision.  I'm curious if you have a different view, forgetting

19   whether they are complete or whether they have been whittled

20   down because of the copyright issues.  Just as a general

21   matter, from where I sit, it doesn't look like someone would

22   file a motion for summary judgment claim on a breach of

23   fiduciary duty claim unless there is a legal question about

24   whether a duty was owed, and I don't hear that being an issue.

25        MR. KOONCE:  There may be that issue with respect to

N622FreC

some of what they said in their letters about what they may

claim is the breach of fiduciary duty.  But with respect to the

primary issue here, which is, did Prospect and Emily Kim

provide a manuscript or manuscripts of Ms. Freeman to

Ms. Wolff, then my view of the evidence to date is that there

is no direct evidence whatsoever of that happening in the

record.  Because they have raised these two experts who they

want to put in to talk about -- to sort of muddy the water

around intent or to talk about the way the industry works such

that it was inevitable that this must have happened in the

background, if they are still going forward with that after at

summary judgment it is demonstrated that there was no

substantial similarity here and therefore no copyright

infringement, you know, I guess we would -- again, I think we

would want the opportunity because there is so little in the

record involving any kind of transfer of manuscripts.  There is

just nothing in the record on that at all to date.  So that's

why I think there is still an opening.  But I do agree with you

that, to a certain extent, those claims are based on the

evidence that's been developed in the case.  They are more

factual.  I don't disagree with that at all.

          THE COURT:  Mr. Doniger, is this the type of claim

that you would move for summary judgment on?

          MR. DONIGER:  On the breach of fiduciary duties claim?

          THE COURT:  Yes, or any of the other non-copyright

N622FreC

1    claims.

2         MR. DONIGER:  I don't at present anticipate that we

3    would move on anything other than the copyright claim.  I did

4    anticipate the defendants likely would, as well, and that's of

5    course why I raised the issue with the Court that if we are

6    going to have multiple summary judgment motions, I don't see

7    how that streamlines the case.

8         MR. KOONCE:  And your Honor, I think if -- sorry to

9    interrupt, but if you put the question to my client, which I

10   haven't put that question directly, that if the choice were not

11   to be able to move for summary judgment on the copyright claim

12   because of these lingering state law claims that might be in,

13   you know, I don't know that we would move for summary judgment

14   on those if it was that stark a choice.  But I think we would

15   like to leave that open, depending on what happens on the

16   copyright claim.

17        MR. DONIGER:  Well, which of course to my mind, your

18   Honor, raises the point, if defendants are not going to move

19   for summary judgment and we are going to proceed forward on the

20   breach of fiduciary duties claim, then I think it is

21   fundamentally unfair that we, the plaintiff, at the close of

22   fact discovery had to operate within a limited window to get

23   our expert reports done, we had a couple of brief extensions,

24   but within a limited window, and now expert reports, including

25   those of Drs. Chaski and Juola, that would go to whether or not

N622FreC

1    it is more likely that our client's work was given to Ms. Wolff

2    that are directly relevant to the fiduciary duties claim as

3    well, defendants essentially have months and months and months

4    of extra time to figure that out.  I think we are entitled to

5    know what those expert reports are going to be on a reasonable

6    timeline.  There was an order that the Court issued as to like

7    when rebuttal reports were due and, regardless of what happens

8    on the copyright claims, those other claims will continue.

9         And my understanding, before I was in this case, is

10   that I think defendants raised the issue of bifurcating and

11   having an early adjudication on substantial similarity.  The

12   Court said no.  And now, after our client has spent six figures

13   on expert reports based on it not being bifurcated, defendants

14   are coming in, saying, well, we don't want to spend money on

15   our rebuttal expert reports or even say if we are going to have

16   expert reports and the Court has kicked it out.  You know, it's

17   now being kicked out for some indefinite period.  It is not --

18   it is not reasonable and it doesn't streamline the case and

19   it's not going to save any expenses if the copyright claim

20   doesn't obviate the need for those expert reports in any event.

21   All it does is unfairly give the defendants, you know, ample

22   additional time.

23        THE COURT:  Thank you.

24        It sounds like there is an open question now on expert

25   discovery.  All right.  I think I have all the information that

N622FreC

1    I need to think about what makes sense.  I will say, as I think

2    I have said several times in this case, I do feel like this

3    case has gotten unnecessarily complicated.  We see copyright

4    cases in our court all the time.  They are handled usually

5    pretty efficiently.  Sometimes there are expert witnesses.

6    Often there are not.  We see breach of fiduciary claims.  I

7    think there are very rarely experts here.  Obviously I'm not

8    prepared to make a *Daubert* finding here, but I do think, at

9    least as represented by the defendants, which I'm sure the

10   plaintiffs have a different view on their experts, but some of

11   the ways in which the fiduciary duty experts are described from

12   the defendants' perspective seem unnecessarily complicating

13   this issue.

14        We have struggled throughout this litigation to have

15   Ms. Freeman identify with specificity exactly what her works

16   are that were copied, and that has created its own level of

17   complication.

18        And so my job here is to get us over the finish line

19   as quickly and efficiently and fairly as possible, and I feel

20   like it's been difficult to do that because of how complicated

21   this case has become in a way that is atypical for copyright

22   cases in the courthouse.

23        I said what I said many, many months ago about moving

24   this case forward in the ordinary course because I assumed it

25   would be an ordinary course kind of copyright case, and it

N622FreC

1    hasn't been that.  And so my job as a case manager is to make

2    sure that we are doing things that make sense.  And maybe it

3    makes sense to put our head down and just keep going in the

4    ordinary way.

5          But the last few months, with the difficulty that we

6    faced, trying to get Ms. Freeman to identify the works at

7    issue, followed by the numerous new cases that were filed,

8    followed by the identification of seven expert witnesses made

9    me think that this case needed to be reoriented, and so that

10   was the purpose of today's conference.  So I appreciate

11   everybody coming in.  I know, Mr. Doniger, you had to travel a

12   bit of a distance to come in, and so I appreciate that.  I

13   think it was actually a good thing that you were here.  It's

14   helpful to have folks in the courthouse, in the courtroom, so

15   we can really talk about what's going on.

16         So I'm going to take all of this under advisement and

17   see what makes sense.  Again, my goal is just to move us

18   forward.

19         To that end, and can I ask the court reporter to just

20   take a quick pause for a moment.

21         (Discussion off the record)

22         THE COURT:  Let's go back on the record.

23         MR. HALPERIN:  Thanks, your Honor.

24         So just as your Honor considers this issue, I wanted

25   to offer, we would be willing to discuss with our clients and

N622FreC

1    answer in writing in the ensuing days whether or not we intend

2    to provide rebuttal expert reports to Drs. Chaski and Juola, if

3    that would be useful for the Court.

4            The other point is that, look, it's clear that these

5    were young adult books and that experts, including

6    computational linguists, are not typically used in these cases.

7    Plaintiff has proffered two of them.  I think plaintiff

8    believes that they offer slightly different methodologies, but

9    they are both computational linguists trying to provide

10   statistical analyses of words, rather than the comparison of

11   the works themselves.

12           One possible way to streamline this would be to limit

13   it to one of those two experts.  I will note that Dr. Chaski

14   purports to use proprietary software that defendants don't have

15   access to.  There are costs associated with gaining access to

16   and learning how to use that software.  All of that would be

17   very expensive and complicated.  Just another proposal to

18   potentially streamline things.

19           And one final thing is we raised the issue of

20   postponing further discovery on damages experts until after

21   summary judgment.  We would just renew that request now.

22           THE COURT:  I would be interested to know whether or

23   not defendants intend to put rebuttal experts really as to all

24   of the experts that are here.  I think that would be helpful

25   for me to think about scheduling.  So if you could get a letter

N622FreC

1  to me.  Can you do it -- today's Friday.  Can you do it by

2  Wednesday?

3            MR. HALPERIN:  Yes.

4            THE COURT:  All right.  Mr. Doniger, do you want to

5  say anything with respect to the proposal that you abandon one

6  expert?  I think I can predict your answer, but I'm happy to

7  give you the opportunity to surprise me; and, secondly, on the

8  damages issue, whether or not there is any reason why we can't

9  at least carve that issue out and revisit it once the case has

10  a better sense of scope.

11            MR. DONIGER:  Sure.

12            So the first thing I wanted to say is the Court had

13  indicated that there was some trouble getting my client to

14  identify the work at issue, the works at issue.  I don't think

15  that's a fair characterization, and I just need to address that

16  on the record briefly.

17            THE COURT:  Okay.

18            MR. DONIGER:  As my client looks at it, all of the

19  various iterations of her manuscript are one work.  It's a

20  single story that has some revisions here and there, that those

21  revisions, those various iterations were all available to the

22  agent to give out.  Like, we don't -- she can't separate it.

23  It's not as if there are five distinct books.  There's just --

24  it's the same work.  So that's been our conceptual problem all

25  along.  And we have said we could certainly give a couple, you

N622FreC

know, a few primary versions.  When the Court said give, you

know, two primary versions to start the analysis with, we did.

I don't think it's a fair characterization to say that my

client has been difficult in identifying the work at issue.  I

think we may just have a difference in how we are looking at

what the work is.

THE COURT:  Okay.

MR. DONIGER:  With respect to the specific question

the Court asked, there is a wide body of case law, as I'm sure

that the Court knows, that says that often there is no direct

evidence of access and, you know, access is often shown by

circumstantial evidence.  The computational linguists at issue

in this case, they are not just relevant to access, you know,

because there is the same issue on the fiduciary duties,

whether these works were in fact given to Ms. Wolff.  Again,

you are not going to often find direct access.  There is not

often going to be the smoking gun, and there is going to be

circumstantial evidence.  The fact that it is 99 percent likely

that there is common authorship between the two is very strong

evidence of that.  And we have got two very -- two different

analyses, two different methodologies that both point in the

same direction.  I think that's important evidence, and I think

it's evidence that should get out there.  I think we should

know whether the defendants are going to have experts that say

something different on that point so we can figure out how to

N622FreC

1    move forward.

2         I respectfully submit that the Court should lift the

3    stay on expert discovery, let us get the rebuttal reports that

4    we need, kick the deadlines out by the ten days or so that they

5    have been postponed.

6         And without defendants -- the Court is asking the

7    defense to put in writing whether they are going to get -- have

8    rebuttal experts, and counsel is saying he doesn't know.  They

9    have had weeks at this point, three weeks at this point since

10   we served initial expert reports, to figure that out.  And the

11   fact that we are in here and they still can't say yes or no and

12   they want more time before the Court then even decides whether

13   to set a new deadline, this isn't streamlining the case.

14        Please, we respectfully request that the Court

15   reinstate rebuttal expert deadlines and let's get this done.

16        THE COURT:  And is that your answer to my question

17   about damages experts?

18        MR. DONIGER:  With respect to damages, I don't know if

19   the Court saw our -- we had a subsequent letter that we filed,

20   as well, with the Court with our opinion, our views on some

21   things to hopefully help the Court to see where we are coming

22   from.

23        THE COURT:  Is that different than the March 23

24   letter?

25        MR. DONIGER:  Yeah.  There was an initial response to

N622FreC

1    the defendant's request for a conference, and then there was

2    another letter that we filed I think the day after the Court

3    set this hearing, and hopefully the Court saw that letter, as

4    well.

5              THE COURT:  I'm not sure whether I did, but I will be

6    sure to look at that.

7              MR. DONIGER:  All right.  I would request you to

8    please take a look at that.

9              THE COURT:  Of course.

10             MR. DONIGER:  And in there we note, as well -- I

11   actually don't remember which letter it was in.  The

12   defendants, they have got the burden to show their deductible

13   expenses on the copyright claim.  We were surprised that they

14   didn't have an initial expert, and since our expert is solely

15   talking, speaking to what the numbers are and the numbers come

16   from the defendants, it is very unclear what significant burden

17   there is on the defendants of letting us know if they plan to

18   have a rebuttal expert or not.  If there is some significant

19   burden, I would say "got it."  I don't see what that burden is.

20   So I think we should just complete expert discovery.

21             MR. HALPERIN:  May I respond, your Honor?

22             THE COURT:  Sure.

23             MR. HALPERIN:  First point, Mr. Doniger earlier said

24   that Drs. Chaski and Juola are opining on both probative

25   similarity and substantial similarity.  Right now he seems to

N622FreC

be cabining that to access and maybe the breach of fiduciary
claims.  This just goes shows how complicated the plaintiff is
trying to make this and how much the plaintiff is trying to
avoid a simple one-on-one comparison to the books.

Second, just on scheduling, when we agreed to the
prior schedule, we had no idea they were going to disclose
seven experts.  Nobody had any idea.  So I think to hold us to
anything regarding that schedule after they surprise everybody
with seven expert witnesses is unfair and prejudicial.  We
don't need a ton more time, but we don't see any reason why
damages can't be addressed after summary judgment.  And if
Drs. Chaski and Juola are going to go forward, then we just
need a reasonable amount of time to depose them, and we will
let you know whether we want to provide rebuttal experts, but
we just need to confirm that with our client.  I think the
answer is probably no as to those two.

THE COURT:  Okay.

MR. DONIGER:  Your Honor, if I can just add, I'm
sorry, one last thing, which is that your question earlier or
your point earlier about the identification of manuscripts was
about delay and how long this case has been going on.  It is
routine in copyright cases in this circuit to have a decision
made by the Court on substantial similarity early in the case
based on just comparing the works when it's literary works.
Part of the delay here was caused because we could not get

N622FreC

1    access to any manuscripts, not just having the plaintiff

2    identify the specific manuscripts.  We didn't get access to the

3    manuscripts until months after the complaint was filed.  So we

4    went forward in this case, and now they are expanding and

5    expanding the scope by bringing in all the experts.  So the

6    cost is a huge part of this in addition to the delay for all of

7    the defendants.

8         THE COURT:  Okay.  Thank you, everybody.  Again, I

9    appreciate everyone coming in on this beautiful, hot,

10   beginning-of-summer day.

11        MR. HALPERIN:  I'm sorry, your Honor.  Just one more

12   tiny point.

13        THE COURT:  Yes.

14        MR. HALPERIN:  I'm very, very sorry.

15        Because we did not respond to the plaintiff's

16   additional letter that Mr. Doniger raised, we would ask --

17   because we had a conference this morning, so we figured we

18   would discuss those issues there.

19        One thing also raised in that letter and I believe the

20   prior letter is plaintiff's request to unseal certain expert

21   reports that have not been held admissible yet.  We would just

22   ask that if the plaintiff wants that, that they file a formal

23   motion to unseal, and also that there should be a waiver of any

24   confidentiality as to the manuscripts themselves.  There is no

25   reason to put expert reports talking about manuscripts into the

N622FreC

1   public sphere without the manuscripts themselves also being

2   there.

3          THE COURT:  It seems to me on this issue, you know, a

4   summary judgment motion is coming, whether it's coming next

5   week or at the end of the year, and all of that is going to

6   have to be on the public docket.  So I think having a

7   conversation right now about things that were filed previously

8   and whether the manuscripts should filed under seal, I think

9   once summary judgment comes, everything is going to have to be

10  public, so I don't know if there is any benefit to having that

11  conversation now.

12         MR. HALPERIN:  That sounds fine, your Honor.

13         THE COURT:  Okay.

14         MR. DONIGER:  Actually and I did want to raise that

15  issue, as well.  I'm glad counsel did.  And I just wanted a

16  point of clarity as to how this Court considers under-sealed

17  filings.  I know some judges say give your redacted version

18  that only has what you think is confidential removed, because

19  as much as possible should be in the public record.  Some

20  judges say we will just file things under seal if you have any

21  concerns.

22         Does the Court have -- we want to be sure -- I don't

23  know how many more things will be filed before your Honor, but

24  I come from the school where we err on the side of ensuring

25  that things aren't kept out of the public record unnecessarily,

N622FreC

1  and I wanted, equally importantly, to make sure that, to the

2  extent that we may want to share expert reports with other

3  folks, consultants, etc., that may not be part of the

4  protective order, if there is no -- if we believe there is

5  no -- our expert, reports that there is no -- none of

6  defendants' confidential information in there, I want it to be

7  clear that that wouldn't be an issue because this Court had put

8  it under seal.

9        So my first request or position is that I think really

10  the Court should look at those reports, see that there is

11  nothing in there that should prevent them from being part of

12  what really presumptively should be a public record of filings,

13  but regardless of whether the Court does that, I wanted to make

14  sure we wouldn't be going awry of this Court's order by sharing

15  it with other potential consultants that may not be signing off

16  on the protective order because we don't think there is

17  anything confidential in there.

18        THE COURT:  Okay.  With respect to filing things under

19  seal generally, you should comply with my individual rules and

20  comply with the Second Circuit law which does have a general

21  right of public interest.  Generally speaking, discovery

22  disputes there is no public -- you know, heightened public

23  interest or public right to those, that information.

24        I, like you—like probably everyone in the

25  courtroom—want to make sure that the public has an

N622FreC

1   opportunity to review the way the Court is acting.

2            I am not going to reread the expert reports, and I'm

3   not going to revisit the decision on that filing.  But going on

4   a forward-looking basis, I think the parties need to make sure

5   they are complying with the Second Circuit law, comply with my

6   individual rules when they are filing things.

7            Certainly summary judgment motions are archetypal

8   judicial documents, and so those will have to be public, all

9   things, unless someone can make a really significant showing

10  that there is some heightened trade secret or some confidential

11  information that really can't be made public, and I will take

12  that request seriously.

13           With respect to you sharing your expert reports with

14  other consultants, I haven't read the expert reports and I

15  don't intend to do so any time soon.  If you have a question,

16  speak with counsel.  I hope everybody is going to be

17  reasonable.  I assume most confidentiality orders provide

18  that you can share things with consultants so long as they

19  agree to hold them in confidence.  I assume your order is the

20  same as every other one, but I don't have a particular

21  recollection.

22           MR. DONIGER:  Okay.  So just so I am clear, this court

23  filing agreeing to those reports being filed under seal doesn't

24  have any precedential value for future filings or use of those

25  reports?

N622FreC

1          THE COURT:  Correct.

2          MR. DONIGER:  Okay.  Thank you.

3          MR. HALPERIN:  Your Honor, we would just ask that

4    counsel confer with us before sharing anything outside the

5    terms of the protective order.  We already know that a friend

6    of one of their expert witnesses has posted on Facebook

7    publicly about the case, leading to news coverage about it.

8    We have serious concerns that they are trying to litigate in

9    the media rather than on the merits.  So if they want to go

10   outside the protective order, we would ask that they seek our

11   permission for it first.

12         THE COURT:  Okay.  I assume that the protective order

13   allows for lawyers to speak with consultants and other people

14   that are helping the lawyers, and that you don't need to know

15   who those consultants are.  So I assume counsel will comply

16   with whatever provisions are in the protective order and not

17   share --

18         MR. DONIGER:  Of course.

19         THE COURT:  -- things that have been designated as

20   confidential with respect to the defendant's material and that

21   are inconsistent with the protective order.

22         All right.  I tried this once before.  Anything

23   further from the plaintiff's counsel?

24         MR. DONIGER:  No.  Thank you so much for your time

25   today.

N622FreC

1              THE COURT:  Anything further from defense counsel?

2              MR. HALPERIN:  No, and thank you, your Honor.

3              MR. KOONCE:  Thank you, your Honor.

4              THE COURT:  We are adjourned.  Thank you.

5                               -  -  -

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25