

June 16, 2023

The Honorable Louis L. Stanton
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St., New York, NY 10007-1312

    Re: *Lynne Freeman v. Tracy Deebs-Elkenaney et. al.*, Case No. 22 Civ 2435 (LLS) (SN)

Dear Judge Stanton:

    We write on behalf of Plaintiff, Lynne Freeman ("Freeman") in response to Defendants' June 16, 2013, letter to Your Honor. Ms. Freeman objects to Defendants' request to move for summary judgment[1] before expert discovery is completed, strongly disagrees with Defendants' claim that the expert testimony offered in this case is irrelevant to substantial similarity and believes it inappropriate to limit summary judgment briefing to substantial similarity. As set forth more fully in her concurrently filed letter requesting a pre-motion conference seeking permission to file her own motion for summary judgment on both substantial similarity and access, she believes that her copyright infringement claims are ripe for a determination in her favor.

    And as set forth more fully in her motion for reconsideration of this Court's June 14, 2023, Order (ECF No. 218), bifurcating issues offers no real benefits given the nature of the case and related non-copyright claims, but will certainly result in significant additional delay and expense—which will disproportionately and unfairly tax Ms. Freeman. Finally, while this is not the time to brief *Daubert* motions, Freeman notes that courts have permitted expert testimony to address substantial similarity in literary cases, and more generally in cases where a jury would have difficulty otherwise comparing the protectable expression of the work—which is certainly the case here.

    1. **The Court should set a pre-motion conference for a motion for summary judgment with briefing scheduled after expert discovery is concluded.**

    This is both an unusual copyright infringement case, and a remarkably strong one. Defendants suggest that the fact finder will be able to simply read one manuscript and one book and see that there is no substantial similarity. While Freeman strongly disagrees, Defendants' claims intentionally miss the point. Since the beginning of this case Freeman has been clear that

---

[1] Freeman is confident that if the Court reads Professor Reiss' Report, it will deny Defendants' request to make a motion on substantial similarity because Defendants have no chance of prevailing.

Page 2
June 20, 2023

Defendant Deebs-Elkenaney p/k/a Tracy Wolff ("Wolff") appropriated material and language from multiple iterations of Freeman's manuscript and related notes and moved/spread Freeman's story, characters, plot, and scenes across the first four (4) books in the *Crave* series. Freeman anticipates focusing the jury on six iterations of Blue Moon Rising ("BMR) and some related notes (totaling approximately 2,650 pages) to establish that 2,750 pages of books 1-4 of the *Crave* series have infringed Freeman's work by both comprehensive nonliteral similarity and fragmented literal similarity (discussed in Section "2" below).

In the Second Circuit, a plaintiff may establish substantial similarity by comparing an allegedly infringing work to a combination or series of related works in the aggregate. *Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 138 (2d Cir. 1998) ("Where the secondary work focuses on an entire continuous television series . . . there is no basis for looking in isolation at the amount copied from each separately copyrighted episode."). In *Castle Rock*, the defendant copied "643 fragments from 84 individually copyrighted *Seinfeld* episodes" to create what was deemed to be an infringing trivia game. *Id.* at 138 ("By copying not a few but 643 fragments from the *Seinfeld* television series . . . The SAT has plainly crossed the quantitative copying threshold"). In holding that it was appropriate to aggregate Plaintiff's 84 individually copyrighted works to determine whether they were substantially similar to defendant's trivia game, then-Judge Sotomayor cited a history of Second Circuit precedents[2] and explained:

> Although 17 U.S.C. § 106 speaks in terms of a singular copyrighted 'work,' it would elevate form over substance to conclude that [defendant's] copying of 643 fragments from 84 individually copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634-question trivia quiz book poses a few questions from each of 84 unrelated television programs, books, movies, or any combination of creative works that do not constitute a discrete series of works.

*Id.* Justice Sotomayor's reasoning still holds true in this Circuit. *See, e.g., Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 535 n.14 (S.D.N.Y. 2008) ("The Court analyzes the amount of expression copied from the *Harry Potter* series in the aggregate, rather than from each individual novel in the series, following the Second Circuit's reasoning in *Castle Rock*").[3]

Freeman believes this is a case in which both access and substantial similarity can be decided in her favor as a matter of law. And it is a case in which the evidence in support of those

---

[2] *See, e.g., Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1372–73, 1381 (2d Cir.1993) (finding substantial similarity between infringing book and 8 episodes of Twin Peaks weekly television series seen as a whole); *Wainwright Secs. Inc. v. Wall St. Transcript Corp.*, 558 F.2d 91, 94 (2d Cir.1977) (abstracts of a number of research reports treated cumulatively in fair use analysis); *Craft v. Kobler*, 667 F.Supp. 120, 124–25 (S.D.N.Y.1987) (passages taken from 15 separate books of copyright holder treated cumulatively in finding infringement); *Salinger v. Random House, Inc.*, 811 F.2d 90, 98 (2d Cir.1987) (copying of Salinger letters not fair use because, among other factors, secondary work copied one-third of 17 letters and 10 percent of 42 letters).
[3] In the March 17, 2023 Order referred to above, Your Honor also held that with respect to any decision made by the Magistrate as to the application of Plaintiff's "aggregation" argument was premature.

claims overlaps to a significant degree. Setting aside both that Wolff's agent (Kim) worked with Freeman on her BMR story for years before helping Wolff with *Crave* and that Wolff's publisher (Entangled) received and reviewed BMR before hiring Wolff to write *Crave*, the striking similarities between the works and the evidence of joint authorship (also discussed further in section "2" below) are overwhelming. But briefing on that motion should follow the completion of expert discovery, as contemplated in the Trial Scheduling Order recently abandoned in this case, since that expert discovery will be necessary to address the other claims in this case. The current stay, which has already given Defendants another month to secure rebuttal experts, serves no purpose other than to unnecessarily delay the completion of expert discovery, all to the benefit of Defendants.

### 2. Defendants Attempt to Mislead This Court Regarding Magistrate Netburn's Order Requiring Plaintiff to Select Two of the Unpublished Drafts of *BMR to Use For a Substantial Similarity Comparison against the* Crave Book Series

In response to Plaintiff's objections to Judge Netburn's ruling filed with Your Honor, the Court stated as follows: "Magistrate Judge Netburn did not make trial rulings. She did not admit or exclude evidence. Because the importance of the work in which they appear ("manuscript") as related to the claimed infringing work, she required plaintiff to 'identify two manuscripts to serve as the primary works that establish her copyright claim.' The Order is commonsense and pragmatic, and neither erroneous nor contrary to law. The selection of the two test examples is not a ruling on the remainder of plaintiff's evidence." *See* Order, dated February 27, 2023, (Dkt No. 141).

In response to Plaintiff's Motion for Clarification, this Court explained that all "claims remain available with regard to the other iterations of plaintiff's work. (footnote omitted). The job is to produce, in an orderly and pragmatic way, a manageable understanding of the relationship between the two bodies of work. Examining their most salient characteristics through two sample iterations of the plaintiff's work is a practical way to start. It supplies a method of organizing some of the evidence. It does not imply or suggest exclusionary rulings. It is not designed to bring the case to a precipitate end; it is designed to increase the understanding of the subject matter." See Order dated March 17, 2023 (Dkt. No. 81).

### 3. Defendants' bid for an early determination of whether Expert Testimony should be permitted on the Issue of Substantial Similarity should be rejected.

Defendants' suggestion that expert discovery should continue to be stayed because it is not relevant to substantial similarity is both wrong and ignores the fact that said expert testimony is *all* still relevant, proper, and admissible to the other claims in this case regardless of the ultimate finding on substantial similarity. There is thus no good cause not to complete expert discovery forthwith.

Page 4
June 20, 2023

Admittedly, expert testimony is not used to evaluate substantial similarity of literary works in typical cases, but this is far from a typical case. To be sure, courts in the Circuit have allowed expert testimony on the issue in literary infringement cases. *See Price v. Fox Entertainment Group, Inc.*, 499 F.Supp.2d 382, 389 (S.D.N.Y. 2007); *Walker v. Time Life Films, Inc.*, 788 F.2d 44, 48,53 (2d. Cir. 1986). (the bar against expert testimony on the substantial similarity issue should, not be "taken literally"). At least one court has held, that it was not an error to consider an expert report at the summary judgment phase on the issue of whether any reasonable jury could find the works substantially similar. *See Currin v. Arista Records*, 724 F.Supp.2d 286, 291 (D. Conn. 2010).

Although the Second Circuit and the district courts in the Circuit generally limit expert testimony to "technical areas" such as comparison of musical compositions, computer software or computer programing code, the rationale for doing so is that it could otherwise be too complicated for a lay observer to do the analysis. *See, Computer Associates International, Inc. v. Altai, Inc.* 982 F.2d 693, 713 (2nd Cir. 1992); *Repp v. Webber*, 132 F.3d 882, 891 (2d Cir. 1997); *Krisko v. Marvel Ent., LLC*, 473 F. Supp. 3d 288, 305 (S.D.N.Y. 2020), *quoting* 4 Nimmer on Copyright § 13.02. This is exactly such a case.

First, Wolff did not appropriate the infringing material from only one version of Plaintiff's Blue Moon Rising ("BMR") manuscript. Rather, Wolff appropriated portions of material and language from multiple iterations of Freeman's manuscript and related notes. Freeman anticipates focusing the jury on six iterations of Blue Moon Rising ("BMR) and related notes totaling approximately 2,650 pages to be compared with 2,750 pages which comprise the four (4) books in the *Crave* series. Expert testimony will be extremely helpful in this case given the sheer volume of the works and the challenge in seeing the substantial similarity by simply putting one book and one manuscript side-by-side, given that Wolff spread Freeman's story over 4 books, and in some cases changed the order in which the unique plot and story elements are revealed.

Second, and relatedly, Wolff committed the infringement using sophisticated methods and technology. [REDACTED] Use of this type of technology is above and beyond the typical knowledge of a lay observer, but has been revealed with mathematical certainty by Freeman's forensic linguists. Those linguists, Drs. Juola and Chaski, have determined separately and using different methods that the odds of common authorship between Freeman's work and the *Crave* series is 99.99%

This Circuit has endorsed two distinct types of copying when analyzing substantial similarity: "comprehensive nonliteral similarity" and "fragmented literal similarity." *Paramount Pictures Corp.* v. *Carol Publ'g Group*, 11 F. Supp. 2d 329, 333 (S.D.N.Y. 1989); *see also Twin Peaks Prods., Inc. v. Publications International, Ltd.*, 996 F.2d 1366, 1372 (2nd Cir. 1993) (citing

4 Nimmer on Copyright §13.03[A][2]); *Best Cellars, Inc. v. Grape Finds at Dupont, Inc.*, 90 Supp. 2d 431, 460 (S.D.N.Y. 2000); and *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 537 (S.D.N.Y. 2008). Under these cases, "[c]omprehensive nonliteral similarity exists where the allegedly infringing work does not copy the original work word-for-word, but the 'fundamental essence or structure of [the original work] is duplicated in [the infringing work].'" *See, e.g., Best Cellars, Inc.* at 460; *and* 4 Nimmer on Copyright §13.03[A][1]. To determine if comprehensive nonliteral similarity exists, the trier of fact examines factors such as similarity in plot, theme, dialogue, mood, setting, pace and sequence. *Walker v. Time Life Films, Inc.*, 788 F.2d 44, 48 (2d. Cir. 1986).

"By contrast, 'fragmented literal similarity exists where the defendant copies a portion of the plaintiff's work exactly or nearly exactly, without appropriating the work's overall essence or structure.'" *May v. Sony Music Entm't*, 339 F. Supp 3d. 169, 180 (S.D.N.Y. 2019). Fragmented similarity "focuses upon copying of direct quotations or close paraphrasing." *Castle Rock Entm't, Inc.* at 140. The approach is called fragmented literal similarity precisely because the similarity exists in discrete instances rather throughout the works as a whole. *Best Cellars, Inc.* at 460. "[T]he law in the Second Circuit is clear, "the concept of similarity embraces not only global similarities in structure and sequence, but localized similarity in language." *Warner Bros.* at 537. "In evaluating fragmented literal similarity, or 'localized similarity in language, the Court examines the copying of direct quotations or close paraphrasing of the original work." *Id.* "The mere fact that the defendant has paraphrased rather than literally copied will not preclude a finding of substantial similarity." *Id.* "Copyright 'cannot be limited literally to the text, else a plagiarist would escape by immaterial variations.'" *Id.* (citing *Nichols v. Universal Pictures Co.*, 45 F.2d 119, 121(2d Cir.930).

Plaintiff intends to prove at trial that Defendants committed both comprehensive nonliteral similarity and fragmented literal similarity. She will prove the former by demonstrating that there is substantial similarity between the Freeman Copyrighted Material and the Crave Book Series in plot, theme, dialogue, mood, setting, pace and sequence. She will prove the latter by demonstrating the extraordinary amount of similarity in language between the Freeman Copyrighted Material and the *Crave* Series. Importantly, the ordinary observer test is not used in analyzing fragmented literal similarity. *See TufAmerica, Inc. v. Diamond*, 968 F. Sup. 2d 588, 596-597 (S.D.N.Y. 2013).

Freeman has offered experts that go to both types of infringement. She has offered Professor Kathryn Reiss to address where the fundamental essence or structure of Freeman's work was copied *and* to establish that those similarities are not tropes or genre convention. And she has offered Drs. Juola and Chaski to establish the copying of a portion of Freeman's work exactly, and the significance of that when compared to a control group of other books in the genre. The methodologies used by Drs. Chaski and Juola are scientifically accepted. Indeed, Dr. Chaski alone has been involved in approximately 100 matters, including various authorship cases. *See* Chaski Report ( Ex.3 to Dkt 227), pp. 51-62.[4]

---

[4] Her testimony was only excluded once in those types of cases,. *Id.* at p. 8. (verify with Chaski) *See Mowry* v. *Viacom Int'l, Inc.*, 2005 WL 1793773, at *12, referred to in Defendant's letter. However, it was excluded due to

Page 6
June 20, 2023

    Defendants attempt to exclude Freeman's experts at this stage of the proceeding is based on a letter to the Judge. The parties previously agreed to a briefing schedule for Daubert motions, and the schedule was ordered by Magistrate Judge Netburn. If Defendants wish to move to exclude any of Freeman's expert witnesses, they should file a Daubert motion in accordance with the schedule that has been ordered by the Court.

    We thank the Court for its time and attention to this matter.

Respectfully submitted,

**CSReeder, PC**

_(signature)_

Mark D. Passin
11766 Wilshire Boulevard,
Suite 1470
Los Angeles, CA 90025
310-861-2475

**DONIGER/BURROUGHS PC**
Stephen Doniger, Esq.
603 Rose Avenue
Venice, California 90291
(310) 590-1820
stephen@donigerlawfirm.com
*Attorneys for Plaintiff* Freeman

cc: All counsel of record (via ECF)

---

the novelty of the method she used in that matter which later became standard practice in linguistics. She is not using that method in this case. Id. at p. 8. If Defendants file a Daubart motion as to either Professors Chaski or Juola, Plaintiff will obviously explain their methodology in detail.