

June 23, 2023

**VIA ECF**
The Honorable Louis L. Stanton
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St., New York, NY 10007-1312

      Re:    *Lynne Freeman v. Tracy Deebs-Elkenaney et. al.*, 1:22 Civ 02435 (LLS)(SN)

Dear Judge Stanton:

Defendants briefly respond to Plaintiff's June 20 letters (ECF Nos. 231, 233) and reiterate that this case should now proceed to summary judgment on substantial similarity without experts.[1]

**I.**      **Response To ECF No. 231**

Plaintiff's letter (which exceeds Your Honor's three-page limit for pre-motion letters) seeks leave for her own summary judgment motion on her "copyright infringement claims." To the extent Plaintiff seeks to move on issues other than substantial similarity, that is either precluded or not ripe under the Court's June 14 Order. To the extent Plaintiff seeks summary judgment on substantial similarity, that would be frivolous. In purporting to demonstrate aspects of the parties' works that are "remarkably similar," Plaintiff provides only her own misleading descriptions of the works rather than copies, excerpts, or even cites to the works themselves. Such self-serving descriptions are inapposite because the works speak for themselves. *See, e.g., Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) ("In copyright infringement actions, '***the works themselves*** supersede and control contrary descriptions of them[.]'") (emphasis added, citation omitted); *Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996) (rejecting such lists of purported similarities as "inherently subjective and unreliable"). Plaintiff's continued effort to avoid comparing "the works themselves" speaks volumes.[2]

---

[1] Plaintiff separately filed a motion for reconsideration of the Court's June 14 Order (ECF No. 218)—the ***third reconsideration motion she has filed in this case***. (ECF Nos. 224, 225.) Plaintiff's motion should be denied because it neither sets forth nor seriously attempts to satisfy the applicable reconsideration standard, which "is strict" and requires the moving party "to point to controlling decisions or data that the court overlooked" and demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *E.g., In re Platinum-Beechwood Litig.*, 400 F. Supp. 3d 2, 4 (S.D.N.Y. 2019) (citations omitted). This is just a threshold reason to reject the motion; Defendants will file an opposition brief by the July 5 deadline (*see* L.R. 6.1, 6.3, 6.4) if the Court does not deny the motion outright before then.

[2] Defendants previously provided complete copies of Plaintiff's 2011 draft of *BMR* and *Crave* book 1. (ECF Nos. 220-1–220-5; 220-6–220-9.) The other version of *BMR* that Plaintiff selected pursuant to the Court's prior Orders (a 2013 draft entitled *Masqued*) is attached as Exhibit A to this letter. To give a flavor for how misleading Plaintiff's descriptions are, consider just one example. Plaintiff states that both parties' works end with similar scenes involving characters called "the Bloodletter," and that "Crave ends with the Bloodletter character turning into a winged creature and flying off." (ECF No. 231 at 4.) This is outright false. The final *Crave* scene has nothing to do with the "Bloodletter" character (who is nothing like the alleged *BMR* counterpart), and nobody in that scene flies off as a "winged creature." Instead, a different character (Hudson) appears from a cloud of smoke, in completely different circumstances. Plaintiff has misleadingly described very different scenes to create the false impression of similarity. This is precisely why the works themselves must be considered rather than self-

Cowan, DeBaets, Abrahams & Sheppard LLP

41 Madison Avenue    9454 Wilshire Blvd
38th Floor    Suite 901
New York, NY 10010    Beverly Hills, CA 90212    cdas.com

Case 1:22-cv-02435-LLS-SN   Document 237   Filed 06/23/23   Page 2 of 4

Plaintiff proceeds to argue that her various expert witnesses are relevant to substantial similarity (ECF No. 231 at 4-5), despite previously representing that they were proffered on other issues (*see, e.g.*, ECF No. 217 at 1). Plaintiff's current position contradicts black-letter Second Circuit law forbidding experts on substantial similarity, as Defendants have repeatedly shown. (*See* ECF Nos. 102 at 2-5; 120 at 16 n. 18; 220 at 2-3; *see also* ECF No. 105 at 3 n.2 (Judge Netburn agreeing).) Plaintiff's authority only reinforces this. *See, e.g.*, *Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 713 (2d Cir. 1992) (expert witnesses allowed only for "highly complicated and technical subject matter" such as computer code; not for "judging substantial similarity in copyright cases that involve the aesthetic arts, such as music, visual works *or literature*") (emphasis added). This case does not involve computer code; it involves YA books written at a 12- to 18-year-old reading level. Here again, Plaintiff's effort to rely on expert opinions rather the works themselves—she even separately asks the Court to "read Professor Reiss' Report" rather than the actual works (ECF No. 233 at 1 n.1)—shows that Defendants are the only parties entitled to summary judgment.[3]

## II.   Response To ECF No. 233

This second letter treads much of the same ground. Plaintiff additionally argues that experts are needed for substantial similarity because the parties' collective works are too voluminous to be evaluated by ordinary readers. (ECF No. 233 at 4.) But as shown above, experts are only allowed in this Circuit when the ***subject matter*** of the works is highly technical, not because there is a lot of content. (*See* ECF No. 105 at 3 (Judge Netburn finding that "[t]he difficulty Plaintiff anticipates is with the volume, not the subject matter")).

And Plaintiff's concern is precisely why the Court required her to select two test versions of her manuscript. Plaintiff attempts to reargue this issue yet again, relying on the same authority as before (ECF No. 233 at 2-3), but it has now been decided against Plaintiff ***three times***. First, Judge Netburn required Plaintiff to select two primary versions because Plaintiff's work is not "a series," "but rather a collection of works-in-progress leading to a final single manuscript," and Plaintiff "cannot rely on an amalgam of bits and pieces of her work in progress." (ECF No. 105 at

---

serving descriptions of them. The Court (and any reasonable reader) can see for itself by comparing the two scenes, at pages 461-67 of Ex. A and ECF pages 94-99 of ECF No. 220-9.

[3] Defendants will demonstrate in *Daubert* briefing if necessary that all of Plaintiff's experts' opinions are not only irrelevant, but unreliable junk science. For example, Dr. Juola purports to demonstrate plagiarism by identifying ***just two*** common six-word phrases ("in the air as I try to" and "that million-dollar smile of his") (Juola Rep. ¶ 22), out of hundreds of thousands of words in the works themselves. Meanwhile, Dr. Chaski's primary analysis is based on the purported common usage of just ***35 single words*** (again out of hundreds of thousands) that she hand-selected with no apparent methodology. (*See* Chaski Rep. ¶¶ 103(f) & tbl. 5.) Many of these words—including "Alaska," "aurora," "northern," "vampire," "werewolf," "wolf," "monster," "witch," "fang," "moon," and "teacher"—would be expected to appear in books set in schools in Alaska containing vampires, werewolves, and witches. None of this comes remotely close to reliably demonstrating infringement of protectible expression. Still, Defendants reiterate their request to be given 45 days to rebut these experts on their methodologies, and then depose them, if Court allows them to be offered on substantial similarity. Again, litigating the specifics of these highly technical methodologies would be an extraordinary waste of time and resources in a case involving YA books, and contravene this Circuit's well-established law, but Defendants will undertake the process if so required.

2                                                                                                                                          cdas.com

3.) Your Honor then **overruled** Plaintiff's objection to that Order, recognizing that "[r]elying on a primary version of the manuscripts allows the fact finder to be able to effectively" decide substantial similarity. (ECF No. 141 at 3.) Most recently, Your Honor stated that two test manuscripts would be used "to determine in a preliminary degree 'whether a lay observer would consider the works as a whole substantially similar to one another'"—i.e., for a comparison at summary judgment. (ECF No. 181 at 1.)

In short, Judge Netburn's original Order requiring Plaintiff to select two test versions was ***affirmed and endorsed***, not overturned, so the requirement stands. This result is especially appropriate now because Plaintiff and her expert Reiss admit that all the various versions of *BMR* have the same "basic story, plot, characters" and are "a single story that has some revisions here and there" (Reiss Rep. (ECF No. 205-2) ¶ 225; 6/2/23 Hr'g Tr. (ECF No. 222) 30:18-31:6), such that looking at the two test versions is more than enough to assess substantial similarity.

Finally, Plaintiff also argues that her experts can help prove "fragmented literal similarity" (ECF No. 233 at 5), but as Defendants have previously shown, "fragmented literal similarity" has been used only in a minority of cases in inapposite circumstances and does not apply here (ECF No. 120 at 18-19). Defendants will address fragmented literal similarity further at summary judgment if Plaintiff attempts to rely on it then, but this inapplicable doctrine does not support tendering expert witnesses on the single issue of substantial similarity.[4]

Thank you again for your attention to these issues.

                                        Respectfully submitted,

                                        COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP

                                        By: /s/ Benjamin S. Halperin
Nancy E. Wolff
Benjamin H. Halperin
CeCe M. Cole
41 Madison Avenue, 38th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474

---

[4] Plaintiff's June 20 filings are also filled with deliberate mischaracterizations of the facts developed in discovery. For instance, Plaintiff claims without evidence that Tracy Wolff "committed the infringement using sophisticated methods and technology." (ECF No. 233 at 4.) This is a false accusation. Wolff was directly asked about this and testified that she has "no idea" what "text spinning software" is and that she did not use any "artificial intelligent bots that are able to reword sentences in writing any of the books in the Crave book series." (Wolff Dep. 28:12-25 (attached as Ex. B).) Similarly, Plaintiff avers in her declaration supporting her reconsideration motion that all Defendants are insured (ECF No. 226 ¶ 5), but Prospect Agency and Emily Kim disclosed in their Initial Disclosures a year ago that they are not. The assertion that this litigation has been anything but expensive, traumatic, and severely burdensome for Defendants is outrageous—especially considering that Defendants were denied their opportunity to move to dismiss because Plaintiff unreasonably refused to provide her own manuscript until discovery.



nwolff@cdas.com
bhalperin@cdas.com
ccole@cdas.com

*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan, and Universal City Studios LLC*

Lacy H. Koonce, III
KLARIS LAW PLLC
29 Little West 12th Street
New York, NY 10014
Phone: (917) 612-5861
lance.koonce@klarislaw.com
*Attorneys for Emily Sylvan Kim and Prospect Agency, LLC*

