

Attorneys admitted in
California, New York,
Texas, Pennsylvania, and
Maine

Sender's contact:
Stephen@donigerlawfirm.com
(310) 590-1820

Doniger / Burroughs Building
603 Rose Avenue
Venice, California 90291

Doniger / Burroughs NY
247 Water Street, First Floor
New York, New York 10038

June 27, 2023

**DELIVERED VIA ECF**

The Honorable Louis L. Stanton
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St., New York, NY

      Re: *Freeman v. Deebs-Elkenaney et al*, 1:22-cv-02435-LLS-SN

Dear Judge Stanton:

  We represent Plaintiff Lynne Freeman and write in opposition to Defendants' letter requesting the unsealing of Plaintiff's 2011 and 2013 unpublished manuscripts. Defendants present four claims that in their opinion, albeit misplaced, justify unsealing: (1) deposits of the manuscripts are publicly available via the copyright office; (2) Plaintiff waived any claim of confidentiality over her manuscripts when she publicly filed copies of expert reports; (3) Plaintiff's manuscripts are judicial documents; and (4) creative control and unauthorized copying is not the goal of copyright law, so sealing in pursuit of such goal is meritless in theory. Each argument is without merit and is addressed below.

  First, Defendants once again mischaracterize the nature of public access to deposits of works, particularly an unpublished manuscript. While the public may go to the Copyright Office and ***view*** the document, the public may not obtain ***copies*** of the unpublished document from the Copyright Office.[1] And even if someone meets the procedural hurdles required before being allowed to view the unpublished deposit, there are significant restrictions employed when viewing the deposit to prevent copyright infringement during and after viewing. As explained further below, there are significant restrictions on the viewing of both published and unpublished deposits, near prohibition on obtaining copies of the published deposits, and procedural hurdles that make public access materially different than that of judicial documents. See Copyright Compendium § 2407.1(A), 2407.1(B)(2); *see also Compuware Corp. v. Serena Software Int'l Inc*., 77 F. Supp. 2d 816 (E.D. Mich. 1999) (noting the Copyright Office imposes "strict limitations" on the inspection of deposit copies).

---

[1] As addressed in Plaintiff's previous letter to Your Honor dated June 22, 2023, copies of unpublished deposits may only be obtained when one of three conditions have been met: (i) the Copyright Office receives written authorization from the copyright claimant of record or his or her designated agent, or from the owner of any of the exclusive rights in the copyright as long as this ownership can be demonstrated by written documentation of the transfer of ownership; (ii) The Copyright Office receives a written request from an attorney on behalf of either the plaintiff or defendant in connection with litigation, actual or prospective, involving the copyrighted work; or (iii) the Copyright Office receives a court order from a court of proper jurisdiction, for reproduction of the deposited copies, phonorecords, or identifying material of a registered work which is the subject of litigation. *See* U.S. Copyright Office, "*Obtaining Access to and Copies of Office Records and Deposits*", https://www.copyright.gov/circs/circ06.pdf (last visited June 22, 2023).

It is unclear how such strict limitations could be considered irrelevant to the current issue when unauthorized copying is, and has been, the primary concern over unsealing the unpublished manuscripts. Considering registration of a work with the Copyright Office is required before bringing a copyright claim, to contend that registration essentially affords the work unfettered public access would lead to absurd results. The Copyright Office so clearly recognizes these concerns considering the highest protection afforded to the documents to prohibit copying and only allow for limited public inspection, something that cannot be said about public access to judicial documents. Importantly, the Copyright Office requires the person inspecting deposits to sign an agreement to not copy or deface the deposit. *See* § 2407.1(C)(2). During inspection, the viewing party may only take limited notes and such notes are reviewed by the staff to ensure that the notes taken are not considered copying. *Id.* Based on the nature of the restrictions employed by the Copyright Office when viewing deposits, copying is clearly a serious concern. This Court should likewise consider unauthorized copying of Plaintiff's manuscripts a serious concern that would be at issue considering Plaintiff is unaware of any limitations on access to judicial records that would similarly protect her work from unauthorized copying if unsealed.

Along with the strict limitations on inspection, there are significant procedural hurdles to inspecting deposits at the Copyright Office. For example, not all requests for inspection of the deposits are approved by the Copyright Office. See Copyright Compendium § 2407.1(C) ("If the request is approved…"). And the inspection may only occur at the Copyright Office in Washington, D.C., during normal business hours, and after obtaining a reader authorization card. *See id*. Further, the inspection of a deposit is only allowed after mailing a written request and paying a $200 fee. § 2407.1(C)(2). So, once again, Plaintiff asserts that public access is significantly different regarding deposits at the Copyright Office and judicial records at the United States District Courts.

Second, Defendants argue that Plaintiff waived any confidentiality claims to the manuscripts by filing redacted copies of the expert report. Defendants appear concerned about the public access to said expert reports misleading the public and end up as a trial in the media. This is once again an attempt to mischaracterize the issue and the circumstances here. The expert reports contain excerpts from the manuscripts and by no means contain the entire unpublished manuscripts filed here. As always, Plaintiff's position has remained firmly rooted on a concern of unauthorized copying and publication of the unpublished manuscripts. The filing of an expert report containing small, unconnected portions of the manuscripts can hardly give rise to a copying or publication concern. In contrast, the unsealing of a copy of the entire manuscripts, available to the public, raises such concerns.[2]

Third, Defendants contend that Plaintiff's unpublished manuscripts are judicial documents "because they were provided so that the Court can preliminarily determine whether a summary judgment motion is warranted." Letter at 2. The Plaintiff maintains her position that the unpublished manuscripts are not judicial documents because they are not relevant to the current judicial function. The manuscripts were filed along with Defendants' request for the Court to allow the filing of a motion for summary judgment. The manuscripts simply provide background information to the issue presented – whether this Court should grant Defendants' request to move for summary judgment. Because the manuscripts are irrelevant to the judicial function and process, they should be treated as such, and remain sealed. Plaintiff maintains, and Defendant does not dispute, that even if the

---

[2] Defendants notably attempt to construe public perception of Plaintiffs claim by only advocating for the unsealing of the two manuscripts filed in conjunction with their present motion. Defendants are doing so to try to show the difference between the two manuscripts here (2011 and 2013) and the *Crave* book. However, the Plaintiff's theory of the case does not rest on the theft of her work in relation to these two manuscripts alone – it rests on the copying of the original 2010 manuscript and six additional manuscripts. This is the infringement of a *body* of work, not just two manuscripts. Defendants attempt to publish Plaintiff's work in this manner is clearly done to mislead the public perception because if the public had access to all six manuscripts, the theft would be undeniable.

manuscripts are considered a judicial document, Plaintiff's interests in the manuscript remaining under seal greatly weight against the presumption of public access.[3]

Finally, Defendants contend that copyright law is intended to prevent infringement, yet, in the same breath, Defendants advocate for the opposite. As explained above, the unsealing of the unpublished manuscripts increases the likelihood of infringement by increasing public access to the manuscripts and increasing the likelihood of further unauthorized copying, a position that remains undisputed by Defendants. So if the entire purpose of copyright law is to prevent infringement, then this court should keep the unpublished manuscripts under seal so that public access remains subject to the Copyright Office's regulations that place substantial barriers to infringement. Defendants' contention that the purpose of copyright law is to limit infringement is therefore better served when the document is under seal.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

By: */s/ Stephen M. Doniger*
Stephen M. Doniger
Scott Alan Burroughs
DONIGER / BURROUGHS PC
For the Plaintiff

---

[3] Should this Court find that Plaintiff's unpublished manuscripts be unsealed, in the interest in fairness, all previous unpublished versions of the books in the *Crave* book series filed in the future should also be filed unsealed.