UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYNNE FREEMAN,<br><br>        Plaintiff,<br><br>vs.<br><br>TRACY DEEBS-ELKENANEY P/K/A TRACY WOLFF, et al.,<br><br>        Defendants. | Case No.: 1:22-cv-02435-LLS-SN |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S JUNE 14, 2023 ORDER**

Nancy E. Wolff, Esq.
Benjamin S. Halperin, Esq.
CeCe M. Cole, Esq.
COWAN, DEBAETS, ABRAHAMS,
& SHEPPARD, LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Telephone: (212) 974-7474
Fax: (212) 974-8474

*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a MacMillan, and Universal City Studios LLC*

Lacy H. Koonce, III
KLARIS LAW PLLC
29 Little West 12th Street New York, NY 10014  Phone: (917) 612-5861
lance.koonce@klarislaw.com

*Attorneys for Emily Sylvan Kim and Prospect Agency, LLC*

Plaintiff has filed a motion seeking reconsideration of the Court's June 14, 2023 Order, which ordered a separate jury trial on the issue of whether the parties' works are substantially similar ("Order," ECF No. 218). This is the ***third time*** Plaintiff has sought reconsideration of a Court Order in this case, and her motion does not come close to satisfying (or even address) the exacting reconsideration standard. The Court correctly found that substantial similarity is a distinct, potentially dispositive issue, and that it would be inefficient and costly to undergo further expert discovery before it is decided. Plaintiff argues that her experts will help her prove "access" and/or "striking similarity," but no amount of proof on these issues will allow Plaintiff to prevail if the Court determines there is no substantial similarity.

The Court's Order does not deny Plaintiff her day in court or her right to prove any of her claims. It only prevents Plaintiff from continuing to run up costs and introduce unnecessary complexity to avoid the required and dispositive side-by-side comparison of the young adult (YA) novels at issue ***themselves***. Plaintiff's motion should be denied.

## BACKGROUND

This is a copyright infringement case concerning Plaintiff's unpublished YA novel *Blue Moon Rising/Masqued* ("*BMR*") and Defendant Tracy Wolff's *Crave* book series. On May 10, 2023, Plaintiff disclosed the opinions of ***seven*** expert witnesses, which appears unprecedented in a literary infringement case, let alone one involving YA books that are written for teenagers. Two of Plaintiff's experts, Drs. Carole Chaski and Patrick Juola, are "computational linguists" who purport to demonstrate copyright infringement with convoluted statistical analyses based on limited and cherry-picked data—the antithesis of the standard "ordinary observer" comparison.

On May 22, Defendants asked Judge Netburn to consider whether the case could be streamlined to avoid the need for an expensive and potentially unnecessary expert rebuttal process,

1

particularly as to Drs. Chaski and Juola. (*See* ECF No. 206.) The parties appeared before Judge Netburn at a June 2 conference and submitted follow-up letters shortly thereafter. (ECF Nos. 216, 217.) On June 14, Your Honor ordered "a separate jury trial on whether the Crave series and plaintiff's manuscripts are substantially similar," pursuant to Federal Rule 42(b). (Order at 1.) Plaintiff filed her reconsideration motion on June 20. (ECF Nos. 224, 225 ("Pl.'s Mem.").)[1]

## ARGUMENT

"Reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly." *Ortega v. Mutt*, 2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017).[2] As the Supreme Court has put it, "as a rule courts should be loathe to [grant reconsideration] in the absence of extraordinary circumstances." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988). Accordingly, "[i]t is well-settled that a party may move for reconsideration and obtain relief only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013). These criteria "are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court." *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. Nov. 3, 1999). "This standard is intended to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" *In re Platinum-Beechwood Litig.*, 400 F. Supp. 3d 2, 4 (S.D.N.Y. Aug. 20, 2019).

---

[1] Plaintiff previously sought reconsideration of (1) Your Honor's February 27, 2023 Order affirming Judge Netburn's requirement that Plaintiff select two primary versions of her manuscript (ECF Nos. 159, 160); and (2) Judge Netburn's May 25, 2023 Order setting the June 2 streamlining conference (ECF No. 214).

[2] Emphasis is added to and citations are omitted from legal authority cited herein unless otherwise indicated.

Plaintiff does not address the reconsideration standard or explain why it is satisfied. Plaintiff cannot identify an intervening change in law, new evidence, or controlling decisions or data that the Court overlooked. To the extent Plaintiff implicitly attempts to establish clear error or manifest injustice, that is meritless.[3]

### I. THE COURT DID NOT CLEARLY ERR IN SEPARATING THE ISSUE OF SUBSTANTIAL SIMILARITY.

Plaintiff fails to show that the Court clearly erred by ordering a separate trial on substantial similarity. Plaintiff needs to prove two separate elements of her copyright claim: (1) "actual copying" (including access); and (2) substantial similarity. The latter is decided based on the works alone; all the evidence raised in Plaintiff's brief (including the expert opinions) is relevant, if at all, only to the former. When there are two distinct issues and one of them is potentially dispositive and can be decided immediately without expensive further discovery, it makes perfect sense to order separate immediate adjudication of that issue. And this applies with equal force to separating substantial similarity from Plaintiff's state-law claims, as explained below.

#### A. Substantial Similarity Is A Distinct Element That Can And Should Be Adjudicated Now.

"In order to establish a claim of copyright infringement, 'a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's.'" *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602

---

[3] Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues." Fed. R. Civ. P. 42(b). This rule "affords a trial court discretion to order separate trials where such an order will further convenience, avoid prejudice, or promote efficiency." *Amato v. City of Saratoga Springs, New York,* 170 F.3d 311, 316 (2d Cir. 1999); *see also Hal Leonard Pub. Corp. v. Future Generations, Inc.*, 1994 WL 163987 at *2 (S.D.N.Y. Apr. 22, 1994) ("The decision to separate claims and bifurcate a trial rests firmly within the discretion of the trial court."). Plaintiff does not argue that ordering a separate trial on substantial similarity was beyond the Court's discretion under Rule 42(b).

F.3d 57, 63 (2d Cir. 2010); *see also, e.g.*, *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996) (copyright plaintiff must prove "(a) that the defendant had access to the copyrighted work and (b) the substantial similarity of protectible material in the two works").

The two prongs of a copyright infringement claim answer two distinct questions: (1) whether the defendant "actually copied" from the plaintiff's work (which includes establishing the defendant's access to the work); and (2) whether, even if some copying took place, it "went [s]o far as to constitute improper appropriation." *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946) ("[I]t is important to avoid confusing two **separate elements** essential to a plaintiff's case in such a suit: (a) that defendant copied from plaintiff's copyrighted work and (b) that the copying (assuming it to be proved) went [s]o far as to constitute improper appropriation."); *see also, e.g.*, *Repp v. Webber*, 132 F.3d 882, 889 & n.1 (2d Cir. 1997) (cited in Pl.'s Mem. at 5) (differentiating between "[a]ctual copying," which "'includes access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony'" and the separate requirement of "show[ing] that the copying was unlawful by establishing 'substantial similarity' between the works at issue").

In short, concepts such as "access," "striking similarity," and "probative similarity" are relevant to only to the first prong (actual copying). "**Substantial** similarity" is a separate issue; it is the test for establishing the second prong (unlawful appropriation). And the two prongs are adjudicated with different evidence. Access "may be established directly or inferred from the fact that a work was widely disseminated or that a party has a reasonable possibility of viewing the prior work." *E.g.*, *Boisson v. Banian, Ltd.*, 273 F.3d 262, 270 (2d Cir. 2001). When evidence of access is unavailable, a plaintiff can attempt to satisfy prong one by showing that the works are "strikingly similar," such that "proof of access may be inferred." *E.g.*, *Repp*, 132 F.3d at 889.

4

By contrast, substantial similarity is decided via the "ordinary observer" test, which asks "whether, in the eyes of the average lay observer, the [defendant's] works are substantially similar to the protectible expression in the [plaintiff's work]." *Williams*, 84 F.3d at 587; *see also, e.g.*, *Gaito*, 602 F.3d at 66 ("The standard test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same.'"). This analysis is conducted based on a comparison of the "works themselves," without extrinsic evidence. *See, e.g.*, *id.* at 64 ("In copyright infringement actions, 'the works themselves supersede and control contrary descriptions of them,' including 'any contrary allegations, conclusions or descriptions of the works contained in the pleadings.'").[4] As Defendants have repeatedly shown, expert testimony is irrelevant to substantial similarity unless the works at issue are too technical for ordinary observers to comprehend. (*See* ECF Nos. 102 at 2-5; 120 at 16 n. 18; 220 at 2-3 (all collecting cases); ECF No. 105 at 3 n.2 (Judge Netburn agreeing).) *See also, e.g.*, *Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 713-14 (2d Cir. 1992) (expert witnesses allowed only for "highly complicated and technical subject matter" such as computer code; not for "judging substantial similarity in copyright cases that involve the aesthetic arts, such as music, visual works ***or literature***").

Plaintiff argues that "the evidence in this case does not readily lend itself to clear delineation between access, probative copying, and substantial similarity since access can also be shown through the striking similarity of the works that exists here." (Pl.'s Mem. at 4.) But as just shown, the ***law*** creates a "clear delineation" between substantial similarity on the one hand and access/probative copying on the other, and "the evidence" relevant to each is distinct. As Plaintiff

---

[4] The two primary versions of *BMR* and *Crave* book one are available on the docket. (ECF Nos. 220-1–220-5 (2011 draft of *BMR*); ECF Nos. 236-1–236-4 (2013 draft); ECF Nos. 220-6–220-9 (*Crave*).) Defendants will provide the remaining *Crave* books with their summary judgment motion; they also are not remotely similar to *BMR*.

5

appears to acknowledge, "striking similarity" is not a component of substantial similarity, but rather an ***alternative means of proving access*** when there is no other evidence of access. (*See* Pl.'s Mem. at 5 (arguing that "there are overwhelming similarities that can and do ***establish access***").)[5] For these reasons, all the various evidence discussed in Plaintiff's motion that is allegedly proffered to establish "access," "probative similarity, and/or "striking similarity" (*see id.* at 4-10) is ***not*** relevant to substantial similarity. Only the works themselves are relevant to substantial similarity. Plaintiff's concern that she will need to proffer the same evidence twice is therefore unfounded.

Finally, the Court's Order aligns with the common practice of resolving literary infringement cases on substantial similarity alone. *See, e.g.*, *Gaito*, 602 F.3d at 63-64 (substantial similarity can be resolved as a matter of law "when a defendant raises the question of substantial similarity at the pleadings stage" based on "'the works themselves"). Indeed, literary infringement cases, particularly those involving popular books written for lay readers, are frequently ***dismissed*** due to lack of substantial similarity without discovery or adjudication of factual issues. *See, e.g.*, *Montgomery v. Holland*, 408 F. Supp. 3d 353, 363-78 (S.D.N.Y. Sept. 30, 2019), *aff'd*, 833 F. App'x 361 (2d Cir. 2020) (short stories/mini-series); *Amanze v. Adeyemi*, 2019 WL 2866071, at *6-10 (S.D.N.Y. July 3, 2019), *aff'd*, 824 F. App'x 86 (2d Cir. 2020) (YA fantasy books); *DiTocco v. Riordan*, 815 F. Supp. 2d 655, 665-73 (S.D.N.Y. Sept. 20, 2011), *aff'd*, 496 F. App'x 126 (2d Cir. 2012) (*Percy Jackson* novels); *Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 653-64 (S.D.N.Y. Jan. 6, 2011) (*Harry Potter* book); *Brown v. Perdue*, 2005 WL 1863673, at *9-13 (S.D.N.Y. Aug. 4, 2005), *aff'd*, 177 F. App'x 121 (2d Cir. 2006) (*Da Vinci Code* book); *Scott v. Meyer*, 2009 WL

---

[5] To be clear, the works at issue in this case are not "strikingly similar." Defendants would show that Plaintiff's expert opinions purporting to establish "striking similarity" are the epitome of inadmissible junk science. *See, e.g.*, *Mowry v. Viacom Int'l, Inc.*, 2005 WL 1793773, at *12 (S.D.N.Y. July 29, 2005) (comparing works themselves rather than relying on experts, then proceeding to exclude Dr. Chaski's opinions offered to prove access via "striking similarity" as unreliable and unhelpful). But as the Court correctly found, it is unnecessary to undertake the expensive process of adjudicating these experts' methodologies when substantial similarity can be decided now without experts.

10673163, at *2-6 (C.D. Cal. Dec. 2, 2009) (*Twilight* series); *see also, e.g.*, *Williams*, 84 F.3d at 587-91 (affirming summary judgment on substantial similarity based on review of books/movie themselves); *Porto v. Guirgis*, 659 F. Supp. 2d 597, 609-16 (S.D.N.Y. Sept. 28, 2009) (summary judgment based on review of novel/play themselves); *Lewinson v. Henry Holt & Co., LLC*, 659 F. Supp. 2d 547, 565-77 (S.D.N.Y. Sept. 23, 2009) (same; children's books); *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 308-15 (S.D.N.Y. Jan. 26, 1999) (same; comic books).

## B. There Is No Clear Error In Separating The Issue Of Substantial Similarity From Plaintiff's State-Law Claims.

Plaintiff makes a similar "overlapping evidence" argument as to her state-law claims against Defendants Emily Sylvan Kim and Prospect Agency, again without addressing the reconsideration standard. (Pl.'s Mem. at 11-12.) This fails for the same reason as above: none of the purportedly overlapping evidence Plaintiff identifies is relevant to **substantial similarity**. Plaintiff herself acknowledges this, stating that "much of the evidence that Freeman intends to present on the issue of *access* (that Kim gave Wolff and others copies of Freeman's work) is the same evidence that Freeman intends to use to prove her state court claims." (*Id.* at 12.) Defendants dispute that any of the evidence Plaintiff identifies can prove either access or any state-law claim, but none of this has anything to do with whether *BMR* and *Crave* are substantially similar.

## II. THE COURT'S ORDER DOES NOT CREATE MANIFEST INJUSTICE.

The Court's Order does not remotely cause manifest injustice. "In the context of a motion for reconsideration, 'manifest injustice' is defined as 'an error committed by the trial court that is direct, obvious, and observable.'" *Corpac v. Rubin & Rothman, LLC*, 10 F. Supp. 3d 349, 354 (E.D.N.Y. Aug. 1, 2013) (collecting cases). No such error occurred here as explained above. Instead, as explained, the Order allows a ripe and dispositive issue to be decided now, potentially avoiding the need for expensive and time-consuming further expert discovery.

7

Here again, Plaintiff does not address the reconsideration standard or attempt to explain why the alleged hardships claimed in her brief and supporting declaration meet it. Notably, Plaintiff mostly identifies alleged financial hardships, when in fact the Court's Order has the potential to *save* costs by allowing the swift resolution of Plaintiff's copyright claim without further discovery. If the copyright claim is dismissed, four of six Defendants will be removed, allowing any remaining state-law claims to be swiftly and efficiently resolved.[6]

In any event, there are good reasons to doubt Plaintiff's credibility as to the hardships claimed in her declaration. Defendants are not privy to Plaintiff's financial condition or actual litigation costs, but respectfully note that she is being represented on contingency. (*See* Ex. A, Freeman Dep. 208:4-22 (counsel Mark Passin "is on contingency"; Doniger law firm is "contingency counsel").) To the extent Plaintiff's claimed costs related to expert witness fees, her unreasonable decision to tender seven experts in a copyright case involving YA books does not create a hardship that rises to the level of manifest injustice. Presumably, that decision was made after being informed that expert witnesses are not typically used in literary infringement cases and that these opinions might be disregarded, at least as to substantial similarity.[7]

The costs and hardships of litigation also go both ways. This litigation has and continues to greatly harm Defendants. In addition to time, stress, and money, Defendants suffered reputational harm after Plaintiff's unproven allegations were leaked to the media. Authors and

---

[6] Plaintiff's state law claims almost certainly rise or fall with her copyright claim. Plaintiff alleges that Emily Kim and Prospect Agency committed fraud and breached contract/fiduciary duty by improperly sharing *BMR* "for the purpose of committing copyright infringement." (First Am. Compl. (ECF No. 24) ¶¶ 47 55, 60, 68.) Further, putting aside that discovery has shown that Plaintiff will not be able to make such a factual showing, it is difficult to see what damages she would be entitled to on her state-law claims if Defendants are adjudged innocent of copyright infringement.

[7] Other questionable claims include that Plaintiff swears that she does not "fly on planes for years at a time." (Freeman Decl. (ECF No. 226) ¶ 7.) Plaintiff's husband testified that Plaintiff *does* generally fly between Alaska and Santa Barbara. (Baer Dep. 13:19-24 (answering "[g]enerally, yes" when asked whether Plaintiff commercially flies between these destinations).) Plaintiff also swears that she and her husband sold "our family home" to afford this litigation. (Freeman Decl. ¶ 3.) But Plaintiff's husband testified that he and Plaintiff lived in the purported "family home" for only four years before recently selling it. (Baer Dep. 12:11-14.)

publishers rely upon goodwill in the intellectual property that they painstakingly create and offer to the public. Salacious and unproven allegations can sully the reputation of the creators and publishers, causing a loss of sales, reduce the possibility of future sales, and lessen the consuming public's interest in ancillary or crossover products (e.g., merchandising or additional stories set in the same "universe"). Plaintiff's purposeful leaking of information about this action to the press was designed to cause such harm and force Defendants to make a settlement offer. Precisely because Defendants refuse to give in to Plaintiff's strong-arm tactics, Plaintiff has "upped the ante," filing numerous parallel lawsuits against Defendants' retail partners in an apparent effort to further strain relationships, destroy goodwill, harm Defendants across the board, and pressure a settlement.

Moreover, the litigation has been expensive for Defendants as well. Plaintiff claims that, to her belief, Defendants "don't have any out-of-pocket expenses as they are insured." (Freeman Decl. ¶ 5.) But Prospect Agency and Emily Kim disclosed that they ***do not*** have insurance and ***are*** paying for this litigation out of pocket. Other Defendants' decision to purchase liability insurance for their businesses (which has policy limits and does not cover all aspects of defense) does not make them any less entitled to a fair and efficient resolution of the litigation.[8] Just as Plaintiff is entitled to her day in court—which the Order does not deny—Defendants are entitled to a fair and efficient adjudication of the claims against them so that they can correct the public record, put this litigation behind them, and profit from their hard work as they are entitled to do.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's motion for reconsideration.

---

[8] Plaintiff characterizes Entangled as a "large publishing house." (Freeman Decl. ¶ 5.) It is not. Entangled has approximately 50 employees; by contrast, actual large publishing house Penguin Random House "employs more than 11,000 people globally." *See* https://www.linkedin.com/company/penguin-random-house-publishing.

Dated: New York, New York
      July 5, 2023

Respectfully submitted,

**COWAN DEBAETS ABRAHAMS & SHEPPARD, LLP**
By: /s/ Benjamin S. Halperin
Nancy E. Wolff, Esq.
Benjamin S. Halperin, Esq.
CeCe M. Cole, Esq.
41 Madison Avenue, 38th Floor
New York, New York 10010
Telephone: (212) 974-7474
Fax: (212) 974-8474

*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan, and Universal City Studios LLC*

Lacy H. Koonce, III
KLARIS LAW PLLC
29 Little West 12th Street New York, NY 10014
Phone: (917) 612-5861
lance.koonce@klarislaw.com
*Attorneys for Emily Sylvan Kim and Prospect Agency, LLC*