**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LYNNE FREEMAN, an individual, | |
| *Plaintiff,* | Case No. 1:22-cv-02435-LLS-SN |
| -against- | **PLAINTIFF'S REPLY BRIEF** |
| TRACY DEEBS-ELKENANEY, et al., | |
| *Defendants.* | |

1

**INTRODUCTION**

As set forth in Plaintiff's moving papers, this Court's Order for a separate first trial on only a single issue (substantial similarity) of one of the five claims at issue (copyright infringement) cannot possibly streamline this case or save expenses since the determination of the remaining claims are not dependent on the outcome of the copyright claim and the experts retained by Plaintiff go to those other claims as well. Rather, the Order will only add significant additional expense and delay as the parties (including Defendant Deebs who resides in Texas) and potentially their experts will be required to travel to New York for multiple trials.

Defendants do not meaningfully dispute the above. Rather they appear to argue that Plaintiff has not met the high standard for reconsideration.[1] But their own cited authorities establish otherwise. For example, they cite to *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F.Supp.2d 365, 368 (S.D.N.Y. Nov. 3, 1999), and *In re Platinum-Beechwood Litig.*, 400 F.Supp.3d 2, 4 (S.D.N.Y. Aug. 20, 2019) which explain, respectively, that the purpose of that high standard is to "avoid repetitive arguments on issues that have been considered fully by the court" and to "prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters."  Here, there was no "lost motion"—this Court issued its Order without seeking briefing from the parties[2] and did not specify in its Order what facts or arguments it considered.

Plaintiff understands that reconsideration is not "a second bite at the apple for a party dissatisfied with a court's ruling." *Corines v. American Physicians Ins. Trust*, 769 F.Supp.2d 584,

---

[1] The motion should be granted to prevent manifest injustice. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust,* 729 F.3d 99, 104 (2d Cir. 2013). Ultimately, however, whether to grant or deny a motion for reconsideration is "committed to the sound discretion of the district court." *Abu Dhabi Com. Bank. V. Morgan Stanley & Co. Inc.,* 888 F. Supp. 2d 478, 483 (S.D.N.Y. 2012).

[2] On May 22, 2023, Defendants wrote a letter to Magistrate Netburn asking her Honor to convene a conference to consider whether there is a way to streamline the litigation.  Specifically, Defendants asked the Court to consider suspending the remaining expert discovery and order immediate dispositive briefing on the issue of whether the Crave series and BMR are substantially similar. In the alternative, Defendants asked the Court to craft a fair procedure for the remaining expert discovery.  On May 23, 2023, Plaintiff responded to the arguments contained in the foregoing letter.  On June 2, 2023, Magistrate Netburn had a hearing on those issues.  On June 14, 2023, without briefing from the parties on the issue, Your Honor Ordered that "[i]n light of defendants' request to streamline this litigation (Dkt No. 205), the Court orders, pursuant to Federal Rule of Civil Procedure Rule 42(b), a separate jury trial on whether the *Crave* series and plaintiff's manuscripts are substantially similar."

2

593 (S.D.N.Y.2011) (internal citations omitted). Ms. Freeman never had a first bite at the apple, and it is extraordinary to bifurcate trials without first providing the parties the opportunity to speak to the question or having a factual record on which to base such a ruling.

Through this motion for reconsideration, the parties have now had the opportunity to address whether there is efficiency to be gained from multiple trials—the only question that is truly relevant to the bifurcation decision. And the response of Defendants all but admits that there is not. While they spend pages previewing their views on what evidence is relevant to substantial similarity, they do not meaningfully dispute that the expert testimony in this case is *also* relevant to Freeman's non-copyright claims and that the results of the first trial will not obviate the need to complete that expert discovery or hold that second trial. They also fail to address Freeman's desire to move for summary judgment on her copyright claims and how they would propose to address that motion if/when they lose this case on the substantial similarity question.

Plaintiff appreciates this Court's commitment to handling this litigation with as much efficiency and as little cost as possible. Since Defendants' response to this motion all but admits that a first trial on substantial similarity alone is far more likely to increase the burden on the parties than reduce it, this motion should be granted; the parties should complete expert discovery promptly, and this Court should set a schedule for the parties to address summary judgment on the claims they believe to be subject to such adjudication.

## ARGUMENT

### 1. DEFENDANTS TOTALLY IGNORE THE MAJORITY OF ARGUMENTS MADE BY PLANTIFF IN HER MOVING PAPERS.

Despite claiming that this "Court's Order… only prevents Plaintiff from continuing to run up costs and introduce unnecessary complexity" into this litigation, Defendants' Opposition entirely fails to point to *any* costs that separate trials would save under any circumstance or *any* complexity it would avoid. Defendants also completely ignore the obvious additional costs that both parties will bear traveling to and presenting witnesses—including expert witnesses—at two separate trial proceedings.

3

Defendants do not even present any real argument that they are likely to prevail on an initial trial on substantial similarity (let alone summary judgment on that question) and if they are not, then the contemplated first trial will multiply rather than streamline Freeman's copyright claims since they do not dispute that much of the evidence from the contemplated first trial will need to be duplicated for the subsequent phases. *See* Memorandum of Law in Support of Plaintiff's Motion for Reconsideration of the Court's June 14, 2023 Order ("Plaintiff's Moving Memorandum"), Ps. 4 -11. All the same evidence presented by Plaintiff on substantial similarity will be presented again at the second phase of the trial on access/striking similarity and/or for the non-copyright claims. And because the non-copyright claims in the case are not dependent on the outcome of the copyright claims, yet will rely on much the same evidence, separate trial proceedings will necessarily only cause unnecessary delay, expense, and duplication in the presentation of evidence and testimony. *See* Plaintiff's Moving Memorandum, Ps. 11-12.

Rather than address any of this, Defendants attempt misdirection by questioning Freeman's damages on her state law claims. Those damages—whether compensatory or punitive—are not the issue in this motion. For this motion, it was incumbent on Defendants to address how bifurcation promotes efficiency in the resolution of this case. Having entirely failed to do that, they effectively concede that it does not. Reconsideration is therefore appropriate and should be granted.[3]

2. **EXPERT TESTIMONY ON SUBSTANTIAL SIMILARITY IS APPROPRIATE IN THIS CASE, BUT EITHER WAY SEPARATE TRIALS DO NOT PROMOTE JUDICIAL EFFICIENCY.**

Defendants' opposition focuses on the secondary question of whether expert testimony is appropriately considered in determining the question of substantial similarity. But that question is not really ripe for determination yet because the factual record and legal arguments regarding the experts' opinions and methodologies and the ability of lay fact-finders to compare the works has not yet been properly briefed.

---

[3] Defendants' state in footnote 1 of their opposition brief that Plaintiff previously sought reconsideration of two previous Orders including, but not limited to, reconsideration of judge Netburn's May 25, 2023 Order setting the June 2, 2023 streamlining conference (ECF No. 214.). However they fail to mention that Defendants never responded to the later motion for reconsideration and Magistrate Netburn never addressed the motion.

What is relevant at this point is, as Freeman's motion explains, that courts in the Second Circuit have allowed expert testimony on substantial similarity in literary infringement cases (*see* Plaintiff's Moving Memorandum, p.5, f.n. 2) and that the sheer volume of the works and indicia that Wolff has used sophisticated methods and technology to commit the infringement[4] makes this a case where expert testimony may be extremely helpful to the jury. Expert discovery should be completed without delay so that this Court can evaluate whether and to what extent that discovery is helpful to address the issues in this case, including substantial similarity.

To be clear, Freeman submits that the merits of this motion do not depend on whether this Court ultimately agrees that expert testimony will assist in determining substantial similarity (it would). Even assuming *arguendo* it would not, delaying completion of that expert discovery will not obviate the need to complete expert discovery, have the Court address those experts' opinions, or otherwise streamline this case or save the parties money. All it does is unfairly give Defendants months and months more to prepare rebuttal expert testimony.

### 3. MULTIPLE TRIALS WILL CAUSE MS. FREEMAN SIGNIFICANT HARDSHIP

Defendants' attacks on Plaintiff's hardships claims lack merit. Regardless of her arrangement with current counsel, she has spent approximately $580,000 on e-discovery fees, court reporter fees, expert witnesses fees, her former local counsel, depositions, attorney travel expenses, and so on. *See* Supplemental Decl. of Freeman, ¶5. The longer this case goes on, and the more trials there are, the more e-discovery and document management fees, expert witness fees, and travel and other miscellaneous expenses will accrue. There is a limit to how much one aggrieved Plaintiff should be forced to bear.

Relatedly, Ms. Freeman advised this Court of her panic disorder condition. She was diagnosed with panic disorder approximately 18 years ago after suffering significant trauma. *Id.,*

---

[4] Wolff previously worked with plagiarism software and know how to rewrite a work just enough to avoid the obvious signs of plagiarism. She also used sophisticated text spinning software (software that takes existing text and makes changes to it to make it seem different enough from the original, with the intention of evading plagiarism-detection software) to write the *Crave* series. Although Wolff claimed at her deposition to not know what text spinning software is, she admits in documents produced in the case that she used text spinning software to modify various of the chapter titles in the *Crave* series that were copied from other sources. Freeman believes Wolff used the same text spinning software on the text taken from Freeman's copyrighted material, which expert testimony could speak to.

¶1.  Although there are times when she can fly by taking medication, there are years at a time that she cannot because the anxiety is too great, especially during periods of intense life stress.  *Id.* at ¶2.  Her husband's testimony was not contradictory, but rather was referring to several years ago when Freeman was flying back and forth between California and Alaska every few months.  *Id.* at ¶3.  It is equally as true that she has gone as long as 5 years without flying and that at present she has not flown on a plane in over 2 ½ years.  *Id.* at ¶3.  Moreover, Defendant Emily Kim knows of Freeman's disability.  Defendants' callous disregard of Ms. Freeman's known disability only evidences their intent to maximize the cost of this litigation—personally as well as financially—to her.

Finally, Freeman truthfully advised this Court that she and her husband sold their family home which "had sentimental value" as "it was two blocks from the home where she grew up and where her son was born." *Id.* at ¶5; Decl of Freeman filed with Plaintiff's Moving Papers, ¶3. She never said that she lived in the home since she was a child or for a large number of years.

4. **CONCLUSION**

For each of the reasons set forth in Plaintiff's moving papers and herein, Plaintiff's Motion for Reconsideration of the Court's June 14, 2023 Order should be granted in its entirety.

Dated: July 18, 2023　　　　　　　　　　　　　　　Respectfully submitted,
Venice, CA

　　　　　　　　　　　　　　　　　　　　　By:　*/s/ Stephen Doniger*
　　　　　　　　　　　　　　　　　　　　　　　　Stephen Doniger, Esq.
　　　　　　　　　　　　　　　　　　　　　　　　Scott Alan Burroughs, Esq.
　　　　　　　　　　　　　　　　　　　　　　　　DONIGER / BURROUGHS
　　　　　　　　　　　　　　　　　　　　　　　　247 Water Street, First Floor
　　　　　　　　　　　　　　　　　　　　　　　　New York, New York 10038
　　　　　　　　　　　　　　　　　　　　　　　　(310) 590-1820
　　　　　　　　　　　　　　　　　　　　　　　　stephen@donigerlawfirm.com
　　　　　　　　　　　　　　　　　　　　　　　　scott@donigerlawfirm.com
　　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff

REEDER MCCREARY, LLP

Mark D. Passin
11766 Wilshire Blvd. Ste 1470
Los Angeles, CA 90025
Tel: (310) 861-2470
Fax: (310) 861-2476
Email: mark@reedermccreary.com

*Attorney for Plaintiff Lynne Freeman*