

November 22, 2023

The Honorable Sarah Netburn
United States Magistrate Judge
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square Room 430
New York, NY 1000

Re: *Lynne Freeman v. Tracy Deebs-Elkenaney et. al.*, Case No. 22 Civ 2435 (LLS) (SN)

Dear Judge Netburn:

We represent the Plaintiff, Lynne Freeman, in the above captioned matter. We are writing to Your Honor pursuant to your Individual Rule III. F to request that various designated documents being filed today in connection with Plaintiff's Motion for Summary Judgment be filed under seal. The documents fall into two categories: (1) documents designated confidential by Defendants and (2) Plaintiff's unpublished, manuscripts which are not and never have been made publicly available, notwithstanding its registration with the United States Copyright Office—which does not make it generally available for viewing or constitute publication—and which were designated confidential by Plaintiff.

As to the first category, Plaintiff redacted or filed under seal those documents pursuant to the July 26, 2022 Stipulated Protective Order (ECF 50) in this case. Prior to Plaintiff filing her Motion for Summary Judgment she reached out to Defendants to confirm they required those documents to be filed under seal and Defendants insisted they should be. Accordingly, Defendants will need to justify keeping those documents under seal to the Court. The redacted documents are the following Exhibits to the declaration of Stephen Doniger filed in support of Plaintiff's Motion for Summary Judgment:  1, 3, 4, 13, 14, 19, 21, 22, 25, 26, 28 and 30. The documents filed under seal are the following Exhibits attached to Mr. Doniger's declaration: 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, 17, 18, 20, 27, 32, 33, 39, 61, 62, 63, 64, 65, 66, 67 and 68.

As to the second category of documents, Plaintiff's unpublished manuscripts and notes, they are Exhibits 1 through 30 attached to the declaration of Plaintiff Lynne Freeman submitted in support of Plaintiff's Motion for Summary Judgement.  With respect to the sealing of those unpublished manuscripts, Plaintiff submits that filing her unpublished manuscripts under seal is necessary to protect her interest in them, and is reasonable in this

case since the public record will still include a detailed record of those portions of her manuscripts that she contends were copied since she has prepared and filed concurrently indexes containing literally hundreds of pages of shared language and language from her BMR manuscripts that she believes to have been paraphrased.

Under the common law right of public access, the Court must "balance competing considerations" against the presumption of access." *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006). Such countervailing factors include "the privacy interests of those resisting disclosure." *Id.* If a presumption of access under both the common law and the First Amendment exists, continued sealing of the documents may be justified with specific, on-the-record findings that sealing is necessary to preserve higher values and if the sealing order is narrowly tailored to achieve that aim. *Id* at 124.

In this case, sealing is necessary to preserve higher values and the sealing order can be tailored to achieve that aim by sealing only the manuscripts and not Plaintiff's moving papers and expert reports in which Plaintiff describes the similarities between the parties works.[1] Plaintiff's interest in her unpublished manuscript would be upended by unsealing because judicial publication changes the nature of the manuscript. Notably, judicial publication diminishes Plaintiff's ability to maintain creative control of "when, where, and in what form to first publish a work." *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 553 (1985). The "potential damage to the author from judicial enforced sharing of the first publication right with unauthorized users of [their] manuscript is substantial". *Id*.

Any public interest in the manuscripts is far outweighed by Plaintiff's right to creative control—a right which is a fundamental goal of copyright law. So much so, the courts give unpublished works greater protections than published works to protect this interest. *See id.*, 471 U.S. at 553 (noting that the unpublished nature of the work entitles the work to a narrower scope of fair use). The unsealing of the manuscript would not only strip Plaintiff of one of her most important interests as a creator, but it would undermine the entire goal of copyright law. Such a result is unnecessary, where, as here, Plaintiff describes in her moving papers and expert reports the similarities between the parties' works with supporting reports and appendices that provide direct quotes to the works at issue.

Central to deciding this request is the increased likelihood of copying that would result from judicial publication. Defendants' previously filed two of Plaintiff's unpublished

---

[1] The Plaintiff's moving papers and expert reports contain excerpts from the manuscripts and by no means contain the entire unpublished manuscripts filed here. As always, Plaintiff's position has remained firmly rooted on a concern of unauthorized copying and publication of the unpublished manuscripts. The filing of the moving papers and expert reports containing small, unconnected portions of the manuscripts can hardly give rise to a copying or publication concern. In contrast, the unsealing of a copies of the entire manuscripts, available to the public, raises such concerns.

manuscripts under seal, but they unsuccessfully sought to unseal them[2] arguing that they were already in the "public domain" as a result of having been registered with the Copyright Office. That characterization is dubious since obtaining a copy of the "deposit" (e.g., the copyrighted work itself) from the Copyright Office's "public domain" requires first meeting one of three conditions: (1) written authorization by the claimant of record or owner; (2) a Copyright Office Litigation Statement Form completed and received from an attorney or authorized representative in connection with litigation; or (3) a court order for the reproduction of the deposited work.[3] Moreover, while the public may go to the Copyright Office and *view* the document, the public may not obtain *copies* of the unpublished document from the Copyright Office. *Id.*

And even if someone meets the procedural hurdles required to view the unpublished deposit, there are significant restrictions employed when viewing the deposit to prevent copyright infringement during and after viewing. As explained further below, there are significant restrictions on the viewing of both published and unpublished deposits, near prohibition on obtaining copies of the published deposits, and procedural hurdles that make public access materially different than that of judicial documents. See Copyright Compendium § 2407.1(A), 2407.1(B)(2); *see also Compuware Corp. v. Serena Software Int'l Inc.*, 77 F. Supp. 2d 816 (E.D. Mich. 1999) (noting the Copyright Office imposes "strict limitations" on the inspection of deposit copies).

These strict limitations are highly relevant to the current issue since they speak to precisely the same concern—protection of unpublished works from unauthorized copying. The Copyright Office so clearly recognizes these concerns in only allowing for limited public inspection, and even going so far as to require the person inspecting deposits to sign an agreement to not copy or deface the deposit. *See* § 2407.1(C)(2). During inspection, the viewing party may only take limited notes and such notes are reviewed by the staff to ensure the notes taken are not considered copying. *Id.* Based on the nature of the restrictions employed by the Copyright Office when viewing deposits, copying is clearly a serious concern.

This Court should likewise consider unauthorized copying of Plaintiff's manuscripts a serious concern that would be at issue considering Plaintiff is unaware of any limitations on

---

[2] The parties made several motions to seal in connection with a motion before Judge Stanton relating to a ruling by the Magistrate concerning Defendants "request to seek leave to file a motion for summary judgment on the issue of substantial similarity." With respect to Defendants's Motion to seal two of plaintiff's manuscripts, the court granted the motion to seal (ECF 249) on the grounds that the manuscript was not a "judicial document" because it was not relevant to whether defendants were procedurally entitled to seek summary judgment. Thus, the presumption of public access did not attach. The Court stated in the ruling that if the parties file a motion for summary judgment, "the manuscripts' bearing on the issues in the motion and, accordingly, the public's right to access the manuscripts will be reevaluated."

[3] *See* U.S. Copyright Office, "*Obtaining Access to and Copies of Office Records and Deposits*", https://www.copyright.gov/circs/circ06.pdf (last visited June 22, 2023).

Page 4
November 22, 2023

access to judicial records that would similarly protect her work from unauthorized copying if unsealed.

Along with the strict limitations on inspection, there are significant procedural hurdles to inspecting deposits at the Copyright Office. Importantly, not all requests for inspection of the deposits are approved by the Copyright Office. See Copyright Compendium § 2407.1(C) ("If the request is approved…"). And the inspection may only occur at the Copyright Office in Washington, D.C., during normal business hours, and after obtaining a reader authorization card. *See id*. Further, the inspection of a deposit is only allowed after mailing a written request and paying a $200 fee. § 2407.1(C)(2).

It is thus clear that the "public" nature of Copyright Office registration is very different from the "public" nature of judicial records at the United States District Courts. Copyright Office deposits are in fact inherently private because access is limited to include only those intimately associated with the work, while unsealed judicial records are truly widely accessible to the general public. If unsealed, the nearly unfettered access to judicial records would increase the likelihood of unauthorized copying. Consequently, the fundamental difference between access to the public domain via the Copyright Office and access to the public domain via the United States District Court makes the unpublished manuscripts copyrighted status a compelling reason for it to *remain* sealed.

Based on the prior motions before Judge Stanton, Plaintiff expects Defendants to also argue that Plaintiff waived any confidentiality claims to the manuscripts by filing copies of their expert reports. But such an argument would merely prove—that the public's strong interest in viewing the portions of the work that are the source of the claimed similarity simply does not establish that it also has a compelling interest in viewing the remainder of Plaintiff's unpublished manuscripts and notes that are not the basis of Plaintiff's claims and are not (yet) otherwise reflected in a published work..

Considering the foregoing, sealing Plaintiff's manuscripts "is essential to preserve higher values" and such sealing is "narrowly tailored to serve that interest." *In re New York Times Co*., 828 F.2d 110, 116 (2d Cir. 1987). Accordingly, the motion to be sealed should be granted.  This is especially so as to the eleven versions and notes that have been provided to the Court but are *not* used in Plaintiff's motion as a basis for comparison.

We thank the Court for its time and attention to this matter.

          Respectfully submitted,

          **Reeder McCreary, LLP**

          _____
          Mark D. Passin
          11766 Wilshire Boulevard,
          Suite 1470
          Los Angeles, CA 90025
          310-861-2475

          **DONIGER/BURROUGHS**
          Stephen Doniger, Esq.
          603 Rose Avenue
          Venice, California 90291
          (31) 590-1820
          stephen@donigerlawfirm.com
          *Attorneys for Plaintiff* Freeman

cc: All counsel of record (via ECF)