# EXHIBIT 2

Videotaped Deposition of

# Stacy Abrams

March 03, 2023

Freeman

vs.

Deebs

**Confidential**



1          UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF NEW YORK

3

4    LYNNE FREEMAN, an

5    individual,

6         Plaintiff,

7      vs.                          No. 1:22-cv-02435-LLS

8    TRACY DEEBS-ELKENANEY P/K/A

9    TRACY WOLFF, an individual;

10   et al.,

11        Defendants.
   _____

12

13

14              CONFIDENTIAL

15        VIDEO DEPOSITION OF STACY ABRAMS

16      Reported Remotely through Videoconference

17              March 3, 2023

18

19

20

21

22

23   Reported by:
     Margaret A. Smith
24   RPR, CRR, CSR No. 9733

25   Job No.:  10115785

**Confidential**

1          UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF NEW YORK

3

4   LYNNE FREEMAN, an

5   individual,

6          Plaintiff,

7     vs.                        No. 1:22-cv-02435-LLS

8   TRACY DEEBS-ELKENANEY P/K/A

9   TRACY WOLFF, an individual;

10  et al.,

11          Defendants.
    _____

12

13

14

15

16

17

18

19

20

21    Deposition of STACY ABRAMS taken on behalf of

22  Plaintiff, reported remotely through videoconference,

23  beginning at 6:57 a.m. PST, and ending at 1:05 p.m. PST,

24  on Friday, March 3, 2023, before Margaret A. Smith, RPR,

25  CRR, Certified Shorthand Reporter No. 9733.

1    APPEARANCES (via videoconference):

2

3    FOR PLAINTIFF:

4         CSREEDER, PC

5         BY:  MARK PASSIN, ESQUIRE

6         11766 Wilshire Boulevard, Suite 1470

7         Los Angeles, California  90025

8         310.861.2470

9         mark@csrlawyers.com

10

11   FOR DEFENDANTS TRACY DEEBS-ELKENANEY P/K/A TRACY WOLFF;

12   ENTANGLED PUBLISHING, LLC; HOLTZBRINCK PUBLISHER, LLC,

13   D/B/A MACMILLAN; UNIVERSAL CITY STUDIOS, LLC:

14        COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP

15        BY:  BENJAMIN HALPERIN, ESQUIRE

16        BY:  CECE COLE, ESQUIRE

17        9454 Wilshire Boulevard, Suite 901

18        Beverly Hills, California  90212

19        310.492.4392

20        bhalperin@cdas.com

21        ccole@cdas.com

22

23

24

25

**Confidential**

```
 1   APPEARANCES (via videoconference):

 2

 3   FOR DEFENDANTS EMILY SYLVAN KIM; PROSPECT

 4   AGENCY, LLC:

 5        KLARIS LAW

 6        BY:  ZACHARY M. PRESS, ESQUIRE

 7        29 Little W 12th Street

 8        New York, New York  10014

 9        917.822.7468

10        zpress@klarislaw.com

11

12   Also present:

13        Kevin Gonzalez, Aptus videographer

14        Trent Baer

15        Lynne Freeman

16        Tracy Deebs

17

18

19

20

21

22

23

24

25
```

**Confidential**

 1  someone in New York book publishing.

 2      Q    And what is your relationship between Walker

 3  and Bloomsbury.

 4      A    So Walker is considered an imprint.  They were

 5  an independent publisher for many years.  And then they

 6  were purchased by Bloomsbury before I started there.

 7  And so they became almost a subsidiary.  I don't know if

 8  that's the correct legal term.  But in book publishing,

 9  they're called an imprint.

10      Q    So you were the editor -- at Bloomsbury -- I'm

11  sorry.

12           At Entangled, you were the editorial director

13  of publishing?

14      A    Yes.

15      Q    Was that your sole title the whole time you

16  were there?

17      A    For many years.  I have now moved into V.P. of

18  operations as well.

19      Q    And what were your job duties as the editorial

20  director?

21      A    At Entangled?

22      Q    Excuse me?

23      A    At Entangled?

24      Q    At Entangled.

25      A    Consider books for acquisition, sit on the

1   acquisition committee for when other editors want to

2   bring in books, fashion the line to what we want it to

3   be.  Consider jacket copy.  Consider cover copy.

4   Present our books to MacMillan, our distributor.  Edit

5   books to completion.  And when I say "edit," I mean as a

6   content editor.  That means I work with authors on

7   story, voice, line edits for consistency and -- and

8   sense.  Changing pacing, changing plotting, things like

9   that.

10          I also worked for Entangled as a copy editor,

11  which is a different role.  That role is solely grammar,

12  spelling, inconsistencies, and like.  So two very

13  different roles there.

14          I would say that pretty much sums up the

15  majority of my role with Entangled.

16      **Q    Is acting as a content editor, is that typical**

17  **for an independent publishing company?**

18          MR. HALPERIN:  Object to the form.

19          THE WITNESS:  Yes.

20  BY MR. PASSIN:

21      **Q    Is that typical for a -- any publishing company**

22  **to have a content editor?**

23          MR. HALPERIN:  Object to the form.

24          THE WITNESS:  Yes, fairly standard.

25  BY MR. PASSIN:

**Confidential**

1    Q    Does that describe basically your role the

2  entire time you were at Entangled?

3    A    To be a content editor, you mean?

4    Q    No.  You just described to me your role as an

5  editorial director.

6        Was that pretty much your entire role as

7  editorial director?

8    A    Pretty much.

9    Q    And how is your role different now as a V.P. of

10  operations?

11    A    It's more helping run the company.  So

12  overseeing budgeting.  Overseeing employees.  And a more

13  business focused side.

14        I am still editing.  But not as frequently as I

15  used to be.

16    Q    Let's go back to Bloomsbury.  Okay.  Can you

17  take me through your various positions there and your

18  roles in those positions.

19        MR. HALPERIN:  Object to the form.

20        THE WITNESS:  As an editorial assistant, I

21  mostly reviewed what we would call in the industry the

22  slush pile.  At this time, the majority of submissions

23  came through the mail.  So it was my job to open the

24  mail, review the mail, see if anything seemed

25  interesting, and share it with my direct reports at the

**Page 25**

1      A     It was a Tempest book.

2      Q     **All right.  And then what about at Entangled?**

3      A     At Entangled, we did a series together for the

4 Brazen line.  It was called the Shaken Dirty series.

5 And I do not recall each individual title.

6      Q     **How many titles were there?**

7      A     Four.

8      Q     **And what other books were published by**

9 **Entangled of Tracy Wolff's?**

10      A     The Crave series.

11      Q     **And how many books have currently been**

12 **published?**

13      A     Seven.  Oh, I'm sorry.  Six.

14      Q     **Six.  So you've actually published closer to 13**

15 **books of Tracy Wolff's.  Is that correct?**

16      A     This is why I'm asking published, because I am

17 an employee of Entangled.  But, as I've said, I'm very

18 peripherally involved in the creative series.  I did not

19 count it in my numbers.

20      Q     **Why do you say you're very peripherally**

21 **involved in the Crave series?**

22      A     Because I was the copy editor, not the content

23 editor.

24      Q     So does that mean that you were not involved at

25 all in creating the story voice -- the story or voice of

Stacy Abrams                                    **Confidential**                        Freeman vs.
                                                                                              Deebs

1            MR. HALPERIN:  No, I didn't have an objection

2    to that one.  But just as a reminder going forward.

3    BY MR. PASSIN:

4        **Q    You said -- you said she was a great person to**

5    **write this series.  What series?**

6        A    The Crave series.

7        **Q    All right.  But it wasn't called the Crave**

8    **series at that time, was it?**

9            MR. HALPERIN:  Object to form.

10            THE WITNESS:  No.  It was just an idea.

11    BY MR. PASSIN:

12        **Q    And what was the idea?**

13            MR. HALPERIN:  Object to form.

14            THE WITNESS:  Young adult paranormal series.

15    BY MR. PASSIN:

16        **Q    Now, would you characterize Emily Kim as a good**

17    **friend?**

18            MR. HALPERIN:  Object to the form.

19            THE WITNESS:  I would consider her a friend but

20    also a colleague.

21    BY MR. PASSIN:

22        **Q    All right.  Do you socialize with her?**

23            MR. HALPERIN:  Object to the form.

24            THE WITNESS:  No.

25

**Confidential**

```
 1    Wolff a lot?

 2            MR. HALPERIN:  Object to the form.

 3            THE WITNESS:  Can you define "a lot."

 4    BY MR. PASSIN:

 5       Q    Over the years, how often have you worked with

 6    Tracy Wolff?

 7       A    Fairly frequently.  I think we've already

 8    covered I've done a lot of books with her.

 9       Q    Would you characterize Tracy Wolff as a friend?

10            MR. HALPERIN:  Object to the form.

11            THE WITNESS:  A friend and a colleague.

12    BY MR. PASSIN:

13       Q    Would you characterize her as a good friend?

14            MR. HALPERIN:  Object to the form.

15            THE WITNESS:  No.

16    BY MR. PASSIN:

17       Q    Do you socialize with her?

18            MR. HALPERIN:  Object to the form.

19            THE WITNESS:  Can you define "socialize."

20    BY MR. PASSIN:

21       Q    I think you know what socialize means.  Go out

22    to dinner, go out to parties, nonwork events.

23       A    No.

24       Q    Do you go out to work dinners or work parties

25    with her?
```

Page 45

1      I, the undersigned, a Certified Shorthand Reporter of

2    the State of California, do hereby certify:

3      That the foregoing proceedings were taken before me

4    at the time and place herein set forth; that any

5    witnesses in the foregoing proceedings, prior to

6    testifying, were duly sworn; that a record of the

7    proceedings was made by me using machine shorthand,

8    which was thereafter transcribed under my direction;

9    that the foregoing transcript is a true record of the

10   testimony given.

11          Further, that if the foregoing pertains to the

12   original transcript of a deposition in a federal case,

13   before completion of the proceedings, review of the

14   transcript ( X ) was (  ) was not requested.

15          I further certify I am neither financially

16   interested in the action nor a relative or employee of

17   any attorney or party to this action.

18          IN WITNESS WHEREOF, I have this date subscribed

19   by name.

20   Dated:  03/17/2023

21

22   _____

23        Margaret A. Smith

24        RPR, CRR, CSR No. 9733

25

**Confidential**

Stacy Abrams

Freeman vs.
Deebs

```
1              DECLARATION UNDER PENALTY OF PERJURY

2     Case Name: Freeman vs. Deebs

3     Date of Deposition: 03/03/2023

4     Job No.: 10115785

5

6              I, STACY ABRAMS, hereby certify

7     under penalty of perjury under the laws of the State of

8     _____ that the foregoing is true and correct.

9              Executed this _____ day of

10    _____, 2023, at _____.

11

12

13                    _____

14                         STACY ABRAMS

15

16    NOTARIZATION (If Required)

17    State of _____

18    County of _____

19    Subscribed and sworn to (or affirmed) before me on

20    this _____ day of _____, 20__,

21    by_____,   proved to me on the

22    basis of satisfactory evidence to be the person

23    who appeared before me.

24    Signature: _____ (Seal)

25
```

**Page 198**