**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LYNNE FREEMAN,<br><br>Plaintiff,<br><br>v.<br><br>TRACEY DEEBS-ELKENANEY P/K/A TRACY WOLFF; et al.,<br><br>Defendants. | Civil Action No.: 1:22-cv-02435-LLS |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE EVIDENCE SUBMITTED WITH PLAINTIFF'S SUMMARY JUDGMENT MOTION**

i

## **TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………………....1

I.  Freeman's indices highlighting similarities between the underlying works do not contravene any rules of evidence…………………………………………………………..2

    A.  The indices are not opinion or expert testimony…………………………………..3
    B.  The indices are not unduly prejudiced to Defendants……………………………..5
    C.  Williams and Walker support this Court's considerations of Freeman's indices……………………………………………………………………………..6
    D.  The indices are not hearsay………………………………………………………..8
    E.  Freeman's indices are admissible under FRE 1006………………………………8

II.  Freeman's expert reports are proper, relevant, and admissible…………………………...9
    A.  Expert testimony is appropriate to assist the factfinder in evaluating substantial similarity of protectable expression………………………………….10
    B.  Expert testimony is appropriate to assist the factfinder in evaluating access / probative similarity, and Defendants' independent creation claims……………………………………………………………………………12

III.  The news article regarding Viswanthan's plagiarism is relevant and admissible……….14

IV.  Conclusion……………………………………………………………………………….15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Scholastic Inc.*,
  739 F. Supp. 2d 642 (S.D.N.Y. 2011) .................................................................................... 7

*Arnstein v. Porter*,
  154 F.2d 464 (2d Cir. 1946) ................................................................................................. 13

*Baker v. Coates*,
  2023 WL 6007610 (S.D.N.Y. July 26, 2023) ........................................................................ 7

*BD ex rel. Jean Doe v. DeBuono*,
  193 F.R.D. 117 (S.D.N.Y. 2000) ........................................................................................... 8

*Boone v. Jackson*,
  2005 WL 1560511 (S.D.N.Y. July 1, 2005) ........................................................................ 13

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
  982 F.2d 693 (2d Cir. 1992) ............................................................................................ 11, 13

*Gaste v. Kaiserman*,
  863 F.2d 1061 (2d Cir. 1988) ............................................................................................... 13

*Hamil Am. Inc. v. GFI*,
  193 F.3d 92 (2d Cir. 1999) ................................................................................................... 11

*Hogan v. DC Comics*,
  48 F. Supp. 3d 298 (S.D.N.Y. 1999) .................................................................................... 11

*Laureyssens v. Idea Grp., Inc.*,
  964 F.2d 131 (2d Cir. 1992) ............................................................................................ 12, 13

*Linde v. Arab Bank, PLC*,
  922 F. Supp. 2d 316 (E.D.N.Y. 2013) .................................................................................... 9

*Lipton v. Nature Co.*,
  71 F.3d 464 (2d Cir. 1995) ................................................................................................... 13

*Lombardi v. Whitehall XII/Hubert St., LLC*,
  2010 WL 742615 (S.D.N.Y. Mar. 3, 2010) ............................................................................ 3

*Mena v. Fox Ent. Grp., Inc.*,
  2012 WL 4741389 (S.D.N.Y. Sept. 29, 2012) ....................................................................... 7

*Montgomery v. Holland*,
  408 F. Supp. 3d 353 (S.D.N.Y. 2019) ............................................................................... 6, 7

*New Old Music Grp., Inc. v. Gottwald*,
  122 F. Supp. 3d 78 (S.D.N.Y. 2015) .................................................................................... 13

*Repp v. Webber*,
  132 F.3d 882 (2d Cir. 1997) ................................................................................................. 13

*Smith v. Jackson*,
  84 F.3d 1213 (9th Cir. 1996) ................................................................................................ 10

*Starobin v. King*,
  137 F. Supp. 2d 93 (N.D.N.Y. 2001) ..................................................................................... 7

*Suntrust Bank v. Houghton Mifflin Co.*,
  268 F.3d 1257 (11th Cir. 2001) ............................................................................................ 10

*Swirsky v. Cary*,
  376 F.3d 841 (9th Cir. 2004) ................................................................................................ 10

*Walker v. Time Life Films, Inc.*,
   784 F.2d 44 (2d Cir. 1986) ............................................................................................. 6, 11, 13
*Williams v. Crichton Knopf, Inc.*,
   84 F.3d 581 (2d Cir. 1996) ............................................................................................... 6, 7, 12

**Rules**

Fed. R. Evid. 701 ....................................................................................................................... 3
Fed. R. Evid. 702 ....................................................................................................................... 9
Fed. R. Evid. 1006 ..................................................................................................................... 8

**INTRODUCTION**

Defendants motion to strike Plaintiff's evidence in support of her Motion for Summary Judgment, including her indices and expert's reports, should be denied.

Defendants first erroneously characterize Freeman's indices as "expert testimony," "opinion testimony," "hearsay," and "inadmissible summaries." But the indices reflect Freeman's personal review of the works and provide a guide to the works similarities. They are not intended to substitute for a review of the underlying works, but instead provide granular and specific factual assertions of copying, with specific page numbers where such similarities can be found precisely so that the Court can see *in the underlying works* where the same plot points, character points, scenes, and other similarities exist. This is precisely the same testimony Freeman will offer at trial, and there is no reason to preclude her from offering it for the Court's consideration now.

Defendants next claim, without any factual support or cogent argument, that Freeman's indices should not be considered because they are inaccurate, irrelevant, prejudicial, or unhelpful. But Defendants have yet to identify any inaccuracies or false representations of the underlying works contained within the indices and the Court would need to review those indices—not summarily reject them—to address the merits of those claims in any event—which is precisely what the court did in every case on which Defendants' misguided argument rests.

Defendants also argue that the testimony of Freeman's third-party experts should be excluded entirely, but expert testimony is certainly relevant to determining what is *scenes a faire* in YA paranormal romance literature, and may be considered in evaluating probative similarity and access even where it is intertwined with substantial similarity. Further, expert testimony in this case is directly relevant to rebut Defendants' independent creation affirmative defense and must be considered on that basis. Freeman's proffered expert does not contravene any established case law and should be considered by this Court.

1

Finally, Defendants contend that the news coverage regarding Kaavya Viswanthan's plagiarism is inadmissible, but the publicly available information about that case demonstrates how plagiarism—and Viswanthan ultimately admitted to having read and been "inspired by" the copied materials—need not be 1:1 but can involve a substantial rewriting that captures the same essence of the protectable expression of the original work. That evidence perfectly exemplifies the mosaic nature of Defendants' infringement and is thus helpful to a factfinder considering the allegations, including those regarding fragmented literal similarity, that are at issue in this case.

**I.     Freeman's indices highlighting similarities between the underlying works do not contravene any rules of evidence.**

Defendants argue that Plaintiff's indices should be stricken as inadmissible opinion testimony, but Plaintiff's indices do not violate any of the Federal Rules of Evidence ("FRE"). Specifically, Freeman's indices are not opinion testimony, hearsay, nor do they contravene any other FRE. And there is no authority so holding that such evidence contravenes the Federal Rules. In fact, it would be improper for this Court to *not* consider Freeman's proffer of the basis for her claims so long as those similarities are in fact found in her BMR work and the *Crave* series—which they are.

The underlying works are, of course, the prevailing consideration in any substantial similarity analysis. Thus, Freeman's indices cite to those works and even present quotes from them so that the Court can easily locate and review the similarities on which Freeman's claim rests. Defendants cite no case holding such "lists of similarities" is inadmissible. Rather, in each case Defendants rely on the court carefully considered the plaintiff's list of claimed similarities and only rejected them upon finding that the claimed similarities either did not establish substantial similarity or were inconsistent with the underlying works themselves.

Freeman's indices are admissible.

### A. The indices are not opinion or expert testimony

Defendants first argue that Freeman's indices violate FRE 701 and 702 because "Freeman was not disclosed as an expert witness under Rule 26(a)(2) and [] she did not provide her opinions in a written expert report as required by that rule." Dkt. 309 at 3. But Defendants point to no specific facts underlying their conclusion that the indices are "expert testimony" and there is no reasonable argument that they are.

As the court explained in *Lombardi v. Whitehall* when rejecting the defendants' claims that the plaintiff was acting as an undisclosed expert in offering testimony and notes regarding similarity between his work and the defendants' work: "there is no reason why plaintiff cannot testify to the similarities between the [works]. Indeed, he is the best person to explain why his [work] is the same as [defendants]." *Lombardi v. Whitehall XII/Hubert St., LLC*, 2010 WL 742615, at *14 (S.D.N.Y. Mar. 3, 2010). Similarly, here, Freeman is the best person to identify the similarities between the works, and her indices merely represent her testimony in that regard.

Defendants alternatively argue that the indices are improper lay opinion testimony, but fail to even identify any factual basis for finding the indices to be "opinion testimony." Freeman's indices do not offer an opinion or conclusion based on the contents. Instead, they merely cite page numbers identifying where Freeman believes similarities between the works can be seen. This is no different than Defendants citing specific portions of the works where they believe there are dissimilarities (which they do throughout their briefs).

And even if considered lay opinion testimony, such testimony would be admissible as it is both helpful to the trier of fact and is not based on any specialized knowledge. Defendants' argument that they are "unhelpful to the factfinder because they are about as long as any of the parties' works themselves" (ECF 309 at 3) is disingenuous because each index focuses on a limited

3

character or topic and is *appreciably* shorter than reviewing the 5,400 or so pages between the works where those similarities exist.[1]

The *Crave* series is approximately 2,600 pages across the first four books. Freeman found—and believes this Court will find—that series to be clearly derivative of her BMR work, both in overall story and in the specific development and interactions of characters and plot points. But the limited subset of Freeman's work that this Court must look at is also well over 2,000 pages and the infringed material was not taken or used in a linear way. Even with the increased page allowances for these motions, the briefing itself is insufficient to fairly identify the similarities between the works without the aid of Freeman's indices. Defendants cannot reasonably dispute that reviewing 569 pages—all of which directly highlights the similarities on which Plaintiffs claim rests—is far more convenient than reviewing the entirety of the underlying works themselves without any suggestion of what Freeman claims to be her protectable work.

The role of the factfinder is to determine whether the underlying works are similar. Freeman would love every juror to read the entirety of the works as she believes Wolff's copying will be clear but, unless those jurors have significant familiarity with young adult paranormal romance literature, Defendants "just compare the works" mantra does not end this inquiry since their defense requires the factfinder to know what genre conventions are in YA literature. While both BMR and *Crave* broadly share the idea of a heroine discovering the supernatural world and her role in it, it is the specific expression of that story which is at issue in this case—e.g., a heroine unaware of her powers because her family binds them with "lemon verbena" tea, the heroine learns

---

[1] For example, the First Voice in Heroine's Head index is only 14-pages which highlight the remarkable similarities between two parallel characters that are found across the four *Crave* books and various Freeman manuscript iterations and notes. While the Court may read both works in their entirety and compare the same facts outlined in Freeman's indices, the indices offer the Court efficiency and expediency in identifying and locating the same.

through a vampire grandmother she did not previously know she had that she is descended from twin goddesses and designed to bring balance to the world, magical tattoos which are spells appear on each heroine and "itch and burn," and each heroine needs to confront the a remarkably similar vampire prince/vampire king. Accordingly, not only are the indices helpful in efficiently comparing the two works, but they also assist in deciphering the similarities related to expression vs. the similarities related to the underlying ideas.

And Freeman's testimony regarding the similarities between the underlying works is necessary to inform the factfinder what similarities her claims are based on. The indices reflect Freeman's testimony that will be offered at trial and are not properly stricken.

### B.  The indices are not unduly prejudicial to Defendants

Defendants argue that the indices should be stricken because Freeman failed to produce them during discovery, and they are somehow prejudiced by this as a result. But Freeman has been identifying the similarities between the works in different forms since the beginning of this case and Defendants have had every opportunity to question her regarding the similarities she believes to exist—or review the works for similarities themselves just as Freeman did—since the beginning of this case. Defendants' argument is akin to objecting to Freeman testifying at trial about documents she produced in discovery because she did not provide them with a transcript of that testimony beforehand. That is not the law.

Relatedly, Defendants complaint that they have not had an opportunity to question Freeman on her methodology of comparing the works, but this complaint makes no sense since ***Freeman is not an expert*** and her indices are not the product of some special or unique "methodology"—rather they merely identify where Freeman read and saw her original characters, scenes, and plot

points mirrored in the *Crave* series. And, again, Defendants had multiple opportunities to question Freeman about where she believed the similarities to be throughout discovery.

### C. Williams and Walker support this Court's considerations of Freeman's indices

Defendants mistakenly argue that the indices are either inadmissible or irrelevant under *Williams* and *Walker*, but those cases confirm that this court must consider Freeman's indices, not categorically reject them.

In *Williams v. Crichton*, the Court considered the plaintiff's specifically identified similarities between *Jurassic Park* and his *Dinosaur World* series and concluded that the plaintiff's mere eight similarities scattered between four *Dinosaur World* books and both the *Jurassic Park* novel and movie constituted nothing more than "random similarities scattered throughout the works" which were insufficient for a colorable claim of substantial similarity. 84 F.3d 581, 591 fn. 3 (2d Cir. 1996). Importantly, the *Williams* court considered Williams's list of similarities and found it <u>insufficient</u> to establish substantial similarity—it did not hold that such lists were inherently irrelevant, unhelpful, or inadmissible.

Similarly, in *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986), the court reviewed the "appellants proffered lists of specific alleged similarities in attempt to prove fragmented literal similarity between the book and the film." *Id*. Once again, the court considered not only the works themselves, but also specific similarities identified in exhibits proffered by plaintiff.

And in *Montgomery v. NBC Television* the court considered the plaintiff's 110-page list of specific similarities, but ultimately found that list insufficient to establish substantial similarity because it contained inaccurate representations regarding the underlying works. *Montgomery v. Holland*, 408 F. Supp. 3d 353, 377 (S.D.N.Y. 2019), *aff'd sub nom. Montgomery v. NBC Television*, 833 F. App'x 361 (2d Cir. 2020). Thus, the court *again* considered the exhibit proffered

6

by plaintiff identifying similarities between the works—as it had to do to determine whether those similarities were in the underlying works.

These cases are consistent with a long line of precedent establishing that the court can, and should, consider a plaintiff's evidence of the similarities in the works at issue. *See e.g., Baker v. Coates*, 2023 WL 6007610, at *17 (S.D.N.Y. July 26, 2023), *report and rec. adopted*, 2023 WL 6289964 (S.D.N.Y. Sept. 27, 2023)("a review of these comparisons—which, presumably, [plaintiff] believes to be the strongest examples of similarity"); *Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 655–56 (S.D.N.Y. 2011)(same); *Mena v. Fox Ent. Grp., Inc.*, 2012 WL 4741389, at *8 (S.D.N.Y. Sept. 29, 2012)(considering several similar scenes identified by plaintiff); *Starobin v. King*, 137 F. Supp. 2d 93, 96 (N.D.N.Y. 2001)(considering "voluminous exhibits [prepared by plaintiff] […] purporting to demonstrate instances of plagiarism[.]"); *Williams*, 84 F.3d at 591 fn 3 (same); *Montgomery*, 408 F. Supp. 3d at 377, *aff'd sub nom. Montgomery*, 833 F. App'x 361 (2d Cir. 2020)(same).

Freeman has not found a single case in which a court has categorically excluded exhibits identifying similarities between the works merely because the defendants objected to them as improper, irrelevant, or inaccurate. Defendants' arguments that Freeman's indices should be categorically stricken must be rejected. Of course, to the extent Freeman's description and citation of the respective works in her indices is unsupported by the underlying works, this Court can and should disregard them. But the same is true of Defendants' memorandum of law which contains only generalized statements of comparison lacking any specific citations throughout their entire brief. *See* Dkt. 298 pp. 7-19.

///

///

### D. The indices are not hearsay

Freeman's indices are also not hearsay. To conclude the indices are hearsay would prohibit Freeman's testimony regarding the basis of her claims completely. And Freeman's indices represent nothing more than a comparison of the works, without making any assertion as to the truth of the matter contained within each statement. Instead, the quotes are taken directly from the underlying works themselves, and whether such quotes are believed to be substantially similar is for the factfinder to determine.

### E. Freeman's indices are admissible under FRE 1006

Defendants further argue that Freeman's indices are inadmissible as "summaries of voluminous evidence under FRE 1006," and Freeman must show that the summaries are "accurate and nonprejudicial." But Freeman's indices merely identify similarities between each of the underlying works, providing direct quotes with page numbers to the underlying works. They are thus not summaries of the works but guides to them.

And even if considered "summaries of the underlying works," Freeman has shown that they are nonprejudicial and accurate. And, even if inaccurate, "[i]naccuracy of summary, under rule permitting contents of voluminous writings or recordings to be presented in form of chart, summary or calculation, goes to weight, rather than admissibility of the evidence." *BD ex rel. Jean Doe v. DeBuono*, 193 F.R.D. 117, 130 (S.D.N.Y. 2000). But once again, Defendants have failed to identify any inaccuracy in Freeman's indices and Freeman has met her burden of showing its accuracy in her citations.

Further, such indices are not prejudicial. As explained above, Defendants have had access to the evidence underlying the indices and have had the opportunity to question Freeman regarding the similarities—which they were fully capable of also identifying themselves by simply reading

8

the work. And Defendants cannot claim such evidence is prejudicial by only containing evidence in support of Freeman's claim. Even where a party submits a favorable summary of evidence, such "summary may include only evidence favoring one party, so long as the witness does not represent to the jury that he is summarizing all the evidence in the case." *Linde v. Arab Bank, PLC*, 922 F. Supp. 2d 316, 333 (E.D.N.Y. 2013). Indeed, "[D]efendant will be able to explore the scope of [Freeman's indices] on cross-examination, present its own summary of the evidence it considers relevant, and direct the [factfinder's] attention to the other evidence in the record." *Id*.

## II. Freeman's expert reports are proper, relevant, and admissible

Defendants argue that the expert testimony offered in support of Freeman's claims should be excluded under FRE 702 and *Daubert*. These arguments should be rejected.

To compare Freeman's BMR work, developed across numerous manuscript drafts and notes, to the first 4 books of the *Crave* series one must review thousands of pages for each body of work. And while the characters, plotlines and many scenes in the *Crave* series are substantially similar to BMR, they are reworked and rearranged across the first four books.[2] Further, one of Defendants' primary defenses is that these similarities are nothing more than tropes, "*scenes a faire*" and genre conventions. To address each of these things, expert testimony is appropriate, if not necessary.

And Defendants' effort to exclude expert testimony are in fact an effort to prevent consideration of the entirety of the works by making it nearly impossible to do so—and to instead

---

[2] For example, addressed further below, the heroine in BMR hears a voice in her head that tells her what to do and gives her warnings. That voice turns out to be a character trapped in his supernatural form in chains by the vampire prince. The heroine is unable to free him but promises to come back for him. She discovers that he is her father and speaks Gaelic, tells her to call him "Athair". This same sequence of events occurs in the *Crave* series, but is distributed between *Crave* (hears voice), *Crush* (discovers trapped supernatural creature in chains), *Covet* (discovers vampire king imprisoned him), and *Court* (he is her grandfather and speaks Gaelic, tells her to call him "Alistair"). This tactic of distributing the same storyline and character development over several books is done throughout the *Crave* series.

9

force the factfinder to limit her analysis to smaller parts of the works due to the difficulty of comparing thousands of pages of material that do not line up 1:1. Because it is critical that the factfinder be able to consider all similarities between the works as efficiently as possible, expert testimony is properly considered in this case.

### A. Expert testimony is appropriate to assist the factfinder in evaluating substantial similarity of protectable expression.

Although there is a dearth of case law in the Second Circuit addressing the use of experts to evaluate a *scenes a faire* defense to claims of infringement, other circuits have made clear that such testimony is proper and admissible. For example, the Ninth Circuit explained in *Swirsky v. Cary*, 376 F.3d 841, 850 (2004), that "[i]t is inappropriate to grant summary judgment on the basis of *scenes a faire* without independent evidence, unless the allegations of *scenes a faire* is uncontested." *See also Smith v. Jackson*, 84 F.3d 1213, 1220 (9th Cir. 1996) ("The district court carefully compared the scenes a faire assertions made by appellees' expert, Dr. Eskelin, to the declaration of appellants' experts, Dr. Argersinger and Dr. Parsons, and granted summary judgment only when the declarations of appellants' experts were silent as to one of Dr. Eskelin's *scenes a faire* conclusions or when appellants' experts agreed with the assessment of Dr. Eskelin").

Plaintiff does not suggest that a court can never evaluate claims of *scenes a faire* without expert testimony—there are certainly archetype characters and stock scenes that ordinary observers understand to be unprotectable. But even in those cases "*scenes a faire* 'at some point cross the line… into [protectable] expression' and are 'protected by copyright' when 'plots become more intricately detailed and characters become more idiosyncratic." *Latele Television, C.A. v. Telemundo Comm. Group*, LLC, 215 WL 427817, *18 (S.D. Fla. 2015) (quoting *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1266 (11th Cir. 2001)). Even where each similarity is of "unoriginal, and therefore unprotectable elements, plaintiffs could still prevail on a claim for

10

copyright infringement if the way in which the two works express these ideas is substantially similar or the elements have been combined in an original way." *Hogan v. DC Comics*, 48 F. Supp. 3d 298, 311 (S.D.N.Y. 1999) (citing *Walker*, 784 F.2d at 50 (*scenes a faire* copyrightable to the extent they are "given unique… expression")).

In *this* case, expert testimony is highly relevant to determining what similarities are shared *scenes a faire* and, to the extent they are, whether the similarities "cross the line into protectable expression." Defendants prefer that this Court just take their word for it that there are no similarities of protectable expression and thus argue that expert testimony is categorically excluded in cases like this. But the Second Circuit has made clear that the general rule against using experts to establish substantial similarity is "not so literal." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 713 (2d Cir. 1992).

Rather, in cases that are highly technical, complicated, or "likely to be somewhat impenetrable by lay observers" expert testimony may be properly considered as part of the substantial similarity analysis. *Id.* This is such a case given the nature of the infringement, the volume of the works, and the intertwined *scenes a faire* issues. The jury (or the Court on this motion) will need to compare works that will take days just to read—after which it may have little basis to know how to even begin a meaningful comparison. This case is thus different from most copyright cases where the initial visual comparison takes from a few minutes to a few hours.

This case requires not only a comparison of "the contested [work's] total concept and overall feel with that of the allegedly infringed work, as instructed by [the court's] 'good eyes and common sense,'" *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 102 (2d Cir. 1999), but also an examination of the "similarities in the theme, setting, characters, time sequence, plot, and pace." *Williams*, 84 F.3d at 589. While a factfinder is certainly capable of reading both works and the YA genre may

11

not be overly technical or complicated, the bounds of *scenes a faire* within it requires analyzing what characters, scenes, and other elements flow from the genre itself instead of the authors creativity. Indeed, Defendants themselves rely on expert testimony to identify which similarities are allegedly *scenes a faire* in YA literature (*see* Cole Declaration. Exhibit AA), although they ultimately fail to provide any analysis regarding what makes them so.[3] It should not be lost on this Court that Defendants found it appropriate to offer that testimony but then object to Plaintiff doing the same.

Expert testimony to help evaluate substantial similarity is appropriate considering the nature of the claims, that they concern voluminous works, and Defendants' *scenes a faire* defense. Ultimately "the two works are to be compared in their entirety ... [and] in making such comparison resort may properly be made to expert analysis...." 3 Nimmer § 13.03[E][2], at 13–62.16.

### B. Expert testimony is appropriate to assist the factfinder in evaluating access / probative similarity, and Defendants' independent creation claims.

The expert testimony offered by Freeman is not only relevant towards a determination of substantial similarity, but towards a determination of probative copying and access.

Expert testimony is plainly admissible for purposes of establishing probative similarity (also referred to as actual copying, striking similarity, or the access prong of infringement). *Laureyssens v. Idea Grp., Inc.*, 964 F.2d 131, 140 (2d Cir. 1992), *as amended* (June 24, 1992) ("Copying may be established either by direct evidence of copying or by indirect evidence, including access to the copyrighted work, similarities that are probative of copying between the works, **and expert testimony**.") *See also*, *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946); *New Old Music Grp., Inc. v. Gottwald*, 122 F. Supp. 3d 78, 85 (S.D.N.Y. 2015) ("Evidence

---

[3] For example, Freeman is unaware of any case concluding as a matter of law that a mixed-race part Black gay friend is either common in YA paranormal romance novels or trope within such genre, yet Defendants conclude that such character is *scenes a faire* or trope with no real support.

admissible on the issue of 'probative similarity' includes expert testimony[.]") (citations omitted); *Altai*, 982 F.2d at 713 ("expert testimony may be used to assist the fact finder in ascertaining whether the defendant had copied any part of the plaintiff's work."); *Laureyssens*, 964 F.2d at 140 (noting that in considering actual copying "dissection and expert testimony ... are proper ...."); *Boone v. Jackson*, 2005 WL 1560511, at *4 (S.D.N.Y. July 1, 2005) ("Proof of actual copying may also include weighing expert testimony.").

Here, the expert testimony offered by Freeman directly addresses whether the similarities between the works are probative of copying—i.e., access. And because the issue of access is "inextricably intertwined with evidence of illicit copying", such expert testimony may also be used to assist in the determination of substantial similarity. *See e.g., Walker v. Time Life Films, Inc.*, 784 F.2d 44 (2d Cir. 1986) (affirming the district courts consideration of expert testimony within the copying analysis, even where there is overlap with the substantial similarity analysis).

Finally, Freeman's experts are admissible to rebut Defendants' claims of independent creation. Freeman's experts establish that "the two works are so strikingly similar […] preclude[ing] the possibility of independent creation[.]" *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997) (considering expert testimony in determine whether the two works were so strikingly similar to preclude the finding of independent creation), citing *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995) (quotation and citation omitted); *see also Gaste v. Kaiserman*, 863 F.2d 1061, 1067–68 (2d Cir. 1988).

For each of the above reasons, Freeman's proffered expert testimony is properly considered by this Court and Defendnts' motion to strike must be denied.

///

///

### III. The news article regarding Viswanthan's plagiarism is relevant and admissible

Defendants argue that Plaintiff's citation to a news article reporting on Kaavya Viswanthan's plagiarism has no probative value and/or is outweighed by the danger of unfair prejudice. Defendants are wrong. The Viswanthan case presents a perfect example of what is alleged in this case—an essentially admitted rewriting of the source work resulted in fragmented literal similarity to the new work—and shows that neither the publishing world nor the academic world find that to be acceptable.

This is, admittedly, not a case of verbatim copying and Defendants have already argued that the works are different, with Crave being written in Wolff's voice notwithstanding similar word choices and expressed ideas. As Professor Reiss explains, this is a case of mosaic plagiarism where the same story regarding the same character is told with many elements simply being moved around and superficially reworked.

These articles about the Viswanthan case may be extremely helpful to the fact finder because they sets out the method of plagiarism employed by Viswanthan, which is remarkably similar to the method of plagiarism used by Defendants here. Whether this method of plagiarism establishes liability under the federal rules is a separate question –a question that will be litigated between the parties whether this article is admitted or not. But the article provides insight into what to look for in this case and Defendants have made no showing of prejudice from this Court considering it.

To be clear, Freeman does not argue that standards employed in that case are the same here—nor does Plaintiff argue that such issue should be litigated. She merely offers the article as an illustration of the type of plagiarism technique used here. Defendants' argument that the inclusion of such article will require the parties to litigate additional issues is incorrect, and if this

14

Court does not find the articles useful it may disregard them. But Defendants' motion to strike should be denied.

## IV.     Conclusion

Defendants obviously do not want to be found liable for misappropriating Freeman's work, and undoubtedly understand that such a finding is less likely if this Court does not review evidence that makes those similarities easy to find and review. But that does not constitute a proper basis for this motion and Defendants have offered no other. Therefore, this motion should be denied.

Respectfully submitted,

Dated: February 7, 2024  
Los Angeles, CA

By:     */s/ Stephen M. Doniger*  
Stephen M. Doniger  
(admitted *pro hac vice*)  
DONIGER / BURROUGHS  
247 Water Street, First Floor  
New York, New York 10038  
(310) 590-1820  
stephen@donigerlawfirm.com

**Reeder McCreary, LLP**  
11766 Wilshire Boulevard, Suite 1470  
Los Angeles, California 90025  
(310) 861-2475

mark@reedermccreary.com