UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYNNE FREEMAN,<br><br>Plaintiff,<br><br>v.<br><br>TRACY DEEBS-ELKENANEY P/K/A TRACY WOLFF, et al.,<br><br>Defendants. | Case No. 1:22-cv-02435-LLS-SN<br><br>**SUPPLEMENTAL DECLARATION OF LYNNE FREEMAN IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE COPYRIGHT CLAIMS AND REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

## SUPPLEMENTAL DECLARATION OF LYNNE FREEMAN

I, Lynne Freeman, hereby declare as follows:

1. I am above eighteen (18) years of age and am competent to give the testimony set forth below. This declaration is given from my own personal knowledge except as otherwise indicated. If called as a witness, I could and would competently testify as follows:

2. I am a licensed attorney in the state of Alaska who has been practicing law for over 28 years.

3. On or about October 27, 2010, I first sent three chapters of BMR to Kim.

4. Kim worked with me on revising the manuscript from the beginning of our relationship in late 2010 through December 2013 or early 2014.

5. Kim claims to have sent the 297-word pitch email regarding BMR to Pelletier at my direction. This is false, she sent it on her own volition as she told me she had a contact at Entangled.

1.

6. Contrary to what Kim states, I sent drafts of BMR to her after July 2013. I sent Kim drafts of *BMR* between July 2013 and approximately June, 2015, including, but not limited to Exs. 15, 16 and 21 to the Freeman Declaration.

7. My last significant substantive revision to my 2014 versions of my manuscript was prior to the termination of my agency relationship with Kim on March 25, 2014. Contrary to Defendants' suggestions, revisions I made after that date to those versions of the manuscript were minor and are not part of what I claim has been infringed.

8. Defendants assert that the created date of the Exhibit 16 to my prior declaration in support of my motion for Summary Judgement (ECF 277)—the version of Blue Moon Rising / Masqued ("BMR") produced with bates numbers LF268941 through LF269332—was created after I stopped working with Kim. Although that is untrue, I did speak with Kim over the phone, email her, and send her at least one version of BMR after she stopped acting as my agent in March of 2014.

9. Ex. 16 is the pdf copy of the manuscript I filed with the U.S. Copyright Office. When registering a work online with the U.S. Copyright Office, you are required to file a pdf version of the work. Defendants note that Ex. 16 appears to have created and modified dates of July 20, 2014 and October 18, 2014, respectively, as set forth in the metadata fields of the Word version of Ex. 16, which is reflected in Ex. Q. to the Cole Declaration. (Cole Decl, ¶19 & Ex. Q).

10. The manuscript reflected in Exhibit 16 was created and sent to Emily Kim ("Kim") prior to the termination of our agency relationship on March 25, 2014. As I testified at my deposition, Kim told me that Stacy Abrams ("Abrams") of Entangled Publishing LLC

2.

("Entangled") liked the 2013 version of BMR that Kim sent her in October 2013, but there were certain changes that had to be made for Abrams to be interested in seeing it again. Kim and I discussed revising the manuscript based on what Abrams told her. I then started revising the manuscript over the 2013 Christmas break to incorporate the changes that Abrams wanted and shortly thereafter (prior to March 25, 2014) sent the manuscript to Kim to submit to Abrams. That manuscript was Exhibit 16.

11. It is my understanding that Kim then gave a copy of Ex. 16 to Abrams. That is also the version that I asked Kim to withdraw from submission to Entangled when I terminated my agency relationship with Kim in March of 2014.

12. I believe the Word version of Exhibit 16 has a July 20, 2014 created date in the metadata field because I saved it using the "save as" command (as opposed to the "save" command) on the computer, apparently on July 20, 2014. The content of that manuscript is what I created in late 2013 and early 2014.

13. I sometimes kept previous versions of *BMR* saving them using the "save" command on my computer and I sometimes saved over them by using the "save as" command on my computer. I did not make significant substantive changes to the Word version of Ex. 16 between the time I sent it to Kim and October 18, 2014, the modified date that appears in the metadata field. Most likely the "created" and "modified" dates reflect me having made some cosmetic changes, such as correcting typographical errors or modifying the format, and "saving as" over the old version. Regardless, the changes I made are not part of what I claim has been infringed by the defendants.

3.

14. I do know the manuscript was created and sent to Kim prior to my terminating my agency relationship with Kim for a couple of reasons. First, I recognize it as the version I revised based on Abrams comments and what Kim told me in late 2013. Second, I recognize it as the version I took with me to the writer's conference a few weeks prior to terminating my agency relationship with Kim in 2014.

15. I also understand that defendants are questioning the created date of the version of BMR produced by me bates numbered LF169398 thorough LF169505 (said manuscript is Ex. 15 to the Freeman Decl. filed in support of my motion for Summary Judgment (ECF 277)). Ex. 15 is the pdf copy of the manuscript filed with the U.S. Copyright Office. Defendants are questioning the created date of Ex. 15 based on the created and modified dates (which are both October 10, 2016) set forth in the metadata fields of the Word version of Ex. 15, which is reflected in Ex. P to the Cole Decl. (Cole Decl., ¶18 & Ex. P). Ex. 15, which is a reworking by me of my 2014 version of BMR that incorporates Egyptian mythology. I created it as a new version in 2015. I was in the process of creating that reworking at the time of an email exchange with Kim between May 29, 2015 and June 1, 2015, and referenced the same in that exchange.

16. Kim sent me an e-mail on May 29, 2015, stating that "[y]ou have been on my mind and I wanted to write and see how things are going with you. I so love your writing and am wishing you all the best!!" A true and correct copy of the e-mail (which is Ex. 88 to the Depo. of Kim) is attached hereto as Exhibit "1." On the same day I write in part, "I've been thinking about you too, as I'm getting ready for the SB Writer's Conference June 7. . . . I've written a new story, using parts of BMR that I loved, and a completely different mythology

4.

SUPPLEMENTAL DECLARATION OF LYNNE FREEMAN IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE COPYRIGHT CLAIMS AND REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

with Egyptian gods…! Not quite done but very close." *Id.* Although I did not mention it in the e-mail, I intended to submit the manuscript to the writers conference.

17. Kim responded by e-mail on June 1, 2015 stating "Sounds intriguing! Please keep me posted! I'd love to read the finished product! And have fun at the conference." *Id.* On June 2, 2015, I reply "Thanks! Will do. I'll be in touch." Shortly thereafter, I completed that reworking. And as I indicated I would, I then provided a copy of the manuscript, which is substantially Ex. 15, to Kim.

18. The reason that the Word version of Ex. 15 has both an October 10, 2016 created and modified date in the metadata fields is because I saved it using the "saved as" command (as opposed to the "save" command) on my computer in 2016. Although I may have made some substantive changes or modifications to that manuscript after sending it to Kim in 2015, the language in Ex. 15 that I allege was infringed by Defendants was in the version I sent to Kim in 2015. I also believe that the majority of the changes I made after sending the manuscript to Kim would have been cosmetic, such as correcting typographical errors or modifying the format.

19. When I was asked at my deposition if I believed that I sent a copy of Ex. 15 to Kim I said yes. When I was pressed on the subject, I said that I did not "recall definitively." However, I only said that because I couldn't recall whether I sent the manuscript to Kim by e-mail or mail. I absolutely recall sending the manuscript to her though.

20. Lastly, Defendants have also questioned the created date of the version of BMR produced by me bates numbered LF169509 through 169892. (said manuscript is Ex. 21 to the Freeman Decl. filed in support of my motion for Summary Judgement (ECF 277)). Defendants are

questioning the created date of Ex. 21 based on the created and modified dates (which are both July 20, 2014) set forth in the metadata fields of the Word version of Ex. 21, which is reflected in Ex. R to the Cole Decl. (Cole Decl., ¶20 & Ex. R).  Ex 21 is the pdf copy of the manuscript filed with the U.S. Copyright Office. Ex. 21 was also created and sent to Kim prior to March 25, 2014. The reason that the word version of Ex. 21 has a July 20, 2014 created and modified date in the metadata fields is because I also saved that manuscript using the "save as" command (as opposed to the "save" command) on my computer apparently, on July 20, 2014. I did not make substantive changes or modifications to that manuscript between the time I sent a copy of the manuscript to Kim and July 20, 2014. Any changes would have been clearly cosmetic, such as correcting typographical errors or modifying the format.

21. I am not aware of any one book that has all or a substantial number of the elements listed in Defendants' Consolidated Local Rule 56.1 Statement of Material Facts ("Def's Rule 56.1 Statement), ¶ 31, other than the Crave series and BMR.

22. The 89 words that appear at the end of *BMR 2013* were not intended to be part of the manuscript.  The quote was merely a note for Kim written at the end of the Manuscript contained within three pages of notes.  The foregoing is evidenced by me writing in italics the word "voiceover" prior to the quote and putting the entire quote in italics.

23. In 2012, I had statutes of gargoyles throughout my writing room and gave pictures of them to Kim on a thumb drive at the 2012 Romance Writers of America conference that took place July 24 through July 28, 2012.

SUPPLEMENTAL DECLARATION OF LYNNE FREEMAN IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE COPYRIGHT CLAIMS AND REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

24. At that 2012 Romance Writers of America Conference Kim introduced Wolff to me outside the hotel where Kim and Wolff were staying. Kim told me that Wolff was an erotica writer, that she was speaking at the conference, that she was very proud of her, and that they were good friends. She introduced her to me as "Tracy Deebs." At Kim's urging, I attended a talk that Wolff gave at the conference on erotic language in books. That same morning, I rode with Kim and her other clients, including Wolff, from the hotel to the conference. During the ride, Kim asked each of her clients to talk about what they were working on or had just completed. I spoke briefly about BMR. During the ride to the conference, I also answered a number of questions asked of me by Kim, such as how I got into writing, how I got the idea for BMR, what made me decide to write a book and when specifically, I began writing the manuscript, as well as questions about living in Alaska, and what made me set my book in Alaska.

25. Kim described BMR on the Prospect website as involving "strong themes of Celtic and Egyptian mythology . . . set against the backdrop of Alaska."  A true and correct copy of the relevant page from the website is attached hereto as Ex. 2.

I declare under penalty of perjury and the laws of the United States of America that the foregoing is true and correct.

      Executed on February 7, 2024 in Santa Barbara, California.

                                        _____
                                          Lynne Freeman