# EXHIBIT 12

```
MCCKFREC
```

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
3   LYNNE FREEMAN,
4                  Plaintiff,
5            v.                             22 CV 2435 (LLS)(SN)
                                            Telephone Conference
6   TRACY DEEBS-ELKENANCY, et al.,
7                  Defendants.
8   ------------------------------x
                                            New York, N.Y.
9                                           December 12, 2022
                                            3:00 p.m.
10
    Before:
11
                      HON. SARAH NETBURN,
12
                                            Magistrate Judge
13
                          APPEARANCES
14
    CSREEDER PC
15       Attorneys for Plaintiff
    BY:  MARK D. PASSIN
16       -and-
17  REITLER KAILAS & ROSENBLATT LLC
    BY:  PAUL LiCALSI
18
    COWEN DEBAETS ABRAHAMS & SHEPPARD LLP
19       Attorneys for Defendants Tracy Deebs-Elkenaney, Entangled
    Publishing LLC, Holtzbrinck Publishers LLC, and Universal City
20  Studios LLC
    BY:  BENJAMIN HALPERIN
21       CeCe COLE
22  KLARIS LAW PLLC
         Attorneys for Defendants Prospect Agency LLC and Emily
23  Sylvan Kim
    BY:  LANCE KOONCE
24       ZACH PRESS
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

1    need to do because it sounds like both sides have differing
2    views on how this case is going to be litigated, but, more
3    importantly, proved at trial.  So, maybe the briefing will help
4    narrow the issues.
5             We were talking about the manuscripts, and then
6    Mr. Passin indicated that, in connection with that, there are
7    other books that you'd like to discuss?
8             MR. PASSIN:  Yes, your Honor.
9             THE COURT:  Why don't you raise that, Mr. Passin?
10            MR. PASSIN:  Look, we also believe that the Defendant
11   Wolff started copying my client's manuscript and using material
12   in earlier books, so we believe we'd like to have some
13   discovery on the earlier books.
14            But besides that, and more importantly, we have claims
15   against the agent and the agency for fraud, deceit, breach of
16   fiduciary duty, fraudulent concealment, and breach of contract
17   for basically taking my client's manuscripts and showing it to
18   Wolff and possibly others so they could copy it.  So, that's
19   not limited to the claimed series.
20            So, by them saying that we can't have discovery on any
21   other books by Wolff or by Entangled to show that they took
22   material from our client's manuscript is depriving us of
23   discovery certainly we'd be entitled to on those other claims I
24   just mentioned, and I think the copyright claim, because at
25   trial, I do intend to show that she started copying gradually,

1  got away with it, started copying a little more, got away with
2  it, and then went for the whole thing in her YA book.
3              THE COURT:  Do you have specific books that you
4  believe are the product of that infringement?
5              MR. PASSIN:  Yes, we do have some, yes.
6              THE COURT:  Which books are those?
7              MR. PASSIN:  Well, I'd have to get my client -- the
8  one I know for sure is *Tempest Rising*, is one.  I think our
9  expert needs to get the rest.
10             THE COURT:  Why didn't you bring *Tempest Rising* as
11 part of this copyright case?
12             MR. PASSIN:  Well, because we're not claiming it's
13 copyright infringement; we're just claiming that they took some
14 material from there.  So it was a gradual process, she started
15 taking some, and then in her later books, she took enough to be
16 copyright infringement.  Plus we are suing because it's a
17 violation of those other causes of action.  I didn't limit it
18 to the *Crave* series.  I said that the agent disclosed her
19 manuscript to Wolff and possibly others for the purposes of
20 copying them and committing copyright infringement.  But I
21 didn't limit it to the *Crave* series.
22             MR. KOONCE:  Your Honor, this is Lance Koonce.
23             I've had trouble following this argument, I will
24 confess.  I think I understand it better today than I have in
25 the letter-writing.

1          But as I understand what Mr. Passin is saying, it's
2     that somehow Prospect Agency thought that -- believed that the
3     manuscripts that Ms. Freeman had provided were so valuable,
4     that they started broadcasting to multiple of their clients,
5     including Ms. Wolff, that, oh, you should borrow some language
6     from these manuscripts, and they weren't enough to add up to
7     any kind of copyright infringement, but that that's a violation
8     of Prospect's fiduciary duty or a breach of contract.
9          There is zero evidence whatsoever in the record for
10    any of this, including with respect to the books that Ms. Wolff
11    eventually wrote many, many years after Ms. Freeman had been an
12    author with Prospect.  Zero evidence.  So the idea that now, as
13    we're hopefully hitting the end of fact discovery, Mr. Passin
14    is identifying new books by not just -- presumably it sounds
15    like not just by Wolff, but books by other authors who were
16    working with Prospect Agency to allege that Prospect was
17    providing that kind of information to them.  He had no
18    evidence, no documentary evidence, whatsoever that anything
19    like that happened with the Wolff books.  So the idea that
20    somehow he now needs discovery of books that aren't part of
21    this case at this point in time and/or were with other authors
22    altogether, and he's saying that, ultimately, if they used
23    them -- I don't even want to sort of give any credence to this
24    hypothetical argument, but just completely hypothetically, if
25    you provided -- if they provided something to some other

1    author, which they didn't, he's not even alleging a legal claim
2    that that resulted in.
3            I guess he's saying that that would be somehow breach
4    of fiduciary duty, I don't know.  I'm baffled by this, but all
5    I know is it seems like an attempt to expand discovery further
6    in this case to other things that were not part of his
7    complaint to begin with.
8            MR. PASSIN:  Your Honor, it's Mark Passin.
9            We'll limit it to the Wolff books.
10           THE COURT:  Well, Mr. Passin, the thrust of your
11   letters to me have been that discovery is burdensome, that
12   you're a solo practitioner, that you can't take on all the work
13   here and are feeling snowballed by the defendants.  I don't
14   understand how you intend to take on this additional burden of
15   looking at all other books, where you haven't alleged any
16   specific facts about misconduct or breaches of any duties with
17   respect to any other books.  And discovery is not an
18   opportunity to go searching for a claim.  If you don't have a
19   basis when you file your complaint, I'm not going to allow you
20   to go rummaging through other books and all of the process that
21   goes into publishing a book in order to try to locate a claim
22   that you haven't pled yet.
23           MR. PASSIN:  Your Honor, but I did make the claim on
24   the breach of fiduciary duty and all those claims.  How about
25   if I show you some evidence?  I have evidence.

1          THE COURT:  All right.  On the record before me, I'm
2    going to deny any written discovery into the other books than
3    the *Crave* series at issue in this case.
4          Mr. Passin, if you want to ask Ms. Kim or somebody
5    else questions that relate to possible breaches of fiduciary
6    duty beyond the *Crave* series at her deposition, you can ask
7    those questions, and based on those answers, you may be able to
8    come back to me and ask for additional discovery, but on the
9    record before me now, I'm going to deny that request.
10         MR. PASSIN:  Okay, your Honor.  Thank you.
11         THE COURT:  Let's turn to the issue of the plaintiff's
12   document production.
13         I understand from the defendants that there is a
14   concern that the plaintiff herself has searched for responsive
15   documents and produced what she believes is responsive, rather
16   than either having some sort of search term protocol and/or
17   having counsel go through the documents.
18         So, Mr. Passin, why don't I begin with you, and you
19   can tell me how you've collected the documents that are
20   responsive to the defendants' demands.
21         MR. PASSIN:  With respect to the emails, we hired an
22   i-discovery company, and they uploaded her entire computer and
23   did the search.  The only thing they're complaining about is,
24   on her computer, she had manuscripts and notes, and those, she
25   gathered from me, we didn't do a search of her computer, but