UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LYNNE FREEMAN,

Plaintiff,

v.

TRACY DEEBS-ELKENANEY P/K/A TRACY WOLFF, et al.,

Defendants.

Case No. 1:22-cv-02435-LLS-SN

**DECLARATION OF CAROLE CHASKI IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# DECLARATION OF CAROLE CHASKI

I, Carole Chaski, hereby declare as follows:

1. I am above eighteen (18) years of age and am competent to give the testimony set forth below. Said testimony is given from my own personal knowledge except where otherwise indicated. If called as a witness, I could and would competently testify as set forth below.

2. I have been retained as an expert witness in this case and provided an expert report in May of last year which detailed (1) my background and qualifications in the fields of syntax, language change, and computational linguistics, (2) the analysis I performed in this case and the methodology underlying that analysis, and (3) the conclusions I reached, including the conclusion that "statistically speaking, it is virtually impossible that the two works could have been independently created."

3. I am advised that a copy of my report has been lodged with the Court as part of Freeman's motion for summary judgment and appears on the Court's docket as ECF 279-35.

4. I have been asked by Ms. Freeman's counsel whether it would make any difference to my findings if the 2014 and 2016 BMR manuscripts were excluded from my lexical cluster analysis. In order

to answer that question I ran the same keyword lexical cluster analysis on the 2010-2013 BMR manuscripts only (i.e., I left the 2014 and 2016 manuscripts out of that analysis). The results were in line with the original analysis, demonstrating that the lexical overlap around 35 keywords between the Freeman manuscripts 2010-2013 and the Wolff books is very high—a striking similarity between those works, and strikingly different from baseline novels in the same genre. In fact, the probability that Wolff would consistently have a higher overlap rate than any of the baseline novelists in 34 of 35 keywords is 0.000000000029, or extremely, extremely unlikely to happen merely by chance.

5. I also ran the same analysis with *only* the 2014 Freeman manuscript, and again, the results were in line with the original analysis, demonstrating that the lexical overlap around 34 keywords between the Freeman manuscript 2014 and the Wolff books is very high, again showing striking similarity, and strikingly different from baseline novels in the same genre. In fact, the probability that Wolff would consistently have a higher overlap rate than any of the baseline novelists in 32 of 34 keywords is 0.000000033, or extremely, extremely unlikely to happen merely by chance.

6. Finally, I used Freeman manuscript 2016. Even though the set of 22 keywords is smaller than in the previous analyses, the 22 keywords show that, once again, the results are in line with the original analysis, demonstrating that the lexical overlap between the Freeman manuscript 2016 and the Wolff books is very high, showing striking similarity, and strikingly different from baseline novels in the same genre. In fact, the probability that Wolff would consistently have a higher overlap rate than any of the baseline novelists in 19 of 22 keywords is 0.0004, or extremely unlikely to happen merely by chance.

7. Attached to this Declaration as Exhibit "1" is a summary of my running the keyword lexical cluster analysis on LF2010-2013, LF2014 and LF2016. This summary includes the same kind of chart I put in my original report, and then explains the results using standard deviation, binomial probability and the document vector cosine similarity score.

8. Attached as Exhibits "2" through "7" are the appendices that have the print out from ALIAS for

DECLARATION OF CAROLE CHASKI IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

each of these analyses, including both the standard deviations in one report and the cosine similarity scores in the other report (so there are six reports, two for each analysis).

9. Finally, I want to correct a possible confusion that is contained in my May 10, 2023 report. On pages 15 and 16 of my report I included a table setting forth the documents that I received for examination in this case. I counted prologues and epilogues as chapters whenever they occurred in any of the books I analyzed. At the top of page 16 I listed the number of chapters for the 2014 and 2016 versions as 50 and 12 respectively. I counted the prologue "Tarot" as a chapter, so that adds 1 to the chapters that are named with "chapter" and number. There are 49 chapters named "Chapter" and number, and one chapter named "Tarot" for a total of 50 chapters in the 2014 version and there are 11 chapters named "Chapter" and number, and one chapter named "Tarot" for a total of 12 chapters in the 2016 version.

10. I also apologize for the typing errors in the original report.

11. However, neither the chapter counting nor the typing errors affect in any way the linguistic and statistical analysis that demonstrates the striking similarity between the Freeman Manuscripts and the Wolff Crave series, due to lexical overlaps in the linguistic expression of the books that are far higher than any overlap with the baseline novels and cannot be explained by mere chance or generic trope.

I declare under penalty of perjury and the laws of the United States of America that the foregoing is true and correct.

      Executed on February 7, 2024 in Los Angeles, California.

By: *Carole E. Chaski PhD*
    Carole E. Chaski, Ph.D.
    Declarant

DECLARATION OF CAROLE CHASKI IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT