## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

LYNNE FREEMAN,

               Plaintiff,

vs.

TRACY DEEBS-ELKENANEY P/K/A
TRACY WOLFF, et al.,

               Defendants.

Case No.:  1:22-cv-02435-LLS-SN

---

### DEFENDANTS' REPLY IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT ON COPYRIGHT CLAIMS

Nancy E. Wolff
Benjamin S. Halperin
CeCe M. Cole
COWAN, DEBAETS, ABRAHAMS,
& SHEPPARD, LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Telephone: (212) 974-7474
Fax: (212) 974-8474

*Attorneys for Defendants Tracy Deebs-
Elkenaney p/k/a Tracy Wolff, Entangled
Publishing, LLC, Holtzbrinck Publishers,
LLC d/b/a Macmillan, and Universal City
Studios LLC*

Lacy H. Koonce, III
KLARIS LAW PLLC
430 West 14th Street
New York, NY 10014
Phone: (917) 612-5861
lance.koonce@klarislaw.com

*Attorneys for Defendants Emily Sylvan
Kim and Prospect Agency, LLC*

Dwayne K. Goetzel
Texas State Bar No. 08059500
KOWERT, HOOD, MUNYON, RANKIN &
GOETZEL, P.C.
1120 S. Capital of Texas Hwy.
Building 2, Suite 300
Austin, Texas 78746
Telephone: (512) 853-8800
Facsimile: (512) 853-8801

*Attorneys for Defendant Tracy
Deebs-Elkenaney p/k/a Tracy Wolff*

**TABLE OF CONTENTS**

ARGUMENT ............................................................................................................. 1

I.   PLAINTIFF FAILS TO DEFEAT THE LACK OF SUBSTANTIAL SIMILARITY ............ 1

   A. Plaintiff's Various Extraneous Submissions Are Irrelevant. ....................................... 1

      1.   Plaintiff's Self-Serving Descriptions Of The Works Are Inapposite. ................... 1

      2.   Plaintiff May Not Aggregate Multiple *BMR* Drafts. ............................................... 5

      3.   Plaintiff's Expert Opinions Are Irrelevant And Inadmissible. .............................. 8

   B. Plaintiff Does Not Refute That The Works Are Not Substantially Similar In Total
      Concept And Feel, Plot, Characters, Settings, Themes, Or Pace.................................. 9

   C. Plaintiff's "Recasting" Of Ideas Theory And Other Alternative Theories Fail. .......... 14

II.  PLAINTIFF FAILS TO DEMONSTRATE A TRIABLE ISSUE ON ACCESS................... 17

III. PLAINTIFF FAILS TO REFUTE INDEPENDENT CREATION. ....................................... 19

CONCLUSION ............................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Abdin v. CBS Broad. Inc.*,
 971 F.3d 57 (2d Cir. 2020) ................................................................. 2, 10

*Allen v. Scholastic Inc.*,
 739 F. Supp. 2d 642 (S.D.N.Y. 2011) ...................................................... 11

*Amanze v. Adeyemi*,
 2019 WL 2866071 (S.D.N.Y. July 3, 2019)
 *aff'd*, 824 F. App'x 86 (2d Cir. 2020) ...................................................... 11

*Baez v. Delta Airlines, Inc.*,
 2013 WL 5272935 (S.D.N.Y. Sept. 18, 2013) ........................................... 19

*Baker v. Coates*,
 2023 WL 6007610 (S.D.N.Y. July 26, 2023) ............................................ 11

*Blakeman v. The Walt Disney Co.*,
 613 F. Supp. 2d 288 (E.D.N.Y. 2009) ...................................................... 10

*Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*,
 150 F.3d 132 (2d Cir. 1998) ...................................................................... 7

*Craft v. Kobler*,
 667 F. Supp. 120 (S.D.N.Y. 1987) ............................................................. 7

*Dean v. Cameron*,
 53 F. Supp. 3d 641 (S.D.N.Y. 2014) .......................................................... 7

*Del Villar v. Hyatt Hotel Corp.*,
 2022 WL 2316205 (S.D.N.Y. June 28, 2022) ........................................... 19

*Dellar v. Samuel Goldwyn, Inc.*,
 150 F.2d 612 (2d Cir. 1945) .................................................................... 16

*Dreamtitle Publ'g, LLC v. Penguin Random House LLC*,
 2023 WL 4350734 (S.D.N.Y. July 5, 2023) ............................................. 15

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
 602 F.3d 57 (2d Cir. 2010) ................................................................ 11, 12

*Hogan v. DC Comics*,
 48 F. Supp. 2d 298 (S.D.N.Y. 1999) .................................................. 12, 15

*Hord v. Jackson*,
   281 F. Supp. 3d 417 (S.D.N.Y. 2017) .................................................................... 2

*Jorgensen v. Careers BMG Music Pub.*,
   2002 WL 1492123 (S.D.N.Y. July 11, 2002) ...................................................... 19

*Lewinson v. Henry Holt & Co., LLC*,
   659 F. Supp. 2d 547 (S.D.N.Y. 2009) ........................................................... 10, 14

*Montgomery v. Holland*,
   408 F. Supp. 3d 353 (S.D.N.Y. 2019) .................................................................. 2

*Mowry v. Viacom Int'l, Inc.*,
   2005 WL 1793773 (S.D.N.Y. July 29, 2005) ...................................................... 17

*Porto v. Guirgis*,
   659 F. Supp. 2d 597 (S.D.N.Y. 2009) .................................................................. 3

*Structured Asset Sales, LLC v. Sheeran*,
   632 F. Supp. 3d 192 (S.D.N.Y. 2022) ................................................................ 15

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*,
   338 F.3d 127 (2d Cir. 2003) ......................................................................... 11, 12

*United States v. Spallone*,
   399 F.3d 415 (2d Cir. 2005) ................................................................................ 6

*Wainwright Sec. Inc. v. Wall St. Transcript Corp.*,
   558 F.2d 91 (2d Cir. 1977) .................................................................................. 7

*Walker v. Time Life Films, Inc.*,
   615 F. Supp. 430 (S.D.N.Y. 1985) ...................................................................... 5

*Walker v. Time Life Films, Inc.*,
   784 F.2d 44 (2d Cir. 1986) ............................................................................ 2, 13

*Walkie Check Prods., LLC v. ViacomCBS Inc.*,
   2022 WL 2306943 (S.D.N.Y. June 27, 2022) ..................................................... 11

*Walkie Check Prods., LLC v. ViacomCBS Inc.*,
   2023 WL 5154416 (S.D.N.Y. Aug. 10, 2023) ....................................... 2, 3, 10, 11

*Warner Bros. Inc. v. Am. Broad. Cos., Inc.*,
   720 F.2d 231 (2d Cir. 1983) ......................................................................... 10, 13

*Warner v. Amazon.com, Inc.*,
   2023 WL 6317954 (S.D.N.Y. Sept. 28, 2023) ...................................................... 2

*Well-Made Toy Mfg. Corp v. Goffa Int'l Corp.*,
    354 F.3d 112 (2d Cir. 2003)............................................................................................ 16

*Williams v. Crichton*,
    84 F.3d 581 (2d Cir. 1996)...................................................................................... passim

*Zalewski v. Cicero Builder Dev., Inc.*,
    754 F.3d 95 (2d Cir. 2014)........................................................................................... 15

**Statutes**

17 U.S.C. § 102.................................................................................................................. 14

iv

Plaintiff's copyright opposition/reply brief ("O/R," ECF 340) fails to refute that the parties' novels are not remotely substantially similar, which alone requires summary judgment for Defendants.[1] Without a hint of irony, Plaintiff argues that "Defendants … are desperate for this Court to not look at the underlying works" (O/R at 1), when it is ***Plaintiff*** who has pursued extreme delay tactics and proffered outrageous amounts of irrelevant secondary materials in an effort to avoid comparing the parties' works themselves. These tactics—part of a larger strategy to flood the Court with paper hoping it will "throw its hands up" and allow the case to move forward— only show that Plaintiff cannot prevail when the works themselves are considered. It is time to put a stop to the games. Defendants have a right to have this case decided based on the novels the parties actually wrote rather than Plaintiff's misleading descriptions of them. The Court should review the "underlying works" now and will swiftly see that Plaintiff's claims are not only meritless, but shockingly unreasonable.

## ARGUMENT

## I.   PLAINTIFF FAILS TO DEFEAT THE LACK OF SUBSTANTIAL SIMILARITY.

### A.   Plaintiff's Various Extraneous Submissions Are Irrelevant.

#### 1.   Plaintiff's Self-Serving Descriptions Of The Works Are Inapposite.

Second Circuit law is clear that substantial similarity must be decided based on the "works themselves," not any party's self-serving descriptions of them. *Williams*, 84 F.3d at 583, 590-91. *Williams* rejected an attempt to rely on "list[s] [of] random similarities scattered throughout the works," which are "inherently subjective and unreliable" and "cannot support a finding of

---

[1] This brief uses the same defined terms as in Defendants' opening brief ("Copyright Br.," ECF 298) and *Daubert* brief ("*Daubert* Br.," ECF 321). Plaintiff's opening brief (ECF 284) is "Pl.'s SJ Br." Defendants' Rule 56.1 Statement (ECF 299) is "DSUF"; Plaintiff's response to the DSUF (ECF 330 ¶¶ 1-153) is "Pl.'s CSUF" and her improper supplemental SUF (*id.* ¶¶ 154-794) is "ASUF." *BMR 2011* and *2013* were filed as ECF 301–1-2 and the four Crave books were filed as ECF 300–1-4 (and sent to the Court in hard copies). Internal citations are omitted from, and emphasis added to, all citations herein, and short form citations are used for cases cited in the parties' prior papers.

substantial similarity" as a matter of law. *Id.* at 590-91. *Walker* held that "the works themselves, not descriptions or impressions of them, are the real test for claims of infringement" and that "comparison of secondary or descriptive materials cannot prove substantial similarity under the copyright laws." 784 F.2d at 51-52. (*See* Copyright Br. at 22-23, 38 & n.17 (collecting cases ruling based on works themselves).) Your Honor has recognized that the analysis "require[s] a 'detailed examination of the *work[s] themselves*.'" (Manuscripts Order at 3.) The Second Circuit continues to reiterate the need to conduct an "independent comparison of the works." *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 69 (2d Cir. 2020); *see also, e.g.*, *Walkie Check Prods., LLC v. ViacomCBS Inc.*, 2023 WL 5154416, at *3 n.4 (S.D.N.Y. Aug. 10, 2023) (rejecting similarity claims in SUF because "[q]uestions about the similarity of the works are legal questions" for the Court and "the parties' competing characterizations of the materials do not create a genuine dispute of material fact").

Plaintiff's argument that *Williams*, *Walker*, and the myriad cases applying them somehow ***require*** the Court to rely on her extraneous submissions (O/R at 7-8) has it backwards. Instead, under *Williams*, "District Courts are directed ***to ignore*** lists provided by Plaintiffs of purported similarities between two works." *Warner v. Amazon.com, Inc.*, 2023 WL 6317954, at *9 (S.D.N.Y. Sept. 28, 2023); *Hord v. Jackson*, 281 F. Supp. 3d 417, 425 n.6 (S.D.N.Y. 2017) (same). Plaintiff has yet to identify any case deciding substantial similarity without an objective review of the works themselves; instead, her own authority overwhelmingly shows that courts decide substantial similarity based on the actual works and reject parties' self-serving claims about them.[2]

Plaintiff then argues that similarity lists should control unless they "contain[] only a small handful of isolated similarities" or "list[] similarities that do not actually exist." (O/R at 8.) But the

---

[2] This includes both *Williams* and *Montgomery* (O/R at 7-8), where "[r]eview of Plaintiff's list show[ed] that nearly every instance of similarity alleged by Plaintiff either concerns an unprotectable element, or to 'an ordinary observer' would not appear to be a similarity at all." 408 F. Supp. 3d at 377.

volume of Plaintiff's extraneous submissions proves nothing. Anybody with enough time can pick through novels, assemble lists of unprotected ideas and trivialities, and try to portray them as similarities through cherry picking and misrepresentation.[3] As shown below, asserting "isolated similarities" and "list[ing] similarities that do not actually exist" is ***exactly*** what Plaintiff does.

Plaintiff now relies on her improper and untimely ASUF to assert the same similarity claims initially presented in Freeman's inadmissible indexes.[4] Plaintiff intentionally uses her ASUF as a buffer to make it difficult to trace her claims back to actual content from the actual works, and the Court should bypass all of this by simply reading and comparing the works themselves. While the Court need not consider the ASUF, Freeman's indexes, or Plaintiff's reiteration of them in her brief at all, if the Court tests Plaintiff's similarity claims, it will quickly see that they overwhelmingly raise unprotected elements and distort the works. *See, e.g.*, *Porto v. Guirgis*, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009) (finding claims objectively unreasonable where "[a]ll of the similarities alleged by the plaintiff are unprotectible elements of [her] novel that must necessarily be excluded from a substantial similarity analysis"). Here are just several examples of how Plaintiff distorts and cherry picks from the works to falsely assert similarity:

- Plaintiff continues to point out that each heroine is "from San Diego" or "California." (O/R at 15, 18, 38.) Grace being from and missing San Diego (where Wolff grew up and also featured in *Tempest*) is a pervasive plot point in Crave, whereas San Diego/California are mentioned only once in passing in *BMR*. (*Compare BMR 2011* p. 124 *and BMR 2013* p. 14 *with, e.g.*, *Crave* pp. 6, 83, 157, 351, 519.)

- In her self-serving character comparison, Plaintiff claims that both heroines are a "mix of a witch" and "can shift forms." (O/R at 19.) But Grace is not a witch at all and Anna

---

[3] This is especially true as to YA novels, which contain formulaic plot elements (such as a heroine who believes she's normal but is revealed to be special) and reuse common genre tropes (such as "dangerous romance"). (*See* Easton Rep. (ECF 300-27) §§ III, VI.)

[4] The ASUF should be stricken because: (1) it is irrelevant, *see, e.g.*, *Walkie*, 2023 WL 5154416, at *3, n.4; (2) the vast majority of it was simply ported over from Freeman's inadmissible indexes; and (3) it violates the Court's Scheduling Orders and Local Rule 56.1. (Defs.' Supp. Evid. Br. (concurrently filed) § I.)

cannot shift forms—in the scene Plaintiff references, Anna asks Ash how **he** shapeshifts. (*Compare BMR 2011* p. 459 *with, e.g., Crush* p. 297.)

- Plaintiff later claims that "special tea" is used in each work to "bind [the heroines'] powers." (O/R at 20.) Plaintiff's main support for this occurring in *BMR* is a two-page set of Freeman's notes that contains no copyrightable expression and does not mention tea at all. (ASUF ¶ 392 (citing Freeman's "Midnight Overview Notes," ECF 277-3).)

- Plaintiff claims that Ash and Jaxon have "dark hair," are "lean and muscled" and "tall," have "conflicting feelings for the heroine," and dress in "black jeans and a t-shirt" and "designer clothes." (O/R at 20-21.) None of this is copyrightable, all of it is expected in YA fiction featuring teenaged boys, and all of it is expressed differently. (*See* Easton App'x (ECF 301–7-10) pp. 39-57 (Ash/Jaxon introduction scenes side by side).)

- Plaintiff claims without citation that Ash and Jaxon both "lose[] self-control during their first kiss." (*Id.* at 21.) But in the scenes themselves, Ash's eyes only briefly glow (no indication of losing self-control), whereas Jaxon is so overcome with passion that he literally causes an earthquake that injures Grace. (*Compare BMR 2011* pp. 167-183 *with Crave* pp. 260-319; *see also* Easton App'x pp. 58-76 (kiss scenes side by side).)

- Plaintiff claims that Ronan and Hudson are "parallel characters" (O/R at 22), ignoring that Ronan is Anna's stalker, not lover (she meets him only briefly at the end of *BMR* and is more scared/puzzled by him than anything), whereas Grace and Hudson's deep and evolving love is among the most central Crave series plots. (*Compare BMR 2011* pp. 590-603 and *BMR 2013* pp. 446-467 *with Crush, Covet, Court*.)

- As just one of many misleading scene comparisons, Plaintiff points to scenes where "[t]he heroine is injured by being attacked by a demon/falling out of a tree." (O/R at 31.) Being "attacked by a demon" and "falling out of a tree" are facially different, and these scenes themselves are nothing alike. (*Compare BMR 2011* pp. 397-406 and *BMR 2013* pp. 303-317 *with Crave* pp. 148-160.)

- Plaintiff argues that magical boarding school Katmere Academy is similar to a "French castle" in *BMR* (O/R at 36-37), misrepresenting that the building in *BMR* is Ash's private home, and is referred to as neither a "castle" nor "French." (*BMR 2011* p. 412.)[5]

---

[5] Numerous other distortions are spread throughout the ASUF. As just a few, the ASUF claims that: (1) "[t]he heroine lives/landed in Anchorage" (ASUF ¶ 154), when Grace lands in Fairbanks, not Anchorage (*Crave* p. 1), and "living" somewhere full time and "landing" there on travel are very different; (2) "[t]he heroine describes vampires as 'vamps'" (ASUF ¶ 246), when only Grace's cousin ever uses the word "vamp" (*Crave* p. 314); (3) Julian and Lia "admits [sic] to killing the heroine's family members" (ASUF ¶ 265), ignoring that Anna's parents are **alive** (she lives with her mother and her father is in another dimension) (*BMR 2011* pp. 546-547); (4) the "[h]eroine calls her teacher Lord Viking" (ASUF ¶ 782 (citing *BMR* 2011 p. 419)), when Grace never does that, as shown by Plaintiff's lack of Crave cite; and (5) Anna and Grace have "panic attacks" (ASUF ¶¶ 456-467), when Anna never has a true panic attack. Anna's general feelings of anxiety (*e.g., BMR 2011* pp. 524, 586) are in no way similar to Grace's full-blown panic attacks (*e.g., Crave* p. 15, *Crush* p. 14, *Covet* pp. 25-27, *Court* pp. 324-326).

The above alone demonstrates that Plaintiff's brief/ASUF/indexes are unreliable and easily refuted. Defendants could continue and refute every similarity claim, but it would be a tremendous waste of resources to do this when the works themselves should simply be read and compared "as a whole," as required by the Second Circuit. *Williams*, 84 F.3d at 590-91."[6]

Finally, Plaintiff fails to refute that her own Tempest List—asserting the exact same sort of similarities as to a Wolff book written ***before the Freeman-Kim relationship began***—proves that Freeman's indexes and all claims based on them are inapposite. (Copyright Br. at 41-42.) The Court has already found that *Tempest* was written by June 2010 (Hard Drives Order at 4-5), and this is further confirmed by Easton's unchallenged testimony of her involvement in its publication (Easton Rep. at 3).[7] Plaintiff now claims insufficient discovery into *Tempest* (O/R at 45), but the time to raise discovery issues or object to Your Honor's Hard Drives Order has long since passed. Regardless, Plaintiff's own Tempest List requires no discovery, since Plaintiff herself created it using the same untrustworthy process used for her indexes and all claims now based on them. Her failure to substantively address the Tempest List defeats reliance on any of her similarity lists.

In sum, the Court should review the works themselves and disregard Plaintiff's various self-serving descriptions of them, no matter how they are presented.

### 2. Plaintiff May Not Aggregate Multiple *BMR* Drafts.

Defendants showed that adjudicating substantial similarity requires directly comparing the Crave books to *BMR 2011* and *2013*, not to "an amalgam of bits and pieces of [Freeman's] work in progress." (Manuscripts Order at 3; Copyright Br. at 44-46.) Plaintiff continues to argue that the

---

[6] *Accord Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 435 (S.D.N.Y. 1985), *aff'd*, 784 F.2d 44 (2d Cir. 1986) (finding it "unnecessary to discuss every alleged similarity" when "a brief discussion of the salient portions of plaintiff's argument is illustrative and sufficient").

[7] Plaintiff continues to dispute the *Tempest* creation date with the same speculative innuendo (e.g., the Ducati motorcycle) that the Court rejected in its Hard Drives Order. (*See* Pl.'s CSUF ¶ 26; Supp. Evid. Br. at 13-14.)

CMO undoes all prior Orders and applicable caselaw, permitting her to proffer bits and pieces of different *BMR* versions rather than any complete draft (O/R at 3-5)—all for the improper purpose of comparing scattered trivialities rather than the works as a whole. But the CMO does not bear Plaintiff's expansive interpretation, and the fact that Plaintiff advances this untenable aggregation theory only shows that her claims cannot withstand a direct comparison.[8]

While the CMO does state that comparing the Crave books to *BMR 2011* and *2013* is "'a fair place to start'" (O/R at 3), it also states that the Court will first compare Crave "against two of the final manuscripts embodying plaintiff's drafts" and ***will not*** "sift[] through thirty iterations" of *BMR* (CMO at 1).[9] Nothing in the CMO or any caselaw permits comparing the Crave books to a sentence from one *BMR* version, a scene from another, a description of a character from another, and so on. To the contrary, the analysis "consider[s] [whether] the works ***as a whole*** [are] substantially similar to one another." *Williams*, 84 F.3d at 590-91. "[S]ifting through" multiple iterations of *BMR* is exactly what the CMO says not to do. (CMO at 1.)

To the extent the CMO is ambiguous, it should be interpreted narrowly and consistent with applicable copyright law. *Cf. United States v. Spallone*, 399 F.3d 415, 421 (2d Cir. 2005) ("[W]here an order or judgment is unclear, a court retains inherent authority to interpret ambiguities."). And to the extent aggregation is revisited (*see* CMO at 2 n.1), it should be rejected for all the reasons the Court previously recognized. (Manuscripts Order at 3; Manuscripts Affirmance at 3.) All courts to address the issue have rejected aggregating drafts of the same

---

[8] Plaintiff fails to refute that the CMO did not "vacate" or "overrule" the Court's prior orders requiring a direct one-to-one comparison between the Crave books and *BMR 2011/2013*, nor did it "grant" or "grant in part" Plaintiff's motion to reconsider those orders. (Copyright Br. 44-45.) Plaintiff seeks a sweeping reversal of the prior Orders, when a "clarifying memo endorsement" is not equivalent to a vacatur.

[9] These statements apply to the Court's substantial similarity analysis, not merely initial claims evaluation or discovery. (*See* CMO at 1 (explaining this is "to determine in a preliminary degree 'whether a lay observer would consider the works as a whole substantially similar to one another,'" which is the Court's task at summary judgment).)

underlying work. *See, e.g.*, *Dean*, 53 F. Supp. 3d at 647 (cited in Manuscripts Affirmance at 3) ("[A] court must not 'aggregate' a plaintiff's work but must consider each allegedly infringed work independently.").[10] Plaintiff's reliance on *Castle Rock* (O/R at 4-5) is misplaced because that case concerned a quiz book that drew from multiple ***independent*** episodes of Seinfeld, not various draft versions of the same underlying work. *See* 150 F.3d at 137-39. The Crave series is not a quiz book or factual guide to *BMR*. And no authority allows a plaintiff to aggregate unprotected ideas and trivialities at all, let alone from multiple drafts of the same work.

To be clear, no version of *BMR* is substantially similar to Crave, no matter how many are considered. The Court will see this for itself when it reads *BMR 2011* and *2013*, which are the two versions Plaintiff selected as the best evidence of her claims. Plaintiff still fails to articulate what makes the additional versions ***unlike BMR 2011/2013*** such that a factfinder could find any of them ***more similar*** to Crave. (Copyright Br. at 46.) Instead, she admits that all the various versions are "a single story that has some revisions here and there." (6/2/23 Hr'g Tr. (ECF No. 222) 30:18-31:6.) It is already generous to consider two *BMR* drafts rather than a single final draft as is typical in copyright cases, and there is no good reason to expend resources adjudicating other versions when Plaintiff concedes they are all essentially the same.

Aggregating Plaintiff's manuscripts would also be prejudicial because no reasonable jury could find adequate access to them. (*See* Manuscripts Order at 3 ("Defendants cannot defend on [access] without identity of the work.").) Plaintiff's aggregation includes several drafts created after the Freeman-Kim relationship terminated in March 2014 (Copyright Br. at 44-45; Pl.'s CSUF

---

[10] Defendants fully addressed the applicable case law in response to Plaintiff's objection to the Manuscripts Order and explained why Plaintiff's authority does not actually support aggregation. (ECF 120 at 13-16.) Plaintiff now cites two additional cases—*Wainwright* and *Craft* (O/R at 5 n.3)—which only support Defendants' position. Like *Castle Rock*, *Wainwright* concerned multiple independent research reports, not various drafts of the same report. 558 F.2d at 93-94. *Craft* similarly involved "15 copyrighted books," not various drafts of the same book. 667 F. Supp. at 122. These cases also involved myriad "instances of direct quotation," *id.* at 124, not vague assertions of idea infringement.

¶ 11), which Plaintiff fails to refute.[11] This case should be resolved on *BMR 2011/2013* alone, but if the Court unpacks Freeman's new claims about how she saved/sent her manuscripts, it will see that they crumble under scrutiny just like her similarity lists. (*See* Supp. Evid. Br. at 10-13.)

Finally, Plaintiff's aggregation repeatedly includes Freeman's irrelevant informal notes. (*Id.* at 6-7 (collecting ASUF cites).) One look at Freeman's notes shows that they contain rough, unprotected ideas that cannot support a copyright claim. (*E.g.*, ECF 277-1 (one page of notes with ideas like "becoming a young woman"); ECF 277-2 at 2 (broad sketch of idea to name a place "Katmai").) This is all the more reason to reject aggregation.

3.    Plaintiff's Expert Opinions Are Irrelevant And Inadmissible.

Defendants comprehensively showed that the Reiss, Juola, and Chaski opinions are irrelevant, unreliable, and inadmissible. (*Daubert* Br. §§ I-II.) Plaintiff's argument that one cannot "evaluate *scènes à faire* without expert testimony" (O/R at 9-10) fails because her experts do not actually opine on that issue (Plaintiff makes no effort to show they do). Juola and Chaski conduct technical "forensic" analyses and do not mention *scènes à faire* at all in their reports. (Chaski/Juola Reps. (ECF 278-35, 37).) Reiss's report entirely consists of a subjective direct comparison of the novels—exactly what is not allowed in the Second Circuit. (Reiss Rep. (ECF 278-36) ¶¶ 33-213; *Daubert* Br. at 10, 12, 16-19.)[12] Plaintiff argues it "should not be lost on this Court" that

---

[11] For example, Freeman now claims that she sent Kim a 2015 manuscript (Pl.'s CSUF ¶ 24; ECF 329 ¶ 17), despite previously testifying that she did "not definitely remember" doing so (Freeman Dep. 349:11-23 (Cole Ex. HH)). Plaintiff provides no documentary evidence supporting her attempt to change that testimony now, and Kim denies receiving such a manuscript (Kim Decl. (ECF 306) ¶ 45). Freeman also claims to have saved certain manuscripts using "save as" and relies on a new computer expert to claim that this altered document metadata. (O/R at 6; ECF 329 ¶¶ 12-13; ECF 333.) Setting aside clear admissibility issues (Supp. Evid. Br. at 10-13), this is not credible because the titles of both these documents and Freeman's copyright registrations, which would have been entered manually when creating the files, state that they were created in "2014" and "2016." (*See* Cole Decl. (ECF 300) ¶¶ 16-19 & Exs. N-Q.) Finally, submitting new declarations from Reiss and Chaski (ECF 334, 336; O/R at 44-45) conducting their analyses without the 2014/2016 versions implicitly concedes that they were created too late.

[12] Reiss mentions "*scenes a faire*" only twice in the body of her report, each time as *ipse dixit* without discussing any prior art. (*See* Reiss Rep. ¶¶ 70, 87.) For example, she claims that "two party scenes are not 'scènes à faire'" (Reiss

Defendants proffered a YA genre expert (O/R at 10), but the fact that both parties proffered experts does not make them equivalent. Easton's unchallenged opinions thoroughly demonstrate how alleged similarities result from common YA tropes, with specific pincites to where these tropes are used in other YA books. (Easton Rep. §§ V, VI.) The fact that Plaintiff misrepresents her experts' opinions as being about *scènes à faire* only further proves their irrelevance.

Plaintiff ultimately concedes that the parties' novels are written at a 12-to-18-year-old reading level (Pl.'s CSUF ¶ 22) and therefore admits that they can be understood by a lay factfinder (Copyright Br. at 42-43; *Daubert* Br. § I). Yet Plaintiff continues to argue that experts are needed because the amount of material would be too "daunting" for the factfinder to consider. (O/R at 10.) Defendants have established that (1) volume is not a recognized basis for allowing experts; (2) the volume is manageable when only the parties' works themselves are considered; and (3) any purported "volume" issue is a problem of Plaintiff's own making. (Copyright Br. at 43.) Plaintiff offers no meaningful response and ignores that considering her thousands of pages of extraneous materials would only exacerbate any volume issues.

Finally, Plaintiff's claim that experts are needed as to access or "probative" or "striking" similarity (O/R at 10-11) fails as previously shown (Copyright Br. at 57-58; *Daubert* Br. at 11). Access can be decided on the record evidence and the claim of "striking similarity" is frivolous.

### B.   Plaintiff Does Not Refute That The Works Are Not Substantially Similar In Total Concept And Feel, Plot, Characters, Settings, Themes, Or Pace.

Defendants showed that the substantial similarity analysis for literary works in the Second Circuit entails comparing the novels' total concept and feel, plot, characters, settings, themes, and pace from the perspective of a "more discerning observer," which requires filtering out unprotected

---

Rep. ¶¶ 70), with no analysis of how party scenes appear in the YA genre (as they commonly do, considering YA books prominently feature teenagers). Those scenes are also dramatically different. (Easton App'x pp. 132-145.)

ideas, *scènes à faire*, and scattered trivialities. (Copyright Br. at 21-23.) Plaintiff does not appear to dispute this general framework (*see* O/R at 42) and her own authority adopts it. The Court should conduct the standard analysis for literary works and will swiftly see that no reasonable jury could find *BMR* and Crave substantially similar in any of the relevant aspects.

As a threshold issue, Plaintiff misstates the law in arguing that the myriad significant differences in the works "offer no defense." (O/R at 38-39.) Second Circuit courts recognize that "numerous differences" in the works "tend to undercut substantial similarity.'" *E.g.*, *Abdin*, 971 F.3d at 69; *Warner Bros.*, 720 F.2d at 241 (same); *Walkie*, 2023 WL 5154416, at *13 ("As a matter of logic as well as law, the more numerous the differences between two works the less likely it is that they will create the same aesthetic impact so that one will appear to have been appropriated from the other."). Properly synthesized, the law is that small differences in otherwise substantially similar works will not defeat liability, but numerous significant differences indicate that the works are not substantially similar to begin with. The Court will see that this is a case of the latter.[13]

Moreover, while it is true that copying "constituent elements" is an element of a copyright claim (O/R at 38), the way that is adjudicated is through the standard substantial similarity analysis. *See, e.g.*, *Lewinson*, 659 F. Supp. 2d at 562 (cited in O/R at 38) ("To meet [the copying of constituent elements] standard, Plaintiff must demonstrate … the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiffs."). It is also true that a "substantial portion" of the plaintiff's work must have been copied (O/R at 38), but Plaintiff's lists of misrepresentations and trivialities show the opposite of that.[14]

---

[13] Plaintiff accuses Defendants of "excessive[ly] splintering" the works (O/R at 15), when **Plaintiff** is the party doing that in proffering amalgamated trivialities rather than the works as a whole.

[14] Plaintiff's cases (O/R at 38) only reinforce that courts independently review the works under the above framework and reject claims based on ideas, trivialities, and *scènes à faire*. *See, e.g.*, *Lewinson*, 659 F. Supp. 2d at 565-77 (conducting standard analysis, filtering out unprotected elements, and finding no substantial similarity); *Blakeman*,

*Total concept and feel*. Defendants showed that *BMR* and the Crave series are not substantially similar in total concept and feel because they dramatically differ in scope, length, and structure; tone, mood, and style; and most importantly "overall feel." (Copyright Br. at 36-38.)[15] Crave's scope and worldbuilding dwarf that of *BMR*, and to say the parties' novels "engender very different visceral responses," *Allen*, 739 F. Supp. 2d at 657, would be an understatement. Plaintiff makes no effort to show otherwise and instead appears to concede major differences in the authors' respective tone, voice, and style (*see* O/R at 40-41), as her expert did (Reiss Rep. ¶ 32).

Plaintiff instead argues that total concept and feel should be simply ignored, as it purportedly "is not the proper primary method of analyzing similarity." (O/R at 39-42.) That directly contradicts Second Circuit law, under which the similarity analysis is "***principally guided*** by comparing the … total concept and overall feel" of the contested works. *Gaito*, 602 F.3d at 66 (cleaned up); *Walkie*, 2023 WL 5154416, at *10 (stating same in literary case); *Amanze*, 2019 WL 2866071, at *6 (courts take "special care to compare 'the contested [works'] total concept and overall feel … as instructed by our good eyes and common sense'"). The decisions cited by both parties overwhelmingly show that courts consider total concept and feel in literary cases.

In attempting to abrogate all this, Plaintiff relies on *Tufenkian*, 338 F.3d at 135, which concerned fabric patterns in rugs (and was highly specific to that context). *Tufenkian* does not mention or displace the ordinary literary framework used in the Second Circuit, and certainly does

---

613 F. Supp. 2d at 308 (dismissing where "even assuming *arguendo* any similarities were copyrightable, the similarities are of such small import, both quantitatively and qualitatively, that no rational trier of fact could find the works to be 'substantially similar'"). *Walkie* initially declined to dismiss in the decision Plaintiff cites, 2022 WL 2306943, at *9-10, but later granted summary judgment upon full review of the works, 2023 WL 5154416, at *13.

[15] Plaintiff's argument that total concept and feel is irrelevant because "writing style, or methods of storytelling is not protectible" (O/R at 41) has it backwards. "Style," "mood," and "tone" are squarely part of total concept and feel, *e.g.*, *Allen*, 739 F. Supp. 2d at 657, and the way to evaluate them is to simply read the books. The point is not that anyone's writing style is protectible—it is that the significant differences in tone, style, and mood of *BMR* and Crave underscore a lack of substantial similarity. Plaintiff's cases (O/R at 41) do not hold otherwise. *See, e.g.*, *Baker*, 2023 WL 6007610, at *17 (rejecting claims where, *inter alia*, the plaintiff couldn't show that "the Works are stylistically similar").

not say that total concept and feel should be ignored altogether. Plaintiff also argues that *Williams* and *Allen* are inapposite because they concerned "children's books." (O/R at 40.) But *Jurassic Park* (*Williams*) and the Harry Potter series (*Allen*) are not meaningfully distinguishable from the YA novels at issue here, written at a 12-to-18-year-old reading level. (Pl.'s CSUF ¶ 22.)

**Plots**. Defendants showed that *BMR* and Crave have dramatically different plots and that any claimed similarities result from unprotected ideas, trivialities, tropes, and misrepresentations. (Copyright Br. at 23-28.) Plaintiff does not attempt to argue that the works' plots as a whole are substantially similar and does not tackle any of the significant overarching plot differences demonstrated in Defendants' opening brief. Instead, Plaintiff attempts to portray 21 specific scenes as substantially similar, based on her own descriptions. (O/R at 27-34.) The Court should read these scenes directly rather than accept Plaintiff's egregious mischaracterization of them. To aid in this, a number of these scenes have already been placed side by side in the Easton Appendix.[16] None is similar "once examined in any detail." *Williams*, 84 F.3d at 590.

**Characters.** Defendants showed that the works' characters do not remotely approach the Second Circuit's "quite high" standard for character similarity. (Copyright Br. at 28-33 (citing, *e.g., Hogan*, 48 F. Supp. 2d at 311 (no character infringement even where both works featured half-vampires named Nicholas Gaunt)).) Plaintiff's claim that the characters are only "roughly equivalent" (O/R at 42) shows she cannot meet this exacting standard. In any event, Plaintiff's claims about the characters (O/R at 18-26) are false. Plaintiff's description of the heroines (*id.* at

---

[16] (Easton App'x pp. 21-36 ("motorcycle/snow mobile ride"); *id.* pp. 39-57 ("romantic lead meeting"); *id.* pp. 146-181 ("first attack scene"); *id.* pp. 132-145 ("party/spiked drink"); *id.* pp. 58-76 ("first kiss"); *id.* pp. 121-131 ("northern lights").) The purported "French castle" scene (O/R at 29) is on pp. 411-412 of *BMR 2011* and 13-17 of *Crave*. The "injury" scene is on pp. 397-415 of *BMR 2011* and 154-167 of *Crave*. Scenes featuring the purported "first voice" (which is not one specific scene) include pp. 578-579 of *BMR 2011* and 546-547 of *Crush*. The repeatedly alleged "twin goddess creation story" (*e.g.*, O/R at 6, 18 n.11, 19, 26, 39, 43) is not in any one scene in *BMR*, but an example can be found on pp. 90 of *BMR 2013* and 392-396 of *Covet*. The Court need not consider that story in the 2016 version, but will find no similarity if it does. While Plaintiff should have pincited these scenes directly rather than obscuring them via an amalgamation in her ASUF, Defendants stand ready to provide additional pincites at the Court's request.

18-20) depends on misrepresentation and cherry picking, and ignores Tarot altogether. Plaintiff continues to incorrectly compare Ash to only Jaxon (*id.* at 20-21), and hones in on trivialities, such characters being "tall," having "dark hair" or a "big smile," or "wearing a tunic" (*id.* at 22-24). That ignores that characters are compared holistically rather than piecemeal. *See, e.g.*, *Walker*, 784 F.2d at 50 (analysis considers the "totality of" character attributes and "the extent to which the defendants' characters capture the 'total concept and feel'" of the plaintiff's); *Warner Bros.*, 720 F.2d at 241-43 (cited in O/R at 17) (focusing on "[t]he total perception of the" characters and finding them not substantially similar because any similarities resulted from general traits "widely shared within the superhero genre"). Amassing lists of misrepresentations, tropes, and trivialities does not remotely satisfy the "quite high" standard for character similarity.

  ***Settings.*** Defendants showed that *BMR* and Crave do not have substantially similar settings because "a high school in Alaska" is an unprotected idea and Crave features expansive additional settings that are not remotely present in *BMR*. (Copyright Br. at 34-35.) Plaintiff concedes that the novels' schools are "not substantially similar" and instead attempts to compare Crave's Katmere Academy to a "French castle" in *BMR*. (O/R at 36.) The Court should review these settings as they are actually described in the novels. (*E.g.*, *BMR 2011* pp. 411-416, *Crave* pp. 13-17.) The first thing the Court will notice is that the purported "French castle" in *BMR* is not described as a "castle" or as even "French"—rather it is a private "chateau" where Ash's family lives, which "would have looked more appropriate in Europe rather than in Anchorage." (*BMR 2011* p. 412.) Otherwise, the novels express the idea of "castles" differently, with any similarities (such as "vaulted ceilings") flowing naturally from that idea. Plaintiff then turns around and compares Katmere Academy to "Katmai" (O/R at 37), ignoring that calling a location Katmai (after a real national park) is an undeveloped idea only appearing in Freeman's notes (ECF 277-2 at 2).

*Themes.* Plaintiff does not address the works' themes, and therefore concedes they (like pace) are not substantially similar for the numerous reasons previously explained. (Copyright Br. at 8, 17, 35-36.) Most tellingly, the O/R does not even acknowledge *BMR's* pervasive use of Tarot.

C.     **Plaintiff's "Recasting" Of Ideas Theory And Other Alternative Theories Fail.**

Unable to show copyright infringement under the controlling analysis, Plaintiff argues that Defendants can be liable for "recasting," "reworking," or "carry[ing] forward" ideas from *BMR* including "plotlines," "character traits," and its "overall concept and story." (O/R at 3, 13, 16-17, 20, 42, 43, 46; *see also id.* at 3, 44 (Defendants "took the heart of" *BMR* and "created *Crave* with reference to BMR").) As Plaintiff acknowledges, this theory really asserts infringement of Freeman's selection, coordination, and arrangement of otherwise unprotected elements. (*See id.* at 39 ("Freeman's original selection and arrangement of such elements and expressions are certainly protectible"), 41 ("the primary question" concerns selection/coordination/arrangement).) Such a theory fails under well-established law.

*First*, it is a fundamental principle of copyright law that "ideas" and "concepts" are not copyrightable. 17 U.S.C. § 102. Unprotected ideas are precisely among what must be filtered out in the "more discerning observer" analysis. *See, e.g.*, *Lewinson*, 659 F. Supp. 2d at 565-66. While the difference between ideas and expression can be elusive, "the nub is that an author must use creativity to transform facts and ideas into an expression that 'display[s] the stamp of the author's originality.'" *Id.* at 566. Plaintiff rhetorically claims on occasion that Defendants infringed her "expression," but the substance of her brief—and most importantly the works themselves—shows that she is really asserting copying of ideas. This is further confirmed by her expert's misguided and unreliable attempt to establish "conceptual plagiarism." (*See Daubert* Br. § II.E.)

To be clear, Defendants did not copy *any* ideas from Freeman. The evidence shows that Wolff and Pelletier never had access to *BMR* and Kim did not secretly convey its contents to them.

But even assuming *arguendo* that Defendants obtained ideas from *BMR* despite no evidence, there still would be no liability for copyright infringement as a matter of law because anybody in the world is allowed to use another person's idea and express it differently. *See, e.g.*, *Dreamtitle*, 2023 WL 4350734, at *22 (plaintiff could not "monopolize [an] idea" because "[t]he Copyright Act allows room for the different expressions of that concept"). (Copyright Br. at 55-56.) Plaintiff does not address this fundamental flaw in her theory and identifies no authority holding a defendant liable for "recasting" or "reworking" another person's ideas, character traits, or storylines.

**Second**, Plaintiff's selection/coordination/arrangement theory also fails as a matter of law because such claims result in only "thin" copyright protection, requiring the defendant's work to be "very close" to the plaintiff's selection/arrangement in order to infringe. *See, e.g.*, *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 107 (2d Cir. 2014) (when copyright is "thin," "[o]nly very close copying would have taken whatever actually belonged to Plaintiff").[17] Plaintiff ignores the significant limitations of a selection/coordination/arrangement copyright claim and identifies no authority finding liability under such a theory in a literary case.[18] Because Plaintiff cannot show substantial similarity, she comes nowhere close to establishing the "very close" copying needed to prevail on a selection/coordination/arrangement theory. Indeed, her abandonment of "fragmented literal similarity" concedes that she cannot.[19]

---

[17] As Judge Stanton has put it: "When a copyright claim is 'limited to the particular selection or arrangement' of elements, the protection given is 'thin,' because a subsequent author remains free to use the public domain elements … so long as the competing work does not feature the same selection and arrangement." *Structured Asset Sales, LLC v. Sheeran*, 632 F. Supp. 3d 192, 197 (S.D.N.Y. 2022) (cleaned up), *reconsideration & summ. j. granted*, 2023 WL 3475524 (S.D.N.Y. May 16, 2023).

[18] *Hogan* (cited in O/R at 39) did not apply a selection/coordination/arrangement theory, and instead resoundingly rejected substantial similarity under the standard analysis. *See* 48 F. Supp. 2d at 308-15.

[19] Plaintiff previously asserted FLS based on several misleading and heavily excerpted examples of the works' text. (Pl.'s SJ Br. at 28-30.) Defendants refuted these examples and showed that FLS requires proof that the allegedly copied content was both copied verbatim and "qualitatively important or crucial." (Copyright Br. at 46-48 & ECF 300-35.) Plaintiff abandons this altogether. She also appears to abandon any effort to base infringement on words and short phrases like "well, well, well" and "yogurt." (Copyright Br. at 3, 41.)

**Third**, Plaintiff's alternative theory that the Crave books are infringing derivatives of *BMR* because they "recast" ideas and storylines from it (O/R at 34, 36, 40) fails due to the same lack of substantial similarity. The Second Circuit "dr[aws] no distinction between" copyright claims alleging unlawful reproduction and unlawful creation of a derivative, and "addresse[s] both by asking whether the [accused work] was substantially similar to the" plaintiff's work. *Well-Made Toy Mfg. Corp v. Goffa Int'l Corp.*, 354 F.3d 112, 117 (2d Cir. 2003), *abrogated on other grounds*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) (if the "two works cease to be substantially similar, then the secondary work is not a derivative work" and "does not infringe"). Because no reasonable factfinder could find the Crave books substantially similar to *BMR*, they are not infringing derivatives of *BMR* as a matter of law.[20]

In sum, *BMR* and Crave are not substantially similar in any relevant aspects, especially when considered "as a whole" rather than piecemeal as Plaintiff urges. *See Williams*, 84 F.3d at 590-91. Any competing descriptions of the works do not create a factual dispute when a reasonable factfinder could only find for Defendants. Plaintiff's alternative liability theories easily fail, and her continued reliance on extraneous descriptions rather than the "works themselves" reinforces that her claims cannot withstand the required analysis. The evidence here "is so one-sided that [Defendants] must prevail as a matter of law." *Williams*, 84 F.3d at 587. Indeed, after two years of litigation, it is clear that this case was built "upon a wholly erroneous understanding of the extent of copyright protection" and "that obsessive conviction, so frequent among authors and composers, that all similarities between their works and any others which appear later must inevitably be ascribed to plagiarism." *Dellar v. Samuel Goldwyn, Inc.*, 150 F.2d 612, 613 (2d Cir. 1945).

---

[20] Plaintiff continues to argue that *BMR* storylines were continued in later Crave books (O/R at 34-36), when Defendants already showed that "storylines" are unprotected ideas (Copyright Br. at 27). Reviewing these books themselves will show that Plaintiff's discussion only continues to misrepresent and cherry pick from the works.

Notably, through all the extraneous paper Plaintiff has submitted, there is no actual evidence that any content—let alone protected expression—was copied from *BMR*. Plaintiff concedes that none of the numerous Crave drafts shows any copy-pasting from, or even mention of *BMR*. (Copyright Br. at 50; ECF 300–19-23 (exemplar drafts); Pl.'s CSUF ¶¶ 76-78.) Juola tried and failed to find any evidence of plagiarism under his own standard. (*Daubert* Br. § II.C.) Chaski is unaware of any paragraph or even whole sentence ever being copied from *BMR* (Chaski Dep. (Cole Ex. GG) 78:24-81:9; *see also* Freeman Dep. (Cole Ex. HH) 140:20-142:6 (similar concessions).) Actual plagiarism leaves evidence. Here, the only evidence of **any party** actually copying from another source is Freeman's admitted copy-pasting from the script of a TV show. (Coulthard Rep. ¶¶ 33-37; Pl.'s CSUF ¶ 48.) That is the sort of evidence one would expect to see **somewhere** in the Crave books/drafts if Plaintiff's allegations were remotely true.[21]

## II.   PLAINTIFF FAILS TO DEMONSTRATE A TRIABLE ISSUE ON ACCESS.

Plaintiff also fails to show a triable issue on access, notably after taking 10 depositions and getting numerous discovery extensions. Plaintiff concedes that there is no evidence that Wolff or Pelletier ever accessed *BMR* (Copyright Br. at 52-54), and resorts to a baseless accusation that Defendants "lie[d]" at their depositions (O/R at 13; *see also id.* at 46 (asserting only that "agent and publishing company" had access)). Because Pelletier herself did not have access, she is not a "direct intermediar[y]" as Plaintiff claims. (*Id.* at 12.)[22] Plaintiff likewise concedes that Kim's

---

[21] Plaintiff now claims the *Roswell* passage was "not intended to be part of the manuscript" and was "merely a note for Kim written at the end of the Manuscript" (ECF 329 ¶ 22), but that is false. A modified version of the quote appears in a later *BMR* manuscript. (*Compare BMR* 2013 p. 468 *with* Freeman Ex. 16 p. 388 (second to last paragraph beginning "Following your heart …").) Just because Freeman writes by copying/paraphrasing from other works doesn't mean that Wolff or anyone else does.

[22] Contrary to Plaintiff's argument (O/R at 12), an intermediary theory requires showing that the intermediary "passed [the work] on," not merely told the accused authors about it. *See, e.g., Mowry*, 2005 WL 1793773, at \*3, \*5 (plaintiff must show "the individual(s) who **actually created** the allegedly infringing work" had access).

October 2013 pitch email to Entangled, which did not attach any draft, did not give Pelletier access to *BMR* itself. (Copyright Br. at 53; Pl.'s CSUF ¶¶ 52-55.)[23]

Plaintiff continues to speculate that Kim or Abrams must have secretly "informed [Wolff and Pelletier] of BMR's contents." (O/R at 13.) But contrary to Plaintiff's representation that the testimony "says nothing about this" (*id.*), all witnesses were asked and denied ever discussing *BMR* or its contents (DSUF ¶¶ 61-65 (collecting testimony)). Plaintiff's evidence—the same showing from her opening brief including false similarity claims—does not rebut this. (Pl.'s CSUF ¶¶ 61-65; *see also* Prospect SJ Reply at 6 (further showing this).) Besides the lack of evidence, this theory fails as a matter of law because the most that could have been conveyed without sharing an actual copy of *BMR* are unprotected ideas. (Copyright Br. at 55-56.) Indeed, "storylines" and "character traits" (O/R at 13) are the epitome of unprotected ideas. Plaintiff offers no response.

Plaintiff also claims that Kim/Abrams were "directly involved in the creation of" Crave— a vague phrase that does not mean actual writing. (O/R at 12.) All witnesses deny that Kim or Abrams wrote any of Crave, and Plaintiff's evidence (all the same as before) does not rebut this. (Pl.'s CSUF ¶¶ 95-97, 106-108.) Defendants showed that texts where Kim mentioned "helping Tracy write" are taken out of context, and that when Kim kept Wolff company in a Google doc (during part of *Court* only), Kim was "making sure I was writing," not "helping me actually write." (Wolff Decl. (ECF 302) ¶ 23; Copyright Br. at 56-57.) Plaintiff ignores this too.

---

[23] Kim later sent a copy of *BMR* to Abrams directly on October 30, 2013 (Doniger Ex. 21 (ECF 279-19) at 1), but no party had this stand-alone email in its files. Plaintiff now claims that Freeman Ex. 16 is that particular version (Pl.'s CSUF ¶ 24; ECF 329 ¶ 11), even though Ex. 16 was created in July 2014 according to its metadata and has a file name "MS – 2014." (Cole Ex. ¶ 19 & Ex Q.) If Plaintiff really believes Ex. 16 is the version sent to Abrams, one wonders why she didn't select it as a primary version given her need to prove access—especially after the Court warned her about this. (*See* Manuscripts Order at 3.) In any event, if the Court reviews Ex. 16 (which it need not under the prior Orders), it will see that it is also not remotely similar to the Crave series.

Instead, Plaintiff concedes numerous facts regarding access and independent creation. (*See, e.g.*, Pl.'s CSUF ¶¶ 81, 83-95, 97-105, 114-119.) When Plaintiff does raise disputes, she almost exclusively cites to either the same debunked evidence proffered with her opening brief or Freeman's self-serving similarity opinions. (*See, e.g.*, Pl.'s CSUF ¶¶ 61-65, 95-97, 106-111, 120-123, 125-127, 129-134.) None of this suffices to create a genuine dispute. *See, e.g.*, *Del Villar v. Hyatt Hotel Corp.*, 2022 WL 2316205, at *2 (S.D.N.Y. June 28, 2022) (SUF denials fail when they are "not supported by any citation to the record or are supported by citations that do not actually support the denial").

Plaintiff resorts to accusing Defendants of spoliating a purported log of changes made to a Google doc. (O/R at 12-13 & n.7.) That is false, and the time to raise discovery disputes has long passed. *See, e.g.*, *Baez v. Delta Airlines, Inc.*, 2013 WL 5272935, at *9, n.15 (S.D.N.Y. Sept. 18, 2013) (collecting cases; spoliation "issues should have been raised promptly during discovery").[24] As Your Honor explained long ago, a theme in all litigation is that all parties are not going to get "every possible document that they would want to see." (9/15/22 Hr'g Tr. (ECF 76) 6:16-20.) The tens of thousands of documents Defendants produced, including numerous Crave drafts, contradict rather than support Plaintiff's access theories. Untimely accusations of spoliating one speculative document do not carry Plaintiff's "burden of presenting 'significant, affirmative and probative' evidence to support [her] claim of access." *Jorgensen*, 2002 WL 1492123, at *3.

III.   **PLAINTIFF FAILS TO REFUTE INDEPENDENT CREATION.**

Plaintiff makes no serious effort to controvert Defendants' showing of independent creation, including the truth of Crave's genesis and Wolff's unrebutted testimony of how she came

---

[24] Defendants did not destroy or withhold the alleged Google log, which simply was not present in any custodian's files. Among many issues with Plaintiff's untimely spoliation claim, she ignores that there is an actual test for spoliation sanctions. *See, e.g.*, *Baez*, 2013 WL 5272935, at *12 (party seeking sanctions must show, *inter alia*, an obligation to preserve, destruction of evidence, and "that the records were destroyed with a culpable state of mind").

up with major concepts like Alaska and Katmere Academy. (Copyright Br. at 48-50, 58-59.) Plaintiff's theory that Defendants took the time to mine numerous *BMR* versions for nuggets to steal remains unsupported and implausible. (*Id.* at 59.) So does the notion that anyone would want to steal from a 50-times-revised manuscript rejected by numerous other publishers (*id.*; Pl.'s CSUF ¶¶ 23, 58)—especially when ***Plaintiff's own expert*** "would probably not have picked [Freeman] up as a client." (Witthohn Dep. (ECF 322-16) 71:3-6.) Plaintiff also fails to refute that the Tempest List and *Tempest* prove that Wolff had written numerous concepts that would echo in Crave (e.g., San Diego) before Freeman sent a single manuscript to Kim. (Copyright Br. at 59-60; *supra* p. 5; Supp Evid. Br. at 13-14.)

Plaintiff asserts that "Wolff offers no other reasonable explanation for the myriad of similarities" (O/R at 44), but the explanation is simple: *BMR* and Crave were independently created and are not remotely substantially similar, and nothing Plaintiff says about them withstands scrutiny. Plaintiff then falls back on her expert opinions (*id.* at 44-45), which have been thoroughly debunked (*Daubert* Br. §§ I-II; *see also* Supp. Evid. Br. § II (showing the new Reiss/Chaski declarations should be stricken).) Collectively, this shows no triable issue on independent creation.

## <u>CONCLUSION</u>

Plaintiff has gone to shocking lengths to avoid a direct comparison of the novels at issue in this case. The Court has been more than generous and given her every opportunity to prove her claims. The novels themselves have never been substantially similar and Plaintiff found no actual evidence of copying despite many discovery extensions. The time has come to resolve this case under established copyright law and books the parties actually wrote, not wild speculation that Defendants stole unprotected ideas from numerous versions of an unpublished and unsaleable manuscript. Defendants' motion for summary judgment should be granted.

Dated: New York, New York
       February 28, 2024

Respectfully submitted,

**COWAN DEBAETS ABRAHAMS
& SHEPPARD, LLP**

By: /s/ Nancy E. Wolff
Nancy E. Wolff
Benjamin S. Halperin
CeCe M. Cole
41 Madison Avenue, 38th Floor
New York, New York 10010
Telephone: (212) 974-7474
Fax: (212) 974-8474
nwolff@cdas.com
bhalperin@cdas.com
ccole@cdas.com
*Attorneys for Defendants Tracy Deebs-
Elkenaney p/k/a Tracy Wolff, Entangled
Publishing, LLC, Holtzbrinck Publishers,
LLC d/b/a Macmillan, and Universal City
Studios LLC*

Lacy H. Koonce, III
KLARIS LAW PLLC
430 West 14th Street
New York, NY 10014
Phone: (917) 612-5861
lance.koonce@klarislaw.com
*Attorneys for Emily Sylvan Kim
and Prospect Agency, LLC*

Dwayne K. Goetzel
Texas State Bar No. 08059500
KOWERT, HOOD, MUNYON, RANKIN &
GOETZEL, P.C.
1120 S. Capital of Texas Hwy.
Building 2, Suite 300
Austin, Texas 78746
Telephone: (512) 853-8800
Facsimile: (512) 853-8801
dgoetzel@intprop.com
*Attorneys for Defendant Tracy Deebs-
Elkenaney p/k/a Tracy Wolff*

**<u>CERTIFICATE OF SERVICE</u>**

I, Nancy E. Wolff, hereby certify that a true and correct complete copy of Defendants'

Reply in Support of Motion for Summary Judgment on Copyright Claims has been served on all

counsel of record via the Court's CM/ECF service.

/s/ Nancy E. Wolff
Nancy E. Wolff