# EXHIBIT II

Videotaped Deposition of

# Tracy Wolff

March 07, 2023

Freeman

vs.

Deebs

**Confidential**



www.aptusCR.com | 866.999.8310

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
 2
    LYNNE FREEMAN,               )
 3  AN INDIVIDUAL                )
    PLAINTIFF,                   )
 4                               )
    VS.                          )
 5                               )
    TRACY DEEBS-ELKENANEY        )
 6  P/K/A TRACY WOLFF, AN        )
    INDIVIDUAL, EMILY SYLVAN     )
 7  KIM, AN INDIVIDUAL,          )
    PROSPECT AGENCY, LLC, A      )
 8  NEW JERSEY LIMITED           )   CASE NO. 1:22-CV-02435-LLS
    LIABILITY COMPANY,           )
 9  ENTANGLED PUBLISHING,        )
    LLC, A DELAWARE LIMITED      )
10  LIABILITY COMPANY,           )
    HOLTZBRINCK PUBLISHERS,      )
11  LLC D/B/A MACMILLAN,         )
    A NEW YORK LIMITED           )
12  LIABILITY COMPANY, AND       )
    UNIVERSAL CITY STUDIOS,      )   JOB NO. 10115799
13  LLC, A DELAWARE              )
    LIMITED LIABILITY COMPANY    )
14       DEFENDANTS.             )

15  ***********************************************************

16              ORAL AND VIDEOTAPED DEPOSITION OF
                          TRACY WOLFF
17                      MARCH 07, 2023

18  ***********************************************************

19

20       ORAL AND VIDEOTAPED DEPOSITION of TRACY WOLFF,
    produced as a witness at the instance of the Plaintiff,
21  and duly sworn, was taken in the above-styled and
    numbered cause on the 7th day of March, 2023, from 8:54
22  a.m. to 4:34 p.m., before Gabriela S. Silva, CSR, RPR in
    and for the State of Texas, reported by stenograph, at
23  the Law Offices of Kowert, Hood, Munyon, Rankin &
    Goetzel, 1120 S. Capital of Texas Hwy, Building 2,
24  Austin, Texas, pursuant to the Federal Rules of Civil
    Procedure and the provisions stated on the record or
25  attached hereto.
```

```
 1                A P P E A R A N C E S

 2

 3   COUNSEL FOR THE PLAINTIFF:

 4          MARK D. PASSIN
            CSREEDER, PC
 5          11766 Wilshire Blvd., Ste. 1470
            Los Angeles, California 90025
 6          (310) 861-2470
            Mark@csrlawyers.com
 7

 8   COUNSEL FOR THE DEFENDANTS:

 9          DWAYNE GOETZEL
            KOWERT, HOOD, MUNYON, RANKIN & GOETZEL
10          1120 S. Capital of Texas Hwy, Building 2
            Austin, Texas 78746
11          (512) 853-8800
            Dgoetzel@intprop.com
12
            NANCY E. WOLFF
13          CECE COLE
            COWAN, DEBAETS, ABRAHAMS & SHEPPARD, LLP
14          41 Madison Avenue, 38th Floor
            New York, New York 10010
15          (212) 974-7474
            Nwolff@cdas.com
16

17   ALSO PRESENT:

18          Mr. Walter Bryan, Videographer
            Mr. Trent Baer, Plaintiff's Husband
19          Mr. Lance Koonce (via Zoom)
            Mr. Zachary Press (via Zoom)
20          Mr. Stephen Doniger (via Zoom)
            Mrs. Lynne Freeman (via Zoom)
21

22

23

24

25
```

Tracy Wolff | Confidential | Freeman vs. Deebs

```
 1      A.   I think so.
 2      Q.   What impact did Tempest Rising series books have
 3   on your career?
 4      A.   Not nearly as much as I would've hoped they
 5   would.
 6      Q.   Well, didn't it really make you a YA writer?
 7      A.   Insomuch as you define YA writer as somebody who
 8   writes YA.
 9      Q.   Yes.
10      A.   Yes, it is my first YA contract.
11      Q.   When did you write the first draft of Tempest
12   Rising?
13      A.   I wrote the beginnings of Tempest Rising in 2009.
14      Q.   And when did you complete the last draft of
15   Tempest Rising?
16      A.   The last draft of Tempest Rising was in June
17   2010.
18      Q.   How did you choose the Ducati Streetfighter S
19   motorcycle as the motorcycle for the romantic lead in
20   Tempest Rising?
21      A.   I Googled it.  And there was an article that came
22   up.  I believe I Googled something, like, sexiest
23   motorcycle, hottest motorcycle, most expensive
24   motorcycle, probably all of those things.  And I
25   remember a specific article came up and there were three
```

```
 1  something to that effect.  And it just stayed with me
 2  and I always thought, that would be a really cool place
 3  to set something where paranormals that didn't want to
 4  be around humans or, like, giant dragons could fly free.
 5      Q.  I would like to mark next as Exhibit 48
 6  Declaration of Tracy Deebs Elkenaney p/k/a Tracy Wolff.
 7          (Exhibit Number 48 was marked.)
 8      Q.  (By Mr. Passin) First question is, is that your
 9  signature on Page 6?
10      A.  Yes.
11      Q.  Okay.  And you recall signing this on or about
12  March 2, 2023?
13      A.  I do, yes.
14      Q.  Okay.  Turn to Paragraph 7.  At the end --
15  towards the end of the paragraph, you say, I e-mailed
16  Mrs. Abrams on March 16, 2010 telling her that I thought
17  Tempest Rising was a better title than riptide or
18  Tempest.  Do you see that?
19      A.  I do.
20      Q.  Do you have a copy of that e-mail?
21      A.  I saw the e-mail when I wrote this, yes.
22      Q.  You saw the e-mail when you wrote it?  So did you
23  turn that over to your counsel?
24      A.  I told my counsel about it and I know that they
25  had Ben Rose, the e-vendor, come into my computer and
```

```
 1  get some e-mails.  I do not know which, I just gave him
 2  my password and I left it alone.
 3      Q.  Are you talking about he did that months ago or
 4  --
 5      A.  No, I'm talking about he did that a couple of
 6  days ago.
 7      Q.  Okay.  Well, did he also do that months ago or
 8  was that the first time that he did it?
 9      A.  No, Ben Rose did it months ago when we turned
10  overall of my passwords and my phones and my
11  computers -- my computer that had everything backed up
12  on it.
13      Q.  And so did Ben Rose retrieve, do you know, a copy
14  of this e-mail?
15      A.  I have no idea.  All I did was give him my
16  password.
17          MR. GOETZEL:  I believe it's been attached
18  as an exhibit to the response.
19          MR. PASSIN:  Maybe, I'll have to look.
20      Q.  (By Mr. Passin) Then in Paragraph 11, it says,
21  From August 2010 to May 2011, I did not make any changes
22  to that manuscript, that Bloomsbury made one additional
23  change with my permission -- oh, though Bloomsbury made
24  one additional change with my permission.
25          In the first week of November 2010, Bloomsbury
```

1  changed the name Kai to Kona throughout the novel.
2  Isn't it true though that if Bloomsbury was able to make
3  that change, you could have also requested a change and
4  Bloomsbury could have made it at that time?
5         MR. GOETZEL:  Object to the form of the
6  question.  What type of change?
7     A.  What type of change are you referring to?
8     Q.  (By Mr. Passin) Well, changing the language in
9  the book.
10    A.  No.  I could not have done that.
11    Q.  Why couldn't you have done it if Bloomsbury
12 could've done it?
13    A.  Because once a book is formatted and typeset, I
14 believe typeset is the proper term, it is very, very
15 expensive to make changes.
16    Q.  But yet they changed Kai to Kona.  Right?
17    A.  They made that very deliberately for a very
18 deliberate reason.
19    Q.  But they chose to pay the money to do that, they
20 could've chose to pay the money for any change.
21 Correct?
22    A.  They did that for a very specific reason.
23    Q.  But I'm just saying, it's possible they could've
24 changed it if they wanted to?
25    A.  No, it's not possible.

Tracy Wolff | Confidential | Freeman vs. Deebs

```
 1    Q.  You're just saying it's a matter of money, but it
 2  can be changed?
 3    A.  It's not possible for them to make changes like
 4  that to my manuscript.
 5    Q.  Like what?
 6    A.  Like changing anything, changing language or
 7  anything like that.
 8    Q.  But they -- but they did it.  So obviously, it is
 9  possible?
10    A.  It is not possible for them to do it without my
11  permission, and that is the only one I gave permission
12  for.
13    Q.  But you could've given your -- if you gave your
14  permission, they could've made any change?
15    A.  They would not have done so.
16    Q.  Well, that's speculation.  You don't know.
17         MR. GOETZEL:  Objection -- objection that's
18  arguing with the witness.  Please refrain from doing
19  that.
20    Q.  (By Mr. Passin) Paragraph 13?
21    A.  I --
22    Q.  Go ahead.
23    A.  I did not ask them to make any changes besides
24  our discussion via Kai and Kona and if I did, they would
25  not have done so at that late date.  And --
```

Page 201

| | |
|---|---|
| Tracy Wolff | Confidential   Freeman vs. Deebs |

```
 1    Q.  Go ahead.  I don't mean to interrupt you.
 2    A.  -- in fact, Kai -- at that point, the ARC had
 3  already gone to print because Kai is in the ARC, not
 4  Kona.  So the language is the same in the ARC and so it
 5  was not changed.  No changes were requested besides the
 6  Kai do to Kona thing.
 7    Q.  In Paragraph 13, it says Mrs. Abrams e-mailed me
 8  on that same day --
 9    A.  I'm sorry.  Could you tell me which paragraph
10  again?
11    Q.  Paragraph 13, second sentence.  It says, Mrs.
12  Abrams e-mailed me on that same day and said she would
13  send several to me in the mail that day.  Did you ever
14  -- do you have a copy of that e-mail in your possession?
15    A.  I do have a copy of that e-mail in my possession.
16  That is how I knew to write that there.
17    Q.  Okay.
18    A.  Because I saw it.
19    Q.  And have you turned that over to your counsel?
20    A.  I allowed Ben Rose into my computer.  I do not
21  know which e-mails he took, but I gave him full access
22  to all of them.
23         MR. GOETZEL:  Also attached as an exhibit,
24  just so you know.
25    Q.  (By Mr. Passin) It says, I -- the next sentence
```

1  in that paragraph says, I am still in possession of this
2  Tempest Rising ARC and will provide it to Plaintiff for
3  inspection at my deposition on Tuesday, March 7 in
4  Austin, Texas.  Do you see that?
5      A.  Yes, I do.
6      Q.  Was a copy of that turned over to your lawyers
7  months ago when they did the production?
8      A.  No.
9      Q.  Do you know why not?
10     A.  Because Tempest Rising was not about Crave.
11     Q.  Well, I don't want to get into an argument with
12 you on that.  So that's -- I'll talk to the lawyers
13 about that.  It was definitely asked for.
14         And then let's look at Paragraph 28.  It says,
15 When this case began, I provided my e-mail passwords and
16 phone to --
17     A.  I'm sorry.  What number is this?
18     Q.  28.
19     A.  28?
20     Q.  When this case began, I provided my e-mail
21 passwords and phone to an E-discovery vendor and gave
22 the vendor complete access to my computer.  Which
23 computer did you give access to?
24     A.  The computer that I had at the time and the
25 OneDrive that had everything that I'd written backed up

Tracy Wolff | Confidential | Freeman vs. Deebs

```
 1   in to it.
 2       Q.  But didn't you have more than one computer?
 3       A.  I did, but they were not functioning.
 4       Q.  Which computers were not functioning?
 5       A.  I actually gave him access to -- I believe I gave
 6   him access to two computers, the two that were
 7   functioning and I...
 8       Q.  Which two computers were those?
 9       A.  I don't know how to identify them besides the
10   computers that I --
11       Q.  Well, you have names.  We know you had what is
12   it?  Three Lenovos and one Mac?
13       A.  I gave him access to the Lenovo -- to the
14   functioning Lenovo and I think I gave him access to the
15   Mac.
16       Q.  You think, but you're not sure?
17       A.  I believe I gave him access to the Mac.
18       Q.  Well, then why did you say in your declaration,
19   access to my computer and not computers?
20       A.  Because I -- in my head, computer is whatever
21   computer I happen to be working on.  I gave the vendor
22   complete access to my OneDrive where everything is
23   backed up and I gave him complete access to --
24       Q.  Well, why didn't you mention OneDrive, OneDrive
25   in this paragraph?
```

Page 204

```
 1              MR. GOETZEL:  Because it's in Paragraph 29.
 2              MR. PASSIN:  Fair enough.
 3       Q.  (By Mr. Passin) Now, OneDrive though, you didn't
 4   get OneDrive until when?
 5       A.  I don't know the exact date, but very early on in
 6   -- everything that -- very early on in the pandemic, but
 7   every document I had was -- I had on even the computer I
 8   was using at that time was backed into the OneDrive.
 9       Q.  Even the computer you were using at what time?
10       A.  When I was writing Crave, which was before the
11   pandemic.  Everything was backed up on to the OneDrive.
12       Q.  When you originated production in this case, did
13   you give the vendors access to the OneDrive?
14       A.  I did, yes.
15       Q.  Next I'd like to mark as Exhibit 49 --
16              MRS. COLE:  I'm sorry.  Before we introduce
17   that exhibit, are any of those -- it looks like they're
18   text messages.  Are any of them redacted or --
19              MR. PASSIN:  No.  Just so you know, yes,
20   there are not any redacted.  I purposefully --
21              MRS. COLE:  No, that's totally fine.  Just
22   wanted to note it for the record.
23              MR. BAER:  I think there's Bates numbers at
24   the bottom of each one.
25              MRS. COLE:  Great.
```

1  I, TRACY WOLFF, have read the foregoing
2  deposition and hereby affix my signature that same is
3  true and correct, except as noted above.
4
5
6  _____
7  TRACY WOLFF
8  THE STATE OF TEXAS)
9  COUNTY OF TRAVIS)
10      Before me, _Leslie Walter Haas_, on this
11  day personally appeared TRACY WOLFF, known to me (or
12  proved to me under oath or through _Driver License_ )
13  (description of identity card or other document) to be
14  the person whose name is subscribed to the foregoing
15  instrument and acknowledged to me that they executed the
16  same for the purposes and consideration therein
17  expressed.
18      Given under my hand and seal of office this
19  _23rd_ day of _March_, 2023.
20
21  _____
22      Notary Public in and for
23      The State of Texas
24
25

LESLIE WALTER HAAS
Notary ID #7023972
My Commission Expires
October 21, 2024

```
 1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
 2
     LYNNE FREEMAN,                )
 3   AN INDIVIDUAL                 )
     PLAINTIFF,                    )
 4                                 )
     VS.                           )
 5                                 )
     TRACY DEEBS-ELKENANEY          )
 6   P/K/A TRACY WOLFF, AN         )
     INDIVIDUAL, EMILY SYLVAN      )
 7   KIM, AN INDIVIDUAL,           )
     PROSPECT AGENCY, LLC, A       )
 8   NEW JERSEY LIMITED            )   CASE NO. 1:22-CV-02435-LLS
     LIABILITY COMPANY,            )
 9   ENTANGLED PUBLISHING,         )
     LLC, A DELAWARE LIMITED       )
10   LIABILITY COMPANY,            )
     HOLTZBRINCK PUBLISHERS,       )
11   LLC D/B/A MACMILLAN,          )
     A NEW YORK LIMITED            )
12   LIABILITY COMPANY, AND        )
     UNIVERSAL CITY STUDIOS,       )
13   LLC, A DELAWARE               )
     LIMITED LIABILITY COMPANY )
14         DEFENDANTS.             )

15
                       REPORTER'S CERTIFICATION
16                     DEPOSITION OF TRACY WOLFF
                            March 07, 2023
17
           I, Gabriela S. Silva, Certified Shorthand
18   Reporter in and for the State of Texas, hereby certify
     to the following:
19         That the witness, TRACY WOLFF, was duly sworn by
     the officer and that the transcript of the oral
20   deposition is a true record of the testimony given by
     the witness;
21         I further certify that pursuant to FRCP Rule
     30(f)(1) that the signature of the deponent:
22
        _X_ was requested by the deponent or a party before
23   the completion of the deposition and that the signature
     is to be before any notary public and returned within
24   30 days from date of receipt of the transcript.  If
     returned, the attached Changes and Signature Page
25   contains any changes and the reasons therefor;
```

1  \_\_\_\_\_ was not requested by the deponent or a party before the completion of the deposition.

2

3  I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorney in the action in which this proceeding was

4  taken, and further that I am not financially or otherwise interested in the outcome of the action.

5

6  Certified to by me this 13th day of March, 2023.

7

8

9  *[signature]*

10  Gabriela S. Silva, Texas CSR(8706), RPR
Expiration Date:  01-31-25
Aptus Court Reporting

11  600 West Broadway, Suite 300
San Diego , CA 92101

12  Phone: 866.999.8310

13

14

15

16

17

18

19

20

21

22

23

24

25