## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

LYNNE FREEMAN,

                  Plaintiff,

vs.

TRACY DEEBS-ELKENANEY P/K/A
TRACY WOLFF, et al.,

                  Defendants.

Case No.:  1:22-cv-02435-LLS-SN

---

## DEFENDANTS' SUPPLEMENTAL MOTION REGARDING EVIDENTIARY ISSUES

Nancy E. Wolff
Benjamin S. Halperin
CeCe M. Cole
COWAN, DEBAETS, ABRAHAMS,
& SHEPPARD, LLP
41 Madison Avenue, 38th Floor
New York, New York 10010
Telephone: (212) 974-7474
Fax: (212) 974-8474

*Attorneys for Defendants Tracy Deebs-
Elkenaney p/k/a Tracy Wolff, Entangled
Publishing, LLC, Holtzbrinck Publishers,
LLC d/b/a Macmillan, and Universal City
Studios LLC*

Lacy H. Koonce, III
KLARIS LAW PLLC
430 West 14th Street
New York, NY 10014
Phone: (917) 612-5861
lance.koonce@klarislaw.com

*Attorneys for Defendants Emily Sylvan
Kim and Prospect Agency, LLC*

Dwayne K. Goetzel
Texas State Bar No. 08059500
KOWERT, HOOD, MUNYON, RANKIN &
GOETZEL, P.C.
1120 S. Capital of Texas Hwy.
Building 2, Suite 300
Austin, Texas 78746
Telephone: (512) 853-8800
Facsimile: (512) 853-8801

*Attorneys for Defendant Tracy
Deebs-Elkenaney p/k/a Tracy Wolff*

## <u>TABLE OF CONTENTS</u>

BACKGROUND ................................................................................................................ 1

ARGUMENT AND OBJECTIONS ................................................................................. 2

I.   THE ASUF IS IRRELEVANT, WASTEFUL, UNTIMELY, AND PREJUDICIAL ............. 3

II.  PLAINTIFF'S SUPPLEMENTAL EXPERT OPINIONS SHOULD BE STRICKEN. .......... 7

A. The Reiss, Chaski, And Kaplan Declarations Are Untimely Under The Expert Scheduling Order And Rule 26 .................................................................................... 7

1.  The Reiss And Chaski Declarations Are Not Permissible Supplements. .................... 8

2.  The Kaplan Declaration Is An Undisclosed Expert Opinion. ................................... 10

B. Exclusion Is The Appropriate Sanction Under Rule 37 .................................................. 11

C. The Reiss, Chaski, And Kaplan Declarations Are Inadmissible Even If Untimeliness Is Excused. ................................................................................................ 12

D. Any Further Supplemental Expert Opinions Should Be Stricken. ................................... 13

III. PLAINTIFF'S EVIDENTIARY OBJECTIONS SHOULD BE OVERRULED ................... 13

IV. FREEMAN'S SIMILARITY INDEXES AND THE VISWANATHAN STORY REMAIN INADMISSIBLE. ................................................................................................ 16

CONCLUSION ................................................................................................................ 17

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*,
    301 F.R.D. 31 (S.D.N.Y. 2014) ................................................................................ 9, 10

*Allen v. Scholastic Inc.*,
    739 F. Supp. 2d 642 (S.D.N.Y. 2011) ............................................................................. 5

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    263 F. Supp. 3d 446 (S.D.N.Y. 2017) ............................................................................. 9

*Bozick v. Conagra Foods, Inc.*,
    2021 WL 1198320 (S.D.N.Y. Mar. 30, 2021) .............................................................. 8, 9

*Capitol Recs., LLC v. Escape Media Grp., Inc.*,

    2014 WL 12698683 (S.D.N.Y. May 28, 2014) ............................................................... 2

*Hord v. Jackson*,
    281 F. Supp. 3d 417 (S.D.N.Y. 2017) ............................................................................. 5

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ...................................................................................................... 12

*Lidle v. Cirrus Design Corp.*,
    2009 WL 4907201 (S.D.N.Y. Dec. 18, 2009) ................................................................. 9

*Lombardi v. Whitehall XII/Hubert St., LLC*,
    2010 WL 742615 (S.D.N.Y. Mar. 3, 2010) .................................................................. 16

*Revlon Consumer Prods. Corp. v. Estee Lauder Cos., Inc.*,
    2003 WL 21751833 (S.D.N.Y. July 30, 2003) ................................................................ 9

*Sandata Techs., Inc. v. Infocrossing, Inc.*,
    2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007) .......................................................... 8, 9, 12

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
    2023 WL 6314939 (S.D.N.Y. Sept. 28, 2023) ....................................................... 8, 9, 10, 12

*Variblend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*,
    2022 WL 17156550 (S.D.N.Y. Nov. 22, 2022) ......................................................... 8, 9, 12

*Walker v. Time Life Films, Inc.*,
    615 F. Supp. 430 (S.D.N.Y. 1985) ................................................................................. 15

*Walker v. Time Life Films, Inc.*,
    784 F.2d 44 (2d Cir. 1986) ............................................................................................. 4

*Walkie Check Prods., LLC v. ViacomCBS Inc.*,
  2023 WL 5154416 (S.D.N.Y. Aug. 10, 2023) .......................................................................... 5

*Warner v. Amazon.com, Inc.*,
  2023 WL 6317954 (S.D.N.Y. Sept. 28, 2023) ......................................................................... 5

*Williams v. Crichton*,
  84 F.3d 581 (2d Cir. 1996) ...................................................................................................... 5

**Rules**

Fed. R. Civ. P. 26(a)(2) ................................................................................................... 3, 10

Fed. R. Civ. P. 26(a)(2)(B)(i) ................................................................................................ 8

Fed. R. Civ. P. 56(c)(2) .................................................................................................... 1, 2

Fed. R. Evid. 702 ................................................................................................................ 10

L.R. 56.1 .......................................................................................................................... 2, 3

Pursuant to Federal Rule 56(c)(2) and Local Rule 56.1(d), Defendants respectfully (1) object to and move to strike certain additional evidence/materials submitted with Plaintiff's summary judgment opposition/reply brief ("O/R," ECF 340); (2) oppose Plaintiff's motion to strike certain evidence; and (3) briefly reply in support of their opening evidentiary motion.[1]

In a continued effort to submit as much paper as possible, Plaintiff has now filed: (1) an expansive "additional statement of undisputed facts" ("ASUF," ECF 332 pp. 70-133) containing *641* paragraphs of secondhand descriptions of the parties' novels, the vast majority of which was copied directly from Lynne Freeman's already inadmissible similarity "indexes"; and (2) three new expert witness declarations, which among other issues flagrantly violate the Court's Scheduling Orders and Rule 26. These new materials should be stricken as irrelevant, untimely, wasteful, and prejudicial, and Plaintiff's evidentiary objections should be overruled.

## **BACKGROUND**

This motion concerns Plaintiff's violation of several applicable Scheduling Orders. First, the Second Amended Scheduling Order (ECF 269, modified by ECF 271, 273, 294) (collectively, the "SJ Scheduling Order"), governs summary judgment and *Daubert* briefing. The SJ Scheduling Order set the following briefing schedule in pertinent part: (1) Plaintiff's opening summary judgment brief was due on November 22, 2023; (2) Defendants' combined opening/opposition brief was due on December 22, 2023; (3) Plaintiff's combined opposition/reply brief was due on February 7, 2024; and (4) Defendants' reply is due on February 28, 2024.

Additionally, several Orders established a schedule for expert witness disclosures and expert discovery (ECF 200, 258) (collectively, the "Expert Scheduling Order"). Under the Expert

---

[1] This brief adopts the same abbreviation and citation conventions set forth in footnote 1 of Defendants' concurrently filed copyright reply brief ("Copyright Reply"). Plaintiff's motions to strike certain evidence are included in her response to Defendant's statement of facts ("Pl.'s CSUF," ECF 332 pp. 2-70).

Scheduling Order, all parties' opening expert disclosures were due on May 10, 2023, Defendants'

rebuttal disclosures were due on August 31, 2023, and expert discovery closed on September 29,

2023. Plaintiff has never sought leave to reopen expert discovery or submit rebuttal or

supplemental expert opinions.

Plaintiff filed her opening summary judgment motion on November 22, 2023, including a

Rule 56.1 statement containing the purported undisputed facts relied on for her motion (ECF 281).

Defendants then filed their opening/opposition brief on December 22, 2023, including their own

Rule 56.1 statement ("DSUF," ECF 299). Defendants also moved to strike certain evidence

submitted with Plaintiff's opening brief. ("Evid. Obj.," ECF 309.)

On February 7-8, 2024, Plaintiff filed her opposition/reply brief, which was accompanied

by: (1) the ASUF, which as noted contains 641 new factual statements describing the parties'

works; (2) supplemental declarations by Plaintiff's experts Kathryn Reiss ("Reiss Decl.," ECF

334) and Carole Chaski ("Chaski Decl.," ECF 336), which argue that their opinions would be

unchanged if certain *BMR* versions post-dating Freeman's relationship with Emily Kim were not

considered; and (3) a declaration by putative computer expert Ron Kaplan ("Kaplan Decl.," ECF

333), who opines that saving a Microsoft Word file as "save as" will alter the file's metadata

creation date. Plaintiff also opposed Defendants' evidentiary objection ("Evid. Opp'n," ECF 328).

## ARGUMENT AND OBJECTIONS

As fully set forth in Defendants' original evidentiary objection, a party may object to an

opposing party's summary judgment evidence, and the admissibility of such evidence "must be

resolved as a threshold issue." Fed. R. Civ. P. 56(c)(2); *Capitol Recs.*, 2014 WL 12698683, at *4.

(Evid. Obj. at 1-2.) As discussed below, Local Rule 56.1 permits Rule 56.1 statements to be filed

with opening summary judgment briefs (to assert undisputed facts), and with opposition briefs (to

assert disputed facts), but not with reply briefs. LR 56.1(a)-(b). Rule 26 requires expert witness

opinions to be disclosed in written reports under the court's schedule. *See* Fed. R. Civ. P. 26(a)(2). Plaintiff's ASUF and supplemental expert opinions violate these rules and should be stricken.

## I.      THE ASUF IS IRRELEVANT, WASTEFUL, UNTIMELY, AND PREJUDICIAL.

Plaintiff's ASUF should be stricken because it violates the SJ Scheduling Order, Local Rule 56.1, and basic fairness, and because it is irrelevant, unreliable, and wasteful.

***First***, the ASUF violates the SJ Scheduling Order, Local Rule 56.1, and basic equity in litigation. Plaintiff strategically chose to affirmatively (and baselessly) seek summary judgment. That decision bound her to submitting any affirmative statement of facts with her opening brief.

Local Rule 56.1 permits statements of fact attempting to establish "no genuine issue to be tried" only with opening briefs. LR 56.1(a) ("Upon any motion for summary judgment …, there shall be … a separate, short and concise statement … of the material facts as to which the moving party contends there is no genuine issue to be tried."). While the rule further provides that a party "opposing a motion for summary judgment" may submit "if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts," this is only for the purpose of showing "that there ***exists a genuine issue*** to be tried." LR 56.1(b).[2]

Therefore, under both the SJ Scheduling Order and Local Rule 56.1, any affirmative statements of facts attempting to establish entitlement to summary judgment needed to be submitted with Plaintiff's opening brief only. Here, Plaintiff expressly relies on her ASUF in support of her own request for summary judgment. (*See, e.g.*, O/R at 15-37, 46 (repeatedly citing the ASUF and ultimately requesting that "Lynne Freeman's [summary judgment motion] be granted").) Because the ASUF is being used to attempt to show that "there is no genuine issue to be tried," it needed to be submitted, if at all, with Plaintiff's opening brief. This is especially true

---

[2] There is obviously nothing "short" or "concise" about the 641-paragraph ASUF.

because all statements in the ASUF (which are just descriptions of the works at issue) were known and available to Plaintiff when she filed her opening brief.

This result is also only fair. Because Local Rule 56.1 does not permit additional statements of fact with reply briefs, Defendants are forbidden from submitting their own version of the ASUF now. Allowing Plaintiff's ASUF would therefore give her an unfair two-to-one SUF advantage in the parties' cross motions. Basic principles of equity in litigation do not allow this.[3]

In sum, Plaintiff is trying to take advantage of perceived ambiguity in the staggered briefing schedule to submit an expansive second SUF containing secondhand descriptions of the works that were known from the beginning. But the rules are not ambiguous—factual statements intending to establish "no genuine issue to be tried" are only permitted with an opening brief, and a corresponding second SUF by Defendants is forbidden. Plaintiff is bound by her strategic decision to affirmatively seek summary judgment. If Plaintiff wanted to wait and see Defendants' arguments before submitting a responsive SUF attempting to establish factual disputes, she should not have moved affirmatively.

***Second***, all 641 statements in Plaintiff's ASUF are irrelevant to substantial similarity under *Williams*, *Walker*, and countless other Second Circuit copyright decisions requiring substantial similarity to be decided based on an independent review of the "works themselves." (*See generally* Copyright Reply § I.A.1.) "[T]he works themselves, not descriptions or impressions of them, are the real test for claims of infringement," and "supersede and control contrary descriptions of them." *Walker*, 784 F.2d at 51-52. A "comparison of secondary or descriptive materials cannot prove substantial similarity under the copyright laws." *Id.* Courts accordingly reject "list[s] [of] random

---

[3] In practice, Defendants would never submit anything like the ASUF because it is wasteful and irrelevant to substantial similarity, but the point remains that no party should have a two-to-one SUF advantage during cross motions.

similarities scattered throughout the works," which are "inherently subjective and unreliable" and "cannot support a finding of substantial similarity" as a matter of law. *Williams*, 84 F.3d at 590-91. The ASUF amounts to one big list of random scattered similarities, and is irrelevant to the Court's independent review of the "works themselves." It is also false and misleading as shown in Defendants' copyright reply brief. (Copyright Reply at 3-4 & n.4)

For these reasons, courts adjudicating substantial similarity have disregarded secondary descriptions of works set forth in Rule 56.1 statements. As one S.D.N.Y. court recently explained in refusing to consider "conclusory statements about the similarity (or lack thereof) between [the] respective works" set forth in the parties' "respective Local Rule 56.1 statements":

> Questions about the similarity of the works are legal questions that the Court addresses below. The parties' competing characterizations of the materials do not create a genuine dispute of material fact because "[i]n copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings."

*Walkie Check Prods., LLC v. ViacomCBS Inc.*, 2023 WL 5154416, at *3, n.4 (S.D.N.Y. Aug. 10, 2023); *see also, e.g.*, *Warner v. Amazon.com, Inc.*, 2023 WL 6317954, at *9 (S.D.N.Y. Sept. 28, 2023); *Hord v. Jackson*, 281 F. Supp. 3d 417, 425 n.6 (S.D.N.Y. 2017) (both stating that under *Williams*, "District Courts are directed ***to ignore*** lists provided by Plaintiffs of purported similarities between two works"); *Allen*, 739 F. Supp. 2d at 663 (rejecting "attempts to portray similarities by selectively extracting various trivialities from each book").[4]

In sum, this case should be decided through an independent comparison of the "works themselves," and the irrelevant ASUF should be stricken.

---

[4] Unlike in *Walkie* where both parties submitted self-serving descriptions of the works in their SUFs, here only Plaintiff has done this. Defendants did not purport to describe the works (which speak for themselves) or make conclusory statements regarding substantial similarity in their own SUF, and instead only identified facts about what is included in YA paranormal romance prior art. (*See* DSUF ¶¶ 31-42.) Only Plaintiff is offering inapposite cherry-picked lists of purported similarities in lieu of simply reading and comparing the works themselves.

**Third**, the ASUF should be stricken because it simply reiterates the claims in Freeman's inadmissible and demonstrably false similarity indexes. Tacitly conceding that Freeman's indexes were not admissible evidence, Plaintiff now presents them in a different form via her ASUF. As shown below, the vast majority of the ASUF was directly ported over from Freeman's indexes:[5]

| ASUF Paragraphs | Corresponding Freeman Index |
|---|---|
| 575-586, 785-787 | Freeman Ex. 36 (ECF 276-44) |
| 589-621, 623-641 | Freeman Ex. 37 (ECF 276-45) |
| 154-158, 164-169, 175-177, 179-187, 189-201, 203-208, 219-220, 223, 225-229, 231-236, 248-249, 253-260, 284-288, 302-303, 305, 308-312, 332-383, 385-441, 445, 447-452, 454-505, 754-772, 775-776, 781, 783-784, 788, 791-792 | Freeman Ex. 38 (ECF 276-46) |
| 215-218, 261-275, 277-282, 678-695 | Freeman Ex. 39 (ECF 276-47) |
| 169-171, 174, 224, 231, 238, 240, 245, 250, 506-574 | Freeman Ex. 40 (ECF 276-48) |
| 247, 289-300, 728-743 | Freeman Ex. 42 (ECF 376-49) |
| 696-715, 717, 721-727 | Freeman Ex. 43 (ECF 276-50) |
| 658-659, 661-677 | Freeman Ex. 44 (ECF 276-51) |
| 642-657 | Freeman Ex. 45 (ECF 276-52) |
| 161 | Freeman Ex. 46 (ECF 276-53) |

Deciding this case based on Freeman's biased opinions regarding the works—regardless of whether they are presented in her indexes or the ASUF—would both abrogate fundamental principles of copyright law and severely prejudice Defendants, who are entitled to a ruling based on the novels the parties actually wrote rather than Plaintiff's self-serving descriptions of them.

**Finally**, the ASUF should be stricken because it improperly relies on an amalgam of Freeman's manuscripts rather than just *BMR 2011* and *2013* as required by the Court's prior Orders. (*See* Copyright Reply at § I.A.2.) This includes numerous citations to Freeman's irrelevant informal notes. (*See id.*; ASUF ¶¶ 158, 331, 345, 369, 370, 385, 399, 416, 422, 442, 452, 456, 481,

---

[5] The ASUF paragraphs that do not appear to be directly copied over from Freeman's indexes (*see, e.g.*, ASUF ¶¶ 159-160) are merely more of the same cherry-picked trivialities and should similarly be disregarded.

535, 590, 596, 604, 624, 625, 642, 705, 776, 777, 778, 794.) Here again, the ASUF attempts to thwart rather than aid a direct comparison of the works actually at issue.

*        *        *

Plaintiff's strategy has long been clear: submit as much paper as possible, including an unusual and baseless affirmative summary judgment motion and thousands of pages of extraneous descriptions of the works (now re-presented in the ASUF), all to attempt to side-track the Court, create the false impression of a "both sides" issue, and survive summary judgment at all costs. It is time to stop the games and decide this case based on the novels the parties actually wrote. Plaintiff's irrelevant, wasteful, untimely, and prejudicial ASUF should be stricken.

## II.    PLAINTIFF'S SUPPLEMENTAL EXPERT OPINIONS SHOULD BE STRICKEN.

The new Reiss, Chaski, and Kaplan Declarations should be stricken as violating the Expert Scheduling Order and Rule 26. As noted above, Reiss and Chaski attempt to argue that their opinions would be unchanged if certain 2014 and 2016 *BMR* versions post-dating the Freeman-Kim relationship were not considered. (Reiss Decl. ¶ 4; Chaski Decl. ¶¶ 4-6.)[6] It is far too late for these experts to revise their opinions, and for Plaintiff to disclose a new computer expert.

### A.    The Reiss, Chaski, And Kaplan Declarations Are Untimely Under The Expert Scheduling Order And Rule 26.

As explained above, the Expert Scheduling Order required Plaintiff to serve her expert disclosures by May 10, 2023 and closed all expert discovery on September 29, 2023. Meanwhile, Rule 26 requires timely disclosure of "a complete statement of *all opinions* the witness will express

---

[6] It appears that the Reiss and Chaski Declarations were filed at least in part to respond to arguments first made in Defendants' *Daubert* motion, filed roughly six hours earlier on February 7. (*See Daubert* Br. §§ II.B.3, II.E.2 (arguing that Reiss and Chaski's opinions are inadmissible because they both relied on *BMR* versions post-dating the Freeman-Kim relationship). The specificity of the responses in the Reiss/Chaski Declarations suggests that Plaintiff's delay in her February 7-8 filing may have resulted from her reviewing Defendants' (timely filed) *Daubert* motion and quickly working with Reiss and Chaski to either supply or revise their declarations to respond directly to Defendants' *Daubert* arguments. If so, this is yet another example of Plaintiff manipulating the litigation process to sandbag Defendants.

and the basis and reasons for them" under the Court's schedule. Fed. R. Civ. P. 26(a)(2)(B)(i). Plaintiff flagrantly violated these rules in submitting new opinions by Reiss, Chaski, and Kaplan with her opposition/reply brief on February 7-8, 2024.

1.    The Reiss And Chaski Declarations Are Not Permissible Supplements.

The Reiss and Chaski Declarations are untimely under the Expert Scheduling Order and do not qualify as permissible supplements to expert opinions.

While experts may supplement their opinions in certain circumstances, Rule 26(e) "is not ... a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental report.'" *Variblend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*, 2022 WL 17156550, at *14 (S.D.N.Y. Nov. 22, 2022); *Sjunde AP-Fonden v. Gen. Elec. Co.*, 2023 WL 6314939, at *18 (S.D.N.Y. Sept. 28, 2023) ("[T]he duty to supplement is not [an] escape hatch"; "to hold otherwise would introduce a gaping loophole in the deadlines for expert disclosures"); *Bozick v. Conagra Foods, Inc.*, 2021 WL 1198320, at *3 (S.D.N.Y. Mar. 30, 2021) (Rule 26(e) does not "give a license to the disclosing party to offer a new theory out of time when the responding party has demonstrated that the disclosing party's initial theory is incorrect"); *Sandata Techs., Inc. v. Infocrossing, Inc.*, 2007 WL 4157163, at *3-4 (S.D.N.Y. Nov. 16, 2007) ("When the expert supplements her report by addressing a new matter after discovery has ended, the very purpose of [Rule 26(a)(2)(B)] is nullified.").[7]

Courts therefore routinely exclude untimely "backdoor" expert disclosures masquerading as Rule 26(e) supplements—especially when offered to correct flaws identified by the opposing

---

[7] Supplementation "may be appropriate where, for example, 'the expert subsequently learns of information that was previously unknown or unavailable, and the new information renders the earlier report incomplete or inaccurate.'" *Variblend*, 2022 WL 17156550, at *14. But correcting a flaw pointed out by the opposing party does not qualify as "new information." *See, e.g., id.*; *Sjunde*, 2023 WL 6314939, at *18; *Bozick*, 2021 WL 1198320, at *3. Absent a legitimate basis for supplementation, "[t]he mechanism to offer a new opinion out of time is a Rule 16(b)(4) motion for modification of a scheduling order which must be supported by good cause." *Id.* at *3.

party at summary judgment. *See, e.g.*, *Bozick*, 2021 WL 1198320, at *3 (striking supplemental report that claimed "that 'none of the opinions expressed in our original Report have changed due to the arguments in the defendants' expert's Reports'"); *Revlon Consumer Prods. Corp. v. Estee Lauder Cos., Inc.*, 2003 WL 21751833, at *4-5, (S.D.N.Y. July 30, 2003) (excluding supplemental declaration submitted "over five months after the close of expert discovery and on the eve of the deadline for filing summary judgment motions," explaining that such materials "should have [been submitted] prior to the expert discovery cutoff"); *Sjunde*, 2023 WL 6314939, at *18; *Variblend*, 2022 WL 17156550, at *14; *Sandata*, 2007 WL 4157163, at *5-6 (all similar).[8]

These principles squarely apply here and require that the Reiss and Chaski Declarations be excluded. These expert opinions were submitted roughly ten months after the May 10, 2023 disclosure deadline, and over four months after the close of all expert discovery. Plaintiff did not seek leave to submit new expert opinions well after those deadlines. And the declarations do not qualify as permissible supplements to expert opinions under Rule 26(e) because they are being used to oppose arguments made at summary judgment and/or *Daubert* and concern facts that were known to Plaintiff and the experts long ago. Plaintiff has known since before this case was filed that her relationship with Kim ended in March 2014. And Plaintiff has known since at least May 2023 that Reiss and Chaski nevertheless considered *BMR* versions from later in 2014 and 2016. Defendants have shown that this is a clear deficiency in their opinions (*Daubert* Br. §§ II.B.3,

---

[8] *See also, e.g.*, *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 263 F. Supp. 3d 446, 452–53 (S.D.N.Y. 2017) (excluding report that "does not rely on previously unknown information, and thus is not a 'supplemental' report under Rule 26, nor was it submitted at the direction of the Court or anyone else"); *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 301 F.R.D. 31, 38-39 (S.D.N.Y. 2014), *objections overruled*, 301 F.R.D. 47 (S.D.N.Y. 2014) (excluding supplemental expert declaration opposing summary judgment, which "was served in violation of the Scheduling Order and constitutes a backdoor attempt to offer new theories and opinions"); *Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *5-6 (S.D.N.Y. Dec. 18, 2009) (excluding expert supplement where information at issue "ha[d] always been available to [plaintiff's] experts").

II.E.2), and Plaintiff's extremely tardy attempt to correct this issue (which, to be clear, is just one of many reasons for excluding these experts) should be rejected.[9]

### 2.     The Kaplan Declaration Is An Undisclosed Expert Opinion.

The newly filed Kaplan Declaration should be stricken for similar reasons. Kaplan is "an information technology consultant" with "more than 30 years' experience in computer systems, networks and management" and advanced degrees in math and computer science. (Kaplan Decl. ¶¶ 2-3.) He opines based on this experience that selecting "save as" for a Microsoft Word file will alter its metadata creation date. (*Id.* ¶ 6.)

However brief, Kaplan's declaration qualifies as an expert opinion based on "knowledge, skill, experience, training, or education" that needed to be disclosed in accordance with Rule 26. *See* Fed. R. Evid. 702; Fed. R. Civ. P. 26(a)(2) ("a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705," which "must be accompanied by a written report ...."). Kaplan obviously is not the one who putatively selected "save as," and does not claim to have witnessed Freeman do so. (*See generally* Kaplan Decl.) His opinions are therefore expert rather than factual in nature.

Plaintiff is ultimately trying to use Kaplan to help prove the creation date of certain documents she produced in discovery. But the evidence produced in discovery speaks for itself, and the metadata of these very documents show that they were created after the Freeman-Kim

---

[9] Any argument that the Reiss and Chaski Declarations permissibly expand on opinions already disclosed would be meritless for the same reasons. While Reiss and Chaski do apply the same unreliable methodologies as before, their new opinions that their analyses would be unchanged without the post-Kim *BMR* versions are offered to correct flaws Defendants identified. *See, e.g.*, *Advanced Analytics*, 301 F.R.D. at 40 (new declaration not proper supplement when "unquestionably 'designed to fill a significant and logical gap' in [the expert's] past reports, in contravention of the expert disclosure requirements"); *Sjunde*, 2023 WL 6314939, at *18 ("untimely declaration" was not 'within the scope' of [expert's] prior work" where it was "simply[] [a] belated declaration materially alter[ing] Fischel's prior analysis by fixing a significant error"). Neither expert's opening report acknowledges a need to run their analyses without the post-Kim versions or purports to do so. And the experts' new opinion that purported similarities between a 2016 *BMR* version and Crave establish access is similarly nowhere to be found in their reports.

relationship. (Cole Decl. (ECF 300) ¶¶16-20.) There was no opportunity to depose Kaplan about the basis for his opinions, or to depose Freeman about how she saved her documents, especially since Defendants correctly focused on *BMR 2011* and *2013* at her deposition under the Court's prior Orders. Here again, Plaintiff should not be allowed to correct deficiencies in her own evidence with still more untimely further submissions.

### B. Exclusion Is The Appropriate Sanction Under Rule 37.

The Rule 37 factors favor excluding the new expert declarations for similar reasons as explained with respect to Freeman's undisclosed indexes. (Evid. Obj. § I.A.3.)

First, there is no reasonable explanation for submitting the new declarations just now, in the middle of summary judgment. Plaintiff improperly waited until after Defendants pointed out flaws in her evidence to provide these purportedly corrective declarations, which are all based on facts she has known about since early in the case. Second, the new expert opinions are unimportant—Reiss and Chaski's overall methodologies are so overwhelmingly unreliable and irrelevant that it would be futile to correct just one of many fatal flaws in their analyses.

Third, Defendants would be prejudiced by considering the new opinions because Defendants developed their *Daubert* and summary judgment arguments based on the expert opinions Plaintiff disclosed. While considering post-Kim manuscripts is just one of many of Reiss and Chaski's fatal flaws, Defendants are prejudiced by a lack of opportunity to depose these experts on their revised approaches, and certainly by having dedicated valuable time, resources, and space in their prior briefing to arguments Plaintiff now seeks to undermine through sandbagging. Finally, there is no reasonable possibility of a continuance to permit discovery into the new expert opinions given the case's advanced procedural posture.

Accordingly, like in numerous cases excluding untimely backdoor expert opinions, the Rule 37 factors require exclusion. *See, e.g.*, *Sjunde*, 2023 WL 6314939, at *18; *Variblend*, 2022 WL 17156550, at *15-16; *Sandata*, 2007 WL 4157163, at *7-9.

**C.    The Reiss, Chaski, And Kaplan Declarations Are Inadmissible Even If Untimeliness Is Excused.**

While the Reiss, Chaski, and Kaplan Declarations should be excluded as untimely, they would be inadmissible under Rule 702 and *Daubert* even if considered. Reiss and Chaski continue to apply their same overall methodologies, which are inadmissible for all the reasons set forth in Defendants' *Daubert* brief: (1) expert opinions regarding the similarity of literary works are not permitted in the Second Circuit (*Daubert* Br. § I); (2) both methodologies fail the *Daubert* factors due to a lack of publication, testing, error rate, standards, and general acceptance (*id.* § II.A); (3) Reiss's direct comparison of the parties' novels is purely subjective, depends on cherry picking, and grossly distorts the books (*id.* § II.B.1-2); and (4) Chaski's "conceptual plagiarism" analysis is directed at proving theft of uncopyrightable ideas, reduces novel-length books to biased and unrecognizable "keyword clusters," and relies on woefully unreliable data (*id.* § II.E.1, 3-4). Reiss's new opinion that Defendants must have had access to the 2016 *BMR* version due to similarities she purportedly observed (Reiss Decl. ¶¶ 4, 7, 12) is based on yet another subjective comparison and is unreliable on its face. The same goes for Chaski's similar opinions based on her convoluted and unreliable "conceptual plagiarism" methodology.

Meanwhile, Kaplan's opinions should be excluded as inadmissible *ipse dixit*. *See, e.g.*, *Kumho Tire*, 526 U.S. at 157 (courts should not admit "evidence that is connected to existing data only by the *ipse dixit* of the expert"). Kaplan provides no data, evidence, or even analysis supporting his opinion that "save as" alters the metadata creation date of a Word document. (Kaplan Decl. ¶ 6.) Kaplan also simply accepts Freeman's word as to how she saved her

documents, when there was no opportunity to conduct discovery into that issue.[10] Kaplan (and Freeman's) say-so about "save as" should be excluded.

### D.      Any Further Supplemental Expert Opinions Should Be Stricken.

Finally, based on what has transpired so far, it would not be surprising if Plaintiff submitted still more supplemental expert declarations/opinions with her February 28 opposition to Defendants' *Daubert* motion. Any such materials should be stricken for the same reasons as above.

## III.      PLAINTIFF'S EVIDENTIARY OBJECTIONS SHOULD BE OVERRULED

In her response to Defendants' Rule 56.1 statement, Plaintiff objects to and moves to strike several statements and pieces of evidence submitted by Defendants. (Pl.'s CSUF ¶¶ 26 ("Objection based on the December 12, 2022 Ruling"); 27-28 (motion to strike Exhibit X to the Cole Declaration), 30 (motion to strike statement regarding Trent Baer's testimony), 31 ("Objection to use of Third-Party Books"). Each of these should be overruled.

***First***, Plaintiff's "Objection based on the December 12, 2022 Ruling" (Pl.'s CSUF ¶ 26) is baseless. Plaintiff herself put *Tempest* at issue ***after that ruling*** by submitting her Tempest List on January 4, 2023 containing a list of alleged similarities between *Tempest* and Crave. (Copyright Br. at 20 (discussing ECF 103, 103-2).) Plaintiff later moved to compel discovery into Wolff's hard drives under a speculative theory that Wolff had manipulated email metadata to obscure *Tempest's* true creation date. (ECF 131.) In that motion, Plaintiff proffered the ***same exact evidence*** she discusses now in her CSUF—specifically, Freeman's unevidenced claim to have told Kim about a Ducati motorcycle, the declaration of computer expert Kevin Cohen, and a series of speculative rhetorical questions. (*Compare* Pl.'s CSUF ¶ 26 *with* ECF 131, 167-170.) The Court

---

[10] It is not true that "Defendants examined Freeman at her deposition about the creation of … the 2014 and 2016 versions." (O/R at 4 (citing ECF 331 ¶ 21).) Tellingly, Plaintiff's only support for this claim is a statement by Mr. Passin about what happened at the deposition, not actual questioning (which would be on the record if it existed).

considered and rejected this evidence in its Hard Drives Order, finding that this same showing did not "effectively undermine the evidence that Tempest Rising was completed by June 30, 2010, well before Plaintiff is alleged to have had any contact with Kim." (Hard Drives Order (ECF 180) at 2-5.) That ruling is final and was not timely objected to.

Even if the evidence were reviewed anew, no reasonable jury could find that *Tempest* was not completed by June 2010. Defendants proffer the testimony of Wolff and Easton, who have first-hand knowledge of *Tempest's* creation and publication. (Wolff Dep. (Cole Ex. II) 80:14-17 ("And when did you complete the last draft of Tempest Rising?" "The last draft of Tempest Rising was in June 2010"); Wolff 3/3/23 Decl. (ECF 150) ¶ 8 ("I submitted my final draft" of *Tempest* "to Bloomsbury on June 30, 2010"); Wolff 12/23/23 Decl. (ECF 302) ¶ 6 (similar); Easton Rep. at 3 (Easton supervised the publishing of *Tempest* and "can confirm that the final draft of Tempest Rising was submitted to Bloomsbury around June 2010 and that an advanced reader copy (ARC) of it was printed in October 2010").) Defendants have also provided Wolff's June 2010 draft itself, which includes the allegedly stolen Ducati motorcycle. (Cole Ex. X (ECF 300-24) p. 111.) Plaintiff only offers speculation by Freeman—who has no actual knowledge of *Tempest's* publication timeline—and rhetorical questions. (*See* Pl.'s CSUF ¶ 26.) Therefore, even if *Tempest's* creation date had not been finally litigated (it was), there is no genuine factual dispute about it.

**Second**, Plaintiff's motion to strike Exhibit X to the Cole Declaration as not properly authenticated (Pl.'s CSUF ¶¶ 27-28) should be denied. Exhibit X is the June 2010 draft of *Tempest* off of which the October 2010 ARC was printed, as Wolff averred in her declaration opposing Plaintiff's hard drives motion. (Wolff 3/3/23 Decl. ¶¶ 13-15 (discussing the document that had been filed as ECF 154-2, which is the same document as Cole Ex. X).) Wolff possesses a single hard copy of the *Tempest* ARC and allowed Plaintiff's counsel and Baer to inspect it during a break

at her deposition. (*See id.* ¶ 13.)[11] Plaintiff questioned Wolff about her March 3, 2023 declaration at her deposition (*see* Wolff Dep. 198:5-203:5) and had a full opportunity to examine both her and the ARC itself. This collectively is more than sufficient to establish Exhibit X's authenticity as the June 2010 draft from which the *Tempest* ARC was printed.

**Third**, Plaintiff's motion to strike DSUF ¶ 30 regarding Baer's testimony (Pl.'s CSUF ¶ 30) should be denied. The testimony speaks for itself and shows Baer agreeing that all the examples in the Tempest List must be coincidences if it is true that *Tempest* was written by June 2010. (Baer Dep. (ECF 300-13) 184:2-22.) That is an important admission because it ***has been*** established that *Tempest* was written before Freeman ever sent anything to Kim, which makes it ***true*** that the similarities in the Tempest List are false positives, and undermines any similarity claims in any of Plaintiff's various lists.

**Fourth**, Plaintiff's motion to strike all prior art (Pl.'s CSUF ¶ 31) should be denied as well. In requesting judicial notice, Defendants showed that courts deciding copyright cases routinely take judicial notice of what has been written in prior art. *See e.g.*, *Walker*, 615 F. Supp. at 438 (taking judicial notice of elements in pre-existing published works for purposes of the substantial similarity analysis). (*See generally* Defs.' Notice Req. (ECF 308) at 1-2 (collecting cases). Citing no authority, Plaintiff now argues that "(1) Defendants have not supplied these books, (2) what is in the books is not generally known within the trial court's territorial jurisdiction and cannot readily be determined from sources whose accuracy cannot reasonably be questioned, and (3) the interpretation of what is said in a book is subject to dispute." (Pl.'s CSUF ¶ 31.) This is meritless.

---

[11] That physical copy is sentimental to Wolff because *Tempest* was the first YA novel she ever wrote. (*See* Wolff 12/22/23 Decl. ¶ 6.) That said, Wolff is willing to provide the ARC itself to the Court for inspection upon request.

It would have been inappropriate and wasteful for Defendants to attach every relevant third-party book to their summary judgment papers. All such prior art is publicly available, and if the Court wants any specific books to be provided, Defendants stand ready to do so expeditiously. Because Easton provided exhaustive precise cites to the relevant third-party books in her analysis of YA tropes (Easton Rep. §§ V, VI) it is easy to pinpoint where in these books to look. Additionally, Defendants' authority (Defs.' Notice Req. at 1-2) shows that courts do qualify prior art as being known within their jurisdiction and not subject to accuracy disputes, and do not have concerns about interpreting prior art. Plaintiff cites nothing in arguing otherwise.

IV.    **FREEMAN'S SIMILARITY INDEXES AND THE VISWANATHAN STORY REMAIN INADMISSIBLE.**

Plaintiff's evidentiary opposition fails to resuscitate Freeman's easily inadmissible similarity "indexes." Plaintiff takes the position that the indexes are not opinion testimony, and rather are merely a "guide" to where to find the similarities Freeman believes exist in the works. (Evid. Opp'n at 1, 3-5, 8.) That is a distinction without a difference.[12] In any event, if the indexes really are just a factual guide to the works, then they violate the Best Evidence Rule, which forbids secondary descriptions of writings when the writings themselves are available to be examined. (Evid. Obj. at 6-7 (citing authority striking argumentative summaries of writings for this reason).) Plaintiff concedes this in ignoring the Best Evidence Rule altogether. Plaintiff also concedes that Freeman's indexes were not produced in discovery and states that they are not proffered as

---

[12] Plaintiff's citation to *Lombardi*, 2010 WL 742615, at *14 (Evid. Opp'n at 3) is seriously misleading. That case involved a more technical area (architecture) and the plaintiff (himself an architect) took the position that he ***did*** qualify as an expert. *Id.* at *14 n.7. The court explained that the plaintiff was "required to provide Defendants with notice of his intent to testify as an expert" and reserved ruling on whether this would be allowed. *Id.* ("The Court has yet to determine, however, whether Plaintiff will be allowed to testify as an expert at trial and declines to do so at this juncture.").

summaries of voluminous materials under FRE 1006 (Evid. Opp'n at 5, 8), which is all the more reason to exclude them.

Finally, Plaintiff concedes that the allegations of Kaavya Viswanathan's alleged plagiarism are divorced from the legal standards for proving copyright infringement, and fails to refute that it would be a complete waste of time to consider private allegations made against a third party who has nothing whatsoever to do with this case. (*See* Evid. Opp'n at 14.)[13]

## **CONCLUSION**

Resolving this case requires a comparison of the novels the parties actually wrote, not inapposite secondary materials. Relying on Plaintiff's self-serving descriptions in her ASUF and indexes would be the most extreme form of prejudice. Plaintiff's eleventh-hour effort to correct still more flaws in her case with new expert opinions and a new format for Freeman's similarity indexes flouts the Court's Scheduling Orders and should be rejected. The Court should: (1) strike the ASUF and Plaintiff's untimely supplemental expert declarations; (2) overrule Plaintiff's meritless objections to Defendants' evidence; and (3) grant all relief sought in Defendants' original evidentiary objection.

Dated: New York, New York
          February 28, 2024

Respectfully submitted,

**COWAN DEBAETS ABRAHAMS & SHEPPARD, LLP**

By: /s/ Nancy E. Wolff
Nancy E. Wolff
Benjamin S. Halperin
CeCe M. Cole
41 Madison Avenue, 38th Floor
New York, New York 10010
Telephone: (212) 974-7474
Fax: (212) 974-8474

---

[13] Plaintiff's arguments regarding the admissibility of her experts (Evid. Opp'n at 9-12) are meritless as shown in Defendants' copyright reply brief (Copyright Reply § I.A.3) and prior submissions.

nwolff@cdas.com
bhalperin@cdas.com
ccole@cdas.com
*Attorneys for Defendants Tracy Deebs-*
*Elkenaney p/k/a Tracy Wolff, Entangled*
*Publishing, LLC, Holtzbrinck Publishers,*
*LLC d/b/a Macmillan, and Universal City*
*Studios LLC*

Lacy H. Koonce, III
KLARIS LAW PLLC
430 West 14th Street
New York, NY 10014
Phone: (917) 612-5861
lance.koonce@klarislaw.com
*Attorneys for Emily Sylvan Kim*
*and Prospect Agency, LLC*

Dwayne K. Goetzel
Texas State Bar No. 08059500
KOWERT, HOOD, MUNYON, RANKIN &
GOETZEL, P.C.
1120 S. Capital of Texas Hwy.
Building 2, Suite 300
Austin, Texas 78746
Telephone: (512) 853-8800
Facsimile: (512) 853-8801
dgoetzel@intprop.com
*Attorneys for Defendant Tracy Deebs-*
*Elkenaney p/k/a Tracy Wolff*

## <u>CERTIFICATE OF SERVICE</u>

I, Nancy E. Wolff, hereby certify that a true and correct complete copy of Defendants'

Supplemental Motion Regarding Evidentiary Issues has been served on all counsel of record via

the Court's CM/ECF service.

/s/ Nancy E. Wolff
Nancy E. Wolff