UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYNNE FREEMAN,<br><br>    *Plaintiff*,<br><br>-against-<br><br>TRACY DEEBS-ELKENANEY, et al.,<br><br>    *Defendants*. | Case No. 1:22-cv-02435 (LLS)(SN) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PROSPECT DEFENDANTS' MOTION FOR
<u>SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS</u>**

Lacy H. Koonce, III
KLARIS LAW PLLC
430 West 14th Street
New York, NY 10014
Phone: (917) 612-5861
lance.koonce@klarislaw.com

*Attorneys for Emily Sylvan Kim and
Prospect Agency, LLC*

## INTRODUCTION

After two years of litigation, and after proffering three purported literary agent "experts" in a gambit to avoid having the Court streamline the case by addressing substantial similarity first, Plaintiff now – predictably – expressly abandons one state law claim (fraud), tacitly abandons a second (breach of contract), and essentially concedes she has no breach of fiduciary duty claim unless she can demonstrate copyright infringement. In her opposition brief,[1] Plaintiff nominally argues that the fiduciary duty claim could continue even if the Court finds no substantial similarity because an agent might hypothetically violate a fiduciary duty by sharing one author's manuscript with another even if this falls short of copyright infringement. However, her only support for this supposition is that the resulting works are substantially similar. Plaintiff must resort to this circular logic because after a year of discovery she has adduced no direct evidence whatsoever that any manuscripts were actually shared with Wolff or used by Prospect/Kim or anyone else in any way.

At her deposition, Freeman said "I have always been the kind of person that thinks about a fantasy world." (Freeman Tr. 31:15-16.) Although this testimony was in the context of her writing, it could readily be applied to her legal claims. Now that discovery is complete, it is abundantly clear that this lawsuit sprang from a single incident: Freeman seeing the published Crave series and noting that it was a young adult paranormal romance set in Alaska (albeit in wildly different locations), as was her unpublished novel. Freeman then spun out an imagined backstory: An ever-evolving narrative about a years-long conspiracy by her literary agent and others to steal her work. In the Amended Complaint, many of these fantasies were alleged "upon information and belief,"

---

[1] This brief uses the same defined terms as Defendants' opening copyright brief (ECF 298) and *Daubert* brief ("*Daubert* Br.," ECF 321), and the Prospect Defendants' opening state law brief ("SL Br.," ECF 312). Emily Kim's Declaration (ECF 306) is "Kim Decl."; Plaintiff's state law opposition brief (ECF 327) is "Opp"; Defendants' Rule 56.1 Statement (ECF 299) is "DSUF"; Plaintiff's response to the DSUF (ECF 330 ¶¶ 1-153) is "Pl.'s CSUF"; Cole Decl., Ex HH (filed contemporaneously) is "Freeman Tr."

but Freeman had *no information whatsoever* on which to base these claims.

Plaintiff asserted that as soon as Kim laid eyes on Plaintiff's manuscript in late 2010, Kim was so enthralled by that "gem" of a work that she instantly abandoned any shred of ethics and began conspiring to steal Freeman's content and feed it to Wolff. (FAC ¶¶ 1, 5-6, 46-48, 60-61.) This purportedly included – before Prospect was even engaged as her agency – asking about a type of motorcycle mentioned so that Kim could tell Wolff to use it in a novel only a few months away from publication.[2] (ECF 131.) According to Plaintiff, Kim then brought Freeman on as an author with the fraudulent intent to steal her material and give it to Wolff, and did so over the next three years while at the same time intentionally delaying sending Freeman's manuscript to publishers by forcing her to make edits to deliberately make the book worse. (FAC ¶¶ 5-6, 24-27.) Then, Plaintiff asserted, after three years of working with Freeman (and submitting the manuscript widely), Kim brazenly included Entangled in her submission list, the very publisher she secretly planned to later plagiarize the material, not even hiding this from Freeman. (FAC ¶¶ 9, 38.) Kim then instructed Freeman to wait until her son graduated high school before trying again to publish her manuscript, and to cap off this incredible scheme Kim and the other purported conspirators then patiently waited *over five years* to begin drafting the infringing work. (FAC ¶¶ 6, 31, 33.)

Faced with a complete absence of evidence supporting this absurd, fabricated storyline – and indeed a surfeit of evidence to the contrary[3] – Plaintiff has jettisoned it entirely. She now concedes that while she believes her manuscript was good to begin with, "that was before Kim worked with Freeman to refine and improve the work across the next two years" after being engaged as an agent. (Opp. at 13.) She now argues that Kim must have decided, years later, to help

---

[2] This assertion has been thoroughly discredited. *See* Hard Drives Order (ECF 180).
[3] Kim Decl. ¶¶ 17-42 (Kim's extraordinary efforts to help strengthen Freeman's manuscript and submit it to editors).

2

Wolff *write* her new novel, *Crave*, drawing on Freeman's work. (Opp. at 3.) Although this sudden – but predictable – change in Plaintiff's story does not alter the fact that the Prospect Defendants have been forced to engage with these manufactured allegations for nearly two years, it at least narrows the issues for this Court to address at summary judgment on Plaintiff's state law claims.

## ARGUMENT

1. **Plaintiff Has Expressly Abandoned Her Fraud Claims**

In her Opposition, in a footnote, Plaintiff withdraws Count I in her Amended Complaint for "Fraud and Deceit Against Prospect and Kim," as well as Count II for "Fraudulent Concealment Against Prospect and Kim." (Opp. at 1 n.2.) While Plaintiff suggests the withdrawal of these claims is intended to "streamline" the case, as noted above Plaintiff has adduced no evidence of fraud, and her fraud theories directly conflict with her new theory of the case.

2. **Plaintiff No Longer Claims Wrongful Acts by the Prospect Defendants Before 2019**

The Amended Complaint recited purported nefarious acts by the Prospect Defendants allegedly taking place during the time that Kim acted as Freeman's agent, such as a deliberate attempt to sabotage Freeman's work by having her complete multiple revisions, although Plaintiff did not expressly cite to these factual allegations in support of any of her causes of action. Plaintiff's expert Marlene Stringer, however, opined that these purported acts were breaches by the Prospect Defendants. (ECF 322, Ex. H ¶¶ 25-27.)

In her Opposition, however, Plaintiff does not raise *any* argument that her claims for breach of contract or breach of fiduciary duty are based on acts occurring during the course of the parties' agency relationship. In her "Factual Background," Plaintiff recites only that the parties worked together from 2010-14, during which time Freeman worked on multiple revisions; that Kim ultimately sent her manuscript to Entangled in the summer of 2013; and that in late 2013 Kim told

Freeman she needed to write something new or be kicked off of the Prospect website, after which the parties parted ways.[4] (Opp. at 2.) In the argument portion of her brief, Plaintiff's arguments are based entirely on alleged breaches occurring once Wolff began working on Crave. (Opp. at 7-16.) Plaintiff thus has abandoned any arguments based on acts occurring prior to that time.

3. **Given Plaintiff's Concessions, Plaintiff's Breach of Contract Claim Must Fail**

Plaintiff's claim (Count IV) for breach of contract against the Prospect Defendants is based solely on an alleged breach of the implied duty of good faith and fair dealing. In the Amended Complaint, Plaintiff did not identify any alleged breaches of express provisions of the parties' Agency Agreement, nor does she do so in her Opposition. Rather, her claim for breach is based entirely upon an allegation "that Kim shared Freeman's BMR manuscript with Wolff as they wrote the Crave book series, frustrating the very purpose for which Freeman contracted with Kim." (Opp. at 15-16.) As discussed in the Prospect Defendants' opening brief (SL Br. At 14), this claim overlaps entirely with Plaintiff's claim for breach of fiduciary duty, as Plaintiff now tacitly admits. (Opp. at 12 (jury could find breach of fiduciary duty if "Kim shar[ed] Freeman's work with Wolff, either directly or by feeding her key character, plot, and scene points from BMR throughout the writing process."); Opp. at 15 (implied covenant claim supported by "much of [] the same as the evidence [as] in support of her breach of fiduciary duties claim").)

Further, now that Plaintiff has conceded that her contract claim is not based on actions that occurred during the time that the parties worked together, that claim must be dismissed as there was no subsisting agreement to breach in 2019. Under clear precedent, an implied covenant does not survive the termination of the contract in which it is found. *See Int'l Techs. Mktg., Inc. v. Verint*

---

[4] The Prospect Defendants do dispute some of these factual characterizations, namely: Plaintiff omits that Kim made over 20 submissions to other publishers in addition to Entangled (Kim Decl. ¶¶ 2, 26, 30, 32, 37); that the Entangled submission was in the summer of 2013 (it was late October, *see* ECF 278 Ex. 21), and that Kim told Freeman she would be kicked off the website (Kim Decl. ¶¶ 50-51).

4

*Sys., Ltd.*, 157 F. Supp. 3d 352 (S.D.N.Y. 2016), *aff'd*, 850 F. App'x 38 (2d Cir. 2021) (consulting company had no cognizable claim for breach of the implied covenant, as the contract between client and consulting company had long expired); *see also Keefe v. New York Law Sch.*, 71 A.D.3d 569, 897 N.Y.S.2d 94, 95 (2010) (no claim for breach of implied covenant in absence of a subsisting contract). Plaintiff simply cannot maintain a claim for breach of the implied covenant for acts arising more a half-decade after the contract expired.

4. **Plaintiff's Claim for Breach of Fiduciary Duty Cannot Survive Dismissal of the Copyright Claim**

As to her claim for breach of fiduciary duty, Plaintiff argues that: (1) Kim/Prospect owed a fiduciary duty to Freeman that survived their agency relationship (Opp. at 5-6); (2) Kim had access to Freeman's manuscripts (Opp. at 7); (3) Kim had "ample opportunity to—and likely did— share those materials with Wolff and the other defendants" (Opp. at 7-9); (4) similarities between the works "strongly suggest[]s that Kim shared BMR's characters, scenes and plot with Wolff" (Opp. at 10-12); (5) Kim had a financial incentive to share the works with Wolff (Opp. at 12-13).

a. **Existence of Fiduciary Duty**

In their opening brief, the Prospect Defendants cited the most recent case in this Court on literary agents and fiduciary duty, which holds that simply acting as a literary agent, without more, does not create such a duty. SL Br. at 13-14 (*citing Clifford v. Janklow*, 2023 WL 2711353 (S.D.N.Y. Mar. 30, 2023)). Plaintiff criticizes this holding, issued less than a year ago by Judge Vyskocil, noting that the case is "unpublished" and "no subsequent case has relied on [it]," and citing older cases. (Opp at 6-7.) Plaintiff also argues the holding was narrow, but notably the Court finds no duty despite that the contract contained precisely the type of exclusivity language Plaintiff argues makes Kim a fiduciary here. *Clifford*, 2023 WL 2711353, *1 (agency "would act as the 'sole and exclusive representative and agent … to negotiate for the disposition throughout the

5

world of any and all [r]ights . . . to the next literary property . . .'"). At a minimum, the law appears unsettled in this Circuit as to whether a literary agent is always a fiduciary.

      b.      **There is No Evidence of Breach of Duty**

Even assuming Kim held a fiduciary duty to Freeman that survived termination of the agency agreement, Plaintiff cannot demonstrate breach of any such duty here. Plaintiff has adduced no direct evidence of any sharing of Freeman's work with the other Defendants, other than her submission to Entangled on Freeman's behalf in 2013. To try to fill this evidentiary gap, Plaintiff attempts to string together alleged circumstantial evidence, primarily citing Kim's work as an agent supporting Wolff while she was writing the Crave series, and a purported financial "incentive" for Kim to steal Freeman's work. (Opp. at 7-13.)

Defendants have entirely rebutted the assertion that Kim's work as Wolff's agent while Wolff wrote the Crave series included any sharing of material from Freeman's unpublished work. (DSUF ¶¶ 61-134.) All defense witnesses were expressly asked whether Kim or Abrams ever shared *BMR* or its contents with Wolff and Pelletier, and all denied it. (DSUF ¶¶ 61-62 (collecting testimony).) All witnesses were also asked if they ever discussed *BMR* or its contents, and all deny that too. (DSUF ¶¶ 63-65 (same).) Plaintiff disputes this testimony mostly by pointing to alleged "similarities between the Crave series and *BMR*" (Pl.'s CSUF ¶¶ 63-65), which are false as Defendants have shown. Plaintiff also claims that Kim's October 2013 pitch email to Pelletier (which admittedly did not include any *BMR* manuscript) amounted to "discuss[ing] BMR and its contents" (*id.* ¶ 64), but a 297-word high-level solicitation that Pelletier didn't even read (*id.* ¶¶ 52-55) hardly counts as a "discussion." Plaintiff otherwise reverts to the same evidence raised in her opening briefing (*i.e.*, texts about working in a Google doc), which does not withstand scrutiny and which Defendants refuted. (DSUF ¶¶ 106-111.) None of this raises a true fact dispute about

6

whether Kim shared *BMR* with Wolff or Pelletier. *See, e.g.*, *Del Villar v. Hyatt Hotel Corp.*, 2022 WL 2316205, at *2 (S.D.N.Y. June 28, 2022) (factual denials fail if "not supported by any citation to the record or are supported by citations that do not actually support the denial").

There is also no evidence that Prospect Agency was ever in any financial difficulty – it was not. (DUSF ¶ 136; Kim Decl. ¶¶ 8, 11.) Plaintiff's expert, Christine Witthohn, opines only that Prospect Agency's traditional sales were lagging, and that Kim began increasing work-for-hire sales. (ECF 322 Ex. E ¶¶ 13-20.) Even in her Opposition, Plaintiff states only that "Prospect's agency business was losing its biggest earners to independent or hybrid publishing" (Opp. at 12), not that the agency was in financial distress. Indeed, Plaintiff resorts to arguing that because *Wolff's* "career was in sharp decline" (*id.*), this provided Kim an incentive to steal. The assertion that Wolff's career was faltering also has been wholly rebutted. (ECF 302 ¶¶ 10-12; Kim Decl. ¶¶ 62-63).) And again, Plaintiff has not adduced a scintilla of evidence that Kim *actually* shared all or any part of Freeman's manuscripts with Wolff or anyone else.

c. **If Plaintiff's Copyright Claim Fails, So Must Its Fiduciary Duty Claim**

For the above reasons, Plaintiff's claim for breach of fiduciary duty reduces to an argument that if the Court finds the Crave series substantially similar to Freeman's manuscripts, it must mean Kim "shar[ed] Freeman's work with Wolff, either directly or by feeding her key character, plot, and scene points from BMR throughout the writing process." (Opp. at 12.) As stated before, the Prospect Defendants are aware of no cases holding that a finding of substantial similarity can supply the necessary *evidence* of breach in a claim based on violation of a fiduciary duty (SL Br. at 10), and Plaintiff identifies no such case law in opposition. Plaintiff instead cites non-controversial New York cases generally holding that circumstantial evidence may be presented in support of a claim, and inapposite copyright cases in which courts allow an inference of copying

7

through proof of access and similarity. (Opp. at 8.) These cases provide no precedent that a copyright substantial similarity analysis can provide evidentiary support for a separate state law claim of breach of fiduciary duty. Even if they did, it would not alter the result that if the copyright claim fails for lack of substantial similarity, as it must here, so too must the fiduciary claim.

   d. **Plaintiff's Fiduciary Duty Claim is a Copyright Claim in Disguise**

In an attempt to evade this result, Plaintiff argues that Freeman's claim for breach of fiduciary duty does not rise or fall with her copyright infringement claims because (a) the claim is not precluded by her copyright claim; and (2) the Prospect Defendants "breached their fiduciary duties by exploiting her work with a third-party competitor to her detriment regardless of whether that also constitutes copyright infringement."[5] (Opp. at 12-14.)

As to Plaintiff's first argument, she appears to be raising the doctrine of copyright preemption. The Copyright Act expressly preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103." 17 U.S.C. § 301(a). However, where an "'extra element' is 'required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie 'within the general scope of copyright,' and there is no preemption.'" *Computer Associates Intern., Inc. v. Altai, Inc.*, 982 F. 2d 693, 716 (2d Cir. 1992). The Prospect Defendants agree that in some cases a claim for breach of fiduciary duty may include the necessary "extra element" to avoid preemption. For instance, if Plaintiff argued that Kim failed timely to send out submissions,

---

[5] This is not how Plaintiff framed the fiduciary claim in her pleading, where she alleged that the Prospect Defendants violated their duty by making the false representations set forth in Plaintiff's now-abandoned fraud claims, and failing to disclose that Freeman's manuscript was provided to Wolff in order to commit infringement. (FAC ¶¶ 55-56.)

8

such a claim might not be preempted (although it would be fatally flawed for other reasons).

However, now that Plaintiff is clearly asserting claims based only on the distribution or use of copyrighted material in 2019 or thereafter, the analysis is different. As discussed previously, the only alleged injury suffered by Plaintiff here is, ultimately, infringement of her copyright. (SL Br. at 7.) While she says that the breach of fiduciary duty was "exploiting her work with a third-party competitor to her detriment," she fails to identify any such "detriment" other than publication of a new work of authorship. Further, the damages Plaintiff appears to seek entirely overlap with those sought on her copyright infringement claim (or at least she identifies no additional/different damages). As such, Plaintiff's claim for breach of fiduciary duty is no more than an infringement claim in disguise, and an attempt to recover copyright damages through another cause of action.

e. **Plaintiff Cannot Rely on a Comparison of Unprotectible Material as Proof of Breach of Fiduciary Duty**

Perhaps recognizing this fatal flaw in her argument, Plaintiffs posits a fantastical scenario where, five years after Plaintiff worked with Prospect, Kim gave Wolff a multitude of Freeman's unprotectable elements (plucked from notes and manuscripts spanning eight years) that were then used in the Crave series but are not substantial enough to add up to infringement.[6] (Opp. at 14 (arguing fiduciary claim remains "viable even if this Court somehow found that all similarities to be of elements that are unprotectable under copyright law").) Again, as framed by Plaintiff who identifies only copyright-related harm and is seeking copyright damages, this remarkable claim would appear to intrude upon the exclusive realm of copyright law, because in the absence of substantial similarity, there should be no claim based on the (alleged) exploitation of non-protectible or *de minimis* material. If Plaintiff's argument that a claim for breach of fiduciary duty

---

[6] This argument also fails because any alleged similarities, as Defendants show in their copyright reply brief, are based in the first instance on misleading and false summaries of the respective works.

9

could save such a failed copyright claim was to be adopted, it would open a Pandora's box of potential liability on the part of literary agents based on unprotectable materials they encounter over a long career,[7] which could prove devastating to the industry.

In any event, this jury-rigged argument collapses under its own weight. First, just as with her claim based on the sharing of protectible material, Plaintiff can point to no direct evidence that Kim actually shared *any* of Freeman's material, including non-protectible ideas or other such elements. Second, the types of non-protectible elements Plaintiff would have the jury seek to compare here, including mere ideas, tropes, stock characters, *scenes a faire* and the like, are elements in the public domain. *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 102 (2d Cir. 2014). Because such elements are free for all to use and ubiquitous, the appearance of these elements in a work indicates nothing about their source, and thus cannot be used as circumstantial evidence that the elements came from any particular source. In other words, Plaintiff cannot substitute a comparison of non-protectible elements for direct proof that materials were shared, because the overlap of non-protectible, public domain elements simply does not indicate copying.

## CONCLUSION

Plaintiff's state law causes of action, and in particular her grotesque and deeply hurtful attempts to portray a literary agent and her agency with a sterling reputation who went above and beyond in her work with Plaintiff as secretly working behind the scenes to undermine her author, have now been exposed as what they were all along – cynical, makeweight claims used primarily to create an illusion of substance when in truth this case has been built on fantasy all along. Plaintiff's remaining state law claims should be dismissed.

---

[7] Literary agents routinely represent authors in the same genres and see many books with similar concepts, tropes and characters. Indeed, Plaintiff has inadvertently demonstrated this by showing that many such elements appearing first in Wolff's *Tempest* series later appear in Freeman's work. (DSUF ¶ 30.)

Dated:  New York, New York
       February 28, 2023

Respectfully submitted,

KLARIS LAW PLLC

By: _____
    Lacy H. Koonce, III
430 West 14th Street
New York, NY 10014
Phone: (917) 612-5861
lance.koonce@klarislaw.com

*Attorneys for Emily Sylvan Kim and Prospect Agency, LLC*

11

  I, Lacy H. Koonce, III, hereby certify that a true and correct complete copy of the Reply Memorandum of Law in Support of Prospect Defendants' Motion for Summary Judgment on Plaintiff's State Law Claims has been served on all counsel of record via the Court's CM/ECF service.

<u>/s/ Lacy H. Koonce, III</u>
Lacy H. Koonce, III