UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—————————————————————————x

LYNNE FREEMAN,

    Plaintiff,

-against-                                22-cv-2435 (CM)

TRACY DEEBS-ELKANANEY, et. al

    Defendants.

—————————————————————————x

## SECOND NOTICE TO COUNSEL

McMahon, J.:

    Counsel,

    I will be sending out notices like this one to you periodically. I prefer this to frequent in person conferences, especially when counsel for one side is a continent and three time zones away.

    I have received the plaintiff's letter of October 27, 2025, and I see that we are having a jury trial. So I need to figure out a way to make this case manageable for a jury.

    But first, I need to dispel the notion that anything Judge Stanton said about how he would try the case remains pertinent. I am now the trial judge. And while I am second to none in my admiration for Judge Stanton, nothing he said about how he would try the case is in any way binding on me as the new trial judge. We are going to do this trial my way; you folks will simply have to accept that.

    The fact that Judge Stanton decided that he would not bifurcate the trial is not binding on me, and from the perspective of keeping things as simple as possible for the jury, I don't think it is the best way to try the case. So I will not be doing it that way. I will be segmenting the trial of

this action in the manner I first indicated I would: you will be presenting your evidence on the issues of probative similarity and access, after which I will charge the jury on those issues. If the jury finds for the plaintiff on both probative similarity and access, you will put in any additional evidence you might have on substantial similarity and make a second closing argument, after which I will deliver the charge on that standard. And if the plaintiff prevails on substantial similarity, we will hear evidence on damages and I will charge the jury on damages. That decision has been made and will not be changed. Where the defendant wants/needs to try the affirmative defense of independent creation remains to be discussed.

Now, the open questions are what that evidence will be – and how long I will give you to put it on.

Judge Stanton was of the opinion that competent trial counsel should be able to argue from that evidence in the manner set out in, say, pages 7 through 21 of the plaintiff's brief at Docket No. 393. I don't disagree with his basic premise, which is that we can (and must) find a manageable way to try this case. But Judge Stanton did not address what to me is the critically important issue: whether summaries of underlying evidence (and that is what pages 7 through 21 of the brief at Dkt. No. 393 are) can be (1) shown to the jury at all; and (2) given to the jury to assist jurors during deliberations.

Summary charts certainly can be both shown to the jury and sent back to the jury room if they are admitted as evidence under the "summaries of voluminous material" rule, pursuant to Fed. R. Evid. 1006. *See. e.g.*, *In re Bernard L. Madoff Inv. Sec., LLC*, 605 B.R. 570, 587–88 (S.D.N.Y. 2019), *aff'd sub nom.* 830 F. App'x 669 (2d Cir. 2020). But this is a copyright case. The issue of probative similarity can only be resolved by looking at "the entire work." *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F. 3d 119, 123 (2d Cir. 1994). And while the ultimate issue of

substantial similarity (should we reach it) involves comparing only the "protectible elements" of the two works – which excludes such things as mere *scenes a faire, see, e.g., Williams v. Chrichton*, 84 F. 3d 581, 588 (2d Cir. 1996) – the trier of fact gets to decide what is protectible and what is not, and cannot reach any conclusions on the issue of substantial similarity without comparing the original versions of the allegedly infringing and infringed works. So this is not a case, as was *Madoff,* in which complicated matters can be simplified for the jury by admitting a summary document into evidence pursuant to Rule 1006. Rather, the underlying works must be admitted into evidence, and the jury must be told that they, not any summaries of their contents that might be used by counsel as illustration, *are* the evidence.

This does not mean that the parties cannot use illustrative aids that summarize the evidence during, for example, summation; that is allowed under Fed. R. Evid. 107, or perhaps Rule 611(a). Those summaries – which would not be evidence – would have to be prepared well in advance of trial and carefully vetted by the court. And ultimately, the court would have to decide whether such "aids" could be sent back to the jury during deliberations – a conclusion that I would be reluctant to reach if the aids were argumentative in any way that went beyond simply pointing out what the parties contend are the similarities (Plaintiff) and the differences (Defendants) between the allegedly infringed and the allegedly infringing works.[1]

I am looking for guidance about how other courts have handled this issue – if indeed any other courts have confronted a jury trial in a copyright case that involves over 10,000 pages of allegedly infringed and infringing material. To that end, each side must provide me, by close of business next Friday, November 14, 2025, with a brief pointing me to copyright cases that, like this one, have gone to trial and involve voluminous amounts of allegedly infringed and infringing

---

[1] The footnotes at pages 7-21 of the brief at Dkt. No. 393 would be an example of what I consider a non-argumentative summary of the evidence.

material. I am interested in what procedures court have adopted in previous copyright cases to expose the jury to voluminous allegedly infringed and infringing materials that must be compared in their original, not summary, form. If you cannot find copyright cases that deal with this problem but can locate analogous cases, I would be interested in seeing them as well. And if you have suggestions about how we might deal with this problem – and I do consider it to be a problem, rather more of one than Judge Stanton apparently did – I would like to hear them. I need to set the rules soon, so that your trial preparation does not go off in the wrong direction.

I am not placing a page limitation on these briefs because I really want you to give me everything you can find. But remember – Artificial Intelligence is not an acceptable substitute for human research. Anything you give me had better not contain AI-generated content or citations that turn out to be non-existent. If you rely on AI, you could find yourself precluded from being allowed to offer any evidence at all.

Each side must also provide me, by close of business on November 25, 2025, with the following information:

(1)    A list of what you consider the material at issue in this trial to be – infringed versus infringing. Please understand that we are going to trial in Docket Number 22 Civ. 2435 and in no other related case. After reading Judge Netburn's Report, and keeping in mind Judge Stanton's subsequent ruling (which, I remind you, does not preclude me from deciding, at the close of plaintiff's case, that a verdict should be directed on any issue or issues), it is my understanding that we are dealing with four Tracy Wolff books – *Crave, Crush, Covet and Court* – and *BMR/Masqued* versions 2010, 2011, 2013, 2013 and 2014 (possibly 2016, that remains to be decided), plus a subset of the plaintiff's notes (which I would limit to the ones referenced in pages 7–21 of Dkt. No. 393). If you disagree with

this, let me know. But do not expect me to include in the record anything that was written after the original lawsuit was filed. Because I will not do so. The original case is complicated enough.

(2)    A list of exhibits *other than* the material listed in the preceding paragraph that each side would like to introduce at trial. While probative and substantial similarity will be proved with the material listed in the preceding paragraph – this is, after all, a copyright case – I gather there are some emails and communications among the parties that are relevant to the very much disputed issue of direct and/or intermediary access. And of course there may be exhibits that go to the affirmative defense of independent creation, though I would expect that testimony, rather than exhibits, will be the primary method of proving that issue.

Be warned that I will admit no more than 100 such exhibits from each side, so don't go overboard. I will deal with objections later, but prior to jury selection, at the final pre-trial conference.

(3)    A list of the witnesses each side intends to call, together with your best estimate of how long your examination of each witness will take. After you see your opponent's list of witnesses, you will have until December 12, 2025 to give me your best estimate of how long your cross examination of each of your opponent's witnesses will take.

Once I see how long you think this trial will take, I will tell you how long you will actually be allowed to be on your feet. In case you are unfamiliar with being "on the clock" at a jury trial: I will allot each party a specific number of hours – which may not be the same for all parties, especially here, where there are several defendants who have different lawyers – for you to use in

presenting your case. My law clerks will be keeping time throughout the trial. Once you have used up the number of hours that I allot you for questioning witnesses, there can be no further questioning by your client. Now, you may think I am kidding; perhaps you have participated in a civil trial where the judge, having given you a certain number of hours to examine witnesses, did not stop you when you run out of time. I am not that judge. I have enforced this rule at complicated trials in the past; I will do so in your case as well.

I want to figure out how I am going to try this case before Christmas, so we can get started in March, as I told you I hoped to do. So please do not ask for an extension of time for any of these submissions. As far as I am concerned, you are already on trial, and I need to move this case along.

We entered an order yesterday asking for hard copies of the books, the *BMR* drafts, and the plaintiff's notes. I do not read evidentiary materials online; I need to be able to make notes, and I can only do that on hard copies. I have now read *Crave* and am generally familiar with the plots of the three subsequent books, though I have yet to read them. Before I dive into those, I will read some version of *BMR*, which should give me a solid overview of the case. I will digest the rest of the material over the next couple of months.

As always, thank you and I look forward to working out these difficult procedural matters with you.

Dated: New York, New York
November 4, 2025

U.S.D.J.

BY ECF TO ALL COUNSEL