UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x

LYNNE FREEMAN,

      Plaintiff,

  -against-                                   22 civ. 2435 (CM)(SN)

TRACY DEEBS-ELKENANEY et al.,

      Defendants.

_____ x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/22/2025

## MEMO TO COUNSEL AND NOTICE OF PRE-TRIAL CONFERENCE

McMahon, J.:

I apologize for the amount of time it has taken to get back to you following your recent submissions. Several matters that required my immediate attention diverted me from this case. But I am back.

I have finished reading all four *Crave* novels and both *BMR* (2011) and *Masqued* (2013), plus whatever Freeman notes Judge Netburn had in her files. Jordyn Manly has sent you an email asking you to email back to us certain materials that we cannot seem to find anywhere in the courthouse – either on file or in Judge Netburn's chambers. The sooner we get that material, the better. As I promised you, I am reading every word.

But before I dive into anything else, we need to set aside time for a trial. Rather than abide intervening events, I suggest that you reserve the period beginning on April 27 and May 22 – four weeks, ending with Memorial Day weekend. I think that should be more than enough time. But since I am determined not to confuse the jury, we will be trying this case in tranches, and that will undoubtedly cause the trial to go longer than it otherwise might. Of course, we will only go as far

as we need to go in order to dispose of the case – for example, if the jury concludes at the end of Phase 1 that there was no access, the trial will be over. That is another reason why trying the case in tranches makes sense. Please also reserve Wednesday, April 29, for a final pre-trial conference here in New York.

So having done that: I want to schedule a conference here in New York – attendance mandatory, the California lawyers will have to fly in here – for the week of January 12. Any day, Monday through Thursday, is fine with me; consult among yourselves and pick a day that is mutually convenient to you. I will be sure my deputy clerk (Mariela de Jesus) reserves a full half day, because we will doubtless have a great deal to discuss. She is away until after the first of the year.

I was taught to try a case by starting at the end and working my way back to the opening statement. I like to prepare cases for trial in the same way. For a judge, the end is jury instruction. Therefore, during the week of January 5, I would like to receive from each side your proposed jury instructions. I don't mean general instructions – the ones given during every trial – I will use the ones I use at every civil trial, so there is little point in your submitting "proposals" to me. Nor do I mean instructions about damages. I mean your instructions relating to the copyright claims. Finding pattern jury instructions that might be helpful in this case has proved challenging, so I may as well get your input on this critical issue now. And your proposed instructions should be tailored to the phases of the trial – one phase dealing with actual copying (probative similarity and access), one phase dealing with substantial similarity.

One thing I need to emphasize, because there seems to be some disconnect between Second and Ninth Circuit copyright law: I sit in the Second Circuit, not the Ninth. And the plaintiff chose to sue in the Second Circuit, not the Ninth. So to the extent that there are special or unique Ninth

Circuit tests or instructions that have not been adopted by the Second Circuit, I will not be charging them, so you should not bother submitting them. Please focus on Second Circuit law in formulating your jury instructions.

The principal task confronting me is to figure out what I need to decide in advance of trial in order to make this as easy as possible for the jurors. The topics include the following:

1.      **What exactly is the plaintiff's theory of why the defendant's works infringe?**

I was surprised to read in the recent submission that the plaintiff appeared to be relying on a "selection and arrangement" theory of liability – in essence conceding that the defendants' novels contain elements also found in plaintiff's work that are not in and of themselves protectable, but that are "selected and arranged" in such a manner as to infringe on *BMR/Masqued* and perhaps some associated notes (although so far I haven't found anything in the notes that is not also in one of those texts). I am not familiar with "selection and arrangement" as applied to original works of literature, as opposed to compendia of information like telephone books and catalogs. But I am prepared to try to understand why that theory would or could apply to novels. However, I need to get up to speed on that right now.

If, on the other hand, the plaintiff is contending that there are specific aspects of her work that are both protectable and infringed (such that there could be a finding of substantial similarity on that basis, rather than on, or in addition to, a "selection and arrangement" basis), then I need to know exactly what her argument is. Is it that the "total concept and feel" of the *Crave* novels – which, as we know, are far more extensive and detailed than *BMR/Masqued* – apes the "total concept and feel" of the much shorter and less detailed Freeman works? Is it that the plot of the *Crave* novels was copied from plaintiff's plot? Is it that there are protectable (i.e., non-tropic or *scene-a-faire*) themes or plot elements that *Crave* copies from Freeman's work – and if so, exactly

what are those non-tropic or *scene-a-faire* elements? Is it some combination of the above? I need to understand this in terms of what the argument is going to be on the issue of "substantial similarity."

Probative similarity is different. As I understand the law, the existence of a large number of non-protectable similarities between the *Crave* novels and *BMR/Masqued* can prove probative similarity; but that evidence cannot be relied on to prove substantial similarity, because substantial similarity is not the product of discrete elements, but rather asks whether there is more than a *de minimis* similarity between the allegedly infringed and infringing works, considering only those aspects of the infringed work that are protectable.

**2. How does Judge Netburn's *Daubert* ruling in connection with the summary judgment motion play into a trial, and is there any basis upon which either side thinks it should be reconsidered?**

Let me make one thing perfectly clear: no one is going to get on the witness stand during Phase 2 and opine that the allegedly infringed and infringing works are – or are not – substantially similar. Nor will any expert be allowed to opine, during Phase 1, that there are enough similarities between the works such that probative similarity exists. (What evidence can be received on that discrete issue in Phase 1 – and only for purposes of Phase 1 – will be the subject of discussion, but it will not be expert testimony). These books may be long, but they are pitched to a young and unsophisticated reader. We don't need experts weighing in on ultimate issues.

That said, I would think that expert testimony was admissible to explain to the jury such concepts as "what is a trope" or "what is a *scene a faire*" – ideas that are probably not within the ken of the average juror. I would also think that expert testimony was admissible on the subject of what kinds of tropes or *scenes a faire* appear routinely in YA romance novels about paranormal beings who are coming of age and into their powers. But any such testimony would be quite

limited; I would not allow an expert to opine that any specific aspect of either the *Crave* novels or *BMR/Masqued* qualifies as a trope or a *scene a faire*, because that, as I understand it, is something the trier of fact must decide. But once the jurors were given some generalized evidentiary context about those issues, the parties would be free to argue that particular things that are alleged to be protectable either are protectable (because they are not tropes/*scenes-a-faire*) or are not protectable (because they are tropes/*scenes-a-faire*). I would imagine that would be a substantial part of Phase 2 of the trial.

### 3. What special evidentiary rulings will need to be made in advance of trial?

It is my custom to rule on all objections to the introduction of evidence prior to trial. It is also my custom to limit the number of exhibits that can be introduced – something that strikes me as particularly important where, as here, we will have to introduce into evidence four novels, multiple drafts of *BMR/Masqued*, and perhaps some preliminary notes that I have not yet seen. I would like to deal with evidentiary issues no later than early March, so people know how to plan. But I would like to identify what those issues are going to be sooner rather than later.

### 4. Settlement

I don't know what discussions you have had or what efforts Judge Netburn made to settle this case, but it seems to me that someone ought to undertake that task. With a movie deal in the works – and I imagine progress on that movie deal held up as long as this case remains undecided, which may be through an appeal from a verdict and a decision on the inevitable post-trial motions – the stakes appear to me to warrant a serious effort to settle the case. When you arrive in New York I will introduce you to Jim O'Neill, my senior law clerk (for those of you familiar with New York State practice, think law secretary). Jim conducts all settlement discussions in my civil cases, leaving me free to focus on preparing a case for trial. Jim is an extremely experienced settler of

complicated civil actions, and his perspectives are often enlightening to parties. I think you will enjoy working with him.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

I am sure that I will think of other things I want to discuss while working over the holidays. But I wanted to get this out now, before I left for Christmas, so you could get started. We have a lot to do in the next few months.[1] I look forward to working with you.

A very happy holiday season to all.

Dated: December 22, 2025

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

---

[1] Just so you understand: because I have to close this case prior to Jordyn's departure in late September, any post-trial motions (and I am under no illusion that there won't be post-trial motions) will have to be filed within the 28 period following the entry of judgment on any verdict as provided in Rule 59, or within 28 days following delivery of the verdict if we postpone entry of judgment. This means motions will be due by sometime in mid-to-late June, and responses will be due 21 days thereafter. There will be no extensions of time, because I will have to get an opinion done during August. Make your summer plans accordingly. Once again, this would all be much simpler — and much less work — if we simply had a non-jury trial. I urge Ms. Freeman to think again about whether that would not be in her best interest, especially as I can guarantee her that I either have read or will read every word she wrote.