**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>

LYNNE FREEMAN,

       Plaintiff,

  -against-

TRACY DEEBS-ELKENANEY, et al.

      Defendants.

</td><td>

Case No. 2:22-cv-02435 (CM)(SN)

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RULE 7 BOND AND RULE 54.2 BOND**

</td></tr>
</table>

i

**TABLE OF CONTENTS**

I.    Introduction..............................................................................................................1

II.   Legal Standard……………………………………………………………….2

III.  Argument……………………………………………………………………….4

    a.  Defendants' motion is an improper attempt to adjudicate, through a back door,

        and tax Freeman with a fee claim this Court has properly held in abeyance……...4

    b.  Freeman's claims are far from frivolous / without merit………………………….7

    c.  Defendants entirely fail to argue that Freeman has no significant resources

        and offer only mudslinging and conjecture that Freeman will not pay………….10

    d.  Freeman has not engaged in any vexatious or bad faith conduct………………..12

    e.  The amount of the bond is unsupported, unsupportable, and serves no

        purpose but to unduly burden and vex Freeman……………………………………13

    f.  The remaining factors favor Freeman………………………………………………17

IV.   Conclusion………………………………………………………………………..17

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Adsani v. Miller*,

   139 F.3d 67 (2d Cir. 1998) ................................................................................................ 4, 11

*Atlanta Shipping Corp. v. Chemical Bank*,

   818 F.2d 240 (2d Cir. 1987) ..................................................................................................... 5

*Baker v. Urb. Outfitters, Inc.*,

   431 F. Supp. 2d 351 (S.D.N.Y. 2006) ..................................................................................... 12

*Berry v. Deutsche Bank Tr. Co. Americas*,

   632 F. Supp. 2d 300 (S.D.N.Y. 2009) ....................................................................................... 9

*Bryant v. Media Right Productions, Inc.*,

   603 F.3d 135 (2d Cir.2010) ........................................................................................................ 9

*Burns v. Rovella*, No. 3:19-CV-,

   00553 (JCH), 2021 WL 6339251 (D. Conn. Nov. 10, 2021) ................................................ 8, 10

*Chivalry Film Prods. v. NBC Universal, Inc.*,

   No. 05 Civ. 5627(GEL), 2007 WL 4190793 (S.D.N.Y. Nov. 27, 2007) ..................................... 9

*Farmer v. Arabian American Oil Co.*,

   285 F.2d 720 (2d Cir. 1060) ................................................................................................... 16

*Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*,

   2010 WL 3452375 (S.D.N.Y. Sept. 1, 2010) ............................................................................. 9

*In re Credit Default Swaps Antitrust Litig.*,

   No. 13-md-2476, 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)................................................. 2

*In re Currency Conversion Fee Antitrust Litig.*,

    No. 01 MDL 1409, 2010 WL 1253741 (S.D.N.Y. Mar. 5, 2010) ................................................ 2

*In re Gen. Elec. Co. Sec. Litig.*,

    998 F.Supp.2d 145 (S.D.N.Y. 2014) ........................................................................... 2, 12, 14

*In re Initial Pub. Offering Sec. Litig.*,

    728 F. Supp. 2d 289 (S.D.N.Y. 2010) ..................................................................................... 4

*In re Petrobras Sec. Litig.*,

    363 F. Supp. 3d 426 (S.D.N.Y. 2019) ........................................................................... 12, 14

*Kensington Int'l Ltd. v. Republic of Congo*,

    No. 03 CIV. 4578 (LAP), 2005 WL 646086 (S.D.N.Y. Mar. 21, 2005) ................................... 11

*Morgan Art Found. Ltd. v. McKenzie*,

    No. 18 CIV. 4438 (AT), 2019 WL 2725625 (S.D.N.Y. July 1, 2019) ..................................... 11

*Miller v. Town of Suffield*,

    249 F.2d 16 ......................................................................................................................... 16

*Mohamed v. Rajoub*,

    No. 05 CIV. 8335 (LAP), 2008 WL 194746 (S.D.N.Y. 2008) .................................................. 3

*Oliveri v. Thompson*,

    803 F.2d 1265 (2d Cir.1986) ............................................................................................... 12

*Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*,

    207 F.R.D. 23 (E.D.N.Y. 2001) ....................................................................................... 2, 10

*RLS Assocs., LLC v. United Bank of Kuwait PLC*,

    464 F. Supp. 2d 206 (S.D.N.Y. 2006) ................................................................................... 3

*RLS Assocs., LLC v. United Bank of Kuwait PLC*,

  2005 WL 578917 (S.D.N.Y. Mar.11, 2005) ................................................................. 3

*Sawabeh Info. Servs. Co. & Edcomm, Inc. v. Brody*,

  No. 11 CIV. 4164 (SAS), 2014 WL 13117001 (S.D.N.Y. Mar. 17, 2014) ............................... 10

*Selletti v.* Carey,

  173 F.R.D. 96 (S.D.N.Y. 1997) ......................................................................... 5, 17

*Selletti v. Carey*,

  173 F.3d 104 (2d Cir. 1999) ................................................................................. 5

*Sharbat v. Iovance Biotherapeutics, Inc.*,

  No. 20-CV-1391 (ER), 2024 WL 2078390 (S.D.N.Y. May 9, 2024) ...................................... 12

*Tri-Star Pictures, Inc. v. Unger*,

  32 F. Supp. 2d 144 (S.D.N.Y.) ......................................................................... 11

*United States v. M/Y Amadea*,

  23 CIV.9304 (DEH), 2025 WL 1948986 (S.D.N.Y. July 16, 2025) ................................. 14, 15

*United States v. M/Y Amadea*,

  23 CIV. 9304 (DEH), 2025 WL 3237891 (S.D.N.Y. Nov. 20, 2025) ................................. 14

*Valentini v. Citigroup, Inc.*,

  No. 11 CIV. 1355 JMF, 2014 WL 502066 (S.D.N.Y. Feb. 7, 2014) ................................. 12

*Watson v. E.S. Sutton, Inc.*,

  No. 02 CV 2739KMW, 2006 WL 4484160 (S.D.N.Y. Dec. 6, 2006) ................................. 7, 16

**Rules**

Fed. R. App. P. 7 ....................................................................................... 1, 2, 3, 4

v

Fed. R. App. P. 38 ........................................................................................................... 2

Fed. R. Civ. P. 62 ............................................................................................................ 4


**Other Authorities**

3 Barron & Holtzoff, Federal Practice and Procedure § 1198 (Wright Ed. 1958) ........................ 16

3A id. § 1712 (Wright Ed. 1958) .................................................................................... 16

6 Moore's Federal Practice 1327, 1330 (2d Ed. 1953)................................................... 16

L.R. 54.2 ......................................................................................................................... 17

## I.    Introduction

Based on little more than speculation, self-serving (and inaccurate) characterizations of the history of this litigation, and some mudslinging for good measure, Defendants ask this Court to do something extraordinary: order Plaintiff Lynne Freeman to post a bond to secure the potential payment of putative fees that this Court has not awarded. In fact, pursuant to Local Rule 54.1 those fees should not be taxed during the pendency of the appeal and, as preliminarily addressed below,[1] should not be awarded regardless of the outcome of the appeal. Yet Defendants request a bond of $3,557,435.19[2]—which appears to be far larger than any cost bond ever required in this district in a copyright case—despite that request being unsupported (and unsupportable) by any of the authorities on which Defendants rely. Indeed, it appears that every Local Rule 54.2 case Defendants rely on for a substantial bond involves either (a) a monetary judgment already entered, or (b) fee entitlement already adjudicated. It would be entirely unprecedented for a Court to Order a bond to secure a multi-million dollar claim for past fees that has not yet been adjudicated.

Perhaps more importantly, none of the factors relevant to either Rule 54.2 or Rule 7 weigh in favor of Defendants' motion since, (1) this litigation is not and never was frivolous, and (2) Defendants do not claim that Freeman is without resources or an inability to pay in the event they ultimately secure a monetary judgment against her, and offer nothing but bald speculation and innuendo to justify their requested bond.

---

[1] See Section III (a) below, which is not a substitute for or full accounting of Plaintiff's arguments in opposition to Defendants' fee motion that this Court held in abeyance. Freeman should not be forced to exhaustively argue her opposition to that fee motion at this juncture, or the propriety and amount of a bond without having even been provided copies of any records substantiating the exorbitant billing claimed by Defendants' counsel.

[2] Defendants request $3,407,435.19 under a Local Civil Rule 54.2 and an additional $150,000 under Federal Rule of Appellate Procedure 7.

1

Defendants have failed to meet their burden to justify the extraordinary relief they seek. This motion should be denied.

## II.      Legal standard

Local Rule 54.1 provides, *inter alia*, that "[c]osts will not be taxed during the pendency of any appeal, motion for reconsideration, or motion for a new trial." Because a motion to require a bond under Local Rule 54.2 effectively seeks to tax costs during the pendency of an appeal—since the party against whom the bond is ordered essentially needs to post the amount of the costs up front—it should be viewed as an extraordinary remedy and only granted in rare circumstances after careful consideration of relevant factors, lest it frustrate the letter and intent of Local Rule 54.1.

To be sure, Rule 54.2 bonds are not warranted simply because a party is or may be entitled to some form of monetary relief. Rather, they are meant to serve the narrow purpose of "protect[ing] defendants who [are] faced with claims of dubious merit made by plaintiffs with no significant resources." *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 207 F.R.D. 23, 25 (E.D.N.Y. 2001).[3]

---

[3] See also, *In re Gen. Elec. Co. Sec. Litig.*, 998 F.Supp.2d 145, 151 (S.D.N.Y. 2014)(noting that "the Court of Appeals may impose an award of damages on an appellant pursuing a frivolous appeal, and a district court may consider that likelihood in assessing the scope and amount of a Rule 7 Bond."); see also *In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476, 2016 WL 2731524, at *19 (S.D.N.Y. Apr. 26, 2016) ("when an objector lodges a frivolous appeal to a class action settlement, a district court may impose a Rule 7 Bond in the amount of the additional administrative expenses that are reasonably anticipated from the pendency of the appeal") This is particularly true where the movant demands that the bond cover the amount of their attorney's fees. See *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2010 WL 1253741, at *2 (S.D.N.Y. Mar. 5, 2010)("Some courts have also allowed a Rule 7 bond to include attorney's fees where the district court concludes that the court of appeals might award attorney's fees as costs under Fed.R.App.P. 38 because the appeal is frivolous.")

The factors to be considered by the Court in determining whether a bond is warranted under Rule 54.2 include "(1) the financial condition and ability to pay of the party who would post the bond, (2) whether the party is a non-resident or foreign corporation, (3) the merits of the underlying claims, (4) the extent and scope of discovery, (5) the legal costs expected to be incurred, and (6) compliance with past court orders." *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 220 (S.D.N.Y. 2006), citing *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 2005 WL 578917, at *1 (S.D.N.Y. Mar.11, 2005).

Importantly, Local Rule 54.2 is concerned with prospective costs – costs that may be incurred going forward in the litigation – rather than costs that have already been incurred.[4] As Defendants' motion acknowledges, the factors generally considered in Local Rule 54.2 motions include "the legal costs expected to be incurred." Defs' Memo, p. 5. *See also Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, 2010 WL 3452375 *3 (S.D.N.Y. 2010) ("'[C]ourts have held that 'a party's apparent financial inability to pay **prospective costs** is sufficient in and of itself to justify an order requiring the posting of a cost bond under Rule 54.2'" (Emphasis Added).[5]

Similarly, Rule 7 exists for the limited purpose of securing prospective costs, i.e., funds "sufficient to ensure payment of costs on appeal" for an appellee where there is a substantial risk

---

[4] Securing a judgment for attorneys' fees is the function of a Rule 62/Rule 8 supersedeas bond — but that presupposes an entered money judgment whose execution is being stayed. Here the fee motion has been held in abeyance, thus Defendants are essentially seeking to compel Freeman to post security to stay execution of a judgment for an uncertain amount that does not exist based on an inapplicable vehicle.

[5] The remedies proscribed by Local Rule 54.2 evidence that it is only applicable to prospective costs: "an order striking out pleadings or staying further proceedings until the bond is filed or dismissing the action or rendering a judgment by default against the noncomplying party." Any other interpretation of Local Rule 54.2 would be inconsistent with Local Rule 54.1 which prohibits the District Court from taxing costs during the pendency of any appeal.

3

that said funds would be unavailable otherwise. *In re Initial Pub. Offering Sec. Litig.*, 728 F.

Supp. 2d 289, 292 (S.D.N.Y. 2010). Throughout their brief, Defendants rely heavily on *Adsani v.

Miller*, 139 F.3d 67 (2d Cir. 1998), a copyright case in which the Second Circuit affirmed a Rule

7 bond that included appellate attorney's fees. But *Adsani*'s footnote 2 is explicit that a Rule 7

"appeal bond" is *prospective,* "relating to the potential expenses of litigating an appeal," while a

supersedeas bond under Rule 8 / Fed. R. Civ. P. 62 is *retrospective*, "covering sums related to the

merits of the underlying judgment (and stay of its execution)." And before ordering a Rule 7

appeal bond, courts weigh the following factors: "(1) the appellant's financial ability to post a

bond, (2) the risk that the appellant would not pay appellee's costs if the appeal loses, (3) the

merits of the appeal, and (4) whether the appellant has shown any bad faith or vexatious

conduct." *Id*.

  **III. Argument**

    **a. Defendants' motion is an improper attempt to adjudicate, through a back**
      **door, and tax Freeman with a fee claim this Court has properly held in**
      **abeyance.**

  Nearly the entirety of Defendants' request for a $3,557,435.19 bond is sought pursuant to

Local Rule 54.2 for their unsubstantiated claim for attorneys' fees already incurred in the

proceedings in this case. Even assuming *arguendo* Local Rule 54.2 were applicable to secure

such costs (it is not, as it and Fed. R. of App. Proc. 7 are intended to be applied at the

commencement of an action to secure prospective costs – not after there has been an

adjudication), this motion should be denied as an improper attempt by Defendants to *either* force

this Court to address the merits of a fee motion it held in abeyance *or* force Freeman to argue

4

against a bond for a speculative possible future fee award that is not properly within the purview of Local Rule 54.2 or Rule 7.

Perhaps understanding that *Adsani* forecloses any claim to trial-level fees as part of an appellate bond, Defendants seek "security" for their unadjudicated fee request under Local Rule 54.2 only, but that rule is a district-court security-for-costs device, discretionary and tied to prospective, recoverable, ascertainable costs. *Selletti v. Carey*, 173 F.3d 104 (2d Cir. 1999)[6]; *Atlanta Shipping Corp. v. Chemical Bank*, 818 F.2d 240 (2d Cir. 1987). Local Rule 54.2 has never been used to, and was never intended to, authorize locking up an unadjudicated, contingent multimillion-dollar district court fee claim for work already done. Using 54.2 to do so is a backdoor supersedeas bond without a judgment and is improper because, *inter alia*, neither the entitlement nor the amount has been fixed.

Defendants spend pages arguing that Freeman's claims were frivolous and suggest that their entitlement to fees is preordained, but their arguments quickly fall apart when this Court considers the evidence and findings in this case. Specifically, Freeman's ownership of a valid copyright in her work was beyond dispute, and there was strong evidence of access[7] and actual copying—indeed, the Court's findings of probative similarity means that it found that the independent creation of the *Crave* series implausible.[8] Given the strength of Freeman's claims on

---

[6] *See Selletti v.* Carey, 173 F.R.D. 96, 101 (S.D.N.Y. 1997), With respect to the amount of security sought in that case, the moving defendants contended that "[i]t is reasonable to anticipate that defendants' attorneys' fees in this action will exceed several hundred thousand dollars to properly defend [defendants'] interests and to summarily dispose of plaintiff's action at the close of discovery." (Liebman Aff. ¶ 8). Accordingly, the moving defendants requested that bond be posted in the amount of $250,000.

[7] Defendants had access to Freman's work through a shared agent (intermediary) who participated in the writing of the offending *Crave* series. *See* Dkt. No. 361, pg. 7 (confirming it is undisputed that Defendant Kim, Tracy Wolfe's literary agent, had access to Freeman's works).

[8] Id., pg. 13 (finding that "[a]bsent copying, one would not expect two works to share these kinds of similarities.") Judge McMahon similarly recognized the probative similarity in the parties'

those elements, there is no justification to find this case "frivolous" merely because Defendants may have changed their work enough for this Court to find insufficient substantial similarity of protectable expression.

Because there is a real question of whether *any* award of fees to Defendants is warranted and the no evidence before the court from which to determine what amount of fees they reasonably incurred, this Motion must be denied—at least to the extent it seeks security for those fees. Otherwise, it is an improper effort to circumvent this Court's Order adjourning Defendants' fees motion (consistent with Local Rule 54.1) pending the resolution of Freeman's appeal (Dkt. No. 554). The parties should not be arguing the fee motion at this point, but it is largely impossible to address Defendants' bond motion without doing so since their putative entitlement to fees and the reasonableness of any taxable fees are the driving factors underlying the amount sought.

Without having any opportunity to look at Defendants' billing statements, neither Freeman nor the Court can meaningfully address the necessity of a bond or Freeman's ability to secure one. This is especially concerning given how quickly Defendants' attorneys' fees appear to have inflated after new counsel substituted into the case, as one summary judgment motion earlier they had indicated costs of "more than a million dollars" that has suddenly ballooned to over three.[9]

---

respective works noting on the record that Freeman likely had the better case on probative similarity.

[9] Katy Waldman, *Did a Best-Selling Romantasy Novelist Steal Another Writer's Story?,* The New Yorker, January 6, 2025, *https://www.newyorker.com/magazine/2025/01/13/did-a-best-selling-romantasy-novelist-steal-another-writers-story*. ("The litigation, which is ongoing, has cost Freeman several hundred thousand dollars and the defendants more than a million.")

This Motion is not a request for security in light of extenuating circumstances; it is a demand that Freeman surrender the entirety of Defendants' hypothetical and unsupported fee award before it has even been granted. Critically, Defendants cite no authority in which a court has ever awarded such a bond. And there appears to be none.

The authority on which Defendants do rely—*Watson v. E.S. Sutton, Inc.*--offers them no real assistance. In that case, the court *did not* order either the requested Rule 54.2 or Rule 7 bonds while the fees motion was stayed pending appeal; it only did so *after* fulsome briefing on and granting of the appellee's attorney's fees motion *and* after the Second Circuit rendered its decision. *Watson v. E.S. Sutton, Inc.*, No. 02 CV 2739KMW, 2006 WL 4484160, at *1 (S.D.N.Y. Dec. 6, 2006). *Watson* thus lends no support to Defendants' request that this Court order both bonds now, while Defendants' fees motion is being held in abeyance and Freeman is in the middle of preparing her appellate brief.

### b. Freeman's claims are far from frivolous / without merit

Freeman's case is neither frivolous nor without merit. The two prior judges who presided over this matter, Magistrate Judge Netburn and Judge Stanton, reviewed the parties' substantive arguments on summary judgment and concluded that Freeman's claims were viable, at least as to ownership, access, and probative similarity, and warranted a trial on Defendants' liability for copyright infringement. Judge Netburn found that Freeman "established probative similarity" and that "[w]here, as here, the similarities fall somewhere between probative and striking, substantial similarity presents a particularly close question of fact and should be decided by a jury." Dkt. No. 361, pgs. 13 & 16. Judge Stanton then concurred, finding that Freeman's claims presented "genuine factual issues about claimed similarities between Freeman's work and the defendants' work that require a jury trial." Dkt. No. 398 pg. 2.

7

Defendants complain that they had to heavily litigate this case, but they were the ones making repeated requests that Judges Netburn and Stanton reconsider and revisit these decisions, all of which were rejected. And while this Court ultimately found insufficient substantial similarity of protectable expression, it acknowledged Freeman's strong access and copying evidence, even telling Defendants at the January 12, 2026 status conference that "I actually think plaintiff has the better of the argument on probative similarity right now" and "there's no question that access would have to go to a jury." Declaration of Stephen M. Doniger, ("Doniger Decl.") ¶ 3, **Ex. 1** at 5:22-6:3**.** This does not reflect review of a frivolous case.

Freeman maintains that Defendants copied not only unprotectable material from her work but also the original narrative spine of her story and protectable expression of, *inter alia*, characters, character interactions, scenes, plot points, and dialogue. She understands that this Court disagrees, but even if it believes her unlikely to succeed on appeal, this should not weigh heavily for the imposition of a bond since "cases are reversed on appeal on occasion," and thus courts have been "hesitant to rely too heavily on this factor." *Burns v. Rovella*, No. 3:19-CV-00553 (JCH), 2021 WL 6339251, at *2 (D. Conn. Nov. 10, 2021). Indeed, "[m]ost courts, having just ruled against the appellant, would also conclude that the appeal of that Ruling is likely to lack merit," such that placing any great weight on this factor would effectively ensure that every appellee is entitled to impose a bond upon the appellant, which is not the law. *Id.*

Thus, if this Court doubts the merits on Freeman's appeal for the same reasons it granted summary judgment against her, it should not rely on that finding to also impose a multimillion-dollar bond against Freeman. This is also true because the merits factor of Defendants' Rule 54.2 bond concerns not only the merits of Freeman's case but also the likelihood that Defendants' motion for fees is granted in its entirety. In a case where the "defendants seek the posting of a

8

bond as security for costs and attorneys' fees under the Copyright Act, which are not automatically awarded to every victorious defendant but rather are within the court's discretion to grant[,]" the merits factor of Rule 54.2 only favors a bond where defendants also show they will be able to prove their entitlement to those fees. *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, No. 08 CIV. 01533, 2010 WL 3452375, at *4 (S.D.N.Y. Sept. 1, 2010).

Courts typically only award such defendants their costs and fees where the plaintiff's claims were "frivolous" or "objectively unreasonable." *Id*.; see also *Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir.2010). Defendants cannot meet this charge. They claim that Freeman's claims are meritless and frivolous because the Court granted summary judgment against her, but it is axiomatic that "[t]he mere fact that a defendant has prevailed ... 'does not necessarily equate with an objectively unreasonable claim.'" *Berry v. Deutsche Bank Tr. Co. Americas*, 632 F. Supp. 2d 300, 305 (S.D.N.Y. 2009), citing *Chivalry Film Prods. v. NBC Universal, Inc.*, No. 05 Civ. 5627(GEL), 2007 WL 4190793, at *2 (S.D.N.Y. Nov. 27, 2007).

And Defendants have not established that they are entitled to or even likely to receive their unprecedented multimillion dollar fees award, particularly where they cannot prove Freeman's claims were objectively unreasonable after at least one judge found that "*BMR 2010, 2011, 2012, 2013*, and *2014* each share probative similarities with the *Crave* series, and no reasonable juror could find otherwise. The similarities – some more probative than others – add up to raising an inference that *Crave*'s authors copied these Freeman works." Dkt. No. 361, pg. 12. Thus, this factor cannot weigh in favor of a bond.

The district court only resolved this case after the prior judges assigned to this matter found that Freeman's claims presented genuine, close issues of fact that could not be dismissed

on summary judgment and required resolution at trial. As such, this is simply not the kind of "frivolous" or "baseless" claim that has been found to warrant a bond under either Rule 54.2 or Rule 7. As such, this motion should be denied.

### c. Defendants entirely fail to argue that Freeman has no significant resources and offer only mudslinging and conjecture that Freeman will not pay

Defendants' motion rests almost exclusively on forked-tongue arguments that Freeman is both financially well off, a risk of nonpayment, an officer of the court with strong earning potential, and one who cannot be trusted to comply with an order to pay costs or fees should they be awarded. But these arguments either establish that no bond is warranted or rest on nothing more than conjecture and innuendo.

Both Rule 7 and Rule 54.2 require a showing that nonmovant poses a significant risk of nonpayment before a bond is entered, and this risk cannot be established through speculation. Rather they require affirmative evidence in the record of a real risk that defendants face "claims of dubious merit made by plaintiffs with no significant resources." *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 207 F.R.D. at 25.

Bond motions requests are regularly denied where they lack sufficient "particular facts" demonstrating a "substantial risk" that the party against whom the bond is sought would not be able pay the award of costs. See *Burns v. Rovella*, No. 3:19-CV-00553 (JCH), 2021 WL 6339251, at *1 (D. Conn. Nov. 10, 2021)(finding no risk of nonpayment because "[u]nlike in other cases, there is nothing in the record demonstrating a substantial risk that Burns would not be able to pay the costs of the appeal if he loses."); see also *Sawabeh Info. Servs. Co. & Edcomm, Inc. v. Brody*, No. 11 CIV. 4164 (SAS), 2014 WL 13117001, at *2 (S.D.N.Y. Mar. 17,

10

2014)(rejecting movant's claims re risk of non-payment where "plaintiffs have not 'allege[d] any particular facts in furtherance of this contention, nor are any apparent in the record.'"); *Morgan Art Found. Ltd. v. McKenzie*, No. 18 CIV. 4438 (AT), 2019 WL 2725625, at *3 (S.D.N.Y. July 1, 2019)(finding that the inability to pay factor weighed against a bond where the movant presented no evidence because the "Plaintiff's financial condition is [movant]'s burden to establish.")

The evidence typically necessary to justify a bond includes a showing that the non-movant has no assets in the United States or has previously failed to pay ordered judgments or bonds. See *Adsani v. Miller*, 139 F.3d 67, 70 (2d Cir. 1998)(confirming that the purpose of Rule 7 is to protect appellees where appellants "pose [ ] a payment risk because [they have] no assets in the United States[,]" and affirming bond because "Adsani had no assets in the United States and she gave no supersedeas bond for the district court's approval to stay enforcement of the judgment."); see also *Kensington Int'l Ltd. v. Republic of Congo*, No. 03 CIV. 4578 (LAP), 2005 WL 646086, at *1 (S.D.N.Y. Mar. 21, 2005)(finding a bond appropriate where appellant "has spent all of its time and effort seeking to avoid payment of the judgments against it" and "failed to appear and has not paid any portion of the judgments entered." *Kensington Int'l Ltd. v. Republic of Congo*, No. 03 CIV. 4578 (LAP), 2005 WL 646086, at *1 (S.D.N.Y. Mar. 21, 2005).

Indeed, Defendants' own cited authority, *Tri-Star Pictures, Inc. v. Unger*, confirms the same. The *Tri-Star* the court relied on finding that "[n]either [appellant] is a resident of the United States, and neither [appellant] possesses assets in the United States" to impose a bond. 32 F. Supp. 2d 144, 147 (S.D.N.Y.), aff'd, 198 F.3d 235 (2d Cir. 1999).

Here, Freeman is a United States resident. And Defendants readily acknowledge she has assets in the United States. Defendants thus offer no real evidence that Freeman poses an

unreasonable risk of non-payment. To the contrary, they argue that Freeman *does* have assets. Their sole allegation that Freeman poses a risk of non-payment is that Trent Baer (like thousands of other Americans) works in finance and thus must be conspiring with Freeman to hide assets.

Such thin allegations, conjecture, and unsubstantiated speculation simply do not justify the issuance of a bond in this case. This motion should be denied.

### d.  Freeman has not engaged in any vexatious or bad faith conduct

Separate from their unfounded argument that Freeman may try to hide assets, Defendants argue that Freeman's conduct during litigation was vexatious or undertaken in bad faith. Nonsense. Freeman's litigation conduct reflects nothing more than a diligent attempt to address well-founded claims of copying by defendants (again, actual copying was all but established) and conduct is not fairly labeled vexatious or bad faith unless the party's actions "are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Baker v. Urb. Outfitters, Inc.*, 431 F. Supp. 2d 351, 362 (S.D.N.Y. 2006), aff'd, 249 F. App'x 845 (2d Cir. 2007), citing *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986). Making *that* assertion against Freeman doesn't pass the straight-face test.

Courts generally only find such bad faith in extreme cases, such as where the appellant has already been subjected to Rule 11 sanctions. See *Sharbat v. Iovance Biotherapeutics, Inc.*, No. 20-CV-1391 (ER), 2024 WL 2078390, at *10 (S.D.N.Y. May 9, 2024). Or has repeatedly violated court orders. See *Valentini v. Citigroup, Inc.*, No. 11 CIV. 1355 JMF, 2014 WL 502066, at *3 (S.D.N.Y. Feb. 7, 2014). Most often, courts have found bad faith where the appellant has a documented history of extortionist and obstructive conduct aimed at abusing the legal system for money. See e.g., *In re Petrobras Sec. Litig.*, 363 F. Supp. 3d 426, 434 (S.D.N.Y. 2019); *In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 156 (S.D.N.Y. 2014)(requiring a bond from

12

serial class action settlement objectors who repeatedly sought to prevent class settlements until being paid a demanded fee). None of these extreme circumstances apply here, as this Court has never sanctioned Freeman, she has not failed to comply with any orders, and she has no history of extortionist or vexatious litigation. There is no basis to conclude that she acted with bad faith.

Defendants' contrary arguments amount to little more than mudslinging based on half-truths. Beyond repeating their baseless claim that Freeman somehow constantly changed her legal theories throughout this action (her claims have always been that Defendants' unlawfully accessed and copied her work to create the *Crave* novels), Defendants rail against Freeman undertaking discovery against each of them, taking multiple depositions in a case with numerous parties, retaining multiple experts, and using simple search words like "copy" and "change" to review documents for evidence of copyright infringement. This is not baseless or objectively unreasonable conduct; it is a plaintiff duly litigating her case as she should be expected to do. Defendants point to no findings or evidence that Freeman was improperly motivated or failed to act within the permissible bounds of discovery, as there is none. Defendants continued reliance on inflammatory mischaracterization of Freeman's actions and *ad hominin* attacks are not evidence that Freeman acted vexatiously or in bad faith in bringing this suit. Defendants' motion should be denied.

e.      **The amount of the bond is unsupported, unsupportable, and serves no purpose but to unduly burden and vex Freeman.**

As noted above, the bond sought by Defendants is not in support of any forward-looking expenses or any judgment in their favor that would justify placing a significant and burdensome obligation on Freeman. And even if Defendants had met their burden to show that a bond is warranted (they have not) and that such a bond should provide security for reasonable fees

13

already incurred (it should not), they have not provided the Court or Freeman a proper basis to determine a fair amount for a bond.

When ordering bonds, courts "must also take care not to 'create an impermissible barrier to appeal' in setting the bond amount" and ensure that any bond is "'reasonably tailored" to secure appeals costs. *United States v. M/Y Amadea*, No. 23 CIV.9304 (DEH), 2025 WL 1948986, at *3 (S.D.N.Y. July 16, 2025), reconsideration denied, No. 23 CIV. 9304 (DEH), 2025 WL 3237891 (S.D.N.Y. Nov. 20, 2025), quoting *In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 151 (S.D.N.Y. 2014); see also *In re Petrobras Sec. Litig.*, 363 F. Supp. 3d 426, 435 (S.D.N.Y. 2019). Even where some factors may favor imposition of a bond, courts will decline to set one where there is concern that "imposing a bond might prevent appellate review of its decision." *United States v. M/Y Amadea*, No. 23 CIV. 9304 (DEH), 2025 WL 3237891, at *2 (S.D.N.Y. Nov. 20, 2025)(refusing to set multimillion dollar bond despite certain Rule 54.2 factors weighing in favor of one). Here, again, Defendants seek a bond that is not "reasonably tailored" to secure appeals costs.

Further, Courts have repeatedly found that bonds in the millions of dollars present an obvious and impermissible barrier to appeal. In *Petrobras,* the Court rejected a request to raise a $50,000 bond to $ 1.395 million even where it held that "the appeal is meritless, the [appellants] have exhibited bad-faith conduct, the [appellants] pose a risk of nonpayment and they have the financial ability to pay a bond" because doing so would create an impermissible barrier to appeal. 363 F. Supp. 3d 426, 435-436 (S.D.N.Y. 2019). Setting a bond three times greater than that what the *Petrobras* court found to be an impermissible barrier despite the fact that, as ventilated above and unlike the party in *Petrobras*, Freeman's appeal is not meritless, she has not

14

engaged in any bad faith conduct, and there is no evidence she poses a risk of nonpayment, would certainly represent an impermissible barrier to her ability to appeal.

Even where the party against who the bond is sought has the funds to pay and the other factors favor issuance of a bond, courts will deny the bond request where the equities weigh against the request. For example, in *United States v. M/Y Amadea* the court declined to apply a multimillion-dollar appeal bond even on "a self-described billionaire who claim[ed] to have commissioned the construction of several yachts collectively worth over $1 billion" explaining:

> the equities in this circumstance do not counsel in favor of the imposition of a bond. To put it mildly, Claimants have not conducted themselves well during this litigation. But they remain entitled to appeal this Court's decisions. To the extent the Government seeks to deter Claimants from appealing, the Court declines in its discretion to impose bond on that basis. Allowing a litigant to use a Local Rule 54.2 bond to impede their adversary from having their day in court[5] would "transform[ ] ... this tool into a potentially formidable weapon for forcing [that party] into submission," a "situation the court must guard against."

No. 23 CIV.9304 (DEH), 2025 WL 1948986, at *3 (S.D.N.Y. July 16, 2025) (citations omitted).

Importantly, any bond amount will impose a real burden since it requires paying more than 100% of the bond amount up front, thus tying up assets that may otherwise be needed for, *inter alia*, litigation costs, business and other regular expenses, and the unanticipated emergencies that can arise in life. Freeman has contacted multiple bonding companies who have all confirmed that securing the contemplated bond would require depositing 100% of the bond amount plus a premium paid to the bonding company. See Doniger Decl. ¶ 2.

Defendant's request for a bond is thus, at best, an unwarranted effort at harassment and at worst an impermissible effort to prevent Freeman from exercising her right to appeal. Either way, it seems to be the type of unjustified effort to hamper litigation that this Court should reject. As the Second Circuit explained in *Farmer v. Arabian Am. Oil Co.*:

15

> There does not seem justification for a court of the United States to put an arbitrary and unbending clog on suits by one of its own citizens merely because he does not have the good fortune to live in New York. And the seeming compulsion found below for a bond from any nonresident for even a de luxe form of trial is hardly to be justified as a local rule within the limited authorization of F.R. 83, providing only for rules of practice not inconsistent with the general rules. The over-all discretion of the district courts, however, which appears to be restated in local Rule 2(b) should be adequate authority for such orders as to security as will facilitate, not hamper, the administration of justice.

285 F.2d 720, 722 (2d Cir. 1960) (citing *Miller v. Town of Suffield*, 249 F.2d 16, certiorari denied 356 U.S. 978, 78 S.Ct. 1143, 2 L.Ed.2d 1151; and cases collected in 3 Barron & Holtzoff, Federal Practice and Procedure § 1198 (Wright Ed. 1958); 3A id. § 1712 (Wright Ed. 1958); 6 Moore's Federal Practice 1327, 1330 (2d Ed. 1953)).

The Bond Defendants seek is undoubtedly designed to put an unbending cog on Freeman's appeal since a bond of any amount would require tying up significant assets as a condition of pursuing her good faith legal claims.

Defendants offer no authority supporting the amount of either of their requested bonds. Defendants rely on *Watson* to argue for the over $3 million Rule 54.2 bond, but as discussed the court there had already determined both that the movant was entitled to fees and what the reasonable fee award was, and that the award was a fraction of the $3 million Defendants seek here even after the case had gone through trial and appeal. *Watson v. E.S. Sutton, Inc.*, No. 02 CV 2739KMW, 2006 WL 4484160, at *1 (S.D.N.Y. Dec. 6, 2006).

Defendants also fail to justify why the court should order Freeman to pay a Rule 7 bond three times larger than any they can identify in any other case. Defendants concede that courts almost uniformly set such bonds at a maximum of approximately $50,000 (see Defendants' motion pg. 18) but nevertheless implore the Court to order Freeman to post a bond of $150,000 because there are three defendants here. Defendants provide no authority supporting this position

but claim that this is warranted because there are three defendants and have been multiple law firms involved in this case. This is inapposite where Rule 7 only concerns costs on appeal, and all of the Defendants are being jointly represented by the same counsel on appeal. There is no genuine justification for Defendants' requested Rule 7 bond, and their motion should be denied.

### f. The remaining factors favor Freeman

Implicit in Defendants' failure to address two of the Rule 54.2 factors is their admission that those factors favor Freeman. As discussed, courts consider both "whether the party is a non-resident or foreign corporation" and "compliance with past court orders" in determining whether a bond is needed. *Selletti v. Carey*, 173 F.R.D. 96, 100–01 (S.D.N.Y. 1997), aff'd, 173 F.3d 104 (2d Cir. 1999), collecting cases. This is only logical, as Rule 54.2 does not exist to provide any party with an added option to tie up an opponent's funds in anticipation of recovery, but to provide security against genuine risks of nonpayment posed by parties who cannot be easily located or acted against or whom have a history of defying the legal process. See L.R. 54.2.

Freeman does not pose such a risk. She resides in the United States and has readily made herself available to the jurisdiction of this Court. And she has complied with every order of this Court since the outset of this litigation. Defendants do not and cannot argue otherwise. This motion should be denied.

### IV. Conclusion

Rule 7 and Local Rule 54.2 are protective measures to secure payment of reasonably certain prospective costs and fees in cases that seem to be manifestly lacking in merit and brought by parties with no ascertainable assets in the United States—neither of which is the case here. Defendants' motion represents a plain effort to abuse those extraordinary mechanisms, disregard the Court's stay of their pending fees motion, and burden Freeman as much as possible

17

before she can proceed with her timely appeal. But other than vitriol and speculation toward

Freeman Defendants offer nothing to meet their burden of proof to justify the relief they seek.

This motion should therefore be denied.


Dated: June 10, 2026                                   Respectfully submitted,
New York, New York

                                                        By:      /s/ *Stephen M. Doniger*
                                                                Stephen Doniger, Esq.
                                                                **DONIGER / BURROUGHS PC**
                                                                603 Rose Avenue
                                                                Venice, California 90291
                                                                (31) 590-1820
                                                                stephen@donigerlawfirm.com

                                                                **Reeder LLP**
                                                                Mark D. Passin
                                                                11766 Wilshire Boulevard,
                                                                Suite 1470
                                                                Los Angeles, CA 90025
                                                                310-861-2475
                                                                *Attorneys for Plaintiff Freeman*

18