**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| LYNNE FREEMAN,<br><br>            Plaintiff,<br><br>    -against-<br><br>TRACY DEEBS-ELKENANEY, et al.<br><br>            Defendants. | Case No. 2:22-cv-02435 (CM)(SN)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS** |

**TABLE OF CONTENTS**

I.    Introduction……………………………………………………………………………..1

II.    Relevant Factual and Procedural Background…………………………………………….4

III.    Legal Standard……………………………………………………………………….6

IV.    Argument…………………………………………………………………………….7

        A.   Attorneys' fees are not warranted…………………………………………………7

               1.    Freeman's claims were not frivolous…………………………………………8

               2.    Freeman was not motivated by bad faith………………………………11

               3.    Freeman's claims were not objectively unreasonable…………………16

               4.    Awarding attorneys' fees would deter copyright owners from prosecuting infringement and frustrate the purpose of the Copyright Act…………………………………………………………………………...19

        B.   The Amount of the fees requested appears to be unjustified…………………….22

V.    Defendants' motion should be denied……………………………………………………22

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Adsani v. Miller*,

    No. 94 CIV. 9131, 1996 WL 194326 (S.D.N.Y. Apr. 22, 1996) ................................................. 18

*Baker v. Urb. Outfitters, Inc.*,

    431 F. Supp. 2d 351 (S.D.N.Y. 2006) ................................................................................. 12

*Boisson v. Banian, Ltd*,

    273 F.3d 262 (2d Cir. 2001) ............................................................................................... 15

*Canal+ Image UK Ltd. v. Lutvak*,

    792 F. Supp. 2d 675 (S.D.N.Y. 2011) ................................................................................. 8

*Christiansburg Garment Co. v. Equal Employment Opportunity Commission*,

    434 U.S. 412, 98 S.C.t 694, 54 L.Ed.2d 648 (1978) .......................................................... 16

*Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*,

    34 F.3d 1148 (2d Cir. 1994) ............................................................................................... 22

*DiTocco v. Riordan*,

    815 F. Supp. 2d 655 (S.D.N.Y. 2011) ................................................................................. 19

*Earth Flag Ltd. v. Alamo Flag Co.*,

    154 F. Supp. 2d 663 (S.D.N.Y. 2001) ................................................................................. 20

*Eisemann v. Greene*,

    204 F.3d 393 (2d Cir. 2000) ............................................................................................... 12

*Ferrara v. CMR Contracting LLC*,

    848 F. Supp. 2d 304 (E.D.N.Y. 2012) ................................................................................. 22

*Gaffney v. Muhammad Ali Enters. LLC,*

No. 18 CIV. 08770 (GBD) (OTW), 2026 WL 878993 (S.D.N.Y. Mar. 31, 2026)....................16

*Gordon v. Kaleida Health*,

No. 08-CV-950S, 2012 WL 1965671 (W.D.N.Y. May 31, 2012)............................................14

*Hallford v. Fox Ent. Grp., Inc.,*

No. 12 CIV. 1806 WHP, 2013 WL 2124524 (S.D.N.Y. Apr. 18, 2013) ...................8, 11, 20, 21

*Hamil Am. Inc. v. GFI,*

193 F.3d 92 (2d Cir.1999)........................................................................................................9

*HarperCollins Publishers LLC v. Open Rd. Integrated Media, LLP*,

58 F. Supp. 3d 380 (S.D.N.Y. 2014).....................................................................................6, 17

*Int'l Swaps & Derivatives Ass'n, Inc. v. Socratek, L.L.C.,*

712 F. Supp. 2d 96 (S.D.N.Y. 2010)..........................................................................................8

*Kaye v. Cartoon Network Inc.,*

297 F. Supp. 3d 362 (S.D.N.Y. 2017)......................................................................................19

*Kerin v. U.S. Postal Service,*

218 F.3d 185 (2d Cir.2000).....................................................................................................14

*Kirsch v. Fleet St., Ltd.,*

148 F.3d 149 (2d Cir.1998).....................................................................................................22

*Kirtsaeng v. John Wiley & Sons, Inc.,*

136 S. Ct. 1979 (2016) .........................................................................................................6, 10

*Knitwaves, Inc. v. Lollytogs* Ltd.,

71 F.3d 996 (2d Cir. 1995)........................................................................................................6

*Matthew Bender & Co. v. W. Pub. Co.*,

    240 F.3d 116 (2d Cir. 2001)...................................................................................8, 10, 20

*Maxwood Music Ltd. v. Malakian*,

    722 F. Supp. 2d 437 (S.D.N.Y. 2010).................................................................................17

*Mitek Holdings, Inc. v. Arce Eng'g Co.*,

    198 F.3d 840 (11th Cir.1999)...............................................................................................20

*Muller v. Twentieth Century Fox Film Corp.*,

    2011 WL 3678712 (S.D.N.Y. Aug. 22, 2011) .......................................................................7

*Neitzke v. Williams*,

    490 U.S. 319 (1989) ...............................................................................................................8

*New York State Ass'n for R. Children v. Carey*,

    711 F.2d 1136 (2d Cir.1983).................................................................................................22

*Oliveri v. Thompson*,

    803 F.2d 1265 (2d Cir.1986).................................................................................................12

*Overseas Direct Imp. Co. v. Family Dollar Stores Inc.*,

    2013 WL 5988937 (S.D.N.Y. Nov. 12, 2013) ..................................................................7, 10

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,

    602 F.3d 57 (2d Cir. 2010)..................................................................................................9, 15

*Porto v. Guirgis*,

    659 F.Supp.2d 597 (S.D.N.Y.2009).........................................................................17, 18, 20

*Rates Tech. Inc. v. Broadvox Holding Co., LLC*,

    56 F. Supp. 3d 515 (S.D.N.Y. 2014)....................................................................................14

*Roth v. Pritikin*,

 787 F.2d 54 (2d Cir. 1986)................................................................................................16

*Samms v. Abrams*,

 198 F. Supp. 3d 311 (S.D.N.Y. 2016).............................................................................22

*Strike 3 Holdings, LLC v. Doe*,

 No. 1:18-CV-05590 (AJN), 2018 WL 3756453 (S.D.N.Y. July 19, 2018) ...................8

*Torah Soft Ltd. v. Drosnin*,

 No. 00 CIV. 5650 (JCF), 2001 WL 1506013 (S.D.N.Y. Nov. 27, 2001) ...............8, 9

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*,

 996 F.2d 1366 (2d Cir. 1993).........................................................................................19

*Video–Cinema Films, Inc. v. Cable News Network, Inc.*,

 2003 WL 1701904 (S.D.N.Y. Mar. 31, 2003) .............................................................21

*Webb v. Stallone*,

 2014 WL 2990295 (S.D.N.Y. June 30, 2014)................................................................6

*Williams v. Crichton*,

 84 F.3d 581 (2d Cir. 1996).............................................................................................18

*Yang v. Mic Network, Inc.*,

 2020 WL 6562403 (S.D.N.Y. Nov. 9, 2020) .............................................................6, 7

*Zalewski v. Cicero Builder Dev., Inc.*,

 754 F.3d 95 (2d Cir.2014)..........................................................................................6, 17

## I.    Introduction

As this Court is aware, Tracy Wolff created the *Crave* series with the assistance of a shared intermediary—her agent, Emily Kim—who unquestionably had received and worked with Lynne Freeman to develop and market Freeman's earlier *BMR* work. As this Court is also aware, Defendants almost certainly copied *BMR* to create the *Crave* series. Indeed, Judge Netburn found that Freeman "established probative similarity," explaining:

> The similarities – some more probative than others – add up to raising an inference that *Crave*'s authors copied these Freeman works. In both sets of works: the heroine lives in Alaska after moving from California in the wake of losing close family members, including their fathers, in a tragic accident; the heroine believes she is human but later learns that she is a supernatural half-witch key to maintaining the balance between good and evil; an evil vampire kidnaps the heroine and bites her; an evil vampire has trapped the heroine's paternal family member in a non-human form; a mean girl spikes the heroine's drink; and more. Absent copying, one would not expect two works to share these kinds of similarities.

*See* Dkt. No. 361, pg. 13. And Your Honor concurred, stating in open court that "plaintiff has the better of the argument on probative similarity." Declaration of Stephen M. Doniger, ("Doniger Decl.") ¶ 2, **Ex. 1** at 5:22-6:3. The only real remaining question was whether Defendants copied sufficient protectable expression from *BMR*. On that question, this Court found against Freeman as a matter of law. But that does not mean Freeman's claims were ever frivolous. They were not.

For example, Freeman believed, and continues to believe, that *Crave*'s storyline about a smoky gray-eyed, telepathic, Gaelic-speaking father/grandfather who went by the name Athair/Alistair, who appears as a voice in the heroine's head, and who was imprisoned in his beast form by the vampire prince / vampire king goes well beyond the copying of unprotectable idea and well into protectable expression.[1]

---

[1] For more on this storyline *see* Dkt. No. 289 ¶¶ 132-136; Dkt. No. 361 pgs. 12-13.

Freeman also believed, and continues to believe, that the similar scenes in both works involving the heroine being attacked when alone by two guys who remind her of 80's rockers not dressed for the winter weather (because they are supernatural, although the heroine didn't know it) reflects the copying of protectable expression given, inter alia, the similar character descriptions, choreography, and language choices (such as one of the guys saying "Well, well, well. Looks like…" to the heroine leading into the ensuing fight sequence).[2]

And she believed that those scenes along with countless other similarities created substantially similar overall stories about a heroine that moved from California to Alaska[3] just to then find out she was the first of her kind in 10 generations / 1000 years[4], and walked through a parallel story with a parallel cast of characters to fulfill her unique role in stopping a supernatural war.[5]

To be sure, Freeman was not alone in her beliefs. She was represented in this case by very experienced copyright practitioners who saw a strong claim of substantial similarity,[6] and secured the opinion of a third-party literary professor and published author who teaches about tropes and the young adult paranormal romance genre, and otherwise had no interest in this case, who concluded that:

> "there are remarkable similarities between the storylines, plot, setting, characters—including mental states of characters, reactions of characters, physical conditions of characters—and that the similarities between Freeman's manuscripts and the first four books of Wolff's CRAVE series are substantial. See Original Report, ¶¶ 227-228. It is also my opinion that the similarities go far beyond genre conventions or tropes".

---

[2] For more on this scene, see Dkt. No. 289 ¶ 154; Dkt. No. 536, pg. 35-37.
[3] Dkt. No. 361 pg. 12-13; Dkt. No. 289, ¶¶ 108, 110-111.
[4] Dkt. No. 289 ¶ 111.
[5] Dkt. No. 361 pg. 12-13; Dkt. No. 289, ¶¶ 108, 110-111.
[6] *See* Doniger Decl., ¶¶ 5-6.

Declaration of Professor Reiss, ¶¶ 5, 7-10. And then, after being presented with the works themselves and the parties' arguments on substantial similarity, both Judge Netburn and Judge Stanton concluded that the question was properly decided by a jury in this case.

In the face of all of this, Defendants argue that Freeman's claims were always frivolous and that, despite the clear evidence of their copying in this case, they should be awarded millions of dollars in unsubstantiated attorneys' fees—essentially just because the Court found that their probable copying did not cross the line into substantial similarity of protectable expression. They are wrong, and an award of fees in this case would be unjust and do nothing to advance the purposes of the Copyright Act. Indeed, Defendants claim this was a great victory for authors when what it actually tells authors is that they too can create a bestselling book series built on years of another author's work as long as they recast and transform original works "enough." It simply does not promote the creation of new and original works to saddle an original author with the fees of a probable copier, at least not where that author sought and obtained competent copyright counsel and a highly qualified literature professor who agreed there was a reasonable claim that the probable copier's work included substantial similarity of protectable expression.

As this Court is aware, Freeman is in the process of briefing her Appeal. She submits that this case does not fit neatly into the authority discussed below (and in Defendants' brief) given the strong evidence of copyright ownership, clear probative similarity, a shared agent as an intermediary, and a dearth of authority addressing how much a work can be harvested and how much it must be altered to evade liability for the unauthorized copying. Given the pendency of this appeal and the novelty of this case, this Court should return to its initial decision to stay consideration of this motion until the Second Circuit has addressed the pending appeal. Or should it choose not to do so, this motion should be denied in its entirety.

## II.      Relevant Factual and Procedural Background

From December of 2010 through the spring of 2014, Freeman worked with her agent, Emily Kim / Prospect Agency, to edit and pitch for publication of her original young-adult paranormal romance story entitled *Blue Moon Rising* (later called *Masqued* and collectively referred to herein as *BMR*). Kim actively worked with Freeman in reviewing and revising the work but was unable to get it sold. During that same time, Tracy Wolff, an erotica writer, was also Kim's client. Years later, after Freeman was no longer represented by Kim, Kim worked with Wolff to create the Crave Series.[7]

In 2021, Freeman discovered *Crave*, Wolff's young-adult romance fantasy book that mirrors her *BMR* story about a girl who moves from California to Alaska to live with the only 2 remaining relatives she believes she has left in the world, only to discover they are supernatural witches and she is about to be at the center of a supernatural war.[8] After documenting hundreds of similarities between characters, plot points, language, and more,[9] Freeman filed suit for copyright infringement. As noted above, Freeman retained highly experienced copyright litigation counsel and a writing and literature professor, each of whom saw viable claims of infringement.

After the close of discovery, this case went through two rounds of summary judgment. On the first round, the Court found, *inter alia*, that the evidence established a viable claim against Emily Kim and Prospect Agency for breach of fiduciary duties for improperly sharing Freeman's work with Wolff, but found that those fiduciary duties claims failed for lack of

---

[7] This is not a complete recitation of the evidence of access. For a complete recitation, see Freeman's original Motion for Summary Judgment (Dkt. No. 284, pgs. 12-18), and section IV.A.2 below (citing Kim's admissions of her involvement int he writing process).

[8] Dkt. No. 289 ¶¶ 108, 110-111; Dkt. No. 361, pgs. 12-13.

[9] See e.g. Freeman's original Complaint, pgs. 13-74.

sufficiently certain damages. Dkt. No. 361, pgs. 19, 22. Relatedly, Judge Netburn found "*BMR* 2010, 2011, 2012, 2013, and 2014 each share probative similarities with the Crave series, and no reasonable juror could find otherwise" and "[w]here, as here, the similarities fall somewhere between probative and striking, substantial similarity presents a particularly close question of fact and should be decided by a jury." *Id*. at 12, 16. After both parties objected to the R&R, Stanton ordered the case to trial.

Then, the case was reassigned to Your Honor, who ordered a second round of briefing on substantial similarity only, reiterating in open court that "the plaintiff has the better of the argument on probative similarity."[10] Ignoring the Court's prior findings regarding probative similarity and access, Defendants continued to unreasonably insist that there was no evidence that, *inter alia*, Kim had any involvement in writing the *Crave* books,[11] and took equally unreasonable positions on the law, including a complete denial of the well-settled principles of the protectability of the selection and arrangement of unprotectable elements (discussed below). Freeman, on the other hand, presented citations to the works in precisely the format that the Court indicated were proper,[12] and properly argued her case for substantial similarity, yet the Court found that the undeniable similarities were not sufficiently of protectable expression.

---

[10] *See,* transcript of the 1/12/26 conference.

[11] See Dkt. No. 361, pg. 8. ("Whether Kim helped write Crave is, however, genuinely in dispute" including because of text messages that "seem to imply that Kim helped write Crave.")

[12] Defendants complain that Freeman "continued to almost exclusively rely on" her previously submitted indices, when not only did Freeman submit over 100 pages of new briefing and argumentation but also any reference to or use of her previously submitted indices was proper where the Court, after being asked about the possibility of same, expressly confirmed that she could "submit any evidence you want" and encouraged Freeman to rely on her prior filings. See **Ex. 1** 22:8-22; 25:4-26:25. Defendants' efforts to paint complying with these directives as evidence of improper conduct is a gross misrepresentation of the record.

Defendants now file this motion for over $3.4 million dollars in attorney's fees without ever having sought to meet and confer with Plaintiff, without providing billing statements, and without any acknowledgement of the substantial evidence of ownership and copying underlying Freeman's claims.

### III.    Legal Standard

Section 505 of the Copyright Act provides courts with discretion to award reasonable attorney's fees to a prevailing party, but an award of fees is not automatic. Rather, the district court has discretion to determine whether such assessment would be fair. *Yang v. Mic Network, Inc.*, 2020 WL 6562403, at *3 (S.D.N.Y. Nov. 9, 2020), aff'd, 2022 WL 906513 (2d Cir. Mar. 29, 2022), citing *Knitwaves, Inc. v. Lollytogs* Ltd., 71 F.3d 996, 1011 (2d Cir. 1995) (emphasis added).

The broad statutory language of Section 505 "clearly connotes discretion" and "eschews any precise rule or formula for awarding fees," but the Supreme Court has provided guidance in considering fee requests. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016)(citation omitted). Specifically, an award of fees should only follow careful consideration of nonexclusive factors including: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *HarperCollins Publishers LLC v. Open Rd. Integrated Media, LLP*, 58 F. Supp. 3d 380, 389 (S.D.N.Y. 2014), quoting *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 108 (2d Cir.2014).

Importantly, "[t]he mere fact that defendants prevailed on summary judgment is not dispositive in determining whether to award attorneys' fees." *Webb v. Stallone*, 2014 WL

6

2990295, at *1 (S.D.N.Y. June 30, 2014), quoting *Muller v. Twentieth Century Fox Film Corp.*, 2011 WL 3678712, at *1 (S.D.N.Y. Aug. 22, 2011).

## IV.    Argument

Freeman's claims, while unsuccessful pending appeal, were not objectively unreasonable, frivolous, or motivated by bad faith. At all relevant times Freeman and her counsel believed, and continue to believe, that the *Crave* series shares substantial similarity of protectable expression with Freeman's work. And they are not alone. Indeed, Defendants willfully ignore that, (1) college Professor of English and Creative Writing and award-winning author of twenty novels for children and young adults opined that the works were substantially similar after full consideration of tropes and genre conventions (which she teaches) and (2) after extensive litigation and fulsome review of the evidence, two separate judges concluded that the substantial similarity question posed close factual and legal issues that required a jury trial.

Freeman understands that this Court saw things differently, finding a lack of substantial similarity of protectable expression notwithstanding the strong evidence of actual copying. But that fact alone does not justify an award of fees. See *Yang v. Mic Network, Inc.*, at *3, citing *Overseas Direct Imp. Co. v. Family Dollar Stores Inc.*, 2013 WL 5988937, at *2 (S.D.N.Y. Nov. 12, 2013). As ventilated below, each of the relevant factors weighs against an award of fees, and Defendants' continued vitriol, mudslinging, and mischaracterizations of the facts cannot establish otherwise.

### A.  Attorneys' fees are not warranted

Rather than engage with any of the actual evidence of access and copying, or the decisions of Judges Netburn and Stanton in this case, Defendants spend pages making *ad hominn* attacks on Freeman, grandstanding for themselves, and arguing about scattered factual

allegations to paint a false picture. But under the correct standard used to establish frivolous and bad faith claims or conduct—a standard Defendants' essentially ignore—there is no colorable argument that any of the relevant factors beyond success on the merits favors an award of fees.

### 1. Freeman's claims were not frivolous

Claims are only frivolous when there is "indisputably absent any factual or legal basis' for the wrong asserted[.]" *Hallford v. Fox Ent. Grp., Inc.*, No. 12 CIV. 1806 WHP, 2013 WL 2124524, at *1 (S.D.N.Y. Apr. 18, 2013), quoting *Neitzke v. Williams*, 490 U.S. 319, 322 (1989); see also *Canal+ Image UK Ltd. v. Lutvak*, 792 F. Supp. 2d 675, 687 (S.D.N.Y. 2011), citing *Matthew Bender & Co. v. W. Pub. Co.*, 240 F.3d 116, 126 (2d Cir. 2001)(confirming that a frivolous case is one "lacking any plausible merit.") As such, "[t]he label of 'frivolous' is appropriately reserved for the most extreme cases." *Torah Soft Ltd. v. Drosnin*, No. 00 CIV. 5650 (JCF), 2001 WL 1506013, at *4 (S.D.N.Y. Nov. 27, 2001). Under that correct standard, Freeman's case was never frivolous.

As this Court is aware, a claim for copyright infringement requires "(1) ownership of a valid copyright in the work and (2) unauthorized copying." *Strike 3 Holdings, LLC v. Doe*, No. 1:18-CV-05590 (AJN), 2018 WL 3756453, at *2 (S.D.N.Y. July 19, 2018), citing *Int'l Swaps & Derivatives Ass'n, Inc. v. Socratek, L.L.C.*, 712 F. Supp. 2d 96, 102 (S.D.N.Y. 2010). Here, there was no real dispute as to the first element, i.e., that Freeman holds a valid copyright.

There was also no colorable dispute—notwithstanding Defendants' unreasonable contrary position—on the first part of the "unauthorized copying" element. Unauthorized copying is comprised of two parts: "actual copying" which is shown either via direct evidence or evidence of access and probative similarity between the two works, and "unlawful copying" such that the material the defendants copied bore substantial similarities to protected elements of the

8

plaintiff's work. See *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010), citing *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir.1999). Here, the Court repeatedly noted the strong claims of probative similarity presented by this case, with Judge Netburn even recommending a finding in favor of Freeman on that question in the first summary judgment motion.[13]

Where this Court found Freeman's claims fell short was on the second part of the "unauthorized copying" element—establishing "unlawful copying." But a bona fide dispute as to where to draw the line between unprotectable idea and protectable expression, including the protectable selection and arrangement of unprotectable elements across multiple iterations of a work and multiple volumes of another work, cannot suffice to render a case like this frivolous. Indeed, copyright cases are typically only frivolous where they are so without basis that "a plaintiff claims a copyright in material that is clearly within the public domain" or otherwise is not subject to a valid copyright. *Torah Soft Ltd.*, 2001 WL 1506013, at 4.

Defendants' contrary arguments are not serious. For example, they assert that no one could have ever believed that they copied Freeman's work but, again, Judge Netburn explicitly found that *BMR* and *Crave* "share probative similarities" that "add up to raising an inference that *Crave*'s authors copied these Freeman works" such that "no jury could find otherwise." Dkt. 361, pg. 12. And that finding was echoed by both Judge Stanton[14] and Judge MacMahon who in

---

[13] See Dkt., 361, pp. 12- 13 ("*BMR 2010, 2011, 2012, 2013,* and *2014* each share probative similarities with the *Crave* series, and no reasonable juror could find otherwise. The similarities – some more probative than others – add up to raising an inference that *Crave*'s authors copied these Freeman works...")

[14] Judge Stanton found that "[t]here is a genuine dispute as to whether a defendant copied parts, large or small, of Freeman's work" and whether there were probative similarities "indicative of copying." Dkt. No. 418, pg. 2.

open court advised the parties: "I actually think plaintiff has the better of the argument on probative similarity right now." Doniger Decl. ¶ 2, Ex. 1 at 5:22-6:3.

Even the lone issue on which this Court ultimately granted summary judgment, substantially similarity, found sufficient legal and factual merit for two judges to agree to send it to trial after being presented with the works and the parties' arguments about their similarities. After being presented with the works themselves and substantial briefing addressing the substantial similarity question, Judge Netburn concluded that "[w]here, as here, the similarities fall somewhere between probative and striking, substantial similarity presents a particularly close question of fact." Dkt. No. 361 pg. 16. Judge Stanton concurred, holding that "[t]here is a genuine dispute as to similarities between Freeman's and Wolff's work, particularly in a degree indicative of infringement and copying." Dkt. No. 418, pg. 2.

To be sure, courts generally find claims objectively reasonable and not frivolous where other courts or judges have found sufficient merit in them. See *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 201, 136 S. Ct. 1979, 1984, 195 L. Ed. 2d 368 (2016); *Matthew Bender & Co. v. W. Pub. Co.*, 240 F.3d 116, 122–23 (2d Cir. 2001)(confirming that "the facts that "various judges ... had different views" on the merits of the party's case evidenced their objective reasonableness.) Likewise, a claim is typically deemed objectively reasonable where it has survived summary judgment. See *Overseas Direct Imp. Co. v. Fam. Dollar Stores Inc.*, No. 10 CIV. 4919 JGK, 2013 WL 5988937, at *2 (S.D.N.Y. Nov. 12, 2013). Thus, the findings of Judge Netburn and Judge Stanton further help establish that Freeman's claims were not without any basis in fact or law.

Of course, even without those findings, this Court's ultimate determination that the two works lack substantial similarity of protectable expression does not render Freeman's claim

10

frivolous.[15] In *Hallford v Fox Entertainment Group, Inc.*, this District Court similarly found on summary judgment that the plaintiff and defendant's stories shared only some similarities between unprotectable *scenes a faire* elements, a finding upheld by the Second Circuit, yet the district court declined to award the defendant attorney's fees because:

> Hallford's claim was not brought to harass or cause needless expense. Hallford believed in good faith that Fox's *Touch* was substantially similar to his works. He was wrong. While there are some similarities between *Touch* and Hallford's works, those similarities are not protectible. But his complaint asserted both factual and legal bases for the alleged injury. As such, Hallford's claim was not frivolous or brought in bad faith and though ultimately meritless, it was not objectively unreasonable.

*Hallford v. Fox Ent. Grp., Inc.*, No. 12 CIV. 1806 WHP, 2013 WL 2124524, at *2 (S.D.N.Y. Apr. 18, 2013)(internal citations omitted).

Just so here. As further discussed below, Freeman's claims were not brought to harass or cause needless expense but rather reflected a good faith and well-grounded belief that Wolff and her former agent copied her work to create the *Crave* story. Freeman's claims were grounded in objective facts and well-established legal principles of intermediary access, probative similarity, and the protectability of both original expressive elements and the original selection and arrangement of unprotectable elements. Defendants have not presented any evidence or cogent arguments to the contrary. This factor thus militates against an award of fees.

### 2. Freeman was not motivated by bad faith

Defendants' claims of bad faith on the part of Freeman amount to little more than *ad hominin* attacks and misrepresentations of the history of this lawsuit designed to paint ordinary

---

[15] Professor Riess explains that "[t]he similarities also did not consist of unprotectable elements such as tropes and genre conventions, *scenes a faire*, similarities based on the shared use of ordinary words and common phrases or trial details that have no bearing on the total concept and overall feel of the works." *See* Reiss Decl, ¶ 9; Original Report; Rebuttal Report.

litigation conduct as malfeasance. Tellingly, Defendants fail to cite a single piece of authority to support their claims of bad faith, and even a cursory review of the relevant law reveals Defendants' arguments to be meritless.

The Second Circuit interprets bad-faith and improper motivation for purposes of attorneys' fees "restrictively" so that they will "not deter persons with colorable claims from pursuing those claims." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000). Thus, attorneys' fees should not be awarded for bad faith or improper motivation "absent both clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purpose." Id. at 396; see also *Baker v. Urb. Outfitters, Inc.*, 431 F. Supp. 2d 351, 362 (S.D.N.Y. 2006), aff'd, 249 F. App'x 845 (2d Cir. 2007), citing *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986)(holding that actions are not undertaken in "bad faith" unless they "are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.")

Here, there can be no real question that Freeman's intended purpose was to address what she earnestly believes to be the misappropriation of her original work, and none of her actions or arguments, or those her attorneys, during the course of this litigation fall under the restrictive scope of "bad faith" justifying a deterrent award of fees.

Defendants complain about Freeman undertaking discovery against each of them, taking multiple depositions in a case with numerous parties, retaining multiple experts, and using simple search words like "copy" and "change" to review documents for evidence of copyright infringement. This is not baseless or objectively unreasonable conduct; it is a plaintiff duly litigating her case as she should be expected to do. Defendants point to no findings or evidence that Freeman was improperly motivated or failed to act within the permissible bounds of

12

discovery, as there is none.  Moreover, it was Defendants that acted in bad faith during discovery.  For example, they identified two witnesses in their Rule 26 Disclosures as having relevant information, but when Freeman's attorneys deposed them, the witnesses testified they knew nothing about the subject matter of the case. See Doniger Decl. ¶ 4.

Defendants also complain about Freeman's efforts during discovery which unearthed the substantial evidence of Kim participating in the writing of the *Crave* series, falsely claiming it only revealed "that Kim's involvement was indisputably limited to fixing typos" (Defendants' Motion, p.12), and broadly arguing that Freeman's claims of access were nothing but farfetched conjecture. But as set forth in the preceding section, Freeman's claims of access were far from farfetched conjecture—they were essentially established at summary judgment as to many of her core manuscripts. And the evidence unearthed by Plaintiff included text messages with Kim admitting: "I'm also helping Tracy write;" "Tracy and I are team speed writing new scenes;" and "I helped write all this" all of which the Court found to create "a genuine dispute as to whether defendant Kim aided Wolff write the BMR series." (Dkt. No. 418, pg. 2); *See also* Dkt. 361, pp. 8. Indeed, even after the transfer of this case to Judge McMahon this Court confirmed "there's no question that access would have to go to a jury." Doniger Decl. ¶ 2, **Ex. 1** at 5:22-6:3.

Beyond their demonstrably false claims that discovery revealed no evidence of access or of Kim's direct participation in the writing of *Crave*, Defendants argue that Freeman's claims must be frivolous because Wolff was simply too creative and successful to need to copy anyone. Setting aside that Defendants cite no authority holding that an author's past success, even if proven, somehow disproves copying (there is none), the evidence in this case actually showed that before *Crave* Wolff was an erotica author in a difficult slump who had trouble meeting

13

deadlines and worried whether her career was over.[16] Defendants' argument that it was frivolous for Freeman to seek discovery on this topic--particularly where Freeman reasonably (and correctly) anticipated that Defendants would falsely tout Wolff's allegedly successful career--is itself frivolous.

And Defendants attempts at providing other "specific examples" of bad faith conduct do not withstand scrutiny. As discussed, findings or bad faith are rare because they must be based on "clear evidence" to actions taken "entirely without color" and purely motivated by "improper purposes such as harassment of delay." *Rates Tech. Inc. v. Broadvox Holding Co., LLC*, 56 F. Supp. 3d 515, 526–27 (S.D.N.Y. 2014). Nor can the improper motivation be speculative; it must be based on specific findings that the conduct in question was meritless and undertaken with improper motive. See *Gordon v. Kaleida Health*, No. 08-CV-950S, 2012 WL 1965671, at *3 (W.D.N.Y. May 31, 2012), citing *Kerin v. U.S. Postal Service*, 218 F.3d 185, 192 (2d Cir.2000).

Defendants identify no real, let alone clear, evidence or specific findings of bad faith or improper motivation. Instead, they ask this Court to find vexatious or malicious conduct in such commonplace things as Freeman successfully moving for reconsideration of an order, filing separate lawsuits over unadjudicated claims to preserve the statute of limitations (and requesting that each suit be stayed pending the resolution of this one to avoid incurring additional costs for all parties), requesting financial documents relevant to determining damages from a defendant, and making allegations and arguments that Defendants disputed. Defendants' inflammatory language and bald conjecture cannot transform such standard litigation conduct into malice and impropriety.

---

[16] See Dkt. No. 289, ¶¶ 32-34.

14

Perhaps most egregiously, Defendants attempt to falsely manufacture scattered quotes from Ms. Freeman's deposition into some kind of admission of ill-intent. But their citations to page 88 of Freeman's deposition transcript appear hallucinated, as that page contains none of the quotations Defendants cite. See Freeman TR, pg. 88. And even where their quotes are correct, they amount to little more than reasonable admissions by Freeman that certain elements common to both *BMR* and *Crave* are, in their most abstracted form, also common to other stories. Of course, the Second Circuit has made clear that such admissions alone cannot defeat a copyright claim because "original works broken down into their composite parts would usually be little more than basic unprotectible elements." *Boisson v. Banian, Ltd*, 273 F.3d 262, 272 (2d Cir. 2001). This is especially so where, as here, a copyright holder also believes that the original selection and arrangement of tropes and unprotectable elements was copied. See *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010) (holding that copyright infringement exists where the defendant misappropriates "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work.")

Next, and with no small irony, Defendants complain that Freeman has posted about this case on her website, ignoring that Defendants and their cohorts have *repeatedly* sought to bring this case into the public eye, including through (1) repeated social media posts decrying Freeman's case by an attorney and author published by Defendant Entangled who shares the same social group with Wolff (See Dkt. 360), and (2) Defendant Emily Sylvan Kim giving a presentation for the Association of American Literary Agents which opined at length that Freeman's claims were baseless, criticized the Court's rulings, directly asked the audience to post about the case online, and soliciting amicus briefs from the public, stating: "[I]f you have a friend who's a lawyer who wants to write an amicus brief for our case, like please encourage

15

them to do so. Like, we have to win this case because, you know, our profession is at stake."[17] Defendants' argument that Freeman has acted in bad faith are disingenuous and hypocritical.

Finally, Defendants falsely argue that Freeman acted in bad faith by inventing facts about meeting with Wolff at a literary conference in Anaheim, California, where she shared with Wolff about her BMR manuscript and living in Alaska. *See* Moving papers, 9. That meeting, however, is corroborated by an independent third-party witness named Marissa Doyle who Freeman had considered using as an impeachment witness if Kimi and Wolff continued to deny the meeting. *See* Declaration of Marissa Doyle, ¶¶ 3-5. Defendants' steadfast refusal to acknowledge a meeting where Wolff first learned about Freeman's work shows their bad faith, not Freeman's.

Defendants "bad faith" arguments do not withstand scrutiny as they come nowhere near meeting the high standard for such a finding. This factor militates against an award of fees.

### 3. Freeman's claims were not objectively unreasonable.

As discussed above, "[t]he fact that a party's factual or legal theory was not ultimately successful does not mean it was objectively unreasonable." *Gaffney v. Muhammad Ali Enters. LLC*, No. 18 CIV. 08770 (GBD) (OTW), 2026 WL 878993, at *3 (S.D.N.Y. Mar. 31, 2026). Indeed, "[t]his kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." *Roth v. Pritikin*, 787 F.2d 54, 58 (2d Cir. 1986), citing *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421–22, 98 S.C.t 694, 700, 54 L.Ed.2d 648 (1978). Yet Defendants

---

[17] See https://vimeo.com/1081627739/5a6016194e?share=copy. Kim further solicited an article in in which she alone was interviewed and stated: "If cases like this go to trial without that comparison being done first, it imperils the creative community and encourages meritless claims." She continues: "I am being sued in this case simply because I represented two writers at the same time, writing in the same genre, and helped both of them through my encouragement and advice. That cannot automatically create a presumption that I (or any other creative talent agent) facilitated or engaged in copyright infringement."

rely on little more than this Court's finding against Freeman on the substantial similarity question to argue that her claims were objectively unreasonable. That argument should be rejected.

As with frivolousness, "[a] copyright infringement claim…is objectively unreasonable when [it] is clearly without merit or otherwise patently devoid of a legal or factual basis." *HarperCollins Publishers LLC v. Open Rd. Integrated Media, LLP*, 58 F. Supp. 3d 380, 389 (S.D.N.Y. 2014), quoting *Porto v. Guirgis*, 659 F.Supp.2d 597, 617 (S.D.N.Y.2009). Among the factors for an award of fees, "objective unreasonableness is one of the most significant factors and, in the Second Circuit in particular, it is given substantial weight in determining whether fees are warranted." Id., citing *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 108 (2d Cir.2014).

As ventilated above, Freeman's copyright infringement claims were grounded in sound legal and factual bases including (1) undisputed ownership of a valid copyright, (2) a clear intermediary to establish access, (3) a strong showing of probative similarities demonstrating actual copying / that independent creation was "improbable", and (4) a good faith belief that the remarkable similarities between the works established substantial similarity of protectable expression. That the Court ultimately decided the last basis against Freeman does not render her case objectively unreasonable. Indeed, Copyright cases presenting "difficult issues of credibility and creativity" in which the plaintiff's claim is supported by evidence are "objectively reasonable and non-frivolous, even if ultimately unsuccessful." *Maxwood Music Ltd. v. Malakian*, 722 F. Supp. 2d 437, 440 (S.D.N.Y. 2010).

Defendants cite other copyright matters where courts found a party's claims objectively unreasonable, but each is readily distinguishable. First and foremost, none of those cases involved the strong evidence of copying present here. Defendants cite *Williams v. Crichton,*

17

*Porto v Guirgis*, and *Adsani v. Miller*, but in none of these cases did the Court find, as it did here, that the works at issue contained similarities probative of Defendants' copying such that independent creation was implausible. In *Williams v Crichton,* not only was there no evidence of copying, but the two works were profoundly different—one a children's book and one an adult thriller novel, sharing no similarities beyond "the unprotectible idea of a dinosaur zoo" where even the plaintiff conceded that several of his works at issue were "not infringed upon by the Jurassic Park works." *Williams v. Crichton*, 84 F.3d 581, 583 (2d Cir. 1996). Similarly, the *Porto v. Guirgis* court awarded fees because the plaintiff's case rested on alleged similarities that came "directly from the Bible, and therefore clearly cannot be protectible elements of the plaintiff's novel." *Porto v. Guirgis*, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009). And in *Adsani v. Miller,* the plaintiff's case had so little support in fact that the court concluded that "the only similarities between these two books stem from the fact that each has a female protagonist living in a Middle Eastern country. Beyond that, they bear almost no relationship to each other." *Adsani v. Miller*, No. 94 CIV. 9131, 1996 WL 194326, at *15 (S.D.N.Y. Apr. 22, 1996).

As this Court is well aware, Freeman's case did not rest solely on a single shared concept or historical or public domain elements. And far from concluding that *BMR* and *Crave* bear almost no relationship to each other, this Court found they contained the type of similarities one would not expect to exist absent copying. Given these facts, the cases on which Defendants rely are inapt and Defendants' assertion that this was always an "objectively unreasonable" case fail.

Incredibly, Defendants then claim it was objectively unreasonable for Freeman to argue the "selection and arrangement" of elements to prove copyright infringement despite this Court recognizing that "[e]ven where individual elements are not protectable, copyright protection can extend to an author's original selection, coordination, and arrangement of those elements." Dkt.

18

No. 548. Similarly, it is well settled that it is "common practice of courts of the Second Circuit, which generally review works of multiple volumes or iterations in the aggregate." *See DiTocco v. Riordan*, 815 F. Supp. 2d 655, 658 (S.D.N.Y. 2011), aff'd, 496 F. App'x 126 (2d Cir. 2012) (reviewing plaintiff's two books and defendant's five-book series in the aggregate).[18] While the Court did not entirely agree with Freeman's aggregation analysis, those arguments were well grounded in the facts and the law,[19] and it is Defendants who are now making the objectively unreasonable arguments by insisting otherwise.

Freeman's claims were not objectively unreasonable. This factor weighs heavily against an award of fees.

### 4. Awarding attorneys' fees would deter copyright owners from prosecuting infringement and frustrate the purpose of the Copyright Act.

Freeman agrees with Defendants that this case has cast a dark shadow over the realm of genre fiction, but not for the reasons Defendants assert. Now, genre fiction writers see that even with undisputed ownership of a valid copyright, clear evidence of direct access, and findings by multiple judges that independent creation was all but impossible, they may still have no recourse when they see copying of specific original elements of their work. Going even further to require Freeman to pay Defendants' attorney's fees will only compound this chilling effect on enforcement and create an open field for the mining and recasting of copyright-protected

---

[18] See also, *Kaye v. Cartoon Network Inc*., 297 F. Supp. 3d 362, 364–65 (S.D.N.Y. 2017) (comparing plaintiff's nine-part comic book series with defendant's multi-season TV show as aggregated wholes); *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1370–71 (2d Cir. 1993) (comparing defendant's work against entirety of *Twin Peaks* television show).
[19] Defendants' suggestion that Freeman's attorneys "actively worked to erode a tenant of copyright law is an unwarranted, unjustified, and simply unprofessional attack upon attorneys who have been repeatedly recognized for their contributions to the advancement of copyright law. See Doniger Declaration, Par. 5.

19

works—a result that will assuredly not serve the Copyright Act's goals of "encourage the origination of creative works by attaching enforceable property rights to them." *Porto v. Guirgis*, 659 F. Supp. 2d 597, 618 (S.D.N.Y. 2009), quoting *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir.2001).

Because the Act is designed to encourage authors to enforce their rights, even in difficult cases, "the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Matthew Bender & Co. v. W. Pub. Co.*, 240 F.3d 116, 122 (2d Cir. 2001), citing *Mitek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842–43 (11th Cir.1999); see also *Hallford v. Fox Ent. Grp., Inc.*, No. 12 CIV. 1806 WHP, 2013 WL 2124524, at *2 (S.D.N.Y. Apr. 18, 2013)(denying fee award after plaintiff lost on substantial similarity because "an award of fees and costs would tend to prohibit potential future claimants from litigating questions of fact and law that are not objectively unreasonable.")

In contrast, awards of attorney's fees against plaintiffs are generally wanted where "[f]ailing to award attorneys' fees to defendants in such situations would invite others to bring similarly unreasonable actions without fear of any consequences." *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 668 (S.D.N.Y. 2001). In *Earth Flag*, the court found such circumstances because the plaintiff brought suit over "nothing more than a public domain photograph transferred from the medium of paper to the medium of fabric" and thus could not plausibly prove even a single element of copyright infringement. *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 667 (S.D.N.Y. 2001). Freeman's case was nowhere near this level of frivolity and thus does not call for similar deterrence.

20

Given the significant expense and public exposure of this case, authors who believe their works have been misappropriated already have good reason to think twice before bringing a claim. But substantial similarity on literary infringement claims is necessarily a case-by-case determination such that an award of fees against Freeman is not a proper vehicle to discourage other authors from seeking to enforce their rights in hypothetical future cases. Indeed, if another author like Freeman establishes that her agent worked with another author to create a new work that copies from her work and competent copyright counsel sees a facially plausible claim of substantial similarity, it *does not* serve the Act to dissuade prosecution of such a claim by setting a precedent in this case that such claims will result in an award of fees to the copier.

The Court should also consider the relative finances of the parties when deciding a fees motion. See *Video–Cinema Films, Inc. v. Cable News Network, Inc.*, 2003 WL 1701904, at *5 (S.D.N.Y. Mar. 31, 2003) (considering the parties' relative financial strength as a factor in considering fees); see also *Hallford v. Fox Ent. Grp., Inc.*, No. 12 CIV. 1806 WHP, 2013 WL 2124524, at *2 (S.D.N.Y. Apr. 18, 2013)("because 'fee awards are at bottom an equitable matter, the Second Circuit has stated that courts should not hesitate to take the relative wealth of the parties into account.'") Here, the vast majority of the fees are being sought by Defendant Entangled who, based on a recent article, appears to have been worth approximately $400 million last year and was partially acquired by Peter Chernin's private equity firm.[20]  Regardless of Freeman's earning potential, there is a vast disparity in the financial strength of the parties which favors a denial of fees.

---

[20] See "*Chernin Group Invests in 'Romantasy' Publisher Entangled*" attached as **Ex. 2** to the Doniger Decl.

**B.  The Amount of the fees requested appears to be unjustified**

Defendants, as "the fee applicant[,] bear[] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994). To meet this burden, a request for fees should be ""documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Ferrara v. CMR Contracting LLC*, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012), citing *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir.1998); see also *Samms v. Abrams*, 198 F. Supp. 3d 311, 321 (S.D.N.Y. 2016), citing *New York State Ass'n for R. Children v. Carey*, 711 F.2d 1136, 1147 (2d Cir.1983) ("Absent unusual circumstances, attorneys are required to submit contemporaneous records with their fee applications.") Defendants provide no records of any kind to support their request for over $3.4 million in attorneys' fees, preventing Freeman and the Court from evaluating the reasonableness of those fees in any meaningful way. Defendants' request that the Court confirm their entitlement to millions of dollars in fees without any records to support that claimed amount must be denied.

**V.    Defendants' motion should be denied.**

Defendants' motion seeks to rewrite the history of this case into one in which an aggrieved author with colorable claims is actually a malicious grifter who should be punished for the audacity to pursue her claims despite clear evidence of a valid copyright, intermediary access, and probative similarities that all but establish actual copying. But Defendants' attacks do not fit the facts, and the facts do not establish that an award of fees is warranted in this case. To the contrary, Freeman's claims were far from frivolous, objectively unreasonable, or brought in

22

bad faith, and an award of fees will not advance the goals of the Copyright Act. This motion

should be denied.

Dated: July 2, 2026                                   Respectfully submitted,
New York, New York

                                         By:    /s/ *Stephen M. Doniger*
                                                Stephen Doniger, Esq.
                                                **DONIGER / BURROUGHS PC**
                                                603 Rose Avenue
                                                Venice, California 90291
                                                (31) 590-1820
                                                stephen@donigerlawfirm.com

                                                **Reeder McCreary, LLP**
                                                Mark D. Passin
                                                11766 Wilshire Boulevard,
                                                Suite 1470
                                                Los Angeles, CA 90025
                                                310-861-2475
                                                *Attorneys for Plaintiff Freeman*

23