**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

LYNNE FREEMAN,

          Plaintiff,

   v.

TRACY DEEBS-ELKENANEY, et al.

          Defendants.

Case No. 1:22-cv-02435 CM-SN

**REPLY BRIEF IN SUPPORT OF MOTION FOR AN ORDER DECLARING DEFENDANTS THE PREVAILING PARTIES AND AWARDING ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION………………………………………………………………... 1

II.    ACCESS AND PROBATIVE SIMILARITY WERE NEVER ESTABLISHED.……...... 1

III.   THAT FREEMAN'S LAWYERS AND PAID EXPERT WANTED HER TO WIN
       DOES NOT MEAN HER CASE WAS NOT FRIVOLOUS……………………….... 3

IV.    FREEMAN'S BAD FAITH IS WELL-ESTABLISHED AND ONGOING……………. 4

V.     THE LAW SUPPORTS A FINDING OF OBJECTIVE UNREASONABLENESS…...... 7

VI.    CONCLUSION………………………………………………….………..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adsani v. Miller*,
1996 WL 194326 (S.D.N.Y. 1996)...........................................................................................9

*Adsani v. Miller*,
1996 WL 531858 (S.D.N.Y. 1996)...........................................................................................9

*DiTocco v. Riordan*,
815 F. Supp. 2d 655 (S.D.N.Y. 2011)....................................................................................10

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994)................................................................................................................10

*Gaffney v. Muhammed Ali Enterprises LLC*,
2026 WL 8989993 (S.D.N.Y. Mar. 31, 2026) ..........................................................................9

*HarperCollins Pubs. LLC v. Open Road Integrated Media, LLP*,
58 F. Supp. 380 (S.D.N.Y. 2014) .............................................................................................9

*Maxwood Music Ltd. v. Malakian*,
722 F. Supp. 2d 437 (S.D.N.Y. 2010)......................................................................................9

*Porto v. Gurgis*,
659 F. Supp. 2d 597 (S.D.N.Y. 2009)......................................................................................8

*Roth v. Pritkin*,
787 F.2d 54 (2d Cir. 1986)......................................................................................................10

*Williams v. Crichton*,
860 F. Supp. 158 (S.D.N.Y. 1994) ...........................................................................................8

*Williams v. Crichton*,
891 F. Supp. 120 (S.D.N.Y. 1994) .......................................................................................8, 10

**Federal Statutes**

17 U.S.C. § 505..............................................................................................................................1

**Federal Rules**

Fed. R. Civ. P. 54(d) ................................................................................…… 1, 10

## I.    INTRODUCTION

Freeman fails to meaningfully address the factual arguments in Defendants' motion for prevailing party fees because she cannot dispute that her actions in bringing and maintaining this lawsuit were objectively unreasonable, frivolous and motivated by bad faith.  Instead, she argues that her claims cannot be frivolous because two prior judges found in her favor on probative similarity and access – although they did no such thing.  Similarly, she argues that her claims were not objectively unreasonable because her contingency lawyers and her paid expert on substantial similarity (who has been repeatedly excluded from offering evidence on that issue) both think she should have won.  Finally, she makes the incredible claim that this case is novel simply because she has a copyright, a far-fetched theory of intermediary access, and a distaste for established copyright law, particularly the ordinary observer test for substantial similarity.  Of course, none of those factors individually or taken together make this case novel.  Instead, as this Court properly found, it is "a case that is easily disposed of once one reads the allegedly infringed and infringing works against each other in light of the well-developed law in this Circuit on substantial similarity within literary works." [Dkt. 548, p. 82.]

The unrefuted evidence set forth in Defendants' motion [dkt. 551] overwhelmingly establishes Defendants' right to prevailing party fees and costs in an amount to be determined by this Court pursuant to 17 U.S.C. § 505 and Federal Rule of Civil Procedure 54(d).

## II.    ACCESS AND PROBATIVE SIMILARITY WERE NEVER ESTABLISHED.

Freeman has again re-written history to suit her narrative by claiming that findings were made in this case in her favor on probative similarity and access, such that her claims cannot be considered frivolous or objectively unreasonable by this Court.  Of course, no such findings were ever made.  As Judge Stanton recognized, in Magistrate Judge Netburn's non-binding Report and Recommendations, she made "carefully limited analyses of the degrees of similarity between the

two parties' works" and while she had found, based on that <u>very carefully limited analysis</u>, that the parties' works shared "probative, but not striking, similarities," her "analyses should be taken as advisory rather than mandatory" and could not be taken as substitutes for a "verdict rendered on independent evidence." [Dkt. 398, pp. 2-3, emphasis added.][1] For that reason, Judge Stanton expressly did <u>not</u> make any findings on "access, probative similarity, striking similarity, actual copying, independent creation [or] unlawful appropriation." [*Id.*, p. 3.] Your Honor recognized as much, noting that as to both probative similarity and access, "predecessor judges found genuine issues of material fact" and that "[n]either jurist made the requisite comparison between Plaintiff's and Defendants' work…" [Dkt. 548, pp. 19-20.]

The only factual findings that have ever been made on the merits are those contained within the 157 pages of this Court's ruling on substantial similarity. [Dkt. 548.] Those findings, made after Your Honor "personally read every word of the four Wolff books and the six Freeman drafts and nine sets of notes at issue in this case" amounting to "upwards of 6000 pages of romantasy fiction" [*id,* p. 9], include that Freeman's supposed similarities "turn out not to be similar at all when one goes back to the text" or are "nothing more than specific bits and pieces found here and there in works of extended length," and that her legal arguments were legally unsound, misguided, and even trivialized copyright law. [*Id.*, pp. 37, 41, 66.]

As reflected at length in Defendants' motion, Judges Netburn and Stanton were right to deny Freeman summary judgment on the issues of probative similarity and access. Her claims on probative similarity were based entirely on indices of supposed similarities that this Court found

---

[1] Furthermore, contrary to Freeman's assertion in the very first sentence and throughout her Opposition, there was no finding, even by the Magistrate Judge, that Kim substantively assisted in writing the *Crave* series; to the contrary, Judge Netburn stated: "Whether Kim helped write *Crave* is, however, genuinely in dispute." [Dkt. 361, p. 8].

to be "inherently subjective and unreliable," based on "random similarities scattered throughout the works," and consisting almost entirely of "tropes/*scenes a faire*, similarities based on the shared use of ordinary words and common phrases, or trivial details that have no bearing on the total concept and overall feel of the works." [Dkt. 548, pp. 27, 65.] And Freeman's claims of access, while ultimately never determined by any judge in this case, were even more frivolous for all of the reasons set forth in detail at pages 13-15 of Defendants' motion. [Dkt. 551.] Freeman's mischaracterization of and reliance upon early orders of this Court and, worse yet, upon a dicta comment made during an early hearing before Your Honor, to argue that Defendants should not be entitled to prevailing party fees, underscores the fundamental weakness of her arguments.

### III. THAT FREEMAN'S LAWYERS AND PAID EXPERT WANTED HER TO WIN DOES NOT MEAN HER CASE WAS NOT FRIVOLOUS.

Freeman argues that, because she was supported in her efforts by "very experienced copyright practitioners," her claims were not frivolous or objectively unreasonable. Of course, the fact that a party asserting frivolous claims was represented by counsel is irrelevant (and sadly commonplace). It also warrants pointing out that over twenty lawyers turned down Freeman's case before her current lawyers agreed to represent her. And notably, none of her lawyers have conclusively said they actually read all of the material themselves; indeed, it seems they did not, since Freeman testified she had to step away from her busy law practice to handle this case on a full-time basis behind the scenes. [Dkt. 551-5, pp. 6-8.]

Arguably worse than relying upon the fact that she was represented by counsel and upon that contingency attorney's self-serving declaration, Freeman again urges this Court to rely, not upon its own reasoned, well-thought out, researched and extraordinarily thorough analysis reached after spending more than eight weeks reading all of the material at issue in this case, but upon the

3

declaration of her excluded expert who this Court already found (many times) inadmissible to testify on substantial similarity.

On August 1, 2024, Judge Netburn recommended that Kathryn Reiss be excluded as an expert. [Dkt. 362.] On November 21, 2024, Judge Stanton adopted that recommendation and ordered she be excluded. [Dkt. 398.] On January 30, 2025, Judge Netburn denied Freeman's request to designate Reiss as a rebuttal expert. [Dkt. 425.] Freeman objected and Judge Stanton expressed dismay that Freeman was seeking the reversal of "thrice-repeated refusals" to allow Reiss as an expert. [Dkt. 453.] He stated unequivocally that Reiss's proposed testimony was inadmissible, unreliable, and failed to address highly relevant evidence, and he concluded that her "exclusion is prudent and is supported by a thorough knowledge of Reiss's offerings." [*Id.*]

Beyond the fact that this Court has repeatedly found Reiss to be unreliable, it is well-established that expert testimony is inappropriate to determine whether two works are substantially similar, as it is the more discerning lay observer whose opinion decides that issue. [Dkt. 548, p. 28.] As this Court held, expert testimony is "certainly not [admissible] on the ultimate question of whether Freeman's work and Wolff's are substantially similar…" [*Id.*, p. 32.] Given that holding, it is both frivolous and objectively unreasonable for Freeman to again rely on Reiss's inadmissible testimony in order to convince this Court that its own conclusions on substantial similarity were wrong.

## IV.    FREEMAN'S BAD FAITH IS WELL-ESTABLISHED AND ONGOING.

Freeman's bad faith was extensively chronicled in Defendants' motion and the supporting declarations filed therewith. Perhaps it can be even better summarized by considering her own words while working on her manuscript: "I firmly believe that money is to be made on paranormal romance series. And that they can be done quickly once a formula is in place… Taking a tried and true formula from commercially successful authors and applying it to your own idea... can't hurt."

4

[Dkt. 306, p. 24.]  Indeed, Freeman went on to take formulas from various commercially successful authors and, as her own expert described, incorporated virtually *all* of the tropes and conventions that exist in the YA romantasy genre into her work.  Then, she decided her work was substantially similar to that of a commercially successful author and accused that author of plagiarizing her!  And the bad faith did not stop there, as thoroughly discussed at pages 16-21 of Defendants' motion, and in their recently filed reply brief in support of the motion for an appeal bond.[2]  [Dkt. 566].

Freeman's attempts to defend her bad faith by attacking Defendants are easily dismissed.  First, she inaccurately portrays Wolff as a struggling erotica author ready to give up on writing and desperate enough to plagiarize Freeman's unpublishable work. [3]  But her "evidence" consists of private messages sent by Wolff reflecting on a temporary moment of despair (a common occurrence for most creatives[4]) that happened four years before Wolff started writing the *Crave* series.  The hypocrisy of accusing Defendants of "falsely tout[ing] Wolff's allegedly successful career" while portraying Freeman as the source of every creative idea Wolff ever had is truly astounding.  Wolff published more than 60 books, across multiple genres, before she ever wrote *Crave*. [5]  She has published 12 more novels <u>since</u> writing *Crave.*  She has been nominated for and

---

[2] The bad faith exhibited by Freeman and her lawyers continues on appeal, where a supposedly neutral "artists rights organization" sought to file an amicus brief in support of Freeman, but it turns out the organization is run by one of Freeman's own attorneys of record.

[3] Of Wolff's more than 75 published works, only 10 are in the "erotica" genre.  In fact, she was publicizing three of her YA novels at the 2012 conference Freeman is so obsessed with.  Speaking of which, Freeman has now submitted a declaration by someone whose recollection of what happened 14 years ago at that conference is, as previously established in the motion, contradicted by the <u>literal</u> receipts showing there was no supposed rental van ride to a conference hotel where Kim and Wolff were already staying.

[4] Including, ironically, Freeman herself, who wrote in an email while working on her manuscript: "What I've been going through – this crisis of confidence – is mental quicksand.  Manuscript written and plot problem…. Bottom line for me: I'm just not satisfied with my plot and how it will play out-yet." [Dkt. 306, p. 24.]

[5] As with *Crave,* Freeman unsuccessfully tried to take credit for many of these books, irrespective of when they were written.  [Dkt. 551, p. 18, Dkt. 103-2.]

won countless awards, and has made the *New York Times* Bestseller's List (and others) on multiple occasions (and contrary to Freeman's baseless accusation, she has never lost a single book deal in her life). If that is an "allegedly successful career," it would be interesting to know what metric Freeman relies upon.

Next, Freeman defends her sworn deposition testimony wherein she admitted that the claimed similarities between her work and *Crave* consisted of genre tropes, conventions and scenes-a-faire found in many other romantasy novels, by arguing that she truly believes, even though the works are not substantially similar, that "the original selection and arrangement of tropes and unprotectable elements was copied." But she did not start to rely upon a selection and arrangement theory until the second round of summary judgment in this case, and even then the Court found that she did not bother to "make a concerted effort to demonstrate how her selection and arrangement of events in a single manuscript is substantially similar to the selection and arrangement of events across the four *Crave* books as a whole." [Dkt. 548, p. 78.] The Court moreover found that the theory was unavailing because the selection and arrangement of individually unprotectable elements in BMR / Masqued is not sufficiently original to warrant copyright protection." [*Id.,* p. 77.] Even assuming Freeman really believes in the selection and arrangement theory that she came up with on the eve of trial, her dogged pursuit of a lawsuit based entirely on a subjective belief unsupported by any evidence and that ignores established copyright law clearly was and is undertaken in bad faith.

Freeman next attempts to justify her trolling campaign against Wolff by arguing that Defendants "sought to bring this case into the public eye" - but her two examples are ridiculous and pale in comparison to what she and her cohorts have said and done to attack Wolff over the years. First, she claims an author who supposedly "shares the same social group" with Wolff made

6

social media posts about the case online.  The person to whom Freeman refers is an intellectual-property-lawyer-turned author who met Wolff once, over a decade ago, when they were both nominated for a RITA award, and she decided to speak about the case on her own initiative, absent any prompting from Wolff or the other Defendants, as she often does on legal issues affecting the publishing community.  And the fact that Emily Kim was asked by the lawyer for the Association of American Literary Agents to speak about her experience during a private seminar hardly equates to "bringing this case into the public eye."  What equates to bringing this case into the public eye was Freeman soliciting articles and giving interviews to everyone from *The Anchorage Daily News* to *The New Yorker,* and her friends, family, lawyer and expert witness commenting on just about every social media post about Wolff or *Crave* they could find by calling Wolff a "plagiarist," publicly ridiculing Wolff's writing, stating what Defendants did is "so disgusting" and they should "get what they deserve," posting that Wolff and Kim stole "deeply personal details drawn from Lynne's life" in a "troubling pattern of exploitation," and, claiming that Freeman's "beautiful writing … was churned out into formulaic pulp."  What equates to bringing this case into the public eye is Freeman *still* keeping up her ridiculous website that proudly proclaims this case is going to trial.[6]  Freeman's bad faith is undeniable and ongoing, and her pot shots at the Defendants should not distract from that fact.

## V.    THE LAW SUPPORTS A FINDING OF OBJECTIVE UNREASONABLENESS.

Freeman argues that the cases cited by Defendants as precedent for awarding fees to a prevailing defendant are inapposite, because she had "essentially established" access and probative similarity, and the question of substantial similarity was a "close call."  Those arguments fail for

---

[6]  www.lynnefreemanwriter.com

the reasons stated above and because the cases Freeman attempts to distinguish are, in fact, remarkably similar to this one.

In *Williams v. Crichton,* 891 F. Supp. 120-22 (S.D.N.Y. 1994) ("*Williams I*"), Williams argued he had "presented, in good faith, a novel and complex issue" of whether an adult novel could infringe a children's book, and reminded the Court that it had at least found the settings of both works similar.[7]  But the Court awarded Crichton his attorney's fees based on finding (just like it did here) that William's claim was objectively unreasonable where it was based on "highly selective, scattered details" contained within a "quantitatively impressive list of apparent similarities that break down under the closer, detailed examination which the copyright law requires," even where he had (like Freeman) "mixed and matched" from across six works, meaning "the opportunities for identifying similar details [was] greatly enhanced." *Williams II,* 860 F. Supp. at 161, 170.

In *Porto v. Gurgis,* the plaintiff published a novel about a modern-day trial of Judas Iscariot. 659 F. Supp. 2d 597, 603 (S.D.N.Y. 2009).  Six years later, the defendant produced a play about a trial of Judas that takes place in purgatory. *Id.*  Like here, the plaintiff "provided a list of the alleged similarities between the two works" but upon comparing the works under the more discerning ordinary observer test, the Court found that (like here) the differences were "clear and pervasive" and when "the unprotectible elements are removed, no reasonable observer could regard these works as substantially similar." *Id.* at 606, 616.  In awarding fees, the Court noted there was indicia of bad faith given the complaint was (like here) against an award-winning work and its author, but even absent bad faith, the fact that (also like here) "nearly every instance of alleged similarity

---

[7]  And unlike here, Williams had sold over 800,000 copies of his book in the U.S. and abroad, so that access was presumed. *Williams v. Crichton,* 860 F. Supp. 158, 161 (S.D.N.Y. 1994) ("*Williams II*").

between the defendants' work and the plaintiff's work relates to unprotectible ideas rather than protectible expression and the total concept and feel of the works were profoundly different," meant the claims were objectively unreasonable. *Id.* at 617-18.

In *Adsani v. Miller,* 1996 WL 194326, at *1, 12 (S.D.N.Y. 1996), the facts are even closer. Plaintiff and defendant shared an agent, the plaintiff shared her unpublished manuscripts with the agent, and the agent informed her several weeks later that he had decided to market defendant's book instead, which also involved a female protagonist living in the Middle East. And just like here, the Plaintiff "list[ed] a litany of similar details which, in the main, are nothing more than trivial instances of similarity which…do not approach meaningful, much less substantial similarity." *Id.* at *14. In defending against a fees motion, Adsani also argued her claims were not objectively unreasonable based on her expert report and her belief that the Court erred in deciding the issue of substantial similarity. *Adsani v. Miller,* 1996 WL 531858, at * 14 (S.D.N.Y. 1996). The Court criticized the expert's opinions and continued to rely on its own judgment which (like Your Honors) "adequately "explain[ed] the reasons for finding that plaintiff's copyright infringement claim was objectively unreasonable." *Id.,* * 16.

While the cases described above are obviously relevant to this Court's determination, Freeman's cases, on the other hand, either support Defendants' position or are easily distinguishable. For example, in *Gaffney v. Muhammed Ali Enterprises LLC,* 2026 WL 8989993, 18 Civ. 08770, (S.D.N.Y. Mar. 31, 2026), the Court <u>granted</u> the prevailing party their attorney's fees of $1,789,431.55 and costs of $107,280.97. In *Maxwood Music Ltd. v. Malakian,* 722 F. Supp. 2d 437, 440 (S.D.N.Y. 2010), the case presented "difficult issues of credibility and creativity" involving a complicated documentary record and mistaken attribution, so that an award of costs but not fees was granted to the prevailing defendants. In *HarperCollins Pubs. LLC v. Open Road*

9

*Integrated Media, LLP,* 58 F. Supp. 380 (S.D.N.Y. 2014), the parties asked the court to interpret an "old school" licensing agreement in light of modern technological advances, and the prevailing plaintiff was granted a permanent injunction and statutory damages, but not attorney's fees.

In sum, none of Freeman's cases support a finding that her factual and legal arguments were objectively reasonable, but only serve to distinguish her lawsuit from ones that actually have merit.[8]

## VI.    CONCLUSION

As established in Defendants' motion, should the Court deny them prevailing party fees under the circumstances presented in this case, it would have a chilling effect on the literary community as a whole.  Authors should feel free to write and publish their work to the world without fearing that every time some aspiring writer identifies a common theme or idea in their work, they will be forced to spend millions of dollars defending themselves and their reputations, without which they may lose their careers and their livelihoods.

Defendants have overwhelmingly established that they are entitled to prevailing party fees and that the amount they seek is reasonable.[9]   Should the Court grant their motion, they will provide further evidence of that fact (including their redacted invoices) as contemplated by Federal Rule of Civil Procedure 54(d).

---

[8] In addition, Freeman's cited case of *Roth v. Pritkin,* 787 F.2d 54 (2d Cir. 1986) was abrogated by *Fogerty v. Fantasy, Inc.,* 510 U.S. 517 (1994), as recognized in *Williams I,* 891 F. Supp. at 121. And the case of *DiTocco v. Riordan,* 815 F. Supp. 2d 655 (S.D.N.Y. 2011), as pointed out in prior briefs, does <u>not</u> actually say what Freeman quotes it as saying (a misattribution for which Mr. Doniger previously apologized but nevertheless continues to repeat).

[9] Freeman claims she spent $1.4 million, and that is with several of her attorneys, including Mr. Doniger, working on contingency.  The Defendants in this and the ancillary cases are eleven different parties.  It makes sense their fees totaled over $3.4 million, and it is a wonder that number isn't higher given the manner in which Freeman has litigated this case over five years.

Dated: July 10, 2026                                    Respectfully submitted,


                                                        */s/ Amy L. Nashon*


                                                        Amy L. Nashon
                                                        California State Bar No. 316353
                                                        **TROYGOULD P.C.**
                                                        1801 Century Park East, Suite 1600
                                                        Los Angeles, CA 90067
                                                        Phone: (310) 553-4441
                                                        Fax: (310) 201-4746
                                                        anashon@troygould.com


                                                        Jennifer Pariser
                                                        **OPPENHEIM + ZEBRAK, LLP**
                                                        461 5th Avenue, 19th Floor
                                                        New York, NY 10017
                                                        Phone: (212) 951-1874
                                                        Fax: (866) 766-1678
                                                        JPariser@oandzlaw.com


                                                        *Attorneys for Defendants Tracy Deebs-
                                                        Elkenaney p/k/a Tracy Wolff, Entangled
                                                        Publishing, LLC, Holtzbrinck Publishers,
                                                        LLC d/b/a Macmillan, and Universal City
                                                        Studios LLC*


                                                        Lacy H. Koonce, III

                                                        **KLARIS LAW PLLC**
                                                        161 Water Street, Ste. 904
                                                        New York, NY 10038
                                                        Phone: (917) 612-5861
                                                        lance.koonce@klarislaw.com
                                                        *Attorneys for Defendants Emily Silvan Kim
                                                        and Prospect Agency, LLC*


                                                        Dwayne K. Goetzel
                                                        Texas State Bar No. 08059500
                                                        **KOWERT,    HOOD,    MUNYON,
                                                        RANKIN & GOETZEL, P.C.**
                                                        1120 S. Capital of Texas Hwy.
                                                        Building 2, Ste. 300
                                                        Austin, Texas 78746
                                                        Phone: (512) 853-8800
                                                        Fax: (512) 853-8801


                                                11

dgoetzel@intprop.com
*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff*

12