**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| LYNNE FREEMAN, | Case No. 1:22-cv-02435 CM-SN |
| Plaintiff, | |
| v. | **DEFENDANTS' BRIEF IN SUPPORT OF REQUEST FOR AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS** |
| TRACY DEEBS-ELKENANEY, et al. | |
| Defendants. | [Filed Concurrently with Declarations of Amy Nashon, Nancy Wolff, Lance Koonce, Dwayne Goetzel and Jennifer Pariser] |

1

Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff ("Wolff"), Entangled Publishing LLC ("Entangled"), Emily Sylvan Kim ("Kim"), Prospect Agency, LLC ("Prospect"), Holtzbrinck Publishers, LLC d/b/a Macmillan ("Macmillan"), and Universal City Studios LLC ("Universal") (collectively "Defendants") jointly submit this brief pursuant to Federal Rule of Civil Procedure 54(d) in support of their request for an award of their reasonable prevailing party attorneys' fees and costs. This motion is supported by the Declarations of Amy Nashon, Nancy Wolff, Dwayne Goetzel, Lance Koonce, and Jennifer Pariser and the exhibits submitted therewith.

As set forth herein below and in the Declarations filed concurrently, the hourly rates charged by the billing professionals in this case were reasonable and customary, and the number of hours for which reimbursement is being requested were similarly reasonable and necessary, given the particular circumstances of this case. The Court should award the lodestar amount to Defendants based upon the submissions made herewith, and upon any further evidence or testimony that the Court may require.

## I.    DEFENDANTS' HOURLY RATES ARE REASONABLE

The Second Circuit has held that, in calculating attorney's fees, the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a presumptively reasonable fee. *See Millea v. Metro-North R.R. Co.,* 658 F.3d 154, 166 (2d Cir. 2011).

The hourly rates used to determine the lodestar should be "what a reasonable, paying client would be willing to pay" based on the prevailing rates in the community charged by lawyers of reasonably comparable skill providing the same type of legal services. *See Arbor Hill iConcerned Citizens Neighborhood Ass'n v. County Of Albany,* 522 F.3d 182, 184 (2d Cir. 2008). To familiarize itself with the prevailing rates in the community, the Court may consider rates approved in other cases filed within the district, evidence offered by the parties, and its own familiarity with rates charged by the attorneys appearing before it. *See Farbotko v. Clinton County,* 433 F.3d 204, 208-9 (2d Cir. 2005); *A.R. ex rel. R.V. v. New York City Dep't. of Educ.*, 407 F.3d 65, 82 (2d Cir. 2005).

2

In this case, the paralegals and attorneys for Defendants are located in California (where Entangled is based and where plaintiff lives), New York (where Kim lives and the forum selection clause lies) and Texas (where Wolff lives). The billing professionals' hourly rates range from $275 to $380 for law clerks and paralegals and from $345 to $865 for lawyers. Specifically, the attorneys in Austin, Texas billed at hourly rates between $350 to $500 per hour. One firm in New York (Cowan, DaBaets) billed at $345 per hour for associates and $450 to $600 for partners. Another firm in New York (Klaris Law) billed at a reduced, blended rate of $500 per hour. A third (Oppenheim + Zebrak) billed paralegals at $235 to $300 per hour and partners at $855 to $1,200 per hour. The attorneys in California billed paralegals at $330 to $380 and partners at $595 to $865 per hour.

In New York, the Southern District has found rates of $800 to $925 per hour for partners to be reasonable, and $275 to $450 for associates. *See Charles v. Seinfeld,* 18-cv-1196, 2022 WL 889162, at * 6 (S.D.N.Y. Mar. 25, 2022). Courts in California have similarly found hourly rates for partners of $925 to be reasonable, particularly where (as here) they possess specialized expertise. *See Garnier v. Poway Unified School District,* 17-cv-2215, 2025 WL 3403370, at * 9 (S.D. Cal. Oct. 20, 2025). And Courts in Texas have upheld awards based on hourly rates of $600 for partners and $450 for associates. *See Merrill v. Curry,* 05-24-965, 2026 WL 992193, at *6 (Ct. App. Tx. April 13, 2026). These rate ranges are consistent with the rates charged by the professionals in this case based on their respective communities and expertise.

## II.    THE AMOUNT OF TIME EXPENDED WAS REASONABLE

After determining a reasonable hourly fee, the Court will next assess the reasonableness of the time expended by counsel as reflected in the attorney's contemporaneously kept billing records. *See Forschner Group, Inc. v. Arrow Trading Co., Inc.,* No. 92 Civ. 6953, 1998 WL 879710, at *2 (S.D.N.Y. Dec. 15, 1998). Next, the court will look to "its own familiarity with the case and its experience generally." *AFP Imaging Corp. v. Phillips Medizin Sys.,* No. 92 Civ. 6211, 1994 WL 698322, at * 1 (S.D.N.Y. Dec. 13, 1994). "The relevant issue…is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable

3

attorney would have engaged in similar time expenditures." *Grant v. Martinez,* 973 F. 2d 96, 99 (2d Cir. 1992).

In this case, as discussed in Defendants' initial motion for prevailing party fees, Freeman very intentionally and successfully turned this simple case into a long, drawn-out, and extremely expensive case to defend, which consumed many hours of labor by multiple billing professionals. First, Freeman sued the author (Wolff), the agent (Kim), the agent's company (Prospect), the publisher (Entangled), the distributor (Macmillan), the production company that had optioned the book series (Universal), and the video game company that had planned to produce a video game based on the series (Crazy Maple).[1]  Kim and Wolff each obtained their own legal counsel, and Entangled retained legal counsel on behalf of itself, Macmillan, Universal and Crazy Maple.[2] While the parties entered into a joint defense agreement and collaborated and streamlined as many tasks as possible, there were still some instances of necessary overlap, depending on the task and the client, and there were always four to six attorneys from at least four separate organizations providing input on legal filings and strategy decisions at all times.

While the presence of multiple attorneys on one case can inevitably result in some instances of duplication or inefficiency, the need for multiple attorneys in this case was unavoidable, and in any event, defense counsel made a concerted effort to review and write down their invoices to account for any duplication or inefficiency that was *not* unavoidable, or that was, at the least, greater than strictly necessary.  Such entries have been redacted from the invoices and excluded from the calculation of each month's total fees.

More so than the number of parties involved, the costs of defending this case were driven up dramatically by Freeman's litigation conduct throughout.  As this Court has recognized, the

---

[1] The video game company (Crazy Maple) was eventually dismissed, and the production company (NBC Universal), which allowed the option to lapse while the litigation was pending, should have been, but was not.

[2] While Macmillan did not retain separate outside counsel, its in-house counsel was very involved with and participated in the litigation process and reviewed and commented on all substantive decisions and submissions to the Court.

refusal by Freeman to identify and produce the manuscripts upon which she based her claim resulted in substantial delay in resolving the case and increased the costs of defense. [Dkt. 583]. Even once she produced them, she fought to maintain them under seal, arguing that they were "irrelevant to the judicial function and process." [Dkt. 240, p. 2]. When the Court and the Defendants tried to streamline the litigation by staying discovery and trying the issue of substantial similarity, Freeman convinced Judge Stanton to reverse his order, claiming it would cost her too much money and cause her too much anxiety. [Dkt. 225, p. 7].

Once discovery was underway, Freeman abused the litigation process to such a degree as to cause at least $1 million in fees related to discovery issues alone, not to mention the third-party costs and expert fees associated therewith. For example, Freeman told the Court that she intended to prove her case by showing that Wolff had used her material (accessed through Kim) in various novels Wolff had written prior to *Crave,* including *Deserving of Luke, Hidden Embers, Tempest Rising,* and *Tempest Unleashed,* "to test if she could get caught using the unauthorized material" before she appropriated it more fully in *Crave*. [Dkt. 103, p. 4]. Freeman demanded discovery relating to those books, as well as the *Crave* series. [*Id*]. Defendants gathered and presented her with metadata, timestamps, and emails showing that those works had been written and submitted to Wolff's publisher before Kim ever had access to Freeman's work. [Dkt. 150, ¶¶ 28-30.] But Freeman then argued that the metadata had been intentionally altered, so that Defendants had to hire a forensic expert to confirm that was not the case. [Dkt. 132]. Undeterred, Freeman issued subpoenas to Wolff's then-publisher and deposed Wolff's best friend, all because she was so confident that Defendants had somehow manipulated the metadata. [*Id*].

The above is just one example of the type of unreasonable demands and "side quests" that made up Freeman's crippling discovery campaign (the scope of which was virtually unlimited, since she could never come up with a cognizant theory for how Defendants supposedly copied her work, much less a credible argument of substantial similarity). Other discovery tactics included (i) forensic examinations of the parties' personal and work devices; (ii) disclosure of the parties' email

passwords; [3] (iii) requiring a list of search terms to be run on each party's personal and work email accounts and text messages, that included everyday words and phrases such as "ditto," "looks like," "oh my" "element," "change" and "copy," and therefore, unsurprisingly resulted in tens of thousands (if not hundreds of thousands) of irrelevant communications; (iv) fifteen depositions of parties and witnesses located all over the country; (v) Freeman's designation of seven different expert witnesses (all of whom were deemed unreliable, unnecessary, and were properly disqualified[4]), which quadrupled the scope of expert discovery and necessitated extensive *Daubert* briefing; and, (vi) a constantly moving target of legal theories and claims for Defendants to address and shoot down.[5]

The unreasonable scope of plaintiff's discovery demands in conjunction with the number of defendants in this case greatly increased the amount of work required, as each defendant had to separately respond to multiple rounds of comprehensive discovery requests involving both liability and damages, and each were separately deposed (and in some cases, such as with Entangled and Prospect, such depositions involved multiple witnesses per party).

When it came time for summary judgment briefing, Freeman was adamant that the Court need only rely upon her list of indices and her unreliable expert witnesses instead of performing a detailed comparison of the works themselves, which ultimately increased costs and delayed resolution of the case, and necessitated a second round of cross-motions for summary judgment on the issue of substantial similarity. In addition, while the Court finally concluded that this case was "not a close one" by any stretch, the plaintiff's strategy of throwing literally every factual and

---

[3] Including for their personal email accounts, because Freeman alleged "[t]hey would most likely not use their business accounts to avoid detection." [Dkt. 59, p. 4.]. Freeman even demanded access to Kim's husband's personal email account. [*Id.*]

[4] Prior to that order (dkt. 362), however, Defendants were required to spend a great deal of time and effort, over many months, to analyze the expert reports, retain rebuttal experts to prepare rebuttal reports, and depose Plaintiff's experts, all of which resulted in an enormous (and unnecessary) expenditure of time, money and effort.

[5] A more thorough description of the manner in which Freeman unreasonably increased the cost of litigation is set forth in Defendants' motion for prevailing party fees under Rule 54 and the declarations submitted in support thereof. In fact, Freeman's attorneys engaged in such obvious and intentional bad faith conduct on her behalf (as recognized by this Court at docket 583), that a 28 U.S.C. § 1927 motion is warranted.

legal theory that she could think of at the wall up until that point, even though it did not ultimately win the day, was certainly effective at driving up the cost of litigation exponentially.

## III.    CONCLUSION

Concurrently with this brief, each firm that has worked on the case has submitted declarations from its lead trial counsel providing further detailed information regarding the hourly rates charged, the amount of work performed, and the nature of the services provided, and attaching their contemporaneous time records as required by law.  Hours that were, in hindsight, considered remotely duplicative, clerical, or excessive or that were not otherwise strictly recoverable under Rule 54 were redacted and written off.  The submissions presented to this Court in support of a fee award to Defendants reflect the reasonable fees and costs necessary to defend this heavily-litigated and lengthy case, they are thoroughly and credibly documented, and they should properly form the basis for an award to Defendants in the full amount of fees and costs sought.

Dated: August 11, 2026    Respectfully submitted,

*/s/ Amy L. Nashon*

Amy L. Nashon
California State Bar No. 316353
**TROYGOULD P.C.**
1801 Century Park East, Suite 1600
Los Angeles, CA 90067
Phone: (310) 553-4441
Fax: (310) 201-4746
anashon@troygould.com

Jennifer Pariser
**OPPENHEIM + ZEBRAK, LLP**
461 5th Avenue, 19th Floor
New York, NY 10017
Phone: (212) 951-1874
Fax: (866) 766-1678
JPariser@oandzlaw.com

*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan, and Universal City Studios LLC*

Lacy H. Koonce, III
**KLARIS LAW PLLC**
161 Water Street, Ste. 904
New York, NY 10038
Phone: (917) 612-5861
lance.koonce@klarislaw.com
*Attorneys for Defendants Emily Silvan Kim and Prospect Agency, LLC*

Dwayne K. Goetzel
Texas State Bar No. 08059500
**KOWERT, HOOD, MUNYON, RANKIN & GOETZEL, P.C.**
1120 S. Capital of Texas Hwy.
Building 2, Ste. 300
Austin, Texas 78746
Phone: (512) 853-8800
Fax: (512) 853-8801
dgoetzel@intprop.com
*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff*