**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LYNNE FREEMAN,<br><br>Plaintiff,<br><br>v.<br><br>TRACY DEEBS-ELKENANEY P/K/A TRACY WOLFF, et al.,<br><br>Defendants. | Case No. 2:22-cv-02435 (CM)(SN)<br><br>**PLAINTIFF'S OBJECTION TO DEFENDANTS' REQUESTED AWARD OF ATTORNEYS' FEES AND COSTS;**<br><br>**[DECLARATIONS OF STEPHEN DONIGER, MARK PASSIN, AND LYNNE FREEMAN SUBMITTED CONCURRENTLY]** |

## I. PRELIMINARY STATEMENT

Although this Court has determined that an award of fees is warranted (Dkt. 583), Defendants still bear the burden to justify their request for 2,795,033.23, which includes substantial inaccuracies, $75,000 supported by no time records, and $135,278.01 in costs not yet taxable per L.R. 54.1(c).

The Court initially required Defendants to submit an itemization with the required documentation. Dkt. 583, p.24. After Defendants failed to do so, the Court again ordered them to state, "for each attorney or paralegal for which Defendants are seeking fees — the total number of hours worked at what hourly rate." Dkt. 594. Defendants' belatedly produced records reveal significant inaccuracies, block billing, unjustified rates, and excessive and duplicative hours.

Perhaps knowing this, Defendants again seek to inflame this Court with claims that Plaintiff and her counsel conducted this litigation in bad faith and need to now be punished in the hopes of a less critical eye on their billing. But the facts simply do not justify the finding that either Plaintiff or her counsel acted in bad faith, and there could hardly be more deterrent on Plaintiff than what this litigation has already cost her. Indeed, Freeman has no meaningful ability to pay any significant fee award, having virtually no assets, no income, and having cashed in her retirement savings to post the bond ordered by this Court. Plaintiff respectfully requests that the Court take all the above into account in setting fees.

## II. LEGAL STANDARD

The standard for calculating attorney's fees is the "lodestar method." *A.R. ex rel. R.V. v. New York City Dept. of Ed.*, 407 F.3d 65, 79 (2d Cir.2005). The lodestar — a reasonable rate multiplied by reasonable hours — yields a "presumptively reasonable fee."

Forum rates presumptively govern, and a party seeking out-of-district rates must overcome that presumption with specific evidence. *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170 (2d Cir. 2009). The application must also rest on contemporaneous records specifying, for each attorney, the date, hours, and nature of the work. *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136 (2d Cir. 1983).

Hours that are "excessive, redundant, or otherwise unnecessary" must be excluded. *Hensley v. Eckerhart*, 461 U.S. 424 (1983). In that regard, courts in this Circuit have recognized the "authority to make across-the-board percentage cuts in hours, as opposed to an item-by-item approach." *Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 656–57 (S.D.N.Y. 2019). Courts have done so for block billing that obscures the reasonableness of the fees or may mix compensable and non-compensable fees. See *Raja v. Burns*, 43 F.4th 80, 88–89 (2d Cir. 2022).

## III. ARGUMENT

### A. Cowan DeBaets' Claim is Not Supported By its Time Records and those Records are so Heavily Redacted that it is Impossible to Assess their Reasonableness.

Cowan DeBaets is seeking $1,272,947.88 in fees. Dkt., ¶3. Yet the amount claimed does not reconcile with the information in their time sheets or Nancy Wolff's declaration. The total fees in the summary of the "monthly invoices" set forth in ¶ 5 of Nancy Wolff's declaration equal $1,171,416.55; the fees reflected in the chart in ¶ 6 equal $1,169,509; and the fees reflected in their invoices equal $1,168,590.50.[1] *See* Doniger Declaration, Appendix A ("App. A"). What is clear is that Cowan DeBaets is seeking $104,357.38 more in fees than it billed its client.

[1] Cowan DeBaets redacted the totals on all of their invoices so Freeman had to rely on Claude (AI) to calculate the total amount reflected on the invoices but believe it to be accurate.

Cowan DeBaets' invoices were so heavily redacted that Plaintiff could not verify the reasonableness of the fees or whether they reflect "duplicative, clerical, or excessive" entries for the firm's nine timekeepers or duplicative of work done by other defense firms in this case.[2] Of the 120 pages of invoices, 68 pages had no searchable text and those were the most heavily redacted pages. Exacerbating things, the totals on each invoice were inexplicably redacted. These redactions prevent Plaintiff from knowing what Defendants seek to charge her with, threatening due process.

It is also clear that Defendants overstaffed this case. They concede that four to six attorneys from at least four organizations participated "at all times," and that this "can inevitably result in some instances of duplication or inefficiency." Dkt. 588 at 4. And the records confirm it, revealing 34 days on which four or more CDAS timekeepers billed (447.70 hours), and single events drawing stacked attendance across firms. *See* App. D. Courts in this district recognize that using multiple attorneys "poses the serious potential ... for duplication of work or overstaffing." *Tucker v. City of New York*, 704 F. Supp. 2d 347, 355 (S.D.N.Y. 2010). A significant overstaffing reduction is warranted. Defendants' heavily redacted documents do not justify their request. *Matusick v. Erie County Water Authority*, 757 F.3d 31, 64-65 (2d Cir. 2014) (affirming "an across-the-board 50 percent reduction based on a perceived lack of detail in the billing records")

**B. TroyGould's fees are inaccurate, cumulative, and reflect non-compensable work**

There is a similar discrepancy with the amount being claimed by TroyGould. Its sixteen invoice amounts (at ¶ 5 of Nashon's Amended Declaration) total $653,840.59, but the four

[2] Defendants representation that "duplicative, clerical, or excessive" entries were "redacted from the invoices and excluded from... total fees" (Dkt. 588 at 4, 7) thus could not be tested.

timekeeper totals equal only $647,411.00. Dkt. 599 ¶ 3; App. A, Table 3. There is no explanation of what work reflects the missing $6,429.59, and that sum should be disallowed.

TroyGould's redactions are also highly problematic. They cover the Date, Atty, Hours, and Amount columns alike, wholly obscuring 288 entries across 89 of the 110 exhibit pages. *See, e.g.*, Dkt. 599 at 16. The "Total Fees" and "Total Disbursements" lines of each monthly invoice are likewise blacked out. *See, id.* at 40. No invoice in this record can therefore be added to any other to reach the $653,840.59 claimed, and none substantiates the $39,149.92 in vendor costs asserted at ¶ 4 — a figure that rests on Ms. Nashon's summary alone. Defendants should not be awarded the full amount of their fees where they redact the information necessary to evaluate them.

The foregoing is especially true in this case wherein TroyGould replaced DeBaets, who had been lead trial counsel for over 2.5 years and handled all the pleadings, discovery, and initial summary judgments. In *Kirsch v. Fleet Street, Ltd*., the Second Circuit approved a 20% reduction in time expenditures appropriate to address billing that was "likely redundant, because a junior associate was brought into the middle of the litigation, [and] no doubt had to expend significant time familiarizing herself with the history and status of the case...."148 F.3d 149 (2d Cir. 1998).

Here, TroyGould's records show that it incurred 9% in the first 30 days, and 17% in the first 90 days. Mr. Ulin alone billed 103.9 hours in the first 90 days with entries like: "Review key pleadings and evidence on summary judgment" (12/3, 5.20 hrs, $3,926.00); "Review summary judgment briefing and evidence" (12/10, 4.30 hrs, $3,246.50); "review briefing on objections to R&R" (12/4); "Review expert reports and substantial similarity evidence" (1/29, 1.50 hrs). Ms. Nashon has similar entries, such as on 1/17/2025: "Review files from CDAS and review status of production." Defendants' freedom to change counsel does not mean Plaintiff is fairly taxed with the billing for new counsel to get up to speed on the years of litigation files, depositions, etc.

Finally, approximately $190,559 of Defendants' billing, itemized at App. D, Table 2, should be excluded outright as they reflect non-compensable work including media and public relations time, clerical time at attorney rates, time spent researching what plaintiff's counsel has argued in *other clients'* cases, and investigation of Ms. Freeman personally. Dkt. 596 ¶ 7. See *LaPointe v. Windsor Locks Bd. of Educ.*, 162 F. Supp. 2d 10, 18 (D. Conn. 2001), citing *Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 235, 105 S. Ct. 1923, 1924, 85 L. Ed. 2d 233 (1985)(declining to award fees for time spent on ancillary activities that are not "reasonably expended on the litigation" at hand.); see also *J&J Sports Prods., Inc. v. Cargil Dehavalen*, No. 06 CIV. 1699 JGKMHD, 2007 WL 294101, at *4 (S.D.N.Y. Jan. 30, 2007)(declining to award investigation fees).

**C. The Klaris Firm's Bills consist primarily of Block Billing and Fail to Properly Apportion the State Law Claims to the Fees being Sought**

Over 65% percent of the entries on Klaris's invoices were block billing entries, warranting a significant reduction in the fees sought. *See* Ex. B to Klaris Decl. Block billing is "generally disfavored" as it impairs "the court's ability to evaluate whether the time expended by counsel on any given task was reasonable." *Benihana, Inc. v. Benihana of Tokyo, LLC*, No. 15 CIV. 7428 (PAE), 2017 WL 6551198, at *3 (S.D.N.Y. Dec. 22, 2017), citing *Green v. City of New York*, 403 Fed.Appx. 626, 630 (2d Cir. 2010). Although Lance Koonce, the primary billing attorney from Klaris, attempted to reconstruct the invoices by providing guestimates of the time spent on each task for the approximately 695 block billing entries which spanned over four years (and include time incurred by other attorneys), those late guesstimate cannot remedy the problem.

And the problem is exacerbated by Koonce's failure in his declaration to allocate any of the time spent on the four state law claims[3] other than for time spent on tasks solely related to those claims, the amount of which he does not specify, even though they involve some distinct factual issues which require an allocation of all time spent on the matter. See *Manhattan Rev. LLC v. Yun*, 765 F. App'x 574, 578 (2d Cir. 2019) (affirming "determining the number of hours expended on non-compensable state law claims and disallowing fees for those hours accordingly.")

Klaris also included in its request $17,187.50 which was deferred contingent on the amount of fees awarded by the Court. As this was never paid, it should be deducted from any award.

**D. Goetzel Fees Should be Disallowed in their Entirety**

Goetzel did not act as Tracy Wolff's litigation counsel in this case yet is seeking $210,549 plus an additional $75,000 of fees *that were not billed by his firm or for which no backup was provided*. Those fees should be disallowed in their entirety. Goetzel was apparently Wolff's personal attorney that acted as a conduit between her litigation lawyers and Wolff—Defendants are not entitled to seek those fees in this litigation.[4] Goetzel's filing of a pro hac vice motion on September 28, 2022 (Dkt. 70) does not remedy that problem.

Even if the Court does award Wolff Goetzel's fees, it should deduct the $75,000 which, according to the declaration of Wolff, consists of a $50,000 deductible paid to Entangled and $25,000 of royalties withheld by Entangled for some unspecified and undocumented legal expenses. Dkt. 555-1, ¶ 6. The $50,000 deductible is almost certainly duplicative of Entangled's

[3] The FAC alleged claims against the Prospect Defendants for (i) Fraud and Deceit; (ii) Breach of Fiduciary Duty; (iii) Fraudulent Concealment; (iv) Breach of Contract.

[4] Defendants' counsel Cowan DeBaets and Oppenheim Zebrak attempted to do the same thing in the *Bartz v. Anthropic* class action case, submitting fee bills as "Authors' Coordination Counsel" and "Publishers' Counsel" respectively. Judge Alsum rejected their claims in their entirety, finding that only class counsel of record was entitled to court-awarded fees. *Andrea Bartz, et al. v Anthropic PBC*, 4:24-cv-05417-AMO, Dkt 515 at 1, 7 (NDCA, December 23, 2025).

fee request since it is likely payment for $50,000 in fees included DeBaets's invoices. As for the $25,000, Wolff fails to supply any backup (or even specify what those "legal expenses" are) and is not entitled to reimbursement for "royalties withheld" separate from fees incurred.

### E. Certain of Defendants' Requested Rates Exceed This District's Benchmarks

As Defendants acknowledge, the recent case of *Charles v. Seinfeld* found, *inter alia*, that partner rates have ranged "from a low of $400 to as high as $913," and in that case the $913 rate was approved for a lawyer of *forty years'* experience. *Charles v. Seinfeld*, No. 18-CV-1196 (AJN), 2022 WL 889162, at *4-5 (S.D.N.Y. Mar. 25, 2022). That case squarely cuts against the high hourly rates being sought by some defense counsel in this case and also supports "reduc[ing] hourly rates for paralegals when no information was provided as to their experience and expertise." *Id*. at 5. As set forth in App.B, Table 1, many of Defendants' timekeepers are billed above the *Charles* benchmarks. That case thus cuts against Defendants' requests.

Although it is Defendants' burden to establish that their rates are reasonable for the Southern District of New York, they offer nothing but bald conclusions on that point. They offer no survey, rate study, or New York case approving those rates. Rather, the amended Nashon declaration justifies each of the four TroyGould rates by reference to "*prevailing market rates in Los Angeles.*" Dkt. 599 ¶¶ 8(a)–(d). And the out-of-Circuit authority they offer provide no support for the reasonableness of their rates in this district. Dkt. 588 at 3.

Those rates also rose excessively during the one year and four-month period covered by the invoices. Mr. Ulin's went from $755 to $815 to $865 (+14.6%), Ms. Nashon from $595 to $645 to $685 (+15.1%), and Ms. Wang from $595 to $695 (+16.8% in a single step). Dkt. 599 ¶ 3. Paragraph 8 of Nashon's Amended Declaration offers no survey, no comparator, and no change in role. *Id.* at ¶ 8. And Ms. Pariser's **40.4%** increase, from $855 to $1,200 is unexplained. Dkt. 598 ¶¶ 2, 4. It is also back-loaded onto the largest block of time in the request: 233.2 of Mr. Ulin's

443.1 hours — 52.6% — are billed at his top rate, producing $201,718.00, or 30.9% of TroyGould's entire request, at the highest rate any TroyGould timekeeper charged. No reasonable paying client would absorb that unexplained increase. *Arbor Hill*, 522 F.3d 182. Given the above, each timekeeper should be held to, at most, the rate first charged, reducing TroyGould's request by **$55,271.50**. *See* App. B, Table 3. And Ms. Dukach of TroyGould, a paralegal, is billed at $355 and $380 for 53.7 hours — 78% to 90% above the rate *Charles* calls typical. At $200 that time is worth $10,740.00—roughly half the $19,136.00 claimed.

Ms. Gunther of Cowan DeBaets is billed at $275 although ¶ 7(e) concedes she "was a law clerk pending admission to the New York bar," admitted only "during the course of" the representation with no admission date or segregation. And Ms. Chan-Lee of Cowan DeBaets, a paralegal, is billed at $275 based on a declaration giving only her title, a sentence, and a law school — no experience at all, the circumstance in which *Charles* directs reduction. Dkt. 600 ¶¶ 7(e), (f), And, elsewhere, she is listed at a rate of $715, exceeding that of Ms. Wolff. *See* App. B, Table 4.

Finally, Defendants provide insufficient regarding Ms. Wang. ¶ 8 of Nashon's Amended Declaration identifies Ms. Wang as "a member and senior litigator" but omits any statement of years in practice, given for everyone else. On this record Ms. Wang should be treated as an associate and capped at $575, reducing her 134.8 hours from $84,666.00 to $77,510.00. If defendants wanted a partner rate for her, the declaration the Court ordered was the place to say so.

### F. An Equitable Reduction Is Warranted.

In its Order awarding fees in this case, this Court found that Plaintiff and her counsel litigated unreasonably and in bad faith. But, respectfully, the Court's findings were built on an incomplete and inaccurate record. Plaintiff complied with all Court orders in this case and wanted her work compared sooner rather than later. Declaration of Mark Passin ("Passin Decl.") ¶¶4-39,

Declaration of Lynne Freeman ("Freeman Decl.") ¶ 52. The delay in producing her manuscripts to Defendants was only because they were unpublished works that she did not want publicly disseminated any earlier than necessary and because Defendants caused unnecessary delay in entering a protective order. Passin Decl. ¶¶4-39, Freeman Decl. ¶ 16. Nothing stopped Defendants from seeking judgment on the pleadings once those manuscripts were turned over. Passin Decl. ¶35. And at no point did Plaintiff ever intend to misrepresent her work or unnecessarily increase litigation costs. Passin Decl. ¶¶4 & 40-52, Freeman Decl. ¶¶ 45-51.

Separately, the amount of fees awarded should be significantly reduced because Freeman has no meaningful assets or income and cashed in her retirement account to post the bond ordered by this Court. Freeman Decl. ¶¶ 21-22, 54. "[E]ven after the 'presumptively reasonable fee' is calculated, a fee award may be adjusted based on the relative financial strength of the parties." *TufAmerica Inc. v. Diamond*, 2018 WL 401510, at *5 (S.D.N.Y. 2018); *See also Faraci v. Hickey-Freeman*, 607 F.2d 1025, 1028-29 (2d Cir. 1979)(holding that "because fee awards are at bottom an equitable matter, courts should not hesitate to take the relative wealth of the parties into account" and that "appellate courts will intervene when the trier omits a relevant factor from his analysis" and reversing because "the court below should have ascertained whether, in light of Faraci's ability to pay, a lesser sum assessed would have fulfilled the statute's deterrent purpose without subjecting him to financial ruin.")

Thus, in *Shangold v. Walt Disney Co*., the Second Circuit affirmed a reduction of fees to $10,000 based on inability to pay. 275 F. App'x 72 (2d Cir. 2008). In *Muller v. Twentieth Century Fox,* the prevailing defendants' claimed fees were $432,077 but the court reduced that award to $40,000 considering the Plaintiff's ability to pay—as supported by, *inter alia*, submitted Social Security earnings records. 2011 WL 3678712 *3-4 (S.D.N.Y.). And in *Charles v. Seinfeld*, the

court reduced a presumptively reasonable fee reduced by 90% to $28,750 based largely on financial circumstances. 2022 WL 889162 *10 (S.D.N.Y.).

*Charles* is highly analogous. There, an individual plaintiff sued Jerry Seinfeld, Netflix, and Sony for copyright infringement and lost. Despite finding the case frivolous and inferring bad faith, the court reduced "reasonable" fees by 90%, because "equitable considerations — Charles's limited financial resources relative to those of Defendants chief among them — favor a significant reduction," and "a far smaller fee award would adequately deter Charles and his counsel, as well as send a general deterrence signal, while still meaningfully compensating Defendants." *Id.* And here Plaintiff also provides social security earnings reports and fully details her financial condition.

The *Charles* court also allowed the fee award to "be paid in annual installments over the next ten years to ease the burden on Charles and his counsel." *Id.* at *11. Freeman respectfully requests the same. She is an individual with no real means whereas the defendants are all successful companies and authors who have earned substantial profits from the works at issue and many others. Any deterrent purpose is fully served by an award a fraction of the $2.8 million requested.

**IV. Costs are Not Allowable During the Pendency of An Appeal is Pending.**

Defendants are seeking $135,278.01 in costs, but per L.R. 54.1 such costs are not taxable during the pendency of an appeal. Here, Defendants have failed to show that each cost is recoverable. L.R. 54.1(c).

**V. CONCLUSION**

Defendants' billing statements appear to include material inaccuracies, improper block billing, and excessive, redundant, and improper billing that justifies a substantial across-the-board percentage reduction. They also seek hourly rates above this district's benchmark, including for paralegals and law clerks. And, ultimately, Plaintiff lacks the means to pay any significant award

such that a large award will subject her to financial ruin while Defendants remain uncompensated and no deterrent purpose is served. Plaintiff therefore requests that the Court set a fee award of no more than $150,000, structured over the next ten years, and defer an award of costs until after the appeal.

Dated: August 26, 2026
New York, New York

Respectfully submitted,

By: /s/ *Stephen M. Doniger*

Stephen Doniger, Esq.
**DONIGER / BURROUGHS PC**
603 Rose Avenue
Venice, California 90291
(31) 590-1820
stephen@donigerlawfirm.com

**Reeder McCreary, LLP**
Mark D. Passin
11766 Wilshire Boulevard,
Suite 1470
Los Angeles, CA 90025
310-861-2475
*Attorneys for Plaintiff Freeman*