**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LYNNE FREEMAN,

Plaintiff,

v.

TRACY DEEBS-ELKENANEY, et al.

Defendants.

Case No. 2:22-cv-02435 CM-SN

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' REQUESTED AWARD OF ATTORNEYS' FEES AND COSTS**

**[DECLARATIONS OF DWAYNE GOETZAL, LACY KOONCE, AND AMY NASHON SUBMITTED CONCURRENTLY]**

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. THE HOURS EXPENDED WERE REASONABLE AND COMPENSABLE ..... 1

a. Freeman's "Overstaffed" Argument Fails ..... 2

b. Freeman's "Excessive Hours" Argument Fails ..... 2

c. Freeman's "Block Billing" Argument Fails ..... 3

d. Freeman's "Non-Compensable Fees" Argument Fails ..... 3

e. Freeman's "Cost Of New Counsel" Argument Fails ..... 5

III. THE HOURLY RATES WERE REASONABLE ..... 5

IV. FREEMAN IS NOT ENTITLED TO AN EQUITABLE REDUCTION ..... 7

V. ANY MATHEMATICAL ERRORS WERE THE RESULT OF HUMAN ERROR ..... 9

VI. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re AOL Time Warner Shareholder Derivative Litigation*,
No. 02 Civ. 6302(CM), 2010 WL 363113 (S.D.N.Y. Feb. 1, 2010) ........................................6

*Kirsch v. Fleet Street, Ltd.*,
148 F.3d 149, 172 (2d Cir. 1998). ..........................................................................................5

*Lively v. Wayfarer Studios, et al.*,
No. 24-CV-10049, 2026 WL 2516945 (S.D.N.Y., Aug. 25, 2026)..........................................3

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
No. 99-CV-10175, 2022 WL 1026577 (S.D.N.Y., Apr. 6, 2022) ............................................4

## I. INTRODUCTION

Defense counsel spent weeks critically examining five years of monthly invoices, significantly reduced their fees present only the most justifiable, efficient and reasonable fee request possible, and painstakingly calculated the total amounts sought after said reductions, by timekeeper, year, and firm. *See* Supplemental Nashon Declaration, Koonce Reply Declaration, a and Goetzel Declaration, submitted herewith. It makes sense, then, that Plaintiff can offer no legitimate basis for her claims of "significant inaccuracies" and "excessive and duplicative hours," and her complaints about block billing, hourly rates, overstaffing, etc. fare no better.

Freeman also claims for the first time that she has "virtually no assets, no income" and "no meaningful ability to pay any significant fee award." She now swears that she has been unable to pursue her career as a lawyer since 2018 and that she gave up the bulk of her assets in her recent divorce in exchange for a few years' of alimony. But in deciding what to actually believe, Freeman's past words should speak for themselves. On the personal website she continues to maintain despite multiple requests to take it down, on her "About Me" page featuring a romantic photo of her husband holding her in his arms on the beach, she describes herself thus: "I am a practicing attorney in the State of Alaska, where I was born and grew up." *Id.*, Exh. A. This representation is consistent with how she has held herself out publicly and to this Court, right up until last month. Quite simply, Freeman lacks any credibility whatsoever and her representations cannot be taken at face value. If the Court is inclined to consider her recent penury, Defendants ask to conduct limited discovery into her ability to pay, now that she has placed it squarely at issue.

## II. THE HOURS EXPENDED WERE REASONABLE AND COMPENSABLE.

Defendants already established that the amount of time expended defending the action was reasonable. Dkt. 588 at pp. 3-7. And this Court has already recognized that it was the conduct of

Freeman and her counsel that necessitated the expenditure of "a considerable amount of time and money" in this case. Dkt. 583, p. 13. Nevertheless, Freeman still attacks the time spent by defense counsel and asks for a sweeping "substantial across-the-board percentage reduction." Dkt. 601 at p. 11. Each of her arguments fail for the following reasons:

**a. Freeman's "Overstaffed" Argument Fails.**

Freeman argues that Defendants overstaffed the matter, but Defendants had every right to defend themselves with counsel of their choosing against the distinct claims asserted against each of them. As the primary alleged copier, Wolff had different exposure than the other Defendants and was undeniably entitled to independent legal counsel. Similarly, Freeman asserted claims directly against Kim and Prospect, which also warranted the retention of separate counsel on their behalf. The remaining Defendants were all represented by the same firm, and each was well within its rights to have its in-house legal counsel involved to the extent necessary to ensure its interests were being adequately protected. In any event, the declarations and billing records reflect that each of the firms involved took great pains to ensure an efficient division of labor, and to avoid duplication and minimize expense for their clients - efforts that now inure to Freeman's benefit.

**b. Freeman's "Excessive Hours" Argument Fails.**

Freeman argues certain bills contain "excessive and duplicative hours." But Freeman identifies with specificity less than two hours of vague billing entries, and not a single duplicative or excessive entry. Freeman instead complains that Defendants' billing entries were excessively redacted, preventing her from verifying their reasonableness or whether they were duplicative, clerical, or excessive. But those entries were redacted specifically to excise any such entries and amounts from the fees sought. Dkt. 588 at p. 4; Dkt. 599 at ¶ 2. The redactions are evidence of Defendants' good-faith efforts to remove any arguably duplicative, clerical, or excessive charges

from their fee request, and not the reverse. In fact, just between CDAS and TroyGould, Defendants wrote off more than $400,000 in fees and Klaris wrote off $ 46,588. *See* Suppl. Nashon Decl., ¶ 2, 5. To be clear: the CDAS and TroyGould redacted entries are excluded from the fee request and not at issue.[1]

Moreover, "in the normal course of litigation, 'necessary duplication' is an 'inherent part of the process' and 'there is no reason why [a] lawyer should perform this necessary work for free.'" *Lively v. Wayfarer Studios, et al.*, No. 24-CV-10049, 2026 WL 2516945, at *7 (S.D.N.Y., Aug. 25, 2026). Freeman has not identified unreasonable duplication at all—let alone the type that would warrant an across-the-board reduction of fees.

**c. Freeman's "Block Billing" Argument Fails.**

Freeman argues for "a significant reduction in the fees sought" because some of the billing entries by the Klaris firm were block-billed. But those entries are not of the nature that courts generally find objectionable and certainly do not warrant a fee reduction, as set forth further in the concurrently submitted Declaration of Lacy H. Koonce, III.

**d. Freeman's "Non-Compensable Fees" Argument Fails.**

Freeman claims that certain invoices include work that is non-compensable, including time spent on media and public relations, clerical time, time spent researching plaintiff's counsel's arguments in other cases, and investigation into Ms. Freeman. But she fails to establish that any one of those billing entries was unrelated to the litigation and therefore not appropriate for reimbursement.

[1] Defense counsel also redacted *portions* of some narrative entries —albeit in a very limited fashion—for privilege, which was especially necessary and appropriate here, given the pending appeal on the merits. *Id.,* ¶ 4. But where whole entries and the corresponding amounts were redacted, it was for the purpose of excluding those entirely from the court's consideration.

Defendants' time spent on "media" and "public relations" was in direct response to Freeman's efforts to poison the well and try this case in the court of public opinion, and largely consisted of responding to outreach from media sources Freeman had solicited and given interviews. *See, e.g.,* Dkt. 580 at p. 10.

As for Freeman's quibble that defense counsel billed for clerical tasks at attorney rates, Freeman does not identify with particularity a single such billing entry.

The research defense counsel did into Plaintiff's counsel's other cases was relevant to the motion at issue, because it elicited the billing rates and annual increases that Freeman's own attorneys employ, notwithstanding their hypocritical claims that defense counsel should not bill at equivalent rates or apply similar increases.

Freeman argues for excluding time spent on this fee motion, but time spent preparing an attorneys' fee application is compensable and may be awarded at the district court's discretion when the hours spent are "reasonable." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-CV-10175, 2022 WL 1026577, at *4 (S.D.N.Y., Apr. 6, 2022). Freeman does not contend the time spent or the fees incurred were unreasonable and thus waived any such objection.

Finally, Freeman complains that defense counsel billed time for investigating Freeman personally by reviewing her divorce file. As this Court is well-aware, Freeman concealed her divorce from the Court when opposing Defendants' motion for an appeal bond, "despite its obvious relevance to [that] motion" (dkt. 567), thereby forcing defense counsel to undertake their own investigation. Had Freeman been forthcoming with the Court, that expenditure could have been avoided.

///

**e. Freeman's "Cost Of New Counsel" Argument Fails.**

Freeman argues she should not have to pay for TroyGould to get up to speed when it substituted in for CDAS in the middle of the litigation. Freeman relies solely on *Kirsch v. Fleet Street, Ltd.,* which is inapposite and related to the duplication inherent in bringing a junior associate up to speed when he/she is added to the litigation midstream. 148 F.3d 149, 172 (2d Cir. 1998). Here, Entangled was exercising its inherent right to be represented by counsel of its choice by hiring TroyGould. Freeman has not offered a single case suggesting that a party should be penalized for exercising that right. Moreover, much of the time spent by TroyGould in "getting up to speed" was already proactively written off as part of Defendants' fee application, so further reduction is unwarranted.[2]

## III. THE HOURLY RATES WERE REASONABLE.

Freeman attempts to distinguish Defendants' case law, cited for the proposition that the hourly rates charged by counsel were reasonable, by arguing that in *Charles v. Seinfeld*, the $925 per hour rate was reasonable only because the lawyer had forty years of experience. But the attorneys who have spent years defending Freeman's meritless claims also have decades of relevant experience. *See, e.g.,* Dkt. 591 at ¶ 2 (Ms. Pariser has "over 35 years of experience in copyright law"); Dkt. 592 at ¶ 5 (Mr. Koonce has "three decades of substantive expertise in copyright law"); Dkt. 585-1 (Mr. Goetzel has almost three decades of relevant experience); Supp. Nashon Decl., ¶ 7 (Ms. Wolff has over 40 years of relevant experience and Mr. Ulin has over 30 years).

---

[2] The remaining time represented work that TroyGould did in preparing a motion for reconsideration of Judge Stanton's summary judgment ruling and planning for a possible writ, which necessarily involved a thorough review of the arguments made in the original briefing, and the work it did in preparing supplemental responses, which likewise necessitated reviewing the earlier responses and production. Suppl. Nashon Decl. ¶ 3. That time was indisputably compensable and had nothing to do with generally "getting up to speed."

Moreover, the rates approved in *Charles v. Seinfeld* were not an anomaly. As another example, in a case decided more than fifteen years ago, *In re AOL Time Warner Shareholder Derivative Litigation*, No. 02 Civ. 6302(CM), 2010 WL 363113, at *13 (S.D.N.Y. Feb. 1, 2010), this Court found rates of $90 to $250 for paralegals, $175 to $550 for associates and non-partner level attorneys, and up to $850 for partners, "though relatively high, fall within the range of those commanded by leading lawyers in the Southern District, particularly those practicing at large firms or with high profiles."[3]

It is also particularly ironic for Plaintiff's counsel to complain about the rates charged by the defense, given that Mr. Doniger's hourly rate of $865 was approved last year as reasonable, and Mr. Passin's hourly rate of $775 was put forward as reasonable eight years ago and has almost certainly increased since then. Supp. Nashon Decl. at Ex. B.

Finally, Freeman complains, without citation to any legal authority, that defense counsel's fees increased excessively from year to year. To do so, Freeman ignores the incremental annual increases, and instead calculates percentage jumps over the life of the litigation. However, most of those annual increases were well under the 9.6% standard rate of increase recognized by the ABA, offsetting the few increases that exceeded it. Supp. Nashon Decl., Ex. C. For example, Mr. Ulin's rate increased only 7.9% from 2024 to 2025, and then only 6% the next year. Ms. Nashon's rate increased 8.4% from 2024 to 2025, and then only 6% the next year. And annual rate increases are not a foreign concept to Freeman's attorneys, who regularly do the same. *See id.* at Ex. B.[4]

---

[3] Freeman pays particular attention to the billing rate of Ms. Pariser, whose billing rate rose to $1,200 at the tail end of the litigation. Dkt. 601 at p. 8. But Freeman conveniently ignores that Ms. Pariser billed a grand total of 1.2 hours at that rate. Dkt. 598 at p. 2. The balance of the hourly rates billed by defense counsel in the action were all at rates less than $900. Dkt. 588 at p. 3.

[4] Freeman also argues that Ms. Wang's rate should be capped at an associate rate rather than a partner rate because the fee application did not identify her years of experience. Ms. Wang has been a "member" of TroyGould since 2018 (TroyGould, as a professional corporation and not a partnership, uses the terminology "member" rather than "partner") and a California-barred

## IV. FREEMAN IS NOT ENTITLED TO AN EQUITABLE REDUCTION.

Freeman's self-serving declaration claiming that she has mysterious health issues that prevent her from working as an attorney is wholly lacking in credibility and contradicts years of her prior sworn testimony in this case. The physician's note that she submitted is from a concierge longevity doctor in Montecito who charges $1,200 / month and provides vitamin infusions and hair rejuvenation. Suppl. Nashon Decl., Ex. D. And she testified at her deposition that she was consulting and trading her services for litigation assistance in this case, and that she wasn't "practicing law in a traditional sense" only because she did not have time for it since: "This present case takes up my time right now…[I]t's taken over my life. This case has a lot going on in it. I'm not a copyright lawyer. I'm busy doing what I can helping out with my lawyers, as I can, in the case."[5] *Id.*, Ex. E.

Freeman's husband similarly testified that she had been a "busy professional" practicing divorce and family law and litigation in Alaska, and that she had only put her practice on hold to deal with this instant litigation. *Id.*, Ex. F.

In fact, in a declaration submitted to this Court in 2023 (dkt. 183), Freeman detailed the extensive legal work that she was doing in this case: "I am the plaintiff in this action. I am also an attorney and have been acting as such in my own case, performing legal research, drafting motions, and so on….The indexes, manuscript comparisons, and outlines…were all created by me…." *Id.* She described years of communications with other lawyers which "related to (i) me analyzing and comparing manuscripts and Defendants' books; (ii) analysis of relevant precedent and caselaw

---

attorney since 2011 and she well deserves the billing rate she charges based upon her years of experience and her expertise. Supp. Nashon Decl., ¶ 8.

[5] Presumably, by "trading" her services, she was helping to defray the cost of the six attorneys she had representing her: two on contingency, two hourly, and two "in trade." *Id.,* Ex. E.

affecting my claims; (iii) collection of potential evidence for analysis; and (iv) scope of potential attorney representation." *Id.*

Her LinkedIn, where she has posted as recently as two months ago, describes her as an Attorney at the Law Office of Lynne Freeman. *See* Suppl. Nashon Decl., Ex. G. Her Martindale Hubble account shows she received an Attorney Award from her peers in 2026. *Id.*, Ex. H. She remains active with the Alaska Bar Association. Her Instagram bio describes herself as: "ATTORNEY. Writer, Lover of Alaska, Nature and All of Earth's Creatures." *Id.*, Ex. G. She told the *Anchorage Daily News* in or around February 2025 that she was an "Anchorage family law attorney" who spends her winters in Santa Barabara. *Id.*, Ex. I. Her email signature block, four years after she now says she stopped practicing law, read: "Law Office of Lynne Freeman, 737 M Street, Anchorage, AK 99501, (907) 279-9941, lynnef@gci.net." *Id.,* Ex. J.

Throughout the briefing on Defendants' bond motion, she repeatedly represented that a bond was unnecessary because she had assets to satisfy a judgment and posed no risk of non-payment. Dkt. 563, 568. And, in her opposition to the fees motion, she never argued that she lacked the ability to pay, instead claiming that even despite her own significant earning potential, there was a vast disparity in the relative financial strength of the parties given Entangled's growing success. Dkt. 575, p. 27.

This convenient shifting of Freeman's story is a consistent pattern and well-worn theme, as described in the original motion. As a most recent example, throughout this case, Freeman represented that she was "stuck" in California because the discovery of the *Crave* books had "triggered" her past trauma, and she was too anxious to fly back to Alaska and hadn't done so in years. *See, e.g.,* Suppl. Nashon Decl., Ex. E and Dkt. 252. Yet in defending her decision to suddenly file a quickie divorce in Alaska, on June 29, 2026, Freeman swore that she is a resident

of Alaska who files Alaska tax returns, holds an Alaska driver's license and is registered to vote in Alaska, and that she is not a resident of California and is only there for medical treatment that is unavailable to her in Alaska (which indeed suffers from a dearth of concierge longevity doctors). Dkt. 570, ¶ 3. Meanwhile, she testified on August 26, 2026 that she filed a California homestead exemption for her sole remaining asset – her Santa Barbara condo – a right given only to California residents to protect their primary residence from creditors. Dkt. 602, ¶ 20.

In other words, Freeman is an Alaskan resident when convenient and a California resident when needs be, and similarly, a "busy professional" and "practicing attorney" who poses no risk of non-payment when she doesn't want to post a bond, and an invalid who hasn't worked in nearly a decade when she has to pay legal fees. Her lack of credibility does not warrant any "equitable reduction" of a fee award in Defendants' favor, but to the extent the Court considers giving her the benefit of the doubt on this issue, it should first allow limited discovery into her finances so the truth is available for any future decision.

## V. ANY MATHEMATICAL ERRORS WERE THE RESULT OF HUMAN ERROR.

Freeman's claims of mathematical errors rely entirely on AI "proof" that there are discrepancies between the amounts reflected on TroyGould's and CDAS' invoices and the amount of the requested fees set forth in the supporting declarations. Freeman does not explain what efforts were made by her counsel to ascertain the accuracy of AI's findings, and it seems there has been no independent review to ensure they are completely correct.

By contrast, defense counsel manually tallied the totals for both TroyGould and CDAS, first by calculating all of the time billed on each invoice by each firm, minus the time written off, and then again by each timekeeper and separately for each year, to calculate how many hours were billed at what rates by each timekeeper each year. Supp. Nashon Decl. at ¶ 2, 6. If there is some

discrepancy, it is the result of human error in performing said calculations, which was done over the course of several weeks and with the use of a calculator and spreadsheets, but without the use of AI. *Id.* To the extent this Court determines that some adjustment is necessary to correct any calculating error, Defendants will not argue with it.

## VI. CONCLUSION

This Court should reject Freeman's request for a sweeping across-the-board percentage reduction because she has not met her burden of establishing that the rates were unreasonable or the hours unjustified, nor that she is warranted to an equitable reduction to a "fraction" of what Defendants were forced to incur in order to defend against her specious claims. Defendants respectfully request that this Court order Freeman to pay the full amount of the fees sought.

Dated: September 4, 2026

Respectfully submitted,

/s/ Amy L. Nashon

Amy L. Nashon
California State Bar No. 316353
**TROYGOULD P.C.**
1801 Century Park East, Suite 1600
Los Angeles, CA 90067
Phone: (310) 553-4441
Fax: (310) 201-4746
anashon@troygould.com

Jennifer Pariser
**OPPENHEIM + ZEBRAK, LLP**
461 5th Avenue, 19th Floor
New York, NY 10017
Phone: (212) 951-1874
Fax: (866) 766-1678
JPariser@oandzlaw.com

*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Entangled*

*Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan, and Universal City Studios LLC*

Lacy H. Koonce, III
**KLARIS LAW PLLC**
161 Water Street, Ste. 904
New York, NY 10038
Phone: (917) 612-5861
lance.koonce@klarislaw.com
*Attorneys for Defendants Emily Silvan Kim and Prospect Agency, LLC*

Dwayne K. Goetzel
Texas State Bar No. 08059500
**KOWERT, HOOD, MUNYON, RANKIN & GOETZEL, P.C.**
1120 S. Capital of Texas Hwy.
Building 2, Ste. 300
Austin, Texas 78746
Phone: (512) 853-8800
Fax: (512) 853-8801
dgoetzel@intprop.com
*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff*