**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LYNNE FREEMAN,

Plaintiff,

v.

TRACY DEEBS-ELKENANEY, et al.

Defendants.

Case No. 2:22-cv-02435 CM-SN

**NOTICE OF MOTION OF DEFENDANTS FOR AN ORDER HOLDING PLAINTIFF'S COUNSEL JOINTLY AND SEVERALLY LIABLE FOR EXCESS ATTORNEYS' FEES AND COSTS PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY**

PLEASE TAKE NOTICE that, upon this Notice of Motion, the accompanying Memorandum of Law, the Declaration of Amy Nashon and exhibits thereto, and all prior pleadings and proceedings in this action, Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Emily Sylvan Kim, Prospect Agency, LLC, Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan, and Universal City Studios LLC (together, "Defendants") will move this Court, before the Honorable Colleen McMahon, at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York, on a date and time to be set by the Court, for an Order:

1. Pursuant to 28 U.S.C. § 1927 and the Court's inherent authority, holding Plaintiff's counsel of record, Mark Passin, Esq., Stephen Doniger, and their respective law firms Reeder McCreary, LLP (f/k/a CSReeder, PC) and Doniger / Burroughs (together, "Plaintiff's Counsel"), jointly and severally liable, together with Plaintiff Lynne Freeman, for the excess attorneys' fees and costs reasonably incurred by Defendants as a result of Plaintiff's counsel's unreasonable and vexatious multiplication of these proceedings, in an amount to be determined by the Court, in connection with Defendants' pending fee application submitted pursuant to the Court's July 28, 2026 Decision and Order (Dkt. No. 583);
2. Providing that Plaintiff's counsel's liability under this Order shall secure, and be collectible to the extent of, any portion of the Court's award of excess fees and costs that remains unsatisfied by Plaintiff sixty (60) days after entry of a final fee judgment, or such other period as the Court deems appropriate; and

Granting such other and further relief as the Court deems just and proper.

# TABLE OF CONTENTS

**Page(s)**

I. PRELIMINARY STATEMENT ........ 1

II. LEGAL STANDARD ........ 3

III. ARGUMENT ........ 4

A. The Court's Findings Compel Counsel Liability ........ 4

1. Counsel's Conduct Was Entirely Without Color and Was Undertaken for Improper Purposes ........ 4

2. Counsel's Conduct Multiplied the Proceedings and Caused Quantifiable Excess Fees ........ 11

IV. AN AWARD UNDER § 1927 IS NECESSARY TO SERVE THE COMPENSATORY AND DETERRENT PURPOSES THIS COURT HAS ALREADY RECOGNIZED ........ 12

V. THE REQUESTED HYBRID STRUCTURE IS AN APPROPRIATE EXERCISE OF THE COURT'S DISCRETION ........ 13

VI. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcon Vision, LLC v. Lens.com, Inc.*,
No. 18-CV-407 (NG) (RLM), 2022 WL 17685501 (E.D.N.Y. July 7, 2022) .......... 3, 4

*Baker v. Urb. Outfitters, Inc.*,
431 F. Supp. 2d 351 (S.D.N.Y. 2006) .......... 12

*Beverage Mktg. USA, Inc. v. S. Beach Beverage Corp.*,
2002 WL 31844911 (S.D.N.Y. Dec. 19, 2002) .......... 12

*Brignoli v. Balch Hardy & Scheinman, Inc.*,
735 F. Supp. 100 (S.D.N.Y. 1990) .......... 4

*Eisemann v. Greene*,
204 F.3d 393 (2d Cir. 2000) .......... 4

*Enmon v. Prospect Cap. Corp.*,
675 F.3d 138 (2d Cir. 2012) .......... 3, 4

*Fogerty v. Fantasy*,
510 U.S. 517 .......... 12

*Oliveri*,
803 F.2d .......... 12

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*,
948 F.2d 1338 (2d Cir. 1991) .......... 3

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
564 F.3d 110 (2d Cir. 2009) .......... 2, 3

**Statutes**

17 U.S.C. § 505 .......... 1, 3, 12

28 U.S.C. § 1927 .......... passim

# TABLE OF AUTHORITIES

**Page(s)**

**Rules**

Fed. R. Civ. P. 11 .......... 5

Fed. R. Civ. P. 26(a)(1)(A)(ii) .......... 5

Fed. R. Civ. P. 408 .......... 6

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS FOR AN ORDER HOLDING PLAINTIFF'S COUNSEL JOINTLY AND SEVERALLY LIABLE FOR EXCESS ATTORNEYS' FEES AND COSTS PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY**

## I. PRELIMINARY STATEMENT

In its July 28, 2026 Order granting Defendants' motion for an award of attorneys' fees and costs under 17 U.S.C. § 505 (Dkt. No. 583) (the "Fee Order"), this Court observed that in almost 28 years on the federal bench, it could not "recall . . . an instance in which bad faith was so easily established." *Id.* at 15. The Court held that Plaintiff's copyright claim was "objectively unreasonable from the outset," that the record is "replete with bad faith litigation conduct," and that Plaintiff and her counsel engaged in "vexatious" conduct throughout this litigation. *Id.* at 6, 11, 23.

Plaintiffs have now submitted support for the quantum of fees sought, but at present the Fee Order runs against Plaintiff alone. This is a serious concern because recent submissions – including a sworn declaration from Plaintiff dated August 26, 2026 (Dkt. 602) ("Freeman Decl.") – raise serious doubt as to whether Plaintiff intends to satisfy any ultimate fee award. Freeman now claims (however incredibly) that she lacks the financial means to satisfy any significant fee award, stating to this Court that she is "unable to pay an award of attorneys' fees in the amount Defendants have estimated, or in any amount approaching it" because she has "no income, no present capacity to earn income, and no asset from which such an award could be satisfied." Freeman Decl. § 17.

Of course, as this Court has already noted, before claiming near-indigency in her recent papers, Plaintiff hid from the Court her divorce proceeding and a property settlement agreement transferring assets to her former spouse:

> Despite crying poverty, Freeman failed to disclose to the Court that she was engaged in a divorce proceeding and that she had agreed to transfer certain

> assets to her former spouse pursuant to a court-ordered property settlement agreement - facts that the Court would find relevant to any assessment of her ability, not just to post bond, but to pay any ultimate judgment if it were not bonded.

Fee Order at 23. This Court found that Plaintiff's concealment was itself bad faith conduct, and that "the risk that Freeman would not pay costs or fees if her appeals were unsuccessful" is "quite high." *Id.* at 22.

Plaintiff's counsel has enabled this vexatious conduct from the beginning, taking the lead in efforts to delay any decision on substantial similarity (including delaying producing Freeman's manuscripts), retaining an absurd number of questionable "experts" to drive up costs, baselessly accusing defendants of misconduct (including that they use "plagiarism" software and backdate emails) to justify their own lack of proof, and advancing untenable legal theories at all stages. Counsel clearly also were aware of Freeman's efforts to shelter assets through divorce proceedings; otherwise, counsel would no doubt have submitted their own declarations stating that they were *unaware* of these maneuvers. The Court has already found that "Plaintiff ***and her counsel*** engaged in conduct that, to this Court, qualifies as extreme bad faith." *Id.* at 12. If Plaintiff's representations about her inability to satisfy a fee award are true, then absent relief under Section 1927, the very attorneys whose conduct the Court has already condemned will escape any financial accountability for that conduct, while the prevailing parties are left to absorb costs they were forced to incur defending against an action this Court found to be objectively unreasonable and pursued in bad faith.

Defendants therefore respectfully move, pursuant to 28 U.S.C. § 1927 and the Court's inherent authority, for an order holding Plaintiff's counsel jointly and severally liable for the excess fees and costs their conduct caused, collectible to the extent Plaintiff fails to satisfy the Court's award. The predicate findings for such relief have already been made by this Court, with the "high degree of specificity" the Second Circuit requires. *See Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). This motion asks the Court to attach the legal

consequence that follows ineluctably from those findings: that the lawyers who engineered this objectively baseless case should bear the risk of their client's inability or unwillingness to pay.

Section 1927 exists precisely for these circumstances.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1927, any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." This standard aligns Section 1927 claims with awards made under the Court's inherent power: "'Bad faith is the touchstone of an award,'" . . . and the 'showing of bad faith required to support sanctions under 28 U.S.C. § 1927 is similar to that necessary to invoke the court's inherent power.'" *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407 (NG) (RLM), 2022 WL 17685501, *3 (E.D.N.Y. July 7, 2022) (*citing United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) and *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012)).

Sanctions under Section 1927 or under the Court's inherent power require clear evidence that the challenged conduct was (1) entirely without color and (2) motivated by improper purposes, such as harassment or delay, supported by a high degree of specificity in the factual findings. *Wolters Kluwer*, 564 F.3d at 114; *Enmon*, 675 F.3d at 143. Bad faith "can be inferred when the actions taken are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Enmon*, 675 F.3d at 143 (citation omitted). The Second Circuit requires that a district court's factual findings of bad faith, when imposing sanctions under § 1927 or inherent authority, be characterized by a high degree of specificity. *Wolters Kluwer*, 564 F.3d 110, 114.

This Court's Fee Order recognized this standard, noting that a party seeking fees under Section 1927 (unlike under 17 U.S.C. § 505) must show, by clear evidence, that the challenged

conduct was taken for reasons of harassment or delay or for another improper purpose. Dkt. No. 583 at 11 n.2 (*citing Eisemann v. Greene*, 204 F.3d 393, 395-96 (2d Cir. 2000)). While the Court noted in the Fee Order that Defendants had not, at that time, moved for relief under § 1927 or the Court's inherent authority, the Court's findings — made after thorough briefing, a fulsome evidentiary record, and the Court's own review of the entire universe of relevant manuscripts and published works — independently satisfy that clear-evidence standard as to the conduct of Plaintiff's counsel described above.

Sanctions under § 1927 may be properly imposed against counsel jointly and severally with the client. *Alcon Vision,* 2022 WL 17685501 at *9. Multiple counsel may also be held jointly and severally liable. *Id.* Further, awards pursuant to Section 1927 sanctions may be imposed on law firms, not just individual attorneys. *Enmon*, 675 F.3d at 147-48; *see also Brignoli v. Balch Hardy & Scheinman, Inc.*, 735 F. Supp. 100, 101-02 (S.D.N.Y. 1990).

## III. ARGUMENT

### A. The Court's Findings Compel Counsel Liability

#### 1. Counsel's Conduct Was Entirely Without Color and Was Undertaken for Improper Purposes

The Fee Order holds that Plaintiff's claim of substantial similarity "had no basis in fact or law and was objectively unreasonable from the outset," and that "[a]ny assertion to the contrary is itself an objectively unreasonable argument." Fee Order at 6, 11. Rule 11 mandates that by signing a pleading, counsel "certifies that to the best of [his or her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and "the factual contentions have evidentiary support or, if specifically

so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11. After 25 different attorneys turned Plaintiff down (Dkt. 175, p, 5 n.6), Mr. Passin and his firm, Reeder McCreary, LLP took this case, drafted the pleading, and signed it - despite the lack of any basis in fact and the objective unreasonableness of that pleading. Mr. Donger and his firm, Doniger / Burroughs, then joined the case less than a year later, despite having every opportunity to apprise themselves of the deficiency of the pleading.

The Court supported its findings as to the facial insufficiency of the claims here by noting that this was "a garden variety literary copyright case" presenting no novel issues (Fee Order at 18), and that "[o]nce someone read the works, it was an open and shut case" (*id.* at 18). Counsel was obligated under Rule 11 to do just that – review the Freeman manuscripts and the Crave novels, the very subject matter of the case – before filing. Yet despite responding to a footnote in Defendants' prior briefing about a potential Section 1927 motion by submitting a 17-page defense of his actions (Dkt. 603), not once does Mr. Passin state that he first (or indeed ever) actually read the manuscripts and the Crave novels that he then assisted his client in litigating for more than four years.

The Court also found that Plaintiff and Mr. Passin withheld the allegedly infringed manuscripts for months, despite that they should have been produced at the outset of the case under Federal Rule of Civil Procedure 26(a)(1)(A)(ii), without any discovery request or court order. (Fee Order at 11). The Court held that this concealment was not inadvertent but undertaken "for an improper litigation purpose," based on communications showing that Plaintiff's counsel declined to produce the manuscripts because he "did not want the manuscripts to be available for use by Defendants in support of a motion to dismiss." *Id.* at 11-12. As the Court held, "[b]y declining to produce the manuscripts for the manifestly improper purpose of denying Defendants the right to make a motion to dismiss, Plaintiff and her counsel engaged in conduct that, to this Court, qualifies as extreme bad faith." *Id.* at 12. In his declaration, rather than providing a defense to his actions, Mr. Passin *confirms* them: that instead of voluntarily providing the manuscripts as required under

the rules, he proposed various inappropriate exchanges. First, "an exchange of materials for settlement purposes before entry of a protective order." Passin Decl. ¶ 6.[1] Second, a trade of the unpublished manuscripts for certain documents defense counsel had mentioned in response to Plaintiff's pre-suit demand letter. *Id.*

Remarkably, Mr. Passin now argues that the delay in producing the manuscripts from the date of filing until August 2, 2022 – a period of four months – was Defendants' fault, speculating that "Defendants decided that they did not want to make a motion to dismiss and then stalled the completion of the protective order to make the record appear that they were prevented from filing that motion." Passin Decl., Par. 35. To what end would Defendants want to make such a record? In order to expend a huge amount of money defending a baseless case for four years and then be able to point back to the delay on a future fee motion? Mr. Passin's argument is not merely self-serving, it smacks of the same illogic that has characterized the claims and arguments he has made for Freeman about the merits of this case for years.

The Court found that Plaintiff's counsel compounded the delay by making a proposal that Defendants would receive the manuscripts only if they agreed to use them solely for settlement purposes. The Court described this demand as "absurd and unprofessional," as "Defendants had an absolute right to make a motion to dismiss based on the manuscripts themselves," and that doing so "would have saved a considerable amount of time and money." *Id.* at 12-13. The Court's conclusions speak for themselves as to motivation for an improper purpose. Nowhere in Mr. Passin's declaration does he deny that he made this proposal; he says only that he did so because

---

[1] To be specific, Mr. Passin wrote on April 5, 2022: "You can only use the various manuscripts and the other material that we give you for settlement purposes only and they cannot be used for any other purpose, even if otherwise admissible pursuant to FRCP 408 or any other rule. Thus, you cannot use any of the manuscripts and materials in the case for any purpose whatsoever other than settlement and the manuscripts and other materials we send you shall be inadmissible, subject to your right to obtain the manuscripts and other material in discovery. Obviously, if you obtain the manuscripts and other materials in discovery, you can use them for any purpose you are entitled to use them pursuant to the applicable rules, subject to any other objection my clients [sic] many have to their use."

no protective order was in place, but the emails he attaches do not say this and in any event there is no logical connection between entry of a protective order and use of the manuscripts for settlement purposes – he could certainly have simply asked Ms. Szymanski, an attorney, to treat the manuscript as confidential pending entry of the order.

The Court further found that this pattern of obstruction continued for nearly a year after the filing of the complaint, because although Plaintiff's counsel represented to Macmillan's counsel that the case was based on sixty-four unpublished manuscripts, more than four months after the complaint was filed Plaintiff had produced only six manuscripts. *Id.* at 13. And it was not just production of physical manuscripts that constituted obstruction. After the Court ordered Plaintiff to identify with specificity which manuscripts were infringed, Plaintiff produced thirty registered documents but declined to specify which of those materials she would actually rely upon for comparison, notwithstanding an express court order requiring her to do so. *Id.* The Court found that Plaintiff was "still playing coy with Defendants and the Magistrate Judge" more than two months later, and that rather than comply with a further order to identify the specific works underlying her claim, Plaintiff's counsel filed a letter stating that Plaintiff would rely on over 5,500 pages of unidentified material while reserving the right to add still more. *Id.* at 13-14. And as the Court noted, it was not until a year later, after another court order, that Plaintiff finally identified the works to be compared. *Id.* 14. These extensive efforts to avoid direct engagement on the key issue in a copyright case – whether the works are similar – is the definition of attorney behavior "lacking color." Further, this Court's descriptions of counsel's behavior leave no room for the conclusion that this was merely zealous or aggressive advocacy; it was, on this Court's own findings, a sustained litigation strategy calculated to delay and obstruct.

Perhaps most importantly, even after the Doniger/Burroughs firm joined the case, Plaintiff's counsel advanced substantial-similarity arguments clearly constructed, the Court has said, on misleading characterizations of Plaintiff's own works, untethered from the works themselves. The Court held that these "misleading (and in some instances, plainly inaccurate) descriptions of her

own works in order to create an illusion of similarity gives rise to a strong inference of bad faith." *Id.* 16. In order to advance these spurious arguments, Plaintiff and her lawyers engaged a roster of experts that added little or nothing to the Court's analysis of the claims in the case, and were largely excluded. Yet counsel did not take to heart Plaintiff's own expert's concessions that many alleged similarities were unprotectable tropes/scenes à faire, and advanced those purported similarities at summary judgment. *Id.* at 5.

Typical of counsel's efforts to prolong the case is a letter from Mr. Passin on January 30, 2023, where he sought to extend the fact discovery period and complained about the burden the case (that he brought) was imposing upon him. Dkt. 117. That letter makes clear that far from recognizing that this was "a garden variety literary copyright case" and "an open and shut case," Mr. Passin sought to convince the Court that it was hopelessly complicated:

> Lastly, this case is not a typical literary infringement case. Most literary infringement cases relate to the infringement of one book by one other book, motion picture or television show. Subject to Judge Stanton's ruling on the Objection, this case involves the infringement of seventeen (17) versions of an unpublished manuscript and thirteen (13) related notes, which include chapter outlines, plot points, character descriptions, and excepts, that have been used by Defendants without consent or authorization, to create four infringing books. Thus, the amount of time the parties need for discovery is longer than in a typical literary infringement case.

*Id.*

The bad faith conduct of Plaintiff and her attorneys has continued throughout this litigation, without relenting. This Court noted that it "is obvious from the briefs her counsel filed in opposition to Defendants' motion for summary judgment" that "Freeman's arguments fall comfortably within the 'specious' label used by the court in *Chivalry Film Productions.*" Fee Order

at 7. In particular, the Court said, even after it advised the parties at a January 12, 2026 conference as to the correct standard (the "total concept and feel" test as evaluated by the "more discerning ordinary observer") and Plaintiff appeared to acknowledge this, "her briefs in opposition to the motion for summary judgment barely address or apply that standard." *Id.* (*citing* Dkt. No. 537 at 43-44; Dkt. No. 543-1 at 114). Similarly, although the Court told the parties that lists of discrete similarities would be "absolutely inadmissible on the issue of substantial similarity" (Dkt. No. 521, Tr. 24:17-20), Plaintiff again submitted such lists on summary judgment. Fee Order at 8. To explain this, Plaintiff pointed to a statement by the Court that the parties could submit any evidence they wanted to submit, to which the Court responded: "Now that is a specious argument." Fee Order at 8. The Court noted that "Plaintiff appears oblivious to the fact that I advised her lawyers that lists of discrete similarities would **be** *'absolutely inadmissible* on the issue of substantial similarity.'" (citing Dkt. 521, Tr. 24:17-20 (emphasis added).). On the instant motion, that is the point: the court instructed the attorneys not to provide lists of similarities, and yet they proceeded to do so on behalf of their client. Moreover, Plaintiff's briefing continued to allege similarities premised on misleading and, in some instances, plainly inaccurate descriptions of Plaintiff's own works, which this Court found "gives rise to a strong inference of bad faith." Fee Order at 16. This behavior cannot be pinned on the Plaintiff alone; responsibility for the content of the briefing falls on counsel as well.

The Court's findings in connection with the Rule 7 appeal bond motion reinforce that the conduct described above was not an isolated episode but rather continuation of a consistent pattern. The Court found that Plaintiff and her counsel "engaged in 'vexatious' and bad faith conduct throughout this litigation" (*id.* at 23), and separately found that Plaintiff's failure to disclose her divorce and property settlement — while simultaneously arguing to the Court that a bond would tie up assets needed for litigation costs and regular expenses — was "disingenuous" (*id.* at 23). Court concluded from this pattern, including Plaintiff's "refusal to comply with her Rule 26 obligations and with Judge Netburn's repeated orders," that Plaintiff would "do her utmost to avoid

or evade compliance with any court order that she did not like." *Id.* at 22. A litigation strategy of selective disclosure and delay, repeated across discovery, substantive motion practice, and post-judgment bond proceedings alike, is precisely the sort of conduct for which Section 1927 was designed to hold the responsible attorneys and their firms accountable.

The lengthy litany above of bad faith behavior by Plaintiff's counsel, just as set forth by the Court, easily meets the Section 1927 standards. But it is also just the tip of a four-year iceberg. Plaintiff and her counsel routinely advanced outlandish theories and then jettisoned them, including that Emily Kim began plotting to steal Freeman's work from the moment she offered to represent Freeman as an agent, that Wolff plagiarized Freeman in the book *Tempest Rising* because it mentioned a specific type of motorcycle (a Ducati), and that Wolff used "text spinner" software to hide her alleged infringement.

With respect to *Tempest Rising*, Mr. Passin now says in his declaration that "Defendants disingenuously complain that Freeman told the Court that she intended to prove her case by showing that Wolff had used her material in various novels that Wolff had written prior to Crave. Although Plaintiff initially contemplated using such evidence as probative of access and actual copying, she dropped that idea without undertaking any real discovery into it. Rather, it was Defendants who kept breathing life into that issue, seemingly believing that it would make Freeman look unreasonable." Passin Decl. ¶ 48. But that is not the real story. The reason Plaintiff "dropped that idea" is twofold. First, Defendants demonstrated conclusively that the novel *Tempest Rising* was completed and sent to the publisher before Freeman ever met Kim. Dkt. 180. Second, because Plaintiff and her counsel had put together one of their lists showing purported similarities between *Tempest Rising* and Plaintiff's manuscript, Defendants pointed out – once the timing of the works became clear – that if those similarities were relevant, they showed that it was Freeman who had infringed Wolff. Moreover, this was not some "early theory" that Freeman had loosely contemplated and then discarded. She specifically told the Court in 2023, in response to an order requiring her to explain how she intended to prove her case, that this was how she intended to do

so: by proving that Wolff stole phrases from Freeman and used them in three books she wrote prior to *Crave*, to "test if she would get caught using the unauthorized material," and then once she "realized she was getting away with the left, she copied enough of Freeman's Copyright Material for the Crave Book Series to commit full-blown copyright infringement." Dkt. 103, p. 4.[2]

Mr. Passin makes other statements in his declaration that rather than providing a defense of the actions of Plaintiff's counsel actually point to counsel's recalcitrance. First, he states that "I cannot imagine that I would have said that the lawsuit was based on all 45 of those versions" (Passin Decl. ¶ 4); yet the initial complaint that he had just recently filed itself stated that Freeman, "over the course of their relationship, sent Kim over 45 versions of the manuscript." Dkt. 603, at para. 4. Mr. Passin states in his declaration that Plaintiff did not abuse the discovery process, but in another part of his declaration, he admits that with respect to e-discovery search terms, "we spent a lot of time working on the list, but the list was not easy to prepare because it was designed to cover, among other things, all the written material in freeman's manuscripts and notes." Passin Decl. ¶ 49. But the decision to seek discovery related to all such written manuscripts and notes was precisely the problem – by refusing to narrow the scope reasonably, Plaintiff and her counsel ensured a long, expensive fact discovery process.

### 2. Counsel's Conduct Multiplied the Proceedings and Caused Quantifiable Excess Fees

Section 1927 reaches the "excess" fees caused by counsel's vexatious multiplication of proceedings. Here, the Court has already identified the "but for" counter-example: early resolution

[2] Her attorneys then preceded to attach lists of these "stolen" phrases that must be seen to be believed, and include "Woo-hoo!", "fun and games," "wrong place at the wrong time," "hazard a guess," "snap into place," "knight in shining armor," "Superman," "Hawaiian," and "Mother Nature." Dkt. 103-2. That letter by experienced copyright lawyer Mark Passin, attaching that list, is by itself evidence of bad faith sufficient to warrant granting this motion, and doesn't even take into account the conflicting legal theories proposed therein – that Freeman would prove her case by showing that Wolff somehow both copied the "fundamental essence or structure of the work" and simultaneously "a portion of the plaintiff's work exactly, or nearly exactly, *without* appropriating the work's overall essence or structure." Dkt. 103, p. 3, emphasis added.

of substantial similarity based on a comparison of the works themselves "possibly obviate[es] years of discovery and precious court time." Fee Order at 12. Had the works been compared earlier, this matter "would have been disposed of on the same ground — lack of substantial similarity — years before" the Court was able to rule. *Id.* at 7; *see Beverage Mktg. USA, Inc. v. S. Beach Beverage Corp.*, 2002 WL 31844911, at *2 (S.D.N.Y. Dec. 19, 2002).

Accordingly, Defendants submit that all fees and costs incurred by Defendants after Mr. Passin first refused to provide the manuscripts, on April 5, 2022, constitute "excess" fees within the meaning of § 1927. In the alternative, the Court's inherent authority permits an award against counsel coextensive with the full bad-faith litigation, without the "excess" limitation of § 1927. *Oliveri*, 803 F.2d at 1273.

## IV. AN AWARD UNDER § 1927 IS NECESSARY TO SERVE THE COMPENSATORY AND DETERRENT PURPOSES THIS COURT HAS ALREADY RECOGNIZED

In granting Defendants' fee motion under 17 U.S.C. § 505, this Court held that an award would serve important compensatory and deterrent purposes, explaining that it would compensate Defendants for having been "forced to pursue this lengthy litigation in the face of an obviously losing position," and would deter "this plaintiff, and other similarly situated plaintiffs, from bringing unreasonable claims based on a cost/benefit analysis that tells such plaintiffs that they can score big if they win and that there will be no adverse consequences if they lose." Fee Order at 17 (*citing Fogerty v. Fantasy,* 510 U.S. 517, 534 n.19 and *Baker v. Urb. Outfitters, Inc*., 431 F. Supp. 2d 351,359 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x 845 (2d Cir. 2007). Those same purposes are frustrated, not served, if Plaintiff's inability to pay renders the fee award illusory while the attorneys whose bad faith conduct this Court has already found bear no personal consequence at all.

If a fee award enforceable only against an impecunious client leaves counsel free to engage in the same manuscript-withholding, discovery-obstruction, and mischaracterization tactics in the next case without personal financial consequence, the deterrent purpose that this Court has already found this litigation requires will not be achieved. Section 1927 exists to close that gap by placing responsibility on the attorneys who make the tactical decisions that unreasonably and vexatiously multiply proceedings. Given this Court's own extensive and specific findings of bad faith — findings made independent of, and considerably more detailed than, what is typically required to support § 1927 relief — the record here amply satisfies the clear-evidence standard this Circuit applies, and an order of joint and several liability against Plaintiff's Counsel is warranted.

## V. THE REQUESTED HYBRID STRUCTURE IS AN APPROPRIATE EXERCISE OF THE COURT’S DISCRETION

Defendants do not seek a double recovery. They ask that Plaintiff’s counsel be held jointly and severally liable for the excess portion of the fee award, with collection against counsel available only to the extent the award remains unsatisfied by Plaintiff after 60 days. This structure (i) preserves Plaintiff’s primary responsibility for the judgment; (ii) ensures that the deterrent purposes the Court identified in the Fee Order at 16-17 are not defeated by Plaintiff’s concealed dissipation of assets; and (iii) places the residual risk of nonpayment on the attorneys whose conduct this Court has found created and prolonged the litigation, rather than on the Defendants who were “forced to pursue this lengthy litigation in the face of an obviously losing position.” Fee Order at 17.

Deterrence under § 1927 and the Court’s inherent power is specifically aimed at counsel. Where, as here, counsel’s subjective belief in the claim was, in this Court’s words, “no doubt influenced by counsel’s highly probable financial interest in the outcome of the case,” Fee Order at 10, counsel should not be permitted to externalize the downside of that bet onto the opposing parties.

Here, it would be logical to hold Mr. Passin and his firm jointly and severally liable with Freeman for the excess costs, expenses, and attorneys' fees reasonably incurred because of their conduct through March 13, 2023, and to then hold Mr. Passin and Mr. Doniger and their respective firms jointly and severally liable for the bad faith and vexatious conduct once Mr. Doniger joined the case, where the record shows that counsel continued to press claims and litigation positions that lacked a good-faith basis after having had a full opportunity to review the case file and correct course.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order (1) holding Plaintiff's Counsel jointly and severally liable, with Plaintiff, for the excess attorneys' fees and costs identified in Defendants' fee application, pursuant to 28 U.S.C. § 1927 and the Court's inherent authority; (2) providing that such liability is collectible against counsel to the extent the award remains unsatisfied by Plaintiff 60 days after entry of a final fee judgment; and (3) granting such further relief as the Court deems just and proper.

Dated: September 4, 2026

Respectfully submitted,

*/s/ Amy L. Nashon*

Amy L. Nashon
California State Bar No. 316353
**TROYGOULD P.C.**
1801 Century Park East, Suite 1600
Los Angeles, CA 90067
Phone: (310) 553-4441
Fax: (310) 201-4746
anashon@troygould.com

Jennifer Pariser
**OPPENHEIM + ZEBRAK, LLP**
461 5th Avenue, 19th Floor

New York, NY 10017
Phone: (212) 951-1874
Fax: (866) 766-1678
JPariser@oandzlaw.com

*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan, and Universal City Studios LLC*

Lacy H. Koonce, III
**KLARIS LAW PLLC**
161 Water Street, Ste. 904
New York, NY 10038
Phone: (917) 612-5861
lance.koonce@klarislaw.com
*Attorneys for Defendants Emily Silvan Kim and Prospect Agency, LLC*

Dwayne K. Goetzel
Texas State Bar No. 08059500
**KOWERT, HOOD, MUNYON, RANKIN & GOETZEL, P.C.**
1120 S. Capital of Texas Hwy.
Building 2, Ste. 300
Austin, Texas 78746
Phone: (512) 853-8800
Fax: (512) 853-8801
dgoetzel@intprop.com
*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff*