TG TroyGould ATTORNEYS

TROYGOULD PC
1801 Century Park East, 16th Floor
Los Angeles, California 90067-2367
**Tel** (310) 553-4441 | **Fax** (310) 201-4746
www.troygould.com

**Amy L. Nashon** • (310) 789-1245 • anashon@troygould.com

File No.

September 15, 2026

Hon. Colleen McMahon
Daniel Patrick Moynihan
United States Courthouse
40 Foley Square, Courtroom 24A
New York, New York 10007

***Re: Freeman v. Deebs-Elkenaney et al., Case No. 2:22-cv-02435-CM-SN***

Your Honor:

We write jointly with our co-counsel on behalf of all Defendants in this action to seek an order from the Court instructing Lynne Freeman to sit for a second session of her deposition and to answer the approximately twenty-one separate questions that her attorney instructed her not to answer at her deposition yesterday, September 14, 2026.

As a courtesy to Mr. Doniger, Ms. Freeman's deposition was scheduled for 11:00 am in Santa Barbara on September 14. Ms. Freeman and her counsel appeared more than 2.5 hours later than the scheduled time and the deposition did not begin until nearly 2:00 p.m. pacific / 5:00 p.m. eastern.[1] Therefore, when Mr. Doniger promptly began instructing Ms. Freeman not to answer basic questions, it was already too late in the day to reach Your Honor for guidance.

Mr. Doniger therefore proceeded, for the next 3.5 hours,[2] to instruct Ms. Freeman not to answer dozens of questions regarding Ms. Freeman's purported disability which she claims renders her unable to work or practice law, her travel and expenses, her attorneys' fees, etc., taking the position that the deposition was strictly limited to Ms. Freeman's current ability to pay a fee award, and generally refusing to allow her to answer questions about her and her spouse's prior financial circumstances because they were purportedly

[1] Mr. Doniger previously had advised that he had an 8:30am court appearance and asked to start the deposition no earlier than 11:00am, and Defendants accommodated this request. Mr. Doniger then emailed about 45 minutes before that start time – after the court reporter and videographer were in place – that he was "still in court and our matter has not been called yet." Plaintiff did not offer to have Mr. Passin step in for Mr. Doniger to defend this deposition, given Mr. Doniger's other commitments.

[2] Ms. Freeman was adamant that, despite beginning so late in the day, the deposition had to be concluded before 6:00 pm because of her health conditions.

TroyGould ATTORNEYS



irrelevant to her current ability to pay. He repeatedly asked for an offer of proof as to any such questions, but then rejected any such proffers when made.

Some of the questions that Ms. Freeman was instructed not to answer are summarized below and a rough draft of her deposition transcript is submitted under seal herewith for the Court's review.

SUMMARY (IN CHRONOLOGICAL ORDER) OF QUESTIONS

- Ms. Freeman began the deposition by reading a statement about her various health conditions and how they affect her, and she claimed that she is temporarily disabled and has been for nine to ten years. She was asked if there was something that triggered her disability nine to ten years ago and she said "yes," but when asked what it was, her attorney instructed her not to answer.

- Despite yet again putting her specific medical conditions at issue, when Ms. Freeman was asked for the identity of her treating physicians (beyond Dr. Viglione, the concierge longevity doctor whose letter she submitted in support of her opposition to the fee request) her attorney instructed her not to answer.

- Ms. Freeman confirmed that her ex-husband pays her medical insurance and all of her uncovered medical expenses in accordance with the Property Settlement Agreement in their divorce. Her attorney instructed her not to answer the average amount of those expenses every month.

- In the Property Settlement Agreement, reference is made to a "first transplant" and a "second transplant," and Mr. Baer agreed to pay for all of the costs directly and indirectly associated therewith, but Ms. Freeman was instructed not to answer whether she had ever had an organ transplant or was told that she needed one. She was also instructed not to answer whether, assuming she *had* undergone a transplant of some kind, the cost of such a procedure diminished Mr. Baer's assets or income.

- Ms. Freeman was instructed not to answer when was the last time she hadtraveled to Alaska.

- When asked what plans Ms. Freeman had made to attend the trial in this case that was scheduled for several weeks in March 2026 (including where she would stay in New York for that time and who would have paid), she was instructed not to answer.

- Ms. Freeman testified that her son is a student at the University of Alaska and that Mr. Baer pays his tuition, but her attorney instructed her not to answer whether he attends full-time or part-time.

- Mr. Doniger instructed Ms. Freeman not to answer whether her son has his own business and whether he pays his own expenses.

- Ms. Freeman testified that Mr. Baer has been in Santa Barbara at least fifty times this year, but (based on his visits to their dog) her attorney instructed her not to answer how often he stays during his visits (days, weeks or months at a time).

- Mr. Doniger instructed Ms. Freeman not to answer whether Mr. Baer still actively assists her with the litigation, whether he gathers evidence and helps respond to arguments raised in the case, and whether he reviews filings made in the case.

- Ms. Freeman testified that she previously paid various amounts for her biological father's care, but she was instructed not to answer when asked why she discontinued making those payments in early 2026.

- Ms. Freeman was instructed not to answer when Mr. Baer's financial services firm, CVG, was formed.

- Ms. Freeman was instructed not to answer what money was used to purchase her home in Anchorage on M Street.

- Ms. Freeman was instructed not to answer whether Jennifer Holland, an attorney with whom she previously claimed an attorney-client relationship in this case in order to avoid production of their communications, had ever represented her in any case other than her recent divorce.

TroyGould ATTORNEYS



- Ms. Freeman was instructed not to answer whether she knows why Mr. Baer testified that she was a practicing attorney during his deposition in 2023.

- Ms. Freeman was instructed not to answer whether the alleged loan she took from her husband's business to finance the litigation was approved by his business partner who owns 51% of the company.

- Ms. Freeman was instructed not to answer who created her personal website and who wrote on it that she is a "practicing attorney in the State of Alaska."[3]

- Ms. Freeman was instructed not to answer how much she paid for her $3 million home in Santa Barbara that she owned prior to the condominium where she currently lives.

- Ms. Freeman was instructed not to answer how she had spent $580,000 in attorney's fees and costs by July 2023, or over $700,000 to date, when her attorneys are working on a contingency basis.

- Ms. Freeman was instructed not to answer whether and how she used the funds from the sale of her Alaska house, purchased in 2019 and sold in 2022, on her litigation expenses.[4] Mr. Doniger claimed that her litigation costs were protected by the attorney-client privilege.[5]

Ms. Freeman was instructed not to answer what exactly the expenses were that were referenced in her opposition to the bond motion, when she objected to "tying up assets that may otherwise be needed for, *inter alia*, litigation costs, business and other regular expenses, and the unanticipated emergencies that can arise in life."

Additionally, Ms. Freeman admitted to engaging in little or no preparation for the deposition, and could not provide basic information about her household's annual income or tax returns.

---

[3] Her website has now been taken down.

[4] Ms. Freeman has repeatedly referred to this as her "irreplaceable" "family home" that she was forced to sell as a result of this case.

[5] Disclosure of attorney fee information is not privileged under the attorney-client privilege. *US v. Scala,* 432 F.Supp.2d 395, 402 (S.D.N.Y. 2006).

This Court has already recognized the credibility issues presented by Ms. Freeman's sudden claim that she is physically disabled and *not* a practicing attorney as she has represented for all of these years, not to mention her quickie divorce whereby she transferred all of her assets to her ex-husband and gave up all rights to the successful marital business. For that reason, the Court allowed the Defendants to take Ms. Freeman's deposition regarding her supposed inability to pay a fee award, and Defendants disagree with Mr. Doniger that the scope of that Order does not allow them to make the relevant inquiries referenced above. Defendants believe they were entitled to probe the context for Ms. Freeman's supposed inability to pay a fee award and that the questions posed were well within the scope of reasonable and necessary inquiry.

Defendants provided the justification for their questions in the record, as shown in the transcript submitted under seal, and the relevance of the information sought is obvious on its face. The instructions not to answer these simple questions, absent any legitimate privilege objection and on the basis of scope and relevance alone, constitute improper and sanctionable conduct. *See Fashion Exchange LLC v. Hybrid Promotions, LLC,* 333 F.R.D. 302, 307 (S.D.N.Y. 2019) (ordering a second session of a deposition and granting sanctions where plaintiff's counsel engaged improper conduct by instructing the witness not to answer on scope and relevancy grounds). Doniger Burroughs should bear all costs associated with the preparation of this letter brief and the taking of a second session of Ms. Freeman's deposition.

Defendants advised Mr. Doniger and Ms. Freeman that they would seek an order from the Court allowing a second session of her deposition to answer the questions that she was improperly instructed not to answer, and the parties have agreed that any such second session may be conducted via Zoom for Ms. Freeman's comfort and convenience. Defendants understands that the original deadline to take Ms. Freeman's deposition was today, but both Ms. Freeman and the undersigned are not available today; therefore, Defendants ask that the deposition be permitted to take place via Zoom on Wednesday or Thursday of this week.

Respectfully Submitted,

Amy L. Nashon

Amy L. Nashon