Attorneys admitted in
California, New York,
Texas, Pennsylvania,
Colorado, and Illinois

Sender's contact:
stephen@donigerlawfirm.com
(310) 590-1820

Doniger / Burroughs Building
603 Rose Avenue
Venice, California 90291

Doniger / Burroughs NY
247 Water Street, First Floor
New York, New York 10038

September 15, 2026

**DELIVERED VIA ECF**
Hon. Colleen McMahon
Daniel Patrick Moynihan
United States Courthouse
40 Foley Square, Courtroom 24A
New York, New York 10007

**Re:** ***Freeman v. Deebs-Elkenaney et al,***
**2:22-cv-02435-CM-SN**

Dear Judge McMahon:

This letter is in response to the letter of this same date from Defendants asking for another session of Ms. Freman's deposition. As set forth more fully below—and as is clear from a review of the deposition transcript—Ms. Freeman fully and fairly answered all questions put to her as to her finances and ability to pay a judgment—the limited topic on which Defendants sought and this Court allowed her deposition—and only refused to answer questions that were not reasonably within the scope of that limitation as expressly authorized by Rule 30(c)(2).

Before addressing that issue, Ms. Nashon's letter presents an incomplete history of the communications between counsel regarding the scheduling of the deposition. Mr. Doniger advised Ms. Nashon that he had an 8:30am hearing in Los Angeles (before CDCA Judge Wu) and asked to start no later than 11am by email send at approximately 5pm Pacific Time on September 9, 2026. Over the next half hour, Ms. Nashon confirmed "[t]hat's fine with me" and Mr. Doniger responded: "Maybe to avoid potential traffic issues and waiting for me, a 12:30 start time would be best." Defendants nevertheless scheduled the deposition for 11am. After receiving that deposition notice on September 11, 2026, Mr. Doniger, concerned that Court could run long, again wrote: "Received. Although, as noted, a slightly later start time would be safer as I have an 8:30am hearing and then need to drive from Los Angeles to Santa Barbara." Defendants did not respond. Mr. Doniger did not get out of court until 11:20 am, drove straight to Santa Barbara, he and his client were ready to go by 1:30 pm, and the deposition began shortly thereafter.[1] Plaintiff and her counsel did everything they could to accommodate the taking of the deposition without delay.

More importantly, Ms. Freeman then sat for over 3.5 hours of on-the-record testimony, fully answered questions about her ability to pay a judgment—including her current income and ability to practice law—and in the process affirmed what she declared to this Court. A review of the deposition transcript shows that Defendants' complaints are unfounded—they got answers to all proper questions and objections only where the questions exceeded the limited scope of the deposition.

---

[1] Mr. Doniger will be happy to offer a declaration attesting to the same should the Court wish.

Rule 30(c)(2) expressly authorizes an attorney to instruct his or her client not to answer a question "when necessary to preserve a privilege, [or] to enforce a limitation ordered by the court." Here, the Court allowed Ms. Freeman's deposition based on Defendants request for "limited discovery into her finances so the truth is available for any future decision." ECF 613, p.9. The Court then Ordered that "Defendants may depose Plaintiff on her ability to pay an attorneys' fee award." ECF 618.

Simply put, the questions that Plaintiff was instructed not to answer had no meaningful relationship to "her finances" or "her ability to pay an attorneys' fee award." Defendants' letter shows that. And what Defendants don't tell the court is that for many of the questions they put at issue they got answers notwithstanding.

Addressing Defendants' bullet points in order:

- Ms. Freeman answered voluminous questions about her ability to work, her medical conditions, and what she could and couldn't do. What she understood to have triggered her disabilities a decade ago is simply irrelevant to her present finances, which is all Defendants sought to depose her on.
- The identity of Freeman's treating doctors bears no reasonable relationship to her present finances—particularly given her testimony that her ex husband pays those bills. On the other hand, it is at unduly invasive of her privacy.
- Ms. Freeman *did in fact* provide the amount her ex husband pays for her expenses every month, explaining that she knows the general categories of expenses but not how much are in each. See Depo Transcript, pp.131-133.
- Whether Ms. Freeman had an organ transplant in the past and/or whether the cost of that transplant "diminished Mr. Baer's assets of income" at some point in the past are well outside and irrelevant to the "limited discovery into her finances" requested by Defendants.
- Defendants did not even try to explain how the last time Ms. Freeman traveled to Alaska is relevant to her present finances and ability to pay a judgment.
- Similarly, where she hypothetically would have stayed in New York had this case gone to trial has no bearing on her present finances or ability to pay a judgment.
- Same for whether her son attends school part time or full time—particularly given that she testified she has no involvement in paying his tuition.
- Same with whether her son has his own business and pays his own expenses—of course, Freeman answered <u>*all*</u> questions asked of her regarding the extent to which she paid expenses for her son.
- How often Mr. Baer stays in Santa Barbara when he visits has nothing whatsoever to do with Ms. Freeman's finances or ability to pay a judgment.
- Whether Mr. Baer is actively assisting Ms. Freeman with litigation is simply not a proper question under the limited examination topics of "her finances" or "her ability to pay an attorneys' fee award."
- Why she discontinued payments for her biological father's care in early 2026 is a personal question that similarly bears no relationship to "her finances" or "her ability to pay an attorneys' fee award." If it were an ongoing obligation or commitment that would be another thing. But she

clearly testified that it is not—she stopped and has no plans to restart those payments. The "why" is irrelevant and, frankly, none of Defendants' business.

- Freeman *testified that she does not know when GVC was formed*—so she did answer that question. See Depo Transcript, p.79.
- The property on M Street in Alaska was purchased before Freeman was living part time at the Manitou Lane property in Santa Barbara, which was purchased in 2010. See Depo Transcript, pp.137-138. What money was used to purchase a property over 16 years ago is well outside the "limited discovery into her finances" requested by Defendants.
- Defendants claim that they inquired into Ms. Freeman's relationship with Ms. Holland as relevant to whether Ms. Freeman can work as an attorney. But whether Ms. Holland has represented Freeman in other cases simply has no relevance to that question.
- Again, Defendants were afforded wide latitude to inquire into Freeman's income-earning potential. Why Mr. Baer made a statement about her being a practicing attorney 3 years ago is irrelevant to her present financial condition and ability to work.[2]
- Defendants' question regarding "whether the alleged loan she took from her husband's business… was approved by his business partner who owns 51% of the company" was a nonsensical question that had nothing to do with Freeman's finances or ability to pay a judgment. As Freeman explained, CVG is Mr. Baer's "partnership that he has with another guy... the entity that they use for renting their office in Santa Barbara," she went on to add that "It's not anything with money. It doesn't have money in it." And that the funds for the loan were, she believed, just from Trent's individual business. See Depo Transcript, p.149-150.
- How much Ms. Freeman paid for home she sold many years ago is a matter of public record, and when Mr. Koonce stated the amount (which he had from those records) Freeman confirmed that it sounded right. See Depo Transcript, p.139. Defendants' including this in their letter to Your Honor as justification for another deposition is bad faith.
- Similarly, Freeman provided all the information she could about how the proceeds of the property were allocated. See Depo Transcript, p.140-142.
- Finally, Defendants sought to inquire into how much Freeman spent on litigation costs in this case. Although money spent in the past is gone and bears no reasonable relationship to her present finances or ability to pay a judgment, Freeman did in fact testify to the best of her knowledge about those expenses. See Depo Transcript, pp. 90, 143-148.

Defendants' list of questions Plaintiff was instructed not to answer simply does not show that they were prevented from fully asking and getting information about the limited topics for the deposition: i.e., Freeman's "finances" and "ability to pay an attorneys' fee award."

///
///

[2] That said, Freeman explained that she considered herself a practicing attorney because she had an active license despite not earning income.

More troublingly, Defendants offer that list without being candid with the Court where those questions were in fact answered, and without even attempting to justify how questions about things like when she last traveled to Alaska, whether a transplant operation years ago affected her ex-husband's assets, and why she stopped giving money to her biological father fall within the limited scope of the deposition. As such, Defendants have entirely failed to meet their burden to justify yet another deposition session and their request should be denied.

Respectfully submitted,

*/s/ Stephen Doniger*
Stephen M. Doniger
DONIGER / BURROUGHS
*Attorney for the Plaintiff*