**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LYNNE FREEMAN,

Plaintiff,

v.

TRACY DEEBS-ELKENANEY P/K/A TRACY WOLFF, et al.,

Defendants.

Case No. 2:22-cv-02435 (CM)(SN)

**DECLARATION OF STEPHEN M. DONIGER IN SUPPORT OF OPPOSITION OF DONIGER / BURROUGHS PC AND STEPHEN DONIGER TO DEFENDANTS' MOTION FOR AN ORDER HOLDING PLAINTIFF'S COUNSEL JOINTLY AND SEVERALLY LIABLE FOR EXCESS ATTORNEYS' FEES AND COSTS PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY**

## DECLARATION OF STEPHEN M. DONIGER

I, Stephen M. Doniger, hereby declare as follows:

1. I am above eighteen (18) years of age, am counsel of record in this case for Plaintiff Lynne Freeman and am competent to give the testimony set forth below. Said testimony is given from my own personal knowledge except where otherwise indicated. If called as a witness, I could and would competently testify as set forth below.
2. Neither I nor anyone at my firm had any involvement in or knew anything about Freeman's divorce before Defendants filed their Bond motion. Given that Ms. Freeman is the sole holder of the attorney-client privilege, I do not believe I am at liberty to provide further details about that topic.
3. In arguing that tying up millions of dollars for a bond would be burdensome in opposition to Defendants' bond motion, I did not intend to conceal anything or act in bad faith. The

argument was not meant to comment specifically on Freeman's financial state, but rather that regardless of whether a debtor is indigent or a millionaire, there are real costs to having significant assets tied up on a bond. Perhaps that point was made badly, but it certainly was not made in bad faith, or to suggest anything one way or the other about Ms. Freeman's financial condition. My firm and I specifically did not address Ms. Freeman's financial condition because we did not believe Defendants met their burden of proof to establish her inability to pay and did not see it as our obligation to provide the evidence lacking from Defendants' motion. I understand the Court maintains that this belief was erroneous, but it was earnest and not based in any improper motivation.

4. In 2023, I received the California Lawyers Association IP Law Section Vanguard Award, which "honors outstanding legal professionals… for their contributions to the advancement of intellectual property law. *See* https://calawyers.org/intellectual-property-law/congratulations-to-the-2023-ip-vanguard-award-recipients/.

5. *Browne* is a phased music infringement case concerning both composition and sound recording copyrights, and the sole issue on summary judgment was whether the plaintiffs' claimed compositional copyright was sufficiently original to qualify for copyright protection. In contrast, this case is a literary infringement matter in which the validity of Freeman's copyright was essentially admitted.

6. While I am not going to get into a discussion of my work product in this case, I can assure the Court that I and my firm pursued this case believing there was a strong claim of access and copying that went beyond unprotectable idea into protectable expression, and at no point did we (or would we) knowingly advance any claims that were lacking in legal or factual support. Indeed, as experienced copyright practitioners who understand the law,

the expenditure of resources necessary to prosecute a case like this one, and the potential downside of losing it, my firm has ample *disincentive* to pursue meritless claims.

7. The Court also found that "Freeman focused almost entirely on discrete bits of scattered similarities... [which] cannot support a finding of substantial similarity." ECF 583 at 7-8. But Freeman followed her character-by-character analysis with over 30 pages of analysis which argued that "the parallel characters appear in stories sharing the same specific plot, sequencing, and interactions" and the stories sequentially, showing how then similarities lined up to tell substantially similar stories. See ECF 544 at 31-63. Thus, Plaintiff specifically endeavored to ensure her analysis was consistent with the *Williams v. Crichton* standards of comparison.

8. With regard to Ms. Freeman's recent deposition and this Court's statement that it "would be considered as evidence in connection with" this motion, I confirm in this declaration that when this Court granted Defendants' request for "limited discovery into her finances" (ECF 613, p.9) with an Order allowing Defendants to "depose Plaintiff on her ability to pay an attorneys' fee award" (ECF 618) I believe it was setting a limited scope deposition such that Ms. Freeman was properly within her rights to refuse to answer questions that exceeded that scope pursuant to Fed.R.Civ.P. 30(c)(2). I also confirm that I only instructed Ms. Freeman to answer questions that I believed, in good faith, exceeding that limited scope—Ms. Freeman provided substantive answers to hours of questions, and even provided substantive answers to some of the questions to which instructions were initially given.

I declare under penalty of perjury and the laws of the United States of America that the foregoing is true and correct.

Executed on September 18, 2026 in Los Angeles, California.

By: *<u>/s/ Stephen M. Doniger</u>*
Stephen M. Doniger
Declarant