**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

LYNNE FREEMAN,

*Plaintiff,*

v.

TRACY DEEBS-ELKENANEY *et al.*,

*Defendants.*

**Civil Case No. 2:22-cv-02435-CM-SN**

**OPPOSITION OF MARK D. PASSIN, ESQ. AND REEDER LLP TO DEFENDANTS' MOTION FOR AN ORDER HOLDING PLAINTIFF'S COUNSEL JOINTLY AND SEVERALLY LIABLE FOR EXCESS ATTORNEYS' FEES AND COSTS PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT AUTHORITY (DKT. 617)**

PRACTUS LLP

Matthew B. McFarlane, Esq.
1014 W. 36th Street, Suite 103
Baltimore, MD 21211
(410) 657-8633
matthew.mcfarlane@practus.com

*Separate Counsel for Mark D. Passin, Esq. and Reeder LLP*

# TABLE OF CONTENTS


TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. LEGAL STANDARDS ........ 2

III. ARGUMENT ........ 3

A. Defendants fail to satisfy the requirements for attorney liability under § 1927 or the Court's inherent authority. ........ 3

1. Plaintiff's claims and Passin/Reeder LLP's prosecution of them were not "entirely without color." ........ 3

2. Defendants have not shown that Passin/Reeder LLP acted in subjective bad faith for an improper purpose. ........ 5

B. Defendants cannot establish unreasonable multiplication under § 1927 or the causation required for an award under either framework. ........ 9

C. Plaintiff's potential nonpayment cannot substitute for attorney-specific alleged misconduct and causation. ........ 10

IV. CONCLUSION ........ 10

# TABLE OF AUTHORITIES


**Cases** **Page(s)**

*America Unites for Kids v. Rousseau*
985 F.3d 1075 (9th Cir. 2021) .......... 3

*Goodyear Tire & Rubber Co. v. Haeger*
581 U.S. 101 (2017) .......... 2, 3, 10

*Jones v. Combs*
759 F. Supp. 3d 534 (S.D.N.Y. 2024) .......... 4

*MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*
73 F.3d 1253 (2d Cir. 1996) .......... 3

*Revson v. Cinque & Cinque, P.C.*
221 F.3d 71 (2d Cir. 2000) .......... 2

*Schlaifer Nance & Co. v. Estate of Warhol*
194 F.3d 323 (2d Cir. 1999) .......... 1, 2, 3, 4, 5, 6, 9

*Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*
102 F.4th 572 (2d Cir. 2024) .......... 10

*Unite Here v. Cintas Corp.*
500 F. Supp. 2d 332 (S.D.N.Y. 2007) .......... 9

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*
564 F.3d 110 (2d Cir. 2009) .......... 1, 2, 3, 4, 5, 6, 9

**Statutes and Rules** **Page(s)**

17 U.S.C. § 505 .......... 1, 3, 10

28 U.S.C. § 1927 .......... *passim*

Fed. R. Civ. P. 12(b)(6) .......... 7, 9

Fed. R. Civ. P. 26(a)(1)(A)(ii) .......... 7

Mark D. Passin, Esq. ("Passin") and Reeder LLP (f/k/a CSReeder, PC) ("Reeder LLP") (together, "Passin/Reeder LLP") respectfully submit this memorandum of law in opposition to Defendants' Motion for an Order Holding Plaintiff's Counsel Jointly and Severally Liable for Excess Attorneys' Fees and Costs Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Authority (the "Motion"). (Dkt. 617).

## I. INTRODUCTION

Having obtained a fee award against Plaintiff under 17 U.S.C. § 505, Defendants now ask the Court to hold Passin/Reeder LLP, Stephen Doniger, and Doniger / Burroughs (collectively, "Plaintiff's Counsel") jointly and severally liable under § 1927 and the Court's inherent authority, with collection triggered if Plaintiff does not satisfy the fee judgment within sixty days. (Dkt. 617 at 2, 13-14). The Motion thus seeks to convert the July 28, 2026 Order (Dkt. 583, the "Fee Order") into personal attorney liability as a backstop for Plaintiff's judgment.

The Motion is governed by materially different legal standards than those applicable to Defendants' Motion for fees against Plaintiff.[1] (Dkt. 551). The Court also rendered the Fee Order without all relevant evidence, including Passin's prior declaration submitted in opposition to Defendants' fee request (Dkt. 603) and the concurrently filed Declaration of Mark D. Passin, Esq. (the "Passin Dec.").[2]

Section 1927 and the Court's inherent authority impose materially different requirements from § 505. Liability under either requires clear, attorney-specific evidence that the challenged conduct was "entirely without color" and undertaken for an improper purpose, supported by findings of a high degree of specificity. *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336–41 (2d Cir. 1999); *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir.

---

[1] The Fee Order recognized that the clear-evidence standard governing § 1927 and inherent authority was not the standard then before the Court. (Fee Order at 11 n.2).

[2] Citations to Dkt. 603 and the Passin Dec. include the exhibits referenced in the cited paragraphs.

2009). Any award also must be limited to fees caused by the misconduct and may not be punitive. 28 U.S.C. § 1927; *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–10 & n.5 (2017).

That showing cannot be made here. The record reflects a factual and legal basis for Plaintiff's claim, substantial pre-suit due diligence, and judicial rulings permitting the claim to proceed. It also contains contemporaneous explanations for the litigation conduct Defendants now characterize as bad faith. (Dkt. 603 ¶¶ 2-53; Passin Dec. ¶¶ 2-7). And Defendants do not tie the fees they seek to any unreasonable multiplication of proceedings by Passin/Reeder LLP. The Motion should be denied.

## II. LEGAL STANDARDS

Liability for fee-shifting under the court's inherent authority requires "clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes," and likewise, any finding of bad faith must be supported by factual findings of a "high degree of specificity." *Wolters Kluwer*, 564 F.3d at 114. Section 1927 applies the same standard for counsel's conduct specifically. *Schlaifer*, 194 F.3d at 336-37.

A position is not "entirely without color" if it has any legal or factual basis in light of counsel's reasonable beliefs when advanced, even if it ultimately fails as a matter of law. *Schlaifer*, 194 F.3d at 337. Bad faith requires a separate finding of subjective improper purpose and may be inferred from lack of merit only where the conduct is "so completely without merit as to require the conclusion" that it was undertaken for such a purpose. *Schlaifer*, 194 F.3d at 338-39. Thus, even conduct that a court cites with strong disapproval may fall short where the record does not establish the required subjective intent. *Schlaifer*, 194 F.3d at 339-41; *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78-82 (2d Cir. 2000).

Any fee award under Section 1927 is limited to fees caused by the alleged improper conduct, and a Section 1927 and an inherent-power award imposed through civil procedures must

be compensatory, not punitive. 28 U.S.C. § 1927; *Goodyear*, 581 U.S. at 108-10 & n.5. Section 1927 separately "looks to unreasonable and vexatious multiplication of proceedings" and reaches only those "excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927; *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253, 1261-62 (2d Cir. 1996). Although deterrence is a permissible consideration in deciding whether to award fees under 17 U.S.C. § 505, deterrence is not a justification for enlarging fee liability under the Court's inherent authority. *See, e.g., America Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021) (citing *Goodyear*, finding a "deterrent rationale" is punitive not compensatory).

"Joint and several liability" does not eliminate the requirement of a sufficiently specific finding of bad faith as to the sanctioned actor. *Wolters Kluwer*, 564 F.3d at 114 (confirming that "[b]ad faith is personal" and "may not automatically be visited" on others).

## III. ARGUMENT

### A. Defendants fail to satisfy the requirements for attorney liability under § 1927 or the Court's inherent authority.

#### 1. Plaintiff's claims and Passin/Reeder LLP's prosecution of them were not "entirely without color."

Conduct is "entirely without color" only if it lacks any legal or factual basis in light of counsel's reasonable beliefs at the time. *Schlaifer*, 194 F.3d at 337. A position is not entirely without color merely because it ultimately fails, and even judgment as a matter of law does not itself establish a total lack of colorable basis. *Id*.

*Schlaifer* illustrates this point. There, the district court set aside a jury verdict and entered judgment as a matter of law after finding extensive evidence that made the plaintiff's claim objectively unreasonable. 194 F.3d at 329-331. Yet the Second Circuit held the continued pursuit of the claim was not entirely without color because evidence gave counsel a reasonable basis to believe it might succeed, emphasizing that a judge's "detached judicial analysis," reached with

hindsight on a full record, differs from the advocate's contemporaneous assessment. *Id.* at 337-38. Nor does a district judge's strong opinion that counsel acted improperly establish that the conduct was "entirely without color" where a legitimate legal basis remained. *Id.*; *see Wolters Kluwer*, 564 F.3d at 114-16.

The record shows that Plaintiff's claim had a concrete factual and legal basis when asserted. Before filing suit, Passin spent months conducting due diligence. (Passin Dec. ¶¶ 2-4). Passin thereafter believed that Freeman had valid copyright infringement claims well supported by both the law and the facts and he did not file the action or continue to pursue it for an improper purpose. (Passin Dec. ¶¶ 3-4). Neither § 1927 nor inherent-authority liability can attach given that confirmation of validity. *See Jones v. Combs*, 759 F. Supp. 3d 534, 541 (S.D.N.Y. 2024) ("Even when a 'case should not have been brought in the first place,' § 1927 (and inherent authority) sanctions are generally 'not aimed at a plaintiff's pre-filing conduct.'") (citations omitted).

Counsel's method for proving substantial similarity likewise rested on identified source material: in August 2022, he provided Defendants six manuscripts and nine sets of notes that he explained "would best allow you to evaluate the claim," and after Judge Stanton ruled that all versions of the manuscript could be used at trial, counsel voluntarily advised Defendants that Plaintiff would use substantially the same comparison set to analyze the parties' works. (Dkt. 603 ¶¶ 33, 38, 39).[3]

On the parties' initial cross-motions for summary judgment, Judge Netburn recommended that Judge Stanton find that "BMR 2010, 2011, 2012, 2013, and 2014 each share probative similarities with the Crave series, and no reasonable juror could find otherwise" and that "[w]here, as here, the similarities fall somewhere between probative and striking, substantial similarity presents a particularly close question of fact and should be decided by a jury." (Dkt. 361 at 12, 13,

[3] There is no evidence that 25 attorneys "turned Plaintiff down." Defendants speculated that other attorneys "might" have questioned Plaintiff's claims and now convert that conjecture into an asserted fact unsupported by the record.

16). After both sides objected to Judge Netburn's Report and Recommendation, Judge Stanton held that the "cross-motions for summary judgment on direct copyright infringement are denied, and all related questions are preserved for trial." (Dkt. 398 at 3-4). The Court then ordered the case to trial. Those circumstances do not establish that Plaintiff was correct on substantial similarity but confirm a legal and factual basis for counsel's reasonable belief and preclude a finding that the claim, or its continued pursuit, was "entirely without color." *Schlaifer*, 194 F.3d at 337-38.

**2. Defendants have not shown that Passin/Reeder LLP acted in subjective bad faith for an improper purpose.**

Separate from colorability, § 1927 requires clear, attorney-specific evidence that counsel acted for an improper purpose such as harassment or delay. *Wolters Kluwer*, 564 F.3d at 114. Improper purpose may be inferred from lack of merit only where the conduct is "so completely without merit as to require the conclusion that [it] must have been undertaken for some improper purpose." *Schlaifer*, 194 F.3d at 336.

*Schlaifer* again provides significant guidance. There, the district court found bad faith based on a constellation of seemingly serious facts: an allegedly frivolous reliance theory, internal documents and testimony undermining that theory, prior inconsistent testimony, millions of dollars in fees relative to the compensatory damages at stake, the prior arbitral recovery, the contingency-fee arrangement, and counsel's "unreasonable tenacity" in discovery and trial tactics. 194 F.3d at 338-39. Yet the Second Circuit rejected the finding because the district court had effectively converted its hindsight assessment of the merits into an inference about counsel's contemporaneous intent. *Id.* at 340-41. Despite those questionable events, the record still showed a concrete basis for counsel's subjective belief in the fraud claim, making continued litigation at most poor legal judgment rather than bad faith. *Id.* Thus, even materially more aggressive litigation conduct than is present here did not establish bad faith where the challenged choices remained tethered to a permissible litigation objective grounded in legitimate advocacy. *See id.*; *Wolters*

*Kluwer*, 564 F.3d at 114.

The Motion largely treats the Fee Order's criticism of the merits and litigation decisions as proof of improper intent, but § 1927 requires clear, attorney-specific evidence of improper purpose, not merely mistaken or unreasonable conduct. *Wolters Kluwer*, 564 F.3d at 114; *Schlaifer*, 194 F.3d at 340-41. As shown below, the challenged conduct had contemporaneous litigation explanations in the record that defeat an inference of harassment, delay, or other abuse of the proceedings. Those explanations are consistent with Passin's sworn statements that neither he nor Reeder LLP acted to harass, delay, impose unnecessary costs on Defendants, or for any other improper purpose. (Dkt. 603 ¶ 52; Passin Dec. ¶ 6).

Defendants have presented no clear attorney-specific evidence that counsel filed or continued prosecuting the case with the subjective intent to achieve an improper purpose. Passin filed the complaint because he thought Freeman had valid copyright infringement claims supported by both the law and the facts. (Passin Dec. ¶¶ 3-4). Counsel's contemporaneous assessment was reinforced by Judge Netburn's Report and Recommendation and Judge Stanton's denial of Defendants' first summary-judgment motion.

Defendants likewise present no clear attorney-specific evidence that the timing of manuscript production was intended to obstruct or prevent a dispositive motion. (Dkt. 617 at 5-7). Passin does not recall telling Ms. Symanski of Macmillan that he was withholding the works to prevent their use on a motion to dismiss,[4] and more importantly the contemporaneous record reflects instead that Passin was willing to produce the manuscripts upon the entry of a protective order to protect the confidentiality of the unpublished work. (Dkt. 603 ¶¶ 4-35).

Passin proposed a protective order in April, repeatedly sought to finalize it, and the parties later jointly advised Judge Torres that the manuscripts would be provided "upon the execution of

[4] Passin also does not recall telling Symanski that the lawsuit was based on sixty-four unpublished manuscripts. (Dkt. 603 ¶ 4). Nor can he imagine that he would have ever said that. *Id.*

a protective order" so Defendants could evaluate the works. (Dkt. 603 ¶¶ 7-19). The first draft Passin sent on April 22, 2022 already contained a procedure by which a party seeking Attorneys'-Eyes-Only treatment could obtain a court ruling. (*Id.* ¶¶ 7, 10, 35 & Ex. D). Defendants, for some unexplained reason, nevertheless continued to insist on an AEO provision, filed their answers while that dispute remained unresolved, and only afterward suggested that Passin submit the issue to the Magistrate Judge. (*Id.* ¶¶ 13, 25-29). Passin would have agreed to a further extension of Defendants' time to respond to the Complaint and repeatedly urged resolution of the AEO issue so that he could "provide [them] with the underlying material as soon as possible." (*Id.* ¶¶ 14, 25, 35). The Magistrate Judge ultimately denied Defendants' request for an AEO provision. (*Id.* ¶¶ 28-29). Had Defendants wanted to file a 12(b)(6) motion, they would (a) not have delayed the entry of the protective order over an unnecessary AEO provision, (b) have requested another extension of time to respond to the complaint, (c) not have waited until after they filed their answer to suggest to Passin that he file a letter with the Magistrate seeking to resolve the AEO issue, or (d) have filed a 12(b)(6) motion without the manuscripts.[5]

Moreover, any earlier proposal limiting Defendants' review to settlement purposes preceded Passin's agreement to provide the manuscripts upon entry of the protective order and, had Defendants accepted it, would have allowed them to begin analyzing the works before the protective order was entered. (*Id.* ¶ 6). Nor was Passin's failure to produce the manuscripts earlier a violation of Rule 26(a)(1)(A)(ii). The Rule merely requires disclosure of a copy, or a description by category and location, of documents within the party's possession, custody, or control that it may use to support its claims or defenses. (*See id.* ¶¶ 23, 31). Moreover, the agreement to produce the manuscripts after the entry of the protective order was agreed to prior to the due date of the

[5] Defendants Prospect and Kim already had numerous versions of Freeman's manuscript in their possession, and at least one version had been sent to Defendant Entangled. (Passin Dec. ¶ 5). Possibly Defendants decided not to file a 12(b)(6) motion after reviewing those.

initial disclosures. (*Id.* ¶¶ 18, 19). Once the protective order was entered, counsel produced six manuscripts and nine sets of notes, after first advising Defendants that he intended initially to provide the materials most useful for evaluating the claim. (*Id.* ¶¶ 30-33). Defendants did not object to that approach at the time. (*Id.* ¶ 30). Passin did not limit the production for any improper purpose. He did it because he thought it would enable Defendants to best and most efficiently evaluate the claim without having to read all 17 manuscripts and 13 sets of notes. (Dkt. 603 ¶¶ 30, 33.)

The foregoing supplies a reasonable and contemporaneous litigation explanation for the alleged concealment. Defendants had already answered the First Amended Complaint, and Passin believed the manuscripts would be used to evaluate settlement. Following an informal discovery conference requested by Plaintiff, Magistrate Judge Netburn issued a September 16 Order requiring Plaintiff to identify with specificity which manuscripts were infringed and provide metadata to Defendants by October 14. (*Id.* ¶ 36.) Plaintiff fully complied with that Order. (*Id.*). Defendants did not begin rolling production until September 13, 2022. (*Id.* ¶ 31).

The same is true of Defendants' contention that counsel was "still playing coy" in response to Magistrate Judge Netburn's order to submit a letter brief explaining how Plaintiff intended to prove infringement. (Dkt. 93). Passin did not decline to identify a subset for an improper purpose. He did so because he could not yet definitely determine which versions he would definitively rely on at summary judgment or trial and sought to avoid prematurely waiving Plaintiff's right to use any of the other manuscripts to prove her case. (Dkt. 603 ¶ 37). Passin nevertheless had already identified the versions he believed Defendants could most easily use to evaluate the works without risking waiver of Plaintiff's rights. (Dkt. 603 ¶¶ 33, 37).

Shortly after Judge Stanton effectively overturned Judge Netburn's order requiring Plaintiff to "identify [just] two manuscripts to serve as the primary works that establish her copyright claims," (Dkt. 181), counsel voluntarily provided Defendants with the names and Bates numbers of six manuscripts and nine sets of notes as a basis to commence their analysis, while

advising that Plaintiff technically sued based on all registered works. (Dkt. 603 ¶ 39). Those were essentially the same documents Passin had previously identified. (*Id.*).[6] The contemporaneous explanations for the challenged conduct therefore preclude the highly specific finding of subjective bad faith required under § 1927 and the Court's inherent authority when the appropriate legal standards are applied. *Schlaifer*, 194 F.3d at 340-41; *Wolters Kluwer*, 564 F.3d at 114.

### B. Defendants cannot establish unreasonable multiplication under § 1927 or the causation required for an award under either framework.

Section 1927 reaches only conduct that unreasonably and vexatiously "multiplies the proceedings" and only excess fees incurred "because of such conduct." 28 U.S.C. § 1927. Pursuing an allegedly meritless action is not itself such multiplication. *Unite Here v. Cintas Corp.*, 500 F. Supp. 2d 332, 337–38 (S.D.N.Y. 2007). Defendants therefore must identify both the proceedings improperly multiplied and the resulting excess fees.

Defendants' proposed April 5, 2022 cutoff for liability does neither. Defendants seek all fees incurred after Passin first allegedly declined to immediately provide the manuscripts. (Dkt. 617 at 12). But they answered rather than file the contemplated Rule 12(b)(6) motion, making speculative the premise that earlier production would have ended the action. (Dkt. 603 ¶ 25). Magistrate Judge Netburn later had the manuscripts before her and recommended denial of Defendants' summary-judgment motion, which Judge Stanton approved. The Second Circuit vacated an award encompassing an entire proceeding where the district court failed to attribute particular fees to the offending conduct and distinguish meritless positions from those that were

[6] Defendants' remaining accusations likewise do not establish improper purpose. Passin explains that Plaintiff abandoned the pre-*Crave* theory without undertaking substantial discovery into it (Dkt. 603 ¶ 48); the e-discovery terms reflected the breadth of the written material at issue (*id.* ¶¶ 40, 46, 49); the experts were retained for substantive purposes and were not all excluded (*id.* ¶ 50); and the selection-and-arrangement argument responded to Defendants' dissection of the works rather than reflecting a shifting theory of liability (*id.* ¶ 51). None of those actions were undertaken to harass, delay, or impose unnecessary costs. (*Id.* ¶¶ 40, 52; Passin Dec. ¶ 6). *See also* Opposition of Doniger/Burroughs and Stephen Doniger, filed concurrently (addressing Defendants' allegations concerning Plaintiff's allegedly misleading descriptions of the works, expert testimony, summary-judgment advocacy, and other post-retention conduct).

merely unsuccessful. *Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 615-17 (2d Cir. 2024). *Goodyear* likewise rejected blanket shifting of all later fees based on the premise that earlier disclosure of withheld material would have ended the action. 581 U.S. at 110-12. Defendants' selection of a date is not a substitute for the required causal showing, and their inclusion of every fee after April 5 suffers from that exact causation defect.[7]

### C. Plaintiff's potential nonpayment cannot substitute for attorney-specific alleged misconduct and causation.

Defendants ask that counsel's liability become collectible only if Plaintiff fails to satisfy the fee judgment within sixty days. (Dkt. 617 at 2, 13-14). But § 1927 authorizes only excess fees caused by counsel's unreasonable and vexatious multiplication, while an inherent-power award likewise must be compensatory and limited to fees that would not have been incurred but for the misconduct. 28 U.S.C. § 1927; *Goodyear*, 581 U.S. at 108–10 & n.5. Plaintiff's potential nonpayment cannot substitute for the attorney-specific misconduct and causation either source of authority requires.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' request to use 28 U.S.C. § 1927 and its inherent authority to impose joint and several liability on Plaintiff's Counsel as a backstop for any fee award under 17 U.S.C. § 505 that Plaintiff does not satisfy within sixty days. Alternatively, the Motion should be held in abeyance pending Plaintiff's appeal (Dkt. 553), which may bear directly on whether Plaintiff's claims were "entirely without color."

[7] Although Plaintiff's counsel did not know about the divorce until after Defendants filed their bond motion, it obviously had nothing to do with increasing the costs of the underlying litigation. (Passin Dec. ¶ 7).

Dated: September 18, 2026

Respectfully submitted,

PRACTUS LLP

*/s/ Matthew B. McFarlane*

Matthew B. McFarlane, Esq.
1014 W. 36th Street, Suite 103
Baltimore, MD 21211
(410) 657-8633
matthew.mcfarlane@practus.com

*Separate Counsel for Mark D. Passin, Esq. and Reeder LLP*