**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LYNNE FREEMAN,

Plaintiff,

v.

TRACY DEEBS-ELKENANEY p/k/a TRACY WOLFF, et al.,

Defendants.

Case No. 2:22-cv-02435 (CM)(SN)

**PLAINTIFF'S SUPPLEMENTAL BRIEF ON ABILITY TO PAY FOLLOWING THE SEPTEMBER 14, 2026 DEPOSITION OF LYNNE FREEMAN**

## I. Preliminary statement

Freeman's examination by two defense firms on her financial condition not only corroborated, item by item, the testimony she previously offered, it also established further facts supporting her inability to pay and the harm a large fee award would cause, including that the lifeline paying her expenses—her ex-husband pursuant to her divorce agreement—has no significant assets and much of his income goes to the assistance he offers her. Thus, her deposition confirmed that the massive fee award Defendants' demand would cause the financial ruin of a litigant with significant disabilities, no assets to speak of, and limited earning potential—all after she has already sacrificed what assets she had and her retirement savings to pursue claims she continues to believe in.

## II. The deposition corroborated the declaration on every material point

Defendants examined Freeman on each category of asset, income, account, and obligation in her declaration. Her sworn answers matched it.

| Declaration | Deposition testimony | Cite |
|---|---|---|
| ¶ 18 - one-half interest in the Santa Barbara condominium is her principal asset | Owns a one-half interest; no other real property; no rents; no other source of income | 63:4-8; 63:19-24 |
| ¶ 19 - interest-only ARM doubling in February 2027; cannot refinance | Payment is "4,000 and a few hundred dollars"; "almost double" in February 2027; "I can't afford to buy him out" | 82:1-4; 84:5-6 |
| ¶¶ 21-25 - retirement liquidated for the bond; only other assets a car and household effects | Retirement liquidated for the bond; no assets over $500 but a ring and car; owns no insurance policy | 80:19-22; 84:15-22; 87:12-18 |
| ¶¶ 26-27 - two accounts; her former husband funds the expense account and pays vendors | Identified the banks of the two accounts, and an abandoned account holding about $1.60; "he pays all of your expenses directly" - "Yes" | 68:15-17; 72:9-18 |

| Declaration | Deposition testimony | Cite |
|---|---|---|
| ¶ 28 - loans owed and ongoing e-discovery accruing | Confirmedloans owed and e-discovery expeses | 147:3-5; 148:4-8; 148:21-25 |
| ¶¶ 29-30 – low four-figure cap on two joint cards | Confirmed same total across both cards and that she has "no funds to pay for the excess out of" | 88:13-16; 88:22-23 |
| ¶ 5 - Anchorage sale proceeds went into the case | "All of the house proceeds from Evangeline went into this litigation to pay experts" | 142:8-11 |
| ¶¶ 9, 11 - applying for disability; kept her license active hoping to return | Federal disability application pending; "I've kept my bar license active"; "I am not actively practicing law" | 19:13-25; 110:13-19 |

## II. Freeman's testimony further evidenced her financial hardship

Freeman's testimony at deposition in fact expanded upon what she already set forth, and in the process entirely undermined Defendants' theory that she might be hiding assets through her former husband. Specifically, Freeman further testified that to the best of her knowledge neither she nor her former husband holds separate property outside the Property Settlement Agreement, and that his separate retirement and securities are relatively minimal. Freeman Dep. 81:5-19. Then, she estimated her ex-husband's annual income, and counsel then performed the arithmetic on the record to conclude that after his support and expenses "[h]e doesn't have much money leftover for anything." Freeman Dep. 152:23-153:21.

And to be sure, the support provided by Freeman's ex-husband reflects little more than the basic cost of keeping Ms. Freeman housed, insured, and medically treated. It is not a fund, and it is not reachable. Asked to value the temporary maintenance she receives, Freeman answered without prompting: "it varies month to month, but it is usually 14-, $15,000 a month." Freeman Dep. 131:18-22. Her counsel then withdrew a prior instruction so that Defendants could examine her on it. Freeman Dep. 132:9-17. And what that examination revealed was (1) no part of those

funds pass through her hands (per her Decl. ¶ 30), (2) it is all already spoken for (Freeman Dep. 153:3-21), and (3) PSA ¶ 16 makes the support non-modifiable for changed circumstances, and all of it terminates May 1, 2031. Decl. ¶ 30. The relevance of that third point is that a fee award will not enlarge it—just exceed it.

### III. Relative financial strength and the outer limit of what is collectible

The Court has held that ability to pay does not bar an award but that the relative financial strength of the parties bears on the amount. Freeman's testimony confirmed she is in a position of minimal financial strength, which stands in stark contrast to the international corporations and best-selling author now demanding she pay millions of dollars in their fees. The below table illustrates Freeman's financial position, making assumptions most favorable to Defendants-every asset valued at its PSA figure, the homestead disregarded, the PSA ¶ 6(a)-(f) reimbursement provisions disregarded, and the debt to her former husband excluded entirely:

| **Item** | **Amount** | **Source** |
|---|---|---|
| One-half equity in the Santa Barbara condominium | [redacted] | Decl. ¶ 18; PSA ¶ 6 |
| Remaining IRA balance | | Decl. ¶ 22 |
| 2016 Range Rover Sport | | Decl. ¶ 25 |
| Roth IRA | | Decl. ¶ 24 |
| Petty-cash account | | Decl. ¶ 27 |
| Expense account | | Decl. ¶ 27 |
| **TOTAL gross assets** | | |
| Estimated 2026 tax on the bond withdrawal | | Decl. ¶ 22 |
| **TOTAL net, before any litigation debt** | | |
| Obligation to former husband (accruing at $1,450/month) | | Decl. ¶ 28; Dep. 148:4-8 |
| **TOTAL net worth** | | |

Even on the most generous view, Ms. Freeman's entire net position is approximately [redacted], of which nearly three quarters is illiquid, jointly titled, heavily mortgaged real property

that she testified she cannot refinance or buy out. Freeman Dep. 84:5-6. And on any accounting that includes the debt she actually owes, her net worth is negative by roughly half a million dollars.

In contrast, Defendants are multi-national corporations and a bestselling author with insurance. The disparity is manifest. The relative financial strength of the parties militates against imposing a large fee award upon Freeman.

**IV. Defendants' impeachment efforts identify no asset and no earning capacity**

A substantial part of Freeman's deposition—the part on which Freeman anticipates Defendants will focus their supplemental brief—aimed to undermine Freeman's credibility by impeaching her on collateral matters such as how she described herself over the past years on her website, online profiles, and in declarations filed in 2023. Freeman Dep. 93:12-17; 114:1-25; 116:21-117:19; 154:1-155:19. But that Freeman may have written that she was a practicing attorney years ago or that she took steps to assist in her own litigation does not impeach or contradict her social security statements, lack of assets, or current disabilities which significantly limit her earning potential.

Seemingly acknowledging that Freeman in fact has no meaningful assets to speak of, Defendants acknowledged that "her ability to pay is largely based on whether or not she can practice law." Freeman Dep. 116:10-12. Freeman understands this and thus answered the questions put to her about her medical condition and disabilities, including how long she has had them and how they affect her.

Unfortunately, Defendants elected to use much of the time they had to depose her digging through statements dating back years. But ultimately a fee award is satisfied from assets and income, and Freeman has neither. In the hopes that may change she has kept her Alaska Bar license active (Freeman Dep. 110:13-19), but that license can only generate income through fees generated

and Freeman has no foreseeable prospects to earn such fees—particularly while she is in California to get treatment for disabilities for which equivalent care does not exist in Alaska.

Defendants can only undermine this truth by pointing to stale self-descriptions. Asked whether she holds herself out publicly as a practicing attorney, she answered: "At this moment in time, no." Freeman Dep. 116:21-23. She testified that she has not updated her website or social media because of her illness, and that she is not active on social media. Freeman Dep. 114:18-24. Even if taken at face value, scattered, years-old referencing to practicing law simply do not prove that Freeman has substantial assets or earning potential now. Rather, the undisputed record shows years of inability to sustain work, a pending federal disability application, and limited future earning potential. Freeman Decl. ¶ 8 & Ex. 2; Freeman Dep. 13:10-13; 19:13-25; 20:1-7.

## V. Conclusion

Freeman's deposition revealed no undisclosed assets, no hidden accounts or streams of income, and no third party able to pay. It produced instead an unenviable witness with serious medical issues and disabilities, no meaningful assets, no significant present earning potential, and whose support obligations already consume a weighty portion of her former husband's after-tax income. Freeman does not ask the Court to revisit its determination that an award is warranted. She only asks that the amount reflect what the record now establishes about her capacity to pay.

Dated: September 18, 2026
New York, New York

Respectfully submitted,

By: /s/ *Stephen M. Doniger*

Stephen Doniger, Esq.
**DONIGER / BURROUGHS PC**
603 Rose Avenue
Venice, California 90291
(31) 590-1820
stephen@donigerlawfirm.com

**REEDER LLP**
Mark D. Passin
11766 Wilshire Boulevard,
Suite 1470
Los Angeles, CA 90025
310-861-2475
*Attorneys for Plaintiff Freeman*