**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LYNNE FREEMAN,

Plaintiff,

v.

TRACY DEEBS-ELKENANEY, et al.

Defendants.

Case No. 2:22-cv-02435 CM-SN

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF AN AWARD OF ATTORNEYS' FEES AND COSTS**

## I. INTRODUCTION

Defendants submit this supplemental brief in response to the Court's Order at Docket 618 following an initial session of Lynne Freeman's deposition on September 14, 2026 (*see* Dkt. 623-1 ("Freeman Tr.")). As a preliminary matter, Defendants are constrained to request the opportunity to file a further supplemental brief after they complete the second session of Ms. Freeman's deposition pursuant to the Court's Order at Docket 628.

Despite the many unanswered questions enumerated in Defendants' letter to Your Honor on September 15, 2026 (Dkt. 623), the testimony and evidence that *was* elicited at Ms. Freeman's deposition did not establish why she should not be subject to a substantial award of attorney's fees and costs in favor of Defendants. To the contrary, Ms. Freeman's testimony only raised more questions of credibility than answers, and her conduct and that of her lawyers at the deposition reinforced those concerns.

## II. LEGAL STANDARD

A party cannot avail herself of the defense of inability to pay when the inability to pay is self-imposed. In the contempt context, the Second Circuit has made clear that "a party's complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt." *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995). To that end, the party seeking to avoid a payment obligation "bears the burden of producing evidence of his inability to comply", and that burden requires the party to "establish his inability clearly, plainly, and unmistakably." *Id.* (citations omitted). The burden of demonstrating inability to pay is also applied in cases not involving contempt. *See, e.g., In re Saint Vincent's Cath. Med. Centers of New York,* No. 10-11963 CGM, 2014 WL 3545581 (S.D.N.Y. July 16, 2014) (refusing to reduce Rule 11 sanctions where party did not provide evidence of inability to pay "despite its issuance of two orders directing Menkes to submit . . . tax returns and profit and loss statements to

support her contention that she was unable to pay the sanctions,"); *Offor v. Mercy Med. Ctr.*, 327 F.R.D. 32, 37 (E.D.N.Y. 2018) ("Absent demonstrating an inability to pay, the Court will not allow [a party] to avoid the consequences of his conduct on the basis of this conclusory assertion alone."); *In re Simone,* 2023 WL 5338676, at * 6 (U.S.B.R. D. Conn. Aug. 18, 2023), *citing Lawrence v. Goldberg (In re Lawrence),* 279 F.3d 1294, 1300 (11th Cir. 2002) (finding debtor failed to establish the impossibility of payment because he lacked credibility).

Courts in the Second Circuit also looks skeptically at evidence that smacks of a manufactured inability to pay. In *Sec. & Exch. Comm'n v. Bronson*, a debtor claimed he could not pay because the company generating income was technically owned by his spouse. The court found, however, that the company appeared designed to funnel proceeds away from the judgment creditor's grasp, that the purported ownership by the spouse was a subterfuge to avoid compliance with the order, and that assets funneled through that company could be considered. No. 12-CV-6421 (KMK), 2021 WL 3167853, at *9 (S.D.N.Y. Jan. 19, 2021), *citing Spotnana Inc. v. American Talent Agency, Inc.,* No. 09-CV-3698, 2014 WL 7191400, at *8 (S.D.N.Y. Dec. 3, 2014).

Further, a party's demonstrated ability to continue to finance the litigation despite a claimed ability to pay substantially undermines any insolvency defense. *Huber*, 51 F.3d at 11 (upholding award where "the district court on remand found that Huber's assertions that he was unable to pay were incredible and that, in light of his demonstrated ability to, *inter alia,* finance his post-February 1994 litigation, Huber had the ability to pay the fines and had not carried his burden of proving his inability to pay."); *see also Pugach v. M & T Mortg. Corp.*, 564 F. Supp. 2d 153 (E.D.N.Y. 2008) (finding no reduction of fee award in the absence of admissible proof of financial hardship and where plaintiffs "have, over the years, managed to marshal and finance significant legal assistance in pursing frivolous claims or defenses against the defendant, and that the 'nominal' award they request now would do little to deter them from filing frivolous lawsuits in the future").

## III. FREEMAN'S TESTIMONY AND EVIDENCE LACKS CREDIBILITY BUT AT A MINUMUM SUGGESTS A CLEAR ABILITY TO PAY A FEE AWARD

Lynne Freeman is an attorney who has been practicing law for over twenty-five years. Freeman Tr. 40:11-16. Trent Baer, her recently-divorced spouse, owns a wealth management firm that "has been managing private client portfolios for more than 27 years."[1] Ms. Freeman has seen fit to actively prosecute a baseless copyright infringement litigation against Defendants for four years, purportedly spending north of $720,000[2] (*id.* 147:25 – 148:12) in a case where she is represented by two law firms operating on a contingency basis, and causing the four primary Defendants to spend significant sums in defense. Ms. Freeman (and Mr. Baer still, to this day[3]) have been heavily and actively involved in the prosecution of her frivolous claims, including drafting hundreds of pages of "comparisons" of the respective works, coordinating a press campaign against Defendants, and – even now – continuing to litigate this case on appeal.

Recently, however, Ms. Freeman has chosen to present herself as nearly-indigent, so sick with multiple maladies that she is unable to manage her own affairs (which Mr. Baer continues to handle for her), and unable to earn income or pay any potential fee award. *Id.* 147:25 – 148:12. This comes on the heels of her finalizing, just a few months ago, a divorce with Mr. Baer pursuant to which he retains all of his and the couple's prior assets, other than a one-half interest in the condominium in which Ms. Freeman resides, and pays her monthly expenses. Dkt, 566-1. Those expenses total, incredibly, $14,000 to $15,000, even though Mr. Baer purportedly only earns between $200,000 and

[1] https://www.cvgwealth.com/team/trent-baer

[2] In fact, the couple's Property Settlement Agreement suggests that Mr. Baer has loaned Ms. Freeman $720,000, but she also received $250,000 from the sale of their Anchorage home (Dkt. 566-1 ¶ 13(b)), and she has taken a forgiveable loan of $50,000 from her aunt (Freeman Tr. 41:23-42:3), meaning she purportedly has spent over $1 million on this litigation (while using contingency counsel), but at the same time, she argues that the Defendants' hourly-rate attorneys' fees are unreasonable.

[3] Even after their purported divorce, a review of the evidence submitted by Ms. Freeman in her opposition to the appeal bond shows on its face that it was gathered by Mr. Baer on her behalf. *See, e.g.,* 570-5, Exhibits 1 and 5.

$250,000 per year. *Id.* 153:2-17. The circumstances of the divorce and their living arrangements remain highly suspicious, as at her recent deposition, Ms. Freeman testified that Mr. Baer stays in a friend's condominium in the same complex as Ms. Freeman during his very frequent visits to Santa Barbara (at least 50 times in 2026 to "visit the family dog"), and that he performs upgrades and repairs to Ms. Freeman's condo in his free time. *Id.* 50:1-54:6; 83:2-23.

Indeed, the couple has divided their time between Anchorage, Alaska, and Santa Barbara, California for over 15 years, presumably because Mr. Baer has offices in both cities (*Id.* 49:21-23) and Ms. Freeman's parents apparently live in Santa Barbara (contrary to her oft-repeated invocation of her deep generational roots in Alaska, asserted whilst bemoaning the need to sell one of her several homes there to finance this litigation[4]). In 2010, the couple purchased a single-family home in Santa Barbara for $1,799,000 million.[5] In 2014, Baer Asset Management Group, LLC ("BAMG") purchased a property in Anchorage consisting of a single-family home and an office building for $799,000.[6] The couple sold the Santa Barbara house in 2018 for $3,050,000. A year later, they purchased a condo in a brand-new luxury complex in Santa Barbara for $1,350,000 - described publicly as consisting of 72 "exquisite, contemporary residences and townhomes nestled along upper State Street in Santa Barbara,"[7] putting down $335,000 in cash towards the purchase.[8] Around the same time, they purchased a second single-family home in Anchorage for approximately $800,000, putting down around $200,000.[9] They listed that house three years later for $1,150,000, and sold it; the final sale price is unknown to Defendants, but the couple's Property Settlement Agreement

---

[4] *See* Dkt. 602 ¶¶ 3-5; Dkt. 226 ¶ 3.
[5] https://www.homes.com/property/1225-manitou-ln-santa-barbara-ca/2hs3s38304960/
[6] https://www.homes.com/property/736-coastal-place-anchorage-ak/sgbdt5pk9xtwt/
[7]https://blog.theagencyre.com/2018-07-estancia-santa-barbara-debuts-collection-of-contemporary-residences-townhomes/
[8] https://www.homes.com/property/3722-state-st-santa-barbara-ca-unit-309/vj8556xsfzfmx/
[9]https://www.homes.com/property/1745-evangeline-ln-anchorage-ak/cjpdyveyyl7fk/?dk=ndh1252serdhl

suggests they made around $500,000 from the sale. Dkt. 566-1 ¶ 13(b); *see generally* Freeman Tr. 139:7-142:24. In addition, within the past few years, the couple has owned a BMW X3, a BMW X5 and a Range Rover (Dkt. 566-1 ¶ 10; Dkt. 570 ¶¶ 7-8) - all luxury vehicles- and their son attended a private university for at least a year before transferring to a public university, and his college tuition is paid for by Mr. Baer. *See* Dkt. 566-1, Ex. D, Baer Tr. 22:11-15; Freeman Tr. 45:5-18.

At her deposition, Ms. Freeman was unable or unwilling to discuss the couple's annual income (Freeman Tr. 48:1-49:7), and had not reviewed her tax returns or any other financial information before the deposition (*id.*, 11:5-11; 43:10-12). She claimed that she did not have access to financial accounts, did not know how much was in them (except the one time that Mr. Baer showed her on the computer last month that the account he put money in on her behalf had a negative balance) and that her ex-husband pays all of her bills for her and exercises total control over her finances. *Id.*, 64:22-72:8. She professed to be unsure of the amounts for which her many homes had been purchased and sold. *Id.*, 139:7-142:24. She indicated that any proceeds from those sales – in particular the sale of the house at 1745 Evangeline Lane in Anchorage, was used to finance this litigation, but she could not identify how the various out-of-pocket costs could have added up to over $720,000 when her lawyers were working on a contingency basis. *Id.*, 142:8-148:12. After first testifying that she did not know whether Baer Asset Management Group, LLC had a bank account (*id.*, 126:21-22), she later said it did but that she was unable to identify how much money was in the account prior to the divorce (*id.*, 130:24-131:4). Even when she eventually testified that she believed Mr. Baer's annual income was between $200,000 and $250,000, she could not explain how he could then afford to pay her $14,000 to $15,000 in support each month, after taxes. *Id.* 153:3-17.

Of course, the fact that a litigant lives a seemingly extravagant lifestyle does not mean that the litigant actually has substantial assets. However, as noted above, the burden to show inability to pay rests firmly with the party making that claim, and Ms. Freeman has fallen far short of that burden.

Even before Ms. Freeman's deposition resumes and Defendants can ask further questions without obstruction, the existing support for Ms. Freeman's inability to pay is either nonexistent, inconsistent or entirely lacking in credibility. At any time, it presumably would have been a simple matter for Plaintiff to provide the Court with the couple's tax returns and their bank records, and statements for their investment and retirement accounts, for a reasonable period of time prior to the divorce. Such transparency might have resolved these issues around ability to pay in short order. Instead, Plaintiff has provided a summary of only her own social security earnings, and a few records of her expenses (although not her litigation expenses), instead of documents that would illuminate the couple's assets and income. In addition, where she previously testified that she was litigating this case with her lawyers on her own behalf, while also providing consulting services and offering her legal work "in trade," (*see, e.g.,* Dkt. 183), she now refutes her own prior testimony, claiming that she has been completely incapable of working for nine or ten years.

None of this supports a conclusion that Ms. Freeman is unable to pay, especially given the evidence showing that her divorce likely was filed in order to hide assets, and that she claims poverty while at the same time purporting to have spent at least $1 million on this litigation to date, and is actively pursuing an appeal.

Defendants look forward to presenting further argument following Ms. Freeman's continued deposition.

Dated: September 18, 2026

Respectfully submitted,

*/s/ Amy L. Nashon*

Amy L. Nashon
California State Bar No. 316353
**TROYGOULD P.C.**
1801 Century Park East, Suite 1600
Los Angeles, CA 90067
Phone: (310) 553-4441

Fax: (310) 201-4746
anashon@troygould.com

Jennifer Pariser
**OPPENHEIM + ZEBRAK, LLP**
461 5th Avenue, 19th Floor
New York, NY 10017
Phone: (212) 951-1874
Fax: (866) 766-1678
JPariser@oandzlaw.com

*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan, and Universal City Studios LLC*

Lacy H. Koonce, III
**KLARIS LAW PLLC**
161 Water Street, Ste. 904
New York, NY 10038
Phone: (917) 612-5861
lance.koonce@klarislaw.com
*Attorneys for Defendants Emily Silvan Kim and Prospect Agency, LLC*

Dwayne K. Goetzel
Texas State Bar No. 08059500
**KOWERT, HOOD, MUNYON, RANKIN & GOETZEL, P.C.**
1120 S. Capital of Texas Hwy.
Building 2, Ste. 300
Austin, Texas 78746
Phone: (512) 853-8800
Fax: (512) 853-8801
dgoetzel@intprop.com
*Attorneys for Defendants Tracy Deebs-Elkenaney p/k/a Tracy Wolff*