## I. INTRODUCTION

Defendants submit this further supplemental brief in response to the Court's Order at Docket 618 following the second session of Lynne Freeman's deposition on September 23, 2026. This brief focuses on additional testimony elicited at Ms. Freeman's deposition that bears upon the credibility of her claim that she cannot reimburse Defendants for their attorneys' fees, despite that she and her "former" spouse allegedly spent over $1 million on their own attorney's fees and costs in this litigation.[1] Because this brief will provide details of Ms. Freeman's testimony about her personal financial and medical information, Defendants contemporaneously seek leave to file it under seal, along with the transcript from the second session of her deposition.

## II. FREEMAN'S FURTHER TESTIMONY UNDERSCORES HER LACK OF CREDIBILITY.

[redacted] - and indeed, he was not only financially invested, but as previously established (Dkt. 566-1, Ex. D), he was personally invested as well – he flew out to attend the various depositions taken around the country, he reviewed document productions, analyzed other young adult romantasy novels so that he could comment on the infringement claims, and he assisted in gathering documents to respond to arguments raised in the case. (Dkt. 566-1, Ex. D.) [redacted]

[1] How she spent $1 million in fees and costs when her attorneys work on a contingency basis is not something that Ms. Freeman has been able to explain, [redacted]. (Nashon Decl., Exh. A, pp. 16-17, 27-28.) If the $500,000 proceeds of the sale of her third home in Anchorage and the $470,000 undocumented "loan" from Mr. Baer ([redacted]) (*id.*, pp. 13-14) and the [redacted] were not actually used to pay Ms. Freeman's litigation expenses, then those funds should be accounted for and considered available as part of her assets. The money spent by her husband on their legal bills during the marriage should *certainly* not be credited as a post-divorce liability of Ms. Freeman's, as she and her attorneys suggest.

[redacted]. (Nashon Decl., Ex. A., pp. 16-17.)

Yet, Ms. Freeman would have this Court and the parties believe that Mr. Baer makes just [redacted] (Dkt. 624, p. 158) and [redacted] (*id.,* p. 86). Ms. Freeman would also have this Court and the parties believe that she and Mr. Baer are well and truly divorced, and not for the purposes of asset protection. Her deposition testimony casts a substantial degree of doubt over the veracity of those claims.

Ms. Freeman testified that Mr. Baer pays her living expenses [redacted], although she seems to have no way of validating those figures.[2] (*Id.*, p. 137.) [redacted] including her mortgage, homeowner's dues, property taxes, utilities, health insurance, car insurance, maintenance and repairs, medical bills[3], vet bills, and credit card bills. (Dkt. 556-1, pp. 12, 14-18). [redacted]

---

[2] At both days of her deposition, Ms. Freeman was unable to provide any details about financial accounts or tax returns, which was particularly conspicuous at the second session of her deposition, after she had been previously asked about her tax returns at the first session and whether she had reviewed them, yet still chose not to do so before the second session. (Nashon Decl., Ex. A, p. 19.)

[3] As will be discussed further below, most of Ms. Freeman's "treating physicians" are not mainstream doctors who accept insurance, so her monthly medical bills (including the $1,200 per month concierge doctor) are presumably quite high. [redacted]

[4] https://www.youtube.com/watch?v=DeKy1Czgpl0

[redacted] And miraculously, Mr. Baer is able to pay all of these expenses solely out of his modest salary of [redacted] Of course – that math does not come close to making sense.

Ms. Freeman's claim that she is unable to work similarly lacks credibility. She formerly testified under oath in this case that she was acting as her own attorney in this case. (Dkt. 183). She also testified in 2023 that she was not presently working as a family law attorney only because she was so upset and consumed by this case, and she was busy doing what she could to educate herself regarding copyright law and to assist her attorneys in the litigation. (Dkt. 614-5, p. 6). Indeed, at her deposition this week, Ms. Freeman confirmed that she was the one who prepared the "lists of similarities" between her works and the *Crave* series and provided them to her prospective lawyers in this case before retaining them, and she continued to refine them throughout the litigation.[5] (Nashon Decl., Ex. A., p. 33.)

In 2023, Ms. Freeman provided a lengthy declaration describing the legal work she did, not only in this case, but as a consultant and "in trade" with other lawyers, so that she could keep all of those communications confidential under the guise of the attorney-client privilege. (Dkt. 183.) She confirmed such work at her 2023 deposition, and her then-husband testified under oath that she was a "busy professional" and "practicing lawyer." (Dkt. 614-5 and 614-6.) She wrote content for her personal website in 2024, which she continued to update through this year, proudly proclaiming that

[5] In their recent declarations opposing Defendants' § 1927 motion, Ms. Freeman's attorneys both had the opportunity to tell the Court that they had reviewed her manuscripts and the *Crave* novels before agreeing to represent her, but they did not do so. Mr. Passin, in particular, stated only that he spoke to "two other highly experienced attorneys" who he believed "spent a significant amount of time reviewing the matter as potential counsel" and that he "read and reviewed voluminous written material." If he did not review the actual works at issue, presumably what he reviewed were these "lists of similarities" Ms. Freeman created before ever retaining legal counsel.

she was a "practicing attorney".[6] (Nashon Decl., Ex. A, pp. 26, 34.) Now she claims [redacted] (*id.,* p. 34).

In fact, Ms. Freeman now claims that [redacted]. (*Id.*, pp. 8, 10.) [redacted].[8]

Whether Ms. Freeman wishes to work or not, she has not established that she is unable to do so. Nor has she established that her divorce was anything more than a failed attempt to shield what

---

6 [redacted] (Nashon Decl., Ex. A., p. 26.)

7 Nashon Decl., ¶ 4; https://www.drkristihartemd.com/about .

8 [redacted]. *Id.*, ¶ 5.

appear to be (despite the incredible representations in the property settlement agreement) substantial resources and assets from which she would be able to satisfy a fee award. What she has instead overwhelmingly demonstrated is a disturbing lack of credibility and candor (including to the IRS, as she claims to be and files taxes as a resident of Alaska, which has no state income tax, when she has not even been there in five years and has, simultaneously, filed a homestead exemption on her "primary residence" in California). (*Id.*, pp. 11-12.)

## III. CONCLUSION

Ms. Freeman argues to this Court that, despite putting Defendants through the ringer in every way possible for four years, despite forcing them to retain attorneys and spend substantial amounts of money on attorneys' fees and expert witnesses and litigation costs (much of which is not recoverable in this district), despite continuing to pursue a frivolous appeal, and despite somehow coming up with over a million dollars to accomplish all of this – she now has no money or assets from which to compensate any of the Defendants (including the two individuals) for what she has cost them. Her testimony and the "evidence" that she has presented in support of this argument are highly suspect and should be heavily discounted, if not wholly disregarded by this Court.

In addition, it bears pointing out the hypocrisy of Ms. Freeman and her lawyers, in that despite supposedly spending $1 million to prosecute this case on a contingency basis, they are not only objecting to the fee award sought on the basis that Ms. Freeman is unable to pay, but also based on criticism over the number of hours spent and fees incurred (a little over $2.5 million) by multiple Defendants represented by multiple law firms, all on an hourly basis, over the course of four years.

Defendants have well established the reasonableness of the fees that they seek, and Ms. Freeman has not met her burden to prove that the amount sought should be reduced for any reason.

Dated: September 24, 2026

Respectfully submitted,

*/s/ Amy L. Nashon*

Amy L. Nashon
California State Bar No. 316353
**TROYGOULD P.C.**
1801 Century Park East, Suite 1600
Los Angeles, CA 90067
Phone: (310) 553-4441
anashon@troygould.com

Jennifer Pariser
**OPPENHEIM + ZEBRAK, LLP**
461 5th Avenue, 19th Floor
New York, NY 10017
Phone: (212) 951-1874
Fax: (866) 766-1678
JPariser@oandzlaw.com

*Attorneys for Tracy Deebs-Elkenaney p/k/a Tracy Wolff, Entangled Publishing, LLC, Holtzbrinck Publishers, LLC d/b/a Macmillan, and Universal City Studios LLC*

Lacy H. Koonce, III
**KLARIS LAW PLLC**
161 Water Street, Ste. 904
New York, NY 10038
Phone: (917) 612-5861
lance.koonce@klarislaw.com
*Attorneys for Emily Silvan Kim and Prospect Agency, LLC*

Dwayne K. Goetzel
Texas State Bar No. 08059500
**KOWERT, HOOD, MUNYON, RANKIN & GOETZEL, P.C.**
1120 S. Capital of Texas Hwy.
Building 2, Ste. 300
Austin, Texas 78746
Phone: (512) 853-8800
Fax: (512) 853-8801
dgoetzel@intprop.com
*Attorneys for Tracy Deebs-Elkenaney p/k/a Tracy Wolff*